FILED
2020 Dec-09 PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) Civil. No. _____ |
| | ) |
| STATE OF ALABAMA and | ) |
| ALABAMA DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

## **<u>COMPLAINT</u>**

1.    THE UNITED STATES OF AMERICA brings this action against the State of Alabama

pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C.

§ 1997, to enforce the Eighth and Fourteenth Amendment rights of men housed in

Alabama state prisons ("Alabama's prisons for men"[1]).  The State of Alabama violates

the Eighth and Fourteenth Amendment rights of these prisoners by failing to prevent

prisoner-on-prisoner violence and sexual abuse, by failing to protect prisoners from the

use of excessive force by security staff,[2] and by failing to provide safe conditions of

---

[1] As used in this Complaint, the term "Alabama's prisons for men" includes Bibb Correctional
Facility; Bullock Correctional Facility; Donaldson Correctional Facility; Draper Correctional
Facility, Easterling Correctional Facility; Elmore Correctional Facility; Fountain Correctional
Facility; Hamilton Aged & Infirmed; Holman Correctional Facility; Kilby Correctional Facility;
Limestone Correctional Facility; St. Clair Correctional Facility; Staton Correctional Facility; and
Ventress Correctional Facility.

[2] As used in this Complaint, the term "security staff" includes supervisory correctional officers
(such as sergeants, lieutenants, captains, wardens), correctional officers, basic correctional
officers, and cube correctional officers.

confinement in violation of the Constitution.

2.     On April 2, 2019, Department of Justice's Civil Rights Division, Special Litigation Section, and the three U.S. Attorney's Offices for the State of Alabama ("the United States") notified the State of Alabama that, in violation of the Constitution, prisoners housed in Alabama's prisons for men are at serious risk of death, physical violence, and sexual abuse at the hands of other prisoners.

3.     The United States engaged in multiple rounds of negotiations with the State beginning in the spring of 2019.  Since the spring of 2019, the State of Alabama has failed or refused to correct the unconstitutional conditions in Alabama's prisons for men.

4.     On July 23, 2020, the United States notified the State of Alabama that, in violation of the Constitution, correctional officers frequently use excessive force on prisoners housed in all Alabama's prisons for men, except for the Hamilton Aged & Infirmed Correctional Facility.

5.     Alabama's prisons for men are now more overcrowded than in 2016, when the United States initiated its investigation, prisoner-on-prisoner homicides have increased, prisoner-on-prisoner violence including sexual abuse remains unabated, the physical facilities remain inadequate, use of excessive force by security staff is common, and staffing rates remain critically and dangerously low.

6.     In the 20 months following the United States' original notification to the State of Alabama of unconstitutional conditions of confinement, Alabama prisoners have continued daily to endure a high risk of death, physical violence, and sexual abuse at the hands of other prisoners.

7.     The State of Alabama is deliberately indifferent to the serious and systemic constitutional

problems present in Alabama's prisons for men.

8.      The United States has determined that constitutional compliance cannot be secured by

        voluntary means.  Judicial action is, therefore, necessary to remedy the violations of law

        identified in the United States' Notices and to vindicate the rights of the individuals

        incarcerated in Alabama's prisons for men.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

10.     The United States is authorized to initiate this action pursuant to 42 U.S.C. § 1997a(a).

11.     The Attorney General has certified that all pre-filing requirements specified in 42 U.S.C.

        § 1997b have been met.  The Certificate of the Attorney General is appended to this

        Complaint as Attachment A and is incorporated herein.

12.     Venue in the United States District Court for the Northern District of Alabama is proper

        pursuant to 28 U.S.C. § 1391.

## PARTIES

13.     Plaintiff is the UNITED STATES OF AMERICA.

14.     Defendants are the STATE OF ALABAMA and ALABAMA DEPARTMENT OF

        CORRECTIONS ("ADOC").

15.     Defendants are responsible for the safety, care, custody, and control of individuals

        incarcerated in Alabama's prisons for men, as well as for the actions of the ADOC staff

        and for the actions of any entity or individual contracting and providing services at

        Alabama's prisons for men.

## FACTS

16.    ADOC currently operates 13 "Major Correctional Facilities"[3] for men where offenders are incarcerated.

17.    Bibb Correctional Facility is a medium-security, or Security Level IV, prison for men in Brent, Alabama with a designed capacity of approximately 918 men.

