FILED

2021 Feb-25  PM 05:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff;<br>   v.<br><br>STATE OF ALABAMA and ALABAMA<br>DEPARTMENT OF CORRECTIONS,<br><br>              Defendants. | Civil. No. 2:20-cv-01971-RDP |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      Introduction...............................................................................................................1

II.     Factual Background ....................................................................................................1

III.    Legal Standard ...........................................................................................................2

IV.     Argument ...................................................................................................................3

   A.   The United States' Claim and Complaint Fully Comply with CRIPA. ...........................4

     (1)   CRIPA authorizes an action against systemic statewide pattern or practice
violations................................................................................................................4

     (2)   CRIPA does not impose a heightened pleading standard or evidentiary burden. ......6

       (a)   CRIPA does not require heightened proof of "egregious and flagrant"
conditions..........................................................................................................7

       (b)   The Attorney General's pre-suit CRIPA certification is not subject to
judicial review...................................................................................................9

       (c)   CRIPA does not require detailed allegations of remedial measures....................10

   B.   The Complaint Facially Pleads a Plausible and Detailed Claim....................................11

     (1)   The United States' Complaint Clearly Notifies Defendants of the Claim
Against Them........................................................................................................12

       (a)   The language Defendants contend is vague is an appropriate and accurate
description of the constitutional violations at issue and the systemic patterns of
action that contribute to the violations.............................................................13

       (b)   The Complaint clearly identifies which facilities are at issue. ...........................15

       (c)   The Complaint sufficiently alleges a pattern or practice claim. .........................15

     (2)   The Facts Alleged in the United States' Complaint State a Constitutional
Violation. .............................................................................................................17

       (a)   The Complaint provides factual support for its claim of a pattern or practice
of unconstitutional risk of prisoner-on-prisoner violence.................................18

       (b)   The Complaint provides factual support for its claim that there is a pattern
or practice of excessive force in Defendants' facilities. ...................................18

       (c)   The Complaint provides factual support for its claim that the Defendants
fail to provide reasonably safe conditions. ......................................................19

       (d)   The Complaint provides factual support for its claim that the Defendants
are deliberately indifferent to the risk of harm. ...............................................20

   C.   The *Braggs* Case Does Not Preclude the United States' Independent Claim to
Vindicate the Public Interest..........................................................................................22

V.      Conclusion ...............................................................................................................25

## I.    INTRODUCTION

The United States brought this action pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997, alleging that Defendants State of Alabama and the Alabama Department of Corrections have violated the Eighth and Fourteenth Amendment rights of men housed in Alabama state prisons by failing to:  (1) provide reasonable safety from prisoner-on-prisoner violence and sexual abuse; (2) protect prisoners from the use of excessive force by security staff; and (3) provide safe conditions of confinement.  (*See* Doc. 1, ¶ 1). Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  (Docs. 20 & 21).  Despite a detailed Complaint containing factual allegations that sufficiently and clearly describe systemic practices that violate the Constitution, highlighted by illustrative examples, Defendants claim they cannot "understand" the United States' claims.  (*See* Doc. 21, p. 7-8). Defendants' lack of understanding is not plausible or actionable given the content of the United States' Complaint that lays out Defendants' failure to abide by their obligations to provide reasonable safety for the individuals incarcerated in Alabama's prisons for men.

This Court should deny Defendants' Motion because, as detailed below, the United States' Complaint fully complies with all CRIPA requirements and facially pleads a plausible claim for relief by putting Defendants on notice of the claim against them and providing more than enough factual allegations to meet pleading requirements.

## II.    FACTUAL BACKGROUND

In 2016, the United States notified Defendants that it had opened a CRIPA investigation into whether the conditions in Alabama's prisons for men were constitutional.  (Doc. 1, at ¶ 32). In April 2019, the United States issued a findings report ("April 2019 Notice") notifying Defendants that it had reasonable cause to believe that Defendants routinely violate the constitutional rights of prisoners housed in Alabama's prisons for men by failing to protect

them from prisoner-on-prisoner violence and sexual abuse, and by failing to provide reasonably safe conditions.  (Doc. 1, ¶¶ 2, 34).  The April 2019 Notice included detailed examples of these violations spanning all of Alabama's prisons for men.  After the April 2019 Notice and through most of 2020, the United States engaged in many rounds of negotiations with Defendants attempting to agree on measures to remedy these serious issues but reached impasse on critical matters.  Defendants failed or refused to correct the unconstitutional problems.  (Doc. 1, ¶ 3).

In July 2020, the United States issued a supplemental findings report ("July 2020 Notice") notifying Defendants that the United States had reasonable cause to believe that there is pattern or practice of the use of excessive force by correctional officers in Alabama's prisons for men.  (Doc. 1, ¶¶ 4, 35).  Meanwhile, Defendants let dangerous and unconstitutional conditions continue to persist within Alabama's prisons and, for some conditions, let them get worse.  (Doc. 1, ¶¶ 5-6, 37-105).  This harm is caused by many contributing factors under Defendants' direct control, including understaffing, overcrowding, insufficient prisoner supervision, failure to adequately prevent or respond to instances of excessive force, lack of contraband controls, insufficient prisoner classification policies, and inadequate facility conditions, and the Defendants' failure to take reasonable remedial actions to address the deficiencies.  (Doc. 1, ¶¶ 5-7, 37-105).

III.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  That rule must be read alongside Rule 8, which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To resist a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ray v. Spirit Airlines, Inc.*, 836 F.3d

1340, 1347-48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that "succeeds in identifying facts that are

suggestive enough to render [elements of a claim] plausible" will survive a motion to dismiss.

