FILED

2021 May-19  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>PLAINTIFF, )<br><br>v. )<br><br>STATE OF ALABAMA and )<br>ALABAMA DEPARTMENT OF )<br>CORRECTIONS, )<br><br>DEFENDANTS. )<br>_____ ) | Civil. No. 2:20-cv-01971-RDP |

## AMENDED COMPLAINT

1.      THE UNITED STATES OF AMERICA brings this action against the State of Alabama

pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997,

to enforce the constitutional rights of persons housed in 13 Alabama state prisons

(Alabama's Prisons for Men).  The State of Alabama and the Alabama Department of

Corrections (collectively, the State or Defendants) violate the Eighth and Fourteenth

Amendment rights of these prisoners by failing to prevent prisoner-on-prisoner violence

and sexual abuse, failing to protect prisoners from the use of excessive force by security

staff,[1] and failing to provide safe conditions of confinement.

2.      On April 2, 2019, the United States, through the U.S. Department of Justice's Civil

Rights Division and the three U.S. Attorney's Offices for the State of Alabama, notified

---

[1] As used in this Complaint, the term "security staff" includes Alabama Department of
Corrections (ADOC) supervisory correctional officers (such as sergeants, lieutenants, captains,
wardens), correctional officers, basic correctional officers, and cube correctional officers.

the State of its findings that, in violation of the Constitution, prisoners housed in Alabama's Prisons for Men are at serious risk of death, physical violence, and sexual abuse at the hands of other prisoners.

3.   On July 23, 2020, the United States notified the State of its findings that, in violation of the Constitution, security staff frequently use excessive force on prisoners housed in all Alabama's major correctional facilities for men, except for the Hamilton Aged & Infirmed Correctional Facility.

4.   The State has failed or refused to correct the unconstitutional conditions in Alabama's Prisons for Men identified by the United States in its April 2019 and July 2020 findings reports.

5.   Since the United States notified the State of its findings, Alabama's Prisons for Men have remained extremely overcrowded, prisoner-on-prisoner homicides have increased, prisoner-on-prisoner violence including sexual abuse has continued unabated, the physical facilities have remained inadequate, use of excessive force by security staff has remained common, and staffing rates have remained critically and dangerously low.

6.   In the two years following the United States' original notification to the State of unconstitutional conditions of confinement, prisoners at Alabama's Prisons for Men have continued daily to endure a substantial risk of serious harm, including death, physical violence, and sexual abuse at the hands of other prisoners.

7.   The unconstitutional conditions are pervasive and systemic across Alabama's Prisons for Men, as indicated by facility-level data and as illustrated by examples of the violence, sexual abuse, excessive force, and unsafe and unsanitary conditions.

8.  The State is deliberately indifferent to the serious and systemic constitutional problems present in Alabama's Prisons for Men.

9.  Beginning after the April 2019 findings report and continuing after the July 2020 findings report, the United States engaged in multiple rounds of negotiations with the State.  The United States has determined that constitutional compliance cannot be secured by voluntary means.  Judicial action is, therefore, necessary to remedy the violations of law identified in the United States' findings reports and to vindicate the rights of the individuals incarcerated in Alabama's Prisons for Men.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

11.  The United States is authorized to initiate this action pursuant to 42 U.S.C. § 1997a(a).

12.  The Attorney General personally signed this amended complaint.  The United States has complied with all the pre-filing requirements specified in 42 U.S.C. § 1997b. The corresponding Attorney General Certificates are appended to this Complaint as Attachment A and are incorporated herein.

13.  Venue in the United States District Court for the Northern District of Alabama is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

14.  Plaintiff is the United States of America.

15.  Defendants are the State of Alabama and the Alabama Department of Corrections (ADOC).

16.  Defendants are responsible for the safety, care, custody, and control of individuals incarcerated in Alabama's Prisons for Men, as well as for the actions of the ADOC staff

and for the actions of any entity or individual contracting and providing services at Alabama's Prisons for Men.

17.    As used in this Complaint, the term "Alabama's Prisons for Men" means Bibb Correctional Facility; Bullock Correctional Facility; Donaldson Correctional Facility; Draper Correctional Facility; Easterling Correctional Facility; Elmore Correctional Facility; Fountain Correctional Facility; Holman Correctional Facility; Kilby Correctional Facility; Limestone Correctional Facility; St. Clair Correctional Facility; Staton Correctional Facility; and Ventress Correctional Facility. The term does not include the Hamilton Aged & Infirmed Correctional Facility.

## FACTS

18.    Bibb Correctional Facility is a medium-security, or Security Level IV, prison for men in Brent, Alabama with a designed capacity of approximately 918 men.

19.    Bullock Correctional Facility is a medium-security, or Security Level IV, prison for men in Union Springs, Alabama with a designed capacity of approximately 919 men.

20.    Donaldson Correctional Facility is a close-security, or Security Level V, prison for men in Bessemer, Alabama with a designed capacity of approximately 968 men, and with an additional approximately 24 spaces designated for prisoners on death row.

21.    Draper Correctional Facility is a medium-security, or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 600 men. In late 2017 and early 2018, following the United States' on-site review of the prison, ADOC decommissioned Draper Correctional Facility. ADOC reopened the facility in a limited capacity in April 2020.

22.     Easterling Correctional Facility is a medium-security, or Security Level IV, prison for men in Clio, Alabama with a designed capacity of approximately 652 men.

23.     Elmore Correctional Facility is a medium-security, or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 600 men.

24.     Fountain Correctional Facility is a medium-security, or Security Level IV, prison for men in Atmore, Alabama with a designed capacity of approximately 831 men.

25.     Holman Correctional Facility is a close-security, or Security Level V, prison for men in Atmore, Alabama with a designed capacity of approximately 581 men, and an additional approximately 56 spaces designated for prisoners on death row.  In January 2020, ADOC decommissioned most of the Holman facility, but continued to hold approximately 306 men at Holman as of February 2021.

26.     Kilby Correctional Facility is a close-security, or Security Level V, prison for men in Mt. Meigs, Alabama with a designed capacity of approximately 440 men.

27.     Limestone Correctional Facility is a close-security, or Security Level V, prison for men in Harvest, Alabama with a designed capacity of approximately 1,628 men.

28.     St. Clair Correctional Facility is a close-security, or Security Level V, prison for men in Springville, Alabama with a designed capacity of approximately 984 men.

29.     Staton Correctional Facility is a medium-security, or Security Level IV, prison for men in Elmore, Alabama with a designed capacity of approximately 508 men.

30.     Ventress Correctional Facility is a medium-security, or Security Level IV, prison for men in Clayton, Alabama with a designed capacity of approximately 650 men.

31.     Alabama's Prisons for Men, namely Bibb, Bullock, Donaldson, Draper, Easterling, Elmore, Fountain, Holman, Kilby, Limestone, St. Clair, Staton, and Ventress

Correctional Facilities, are institutions within the meaning of 42 U.S.C. § 1997(1).

32.   In 2016, the United States notified Defendants that it had opened an investigation, pursuant to CRIPA, into whether the conditions in Alabama's major correctional facilities for men violate the Eighth Amendment of the United States Constitution.

33.   The United States investigated whether ADOC (1) adequately protects prisoners from physical harm and sexual abuse at the hands of other prisoners; (2) adequately protects prisoners from use of excessive force and staff sexual abuse by security staff; and (3) provides prisoners with sanitary, secure, and safe living conditions.

34.   In April 2019, the United States notified Defendants that the United States had reasonable cause to believe that Defendants were violating the Eighth Amendment rights of prisoners housed in Alabama's major correctional facilities for men by failing to protect prisoners from physical harm and sexual abuse at the hands of other prisoners and by failing to provide safe conditions.

35.   In July 2020, the United States notified the Defendants that the United States had reasonable cause to believe that Defendants were violating the Eighth Amendment by failing to protect prisoners from excessive force by staff.

36.   The United States' findings were outlined in its April 2019 and July 2020 findings reports.[2]

---

[2] The United States notified Defendants of its conclusions after a lengthy investigation. Document production responsive to the requests made during the investigation concluded in early 2018 for most documentation and data.  Additionally, after the United States issued a subpoena and moved to enforce it in federal court, ADOC agreed to produce closed investigative files related to uses of force through 2018.  The State has not produced any documents since May 2019, and those documents were closed investigative files for 2017 and 2018.  Publicly available

A. ***Defendants Fail to Protect Prisoners from Prisoner-on-Prisoner Violence at Alabama's Prisons for Men***

37.     Defendants fail to protect prisoners in Alabama's Prisons for Men from serious harm and a substantial risk of serious harm at the hands of other prisoners, including serious injury and death.

38.     There have been dozens of homicides across Alabama's Prisons for Men in the last several years.  The following chart illustrates the prisoner-on-prisoner homicides by facility, as reported by ADOC.



*Chart 1: Facility-by-Facility Homicides for Fiscal Years 2015-February 2021[3]*

39.     The pattern of violence at Alabama's Prisons for Men is pervasive and systemic.

information demonstrates that the unconstitutional conditions identified during the investigation continue.

[3] In October 2018, ADOC stopped reporting statistical data from Draper in its monthly reports. *See* http://www.doc.state.al.us/docs/MonthlyRpts/2018-10.pdf.  As a result, Draper is not included on Chart 1.

40.     In calendar year 2018, at least ten men were killed by other prisoners in Alabama's
        Prisons for Men.

41.     In 2018, the homicide rate in Alabama's Prisons for Men was more than seven times the
        national average for prisons.

42.     ADOC reports homicides by fiscal year.  According to ADOC's publicly available data
        for Fiscal Year 2019, from October 2018 through September 2019, at least 11 prisoners
        were killed by other prisoners.

43.     In Fiscal Year 2020, at least 16 prisoners were killed by other prisoners according to
        ADOC's publicly available data.

44.     The following homicides summarized in paragraphs 45 - 53 are illustrative examples of
        the pervasive pattern of homicides within Alabama's Prisons for Men and are not a
        comprehensive list of all relevant homicides that have occurred within Alabama's Prisons
        for Men.

45.     In December 2019, a 31-year-old prisoner at Bibb died after being assaulted by another
        prisoner.

46.     In March 2019, at Bibb, two prisoners were killed by other prisoners in two separate
        incidents in the span of three days.

47.     In June 2020, a 67-year-old prisoner was beaten to death by another prisoner at Bullock.

48.     In May 2020, a 33-year-old prisoner died after being assaulted by another prisoner at
        Elmore.

49.     In May 2021, a 23-year-old prisoner was stabbed to death by another prisoner at
        Fountain.  The victim was due to be released the next day.

50.    In September 2020, a 46-year-old prisoner at Fountain was stabbed to death by another prisoner in an open dormitory.

51.    In June 2019, a 52-year-old prisoner at Staton was discovered with stab wounds only after he had been stabbed multiple times in an open dormitory by another prisoner.  He was airlifted to an outside hospital where he later died.

52.    In April 2020, a 43-year-old prisoner was stabbed to death by another prisoner at Ventress.

53.    In October 2019, a 52-year-old prisoner at Ventress died after being stabbed through the eye by another prisoner.

54.    Over the last several years, Alabama's prisons have become even more deadly.  The chart below highlights the trends in prisoner-on-prisoner homicides within all of Alabama's prisons from Fiscal Years 2015 to 2020.



*Chart 2: Systemwide Homicides for Fiscal Years 2015-2020*

55.   ADOC's statistical reports do not reflect all deaths from prisoner-on-prisoner homicides. For example, in November 2020, a 48-year-old prisoner at Bullock was beaten and stabbed to death.  Additionally, in February 2021, a 38-year-old prisoner at St. Clair was stabbed to death in an open dormitory.  ADOC officials confirmed both deaths resulted from prisoner assaults in public news reporting, but they are not reflected in ADOC's monthly statistical reports.

56.   For the first five months of Fiscal Year 2021, from October 2020 through February 2021, ADOC's statistical reports reflect only one homicide as a result of prisoner-on-prisoner violence in Alabama's Prisons for Men.  Namely, in October 2020, a 29-year-old prisoner at Easterling was stabbed to death in an open dormitory.  No security staff were present at the time of the stabbing.

57.   ADOC does not accurately classify or identify the cause of every prisoner death.  By way of example, in February 2018, a prisoner at Kilby died from multiple stab wounds to his head, abdomen, back, and arm.  ADOC classified the prisoner's death as "Natural" rather than "Homicide."  Similarly, in November 2017, an autopsy revealed a prisoner at Elmore died from blunt force trauma to the head.  ADOC classified the death as "Natural."

58.   ADOC has publicly reported at least 159 prisoner deaths for Fiscal Year 2020 and 75 prisoner deaths in the first five months of Fiscal Year 2021.  ADOC has not identified the causes of some of these deaths.  Further, ADOC often fails to report a death while it is under investigation, a status which sometimes continues for years.

59.     The number of prisoner-on-prisoner assaults within Alabama's Prisons for Men

        consistently has been high in recent years as demonstrated by the facility-by-facility chart

        below.



*Chart 3: Prisoner-on-Prisoner Assaults for Fiscal Years 2015-2020*

60.     From October 2018 to September 2019 (Fiscal Year 2019), approximately 278 prisoners

        in Alabama's Prisons for Men suffered serious injuries, defined as injuries requiring

        transport to outside hospitals, as the result of prisoner-on-prisoner assaults as detailed in

        the facility-by-facility chart below.[4]

---

[4] Again, Draper is not included in Charts 3, 4, or 5 because ADOC closed Draper in 2018 and stopped publicly reporting statistical data related to that facility in February 2018.  Even though ADOC partially reopened Draper in 2020, it has not resumed reporting data for Draper.  The last reported data show that during the period that Draper was being decommissioned, from October 2017 through February 2018, there were four serious injuries as the result of assault.



*Chart 4: Prisoner-on-Prisoner Assaults with Serious Injury (FY 2019)*

61.    In October 2019, Defendants stopped publicly reporting separate numbers each month for

serious injuries caused by prisoner-on-prisoner violence.

62.    According to ADOC's publicly available data, there were over 1,100 prisoner-on-

prisoner assaults in Alabama's Prisons for Men from October 2019 through September

2020 (Fiscal Year 2020).

63.    In the most recent Fiscal Year (FY 2020), each of Alabama's Prisons for Men has seen

significant numbers of reported assaults as demonstrated by the facility-by-facility chart

below.



*Chart 5: Prisoner-on-Prisoner Assaults for Fiscal Year 2020[5]*

64.     During the first five months of Fiscal Year 2021, there have been 376 reported assaults

and 453 reported fights across Alabama's Prisons for Men.

65.     Defendants, through their acts and omissions, fail to provide adequate supervision of

prisoners housed within Alabama's Prisons for Men to prevent such violence.

66.     One factor contributing to the violence is overcrowding in Alabama's Prisons for Men.

Alabama's Prisons for Men were designed to hold approximately 9,735 men,[6] but in its

---

[5] Beginning in October 2019, ADOC began reporting prisoner-on-prisoner assaults in a single figure. *See* http://www.doc.state.al.us/docs/MonthlyRpts/DMR%2010%20October%202019PUB.pdf. Previously, ADOC provided subcategories of assaults including those resulting in serious injuries and those not resulting in a serious injury.

[6] These population numbers do not include Draper as ADOC stopped reporting capacity and population at Draper in 2018.

February 2021 Monthly Statistical Report, ADOC reported that Alabama's Prisons for Men housed approximately 14,000 prisoners.

67.  Alabama's Prisons for Men, with the exception of Holman, house a substantial number of men beyond their design capacity.  For example, Staton had a 257% occupancy rate and Kilby had a 201% occupancy rate at the end of February 2021.  Bibb, Bullock, Donaldson, Easterling, and Ventress all had occupancy rates over 140%.  Even Holman had a 282% occupancy rate on its death row.[7]

68.  The overcrowding at Alabama's Prisons for Men will be made worse when restrictions on admission related to COVID-19 are eliminated.  In February 2021, ADOC reported that there were thousands of prisoners at local county jails awaiting intake into ADOC custody, in part due to the COVID-19 restrictions.

69.  Another factor contributing to the violence is the dangerously low level of security staffing.  A recent court order confirmed that ADOC continues to have fewer than half its staff positions filled.  As of the third quarter of 2020, ADOC had filled 1,322 of 3,326 positions for correctional officers.[8]  The overall number of supervisors has decreased. Seven of Alabama's Prisons for Men have total staff vacancy rates in excess of 50%, and all have at least 25% of staff positions vacant.  Vacancy rates at some facilities are even higher.  For example, Bullock has a vacancy rate of 60.1% and Donaldson has a vacancy

---

[7] In January 2020, most of Holman was decommissioned because of significant infrastructure issues at that facility.

[8] This number excludes the 91 Cubical Correctional Officers because they are not trained as correctional officers, work in secured areas, and have no direct contact with prisoners.  However, the number do include 370 Basic Correctional Officers, even though they may not transport prisoners or work certain critical posts, and retired officers in part-time positions.

rate of 56.8%.  Order at 1, *Braggs v. Dunn*, Case 2:14-cv-00601-MHT-JTA (M.D. Ala. Mar. 5, 2021), ECF No. 3144.

70.    Defendants, through their acts and omissions, have engaged in a pattern or practice that obscures the level of harm from prisoner violence in Alabama's Prisons for Men:

    a.    ADOC does not consistently, reliably, or accurately classify the causes of deaths that occur within Alabama's Prisons for Men.

    b.    ADOC has classified prisoners' deaths as occurring by "natural causes" when the death is caused by prisoner-on-prisoner violence.

    c.    ADOC does not have a centralized system to track or review prisoner mortalities within Alabama's Prisons for Men, nor does ADOC maintain a unified repository or database for prisoner autopsies to track and identify patterns in causes of death.

71.    Defendants, through their acts and omissions, fail to protect prisoners from homicide even when ADOC officials have advance warning that certain prisoners are in danger from violence at the hands of other prisoners.

72.    Defendants, through their acts and omissions, fail to supervise prisoners in ADOC custody properly, which results in a failure to prevent serious injuries to prisoners. Because of Defendants' failure to supervise prisoners, there is a delay in security staff discovering life-threatening injuries to prisoners.

73.    Defendants, through their acts and omissions, fail to screen entrants to Alabama's Prisons for Men for contraband adequately and fail to prevent the introduction of illegal contraband into Alabama's Prisons for Men as demonstrated by the facility-by-facility chart below.  As used in this Complaint, the term "contraband" refers to prohibited materials that can reasonably be expected to cause physical injury or adversely affect the

security, safety, or good order of Alabama's Prisons for Men, including drugs, cell

phones, and weapons.



*Chart 7: Contraband-Related Incidents (2015-2017)[9]*

74.     The failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner

violence.  For example, the use of illicit substances, including methamphetamines or

Fentanyl and synthetic cannabinoids, is prevalent in Alabama's Prisons for Men.

Prisoners using illicit substances often harm others or become indebted to other prisoners.

The inability to pay drug debts leads to beatings, kidnappings, stabbings, sexual abuse,

and homicides.

75.     Defendants' failure to prevent the introduction of illicit substances leads to deaths by

overdose.

---

[9] Data on contraband is not reported publicly.  This chart draws on incident reporting available to
the United States through 2017.

76.  In addition to the homicide deaths discussed above, there have been a number of recent overdose deaths at Alabama's Prisons for Men.  By way of example, in November 2020, a 58-year-old prisoner at St. Clair died from an overdose.  Similarly, in February 2021, a 31-year-old prisoner at Donaldson died from a likely overdose.  In yet another example, in March 2021, a 22-year-old prisoner died from a likely overdose while in solitary confinement at Donaldson.

77.  ADOC does not accurately identify or classify every death caused by overdoses.  For example, in September 2017, a prisoner at Draper died and the autopsy stated that he died of "[s]ynthetic cannabinoid toxicity (5FADB)."  ADOC reported his cause of death as "Inmate Death – Natural."

78.   Although ADOC has not allowed visitors into Alabama's Prisons for Men since March 2020 pursuant to COVID-19 restrictions, prisoners continue to have easy access to drugs and other illegal contraband.

79.  ADOC fails to track and identify where illicit substances are most problematic within Alabama's Prisons for Men.

80.  Defendants, through their acts and omission, fail to prevent the introduction of illicit cell phones within Alabama's Prisons for Men.  The possession and use of cell phones are widespread throughout Alabama's Prisons for Men and contributes to the high rate of violence in the prisons.  For example, cell phones are used by prisoners to coordinate the introduction of illicit substances into Alabama's Prisons for Men and for the extortion of prisoner family members by other prisoners.

81.  Defendants, through their acts and omissions, fail to control effectively the introduction, manufacture, and use of weapons within Alabama's Prisons for Men.  Possession and use

of weapons are widespread within Alabama's Prisons for Men. The large number of weapons within Alabama's Prisons for Men contributes to the high rate of violence, sexual abuse, and death.

82.    Defendants, through their acts and omissions, fail to respond properly to prisoner and staff reports of threats and violence so that management can appropriately discipline assailants and avert future violence. For example, in February 2018, a prisoner was killed by another prisoner at Bullock—one day after the prisoner who was killed expressed concern for his safety to prison officials.

83.    Defendants, through their acts and omissions, discourage victims from reporting incidents of violence or threats of violence including through their failure to establish a grievance system in Alabama's Prisons for Men, their retaliation against prisoners who report violence and threats of violence, and their imposition of discipline against prisoners who report violence or refuse to name individuals they fear may harm them.

84.    Defendants, through their acts and omissions, fail to prevent prisoners from extorting other prisoners and their family members, resulting in serious physical injuries and sexual abuse and presenting a risk of serious harm to prisoners at Alabama's Prisons for Men. For example, prisoners have been "kidnapped" by other prisoners and forcibly held, against their will, for multiple days while prisoner-captors extorted the hostage-prisoner's family and friends.

85.    ADOC staff have failed to intervene when alerted to potential extortion.

86.    Defendants, through their acts and omissions, fail to implement effective classification and housing policies, thereby resulting in violence caused by commingling prisoners who should be kept separate.

87.   Defendants, through their acts and omissions, fail to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence.  There were over 1,100 reports of prisoners being in unauthorized locations across Alabama's Prisons for Men in ADOC's 2017 incident report database.

88.   Defendants, through their acts and omissions, fail to provide adequate programming, education, or work opportunities.  The majority of ADOC prisoners receive no programming or employment.  This idle time combined with lack of adequate supervision of prisoners results in increased opportunities to perpetuate violence.

89.   The incidents summarized in paragraphs 90 - 108 are illustrative examples of the pervasive pattern of life-threatening violence within Alabama's Prisons for Men and are not a comprehensive list of all relevant violent incidents that have occurred within Alabama's Prisons for Men.

90.   In May 2018, a prisoner at Bibb reported that he had been held hostage in an open dormitory over the course of several days over a money debt and was severely beaten by several prisoners during that time.

91.   In October 2017, a prisoner at Bibb entered the health care unit bleeding from stab, bite, and scratch wounds.  Because the prisoner declined to name the person who had assaulted him, he was disciplined for intentionally creating a security/safety/health hazard.

92.   In April 2017, a Bibb prisoner was stabbed multiple times by another prisoner while sleeping.  His attacker stated that the victim owed him a drug debt, so he "got it in blood."

93.   In April 2018, a Bullock prisoner, covered in blood, approached security staff and stated

that he had been stabbed by several other prisoners.  He had to be airlifted to an outside hospital for treatment.

94.     In September 2017, a prisoner at Draper who was high on Suboxone assaulted another prisoner with a lock tied to a string.  While drugged, the attacker also was stabbed, had bleach poured on him, and was beaten with a broken mop handle.

95.     In February 2021, a prisoner at Easterling was stabbed multiple times by two other prisoners in the head, neck, and shoulders.  The prisoner was airlifted to an outside hospital for treatment.

96.     In August 2020, a prisoner at Easterling was taken to an outside hospital with serious burn wounds when another prisoner microwaved a mixture of baby oil, shaving powder, and coffee granules and poured it on the victim's face and body while he was sleeping.

97.     In March 2018, a prisoner at Elmore reported that he was in fear for his life because he owed money to four prisoners who were threatening him.  The reporting prisoner was ordered to provide a urine sample and disciplined for intentionally creating a security/safety/health hazard.

98.     In February 2017, a prisoner at Elmore died after being beaten to death by another prisoner over a failed drug transaction.

99.     In February 2018, a Fountain prisoner was stabbed ten times over his entire body by another prisoner before being discovered by an officer.  He was airlifted to an outside hospital.  A search recovered a homemade weapon that was approximately nine inches long.

100.    In February 2018, a Holman officer noticed a prisoner walking toward the front gate of his open dormitory with blood on his clothes.  He had been stabbed 22 times by two other

prisoners, with wounds to his back and head, and had to be airlifted to an outside hospital.

101.   In April 2018, an officer at Kilby noticed a crowd of prisoners gathered in the back of an open dormitory. When the officer approached, he discovered a prisoner with a bleeding, partially detached ear. The injured prisoner had been fighting with another prisoner who tried to bite off his ear. The injured prisoner was ultimately taken to an outside hospital for treatment.

102.   In March 2018, a prisoner at Kilby approached an officer with visible burns on his body. The prisoner told the officer another prisoner had thrown shaving cream heated in a microwave on him; the shaving cream was hot enough to cause second degree chemical burns. The prisoner was taken to an outside emergency room.

103.   In December 2020, an inmate was stabbed multiple times by another prisoner in the early morning hours at Limestone and had to be transported to an outside hospital for treatment.

104.   In August 2020, four prisoners at Limestone were involved in a knife fight that resulted in three being transported to an outside hospital for treatment.

105.   In April 2018, at St. Clair, a captain was told that a prisoner feared for his safety because of debts he owed to gang members. The prisoner who made the report was disciplined for intentionally creating a security/safety/health hazard and placed in restricted housing for admitting to having accrued a debt.

106.   In February 2018, an officer at St. Clair noted a prisoner running down the hallway and stopped him. The prisoner turned and showed the officer that he had an eight-inch, metal homemade knife embedded in his head.

107.    In February 2018, a prisoner at St. Clair was repeatedly physically and sexually assaulted at night by his cell mate.  He eventually reported that his cell mate had been extorting him to pay $1,000 and was forcing him into sex and requiring payment of four packs of tobacco each day until he satisfied the $1,000 debt.

108.    In January 2018, the mother of a prisoner at Ventress reported that she and her son were being extorted for money to pay off an alleged $600 debt to another prisoner.  The prisoner's mother was texted photos of a prisoner's genitals from a cell phone.  Through texts, the extorting prisoner threatened to chop her son into pieces and rape him if she did not send $800.

109.    Unless restrained by this Court, Defendants' pattern or practice of failing to protect prisoners from violence at the hands of other prisoners will continue.

### B.  Defendants Fail to Protect Prisoners at Alabama's Prisons for Men from Prisoner-on-Prisoner Sexual Abuse

110.    Defendants fail to protect prisoners in Alabama's Prisons for Men from sexual abuse by other prisoners.

111.    Between 2015 and 2017, the number of reported prisoner-on-prisoner sexual assaults increased dramatically throughout all of Alabama's prisons as illustrated by the chart below.



*Chart 8: Total Number of Reported Sexual Assaults (2015-2017)*

112.   Defendants, through their acts and omissions, fail to take reasonable measures to keep prisoners safe from sexual abuse.

113.   From late 2016 through April 2018, ADOC documented over 600 incidents classified as "Sexual Assault – Inmate-on-Inmate" at Alabama's Prisons for Men.

114.   These numbers do not capture the full extent of the pattern of sexual abuse at Alabama's Prisons for Men because many prisoners do not report sexual abuse when it occurs, if at all.

115.   Even the under-inclusive number of reported sexual assaults illustrates the pervasiveness of sexual abuse across Alabama's Prisons for Men.  Reports of sexual assaults by facility are illustrated by the chart below.



*Chart 9: Number of Reported Sexual Assaults by Facility (2015-2017)[10]*

116.   The pattern of sexual abuse continues unabated since the United States' investigation

concluded.  The Alabama Department of Corrections Annual Prison Rape Elimination

Act (PREA) Report for 2019 indicated a doubling of reported incidents of prisoner-on-

prisoner sexual abuse from 2017 to 2019.

117.   Insufficient staffing in Alabama's Prisons for Men leads to inadequate supervision, which

in turn allows prisoner-on-prisoner sexual abuse to occur.

118.   The physical plant designs of the prisons, combined with understaffing, makes visibility

difficult and creates opportunity for prisoner-on-prisoner sexual abuse to occur

unobserved.

---

[10] This data is drawn from incident reporting available to the United States through 2017.

119.   Because of ADOC's failure to supervise prisoners and enforce classification and housing assignments, sexual predators are able to move from unit to unit without intervention, which results in sexual abuse.

120.   Defendants, through their acts and omissions, fail to prevent the introduction of contraband, which leads to sexual abuse.  For example, prisoners routinely subject other prisoners to sexual abuse when the victim fails to pay a debt related to drug trafficking or other prisoner contraband exchanges.  Prisoners also report suffering sexual abuse after being drugged, after becoming incapacitated by drugs, or when the assailant was under the influence.

121.   Defendants, through their acts and omissions, fail to employ adequate screening, classification, and housing of prisoners to prevent sexual abuse pursuant to the National Standards to Prevent, Detect, and Respond to Prison Rape, 28 C.F.R. § 115 *et seq*. Sexual predators are often commingled with victims in housing units, which results in foreseeable sexual abuse.

122.   Defendants, through their acts and omissions, fail to conduct adequate investigations of sexual abuse.  ADOC declares many allegations of sexual abuse "unsubstantiated" based solely on the victim's decision not to press criminal charges or otherwise cooperate with the investigation.  Defendants also dismiss alleged sexual abuse as "homosexual activity," implying the sexual act is consensual.  Further, Defendants fail to conduct adequate investigations of, and respond appropriately to, sexual abuse that occurs as the result of drug debts.

123.   Defendants, through their acts and omissions, discourage reporting of sexual abuse.

124.   Defendants, through their acts and omissions, improperly subject victims of sexual abuse

to segregation, which isolates them from others and subjects them to restricted privileges and out-of-cell time, often because ADOC lacks appropriate and safe housing.

125.   Defendants, through their acts and omissions, fail to prevent prisoners from being sexually abused by other prisoners in retaliation for reporting sexual abuse.

126.   Defendants, through their acts and omissions, fail to conduct adequate reviews of incidents of sexual abuse to identify and remedy the flawed practices that contribute to the substantial risk of serious harm, which enables further abuse to continue.

127.   The following incidents summarized in paragraphs 128 - 145 are illustrative examples of the pervasive pattern of sexual abuse within Alabama's Prisons for Men and are not a comprehensive list of all relevant sexual assaults that have occurred within Alabama's Prisons for Men.

128.   In February 2018, a prisoner at Bibb reported to a mental health professional that he had been raped.  At approximately 1:00 a.m. in a dormitory unit, an unidentified prisoner propositioned him to smoke a marijuana cigarette.  While smoking, the victim "became incoherent" and awoke with the unidentified prisoner penetrating him from the rear.

129.   In February 2018, a prisoner at Bibb notified the facility PREA Compliance Manager that he had been "forcibly sexually assaulted" two days prior and that he had not bathed, so the perpetrator's semen was still inside him.  The prisoner was examined by the facility nurse and upon completion of the medical examination, the prison physician advised that the prisoner should be transported to an outside hospital for a Sexual Assault Kit. Although the prisoner named his rapist, the incident report confirms that upon conclusion of the investigation, the victim "stated that he did not desire to prosecute and signed a waiver of prosecution.  Therefore, this allegation is unsubstantiated."

26

130.    In January 2018, a prisoner at Bullock resorted to cutting his wrist after an attempted

sexual assault and physical assault by another prisoner "because he feared being in

population and needed to be placed in a single cell."  He reported that two nights prior,

two prisoners had attempted to rape him but were unable to penetrate him because he

defecated during the assault.  The prisoners then poured hot water on him, causing burn

marks to his buttocks and the back of his head.  ADOC placed the victim in segregation

and allowed the perpetrators to remain in general population.  The incident report notes

that the perpetrators would receive "disciplinary actions for assault," and that no further

action would be taken.

131.    In March 2018, a severely injured prisoner at Donaldson called for help and collapsed in

his unit.  The responding sergeant found a prisoner so seriously injured he could not

speak.  After he was transported to the hospital for treatment, medical staff conducted

emergency surgery to remove a broomstick from his rectum.

132.    In January 2018, a prisoner at Donaldson cut his wrist with a razor and when staff

responded to his injury, he reported that he had been sexually assaulted in the bathroom

of the housing unit the previous night.

133.    In February 2018, a prisoner at Draper was raped by another man in his housing unit who

had a sheet hanging over the bunk to obscure security staff view.  When he reported the

rape to staff, he also reported feeling suicidal after the attack and was placed on acute

suicide watch.

134.    In January 2017, a prisoner at Draper reported that he had voluntarily used

methamphetamine and blacked out.  When he regained consciousness, he was

experiencing anal pains and other prisoners indicated that he had been sexually assaulted.

135.    In December 2017, a prisoner at Easterling reported that he passed out under the influence of drugs and when he woke up his pants were down and his rectum was hurting, so he believed he had been sexually assaulted.  After he was assessed by medical personnel, the prisoner was placed in segregation because he feared for his safety.

136.    In April 2018, ADOC security staff interviewed a prisoner at Elmore after his mother called to report that he had been sexually abused.  The prisoner stated that he had been raped at knifepoint because he owed his assailant $250.  The incident report notes that the alleged assailant "submitted a written statement and was allowed to return back to population without incident."  There is no mention of a search for the weapon.

137.    In March 2018, a prisoner at Fountain reported to staff that another prisoner had been sexually assaulted.  When the victim was located back in the dormitory, he identified two assailants, one of whom confirmed that the victim was raped after all three prisoners smoked a joint.

138.    In February 2018, a prisoner at Fountain reported that he had been sexually assaulted.  When staff asked him about the incident, he reported that he had been assaulted every day since his arrival at Fountain.  A medical assessment found scratches and bruising on his arms, legs, and back.

139.    In March 2018, a prisoner at Holman reported that he had been raped after he had passed out from smoking an illegal synthetic drug called "flakka."  He awoke to one prisoner punching him in the eye and then four or five prisoners put a partition around his bed and took turns raping him.

140.    In December 2017, a prisoner at Kilby reported that he was threatened with a knife and submitted to a rape for fear of being stabbed.  His clothes were collected as evidence, but

the incident report does not indicate that he was assessed by a Sexual Assault Nurse Examiner's Center.

141.   In February 2018, a prisoner at Limestone reported that while he was working in the upholstery room, another prisoner grabbed his genitals and he responded by hitting the other prisoner in the face.  The facility review of the incident revealed that prisoners should not have access to the space where the reported assault occurred.

142.   In February 2018, a prisoner at Staton reported that another prisoner put his penis in the reporting prisoner's mouth while two others held knives to his back.  The reporting prisoner was placed in a holding cell and the others remained in general population.

143.   In January 2018, a prisoner at Staton reported that he had been beaten and sexually assaulted by another prisoner in his dorm.  The prisoner who reported the abuse was placed in a holding cell and the other prisoner remained in general population.

144.   In February 2018, a prisoner at St. Clair reported that he was assaulted by another prisoner and forced to perform unwanted sex acts.  After an initial evaluation, he was transported for assessment at a Sexual Assault Nurse Examiner's Center.

145.   In April 2018, a prisoner at Ventress reported that he had been forced at knifepoint to perform oral sex on another prisoner.  The incident report does not mention a search for weapons.  The incident report does note that a previous PREA-related allegation had been made against the assailant.

146.   Unless restrained by this Court, Defendants' pattern or practice of failing to protect prisoners from sexual abuse at the hands of other prisoners will continue.

C.   *Defendants Fail to Protect Prisoners from Excessive Force at Alabama's Prisons for Men*

147.   Defendants fail to protect prisoners from ADOC security staff's use of excessive force at Alabama's Prisons for Men.

148.   Since at least 2016, ADOC security staff at Alabama's Prisons for Men have engaged in a pattern or practice of using excessive force on prisoners.

149.   Defendants, through their acts and omissions, have engaged in a pattern or practice of conduct by security staff of using excessive force against prisoners.  The excessive force at Alabama's Prisons for Men includes:

a.   use of force disproportionate to the amount of resistance encountered, including use of force against restrained or compliant prisoners;

b.   use of force to punish or retaliate against prisoners;

c.   use of chemical spray or other chemical agents in an unreasonable manner;

d.   use of weapons, such as batons, in an unreasonable manner;

e.   use of actions that deliberately provoke physical confrontations with prisoners and cause unnecessary use of force; and

f.   use of force when security staff attempts to de-escalate confrontations with prisoners would be feasible, be appropriate, and result in less or no use of force.

150.   Security staff facilitate their excessive use of force at Alabama's Prisons for Men through several practices that are aimed at masking excessive force or provoking unnecessary uses of force.

151.   Security staff have a practice of using force on prisoners and then placing those prisoners in segregation or restricted housing until any injuries can heal unobserved and undocumented.

152. Security staff have a practice of failing to document or report uses of force to supervisors.

153. Security staff have a practice of falsifying incident documentation related to uses of force.

154. Security staff have a practice of verbally antagonizing and provoking prisoners, leading to an escalation of tensions and unnecessary uses of force.

155. Defendants are aware of security staff's pervasive use of excessive force at Alabama's Prisons for Men and are aware of security staff's practices that facilitate their excessive use of force.

156. Defendants, through their acts and omissions, have engaged in a pattern or practice of systemic deficiencies that resulted in uses of excessive force. These systemic deficiencies at Alabama's Prisons for Men include:

    a. failure to implement and enforce policies, procedures, and practices regarding use of force that appropriately guide and monitor the actions of individual security staff;

    b. failure to ensure that prison facilities' operating procedures are consistent with ADOC regulations and are consistent from prison-to-prison;

    c. deficient use of force reporting and review;

    d. failure to adequately investigate incidents in which security staff uses force;

    e. failure to adequately or appropriately discipline security staff who engage in misconduct;

    f. failure to adequately monitor security staff who engage in or may be likely to engage in misconduct;

    g. failure to implement policies and procedures whereby complaints and other

allegations of security staff misconduct are adequately received and investigated;

h.      failure by supervisory staff to conduct thorough institution-level investigations;

i.      providing too much discretion to each prison's head warden to determine which

use of force matters should receive further review by ADOC's Law Enforcement

Services Division (LESD)[11];

j.      failure by LESD to conduct thorough institution-level investigations;

k.      failure by LESD supervisors to document why investigations are closed or

referred back to an institution;

l.      failure by LESD to conduct administrative reviews of uses of force when matters

do not necessarily rise to criminal conduct;

m.      failure to discipline security staff who are found to have used excessive force;

n.      improperly closing use of force investigations when a prisoner refuses to

cooperate or when a prisoner is no longer in custody; and

o.      failure to implement tracking or periodic review systems to identify security staff

who use a disproportionate amount of force or to identify problematic places

where uses of force frequently occur.

157.   Defendants have repeatedly failed to take reasonable measures to prevent security staff

from inflicting serious harm on prisoners at Alabama's Prisons for Men, even in the face

of the obvious and substantial risk that staff will inflict such harm and the multiple

occasions on which staff have in fact inflicted such harm.

158.   The following incidents summarized in paragraphs 159 - 171 are illustrative examples of

the pattern of excessive force on prisoners in Alabama's Prisons for Men and are not a

---

[11] Prior to 2020, LESD was referred to as the Investigations & Intelligence Division, or I&I.

comprehensive list of all relevant uses of excessive force that have occurred within Alabama's Prisons for Men.

159.    In July 2020, a federal grand jury indicted three security staff, including a supervisor, at Bibb for willfully using excessive force on a prisoner.  The security staff repeatedly kicked or struck the prisoner with batons while the prisoner was curled up in a fetal position on the ground.  The federal grand jury also indicted one of these officers and another supervisor for obstructing justice by filing false reports to conceal the unlawful assault.

160.    In October 2019, security staff's use of excessive force resulted in the death of a prisoner at Donaldson.  The excessive force included multiple strikes to the head that caused skull fractures.

161.    In November 2018, an officer struck a prisoner at Bullock in the arm and back with a baton because the prisoner disregarded the officer's order to leave the dining area.  The prisoner was not demonstrating violent or threatening behavior at the time.

162.    In March 2017, an officer at Donaldson sprayed a chemical agent into a prisoner's closed cell.  The officer then, despite the presence of other security staff to control the prisoner, assaulted the prisoner multiple times with a baton, which inflicted open wounds on the prisoner's back.  The officer continued to work at Donaldson for years after the assault.

163.    In October 2020, an officer used a baton to strike three compliant prisoners in the Draper intake area.  The strikes broke one prisoner's arm.  Another officer witnessed the assaults and failed to intervene.

164.    In May 2017, a supervisory security officer at Easterling took a handcuffed prisoner to the ground face down.  The use of excessive force resulted in the prisoner's transfer to a hospital for a broken hip.

165.    In July 2019, an Alabama grand jury indicted an officer for manslaughter of a prisoner at Elmore.  The officer severely beat the prisoner and then delayed providing the prisoner medical attention.

166.    In February 2019, a correctional staff supervisor assaulted two unresisting, handcuffed prisoners at Elmore by striking them repeatedly with a baton, and with his hands or feet. Other security staff witnessed the assault and failed to intervene to stop the abuse.  The supervisor and two of the officers witnessing the assault have pleaded guilty to federal criminal civil rights offenses for their conduct during the assault.  In September 2019, a federal grand jury indicted the supervisor of the assaulting officer for failing to intervene to stop the assault, and for making false statements before a federal grand jury that he never put restraints on inmates too tightly in violation of ADOC guidelines.

167.    In July 2017, two security staff at Kilby observed a prisoner working in the kitchen give some leftover chicken to another prisoner.  In response, the security staff forced the prisoner to attempt to eat all the leftover chicken and slapped the prisoner multiple times when the prisoner could not finish the force-fed chicken.

168.    In August 2017, an officer used a chemical spray on a Limestone prisoner by spraying the chemical into the prisoner's cell tray and then closing the tray.  While security staff were taking the handcuffed prisoner to the infirmary, the officer pushed the handcuffed prisoner and struck him several times.

169.    In June 2020, an Alabama grand jury indicted an officer for assaulting and causing serious physical injuries to a prisoner at Staton.

170.    In March 2021, a federal grand jury indicted two security staff, including a supervisor, for assaulting a prisoner at Staton.  Security staff struck the prisoner with their feet and a baton, and one security staff member walked on the prisoner.  The security staff subsequently made false statements in an attempt to cover up the assault.

171.    In December 2019, security staff's use of excessive force resulted in the death of a prisoner at Ventress.  The autopsy revealed that the prisoner died from blunt force trauma to the head.  The use of excessive force to the head also resulted in intracranial bleeding, bone fractures, and multiple knocked out teeth.

172.    Unless restrained by this Court, Defendants' pattern or practice of using excessive force will continue.

**D.      *Defendants Fail to Provide Safe and Sanitary Conditions within Alabama's Prisons for Men***

173.    Defendants fail to provide safe and sanitary conditions for prisoners in Alabama's Prisons for Men.

174.    During the course of the United States' investigation, Commissioner Jefferson S. Dunn has admitted that ADOC's "buildings are falling apart" and Alabama's prisons have "crumbling infrastructure."  In January 2020, Commissioner Dunn acknowledged the "pervasive and extreme dilapidation crippling facilities throughout the correctional system."

175.    Understaffing, coupled with the lack of adequate surveillance cameras, exacerbates the serious risk of death, physical violence, and sexual abuse at the hands of other prisoners in Alabama's Prisons for Men.

35

176.   Understaffing, coupled with broken and defective locks, allows prisoners to leave secure areas, obtain contraband, and improperly associate with or assault other prisoners.

177.   Overcrowding, coupled with the lack of adequate working toilet and shower fixtures, heightens tensions within Alabama's Prisons for Men, which results in prisoner-on-prisoner violence.  For example, during a site visit to Bibb by the United States, a prisoner reported that the toilets constantly leaked and that the hot water did not work in the shower.  Another stated that when it rained, the roof leaked in his dorm and forced prisoners to move their beds away from under the holes in the roof, which caused disputes and occasional violence.  Similarly, during a site visit to Donaldson, numerous showers were non-functioning, and makeshift showering boxes were constructed using cinderblocks.

178.   Conditions at Draper were so bad that one month after the United States' site visit, ADOC announced the closure of the facility.  Engineering experts hired by ADOC had concluded that the facility was "no longer suitable to house inmates, or to be used as a correctional facility."  During the United States' site visit, a prisoner reported that feces would intermittently flow from the bathroom floor drains due to constant flooding. Another reported that the showers were often broken and contained mold.  In April 2020, ADOC reopened Draper for use as a quarantine facility for prisoners who received a positive COVID-19 diagnosis, yet prisoners still report that there are no sinks with hot water and no working toilets at the facility.

179.   Similarly, ADOC decommissioned the main facility at Holman in January 2020, citing the unsustainable daily interventions required to maintain the facility's deteriorating

underground sewer and electrical systems.  Yet ADOC continues to house prisoners on death row and low-risk prisoners at Holman's restrictive housing unit and E-dorm.

180. In one recent illustration of the serious risks posed by dangerous conditions at Alabama's Prisons for Men, in December 2020 a prisoner at Donaldson died from hyperthermia. When he was discovered in his cell, his face was pressed against the window in an apparent effort to get air.  His body temperature was recorded at 109 degrees and his cell had a recorded temperature of 101-104 degrees.

181. Defendants, through their acts and omissions, allow for significant physical plant-related issues in Alabama's Prisons for Men that contribute to violence, including broken or defective locks, insufficient or nonfunctional surveillance cameras, and insufficient convex mirrors.

182. Defendants, through their acts and omissions, fail to provide sanitary conditions for prisoners in Alabama's Prisons for Men.  Defendants house many prisoners in open and overcrowded dormitories, requiring the use of shared showering and toileting facilities by a prisoner population that far exceeds the design capacity of Alabama's Prisons for Men. Many of the plumbing fixtures in Alabama's Prisons for Men are not properly working. Flooding is routine due to poor plumbing.

183. Unless restrained by this Court, Defendants' pattern or practice of failing to provide safe and sanitary conditions in their facilities will continue.

### E. Defendants Are Deliberately Indifferent to the Serious Risk of Substantial Harm Due to Prisoner-on-Prisoner Violence, Sexual Abuse, Use of Excessive Force, and Unsafe Physical Plant Conditions

184. Defendants are deliberately indifferent to the serious risk of substantial harm in Alabama's Prisons for Men.

185.  Defendants are aware of their failure to protect prisoners in Alabama's Prisons for Men from prisoner-on-prisoner violence, prisoner-on-prisoner sexual abuse, security staffs' excessive use of force, and unsafe and unsanitary conditions.

186.  Defendants have been aware of the dangerous conditions in Alabama's Prisons for Men for many years, as evidenced by numerous statements by Alabama officials.  By way of example:

    a.  In ADOC's Annual Report for Fiscal Year 2017, Commissioner Dunn emphasized that "the Department's major challenges continue to be critical shortages in correctional officer staffing, and crumbling infrastructure."

    b.  In ADOC's Annual Report for Fiscal Year 2018, Commissioner Dunn continued to highlight "critical shortages in correctional officer staffing" as a major challenge.

    c.  In February 2019, during an address to the Legislature, Commissioner Dunn explained that "there is a direct correlation between the shortage of officers in our prisons and the increase in violence," noting that the current level of violence was "unacceptably high."

    d.  In an op-ed published on February 12, 2019, Governor Kay Ivey stated that "issues of violence, poor living conditions and mental illness persist within our system. These issues, and others, are exacerbated by a crowded inmate population, correctional and health care staffing challenges, and aging prison infrastructure – each piece compounding the others."

    e.  In an op-ed published on August 12, 2020, Commissioner Dunn stated that "[o]ur facilities are crowded, and our buildings are falling apart.  Living and working

conditions are, unquestionably, not sustainable.  We face staffing shortages.

Instances of violence among our inmate population pose a real challenge."

187. Since the United States opened its investigation in October 2016, Alabama's Prisons for Men have remained extremely overcrowded.

188. Alabama's Prisons for Men are still critically and dangerously understaffed.

189. By the third quarter of 2020, most of Alabama's Prisons for Men were staffed at 50% or less of the necessary security staff for the designed capacity as demonstrated by the facility-by-facility charts below.  Compounding this fact is the ongoing overcrowding at the understaffed facilities.



*Chart 10: Correctional Staffing as of September 30, 2020*

190. Since the United States released its findings report on April 2, 2019, notifying the State that it was violating the Eighth Amendment by failing to prevent prisoner-on-prisoner violence and sexual abuse, violence and sexual abuse in Alabama's Prisons for Men have remained widespread.

191. ADOC's publicly-available reports continue to reflect that injuries, deaths, and fighting are systemic problems in Alabama's Prisons for Men.

192. Since the United States released its findings report on July 23, 2020, notifying the State that it was violating the Eighth Amendment through a pattern of excessive force in Alabama's Prisons for Men, the pattern of excessive force has continued.

193. Despite being on notice of the dangerous and deficient conditions in Alabama's Prisons for Men, the State of Alabama and ADOC have failed or refused to eliminate the unconstitutional conditions.

**COUNT ONE**

194. The allegations of Paragraphs 18 through 193 are hereby re-alleged and incorporated by reference.

195. Through the acts and omissions alleged in paragraphs 18 through 193, Defendants have subjected prisoners in Alabama's Prisons for Men to a pattern or practice of conditions of confinement that deprives them of rights, privileges, and immunities secured and protected by the Eighth and Fourteenth Amendments to the Constitution of the United States, causing such prisoners to suffer grievous harm.

196. Through the acts and omissions alleged in paragraphs 18 through 193, Defendants have exhibited deliberate indifference to the safety of prisoners in Alabama's Prisons for Men, in violation of the rights, privileges, or immunities of those prisoners as secured or

protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

197.   Unless this Court orders Defendants to comply with the Eighth and Fourteenth Amendments to the Constitution of the United States, Defendants will continue to engage in the acts and omissions, set forth in paragraphs 18 through 193, that deprive persons confined in Alabama's Prisons for Men of privileges or immunities secured or protected by the Eighth and Fourteenth Amendments.

### PRAYER FOR RELIEF

198.   The Attorney General is authorized under 42 U.S.C. § 1997a to seek appropriate equitable relief.

199.   WHEREFORE, the United States prays that this Court enter an order:

a.   declaring that the acts, omissions, and practices of Defendants set forth in paragraphs 18 through 193 above constitute a pattern or practice of conduct that deprives prisoners confined in Alabama's Prisons for Men of rights, privileges, or immunities secured or protected by the Constitution of the United States and that those acts, omissions, and practices violate the Eighth and Fourteenth Amendments to the Constitution of the United States;

b.   permanently enjoining Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them from continuing the illegal acts, omissions, and practices set forth in paragraphs 18 through 193 above.

c.      requiring Defendants, their officers, agents, employees, subordinates, successors

in office, to take such actions as will ensure constitutional conditions of

confinement are afforded to prisoners in Alabama's Prisons for Men; and

d.      granting such other and further equitable relief as it may deem just and proper.

Dated: _____, 2021

Respectfully submitted,

FOR THE UNITED STATES:

MERRICK GARLAND
Attorney General
United States of America

42

**/s/ Pamela S. Karlan**
PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division


**/s/ William R. Chambers**
William R. Chambers, Jr.
Acting United States Attorney
Northern District of Alabama


**/s/ Sandra J. Costello**
Sandra J. Stewart
Acting United States Attorney
Middle District of Alabama


**/s/ Sean P. Cosetello**
Sean P. Costello
United States Attorney
Southern District of Alabama


**/s/ Steven H. Rosenbaum**
STEVEN H. ROSENBAUM
Chief
Special Litigation Section


**/s/ Kerry K. Dean**
KERRY K. DEAN
Deputy Chief
DEENA FOX
MATTHEW DONNELLY
GEORGE EPPSTEINER
CURTIS HARRIS
Attorneys
Special Litigation Section

**/s/ Carla C. Ward**
LANE H. WOODKE
Civil Chief
JASON R. CHEEK
Deputy Civil Chief

CARLA C. WARD
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
(205) 244-2181 (fax)
carla.ward@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

**/s Carla C. Ward**
CARLA C. WARD
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov