UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:20-CV-01971-RDP |
| STATE OF ALABAMA, et al., | } |
| Defendants. | } |

# MEMORANDUM OPINION

Before the court is Defendants' Motion for Partial Dismissal. (Doc. # 38). The motion has been fully briefed (Docs. # 39, 41, 44) and is ripe for decision. For the reasons discussed below, the Motion is due to be granted in part and denied in part.

**I.   Background**

The United States brings this action against the State of Alabama and the Alabama Department of Corrections pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA). (Doc. # 37 at 1). Plaintiff alleges that the State has violated the Eighth and Fourteenth Amendments to the Constitution of the United States by "failing to prevent prisoner-on-prisoner violence and sexual abuse, failing to protect prisoners from the use of excessive force by security staff, and failing to provide safe conditions of confinement." (*Id.*).

The current iteration of Plaintiff's complaint (Doc. # 37) results from the court ordering Plaintiff to separate its allegations by facility. (*See* Doc. # 31). Plaintiff's Amended Complaint consists of one count that re-alleges paragraphs eighteen through one hundred ninety-three (the fact section of the current complaint). (Doc. # 37 at 40-41). The single count alleges that Defendants have acted with deliberate indifference through acts or omissions that constitute a

pattern or practice that violate the Eighth and Fourteenth Amendments to the Constitution of the United States. (*Id.*). The fact section, in turn, contains five sub-parts that address four causes of action: (1) Defendants failed to protect prisoners from prisoner-on-prisoner violence; (2) Defendants failed to protect prisoners from prisoner-on-prisoner sexual abuse; (3) Defendants failed to protect prisoners from excessive force; (4) Defendants failed to provide safe and sanitary conditions; and, (5) Defendants acted with deliberate indifference regarding the preceding four sub-parts. (Doc. # 37 at 7-40). Within the first, second, and fourth allegations, Plaintiffs contend that several deficiencies in Alabama's prison system contribute to the constitutional violations, including understaffing. (Doc. # 37 at 14, 24, 35).

Defendants move the court to dismiss the failure to provide safe and sanitary conditions allegation for failure to state a plausible claim. (Doc. # 39 at 8). Defendants also argue that any allegation of correctional understaffing is due to be dismissed for failure to timely assert the matter. (Doc. # 39 at 12). In addition to the two main arguments, Defendants request the court to recognize a heightened pleading standard for CRIPA actions, to review the Attorney General's certification of the action, and to dismiss the Amended Complaint for seeking improper relief. (Doc. # 39 at 5-8, 11).

**II.   Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked

assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.   Analysis**

Plaintiff's Amended Complaint is a shotgun pleading. As a result, Plaintiff must replead its allegations in accordance with *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313 (11th Cir. 2015). Additionally, the court concludes that Plaintiff can continue to allege understaffing as a contributing factor to its separate causes of actions of Eighth Amendment violations. Also, the court determines that it does not possess the power of judicial review regarding the Attorney General's decision to certify the CRIPA action.

**A.   Shotgun Pleading**

As a general rule, the Eleventh Circuit divides shotgun pleadings into four categories. *Weiland*, 792 F.3d at 1321-23. It has explained that a shotgun complaint is one that:

> (1) contain[s] multiple counts where each adopts the allegations of all preceding counts; (2) [is] filled with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) do[es] not separate each cause of action or claim into separate counts; or (4) assert[s] multiple claims against multiple defendants but do[es] not specify which defendant is responsible for which acts or omissions.

*Brown v. Air Line Pilots Assoc*, 813 Fed. App'x. 353, 355 (11th Cir. 2020) (citing *Weiland*, 792 F.3d at 1321-23 (11th Cir. 2015)). The common characteristic between all four types is the failure "to give defendants adequate notice of the claims against them and the grounds which each claim rests." *Weiland*, 792 F.3d at 1323.

Plaintiff's Amended Complaint is an example of the third type of shotgun pleading: it fails to divide its separate causes of actions into different counts. In its current form, the Amended Complaint contains a single count, but the fact section contains at least four different causes of actions: (1) failure to protect prisoners from prisoner-on-prisoner violence, (2) failure to protect prisoners from prisoner-on-prisoner sexual abuse, (3) failure to protect prisoners from excessive force, (4) failure to provide safe and sanitary conditions. Under the Eleventh Circuit's decision in

4

*Weiland*, Plaintiff must divide each of these cause of actions into separate counts. And, Plaintiff must provide sufficient factual content of both the objective and subjective elements of an Eighth Amendment violation within each count to satisfy the pleading standards of *Twombly* and *Iqbal*.[1]

Plaintiff is also reminded to continue to abide by the court's previous Order (Doc. # 31) and separate its allegations by facility. Specifically, Plaintiff should assert which facilities fail to provide safe and sanitary conditions. For example, paragraphs 175, 176, and 181 make the broad assertion that "lack of adequate surveillance cameras," "defective locks," and "insufficient convex mirrors" contribute to unsafe conditions, but Plaintiff fails to allege which specific facilities contain these purported problems.[2]

### B.     Understaffing and the *Braggs* Class Action

Defendants also ask the court to dismiss Plaintiff's allegations of deficiencies in correctional staffing considering the ongoing class action *Braggs v. Dunn*, No. 2:14-cv-601-MHT-JTA (M.D. Ala.). Plaintiff's Amended Complaint does not contain a cause of action for understaffing. Rather, understaffing is alleged to be a contributing factor in relation to Plaintiff's allegations of failure to prevent prisoner-on-prisoner violence and sexual abuse as well as failure to provide safe and sanitary conditions. Furthermore, the *Braggs* class action has no preclusive effect in the present action, and Defendant's motion to dismiss allegations of understaffing is due to be denied.

---

[1] The United States should be warned that as currently pled, it is a close call as to whether it has adequately alleged a claim for the failure to provide safe and sanitary conditions.

[2] Defendants also argue that Plaintiff's prayer for relief is too far reaching. (Doc. # 39 at 11). But, as the Plaintiff concedes in its Response, "any prospective relief awarded by the Court will have to comply with the Prison Litigation Reform Act's requirement that such relief be narrowly drawn, extend no further than necessary to correct the constitutional violations, and is the least intrusive means necessary to do so." (Doc. # 41 at 20) (citing 18 U.S.C. § 3626(a)(1)(A)).

Defendants classify *Braggs* as a class action "consisting of all persons with a serious mental illness who are, or will be confined within ADOC's facilities." (Doc. # 39 at 12). While the *Braggs* court has filed a preliminary remedial order that addresses staffing issues in the Alabama prison system and is reportedly drafting a final remedial order, the *Braggs* case has no preclusive effect in the present action.

Defendants support their argument by citing a proposition articulated by the Tenth Circuit: "Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action. To permit them would allow interference with the ongoing class action." (Doc. # 39 at 14) (citing *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991). But the principle in *McNeil* does not apply to the current action brought by the United States under CRIPA. *McNeil* involved an individual, private party seeking injunctive relief identical to an ongoing class action. In this case, the United States of America has brought the action rather than an individual, private party. Additionally, the current action is being litigated outside the boundaries of the *Braggs* class action. According to Defendants' memorandum, the *Braggs* class action is specific to the effects of understaffing on mental-health care. However, the current action concerns the effects of purported understaffing on prisoner-on-prisoner violence and sexual abuse as well as prison conditions.

Also, the Eleventh Circuit recognizes "the well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." *Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1425 (11th Cir. 1998). As Defendants note, *Herman* is an ERISA case, but the *Herman* court cited three voting rights actions and an antitrust suit to support this general principle. *Id.* In other words, the legal principle that the government is not bound by private

litigation when it enforces a federal statute that implicates both public and private interests extends beyond ERISA actions.

CRIPA provides that the Attorney General must certify "that such an action by the United States is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 1997b(a)(3). Put differently, in a CRIPA action the United States represents the public interest rather than individual inmates. *See United States v. Michigan*, 680 F. Supp. 928, 968 (W.D. Mich. 1987) (citing 42 U.S.C. § 1997a(a); S. Rep. No. 416, 96 Cong., 2d Sess., at 31. In this case, the United States seeks to enforce a federal statute that implicates both public and private interests. Following the Eleventh Circuit's well-established general principle, even if the scope of *Briggs* paralleled the current action, *Briggs* would not preclude relief here.

      **C.**      **Preconditions to a CRIPA Action & the Attorney General's Certification**

CRIPA provides for certain preconditions and certification requirements that the Attorney General must meet before filing an action. *See* 42 U.S.C. § 1997a, 1997b. One of the preconditions is that "the Attorney General has reasonable cause to believe that [the] State … is subjecting persons … to egregious or flagrant conditions … and that such deprivation is pursuant to a patter or practice." 42 U.S.C. § 1997a(a). Defendants argue that these preconditions place an elevated pleading requirement on Plaintiff to overcome a Rule 12(b)(6) motion. (Doc. # 39 at 5-6). The court disagrees.

CRIPA is a statutory vehicle that confers standing on the Attorney General to enforce existing constitutional rights and federal statutory rights. *Patsy v. Board of Regents*, 457 U.S. 496, 507-08 (1982); s*ee United States v. Erie County*, 724 F. Supp. 2d 357, 366 (W.D. N.Y. 2010). The plain language of § 1997a indicates that the expressed preconditions apply only to the Attorney

7

General's reasonable cause determination. CRIPA does not create a heightened pleading standard. *Erie County*, 724 F. Supp. 2d at 365; *United States v. Pennsylvania*, 902 F. Supp. 565, 578-79 (W.D. Pa. 1995). Instead, the Attorney General must abide by the same pleading standards as an individual, private plaintiff asserting the same allegations. *United States v. Pennsylvania*, 863 F. Supp. 217, 220 (E.D. Pa. 1994). In other words, the court will apply the principles established by the Supreme Court in *Twombly* and *Iqbal* as well as the Eleventh Circuit's interpretation.

Section 1997b provides the certification requirements that the Attorney General must follow. This court agrees with the vast majority of district courts to decide this issue: the Attorney General's certification is not subject to judicial review. *E.g.*, *United States v. Erie County*, 724 F. Supp. 2d 357, 366 (holding that the court is not authorized to review the Attorney General's certification of a CRIPA action because Congress left the decision to the Attorney General's prosecutorial discretion); *United States v. Pennsylvania*, 832 F. Supp. 122, 126 (E.D. Pa. 1993); *United States v. Illinois*, 803 F. Supp. 1338, 1340-41 (N.D. Ill. 1992); *United States v. New York*, 690 F. Supp. 1201, 1204 (W.D. N.Y. 1988) (holding that CRIPA certification, like other civil rights statutes, is non-reviewable); *United States v. Oregon*, No. CIV. 86-961LE, 1987 WL 39761, at *4 (D. Or. Apr. 8, 1987) (noting that the joint congressional statement concluded that CRIPA certification, like other statutory certificate requirements, are not judicially reviewable); *United States v. Massachusetts*, No. 85–0632–M, slip op. (D. Mass. June 5, 1985). *But see United States v. Hawaii*, 564 F. Supp. 189 (D. Haw. 1983) (reviewing the certification for the limited reason that the Attorney General's certification stated that he complied with the statutory requirements "to the fullest extent possible").

Accordingly, the portion of Defendants' Motion predicated on a request that the court review the Attorney General's certification of the action is due to be denied. Similarly, Defendants' argument that CRIPA demands a heightened pleading standard is off the mark.

## IV.   Conclusion

The court concludes that Defendants' Motion for Partial Dismissal is due to be granted in part and denied in part. Plaintiff shall replead the Amended Complaint to cure its deficiencies as a shotgun pleading. However, Defendants' requests for the court to dismiss allegations predicated on understaffing, to recognize a heightened pleading standard for the CRIPA action, and to review the Attorney General's certification of the action are due to be denied. A separate order in accordance with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this October 8, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE