# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>              **Plaintiff;**<br><br>      v.<br><br>**STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,**<br><br>              **Defendants.** | **Civil. No. 2:20-cv-01971-RDP** |
| **MARK DUKE,** *et al.*,<br><br>              **Plaintiffs;**<br><br>      v.<br><br>**JEFFERSON S. DUNN,** *et al.*,<br><br>               **Defendants.** | **Civil No. 4:14-cv-01952-RDP** |
| **D.S.,**<br><br>              **Plaintiff;**<br><br>      v.<br><br>**JEFFERSON S. DUNN,** *et al.*,<br><br>               **Defendants.** | **Civil No. 2:20-cv-2012-RDP** |

**STIPULATED CONSOLIDATED ORDER REGARDING PROTOCOLS FOR
PRODUCTION OF DOCUMENTS AND THINGS (INCLUDING ESI)**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiffs and Defendants in these actions have agreed to this Stipulated Consolidated Order Regarding Protocols for Production of Documents and Things (Including ESI) (the "Order") in an attempt to address the burden, cost, and proportionality of discovery of documents and things, including electronically stored information ("ESI"), and respectfully request the court to enter this Order, which will govern Rule 34 discovery production obligations in these actions.

1. **PURPOSE**

This Order will govern discovery of documents and things, including ESI, in these actions, subject to any other or additional applicable orders entered by the court as it relates to the production of documents and things, including ESI.

2. **COOPERATION**

The Parties are aware of the importance the court places on cooperation and commit to cooperate in good faith throughout these actions concerning the diligent search, collection, and production of documents and things, including ESI.

3. **PRESERVATION**

The Parties agree to limit the scope of preservation as described in this section.

a. For purposes of preservation and production, "State" means the Alabama Department of Corrections, the State Personnel Board, and the Alabama Office of Information Technology.

b. For purposes of preservation and production "United States" means the Civil Rights Division and United States Attorneys' Offices for the Northern, Middle, and Southern Districts of Alabama.

c. The Parties agree that they need mot take specific, affirmative steps to preserve, for purposes of these actions, the following categories of ESI:

(1) Delivery or read receipts of e-mail;

(2) Logs or other data from video-conferences;

(3) Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

(4) Internally facing server system logs;

(5) Externally facing or hosted file transfer system logs;

(6) System data from photocopiers or fax machines;

(7) Auto-saved copies of electronic documents;

(8) Deleted, slack, fragmented, or other data only accessible by forensics;

(9) Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(10) Written or typed logs of calls made to or from landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP");

(11) Text messages; and

(12) Voicemail messages.

d. The Parties have agreed that they need not produce or provide a privilege log for communications between (i) attorneys (and associated legal staff) for the Parties; (ii) attorneys for the Parties and attorneys for another Party or third-party with which the attorneys for the Party hold a joint defense or common interest privilege; and (iii) attorneys for the Parties and their clients if the communication is for the purpose of the client seeking legal counsel or the attorney providing legal counsel—communications that merely copy an attorney and do not concern

3

seeking/providing legal advice fall outside this exception. Additionally, communications that include any individual not named in categories (i)-(iii) above fall outside this exception.

      e.      When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve duplicates in the following circumstances:

      (1)      ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, laptops, thumb drives, CDs, DVDs, etc.) or cloud-based file transfer sites does not need to be preserved pursuant to this Order.

      (2)      ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("backup systems") need not be preserved pursuant to this Order.

      f.      The Parties agree that they need not take specific, affirmative steps to preserve, for purposes of these actions, relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and/or exchanged *solely among* the following persons: (1) attorneys for the Plaintiffs (and the attorneys' staff); (2) attorneys for the Defendants (and the attorneys' staff), including attorneys with the Alabama Attorney General's Office, the Alabama Department of Corrections, the Governor's Office, attorneys for other Alabama departments or agencies, and outside counsel for the State.

---

[1] "Duplicate" means an exact identical copy of a document or ESI. If a party uses eDiscovery tools, ESI duplicates are identified with matching MD-5 hashes.

g. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to Section 3 or elsewhere in this Order.[2] The Parties need not list items that are not subject to preservation on a privilege log prepared and served in connection with discovery in these actions. Nonetheless, if a Party will use a document, thing, or ESI to support a claim or defense in its action, the Party shall produce such information despite this agreement that the Party need not preserve the information.

4. **SEARCH**

The Parties agree that if a party plans to use search terms or predictive coding in responding to a request for production pursuant to Rule 34 they will meet and confer with the other side about methods and terms in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

5. **PRODUCTION FORMATS**

The Parties agree to produce documents in the following formats:

a. <u>Hard-copy paper documents:</u> PDF format, with Optical Character Recognition where possible, or permit the requesting Party to inspect and copy hard-copy paper documents. Each document that is scanned and saved in PDF format shall be saved as a separate, individual file (*i.e.*, multiple documents should not be combined into a single PDF)—with the exception of voluminous medical or mental health records or, if agreed by the Parties, other large collections of documents concerning the same person or similar matter, transaction, or occurrence. A party producing large medical or mental health records may combine records from a single chart into a consolidated PDF file. Such consolidated PDF files may be split into multiple parts, but no PDF file may exceed 25MB in size unless the Parties agree otherwise prior to production.

---

[2] The Parties reserve their right to seek discovery of documents, things, and ESI through subpoenas to federal and state agencies or departments.

  b. <u>E-mails (and attachments thereto)</u>:  Unless the parties agree otherwise, emails and attachments should be produced in native format.  For each email custodian, a .PST, MBOX, or similar email container format shall be provided, which contains all emails responsive to a discovery request.  Individual emails (e.g., .msg files) will be produced only inside the custodian email container.

  c. <u>Excel or spreadsheet file</u>:  Native format with unlocked cells, to the extent the Party possesses the authority to unlock cells.

  d. <u>PowerPoint files</u>:  Native format.

  e. <u>Audio files and video files:</u>  Native format and, where possible, converted to a non-proprietary format that can be played with a commercially available media player.

  f. <u>ADOC Incident reporting database</u>:  Without waiving any of the State's objections to the production of documents in the incident reporting database, the Parties agree that documents and electronically stored fields and data contained in the incident reporting database shall be produced in the same electronic format as the State previously produced to the United States during the CRIPA investigation.  Specifically, all information from the incident report database will be produced based on how those documents are stored and maintained within the database (*i.e.*, do not convert non-PDF documents to PDF as part of the production).  When producing files stored in the database, the State will ensure that each file name contains (1) the abbreviation of the prison where the document or incident originated (*e.g.*, BCCF is the abbreviation for Bibb Correctional Facility); and (2) the incident number that ADOC assigned to the event in question. The Parties may later agree to production of the incident reporting database in a similar electronic format.

  g. <u>Tangible things, including production of information from a database (other than the ADOC Incident reporting database), through proprietary or vendor-managed software, and</u>

other sources from which native production is not reasonably practicable: The Parties will meet and confer to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things, documents, or ESI.

      h.      Bates-stamping: Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents (*i.e.*, "ADOC_", and "USDOJ_"). For native files, which cannot be Bates-stamped, the Parties will produce the native files without metadata removed and with a unique file name, as well as a corresponding electronic spreadsheet index that, for each native file, includes separate corresponding columns for unique file name and an assigned unique Bates number.

      i.      Production of Documents Containing Privileged Material: The Parties further agree that when producing documents and ESI records, privileged material contained within an otherwise discoverable document or ESI record should be redacted. Native documents that require redaction for privilege may be produced in the same PDF format as hard-copy paper documents above; provided, however, that the redacting party will also provide a corresponding electronic spreadsheet index with the document's unique file name, beginning Bates number, ending Bates number, and all non-privileged metadata fields (e.g., Author, Recipient(s), Date, Subject, etc.) associated with the native file in separate columns. Otherwise, absent privilege, the Parties should produce whole documents and ESI records as they are maintained in the ordinary course of business, and without omissions or redactions for relevance objections or other non-privileged based objections.

      j.      Undue Burdensomeness: Notwithstanding anything to the contrary in this Section 5, if a particular document or thing (including ESI) warrants a different production format because the format causes an undue burden, the Parties will cooperate to arrange for the mutually

acceptable production of such document or thing (including ESI) in an efficient, usable format that is proportional to the needs of the case and avoids undue burden and cost on the Parties.

6. **CLAWBACK OF DOCUMENTS PROTECTED FROM DISCOVERY**

a. Pursuant to Federal Rule of Evidence 502(d), the production of documents or information protected by attorney-client privilege, work-product protect protection, joint defense or common interest privilege, and/or any other applicable privilege this court would recognize under a federal statute or federal common law, is not a waiver of privilege in these actions or in any other federal or state proceeding if the disclosure is inadvertent; the holder of the privilege or protection took reasonable steps to prevent disclosure; and the holder promptly took reasonable steps to rectify the error.

b. If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving Party within seven days of discovery of the disclosure and provide the production date, Bates number(s), and/or other information for the receiving Party to locate the document or thing (including ESI) inadvertently disclosed by the producing Party.

c. If a production contains information that the receiving Party believes is privileged or protected and that was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) and/or other information for the producing Party to locate the document or things (including ESI) inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written request for return of the material. If the producing Party does not send a written request for return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

   d. When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester and return or destroy all inadvertently produced material identified by the producing Party.  If copies of inadvertently produced materials are located or stored on the receiving Party's backup system(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

   e. If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

   f. If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the court.  Nothing in this Order prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

   7. **COST OF PRODUCTION**

Each Party will bear the cost of producing its own documents and things (including ESI), except that a Party may petition the court for relief if the discovery production is unduly burdensome or costly relative to the proportional needs of the action.

   8. **MISCELLANEOUS**

   a. This Order may be executed in counterparts.

      b.      The terms of this Order are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.  Absent agreement, however, none of the meet and confer provisions of this Order shall be construed to extend the time within which a Party must respond to a discovery request.

      c.      Notwithstanding anything to the contrary in this Order, all disputes related to this Order shall first be brought to the Special Master. The procedure for resolving such disputes shall follow the process outlined in the forthcoming Order that appoints a Special Master.[3] A party may only seek modification of this Order from the court.  Nothing in this Order limits a Party's ability to object to any request for production, and/or the production of any document, thing, or ESI under Federal Rule of Civil Procedure 26(b)(1).

      **DONE** and **ORDERED** this October 14, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[3] The parties have agreed that a Special Master will oversee disputes in *United States v. Alabama*, 2:20-cv-1971-RDP, and *Duke et al. v. Dunn et al.*, 4:14-cv-1952-RDP, during the discovery phase of litigation. The court awaits the parties' joint proposal to finalize the role of the Special Master and the procedures that the parties are to follow if a dispute occurs.