FILED

2022 May-13  PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF ALABAMA and ALABAMA
DEPARTMENT OF CORRECTIONS,

Defendants.

Civil. Action No. 2:20-cv-01971-RDP

## SPECIAL MASTER REPORT AND RECOMMENDATION
## ON EVIDENTIARY FACT CUTOFF DATE

This Report and Recommendation is respectfully submitted to the Honorable R. David Proctor, United States District Judge, pursuant to the Court's Order dated November 9, 2021 (Doc. 70).

## Proceedings

On April 5, 2022, this Court ordered the parties to meet and confer with the Special Master and file a proposed Rule 16(b) scheduling order on or before May 6, 2022. (Doc. 82) The parties and the Special Master participated in Zoom conferences on April 15 and May 4, 2022. As a result of those conferences, the parties were able to resolve their disputes regarding specific discovery deadlines and supplementation under Rule 26(e), and they are working jointly on the Facility Inspection and Inmate Interview Protocol that will govern Plaintiff's inspections of the correctional facilities at issue in this case. The parties submitted a proposed Rule 16(b) scheduling order to the Court on May 6 (Doc. 83), and the Court entered a Scheduling Order (Doc. 84) on May 10, 2022.

The remaining issue on which agreement could not be reached concerns the Plaintiff's desire for an evidentiary fact cutoff date. When it became apparent this issue would not be resolved with a conference, the undersigned requested letter briefs on the issue. Plaintiff submitted a letter brief (attached as Ex. A) on April 22, 2022, and Defendants responded with their brief (Ex. B) on April 29, 2022. The undersigned also allowed the parties to present oral argument on their respective positions during the May 4, 2022 Zoom conference. Having considered the oral arguments and briefs of the parties, the undersigned makes the following Report and Recommendation to the Court.

*Evidentiary Fact Cutoff Date*

To allow a fair hearing on the legitimacy of a state's policies and practices, and to avoid endless hearings on constantly changing facts and potential trial by ambush, trial courts sometimes adopt a fact cutoff as part of their discovery schedules—particularly in cases hearing systemic challenges to state policies, practices, and programs. *See, e.g., Rolland v. Cellucci,* 138 F. Supp. 2d 110, 113 (D. Mass. 2001) (applying fact cutoff and noting problems with constantly shifting factual information and efforts to introduce new evidence just prior to trial); Order at 5, *Steward v. Abbott*, No. 5:10-cv-1025 (W.D. Tex. Mar. 2, 2017), Doc. No. 310 (finding evidentiary cutoff date to be "necessary and appropriate" and observing that "Federal courts have often imposed evidentiary cut off dates to ensure orderly trial management."); Order at 4, *Steward v. Young,* No. SA-5:10-CV-1025-OCG (W.D. Tex. Sept. 29, 2020), Doc. No. 695 ("Because fact cut off dates have been effective in similar cases and the fact cutoff date in this case does appear to be working, it will not be vacated. An evidentiary cutoff date will ensure fairness and finality, while promoting efficiency and preserving limited judicial resources.") (Orders attached in Ex. C).

The United States Supreme Court has endorsed the utilization of a fact cutoff date in a PLRA[1] case involving the California prison system. *Brown v. Plata*, 563 U.S. 493, 523-24 (2011). In discussing the discovery deadline imposed by the three-judge court below, the Court stated that "[o]rderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy." *Id.*

*Plaintiff's Position*

The United States takes the position the Court should impose an evidentiary fact cutoff date, *i.e.*, a date after which any evidence created or otherwise not previously disclosed may not be presented or considered at trial, except for good cause. Plaintiff requests that the close of discovery date (March 5, 2024) should also serve as the fact cutoff date for establishing liability. Plaintiff argues that such a fact cutoff will allow the Court to ensure that all evidence presented at trial is subject to reasonable discovery, will avoid unfair advantages if Defendants seek to admit last-minute alleged corrective actions, and will avoid delay and the continued reopening of discovery. Plaintiff points out that a party may still present any potentially relevant evidence after the fact cutoff at a remedy hearing subsequent to trial and any liability finding.

The United States asserts three arguments in support of a fact cutoff: (1) a cutoff is appropriate and necessary in this complex, pattern or practice case; (2) the PLRA permits a fact cutoff; and (3) Defendants' cited authority in the Rule 26(f) report is inapposite.[2]

---

[1] Prison Litigation Reform Act, 18 U.S.C. § 3626. The PLRA governs all litigation brought by prisoners in both federal and state custody with respect to prison conditions.

[2] In their brief on this issue to the Special Master, Defendants did not cite the three cases mentioned in the Rule 26(f) report. In the Rule 26(f) report, Defendants asserted that *Ex parte Young,* 209 U.S. 123 (1908), *National Ass'n of Bds. of Pharmacy v. Board of Regents of the Univ. Sys. of Ga.,* 633 F.3d 1297 (11th Cir. 2011), and *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health & Rehab. Servs.*, 225 F.3d 1208, 1221 (11th Cir. 2000) stand for the proposition that "a

*Defendants' Position*

Defendants assert that a fact cutoff date is inappropriate in the context of this injunctive-relief action. Defendants claim Plaintiff primarily relies on cases involving claims for monetary damages and point out this is not a damages case. Unlike a damages case, Defendants say liability in this action depends upon circumstances as they exist at the time of trial, not circumstances as of an arbitrary, earlier date. Thus, they argue, the Scheduling Order should not include a fact cutoff date.

Defendants say Plaintiff's arguments make clear the United States views this action as a race against the State's "well-publicized efforts to improve conditions within ADOC facilities." They argue, "DOJ apparently fears that the State's efforts will succeed before DOJ can rush this action to trial, thereby depriving DOJ of a 'win' in the form of a liability finding." Defendants take the position that this approach violates CRIPA's stated purpose of cooperative collaboration between DOJ and states to correct deficiencies.[3] Defendants posit that Plaintiff "seeks to literally 'cutoff' the evidence the State may present of its remedial efforts, which also contravenes the express mandates of CRIPA. This approach contravenes both the law and common sense."

_____

fact 'cut-off date' is contrary to applicable law concerning entry of a permanent injunction against a state and its correctional department." (Doc. 42 at 7). The undersigned has reviewed these cases and agrees with Plaintiff they are not applicable. First, none of the cases involves a state correctional department, and second, none of them mentions a fact cutoff date.

[3] *See* 18 U.S.C. § 1997b(C) (requiring Attorney General, before filing CRIPA action, to consult with a state "regarding financial, technical, or other assistance which may be available from the United States and which the Attorney General believes may assist in the correction of such conditions").

Defendants also assert that the PLRA dictates that a fact cutoff is not appropriate because this Court may only base liability upon a constitutional violation existing at the time of trial.

*Analysis*

According to Plaintiff, a fact cutoff date is necessary to allow adequate time for expert discovery and trial preparation without undue delay. By establishing a cutoff date for relevant facts at the close of all discovery (March 5, 2024), the United States seeks to ensure all evidence to be presented at trial is subject to reasonable discovery, and it seeks to prevent unfair advantages to the Defendants, who may seek to admit as evidence changes in the conditions of the prisons occurring after the fact discovery deadline.

For the reasons set forth below, it is **respectfully recommended** that this Court enter a fact cutoff deadline of March 5, 2024 (simultaneous with the discovery deadline) and order that any evidence created after that date, or otherwise not disclosed before the fact discovery deadline, may not be presented or considered at trial, except for good cause shown.

I.      *A Fact Cutoff is Necessary and Appropriate to Ensure Fairness and Finality.*

It is within the sound discretion of this Court to enter a scheduling order containing a deadline for which all relevant facts must be determined. Courts maintain the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *accord Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Federal Rule of Civil Procedure 16(b)(3) explicitly authorizes a court's scheduling order to modify the timing and extent of discovery. Fed. R. Civ P. 16(b)(3). Courts may also "consider and take appropriate action on . . . adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple

parties, difficult legal questions, or unusual proof problems," as well as to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ P. 16(c)(2).

Citing to *Steward,* a case brought by the United States regarding Texas's statewide nursing practices, and to *Brown v. Plata,* Plaintiff argues that "[a] fact cutoff that ensures an orderly presentation of evidence is particularly appropriate and necessary in civil rights cases alleging systemic violations like this one, including in actions brought by the United States." This is particularly true, Plaintiff argues, because of this case's complexity and the evolving circumstances in Defendants' prison system for men.[4]

Plaintiff has presented cases in which the courts established evidentiary fact cutoff dates in civil rights cases alleging systemic violations similar to this one, including actions brought by the United States against a state. *See e.g. Steward v. Abbott*, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (entering fact cutoff deadline prior to determining liability); *Brown v. Plata,* 563 U.S. 493, 523 (2011) (evidence of changed prison conditions after the fact cutoff date were not admissible).  In *Steward*, plaintiffs, including the United States, claimed Texas unnecessarily segregated individuals with intellectual and developmental disabilities in nursing facilities in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *Steward v. Abbott*, 189 F. Supp. 3d 620, 628 (W.D. Tex. 2016). The United States District Court for the Western District of Texas imposed and subsequently reaffirmed a fact cutoff date more than one year and seven months before trial. *See* Ex. C. The *Steward* court found the fact cutoff date was necessary and appropriate to "ensure fairness and finality, while promoting efficiency and

---

[4] With regard to complexity, the undersigned acknowledges that the United States' Second Amended Complaint spans over 60 pages and alleges four pattern or practice violations currently occurring across 13 Alabama prisons.

preserving limited judicial resources." Exhibit C. at 5. The court further reasoned that, because the case had already been pending for six years, the Defendants had already been given "ample time to make changes and improvements to their policies and practices. They [could] continue to do so, but [the] litigation should not drag on for years as a result of any changes that may be implemented." *Id*. Further, the Defendants would not be prejudiced since "Plaintiffs [were] simply seeking injunctive relief based on Defendants' alleged noncompliance with federal law." *Id*.

In *Brown v. Plata*, the Supreme Court approved the lower court's use of a fact cutoff in a complex civil rights case concerning the overcrowding of California's prison system. 563 U.S. 493, 523 (2011). A joint panel of the Northern and Eastern Districts of California imposed a fact cutoff due to the constantly changing conditions and services of California's prisons and the state's efforts to implement reforms. *Plata v. Schwarzenegger*, No. 3:01-cv-01351-THE (E.D./N.D. Cal), Order for Pre-Trial Preparation, July 2, 2005, Doc. No. 1294 (three-judge court) (imposing a fact cutoff date almost three months before trial began and excluding any evidence of changed prison conditions that occurred after the cutoff date).

Plaintiff points out that other courts outside the prison context have imposed discovery and fact cutoff dates in similarly complex cases. *See e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013); *Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 30 n.4 (D. Mass. 2006); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986).

In response, Defendants offer no cases where courts refused to impose a fact cutoff but instead attempt to distinguish the cases cited by Plaintiff. First, they assert that both *Apple, Inc.* and *Steinberg* do not involve prison conditions. Second, they argue that *Apple, Inc.* is inapposite because it involved a "partial retrial" in which the trial court ruled the evidence to be presented at

the upcoming trial should "hew as closely as possible to that presented at the original trial." And they argue that *Steinberg* is distinguishable because any evidence beyond the cutoff date in that case was not relevant to the damages claimed based on omissions from an offering prospectus.

With regard to the two prison cases cited by Plaintiff, Defendants maintain that *Brown v. Plata* has no application here because the three-judge court's decision in that case "was limited to the issue of remedy," and liability had already been determined. Defendants attempt to minimize *Steward* by arguing that it "simply relied on *Brown* and the damage cases cited above [*Apple, Inc.* and *Steinberg*] in imposing a fact cutoff."

Despite factual differences in the cases cited by Plaintiff, the undersigned finds that they all stand for fundamental notions underpinning the Federal Rules of Civil Procedure—fairness and efficiency. *See Des Isles v. Evans,* 225 F.2d 235, 236 (5th Cir. 1955) (quoting *Alabama Great Southern Railroad Co. v. Johnson*, 140 F.2d 968 (5th Cir. 1944) ("The rules have for their primary purpose the securing of speedy and inexpensive justice in a uniform and well-ordered manner; they were not adopted to set traps and pitfalls by way of technicalities for unwary litigants."). The "fact cutoff" cases cited by Plaintiff all rely on these principles. *See Brown,* 563 U.S. at 523 ("Orderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy."); *Steward,* Ex. C. at 5 (fact cutoff date was necessary and appropriate to "ensure fairness and finality, while promoting efficiency and preserving limited judicial resources"); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013) (holding evidentiary cutoff was "in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources" and exclusion of evidence after cutoff was "necessary to the efficient management of this trial and is in the interests of justice"); *Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 30 n.4 (D. Mass. 2006)

(imposing fact cutoff with exception for good cause as "obviously necessary" to prevent prejudice to plaintiffs and pointing out that evidence after cutoff date could be considered for determining an appropriate remedy); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986) (finding district court acted within its discretion imposing cutoff date in class action litigation alleging violations of securities laws where post-cutoff evidence would only lengthen the trial and confuse the jury).[5]

The undersigned concurs with the reasoning of the district court in *Apple, Inc.* that a fact cutoff date is necessary and appropriate:

> This evidentiary cut-off was also set in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources. While the Court acknowledges that imposing this cut-off inevitably results in the exclusion of some amount of relevant, probative evidence, the Court finds that fairness, efficiency, and the need for a coherent record on appeal outweigh any harm caused by this exclusion for the majority of categories of trial and post-trial evidence the parties now seek to introduce. The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties—both under the Federal Rules of Evidence, and as part of the Court's inherent authority—and the Court finds that the exercise of this discretion to exclude the parties' experts' reliance on certain evidence is necessary to the efficient management of this trial and is in the interests of justice.

No. 11cv01846-LHK, 2013 WL 5737310, at *2.

II.    *The Burden of not Using a Fact Cutoff Date is Greater on the United States than the Burden Experienced by Defendants if a Fact Cutoff Date is Implemented.*

The undersigned recognizes that each side may suffer some prejudice depending on whether a fact cutoff date is implemented. But the purpose of a pretrial scheduling order as a

---

[5] The United States District Court for the District of Oregon also imposed an evidentiary fact cutoff date in a case challenging Oregon's segregation practices relating to the employment of disabled persons. *Lane v. Kitzhaber,* No. 3:12-cv-00138-ST (D. Or. Oct. 2, 2014), Amended Scheduling Order, Doc. 259 (attached as Ex. D).

procedural tool is to ensure the economical and efficient trial of every case on its merits without chance or surprise. *Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir. 1980), *cert. denied*, 450 U.S. 918. Balancing the equities here reveals that the prejudice to Plaintiff without the use of a fact cutoff date is more severe than the prejudice to Defendants.

As Defendants have pointed out, if a fact cutoff date is implemented, there is a potential that some of evidence regarding conditions or operations in the Defendants' prisons may be "stale." On appeal to the Supreme Court in *Brown v. Plata,* the state similarly protested that the fact cut-off date had precluded it from providing the most current information about its corrective actions and claimed that such an evidentiary limitation presented constitutional concerns with respect to the entry of injunctive relief against state officials. *See* Appellants' Br. in *Schwarzenegger v. Plata*, 2010 WL 4688116, at **27-30 (S. Ct. Aug. 27, 2010). The state reiterated this point at oral argument to no avail, with several Justices noting the impossibility of conducting a trial without an evidentiary cut-off. *See* Tr. of Oral Argument in *Schwarzenegger v. Plata*, 2010 WL 4859507, at ** 15-16, 28, 30-31, 33-35 (S. Ct. Nov. 30, 2010) (Justice Kennedy commenting that there must be some end to the presentation of facts; Justice Ginsburg stating that the cut-off applied to both parties equally and met the state's request to end expert tours of state facilities; and Justice Sotomayor noting that evidence concerning actions taken after the evidentiary cut-off may be presented on the issue of remedy).

While there will be some period of months between the fact cutoff and the trial in this matter, having a fact cutoff date allows the parties to complete discovery and to present witnesses at trial based on the facts in existence on a given date.  And using a fact cutoff date (March 5, 2024) nearly twenty-one months from now provides appropriate incentives for Defendants to take prompt action if they truly intend to remedy problems, rather than attempting to secure tactical

advantages on the eve of trial. Although a fact cutoff may mean the trial could involve some dated evidence, it also provides the Court and the parties with an efficient, fair, and reliable approach to assessing liability. It also is worth noting that a fact cutoff date will apply equally to the United States and limit its ability to use incidents of harm or other evidence occurring after the date.

Defendants also will have two additional safety valves: (1) the ability to move the Court to present post-cutoff evidence "for good cause shown;" and (2) the ability to present potentially relevant post-cutoff evidence at any subsequent remedy hearing. So, while there admittedly may be some burden to Defendants created by the use of a fact cutoff date, it is necessary to ensure fair, efficient, and orderly proceedings, and Defendants always have the ability to seek leave from the Court to submit additional evidence. The Court can then decide whether good cause exists to consider the new evidence for liability purposes, or the Court can opt to hear the evidence at a subsequent remedy proceeding. Each provides the appropriate flexibility to prevent trial by ambush while preserving the ability to always receive highly relevant evidence.

Thus, the entry of a fact cutoff deadline does not prevent Defendants from submitting evidence of changed circumstances.  It merely provides the parties, and this Court, a period of time to truly determine the state of prison conditions (without last-minute, alleged corrective actions) and a period of time to switch gears and prepare for trial. If there is nothing Defendants must change about the prison conditions, then imposing a fact cutoff date is harmless. If Defendants feel they need to make some changes to defend against liability, then they will have had more than three years since the filing of this case to implement those changes before the March 5, 2024 fact cutoff date.

On the other hand, the prejudice to Plaintiff if there is no fact cutoff date is more severe than any prejudice to Defendants. The parties have asymmetrical access to current information

about the prisons controlled and operated by Defendants. The undersigned agrees with Plaintiff that, at the close of discovery, the United States effectively loses access to information held by the State about any changes. This is particularly true with regard to changes that occur behind locked prison doors. If, in this pattern or practice civil rights case, Defendants attempted to implement reforms on the eve of trial to thwart the United States' trial strategy, they would be creating purported evidence that the adversarial process could not fairly test. And even if Plaintiff was permitted to take additional discovery after the discovery cut-off to test these new actions, the incentive to refrain from implementing any planned reforms until late in the litigation would remain high, resulting in a corresponding waste of party and judicial resources on further discovery and motion practice concerning modifications that were implemented after the known discovery cut-off.

Thus, it is necessary to impose a fact cutoff date, in a systemic civil rights case like this, where the possibility of evolving facts and new information is endless, to avoid trial by ambush and to allow all parties to rely upon, test, and present the same factual evidence and to avoid the problem of a factual "moving target." If there is a fact cutoff, the parties' experts can fairly assess any modifications implemented in forming their opinions and preparing their disclosures. These opinions will be tested through depositions, relied upon in summary judgment motions, and challenged in any motions *in limine*. Conversely, allowing Defendants to make further, last-minute changes on the eve of trial, in the absence of good cause, and permitting new facts to be introduced at trial, would thwart the entire purpose of fact and expert discovery deadlines. Without sufficient opportunity to discover and test the facts that may be submitted as evidence by the Defendants, the United States would be prejudiced.

The prejudice created by evolving facts and new information would not be limited to Plaintiff but also would be visited on the Court and its limited resources. Any consideration of such evidence would require supplemental discovery up to, or even during the trial, and would require the Court to evaluate the reliability of information not fairly tested by full and timely discovery. The Court might end up facing a "chasing its tail" predicament, because discovery could never really catch up with new developments, many of which might be driven by trial exigencies.

Finally, allowing either party to present recent evidence that post-dates the fact and expert discovery deadlines could result in considerable additional expenses. Plaintiff and its experts likely would need to conduct new tours of facilities, generate new reports, and be subjected to new depositions. Defendants might need to have their rebuttal experts review these new opinions and generate their own, new reports. Key state officials who had been deposed prior to the fact discovery deadline would have to be re-deposed on the eve of trial.

For all these reasons, a fact cutoff applied equally to both parties levels the playing field, prevents surprise, provides reliable evidence for the Court, and guards against extended discovery deadlines and unnecessary delays. Thus, balancing the equities, a fact cutoff date provides more benefit to the parties, and to this Court, than it does detriment.

III.     *The PLRA Does Not Prevent Entry of a Fact Cutoff Date.*

Defendants' primary argument against a fact cutoff date is centered around the Prison Litigation Reform Act, 18 U.S.C. § 3626, and concerns the constitutionality of imposing a fact cutoff date at the liability phase of the litigation.  Defendants argue that by establishing a fact cutoff date six months before trial, there may no longer be a "current and ongoing" violation at the time of trial, which could result in this Court basing liability on a stale violation.  Defendants, citing to *Thomas v. Bryant,* 614 F.3d 1288, 1320 (11th Cir. 2010) and *Farmer v. Brennan*, 511

U.S. 825, 845 (1994), argue the PLRA requires a "then-existing" constitutional violation for liability to attach. In other words, if the injunction is based on a violation at some previous time, and does not exist at the time of entry, it is inappropriate.

Defendants are correct this Court must find a constitutional violation in order for there to be liability. *See* 18 U.S.C. § 3626 (a)(1) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the ***violation of the Federal right***, and is the least intrusive means necessary to correct the ***violation of the Federal right.***") (emphasis added). However, Defendants' interpretation and application of both *Thomas* and *Farmer* to the instant case is misplaced. In *Thomas*, the Eleventh Circuit stated, "the 'current and ongoing' requirement is distinct from the standard governing the initial entry of injunctive relief. 614 F.3d 1288, 1320 (11th Cir. 2010) (citing *Cason v. Seckinger*, 231 F.3d 777, 784 (11th Cir. 2000)). "The PLRA's need-narrowness-intrusiveness limitation [not "current and ongoing"] governs the initial entry of injunctive relief in prison litigation cases." *Id.* Importantly, the *Thomas* court found that neither the prisoner being moved to a different facility nor the defendant's subsequent reforms absolved the defendant's liability or mooted the need for an initial injunction. *Id.* at 1318-21.

Defendants also quote the following language from *Farmer* for their assertion there must be a "then-existing" constitutional violation:

> In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," *Helling, supra*, at 36, 113 S. Ct., at 2482: their attitudes and conduct at the time suit is brought and persisting thereafter. An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L. Ed. 978 (1952), must adequately plead such a violation; to

14

survive summary judgment, he must come forward with evidence
from which it can be inferred that the defendant-officials were at the
time suit was filed, and are at the time of summary judgment,
knowingly and unreasonably disregarding an objectively intolerable
risk of harm, and that they will continue to do so; and finally to
establish eligibility for an injunction, the inmate must demonstrate
the continuance of that disregard during the remainder of the
litigation and into the future. In so doing, the inmate may rely, *in
the district court's discretion*, on developments that postdate the
pleadings and pretrial motions, as the defendants may rely on such
developments to establish that the inmate is not entitled to an
injunction.[9] . . . [FN9] At the same time, even prison officials who
had a subjectively culpable state of mind when the lawsuit was filed
could prevent issuance of an injunction by proving, during the
litigation, that they were no longer unreasonably disregarding an
objectively intolerable risk of harm and that they would not revert
to their obduracy upon cessation of the litigation.

511 U.S. 825, 845–46 (1994) (emphasis added). However, this merely provides that the parties

can offer evidence of facts arising during the litigation and does not prevent this Court from

entering a fact cutoff deadline. *Thomas* provides "the irreparable-injury requirement may be

satisfied by ***demonstrating a history of past misconduct*** which gives rise to an inference that future

injury is imminent." 614 F.3d at 1318 (emphasis added) (citation omitted); *see also Porter v.

Clarke*, 923 F.3d 348, 367–68 (4th Cir. 2019) (finding the PLRA does not "displac[e] equitable

authority to initially impose prospective relief, even when a violation is not "current and

ongoing"). Moreover, Defendants fail to acknowledge the discretion given to a district court in

allowing (or not allowing) evidence of post-pleading developments.

    Although there must be a constitutional violation for Defendants to be found liable, based

on the holding in *Thomas*, it is not required that there be evidence of a "current and ongoing"

constitutional violation for the initial entry of an injunctive relief.   Plaintiff points out that

Defendants lost this same "current and ongoing" argument in the *Braggs* case concerning mental

health care in the Alabama prison system. *Braggs v. Dunn,* No. 2:14cv601-MHT, 2020 WL

5517262 (M.D. Ala. Sept. 14, 2020) ("By its plain terms and under the interpretation of the Eleventh Circuit, [PLRA] § 3626(a)(1)(A) contains no requirement that the court find a current and ongoing violation of federal law."). Setting a date by which to determine the relevant facts is not inconsistent with the requirement of a constitutional violation. Instead, entering a fact cutoff date acknowledges the likelihood Defendants may continue to implement changes following the discovery deadline and the burden such activity will pose on discovery, the parties, and the Court.

The Court may use its sound discretion in managing its affairs in accordance with the Federal Rules and may impose a fact cutoff date in order to ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. Indeed, similar to excluding a witness not included on a party's witness list, a fact cutoff promotes a just, orderly, and expeditious trial without unfair surprise and prejudice to the opposing party. In fact the Supreme Court held in a PLRA case that "orderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy." *Brown v. Plata*, 563 U.S. 493, 523 (2011) (stating trial court's decision to enter a fact cutoff date was within its sound discretion). In the instant matter, a fact cutoff will provide the Court with evidence subject to adversarial discovery and alleviate the potential need to continuously reopen discovery to test the evidence. The undersigned is not persuaded that the PLRA dictates a different result.

## RECOMMENDATION

IT THEREFORE IS RESPECTFULLY RECOMMENDED that this Court enter a provision in the Scheduling Order containing an evidentiary fact cutoff date of March 5, 2024 (simultaneous with the discovery deadline) and ordering that any evidence created after that date, or otherwise not disclosed before the fact discovery deadline, may not be presented or considered at trial, except for good cause shown.

Pursuant to Section 4(a) of this Court's November 9, 2021 Order (Doc. No. 70), objections to this Report and Recommendation are due seven days after the issuance of the Report and Recommendation. Briefs in support of the Report and Recommendation are due seven days after the objection. Replies are due five days after the brief in support. The parties agreed in conference with the undersigned that this briefing schedule was appropriate.

Respectfully recommended on May 13, 2022.


*/s/ R. Bruce Barze, Jr.*
Special Master


R. Bruce Barze, Jr.
BARZE TAYLOR NOLES LOWTHER LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.


*/s/ R. Bruce Barze, Jr.*
Special Master