**Exhibit A**



**U.S. Department of Justice**

Civil Rights Division

---

*950 Pennsylvania Avenue, NW – 4CON*
*Washington, DC 20530*

April 22, 2022

**Via Electronic Mail**

R. Bruce Barze, Jr.
Barze Taylor Noles Lowther LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
bbarze@btnllaw.com

      Re:    Scheduling Order -- Fact Cutoff
               *United States v. Alabama*, No. 2:20cv01971-RDP (N.D. Ala.)

Dear Special Master Barze:

      Pursuant to your request at our April 15, 2022, conference, the United States submits this letter brief summarizing why the Court's forthcoming scheduling order should include an evidentiary fact cutoff. A "fact cutoff date" represents the date after which any evidence created or otherwise not previously disclosed may not be presented or considered at trial, except for good cause. The United States proposes that the close of discovery date should serve as the fact cutoff date for establishing liability. A Party could still present any potentially relevant evidence after the fact cutoff at a remedy hearing subsequent to trial and any liability finding. A fact cutoff would allow the Court to ensure that all evidence that may be presented at trial is subject to reasonable discovery, to avoid unfair advantages if Defendants seek to admit last-minute alleged corrective actions, and to avoid delay and the continued reopening of discovery.

      As outlined below, ample case precedent supports imposing a fact cutoff. The scheduling order should include a fact cutoff because: (1) the cutoff is appropriate and necessary in this complex, pattern or practice case; (2) the Prison Litigation Reform Act, 18 U.S.C. § 3626, permits a fact cutoff; and (3) Defendants' cited authority in the Rule 26(f) report is inapposite.

      **I.**    **A FACT CUTOFF IS APPROPRIATE AND NECESSARY.**

      Courts maintain the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *accord Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Akin to excluding witnesses and exhibits that a party left off its pretrial lists, a fact cutoff promotes a just, orderly, and expeditious trial without unfair surprise and prejudice to the opposing party.

*See* Fed. R. Civ. P. 26(a)(3); Fed. R. Civ. P. 37(c). A court necessarily must impose some deadline cutoff for submitting relevant evidence to ensure an orderly and just resolution of liability.

A fact cutoff that ensures an orderly presentation of evidence is particularly appropriate and necessary in civil rights cases alleging systemic violations like this one, including in actions brought by the United States. *See, e.g.*, Order at 5, *Steward v. Abbott*, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017), (United States case regarding Texas's statewide nursing case), Doc. 301 [Attached]; *Brown v. Plata,* 131 S. Ct. 1910, 1935 (2011) (regarding California prison system). This is so because of the case's complexity and the evolving circumstances in Defendants' prison system for men. As for complexity, the United States' Second Amended Complaint spans over 60 pages, and alleges four pattern or practice violations currently occurring across 13 Alabama prisons. (Doc. 71). Rule 16 explicitly authorizes a court's scheduling order "to consider and take appropriate action on . . . adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," as well as to "facilitate[e] in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c). A fact cutoff here would appropriately and necessarily account for the complex issues and size of this statewide pattern or practice case. The cutoff would also facilitate a more just, speedy, and inexpensive resolution of liability by providing the Court with evidence subject to adversarial discovery and alleviating the potential need to reopen discovery continuously.

State governmental policies, practices, and programs invariably change over time. Various factors cause these changes, such as state leadership, legislative actions, political and economic influences, and pending litigation. At the close of discovery, the United States effectively loses access to information held by the state about these changes. This is especially true with regard to changes that occur behind locked prison doors. Moreover, in pattern or practice civil rights cases, state defendants often attempt to implement reforms on the eve of trial to thwart the United States' trial strategy, and create purported evidence that the adversarial process cannot fairly test. The cutoff, of course, would apply equally to the United States and potentially limit its use of incidents of harm or other evidence occurring after the date. As above, the fact cutoff facilitates a just, level playing field, with more reliable evidence for the Court and guards against unnecessary delays and extending discovery deadlines.

As the United States indicated during our conference, a Party can always move the Court to consider major developments that occur between the fact cutoff and trial. The Court can decide whether good cause exists to consider the evidence for liability, or whether the Court will hear the new evidence at any remedy proceeding. This provides the appropriate flexibility to prevent an unjust trial by surprise while preserving the ability to always receive highly relevant evidence.

Ample precedent supports imposing a fact cutoff as appropriate and necessary in this complex civil rights case. Indeed, the Supreme Court in *Brown v. Plata,* 131 S. Ct. 1910 (2011), approved the lower court's use of a fact cutoff in a complex, systemic civil rights case concerning the California prison system. *Id.* at 1935. Despite potential corrective actions by the state, the Court approved the lower court's use of the fact cutoff and noted that "[o]rderly trial

management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy." *Id.*

Similarly, the court imposed a fact cutoff in another systemic, complex civil rights action where the United States as plaintiff-intervenor alleged Texas was liable for engaging in a pattern or practice of violating the Americans with Disabilities Act, 42 U.S.C. § 12133, in state nursing care across Texas. *See* Order at 5, *Steward v. Abbott*, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017), Doc. 301 [Attached]. The court found that "an evidentiary cut-off date [was] necessary and appropriate," reasoning that:

> [The cuttoff] date will ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. It will not prejudice Defendants as Plaintiffs are simply seeking injunctive relief based on Defendants' alleged noncompliance with federal law. Liability will be determined based on evidence prior to the fact cut off date, and any change in compliance after that date may be brought to the Court's attention in determining the breadth and scope of remedial relief.

*Id.* Many other courts have imposed discovery and fact cutoff dates in similar complex cases. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013) (holding evidentiary cutoff was "in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources" and exclusion of evidence after cutoff was "necessary to the efficient management of this trial and is in the interests of justice" in complex patent action); *Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 30 & n.4 (D. Mass. 2006) (imposing fact cutoff with exception for good cause as "obviously necessary" to prevent prejudice to plaintiffs, and that subsequent evidence could be considered for an appropriate remedy); *Rolland v. Cellucci (Rolland I)*, 138 F. Supp. 2d 110, 113 (D. Mass. 2001) (applying fact cutoff and noting problems with constantly shifting factual information and efforts to introduce new evidence just prior to trial); *accord Rolland v. Cellucci (Rolland II)*, 198 F. Supp. 2d 25, 36 (D. Mass. 2002); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986) (finding district court acted within its discretion in imposing cutoff date in class action litigation alleging violations of securities laws); *see also NAACP v. City of Myrtle Beach*, 503 F. Supp. 3d 390, 399 (D.S.C. 2020) (imposing scheduling order's cutoff to evidence produced after discovery because the "other party was not able to utilize the full discovery process to formulate its response" and "[t]his disadvantage would be prejudicial"); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 553 (N.D. Cal. 2009) (refusing to allow additional discovery on last minute damages theory although trial was more than 14 months away and noting that "because of the complexity of this case, the time between the fact discovery cutoff and trial must necessarily be extensive").

## II.   THE PLRA PERMITS A FACT CUTOFF.

Defendants cite the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626, in the 26(f) Report, Doc. 42, seemingly as a bar to a fact cutoff. Case law dictates otherwise. First and foremost, the above noted Supreme Court *Plata* opinion approved a fact cutoff in a case explicitly addressing the PLRA. *See generally* 131 S. Ct. 1910.

Second, Defendants' suggestion that the PLRA requires a "current and ongoing" violation here also conflicts with the controlling Eleventh Circuit decision in *Thomas v. Bryant*,

614 F.3d 1288 (11th Cir. 2010).  The PLRA establishes standards for the initial entry of an injunction concerning a prison, and for subsequent termination of that existing injunction.  For initial entry, the PLRA mandates that the injunction be "narrowly drawn, extend[ ] no further than necessary to correct the violation of the Federal right, and [ ] the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  The PLRA authorizes a motion to terminate an existing injunction after two years, which the court must grant unless it "makes written findings based on the record that prospective relief remains necessary to correct a *current and ongoing* violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."  *Id.* § 3626(b)(3) (emphasis added).

The Eleventh Circuit in *Thomas* recognized the absence of "current and ongoing" in the initial injunction entry standard and rejected that a current and ongoing violation is necessary for initial entry.  Rather, the court found the applicable standard to be "the well-established law that injunctive relief is available in the first instance 'to prevent a substantial risk of serious injury from ripening into actual harm,' i.e., to prevent future harm."  614 F.3d at 1319-20 (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)); *see also* 614 F.3d at 1318 ("In such circumstances, the irreparable-injury requirement may be satisfied by *demonstrating a history of past misconduct*, which gives rise to an inference that future injury is imminent." (emphasis added) (citation omitted)); *accord Porter v. Clarke*, 923 F.3d 348, 367-68 (4th Cir. 2019) (finding PLRA does not "displac[e] equitable authority to *initially* impose prospective relief, even when a violation is not "current and ongoing").  Importantly, the Eleventh Circuit found that neither the prisoner moving to a different prison nor the defendant's subsequent reforms absolved defendant's liability or mooted the need for the initial injunction.  614 F.3d at 1318-21.

Finally, Defendants' officials recently lost this same "current and ongoing" argument in the *Braggs* case concerning mental health care in the Alabama prison system.  *Braggs v. Dunn*, No. 2:14cv601-MHT, 2020 WL 5517262, at *1-3 (M.D. Ala. Sept. 14, 2020) (Thompson, J.) ("By its plain terms and under the interpretation of the Eleventh Circuit, [PLRA] § 3626(a)(1)(A) contains no requirement that the court find a current and ongoing violation of federal law.").

### III.   DEFENDANTS' CITED CASES ARE INAPPOSITE.

Defendants cite three inapposite cases in the Rule 26(f) report.  The first case, *Ex parte Young*, 209 U.S. 123 (1908), concerns state sovereign immunity against suits by private parties and establishes an exception to that immunity for injunctive relief against state officials.  *See generally id.*  That *Ex parte Young* exception for private plaintiffs applies only to injunctive relief, not retrospective damages.  *Edelman v. Jordan*, 415 U.S. 651, 678 (1974).  The *Ex parte Young* line of cases regarding private plaintiffs, however, has no bearing on this case by the United States.  State sovereign immunity does not apply to suits by the federal government.  *See, e.g.*, *West Virginia v. United States*, 479 U.S. 305, 311 (1987); *United States v. Fla.*, 938 F.3d 1221, 1250 (11th Cir. 2019).

Defendants also cite *Fla. Ass'n of Rehab. Facilities, Inc., v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1221 (11th Cir 2000), which again concerns state sovereign immunity and particularly immunity from retrospective damages.  The Eleventh Circuit reiterated that state sovereign immunity blocks a private party from obtaining retrospective

damages, but not prospective injunctive relief. *Id.* at 1219-21. The court found state sovereign immunity blocked the portion of a district court's injunction that effectively required the state to pay retrospective damages. *Id.* at 1221, 1226. Here, the United States seeks only prospective injunctive relief. And more importantly, as stated above, state sovereign immunity is inapplicable to the United States' suit.

Finally, Defendants cite *National Ass'n of Bds. of Pharmacy v. Board of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297 (11th Cir. 2011), which also addresses state sovereign immunity that is inapplicable to the United States here. *See* 633 F.3d at 1307-08. Moreover, the case actually supports the entry of a fact cutoff date. This case concerned whether a college professor ceasing the teaching of a class mooted a copywrite claim. *Id.* at 1300, 1311. The Eleventh Circuit found that, like here, the complaint alleged a then-current violation and the defendant's voluntary cessation of the copywrite infringement after the complaint did not moot the case for injunctive relief. *Id.* at 1308-12; *see also id.* at 1309 ("Otherwise a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." (citation omitted)). Similarly here, Defendants' voluntary cessation and unverified corrective actions after the fact cutoff potentially go toward the scope of any remedy, not liability.

### IV.   CONCLUSION

As outlined above, ample case precedent supports imposing a fact cutoff. A fact cutoff is appropriate and necessary in this complex pattern or practice case, and neither the PLRA nor Defendants' cited cases pose a bar to the cutoff. A Party can always move the Court to consider major developments that occur between the fact cutoff and trial, and the Court can decide whether good cause exists to consider the evidence for liability, or more appropriately consider it later at any remedy proceeding.

Sincerely,

*s/ Matthew J. Donnelly* -
MATTHEW J. DONNELLY
Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616-2788
matthew.donnelly@usdoj.gov

cc via email:  counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**
MAR 0 2 2017
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| ERIC STEWARD, by his next friend and mother, Lillian Minor, et. al. ) ) ) Plaintiffs ) ) v. ) ) CHARLES SMITH, in his official capacity as the Executive Commissioner of Texas' Health and Human Services Commission, et. al. ) ) ) ) ) ) Defendants ) ) | |
| THE UNITED STATES OF AMERICA ) ) Plaintiff-Intervenor ) ) v. ) ) THE STATE OF TEXAS ) ) Defendant ) | CIVIL ACTION NO. SA-10-CA-1025-OG A CLASS ACTION |

# ORDER

Pending before the Court is the parties' joint motion for entry of proposed scheduling order (docket no. 307). Both sides seek a new scheduling order but they disagree on several issues: the scope and time period for discovery, the timing of expert reports, whether an evidentiary cut off date should be imposed, and a trial date. The Court has reviewed the parties' plans and proposals, and finds Plaintiffs/ United States' plan to be more realistic and tailored to the specific needs of this case.

First, Plaintiffs seek a trial date in May 2018 and Defendants seek a trial date in July 2020.[1] This case has already been pending for over six years. Three of the original named plaintiffs are now deceased.[2] Plaintiffs allege that thousands more are unnecessarily institutionalized and segregated from the community. If the case is not tried until 2020, it will remain pending for ten years. In the interests of justice, this case should be tried on the earliest possible date. Delays and extensions are sometimes unavoidable, but the Court expects the parties to work diligently toward the earliest possible trial date.

Second, the parties disagree on whether expert disclosures should be simultaneous or seriatum. Based on the history of this case, the Court's experience with similar cases, and the parties' arguments herein, the Court finds that the expert disclosures should be simultaneous. This will promote efficiency, minimize cost, and avoid multiple rounds of expert reports and delays that could disrupt the trial schedule.[3]

Third, the parties disagree on the scope of discovery and the time needed to complete it. Under the rules, the Court and the parties have an obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. The 2015 amendments were intended to reduce hyperadversary behavior, with proportionality as the main focus. The parties have a duty and obligation to consider proportionality in making discovery requests, and seek only what is necessary in light of related burdens. Fed.R.Civ.P. 26(b)(1). Defendants' scorched earth

---

[1] Defendants previously agreed to a trial date within two years after the commencement of discovery, which has already begun (docket no. 233). Their new proposed trial date in July 2020 would be four years after the commencement of discovery.

[2] *See* docket nos. 171, 185, 190.

[3] As Plaintiffs note and Defendants do not dispute, the parties have "spent years negotiating about the issues that will be the subject of expert testimony." Docket no. 307, p. 12.

2

approach to discovery in general, and depositions in particular, goes far beyond what is expected under the rules.

Defendants previously agreed to a limit of 35 depositions, but now seek to take 200 depositions. Their "compromise" is 400 deposition hours per side. Docket no. 308. The presumptive limit for depositions is ten depositions at seven hours each. Fed.R.Civ.P. 30(a)(2)(A)(i). Defendants' discovery plan seems to be driven (at least in part) by a desire to re-litigate the issues of standing and/or class certification. The Court has determined that the organizations and individual plaintiffs have standing (docket no. 286) and the case has already been certified as a class action (docket no. 287). Yet Defendants want to delve into the "individual experiences" of the named plaintiffs and their legally authorized representatives. According to Defendants, if they "were to depose two persons per week it would take approximately 100 weeks – nearly two full years – to complete 200 depositions, not accounting for holidays or for the depositions that Plaintiffs may take." Docket no. 307, p. 14. This is completely unreasonable and not even remotely proportional to the needs of the case.

Defendants already have knowledge, possession, and control of a significant amount of discoverable information. The claims at issue in this case arise from alleged systemic failures in the State's implementation, utilization, and administration of long term care for persons with intellectual or developmental disabilities, in violation of the *Olmstead* integration mandate and other federal laws. Thus, the main focus should be on state policy and practice, rather than the individual experiences of the class members.

Moreover, much of the information Defendants are seeking should be contained in the relevant records. Taking the depositions of intellectually disabled individuals should be a last resort, if at all. The named plaintiffs include: Eric Steward, who suffers from mental retardation and

3

cerebral palsy and has limited "receptive" language skills but lacks expressive language skills; Linda Arizpe, who has "significant" developmental disabilities, and has receptive communication skills but is unable to talk; Patricia Ferrer, who suffers from mental retardation and epilepsy; Zackowitz Morgan, who suffers from mental retardation, cerebral palsy, and various other chronic medical conditions; Maria Hernandez, who suffers from mental retardation, cerebral palsy, and epilepsy, and can make "sounds and facial expressions" but is unable to speak; Vanisone Thongphan, who suffers from mental retardation and cerebral palsy and cannot talk; Melvin Oatman, who suffers from several chronic medical conditions and has impaired speech; Richard Krause, who suffered a traumatic brain injury and has impaired speech; Leon Hall, who has moderate mental retardation and other chronic medical conditions; Leonard Barefield, who has developmental disabilities, hearing impairment, and significantly impaired speech; Tommy Johnson, who has developmental disabilities, suffers from dementia, and has impaired speech; Johnny Kent, who has developmental disabilities, suffers from dementia, and has impaired speech; and Joseph Morrell, who has developmental disabilities and somewhat impaired speech. Docket no. 173, pp. 36-74. Given the individual plaintiffs' limitations, there is significant doubt as to whether taking their depositions will be most effective or efficient way to gain discoverable information and whether the benefit of the information gained therefrom, if any, will outweigh the burden imposed on them. After considering the parties' arguments, the Court denies the request for more than 35 fact depositions. Thirty-five is already more than three times the presumptive limit for depositions under the rules. The fact depositions must not exceed seven hours each. The parties are instructed to continue exploring alternatives to deposing individuals with intellectual disabilities. If the parties cannot agree on other options, the Court should be notified of any problems or concerns regarding those depositions.

Fourth, the parties also disagree on whether there should be a fact cut off date. Federal courts have often imposed evidentiary cut off dates to ensure orderly trial management.[4] After considering the history of this case and similar cases, and after reviewing the parties briefs and the applicable law, the Court finds that an evidentiary cut-off date is necessary and appropriate. This case has already been pending for more than six years and Defendants have had ample time to make changes and improvements to their policies and practices. They may continue to do so, but this litigation should not drag on for years as a result of any changes that may be implemented. An evidentiary cut off date will ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. It will not prejudice Defendants as Plaintiffs are simply seeking injunctive relief based on Defendants' alleged noncompliance with federal law. Liability will be determined based on evidence prior to the fact cut off date, and any change in compliance after that date may be brought to the Court's attention in determining the breadth and scope of remedial relief.

A scheduling order to govern future deadlines will be entered simultaneously herewith.

It is so ORDERED this ___ 2 ___ day of March, 2017.

ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE

---

[4] *See Brown v. Plata*, 131 S.Ct. 1910, 1935 (2011)(evidence of changed prison conditions after fact cut off date not admitted); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986)(district court acted within its discretion in imposing a cut-off date which limited the evidence on stockholder reaction to disclosure of earlier misrepresentation); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal Oct. 22, 2013)(evidentiary cut off date for ongoing infringement was "in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources"); *Rolland v. Cellucci (Rolland I)*, 138 F.Supp. 2d 110, 113 (D. Mass. 2001) and *Rolland v. Cellucci (Rolland II)*, 198 F.Supp. 2d 25, 36 (D. Mass. 2002))(district court set cut off date for compliance and evidence regarding failure to provide services to developmentally disabled persons was limited to that specific time period).