**Exhibit B**





**William R. Lunsford**
DIRECT 256.512.5710
EMAIL  blunsford@maynardcooper.com

April 29, 2022

**VIA EMAIL ONLY**

R. Bruce Barze, Jr.
Barze Taylor Noles Lowther LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
bbarze@btnllaw.com

> **Re:**  **United States of America v. State of Alabama, *et al.*, In the United States District Court for the Northern District of Alabama; Case No. 2:20-cv-01971-RDP.**

Dear Special Master Barze:

  The State of Alabama and the Alabama Department of Corrections ("ADOC," and, collectively, the "State") submit this letter pursuant to your request at the April 15, 2022, conference for the parties to address whether the Court's scheduling order should include a "fact cutoff date," and in response to the letter dated April 22, 2022, submitted by the United States Department of Justice ("DOJ"). As set forth below, a "fact cutoff date" remains inappropriate in the context of this injunctive-relief action. As evidence by DOJ's request for this "fact cutoff date," DOJ primarily relies on cases involving claims for monetary damages. This is not a damages case. Unlike a damages case, liability in this action depends upon circumstances as they exist at the time of trial, not circumstances as of an arbitrary, earlier date. Thus, the scheduling order should not include a "fact cutoff date."

  DOJ's Letter makes clear that DOJ views this action as a race against the State's well-publicized efforts to improve conditions within ADOC facilities.[1] DOJ apparently fears that the State's efforts will succeed before DOJ can rush this action to trial, thereby depriving DOJ of a "win" in the form of a liability finding. This now documented approach violates CRIPA's stated purpose of cooperative collaboration between DOJ and states to correct deficiencies.[2] Stated differently, DOJ seeks to literally "cutoff" the evidence the State may present of its remedial

---

[1] While the State certainly continues to address certain aspects of its operations facilities, it denies that any condition within ADOC's male facilities rises to the level of a constitutional violation.

[2] See 18 U.S.C. § 1997b(C) (requiring Attorney General, before filing CRIPA action, to consult with a state "regarding financial, technical, or other assistance which may be available from the United States and which the Attorney General believes may assist in the correction of such conditions").

April 29, 2022
Page 2

efforts, which also contravenes the express mandates of CRIPA. This approach contravenes both the law and common sense.

As DOJ recognizes, the Prison Litigation Reform Act (the "PLRA") "establishes standards for the initial entry of an injunction concerning a prison." (DOJ Letter at 4). Under the PLRA, any injunction must be "narrowly drawn, extend[] no further than necessary *to correct the violation of the Federal right*, and [be] the least intrusive means necessary *to correct the violation of the Federal right*." 18 U.S.C. § 3626(a)(1)(A) (emphasis added). Under this plain language, a violation of a federal right remains a prerequisite to the entry of any relief in cases in which the PLRA applies. Moreover, the Civil Rights of Institutionalized Persons Act ("CRIPA") imposes additional limitations on this action. Under CRIPA, DOJ may seek only "such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of . . . rights, privileges, or immunities secured or protected by the Constitution of the United States." 42 U.S.C. § 1997a(a).[3] Thus, under both the PLRA and CRIPA, any relief in this action must address *only* constitutional violations.

Thomas v. Bryant, 614 F.3d 1288 (11th Cir.2010), could not and did not alter these statutory requirements that a court find a then-existing constitutional violation in order to find liability in a prison case. In Thomas, the Eleventh Circuit distinguished between the initial entry of relief under the PLRA and the termination of relief under the PLRA. The PLRA's termination provision provides that "relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(2). DOJ seizes on the absence of the words "current and ongoing" from the PLRA's initial entry standard to argue that the Eleventh Circuit in Thomas "rejected that a current and ongoing violation is necessary for initial entry" of relief. (DOJ Letter at 4). The Eleventh Circuit did no such thing.

Instead, the words "current and ongoing" in the PLRA's termination provision indicate that, to avoid termination, the violation that led to the initial entry of relief must remain ongoing at the time of the motion to terminate. In other words, a court may not base a refusal to terminate relief on a past violation or the potential for future violations, but only on a then-existing violation. Congress had no need to include the words "current and ongoing" in the initial entry section, because initial entry already depends upon the existence of a "violation of [a] Federal right." 18 U.S.C. § 3626(a)(1)(A). Thus, in Thomas, the Eleventh Circuit relied upon "the well-established

---

[3] Indeed, even before Congress enacted the PLRA, courts recognized that "[a] federal court, when fashioning a remedy to redress constitutional violations in a prison, must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system." Newman v. Ala., 683 F.2d 1312, 1320 (11th Cir. 1982). "Because of this inherent limitation upon federal judicial authority federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution. . . . " Milliken v. Bradley, 433 U.S. 267, 281-82 (1977).



April 29, 2022
Page 3

law that injunctive relief is available in the first instance 'to prevent a substantial risk of serious harm from ripening into actual harm.'" 614 F.3d at 1319-20 (quoting Farmer v. Brennan, 511 U.S. 825, 845 (1994)).  This language does not mean that there need not be a constitutional violation at all, because '"deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer, 511 U.S. at 828.  Thus, the PLRA permits initial entry of relief upon a showing of deliberate indifference to a substantial risk of serious harm, even absent a showing that the harm already occurred.

Indeed, DOJ cites the language quoted above from Thomas (DOJ Letter at 4), but it ignores the context of the original quotation from the Supreme Court's opinion in Farmer.  There, the Supreme Court held as follows:

> In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," Helling, supra,, at 36, 113 S.Ct., at 2482: their attitudes and conduct at the time suit is brought and persisting thereafter.  An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," United States v. Oregon State Medical Soc., 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952), must adequately plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally *to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future.  In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction*.

Farmer, 511 U.S. at 845-46 (emphasis added).  Thus, according to the Farmer Court, "even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation."  Id. at 846 n.9.  Accordingly, a finding of liability for a constitutional violation requires a then-existing violation of the Constitution, not a stale violation that the defendant cured before entry of judgment.

Recent Eleventh Circuit precedent confirms the State's interpretation of Thomas.  The PLRA provides that "[n]othing in this section shall be construed . . . to repeal or detract from



April 29, 2022
Page 4

otherwise applicable limitations on the remedial powers of the courts." 18 U.S.C. § 3626(a)(1)(C). Thus, as the Eleventh Circuit explained, "the PLRA supercharges some of the traditional equitable principles of injunctive relief" by "emphasiz[ing] the importance of narrow tailoring in prison litigation." Ga. Adv. Off. v. Jackson, 4 F.4th 1200, 1208, 1209 (11th Cir. 2021) (holding that "[t]he PLRA only adds to the preexisting limits on injunctive relief; it does not subtract from them"). Accordingly, the Court found that the PLRA prevented a district court from relying on a finding of a constitutional violation in a preliminary injunction when it made that injunction final 90 days later. Id. at 1213 (holding that a district court that issues a preliminary injunction under the PLRA "must make a second set of [need-narrowness-intrusiveness] findings before converting the preliminary injunction into a permanent injunction"). That is, the staleness of the evidence from the preliminary injunction hearing precluded use of it as a basis for entry of an initial permanent injunction under 18 U.S.C. § 3626(a)(1)(A). Instead, any prospective relief such as an injunction must address a violation that exists at the time of its entry, not at some previous time.

In the face of these clear legal standards, DOJ makes the non-sensical argument that, even if the Court imposes a fact cutoff, it may potentially "hear the new evidence at any remedy proceeding." (DOJ Letter at 2). DOJ apparently wishes the Court to make a liability finding based on stale evidence (i.e., it seeks a liability finding without the obligation to establish a constitutional violation), but then would permit the Court to consider whether liability no longer existed at the time of trial during a remedy proceeding. This approach makes no sense. If liability fails to exist at the time of trial, the Court should say so then and avoid a "remedy" proceeding for a non-existent constitutional violation.

In support of its backwards approach to this action, DOJ cites inapposite caselaw. For example, DOJ cites Apple, Inc. v. Samsung Elecs. Co., No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013), in support of imposing a fact cutoff date. (DOJ Letter at 3). Apple involved a partial *retrial*, and the court "ruled that the evidence to be presented at the upcoming retrial should hew as closely as possible to that presented at the original trial—with the exception of the corrected notice dates—and has thus generally barred the parties from conducting supplemental discovery or attempting to present exhibits or witnesses that were not timely disclosed and admissible at the previous trial." 2013 WL 5737310, at *2. Apple therefore involved a unique situation. Moreover, Apple did not involve prison conditions; instead, Apple asserted patent infringement claims against Samsung and sought monetary damages. Id. There existed no suggestion that "new" evidence would change the determination of liability, as exists here.

Steinberg v. Chem-Tronics, Inc., 786 F.2d 1429, 1431 (9th Cir. 1986) (cited in DOJ Letter at 3), likewise involved damages claims based on alleged omissions from an offering prospectus. The Court held that evidence beyond the cutoff date "was not relevant to damages" because even those who held stock beyond that date "could not tie" price changes after that date to any allegedly false representation. 786 F.2d at 1431. This injunctive-relief case stands in a starkly different position from the damages cases cited by DOJ, because the existence of liability depends upon the



April 29, 2022
Page 5

state of affairs as of the date of trial, and not as of some earlier date when a tortfeasor damaged or injured someone.[4]

Finally, the two (2) prison cases cited by DOJ fail to support its position. In <u>Brown v. Plata</u>, 563 U.S. 493, 523 (2011), the Court indicated that a three-judge court (empaneled after years of contemptuous conduct by California) properly imposed a cutoff date where "its decision was limited to the issue of remedy and . . . the merits of the constitutional violation had already been determined." Here, the opposite is true—DOJ seeks to impose a "fact cutoff date" ahead of any liability finding. <u>Brown</u> does not support a fact cutoff date as proposed by DOJ. Similarly, <u>Steward v. Abbott</u>, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (attached to DOJ letter), simply relied on <u>Brown</u> and the damages cases cited above in imposing a fact cutoff. (<u>See id.</u> at 5 n.4). It is not persuasive authority for the draconian action proposed by DOJ. DOJ's letter fails to provide binding authority or a persuasive rationale in favor of a fact cutoff. Instead, it invites the Special Master to lead the Court into an error that will permeate any decision adverse to the State in this action.

DOJ's attempt to impose a fact cutoff remains inappropriate in the context of this injunctive-relief case. Under both the PLRA and CRIPA, the Court may only base liability upon a constitutional violation existing at the time of trial. <u>Farmer</u>, 511 U.S. at 845-46. Accordingly, the scheduling order should not contain a fact cutoff.

Sincerely,

William R. Lunsford

MR:ek

cc:     All Counsel of Record

---

[4] <u>Rolland v. Cellucci</u>, 138 F. Supp. 2d 110, 113 (D. Mass 2001) (cited in DOJ Letter at 3), involved injunctive relief, but it involved the question of the date as of which the court should determine non-compliance with a settlement agreement, not a fact cutoff date such as DOJ requests here. <u>NAACP v. City of Myrtle Beach</u>, 503 F. Supp. 3d 390, 399 (D.S.C. 2020), merely enforced a requirement already contained in the court's scheduling order, while here, the parties disagree over whether the scheduling order should contain such a requirement in the first place.

