Case 2:20-cv-01971-RDP Document 351-3 Filed 03/02/17 Page 1 of 5
Case 5:10-cv-01025-OLG Document 310 Filed 03/02/17 Page 1 of 15
FILED
2022 May-13 PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

**Exhibit C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

MAR 0 2 2017

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| ERIC STEWARD, by his next friend and mother, Lillian Minor, et. al. ) ) ) Plaintiffs ) ) v. ) ) CHARLES SMITH , in his official capacity as ) the Executive Commissioner of Texas' ) Health and Human Services Commission, ) et. al. ) ) Defendants ) ) | |
| THE UNITED STATES OF AMERICA ) ) Plaintiff-Intervenor ) ) v. ) ) THE STATE OF TEXAS ) ) Defendant ) | CIVIL ACTION NO. SA-10-CA-1025-OG A CLASS ACTION |

# ORDER

Pending before the Court is the parties' joint motion for entry of proposed scheduling order (docket no. 307). Both sides seek a new scheduling order but they disagree on several issues: the scope and time period for discovery, the timing of expert reports, whether an evidentiary cut off date should be imposed, and a trial date. The Court has reviewed the parties' plans and proposals, and finds Plaintiffs/ United States' plan to be more realistic and tailored to the specific needs of this case.

First, Plaintiffs seek a trial date in May 2018 and Defendants seek a trial date in July 2020.[1] This case has already been pending for over six years. Three of the original named plaintiffs are now deceased.[2] Plaintiffs allege that thousands more are unnecessarily institutionalized and segregated from the community. If the case is not tried until 2020, it will remain pending for ten years. In the interests of justice, this case should be tried on the earliest possible date. Delays and extensions are sometimes unavoidable, but the Court expects the parties to work diligently toward the earliest possible trial date.

Second, the parties disagree on whether expert disclosures should be simultaneous or seriatum. Based on the history of this case, the Court's experience with similar cases, and the parties' arguments herein, the Court finds that the expert disclosures should be simultaneous. This will promote efficiency, minimize cost, and avoid multiple rounds of expert reports and delays that could disrupt the trial schedule.[3]

Third, the parties disagree on the scope of discovery and the time needed to complete it. Under the rules, the Court and the parties have an obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1. The 2015 amendments were intended to reduce hyperadversary behavior, with proportionality as the main focus. The parties have a duty and obligation to consider proportionality in making discovery requests, and seek only what is necessary in light of related burdens. Fed.R.Civ.P. 26(b)(1). Defendants' scorched earth

---

[1] Defendants previously agreed to a trial date within two years after the commencement of discovery, which has already begun (docket no. 233). Their new proposed trial date in July 2020 would be four years after the commencement of discovery.

[2] *See* docket nos. 171, 185, 190.

[3] As Plaintiffs note and Defendants do not dispute, the parties have "spent years negotiating about the issues that will be the subject of expert testimony." Docket no. 307, p. 12.

2

approach to discovery in general, and depositions in particular, goes far beyond what is expected under the rules.

Defendants previously agreed to a limit of 35 depositions, but now seek to take 200 depositions. Their "compromise" is 400 deposition hours per side. Docket no. 308. The presumptive limit for depositions is ten depositions at seven hours each. Fed.R.Civ.P. 30(a)(2)(A)(i). Defendants' discovery plan seems to be driven (at least in part) by a desire to re-litigate the issues of standing and/or class certification. The Court has determined that the organizations and individual plaintiffs have standing (docket no. 286) and the case has already been certified as a class action (docket no. 287). Yet Defendants want to delve into the "individual experiences" of the named plaintiffs and their legally authorized representatives. According to Defendants, if they "were to depose two persons per week it would take approximately 100 weeks – nearly two full years – to complete 200 depositions, not accounting for holidays or for the depositions that Plaintiffs may take." Docket no. 307, p. 14. This is completely unreasonable and not even remotely proportional to the needs of the case.

Defendants already have knowledge, possession, and control of a significant amount of discoverable information. The claims at issue in this case arise from alleged systemic failures in the State's implementation, utilization, and administration of long term care for persons with intellectual or developmental disabilities, in violation of the *Olmstead* integration mandate and other federal laws. Thus, the main focus should be on state policy and practice, rather than the individual experiences of the class members.

Moreover, much of the information Defendants are seeking should be contained in the relevant records. Taking the depositions of intellectually disabled individuals should be a last resort, if at all. The named plaintiffs include: Eric Steward, who suffers from mental retardation and

3

cerebral palsy and has limited "receptive" language skills but lacks expressive language skills; Linda Arizpe, who has "significant" developmental disabilities, and has receptive communication skills but is unable to talk; Patricia Ferrer, who suffers from mental retardation and epilepsy; Zackowitz Morgan, who suffers from mental retardation, cerebral palsy, and various other chronic medical conditions; Maria Hernandez, who suffers from mental retardation, cerebral palsy, and epilepsy, and can make "sounds and facial expressions" but is unable to speak; Vanisone Thongphan, who suffers from mental retardation and cerebral palsy and cannot talk; Melvin Oatman, who suffers from several chronic medical conditions and has impaired speech; Richard Krause, who suffered a traumatic brain injury and has impaired speech; Leon Hall, who has moderate mental retardation and other chronic medical conditions; Leonard Barefield, who has developmental disabilities, hearing impairment, and significantly impaired speech; Tommy Johnson, who has developmental disabilities, suffers from dementia, and has impaired speech; Johnny Kent, who has developmental disabilities, suffers from dementia, and has impaired speech; and Joseph Morrell, who has developmental disabilities and somewhat impaired speech. Docket no. 173, pp. 36-74. Given the individual plaintiffs' limitations, there is significant doubt as to whether taking their depositions will be most effective or efficient way to gain discoverable information and whether the benefit of the information gained therefrom, if any, will outweigh the burden imposed on them. After considering the parties' arguments, the Court denies the request for more than 35 fact depositions. Thirty-five is already more than three times the presumptive limit for depositions under the rules. The fact depositions must not exceed seven hours each. The parties are instructed to continue exploring alternatives to deposing individuals with intellectual disabilities. If the parties cannot agree on other options, the Court should be notified of any problems or concerns regarding those depositions.

4

Fourth, the parties also disagree on whether there should be a fact cut off date. Federal courts have often imposed evidentiary cut off dates to ensure orderly trial management.[4] After considering the history of this case and similar cases, and after reviewing the parties briefs and the applicable law, the Court finds that an evidentiary cut-off date is necessary and appropriate. This case has already been pending for more than six years and Defendants have had ample time to make changes and improvements to their policies and practices. They may continue to do so, but this litigation should not drag on for years as a result of any changes that may be implemented. An evidentiary cut off date will ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. It will not prejudice Defendants as Plaintiffs are simply seeking injunctive relief based on Defendants' alleged noncompliance with federal law. Liability will be determined based on evidence prior to the fact cut off date, and any change in compliance after that date may be brought to the Court's attention in determining the breadth and scope of remedial relief.

A scheduling order to govern future deadlines will be entered simultaneously herewith.

It is so ORDERED this ___2___ day of March, 2017.

ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE

---

[4]*See Brown v. Plata*, 131 S.Ct. 1910, 1935 (2011)(evidence of changed prison conditions after fact cut off date not admitted); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986)(district court acted within its discretion in imposing a cut-off date which limited the evidence on stockholder reaction to disclosure of earlier misrepresentation); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal Oct. 22, 2013)(evidentiary cut off date for ongoing infringement was "in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources"); *Rolland v. Cellucci (Rolland I)*, 138 F.Supp. 2d 110, 113 (D. Mass. 2001) and *Rolland v. Cellucci (Rolland II)*, 198 F.Supp. 2d 25, 36 (D. Mass. 2002))(district court set cut off date for compliance and evidence regarding failure to provide services to developmentally disabled persons was limited to that specific time period).

September 29, 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JT
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ERIC STEWARD, by his next friend and mother, Lillian Minor, et. al.<br><br>Plaintiffs<br><br>v.<br><br>CECILE YOUNG, in her official capacity as Executive Commissioner of Texas Health and Human Services Commission, et. al.<br><br>Defendants | |
| THE UNITED STATES OF AMERICA<br><br>Plaintiff-Intervenor<br><br>v.<br><br>THE STATE OF TEXAS<br><br>Defendant | CIVIL ACTION NO.<br>SA-10-CA-1025-OG<br>A CLASS ACTION |

# ORDER

Pending before the Court is Defendants' motion for leave to file offer of proof (docket no. 631) and Plaintiffs' and the United States' opposition thereto (docket no. 630, 641). This request to offer proof of facts comes after the evidentiary cutoff, after the discovery deadline, and after trial on the merits. Some background is appropriate.

This case was filed on December 20, 2010. There were many extensions, continuances, suspensions, and stays, including: a stay from September 2011 through July 2012; a suspension of the proceedings in August 2012; another stay in September 2012; and a two year interim settlement agreement and extended stay from August 2013 through October 2015. During these and subsequent

delays, the defendants continued changing their systems, procedures, processes, and practices; the health and welfare of the named plaintiffs continued to change and notices of death were filed; the named governor changed once; the named commissioner changed seven times; and state agencies that handled programs and services for the IDD population in years past were being dissolved.

In 2012, when the parties began preparing for a preliminary injunction hearing, Plaintiffs proposed an evidentiary cutoff date with regard to the PI proceedings. Docket no. 116. Defendants advised that a fact cutoff would "preclude either party from introducing any evidence relating to the PI Plaintiffs' claims if the evidence arises after the cutoff date . . . for example, if the physical conditions of the PI Plaintiffs improved or regressed after the cutoff date, such evidence would be inadmissible." Docket no. 115. Because Plaintiffs were seeking immediate preliminary injunctive relief based on then-existing circumstances, the Court did not impose a fact cutoff for purposes of the PI proceedings. Docket no. 117.

In 2015, when the parties submitted their scheduling proposals for discovery and trial on the merits, Plaintiffs and the United States proposed an evidentiary cutoff and filed a supporting memorandum with a thorough, thoughtful discussion of the reasons for a fact cutoff with supporting authority. Defendants believed an evidentiary cutoff was unnecessary and that the traditional discovery methods should be followed without modification. But Defendants offered no supporting authority for their position. Docket no. 233 (proposals); Docket no. 252 (memorandum in support of Plaintiffs' and United States' proposal). Due to further delays related to class certification, preliminary injunction, and other matters, a scheduling order for merits discovery and trial was not entered.

On February 14, 2017, the parties again offered their proposals for scheduling and a fact cutoff. Docket no. 307. Plaintiffs and the United States again offered a thorough, well-reasoned argument in support of a fact cutoff with supporting authority. Defendants alleged a fact cutoff was unwarranted, but simply dismissed the idea in one conclusory statement without any supporting authority. On March

2

2, 2017 (more than one year and seven months prior to trial), the Court entered a scheduling order containing a fact cutoff date of September 1, 2017, based on the thorough, well-reasoned analysis offered by Plaintiffs and the United States. Docket no. 311.

Thereafter, Defendants did not seek reconsideration or modification of the fact cutoff and instead took several steps to reinforce the fact cutoff. On July 31, 2017, all parties (Plaintiffs, the United States, and Defendants) filed a Joint Motion to Amend the Scheduling Order. Docket no. 362. The parties jointly sought to modify parts of the scheduling order, but Defendants made no attempt to alter or dissolve the fact cutoff date. Docket no. 362. The fact cutoff date of September 1, 2017 was contained in the proposed amended scheduling order agreed to by all parties, and the Court entered the amended order as submitted. Docket no. 364.

On September 27, 2017 (after the fact cutoff but before the discovery deadline), Defendants filed a Motion for Protective Order asserting, *inter alia*, that deposition notice(s) were "unlimited as to time and purposes to require HHSC to provide testimony regarding facts that extend beyond the Court's fact cut-off date. Accordingly, Defendants request[ed] that the Court reiterate its intent to enforce its own scheduling order by limiting the scope of the deposition to the time period before the fact cut-off date." Docket no. 367, p. 4. In the motion for protection to enforce the fact cutoff, Defendants also advised the Court that DADS had been abolished and HHSC had been reorganized effective September 1, 2017 and Plaintiffs were seeking to discover the facets of the reorganization. Because the Court had not been advised of this dissolution and reorganization, which took place on September 1, 2017 – the fact cutoff date that had been proposed and adopted months earlier – the Court entered a show cause order stating that the parties must show cause as to why the evidentiary cutoff date should not be vacated.

Both sides responded to the Court's show cause order, representing that the reorganization would not have a substantial effect on the facts in this case; thus, there was no compelling reason to

3

vacate the fact cutoff. Again, Plaintiffs and the United States provided a careful, well-reasoned analysis with supporting legal authority as to why the fact cutoff was proper and should be retained. Defendants noted that the initial cutoff date had been Plaintiffs' and the United States' idea (not theirs), but did not provide any reasons or authority for vacating the fact cutoff. Instead, Defendants stated that "because it was imposed over seven months ago, discovery and trial preparation has been conducted with the September 1, 2017 cut-off date in mind ... [and] [i]f the fact cut-off date were to be withdrawn at this time, all deadlines, including the trial date, should be continued and discovery reopened so that Defendants have an opportunity to develop their case based on the newly relevant time frame." Docket no. 376. Based on the parties' representations, the Court held:

> On October 16, 2017, the Court ordered the parties to show cause as to why the fact cut off date of September 1, 2017 should not be vacated. The Court's concern was prompted by the parties' revelation that Defendants had dissolved the department responsible for administering the programs and services for people with intellectual and developmental disabilities as of September 1, 2017. Plaintiffs and the United States were seeking discovery relating to the new organizational structure and Defendants asserted such facts were irrelevant and beyond the scope of discovery because it related to facts after September 1, 2017. The Court's concern focused on whether the dissolution, abolishment, or merger/consolidation of the responsible agency would affect the manner in which the State fulfills its duties to administer programs and provide services and, if so, whether the fact cut off date of September 1, 2017 should be vacated.
>
> The parties have responded to the Court's show cause order and previous concerns have been alleviated. Both Plaintiffs and Defendants agree and represent to the Court that the reorganization will not affect the content or delivery of State programs and services. Both Plaintiffs and Defendants agree and represent to the Court that the transfer was complete as of September 1, 2017. And both Plaintiffs and Defendants agree and represent to the Court that discovery and trial preparation have been conducted with the fact cut off date in mind and vacating or modifying the fact cut off date would cause further delay, prolong discovery, and disrupt the orderly and reliable presentation of evidence at trial.
>
> Because fact cut off dates have been effective in similar cases and the fact cut off in this case does appear to be working, it will not be vacated. An evidentiary cut off date will ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. This means, however, that the scope of discovery is limited to facts up to and including September 1, 2017. Both sides will need to adhere to this limitation when taking depositions. The duty to supplement still exists, but the scope of discovery will not change. If any information relating to facts occurring on or before September 1, 2017 was requested but not previously disclosed, the parties will need to supplement. But facts/occurrences after September 1, 2017 are beyond the scope of discovery.

Docket no. 377.

On October 31, 2017, Defendants moved to extend the discovery deadline and amend the scheduling order, but they did not seek to extend or vacate the fact cutoff. Docket no. 378. The Court granted their request and modified the deadlines going forward, but Defendants' proposed and accepted scheduling order did not disturb the fact cutoff of September 1, 2017. Docket no. 382. Thereafter, several additional motions for various extensions were filed, but none of the extensions or modifications of the scheduling order changed the fact cutoff. See, e.g., docket nos. 433, 450, 461.

Eight years after inception of the case, and more than 1 ½ years after the Court imposed a fact cutoff, the case proceeded to trial. At the pretrial conference, Plaintiffs' counsel mentioned that evidentiary objections related to facts occurring after the fact cutoff may arise:

> MR. SCHWARTZ: Obviously, the parties, pursuant to the court's order, have a fact cutoff date, that September 1st, 2017, We have thus far honored that fact cutoff date pretty faithfully on both parties. Some documents have been exchanged from the defendants that have – and some experts have spoken to facts that occurred after the cutoff date. Obviously, those would be objected to. But I just wanted to remind the court about that cutoff date because that will control the information that you will hear.

Docket no. 550, Tr. pp. 26-27. There was no response or concerns expressed by Defendants. After the pretrial conference, the Court ordered, *inter alia*, that "[a]ny offer of evidence outside the previously agreed and ordered fact cut off of September 1, 2017 will be outside the scope of the discoverable and triable issues in this case and thus will be inadmissible." Docket no. 551. Again, there was no response or request for clarification on the fact cutoff and all litigants understood the scope of the fact issues to be tried.

Trial on the merits began on October 15, 2018, and it appeared counsel on both sides were respecting the fact cutoff during the presentation of evidence in Plaintiffs' and the United States' case in chief. But when one of the last experts presented by Plaintiffs was cross-examined, defense counsel began inquiring about facts occurring after the fact cutoff. And when Defendants began the presentation of their evidence on October 31, 2018 (day 12 of trial) they seemed to abandon all efforts to limit the evidence in accordance with the Court's orders. Instead, they made daily and repeated offers

5

of documents and testimony beyond the fact cutoff which resulted in numerous orders admonishing counsel and instructing them to comply with the evidentiary cutoff. Docket nos. 594, 598, 599, 604, 607, 611.

On November 6, 2018 (day 16 of trial), after innumerable admonishments about the evidentiary cutoff, defense counsel stopped in the middle of direct examination of a State employee and asked to "make an offer of proof" regarding the "efficacy" of State programs after September 1, 2017. Tr. 3465:18-22. Thereafter, on momentary breaks between witnesses, defense counsel made two more requests for "an offer of proof" on the efficacy of the State's post 9/1/17 programs and services, presumably to show that the State has complied with federal law since September 1, 2017. In response to such request, the Court ordered the parties to submit a brief with supporting legal authority on whether an offer of proof on facts outside the evidentiary cutoff would be appropriate in a case with a fact cutoff. The parties were ordered to file simultaneous briefs, with supporting authority, on the following:

> [W]hether any proof on facts after September 1, 2017 would have any effect on the court's liability findings, which will be based on facts between December 2010 and September 1, 2017. In other words, even assuming *arguendo* that the State of Texas is currently complying with federal law, would that absolve Defendants of liability, if any, based on many years of non-compliance? Moreover, Plaintiffs and the United States have sought both declaratory and injunctive relief. How would any proof of compliance during the past 12 months affect declaratory and/or prospective injunctive relief based on Defendants' past non-compliance, should the Court reach that finding? In other words, the parties must consider whether prospective injunctive relief may be based on past non-compliance irregardless of current efforts to comply.
>
> Defendants' request for an offer of proof has been stated on the record and they have provided legal authority on offers of proof. But they have not provided legal authority on whether an offer of proof on post cutoff facts is appropriate in a case with a fact cutoff. Thus, the Court requires further briefing, as set forth herein, before the offer of proof itself is accepted and made part of the record. In the event the Court finds that the offer of proof is appropriate and should be accepted, Defendants may make their offer of proof by submission and it will become part of the record on appeal. The parties' briefs as ordered herein must be filed no later than ten business days after the conclusion of trial.

Docket no. 617.

On the same day the Court ordered briefs on the matter (docket no. 617), Defendants filed the proof they were seeking to offer without filing the brief that had just been ordered. Docket no. 616. The Court struck the offer of proof for failure to comply with the Court's prior order, stating, *inter alia:*

> The motion is, in fact, the proof that Defendants are seeking to offer. Docket no. 616. The motion also mischaracterizes the Court's order and constitutes a refusal to comply with such order. The Court did not deny Defendants' request; instead, the Court held the request in abeyance and ordered the parties to support their request with legal authority on whether an offer of proof on post cutoff facts is appropriate in a case with a fact cutoff. Only after submission of such authority, and after reviewing arguments on both sides, the Court will determine whether such an offer of proof should be permitted. Defendants have refused to comply with the Court's order by filing their offer of proof without the legal authority that the Court requested. Because the motion was simply used a vehicle to file an offer of proof in violation of the Court's order, the motion is STRICKEN. The court's prior order remains in effect and the parties are ORDERED to provide the court with legal authority on the issue discussed therein. The Court will then make a determination on whether the offer of proof should be permitted. If the Court finds sufficient legal grounds to permit it, the offer of proof may be submitted as previously ordered.

Docket no. 620.

Trial ended on November 15, 2018 and Defendants filed their motion for leave to file offer of proof on November 30, 2018. Docket nos. 631, 642. Plaintiffs and the United States have filed their brief in opposition. Docket nos. 630, 641. In their motion for leave, Defendants allege they have been "unfairly and irreparably prejudiced by the inconsistent enforcement" of the fact cutoff. They cite numerous instances in the trial transcript where the Court warned the parties to adhere to the fact cutoff. They cite zero instances in the trial transcript where the Court allowed facts after the fact cutoff. As the Court explained prior to and during trial, on many occasions, the fact cutoff applied to all parties and all evidence, and neither party was permitted to introduce evidence of facts after the cutoff date. The Court also explained that if any evidence relating to facts was in the record, it would not be considered. Thus, enforcement of the fact cutoff has been consistent and neither party has gained an unfair advantage.

Defendants also imply that they didn't understand how to prepare for trial and/or they didn't understand the Court's expectations in preparing for trial with a fact cutoff in effect. However, the fact

7

cutoff was imposed 19 months prior to trial. Thus, any claim of surprise or confusion either in trial preparation or during trial is unfounded. As learned counsel for the State knows, every case has deadlines or cutoffs and every party is expected to adhere to the same rules. In the scheduling order entered on August 9, 2017, the fact cutoff of September 1, 2017 was the *same date* as the deadline for written discovery. Docket no. 364.[1] Defendants later moved to extend the document production deadline, which Plaintiffs opposed, but Defendants *did not seek* to simultaneously extend the fact cutoff. Docket no. 378. The Court granted Defendants' opposed motion and extended the deadline for document production until January 12, 2018. Docket no. 382. The offer of proof - consisting of both documents and the written declaration of H. Turner signed November 13, 2018 - violates the fact cutoff, the deadline for document production, and all other pretrial discovery deadlines.

Defendants also complain that in the preliminary injunction hearing, which was held in June 2017 (prior to the fact cutoff), the Court considered evidence "from 2015 to the present" but then considered facts "between December 2010 and September 1, 2017" during trial on the merits.[2] This argument is nonsensical, given the different procedures, standards, and evidentiary requirements that apply in preliminary injunctions proceedings. Counsel is well aware of the differences between PI hearings and trial on the merits.

Despite repeated orders, Defendants have never fully briefed the issues as ordered by the Court on November 13, 2018. Docket no. 617. Only in a footnote, Defendants state they "are unaware of any [ ] authority" on "whether an offer of proof on post cutoff facts is appropriate in a case with a fact cutoff." Docket no. 631, p. 4, n. 2. And Defendants have failed to acknowledge the inherent unreliability of post fact cutoff information that was not subject to discovery, had ever been provided to Plaintiffs and the United States, and was simply being handed to the Court without prior notice on day 16 of trial.

---

[1]This scheduling order was implemented upon the parties' joint motion and stipulation. *See* docket no. 364.

[2]The PI hearing was held in June 2017, prior to the fact cutoff imposed on merits discovery.

8

Although Defendants challenge the evidentiary cutoff in their attempt to make a late offer of inadmissible evidence, they had numerous opportunities to argue against and move to vacate, suspend, or extend the fact cutoff. Instead, they acquiesced by including it in agreed orders, sought to enforce it, sought protection under it, and even argued why it should not be changed. *See* docket nos. 362, 364, 367, 378. In fact, when Defendants sought protection under the fact cutoff, which the Court granted, they explicitly referenced any "projections of future need or demand for waiver slots" as an impermissible area of discovery (docket no. 367, p. 9 n. 13) and then turned around on day 16 of trial, and again post trial, and offered the exact information they previously sought to protect and keep from Plaintiffs and the United States.

When the Court imposed the evidentiary cutoff, it explained that a fact cutoff was being used to "ensure fairness and finality, while promoting efficiency and preserving limited judicial resources." Docket no. 310, p. 5; docket no. 311, p. 1. The Court also explained that "[l]iability will be determined based on evidence prior to the fact cut off date, and any change in compliance after that date may be brought to the Court's attention in determining the breath and scope of remedial relief." Docket no. 310, p. 5. Again, the Court explained this process in March 2017, nineteen months before trial, and Defendants never raised any question or concern until they made their offer of proof on day 16 of trial and again post trial. As Defendants seem to recognize, neither side can use the fact cutoff as both a shield (docket no. 367) and as a sword (docket no. 631).

The Court's orders regarding the evidentiary cutoff date have been clear and consistent, and those orders will not be changed post trial. Defendants' conduct is the precise reason the Court imposed an evidentiary cutoff. Defendants cannot circumvent the Court's many orders and ignore the long standing evidentiary cutoff by now offering the exact proof they previously sought to protect and shield from discovery under the fact cutoff. And calling the late submission of inadmissible evidence an offer of proof does not legitimize such conduct.

9

Consistent with its prior orders, the Court will make fact findings relating to liability and declaratory relief based on facts occurring prior to the evidentiary cutoff date. Should the Court reach the issue of prospective injunctive relief, the Court will determine, at that juncture, whether and to what extent facts that occurred after the evidentiary cutoff should be considered. If so, those facts will be subject to discovery by both sides before the Court will consider them. In no event will such facts be unilaterally submitted to the Court as Defendants have done here. Although such evidence is inadmissible in determining liability for the reasons stated herein, the evidence may later be appropriate if the Court determines that prospective injunctive relief is necessary. Any last minute alleged corrective actions taken by Defendants after the fact cutoff and on the eve of trial, and likewise those which may occur after trial but before a final decision by the Court, are better addressed at the final remedial stage of this complex litigation.

SIGNED and ENTERED on the __29__ day of September, 2020.

_____
ORLANDO L. GARCIA
CHIEF U.S. DISTRICT JUDGE