18.    Bullock Correctional Facility is a medium-security, or Security Level IV, prison for men in Union Springs, Alabama with a designed capacity of approximately 919 men.

19.    Donaldson Correctional Facility is a close-security, or Security Level V, prison for men in Bessemer, Alabama with a designed capacity of approximately 968 men, with an additional approximately 24 spaces designated for death row.

20.    Easterling Correctional Facility is a medium-security, or Security Level IV, prison for men in Clio, Alabama with a designed capacity of approximately 652 men.

21.    Elmore Correctional Facility is a medium-security or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 600 men.

22.    Fountain Correctional Facility is a medium-security or Security Level IV, prison for men in Atmore, Alabama with a designed capacity of approximately 831 men.

23.    Hamilton Aged & Infirmed Correctional Facility is a medium-security or Security Level IV, prison for men in Hamilton, Alabama with a designed capacity of approximately 123 men.

24.    Holman Correctional Facility is a close-security, or Security Level V, prison for men in Atmore, Alabama with a designed capacity of approximately 581 men, with an additional approximately 56 spaces designated for death row.  In January 2020, ADOC

---

[3] *See* http://www.doc.state.al.us/FacAddr.

decommissioned most of the Holman facility, but continued to hold 308 men at Holman as of September 2020.

25.    Kilby Correctional Facility is a close-security, or Security Level V, prison for men in Mt. Meigs, Alabama with a designed capacity of approximately 440 men.

26.    Limestone Correctional Facility is a close-security, or Security Level V, prison for men in Harvest, Alabama with a designed capacity of approximately 1628 men.

27.    St. Clair Correctional Facility is a close-security, or Security Level V, prison for men in Springville, Alabama with a designed capacity of approximately 984 men.

28.    Staton Correctional Facility is a medium-security, or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 508 men.

29.    Ventress Correctional Facility is a medium-security, or Security Level IV, prison for men in Clayton, Alabama with a designed capacity of approximately 650 men.

30.    Draper Correctional Facility was a medium-security, or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 600 men.  In late 2017, following the United States on-site review of the prison, ADOC closed the Draper Correctional Facility.  It has been reported that ADOC reopened the facility to some extent in April 2020.

31.    Bibb, Bullock, Donaldson, Draper, Easterling, Elmore, Fountain, Hamilton Aged & Infirmed, Holman, Kilby, Limestone, St. Clair, Staton, and Ventress Correctional Facilities, Alabama's prisons for men, are institutions within the meaning of 42 U.S.C. § 1997(1).

32.    In 2016, the United States notified Alabama that it had opened an investigation, pursuant to CRIPA, into whether the conditions in Alabama's prisons for men violate the Eighth

Amendment of the U.S. Constitution.

33.   The United States investigated whether ADOC (1) adequately protects prisoners from physical harm and sexual abuse at the hands of other prisoners; (2) adequately protects prisoners from use of excessive force and staff sexual abuse by correctional officers; and (3) provides prisoners with sanitary, secure, and safe living conditions

34.   In April 2019, the United States notified the State of Alabama and ADOC that the United States had reasonable cause to believe that the Defendants were violating the Eighth Amendment rights of prisoners housed in Alabama men's prisons by failing to protect prisoners from physical harm and sexual abuse at the hands of other prisoners and by failing to provide safe conditions.

35.   In July 2020, the United States notified the State of Alabama and ADOC that the United States had reasonable cause to believe that Defendants were violating the Eighth Amendment by failing to protect prisoners from excessive force by correctional officers.

36.   The United States' findings were outlined in its April 2019 and July 2020 Notice Letters, including those described below.

### A. Defendants Fail to Protect Prisoners from Prisoner-on-Prisoner Violence

37.   Defendants fail to protect prisoners in Alabama's prisons for men from serious harm and a substantial risk of serious harm at the hands of other prisoners, including serious injury and death.

38.   Alabama's prisons for men have a high rate of prisoner-on-prisoner violence that is serious and systemic.

39.   In 2018, at least ten men were killed by other prisoners in Alabama's prisons for men.

40.   In 2018, Alabama's prisons for men had the highest homicide rate in the nation for a state

prison system.

41.  In 2019, at least 14 prisoners in Alabama's prisons for men were killed by other
     prisoners.

42.  According to ADOC's publicly available data, at least 9 men have been killed by other
     prisoners in the first six months of 2020.

     a.  For example, on May 27, 2020, a 33-year old prisoner at Elmore Correctional
         Facility died from injuries sustained after being attacked by another prisoner in an
         open dormitory.

     b.  On June 15, 2020, a 67-year old prisoner at Elmore Correctional Facility was
         beaten to death by another prisoner.

     c.  On October 10, 2020, a 29-year old prisoner at Easterling Correctional Facility
         was stabbed to death in an open dormitory.  No officers were present at the time
         of the stabbing.

     d.  On November 9, 2020, a 48-year old prisoner was stabbed to death in an open
         dormitory at Bullock Correctional Facility.  At the time of his death, the prisoner
         was scheduled for a parole hearing on December 3, 2020, and had been eligible
         for parole for more than eight months.

43.  From September 2018 to September 2019, at least 280 Alabama prisoners suffered
     serious injuries, defined as requiring transport to outside hospitals, as the result of
     assaults.

44.  In October 2019, the State of Alabama stopped publicly reporting separate numbers each
     month for serious injuries caused by prisoner-on-prisoner violence.

45.  According to ADOC's publicly available data, there have been at least 825 prisoner-on-

prisoner assaults in Alabama's prisons for men from September 2019 until June 2020 (fiscal year 2020). For example:

    a. In December 2019, an Alabama prisoner was stabbed repeatedly in the face with a broken pen, requiring transport to an outside hospital for stiches.

    b. In March 2020, an Alabama prisoner was transported to an outside hospital with 26 stab wounds in his stomach.

    c. In August 2020, a prisoner at Easterling was taken to an outside hospital with serious burn wounds when another prisoner microwaved a mixture of baby oil, shaving powder, and coffee granules and poured it on his face and body while he was sleeping.

46. Defendants, through their acts and omissions, fail to provide adequate supervision of prisoners housed within Alabama's prisons for men to prevent such violence.

47. One contributing factor to the violence is overcrowding in Alabama's prisons for men.

    a. Alabama's prisons for men were designed to hold approximately 9,882 men.

    b. In its September 2020 Monthly Statistical Report, ADOC reported that Alabama's prisons for men housed approximately 15,297 prisoners.

48. Another factor contributing to the violence is the dangerously low level of security staffing.

49. There is a direct correlation between the shortage of correctional officers in Alabama's prisons for men and the violence, sexual abuse, and death.

50. According to an ADOC staffing report from 2018, ADOC employed only 1,072 out of 3,326 authorized correctional officers.

51. ADOC's numbers have not improved significantly since 2018. A recent court order

confirmed that, since the second quarter of 2019 through the first quarter of 2020, ADOC experienced an overall increase of total officers from 1,301 to 1,413, and an overall decrease in the number of supervisors from 359 supervisors to 313 supervisors. *Braggs v. Dunn*, Case 2:14-cv-00601-MHT-JTA, Doc. No. 2834, at 1 (M.D. Ala. June 8, 2020).

52.     Defendants, through their acts and omissions, have engaged in a pattern or practice that obscures the level of harm from violence in Alabama's prisons for men:

    a.   ADOC does not, consistently and reliably, accurately classify the causes of deaths that occur within Alabama's prisons for men.

    b.   ADOC has classified prisoners' deaths as occurring by "natural causes" when the death is caused by prisoner-on-prisoner violence.

    c.   ADOC does not have a centralized system to track or review prisoner mortalities within Alabama's prisons for men, nor does ADOC maintain a unified repository or database for prisoner autopsies to track and identify patterns in causes of death.

53.     Defendants, through their acts and omissions, fail adequately to protect prisoners from death even when ADOC officials have advance warning that certain prisoners are in danger from violence at the hands of other prisoners.

54.     Due to lax supervision, security staff often fail to observe the violent incidents and only discover the victim after the violence and/or injuries occur.

55.     Security staff sometimes watch a violent or troubling incident unfold and do not intervene.

56.     Defendants, through their acts and omissions, fail adequately to prevent the introduction

of illegal contraband[4] into Alabama's prisons for men and to screen entrants to

Alabama's prisons for men.

57.     The failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner

violence.

  a.   The use of illicit substances, including methamphetamines or Fentanyl and

   synthetic cannabinoids, is prevalent in Alabama's prisons for men.  Prisoners

   using illicit substances often harm others or become indebted to other prisoners.

  b.   The inability to pay drug debts leads to beatings, kidnappings, stabbings, sexual

   abuse, and homicides.

  c.   Defendants' inability to prevent the introduction of illicit substances leads to

   death by overdose.

  d.   In addition to the homicide deaths discussed above, in 2019 and the first eight

   months of 2020, at least six prisoners died of drug overdoses.

  e.   Although ADOC has not allowed visitors into Alabama's prisons for men since

   March 2020 pursuant to COVID-19 restrictions, prisoners continue to have

   unfettered access to drugs and other illegal contraband.

  f.   ADOC does not maintain a unified repository or database to track and identify

   deaths caused by overdoses.

  g.   ADOC is unable to track and identify where illicit substances are most

   problematic within Alabama's prisons for men.

58.     Defendants, through their acts and omissions, fail effectively to control the introduction,

---

[4] As used in this Complaint, the term "contraband" refers to prohibited materials which can
reasonably be expected to cause physical injury or adversely affect the security, safety, or good
order of Alabama's prison for men, including drugs, cell phones, and weapons.

manufacture, and use of weapons within Alabama's prisons for men.

    a.  Possession and use of weapons is widespread within Alabama's prisons for men.

    b.  The large number of weapons within Alabama's prisons for men contributes to the high rate of violence, sexual abuse, and death.

59.  Defendants, through their acts and omissions, fail properly to respond to prisoner and staff reports of threats and violence so that management can properly discipline assailants and avert future violence.

    a.  Defendants routinely retaliate against prisoners who report violence and threats of violence by subjecting such prisoners to discipline in conjunction with the prisoner's report of violence and threats of violence. Defendants' retaliation has the effect of deterring prisoners from reporting violence and threats of violence.

    b.  In some cases, ADOC subjects prisoners to discipline for refusing to name the individuals who they fear may harm them.

60.  Defendants, through their acts and omissions, discourage victims from reporting incidents of violence or threats of violence.

    a.  Defendants do not have an established grievance system in Alabama's prisons for men.

    b.  Defendants limit prisoners' ability to report threats of violence or sexual abuse.

61.  Defendants, through their acts and omissions, fail to prevent prisoners from extorting other prisoners and their family members, resulting in serious physical injuries and sexual abuse and presenting a risk of serious harm to Alabama prisoners. Prisoners routinely threaten or subject other prisoners to violence in order coerce family and friends of the victim to transfer money in exchange for their loved one's safety. In some cases,

prisoners have been "kidnapped" by other prisoners and forcibly held, against their will, for multiple days while prisoner-captors extort the hostage-prisoner's family and friends. ADOC staff have failed to intervene when alerted to potential extortion.

62.   Defendants, through their acts and omissions, fail to implement effective classification and housing policies, thereby resulting in violence caused by commingling prisoners who should be kept separate.

63.   Defendants, through their acts and omissions, fail to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence.

64.   Defendants, through their acts and omissions, fail to provide adequate programming, education, or work opportunities.  Most ADOC prisoners receive no programming or employment, and the vast degree of idle time combined with lack of adequate supervision of prisoners results in increased opportunities to perpetuate misconduct and correspondingly increasing violence.

### B. Defendants Fail to Protect Prisoners from Prisoner-on-Prisoner Sexual Abuse

65.   Defendants fail to protect prisoners from sexual abuse by other prisoners.

66.   Defendants, through their acts and omissions, allow for a high level of prisoner-on-prisoner sexual abuse with Alabama's prisons for men without taking reasonable measures to keep prisoners safe from such abuse.  ADOC documented over 600 incidents from late 2016 through April 2018 reporting "Sexual Assault – Inmate-on-Inmate."

67.   To give but one of many examples, in June 2020, an Alabama prisoner was sexually assaulted by two prisoners at Easterling.  He was transferred to Easterling after being

sexually assaulted at Bullock.  This same prisoner was sexually assaulted in May 2020 at Limestone and in 2018 at Ventress.

68.   Defendants' staffing shortages lead to an inability adequately to supervise prisoners, which in turn allows prisoner-on-prisoner sexual abuse to occur.

69.   The physical plant designs of the facilities, combined with understaffing, makes visibility difficult and creates opportunity for prisoner-on-prisoner sexual abuse to occur unobserved.

70.   Defendants, through their acts and omissions, fail to prevent the introduction of contraband, which leads to sexual abuse.

    a.   Prisoners routinely subject other prisoners to sexual abuse when the victim fails to pay a debt related to drug trafficking or other prisoner contraband exchanges.

    b.   Many prisoners report suffering sexual abuse after being drugged, becoming incapacitated by drugs, or when the assailant was under the influence.

71.   Defendants, through their acts and omissions, fail to employ adequate screening, classification, and housing of prisoners to prevent sexual abuse pursuant to the National Standards to Prevent, Detect, and Respond to Prison Rape, 28 C.F.R. § 115, *et seq.*

    a.   Sexual predators are often commingled with victims in housing units, which results in foreseeable sexual abuse.

    b.   Because of ADOC's failure to supervise prisoners and enforce classification and housing assignments, sexual predators are able to move from unit to unit without intervention, which results in sexual abuse.

72.   Defendants, through their acts and omissions, fail to conduct adequate investigations of sexual abuse.

a.   ADOC declares many allegations of sexual abuse "unsubstantiated" based solely on the victim's decision not to press criminal charges or otherwise cooperate with the investigation.

b.   Defendants frequently dismiss alleged sexual abuse as "homosexual activity", implying the sexual act is consensual.

c.   Defendants frequently disregard sexual abuse that occurs as the result of a drug debt that has been incurred.

73.   Defendants, through their acts and omissions, frequently discourage reporting of sexual abuse.

74.   Defendants, through their acts and omissions, improperly subject victims of sexual abuse to segregation, which isolates them from others and subjects them to restricted privileges and out-of-cell time, often because ADOC lacks appropriate and safe housing because of the unsafe conditions within Alabama's prisons for men.

75.   Defendants, through their acts and omissions, fail to prevent prisoners from being sexually abused by other prisoners in retaliation for reporting sexual abuse.

76.   Defendants fail to conduct adequate reviews of incidents of sexual abuse to identify and remedy the flawed practices that contribute to the substantial risk of serious harm, which enables further abuse to continue.

### C.   Correctional Officers Frequently Use Excessive Force on Prisoners

77.   Defendants fail to protect prisoners from the use of excessive force by security staff.

78.   For example, on July 28, 2020, a federal grand jury indicted four correctional officers at Bibb for willfully using excessive force on a prisoner and for obstructing justice by filing false reports to conceal their misconduct.

79.   In February 2019, a correctional supervisor assaulted two handcuffed prisoners at Elmore by striking them repeatedly with a baton.

80.   In October 2019, a prisoner at Donaldson died as a result of a use of force by security staff.

81.   In December 2019, a prisoner at Ventress died as a result of a use of force by security staff.

82.   Security staff have a practice of using force on prisoners and then placing those prisoners in segregation or restricted housing until any injuries can heal unobserved and undocumented.

83.   Security staff have a practice of failing to document or report uses of force to supervisors.

84.   Security staff have a practice of falsifying incident documentation related to uses of force.

85.   Security staff have a practice of using chemical agents inappropriately.

86.   Security staff have a practice of verbally antagonizing and provoking prisoners, leading to an escalation of tensions.

87.   Defendants, through their acts and omissions, have engaged in a pattern or practice of conduct by security staff of using excessive force against prisoners.  The use of excessive force includes, but is not limited to:

    a.   use of force disproportionate to the amount of resistance encountered, including use of force against restrained or compliant prisoners;

    b.   use of force to punish or retaliate against prisoners;

    c.   use of chemical spray or agents that is inappropriate;

    d.   actions which deliberately provoke physical confrontations; and

    e.  failure to attempt to de-escalate potential force incidents when it is appropriate and feasible to do so.

88.  Defendants, through their acts and omissions, have engaged in a pattern or practice of systemic deficiencies that resulted in the pattern or practice by ADOC security staff of uses of excessive force.  These systemic deficiencies include, but are not limited to:

    a.  failure to implement and enforce policies, procedures, and practices regarding use of force that appropriately guide and monitor the actions of individual security staff;

    b.  failure to ensure that facilities' operating procedures are consistent with ADOC regulations or from prison-to-prison;

    c.  deficient use of force reporting and review;

    d.  failure to adequately investigate incidents in which security staff uses force;

    e.  failure to adequately or appropriately discipline security staff who engage in misconduct;

    f.  failure to adequately monitor security staff who engage in or may be likely to engage in misconduct;

    g.  inadequate video surveillance; and

    h.  failure to implement policies and procedures whereby complaints and other allegations of security staff misconduct are adequately received and investigated.

89.  Defendants, through their acts and omissions, have failed to implement meaningful accountability measures whenever uses of force occur in Alabama's prisons for men. These systemic deficiencies include, but are not limited to:

    a.  failure by supervisory staff to conduct thorough institutional-level investigations;

    b.   providing too much discretion to each prison's head warden to determine which use of force matters should receive further review by ADOC's Law Enforcement Services Division (LESD)[5];

    c.   failure by LESD to conduct thorough institutional-level investigations;

    d.   failure by LESD supervisors to document why investigations are closed or referred back to an institution;

    e.   failure by LESD to conduct administrative reviews of uses of force, when matters do not necessarily rise to criminal conduct;

    f.   failure to discipline security staff who are found to have used excessive force;

    g.   improperly closing use of force investigations when security staff refuses to cooperate, a prisoner refuses to cooperate, or when a prisoner is no longer in custody; and

    h.   failure to implement tracking or periodic review systems to identify security staff who use a disproportionate amount of force or to identify problematic places where uses of force frequently occur.

90.    Defendants have repeatedly failed to take reasonable measures to prevent correctional staff from inflicting serious harm on prisoners, even in the face of the obvious and substantial risk that staff will inflict such harm and the multiple occasions on which staff have in fact inflicted such harm.

### D. Defendants Fail to Provide Safe and Sanitary Conditions within Alabama's Prisons for Men

91.    Defendants fail to provide safe conditions for prisoners in Alabama's prisons for men.

92.    Defendants, through their acts and omissions, allow for significant physical plant-related

---

[5]  Prior to 2020, LESD was referred to as the Investigations & Intelligence Division, or I&I.

security issues in Alabama's prisons for men that contribute to violence.

    a.  Many of Alabama's prisons for men have broken or defective locks.

    b.  Most of Alabama's prisons for men fail to contain functioning surveillance cameras.

    c.  In the prisons that do contain cameras, many are insufficient or ineffective.

    d.  Many of Alabama's prisons for men lack convex mirrors, which can minimize surveillance of blind spots.

93.  The understaffing coupled with the lack of adequate surveillance cameras increases the danger to prisoners in Alabama's prisons for men.

94.  The Defendants' refusal or failure to provide safe conditions in the Alabama's prisons for men allows prisoners to leave secure areas, obtain contraband, and improperly associate with or assault other prisoners.

95.  Many of Alabama's prisons for men have perimeters that are not adequately protected or supervised.

96.  Prisoners frequently receive contraband that accomplices on the outside throw over the unsupervised fences of many of Alabama's prisons for men.  Security staff do not observe or intervene in many such contraband transfers, which leads to widespread weapons possession, drug trafficking, and other contraband trade in Alabama's prisons for men.

97.  Defendants, through their acts and omissions, fail to provide sanitary conditions for prisoners in Alabama's prisons for men.

    a.  Defendants house many prisoners in open and overcrowded dormitories, requiring the use of shared showering and toileting facilities by a prisoner population that

far exceeds the design capacity of Alabama's prisons for men

    b.  Many of the plumbing fixtures in those facilities are not properly working.  In some facilities, flooding is routine due to poor plumbing.

    c.  The overcrowding, coupled with the lack of adequate working toilet and shower fixtures, heightens tensions within Alabama's prisons for men, which results in prisoner-on-prisoner violence.

### E. *Defendants Are Deliberately Indifferent to the Serious Risk of Substantial Harm Due to Prisoner-on-Prisoner Violence, Sexual Abuse, Use of Excessive Force, and Unsafe Physical Plant Conditions*

98.    Defendants are deliberately indifferent to the serious risk of substantial harm in Alabama's prisons for men.

99.    Defendants have been aware of the dangerous conditions in Alabama's prisons for men for many years but have not seriously addressed the problems.

100.    Since the United States opened its investigation in October 2016, Alabama's prisons for men have become more overcrowded.

101.    Alabama's prisons for men are still critically and dangerously understaffed.

102.    Since the United States released its Notice Letter on April 2, 2019, notifying Alabama that it was violating the Eighth Amendment by failing to prevent prisoner-on-prisoner violence and sexual abuse, the rate of violence in Alabama's prisons remains unacceptably and dangerously high.

103.    Violence and sexual abuse in Alabama's prisons for men are still widespread.

104.    ADOC's publicly-available reports continue to reflect that injuries, deaths, and fighting are a systemic problem in Alabama's prisons for men.

105.    Despite being on notice of the dangerous and deficient conditions in Alabama's prisons

for men, the State of Alabama and ADOC failed or refused to eliminate the unconstitutional conditions.

## COUNT ONE

106. The allegations of Paragraphs 16 through 105 are hereby re-alleged and incorporated by reference.

107. Through the acts and omissions alleged in paragraphs 16 through 105, Defendants have subjected prisoners in Alabama's prisons for men to a pattern or practice of conditions of confinement that deprives them of rights, privileges, and immunities secured and protected by the Eighth and Fourteenth Amendments to the Constitution of the United States, causing such prisoners to suffer grievous harm.

108. Through the acts and omissions alleged in paragraphs 16 through 105, Defendants have exhibited deliberate indifference to the health and safety of prisoners in Alabama's prisons for men, in violation of the rights, privileges, or immunities of those prisoners as secured or protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

109. Unless this Court orders Defendants to comply with the Eighth and Fourteenth Amendments to the Constitution of the United States, Defendants will continue to engage in the acts and omissions, set forth in paragraphs 16 through 105, that deprive persons confined in Alabama's prisons for men of privileges or immunities secured or protected by the Eighth and Fourteenth Amendments.

## PRAYER FOR RELIEF

110. The Attorney General is authorized under 42 U.S.C. § 1997a to seek appropriate equitable relief.

111.    WHEREFORE, the United States prays that this Court enter an order:

    a.    declaring that the acts, omissions, and practices of Defendants set forth in paragraphs 16 through 105 above constitute a pattern or practice of conduct that deprives prisoners confined in Alabama's prisons for men of rights, privileges, or immunities secured or protected by the Constitution of the United States and that those acts, omissions, and practices violate the Eighth and Fourteenth Amendments to the Constitution of the United States;

    b.    permanently enjoining Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them from continuing the illegal acts, omissions, and practices set forth in paragraphs 16 through 105 above.

    c.    requiring Defendants, their officers, agents, employees, subordinates, successors in office, to take such actions as will ensure constitutional conditions of confinement are afforded to prisoners in Alabama's prisons for men; and

    d.    granting such other and further equitable relief as it may deem just and proper.

Dated:   December 9, 2020

Respectfully submitted,

FOR THE UNITED STATES:

WILLIAM P. BARR
Attorney General
United States of America

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division


/s/ Louis V. Franklin, Sr.

LOUIS V. FRANKLIN, SR.
United States Attorney
Middle District of Alabama


/s/ Richard W. Moore

RICHARD W. MOORE
United States Attorney
Southern District of Alabama


/s/ William R. Chambers, Jr.

WILLIAM R. CHAMBERS, JR.
Acting United States Attorney
Northern District of Alabama


/s/ Steven H. Rosenbaum

STEVEN H. ROSENBAUM
Chief
Special Litigation Section


/s/ Kerry K. Dean

KERRY K. DEAN
Deputy Chief
DEENA FOX
CURTIS HARRIS
Attorneys
Special Litigation Section

/s/ Carla C. Ward
LANE H. WOODKE
Civil Chief
JASON R. CHEEK
Deputy Civil Chief

CARLA C. WARD
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
(205) 244-2181 (fax)
carla.ward@usdoj.gov

CERTIFICATE OF THE ATTORNEY GENERAL

I, William P. Barr, Attorney General of the United States, certify that with regard to the foregoing Complaint, *United States v. Alabama*, I have complied with all subsections of 42 U.S.C. § 1997b(a)(1).  I certify as well that I have complied with all subsections of 42 U.S.C. § 1997b(a)(2).  I further certify, pursuant to 42 U.S.C. § 1997b(a)(3), my belief that this action by the United States is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution.

In addition, I certify that I have the "reasonable cause to believe" set forth in 42 U.S.C. § 1997a to initiate this action and that all prerequisites to the initiation of this suit under 42 U.S.C. §§ 1997a and 1997b have been met.

Pursuant to 42 U.S.C. § 1997a(c), I have personally signed the foregoing Complaint. Pursuant to 42 U.S.C. § 1997b(b), I am personally signing this Certificate.

Signed this __4th__ day of December, 2020, at Washington, D.C.

WILLIAM P. BARR
Attorney General of the United States