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at

556) (internal quotation marks omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the

allegations in the complaint and construes the allegations in the light most favorable to the

plaintiff.  *See Brophy v. Jiangbo Pharms. Inc*., 781 F.3d 1296, 1301 (11th Cir. 2015).  If the

pleading "contain[s] enough information regarding the material elements of a cause of action to

support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard.

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir.

2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir.

2001)).

## IV.    ARGUMENT

The United States fully satisfied CRIPA's requirements for filing suit.  Defendants

make multiple misplaced arguments attacking the statewide scope of claim and attempting to

add pleading requirements, but their arguments conflict with CRIPA's statutory text and case

law interpreting the statute.  This Court should reject these arguments and reaffirm that CRIPA

authorizes statewide actions involving multiple facilities and that the statute does not require

any heightened pleading standard or evidentiary burden.

Beyond complying with CRIPA, the Complaint facially pleads a plausible and detailed claim for relief.  In 89 detailed paragraphs, the Complaint makes factual allegations that sufficiently and clearly state a claim that Defendants violate the Eighth and Fourteenth Amendment rights of men in Alabama prisons by failing to provide reasonable safety from prisoner-on-prisoner violence and sexual abuse, by failing to protect prisoners from the use of excessive force by security staff, and by failing to provide safe conditions of confinement.

Finally, the United States' allegations and claim for relief regarding Defendants' unconstitutionally dangerous understaffing are not precluded by the *Braggs* case that seeks similar relief.  The existence of a separate, private action does not eliminate or diminish the United States' separate and independent claim to vindicate the public interest.

### A.  The United States' Claim and Complaint Fully Comply with CRIPA.

#### (1)  CRIPA authorizes an action against systemic statewide pattern or practice violations.

Congress gave the United States CRIPA "authority because of the inability of private litigants to marshall the resources to mount an adequate attack against system-wide abuse in violation of the rights and protections guaranteed by the Constitution of the United States." *United States v. Cty. of San Diego*, No. 91-0764-R(M), 1991 WL 642768, at *1 (S.D. Cal. July 22, 1991).  Despite CRIPA's broad pattern or practice authority, Defendants wrongly label statewide CRIPA suits concerning multiple facilities as "unprecedented," (Doc. 21, p. 1), and imply that CRIPA does not authorize an action against more than one institution in the same suit. (Doc. 21, pp. 4-5).

Nothing in CRIPA's text or structure imposes this purported limitation.  To the contrary, the statute specifically contemplates a suit against "a State" itself for a "pattern or practice" of violations, rather than just against the institution or institutions at issue.  42 U.S.C. § 1997a(a).

And the required CRIPA certification further supports the United States' authority to pursue statewide actions.  Before filing a case, the Attorney General must certify that the United States provided pre-notice of the investigation and potential lawsuit not only to the "director of the institution," but also simultaneously to the "Governor" and "attorney general" of the State.  42 U.S.C. § 1997b(a).  Similarly, the certification requires the United States to make a "reasonable good faith effort to consult with the Governor . . . and attorney general . . . and the director of the institution," regarding "financial, technical, or other assistance which may be available from the United States and which the Attorney General believes may assist in the correction of such conditions and pattern or practice of resistance."  *Id.* § 1997b(a)(A).

Pursuant to this broad grant, the United States can and has brought statewide pattern or practice claims concerning multiple facilities.  More recent examples include the United States' statewide CRIPA action in this Circuit against Georgia regarding seven state psychiatric hospitals.  Amended Compl. at Ex. A, *United States v. Georgia*, No. 1:09-CV-119-CAP (N.D. Ga. Jan. 10, 2011), Doc. 53.[1]  The United States also recently successfully litigated a CRIPA action asserting statewide ADA violations at all state psychiatric hospitals in Mississippi.  Compl. ¶¶ 17, 19-20, 24-27, *United States v. Mississippi*, No. 3:16-CV-622-CWR-FKB (S.D. Miss. Aug. 11, 2016), Doc. 1.[2]  Additionally, the United States filed a statewide Complaint against Texas regarding all of Texas's 13 State-Supported Living Centers for individuals with disabilities, resulting in a court-enforceable settlement agreement.  *See United States v. Texas*,

---

[1]  *Available at* https://www.justice.gov/sites/default/files/crt/legacy/2011/01/10/US_v_Georgia_AmdCmplt_01-28-10.pdf.

[2]  *Available at* https://www.justice.gov/crt/case-document/united-states-v-mississippi-complaint.

No. 1:09-CV-490 (W.D. Tex. 2009), Docs. 1 & 2.[3]  Indeed, the *Erie* case cited by Defendants (at Doc. 21, pp. 6, 11-12) involved two facilities.  *United States v. Erie Cty., N.Y.*, 724 F. Supp. 2d 357, 360 (W.D.N.Y. 2010).

Moreover, the United States has been successfully bringing these statewide CRIPA cases for decades.  In 1997, for example, the United States filed a CRIPA suit against the Commonwealth of Puerto Rico regarding constitutional violations occurring at multiple juvenile correctional facilities across the Commonwealth, resulting in a court-enforceable settlement agreement.  *See United States v. Puerto Rico*, No. 94-cv-2080, 2007 WL 1119336, at *1-2 (D.P.R. Apr. 10, 2007).  And back in 1984, the United States brought a CRIPA action against Michigan concerning unconstitutional conditions at multiple state prisons, resulting in a consent decree.  *See United States v. Michigan*, 680 F. Supp. 928, 1028 (W.D. Mich. 1987).

Defendants' argument would seemingly require the United States and Defendants to waste time and resources on multiple overlapping investigations and lawsuits for each of the 13 prisons.  Defendants' suggested limitation that CRIPA only permits individual lawsuits would also strain judicial resources.  Ultimately, CRIPA's grant of broad pattern or practice authority against a state itself permits the United States' alleged statewide violation here.

### *(2) CRIPA does not impose a heightened pleading standard or evidentiary burden.*

Congress enacted CRIPA to ensure that the United States has standing to file suit to vindicate the existing federal rights of institutionalized persons.  *See Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 507-08 (1982); *United States v. Oregon*, 839 F.2d 635, 636-37 (9th Cir. 1988); *Erie Cty., N.Y.*, 724 F. Supp. 2d at 366.  Because the statute simply confers

---

[3] *Available at* https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/TexasStateSchools_cmplt_06-26-09.pdf, and https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/TexasStateSchools_settle_06-26-09.pdf.

standing, CRIPA does not require additional proof beyond the ultimate proof of the violation of federal rights, and does not impose heightened pleading standards.  Despite this, Defendants urge this Court to impose additional pleading and evidentiary burdens regarding:  flagrant conditions; the Attorney General's pre-suit certification; and remedial measures.  These proposed heightened requirements, however, have no basis in CRIPA's text or precedent.

### (a) CRIPA does not require heightened proof of "egregious and flagrant" conditions.

CRIPA is a standing statute that gives the United States discretion to sue for equitable relief when the Attorney General determines that he "has reasonable cause to believe" that prisoners are being subjected to "egregious or flagrant" conditions that violate their constitutional rights and believes that these violations are pursuant to a "pattern or practice" of resistance to prisoners' constitutional rights. 42 U.S.C. § 1997a(a).  When filing suit, CRIPA also requires the Attorney General to certify personally that the United States has complied with preconditions such as notice to Defendants of the constitutional violations, corrective measures, and attempts to secure voluntary compliance.  42 U.S.C. § 1997b.  Here, the Attorney General certified that he complied with these preconditions and that he had "reasonable cause to believe" that Defendants were subjecting prisoners to egregious and flagrant conditions. (Doc. 1, p. 24) (certifying all reasonable cause factors in 42 U.S.C. § 1997a).

Defendants suggest that a CRIPA claim must meet a heightened burden of proving "egregious or flagrant" conditions.  (*See* Doc. 21, pp. 4-5, 12, 14).  But CRIPA's reference to "egregious or flagrant" conditions refers to the factors the Attorney General should consider in exercising discretion to bring the suit; it does not establish the standard the United States must allege and prove at trial.  Courts have found that "the plain and unambiguous terms of the statute" make egregious conditions and the other factors in "§ 1997a(a) appl[icable] only to the

Attorney General's reasonable cause determination." *Erie Cty., N.Y.*, 724 F. Supp. 2d at 366 (citing *United States v. Pennsylvania,* 902 F. Supp. 565, 578-79 (W.D. Pa. 1995) (finding § 1997a(a) contains the factors for the Attorney General's reasonable cause determination)).

The egregious conditions and the other factors in § 1997a(a) "are not, as Defendants argue, elements that must be alleged or proven in a CRIPA action." *Erie Cty., N.Y.*, 724 F. Supp. 2d at 366.   Rather, they are part of the Attorney General's discretionary reasonable cause determination that is not subject to judicial review.  *Id.* ("Although Defendants vehemently disagree with the Attorney General's conclusion that a CRIPA action is warranted, this Court is not authorized to look behind it—the Attorney General's certification is unreviewable.") (citing *United States v. New York*, 690 F. Supp. 1201, 1204 (W.D.N.Y. 1988)).

Once the Attorney General has elected to exercise his "prosecutorial discretion to determine when an action under the CRIPA is necessary to correct constitutional violations," *id.*, the United States simply must allege and prove the constitutional violations.  *Pennsylvania*, 902 F. Supp. at 579-80 ("Because CRIPA was enacted to provide standing for the Attorney General to initiate civil rights actions on behalf of institutionalized persons, the 'essential elements' that the United States must prove are the same as in any civil rights action.) (citing *United States v. Pennsylvania*, 863 F. Supp. 217, 220 (E.D. Pa. 1994) ([T]he United States has no greater standard of proof in any case brought under CRIPA than an individual plaintiff would bear in a case alleging the same illegal conduct on the part of a state.")); *see also Messier v. Southbury Training Sch.*, 916 F. Supp. 133, 137 n.2 (D. Conn. 1996).  Accordingly, Defendants' suggestion that the United States must meet a heightened burden of proving "egregious or flagrant" conditions has no basis in law.

> **(b) The Attorney General's pre-suit CRIPA certification is not subject to judicial review.**

Defendants ask this Court to review the evidence supporting the Attorney General's certification that CRIPA's pre-suit conditions have been met.  Defendants purport to challenge the Attorney General's certification that the United States has encouraged Defendants to correct the constitutional violations through conciliation and determined that Defendants' have had a reasonable amount of time to correct the violations voluntarily before the suit;[4] but Defendants concede the case law runs against their challenge.  (Doc. 21, pp. 6-7 & n.3); *see also* 42 U.S.C. § 1997b(a)(2).  By its plain terms, CRIPA does not require the United States to prove in court that it satisfied the pre-suit certification requirements.  Rather, the statute requires only that "the Attorney General shall certify to the court" that the United States satisfied those requirements. 42 U.S.C. § 1997b(a).

Courts have repeatedly rejected Defendants' argument and found that "the Attorney General's certification is unreviewable" because "Congress left it to the Attorney General's prosecutorial discretion to determine when an action under the CRIPA is necessary to correct constitutional violations."  *Erie Cty., N.Y.*, 724 F. Supp. 2d at 366; *see also United States v. Illinois*, 803 F. Supp. 1338, 1340-41 (N.D. Ill. 1992); *New York*, 690 F. Supp. at 1204-05 (refusing to review certification even though court doubted United States' settlement efforts); *United States v. Oregon,* No. CIV. 86-961LE, 1987 WL 39761, at *4 (D. Or. Apr. 8, 1987); *accord Messier*, 916 F. Supp. at 137 n.2.

---

[4]  At the same time, Defendants concede that the United States notified Defendants of the CRIPA investigation in 2016, notified Defendants of the United States' findings of constitutional violations in April 2019 and July 2020, and has unsuccessfully "engaged in multiple rounds" settlement negotiations since the spring of 2019.  (Doc. 21, p. 10).  Regardless, CRIPA's pre-suit certification specifically gives the Attorney General unqualified discretion to determine when he "*is satisfied* that the appropriate officials have had a reasonable time to take appropriate action to correct such conditions."  42 U.S.C. § 1997b(a)(2)(C) (emphasis added).

### *(c)  CRIPA does not require detailed allegations of remedial measures.*

The Complaint makes a specific demand for an order that requires Defendants "to take such actions as will ensure constitutional conditions of confinement are afforded to prisoners in Alabama's prisons for men."  (Doc 1, ¶ 111); *cf.* 42 U.S.C. § 1997a (providing discretion to bring civil action for "such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such [constitutional] rights, privileges, or immunities").  The Complaint also specifically incorporates the certification that the United States previously provided Defendants notice of the "the minimum measures which the Attorney General believes may remedy the alleged conditions and the alleged pattern or practice of resistance," as 42 U.S.C. § 1997b(a)(1)(C) requires.  (*See* Doc. 1, ¶ 11 & p. 24). Despite this, Defendants incorrectly imply that the Complaint should have pleaded a detailed recitation of the particular "minimum corrective measures" necessary to correct the violations. (Doc. 21, p. 11).[5]  As noted above, CRIPA does not require heightened pleading, and the Complaint's demand for relief complies fully with the pleading rules.

While Rule 8(a)(3) requires some "demand for the relief sought," the Complaint's demand otherwise does not factor into the sufficiency of the claim, a motion to dismiss, or the potential remedies this Court ultimately may order.  Rule 54(c) counsels that "final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."  *See also, e.g.*, *Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F.2d 317, 320 (5th Cir. 1964) ("The District Judge apparently thought that the

---

[5]  At the same time, Defendants claim that the Complaint seeks to impose "best policies and practices."  (Doc. 21, p. 15-16).  The purported "best" practices that Defendants cite appear not in the demand for relief, but rather as allegations concerning, among other things, Defendants' knowledge of and deliberate indifference to harmful conditions.

pleadings limited the scope of available relief, and if that formally sought was not allowable none could be granted.  This is not the law.").

"Thus, the only issue on a motion to dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded." *Zurich Am. Ins. Co. v. S. Owners Ins. Co.*, No. 3:15–cv–01041, 2018 WL 1071939, at *3 (M.D. Fla. Feb. 26, 2018) (citations omitted); *see also* 5 Wright & Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016) ("[I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court."); *Moore's Federal Practice*, Vol. 2, § 12.34[1][b] (3d ed. 2014) ("[C]ourts will not dismiss for failure to state a claim merely because the complaint requests inappropriate relief.").

For the reasons outlined above, the United States' demand for relief is more than sufficient.  But in any event, Defendants' argument related to insufficient requests for relief should be rejected because that issue is irrelevant to Rule 12(b)(6) motions to dismiss and to whether the Complaint pleaded a claim.

## B.  The Complaint Facially Pleads a Plausible and Detailed Claim.

This Court should deny the motion to dismiss for failure to state a claim because the Complaint's factual allegations sufficiently and clearly state a claim that Defendants violate the Eighth and Fourteenth Amendment rights of men in Alabama prisons.  In particular, Defendants violate these constitutional rights by failing to provide reasonable safety from prisoner-on-prisoner violence and sexual abuse, by failing to protect prisoners from the use of excessive force by security staff, and by failing to provide safe conditions of confinement.

### *(1) The United States' Complaint Clearly Notifies Defendants of the Claim Against Them.*

The United States Complaint meticulously details the Defendants' pattern or practice of violating prisoners' constitutional rights in 89 paragraphs.  (Doc. 1, ¶¶ 16-105).  The Complaint also organizes these many detailed facts under subject headings for "prisoner-on-prisoner violence," "prisoner-on-prisoner sexual abuse," "excessive force on prisoners," lack of "safe and sanitary conditions," and Defendants' "deliberate[ ] indifferen[ce] to the serious risk of substantial harm" in their prisons.  (Doc. 1, ¶¶ 16-105).

Defendants argue that this level of detail amounts to a "shotgun pleading" that "fails to put the State on notice of the claims against or enable the State to craft a meaningful responsive pleading" in violation of Federal Rule of Civil Procedure 8.  (Doc. 21, p. 7); *see also Weiland v. Palm Beach Cty Sherriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (explaining meaning of "shotgun pleading").  Defendants' primarily accuse the United States of "failing to separate different causes of action and claims for relief" and "relying upon conclusory and vague allegations." (Doc. 21, pp. 7-8).

But in making their argument, Defendants ignore that the Complaint clearly states a single count against both Defendants, (Doc. 1, ¶¶ 106-09), and also fail to acknowledge that the Complaint's *first* paragraph clearly articulates the overall claim:  Defendants violate "the Eighth and Fourteenth Amendment rights of these prisoners by failing to prevent prisoner-on-prisoner violence and sexual abuse, by failing to protect prisoners from the use of excessive force by security staff, and by failing to provide safe conditions of confinement."  (Doc. 1, ¶ 1).

The Complaint also helpfully and distinctly outlines each allegation, such as the failure to prevent prisoner-on-prisoner violence, in a separate heading and provides illustrative facts supporting each allegation in the accompanying section.  The result is an organized Complaint

that plainly allows Defendants and this Court to "determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland*, 792 F.3d at 1320 (internal quotation marks omitted).  In fact, the United States' Complaint provides more than "a short and plain statement of the claim," Fed. R. Civ. P. 8(a), by putting forth 89 paragraphs of detailed factual allegations, which accepted as true, state a plausible claim that Defendants are engaging in a pattern or practice of violating the Eighth and Fourteenth Amendments.

Paradoxically, Defendants argue that they were not given adequate notice of the United States' claim while also framing a response to that claim in their motion.  *See Sledge v. Goodyear Dunlop Tires N. Am. Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading.").  In fact, Defendants obviously understood the United States' claim because they attempted to specifically dispute each allegation.  (Doc. 21, pp. 13-15).  Thus, the Complaint, by definition, is not a shotgun pleading.

### (a) The language Defendants contend is vague is an appropriate and accurate description of the constitutional violations at issue and the systemic patterns of action that contribute to the violations.

Defendants argue that the purportedly "vague and illusory language" in the Complaint prevents Defendants from understanding the allegations against them and simultaneously fails to make an adequate pattern and practice claim.  (Doc. 21, pp. 2, 8-9).  In making this argument, Defendants assert that quantitative adjectives like "sometimes," "routinely," "many," "frequently," "often", and "widespread" are impermissibly vague descriptions.  (Doc. 21, p. 8). But Defendants ignore the majority of the factual allegations made in the Complaint.  The Complaint directly alleges that Defendants systemically fail to, for example:  (1) protect

13

prisoners from physical harm and/or death by homicide, (Doc. 1, ¶ 37); (2) fail to provide

adequate supervision, (Doc. 1, ¶ 46); (3) fail to prevent the introduction of contraband, (Doc. 1,

¶ 56); (4) fail to prevent uncontrolled movement of prisoners, (Doc. 1, ¶ 63); and (5) fail to

implement meaningful accountability measures whenever uses of force occur. (Doc. 1 ¶ 89).

      The language Defendants challenge as "vague" comes from cherry-picked examples that

the United States provided to illustrate its assertions.  For instance, the United States alleges

that Defendants systemically fail to protect prisoners from harm due to prisoner-on-prisoner

violence.  (Doc. 1, ¶¶ 37, 53).  A contributing factor to this lack of protection is lax supervision.

(Doc. 1, ¶ 54).  "Often" that lax supervision is exhibited by security staff failing to observe

violent incidents but "sometimes" it is exhibited by security staff watching the incident unfold

and not intervening.  (Doc. 1, ¶¶ 54-55).  It would be inaccurate to allege that it always occurs

one way or the other.  The Complaint clearly alleges that the United States found patterns both

of failure to supervise and failure to intervene when it would have been appropriate to do so.

      For another example, the United States alleges that Defendants "fail to prevent the

introduction of contraband, which leads to sexual abuse."  (Doc. 1, ¶ 70).  The United States'

additional support for that statement is that prisoners "routinely" subject other prisoners to

sexual abuse when the victim fails to pay a contraband debt and "many" prisoners report

suffering sexual abuse after being drugged. (Doc. 1, ¶ 70).  The use of "routinely" and "many"

highlights the pervasiveness of the problem.  This language puts Defendants on notice that the

United States believes these unconstitutional conditions are systemic and pervasive throughout

Alabama's prisons for men.

### (b)  The Complaint clearly identifies which facilities are at issue.

Defendants' claim that the Complaint does not make clear which facilities are covered by the allegations is baseless.  (*Cf.* Doc. 21, pp. 1-2, 10).  The Complaint is clear that the unconstitutional conditions exist throughout Alabama's prisons for men and helpfully defines "Alabama prisons for men" on the first page of the Complaint to include all major Alabama men's correctional facilities.  (Doc. 1, ¶ 1 n.1).  Thus, when the Complaint makes allegations such as Defendants "fail to prevent introduction of contraband," (Doc. 1, ¶ 56), the United States is clearly alleging that this conduct occurs at all of Alabama prisons for men, as defined by the Complaint.  In fact, the Complaint specifically excludes one facility, Hamilton Aged & Infirmed, from the allegation that Defendants fail to prevent use of excessive force.  (Doc. 1, ¶ 4).  This makes clear that the United States means for the remaining allegations to apply to all the facilities without exception.

### (c)  The Complaint sufficiently alleges a pattern or practice claim.

The Defendants also seemingly assert that the United States, by failing to include specific examples or every type of harm from every facility in the Complaint, fails to make a proper pattern or practice claim.  (Doc. 21, pp. 2-3, 10).  In support, Defendants sweepingly state that the Complaint "foregoes the traditional approach of outlining specific bases for Plaintiff's claim against each male prison."  (Doc. 21, p. 1).  Defendants cite no case or authority to explain why or how this is "tradition."  In reality, the United States is not required to include specific and individual examples from every single facility for every single allegation in the Complaint and Defendants point to no authority requiring such an obligation.  The Complaint contains a "short and plain statement of the facts," pleading sufficient factual allegations to state a plausible claim that Defendants fail to protect prisoners from violence,

15

death, and sexual abuse, use of excessive force, and safe conditions and that this failure is systemic across Alabama's prisons for men.

When discussing the "pattern or practice" standard of § 1997a(a), CRIPA's legislative history envisioned proof that "the unlawful act by the defendant was not an isolated or accidental departure from an otherwise lawful practice."  Conf. Rep. at 12, U.S. Code Cong. & Admin. News 1980 at 836.  This standard aligns with the Supreme Court's recitation of what constitutes a pattern or practice for civil rights statutes.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (finding a "pattern or practice" exists where a case involves more than an isolated, accidental, or a peculiar departure from otherwise unlawful practice).  Put another way, the government must "establish by a preponderance of the evidence that . . . [violating federal law] was . . . the regular rather than the unusual practice."  *Bazemore v. Friday*, 478 U.S. 385, 398 (1986) (*quoting Teamsters*, 431 U.S. at 336).

The United States' allegations properly show that the Defendants' misconduct is the regular practice, and not just an isolated or accidental departure from an otherwise lawful practice.  In fact, the Complaint's use of the quantifying language that Defendants chiefly criticize—such as "routinely," "often," "frequently" and "many"—supports a pattern or practice claim by making clear that Defendants' misconduct did not occur in isolated or accidental incidents.  Rather, the misconduct "routinely" or "frequently" occurs across *all* of Alabama's prisons for men.  For these reasons, the United States' Complaint clearly puts Defendants on notice of the scope of its claim and contains sufficient factual allegations to plausibly support a pattern or practice claim.

**(2) *The Facts Alleged in the United States' Complaint State a Constitutional Violation.***

Defendants also err in contending that the Complaint "fails even to tie any of its purported[6] examples to a constitutional violation at all." (Doc. 21, p. 13). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Eighth Amendment's ban on cruel and unusual punishments applies to the "treatment a prisoner receives in prison and the conditions under which he is confined." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). It also requires that Defendants "take reasonable measures to guarantee the safety" of all prisoners. *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The United States' Complaint sets forth in great detail the facts supporting its claim that Defendants are violating the Eighth Amendment by failing to keep prisoners safe from physical and sexual violence, excessive force, and to provide safe conditions of confinement. (Doc. 1, ¶ 1).[7] These allegations, if proved, entitle the United States to relief.

---

[6] In their motion to dismiss, Defendants repeatedly make statements about the United States' "purported" facts and examples. Use of the word "purported" intentionally implies those facts and examples are not necessarily true. Defendants seem to ignore that, when evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc*., 781 F.3d 1296, 1301 (11th Cir. 2015).

[7] Defendants point this Court to the United States' CRIPA complaint against Erie County, (Doc. 21, p. 11), where that court found the complaint technically complied with the pleading rules but required the United States to amend its complaint with more detail. *United States v. Erie Cty., NY*, 724 F. Supp. 2d 357, 367 (W.D.N.Y. 2010). That *Erie* complaint, however, limited its factual allegations to *seven* paragraphs and relied heavily on incorporating the United States' findings report. *See* Compl. ¶¶ 17-24. *Erie Cty., N.Y.*, No. 1:09-cv-00849-WMS (W.D.N.Y. Sept. 30, 2009), Doc. 1, *available at* 2009 WL 3290598. Here, the United States references, but does not rely on, its findings reports; rather the Complaint sets forth detailed factual allegations in 89 paragraphs. (Doc. 1, ¶¶ 16-105).

> ### (a) The Complaint provides factual support for its claim of a pattern or practice of unconstitutional risk of prisoner-on-prisoner violence.

The United States' Complaint states a claim for a constitutional violation based on Defendants' failure to protect prisoners from the risk of prisoner-on-prisoner violence. Defendants first contend that "the mere existence of inmate-on-inmate violence does not automatically represent a constitutional violation." (Doc. 21, p. 13). In support, Defendants cite 42 U.S.C. § 1983 cases brought by individual prisoners and involving single incidents. (Doc. 21, p. 13). Defendants' argument misses the point. The Complaint is alleging a pattern or practice of failing to keep prisoners reasonably safe from harm. The Complaint includes many facts that illustrate the pattern. The most obvious evidence of the systemic harm is the high number and continuation of deaths by homicide within the Defendants' facilities. At least[8] 23 prisoners were killed by homicide in 2019 and in the first sixth months of 2020. (Doc. 1, ¶¶ 41-42). Ten men were killed by homicide in 2018 and that year Alabama had the highest homicide rate in the nation for a state prison system. (Doc. 1, ¶¶ 39-40); *cf. Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) ("[A]n excessive risk of inmate-on-inmate violence . . . creates a substantial risk of serious harm") (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014))). The United States alleges and supports a pattern of unconstitutional risk of harm from prisoner-on-prisoner violence.

> ### (b) The Complaint provides factual support for its claim that there is a pattern or practice of excessive force in Defendants' facilities.

The Complaint specifically alleges that Defendants have engaged in a "pattern or practice" of using excessive force by using force "disproportionate to the amount of resistance

---

[8] The true numbers of deaths by homicide is likely higher because, as the United States alleges, Defendants do not "accurately classify the causes of death that occur within Alabama's prisons for men." (Doc. 1, ¶ 52).

encountered" and "to punish or retaliate," by using chemical spray inappropriately, and by deliberatively provoking physical confrontations that use force. (Doc. 1, ¶ 87). The Complaint also includes factual allegations of injuries and death caused by excessive use of force. (Doc. 1, ¶¶ 78-81).

These factual allegations support claims that the force was not applied "in a good-faith effort to maintain or restore discipline" or instead was administered "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002) (holding that "the Eighth Amendment violation is obvious" when subjecting a prisoner to "unnecessary pain" after any "safety concerns had long since abated"); *Johnson v. Conway*, 688 F. App'x 700, 707 (11th Cir. 2017) ("A constitutional violation occurs where 8 prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased."); *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010) ("[W]here chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement."). The factual allegations plausibly give rise to the United States' claim that excessive force is a systemic problem in Alabama's prisons for men.

### (c) *The Complaint provides factual support for its claim that the Defendants fail to provide reasonably safe conditions.*

The Complaint makes obvious that unsafe conditions such as understaffing, overcrowding, broken locks, broken cameras, and unprotected perimeters create a substantial safety risk and contribute to the violence present in Alabama's prisons for men. (Doc. 1, ¶¶ 92-95). Indeed, the Eleventh Circuit has found a substantial risk of harm where prisoners were housed in conditions that included routine understaffing, dysfunctional locks on cell doors, and the ready availability of homemade weapons. *See Marsh v. Butler Cty.*, 268 F.3d 1014, 1029-

30, 1034 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "[P]rison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The factual allegations in the Complaint that there is excessive and widespread death, violence, physical harm, and sexual abuse state a plausible claim that these conditions involve the wanton and unnecessary infliction of pain.

Likewise, the facts in the Complaint sufficiently allege that by failing to prevent the introduction of weapons and drugs, Defendants are not taking reasonable measures to guarantee safe conditions.  (Doc. 1, ¶¶ 57-58).  The Eighth Amendment's ban on cruel and unusual punishments requires that Defendants "take reasonable measures to guarantee the safety" of all prisoners.  *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 468 U.S. at 526-27).  "[Prison officials] must prevent, so far as possible, the flow of illicit weapons into the prison."  *Hudson*, 468 U.S. at 527.  The Complaint alleges that Defendants fail to prevent the introduction of contraband into Alabama's prisons for men and to adequately screen entrants, resulting in unfettered access to dangerous weapons and illegal drugs.  (Doc. 1, ¶¶ 56-58).  This failure contributes to the high rate of violence and sexual abuse in Alabama's prisons for men.  (Doc. 1, ¶¶ 57-58).

### (d)  The Complaint provides factual support for its claim that the Defendants are deliberately indifferent to the risk of harm.

The United States also alleges that Defendants have been deliberately indifferent to that violence because Defendants were put on notice[9] of the dangerous and unconstitutional

---

[9]  This notice was provided by the April 2019 Notice, the July 2020 Notice, public reporting, other lawsuits, and Defendants own public statements.  *See, e.g.*, *Prison System Seeks Money to Hire More Officers*, Associated Press (Jan. 23, 2020) (Commissioner Dunn "told lawmakers that the state continues to struggle with unacceptably high

conditions and failed or refused to correct them.  (Doc. 1, ¶¶ 102-05).  These facts, if true, plausibly state a claim for deliberate indifference.  *See Farmer*, 511 U.S. at 837, 842 (finding deliberate indifference requires that officials know of and disregard an excessive risk to prisoner health or safety and a court may conclude that "a prison official knew of a substantial risk from the very fact that the risk was obvious").

It is disingenuous for Defendants to claim they have no notice of these claims when Governor Kay Ivey stated in her most recent State of the State address that "[o]ne of the most critical issues facing our state is the dire condition of our prisons."  The Office of the Alabama Governor, *State of the State Address* (2021).[10]  Similarly, when the United States filed this Complaint, ADOC Commissioner Jeff Dunn pointed out that "[t]wo of the broad concerns described in the Complaint are well-known by all:  staffing challenges and dilapidated facilities."[11]  Alabama Department of Corrections, *ADOC Statement on DOJ Lawsuit* (Dec. 10, 2020).[12]  The Complaint provides plausible factual support that Defendants are systemically

---

violence because of the combination of overcrowding, understaffing and contraband."), at https://www.apr.org/post/prison-system-seeks-money-hire-more-officers.

[10] Available at https://governor.alabama.gov/newsroom/2021/01/governor-iveys-state-of-the-state-address-2/.

[11] Defendants are also aware that Alabama's prisons are dangerously overcrowded and that such conditions are likely to continue.  Indeed, recent public reporting indicates that, because of COVID-19 protocols, thousands of prisoners are in county jails while they await intake into ADOC's custody.  *See* Eric Graves, *Madison County Commission Chairman calls out ADOC, ADOC Commissioner blames COVID-19 and Federal Court Order*, WAFF 48 (Jan. 19, 2021), at https://www.waff.com/2021/01/19/madison-county-commission-chairman-calls-out-adoc-adoc-commissioner-blames-covid-federal-court-order/; Tiffany Thompson, *COVID-19 impacting DOC picking up inmates*, WAFF 48 (Jan. 8, 2021), at https://www.waff.com/2021/01/08/covid-impacting-doc-picking-up-inmates/; Ashley Remkus, *Alabama inmates sleep on floors as jails overcrowded: 'It's inhumane.'*, AL.com (Dec. 18, 2020), at https://www.al.com/news/2020/12/alabama-inmates-sleep-on-floors-as-jails-overcrowd-its-humane.html.  ADOC's public reporting shows that in December 2020, 3,844 ADOC prisoners were being held in county jails, while 2,041 were "programmed for transfer from county to an ADOC facility."  *See ADOC Monthly Statistical Report for December 2020*, at http://www.doc.state.al.us/docs/MonthlyRpts/December%202020.pdf.  In contrast, in December 2019, 2,565 ADOC prisoners were housed in county jails and only 560 programmed for transfer.  *See ADOC Monthly Statistical Report for December 2019*, at http://www.doc.state.al.us/docs/ MonthlyRpts/DMR%2012%20December%202019PUB.pdf.

[12] Available at http://www.doc.state.al.us/NewsRelease?article=ADOC+STATEMENT+ON+THE+DOJ%27S+LAWSUIT.

violating the Eighth Amendment and, despite knowing of these violations, disregarded prisoner safety by failing to address the unconstitutional conditions.

**C.  The *Braggs* Case Does Not Preclude the United States' Independent Claim to Vindicate the Public Interest.**

Defendants ask this Court to preclude the United States from pursing its own independent claim for relief related to staffing because an on-going class action, *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1181 (M.D. Ala. 2017), also addresses Defendants' dangerous understaffing of prisons.  (Doc. 21, pp. 17-19).  This argument not only ignores the United States' distinct role in vindicating the public interest but it also fails to consider that the United States' Complaint focuses on claims not raised in the *Braggs* litigation.

Defendants complain of potentially overlapping relief and point to inapposite cases concerning individual prisoners seeking relief outside of a prisoner class action.  (Doc. 21, p. 18).  The United States stands in different shoes than private plaintiffs because it seeks to vindicate the general public's interest.  The Supreme Court accordingly has found that "the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree."  *United States v. Borden Co.*, 347 U.S. 514, 519 (1954); *see also Gen. Tel. Co. of the Nw. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 326 (1980) ("[T]he EEOC is not merely a proxy for the victims of discrimination" and its "enforcement suits should not be considered representative actions"; "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.").

The Eleventh Circuit has also reiterated the "well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests."  *Herman v. S. Carolina Nat'l*

22

*Bank,* 140 F.3d 1413, 1425 (11th Cir. 1998) (finding a "general principle that a private plaintiff's prior litigation does not bar the government's action.").  "This principle is based primarily upon the recognition that the United States has an interest in enforcing federal law that is independent of any claims of private citizens." *Id.* (quoting *United States v. E. Baton Rouge Par. Sch. Bd.,* 594 F.2d 56, 58 (5th Cir. 1979)).  Moreover, "any contrary rule would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention." *Herman*, 140 F.3d at 1425 (quoting *E. Baton Rouge Par. Sch. Bd.,* 594 F.2d at 58).

  In *Borden*, the Supreme Court specifically addressed the same potentially duplicative injunctive relief issue that Defendants object to here.  (*cf.* Doc. 21, pp. 18-19).  The Court found that, even if duplicative, the United States could still seek relief because of "the prime object of civil decrees secured by the Government—the continuing protection of the public, by means of contempt proceedings, against a recurrence of [ ] violations."  347 U.S. at 517-19.  The *Borden* Court further reasoned that "[s]hould a private decree be violated, the Government would have no right to bring contempt proceedings to enforce compliance" or object to modifications or dismissal of the injunction.  *Id.* at 519.  For these reasons, "it is likely that the public interest would not be adequately protected by the mere existence of the private decree." *Id.*

  Here, CRIPA's text itself leaves no doubt that the United States is functioning in its general public interest role.  Congress particularly required the Attorney General to certify that a CRIPA action "is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution."  42 U.S.C. § 1997b(a)(3); *see also United States v. Michigan*, 680 F. Supp. 928, 968 (W.D. Mich. 1987)

("[U]nder CRIPA the United States does not represent the inmates directly but rather the public interest in seeing constitutional rights upheld.").

Even if the United States was not functioning in this public interest role and was somehow similar to a private plaintiff, Defendants' preclusion argument still suffers multiple shortfalls.  First, as Defendants concede, the *Braggs* parties are in the process of formulating competing proposals for a final remedial order, concerning Alabama prisons' chronic understaffing, to be entered by the court.  (Doc. 21, pp. 17-18).  And Defendants particularly note that they disagree with the underlying *Braggs* liability finding—and may seek to overturn it.  (Doc. 21, p. 17 n.5).  Additionally, the *Braggs* class action concerns claims by a class of persons with a serious mental illness.  The United States' broader claim in this case may justify a different staffing remedy than the one that has been imposed to cure unconstitutional mental health care in *Braggs*.  Finally, assuming *arguendo* that the scope of the potentially forthcoming *Braggs* injunction mirrored all the staffing-related relief the United States seeks, the United States is not a party to the case[13] or a *Braggs* class action member, and it will have no power to enforce ordered injunctive relief.

Given all these shortfalls, and that "the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree," *Borden Co.*, 347 U.S. at 519, this Court should reject Defendants' argument that the *Braggs* case precludes the United States' independent claim that may also require relief related to understaffing.

---

[13]  As the United States is not a party to the *Braggs* litigation, the *Braggs* staffing decisions have no preclusive effect on the United States' claim and do not foreclose the United States' ability to bring staffing claims in this case.  *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (holding that res judicata gives preclusive effect to a previous judgment only if "the parties, or those in privity with them, [are] identical in both suits [and] the same cause of action is involved in both cases").

V.   **CONCLUSION**

For the reasons outlined above, the United States respectfully requests that this Court

deny Defendants' Motion to Dismiss the Complaint in its entirety.


Respectfully submitted,


PAMELA S. KARLAN                                WILLIAM R. CHAMBERS
Principal Deputy Assistant Attorney General    Acting United States Attorney

STEPHEN H. ROSENBAUM                           LANE H. WOODKE
Chief                                          Chief, Civil Division

KERRY DEAN                                      JASON R. CHEEK
Deputy Chief                                    Deputy Civil Chief


                                               */s Carla C. Ward*
DEENA FOX                                       CARLA C. WARD
GEORGE EPPSTEINER                              Assistant United States Attorney
CURTIS HARRIS                                   United States Attorney's Office
Trial Attorneys                                 Northern District of Alabama
United States Department of Justice             1801 Fourth Avenue North
Civil Rights Division                           Birmingham, Alabama 35203
Special Litigation Section                     (205) 244-2185
950 Pennsylvania Ave, NW                        carla.ward@usdoj.gov
Washington, DC 20530
(202) 258-3036
kerry.k.dean@usdoj.gov


Dated:  February 25, 2021.

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s Carla C. Ward*
CARLA C. WARD
Attorney for the United States
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov