FILED

2022 May-20  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO. 2:20-CV-01971-RDP** |
| **STATE OF ALABAMA, and** | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THE STATE'S OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION ON EVIDENTIARY FACT CUTOFF DATE

Defendants STATE OF ALABAMA ("Alabama") and ALABAMA DEPARTMENT OF CORRECTIONS ("ADOC" and, together with Alabama, the "State") hereby submit this objection to the Special Master's Report and Recommendation on Evidentiary Fact Cutoff Date (doc. 85) pursuant to this Court's Order appointing a Special Master (doc. 70).  In support of its objection, the State states as follows:

### INTRODUCTION AND BACKGROUND

As the Special Master described in his Report and Recommendation, the Plaintiff requests that this Court impose a "fact cut-off" or "evidentiary cut-off" date of March 5, 2024 (doc. 85 at 3), the same date set by this Court for the close of discovery in its Scheduling Order.  (Doc. 84 at 2, ¶ 2).  The imposition of a fact cut-off date would obtain the envisioned effect of "freezing in time" the conditions in ADOC facilities as of March 5, 2024—***eight months*** before the earliest trial date of this case—irrespective of any improvements the State achieves in the conditions at

ADOC facilities subsequent to March 5, 2024 but before trial.[1]  This Court should refuse to impose a fact cut-off date in this case for at least the following four (4) reasons:

(1)   the imposition of a fact cut-off date would thwart the purpose of the Civil Rights of Institutionalized Persons Act ("CRIPA"): to encourage a collaborative effort between the federal government and state agencies to improve conditions within state correctional facilities;

(2)   the establishment of a fact cut-off date would create inconsistencies with both the Prison Litigation Reform Act ("PRLA") and applicable Supreme Court precedent, both of which require that a Court find that a constitutional violation exist *at time of trial* before issuing an injunction;

(3)   a fact cut-off date presents a potential waste of judicial resources by requiring this Court to hold a complex trial on the issue of liability based on stale evidence.  Should ADOC achieve improvements in the conditions at its facilities after March 5, 2024 but before trial that remedy the alleged constitutional violations, this Court would risk entering an unlawful injunction and accordingly holding an unnecessary remedial trial; and

(4)   Plaintiff cites no Eleventh Circuit authority supporting the imposition of a fact cut-off date; instead, it cites inapposite cases from outside the Eleventh Circuit.

Accordingly, this Court should refuse to enter a fact cut-off date in this case. In the alternative, should the Court impose a fact cut-off date, the Court should set the fact cut-off date contemporaneously with the deadline for the parties to file witness and exhibit lists, as opposed to the date for the close of discovery.

## LEGAL STANDARD

As stated in this Court's Order appointing the Special Master, should the parties elevate any dispute to the Court, like this one, "the court shall decide all issues *de novo*."  (Doc. 70 at 4, ¶ 4).

---

[1] As the State noted in its Letter Brief to the Special Master (doc. 85-2 at 1, n.1), "[w]hile the State certainly continues to address certain aspects of its operations [at ADOC] facilities, it denies that any condition within ADOC's male facilities rises to the level of a constitutional violation."

**ARGUMENT**

**I.      A FACT CUT-OFF DATE THWARTS THE PURPOSES OF CRIPA.**

As the State explained in its Letter Brief (doc. 85-2 at 1), the imposition of a fact cut-off date in this case thwarts the purposes of CRIPA, 42 U.S.C. § 1997 *et seq*., the federal statute that created the Plaintiff's cause of action in this case.  See (Doc. 71 at 1, ¶ 1).  Importantly, CRIPA envisions a collaborative process between the federal government and state agencies to improve conditions in state correctional facilities.  For example, CRIPA requires the United States Attorney General to "encourage[] the appropriate [state] officials to correct the alleged conditions. . .through informal methods of conference, conciliation and persuasion[.]"  42 U.S.C. § 1997b(a)(2)(B).  See also United States v. Hawaii, 564 F. Supp. 189, 194–95 (D. Haw. 1983) (citing CRIPA's legislative history and noting that CRIPA places an "emphasis on discussion and consultation between state and federal officials").  The fact cut-off date thwarts this statutory purpose.

The imposition of a fact cut-off date would punish the State in that the State would not benefit at the liability trial of this case from any remedial measures it undertakes or successfully completes subsequent to March 5, 2024.  But, if those measures remedy any alleged constitutional violation, then the State satisfies CRIPA's purpose, regardless of ***when*** the State implements those remedial measures.  In other words, as the State pointed out in its Letter Brief (doc. 85-2 at 1), CRIPA simply does not envision a "race" through which the federal government seeks to impose liability on a state government before the state government can remedy the allegedly unconstitutional conditions.  Instead, CRIPA exists to improve conditions in state correctional facilities, irrespective of how or when those improvements come about.  Before entering liability against the State under CRIPA, this Court should hear ***all*** relevant evidence regarding the State's remedial efforts, regardless of when the state undertakes or implements those remedial efforts.

3

In the same way, the imposition of a fact cut-off date would also thwart the ostensible purpose of ***this lawsuit***, through which the Plaintiff seeks to improve the allegedly unconstitutional conditions within ADOC's facilities for men.  By asking this Court to impose a fact cut-off date, the Plaintiff assumes a "win-at-all costs" approach to this litigation and requests that this Court ***ignore*** relevant evidence going to liability if that evidence came into being after March 5, 2024. This Court should allow the State the benefit of introducing evidence at the liability trial of ***all*** remedial measures it undertook or implemented, regardless of when the State undertook or implemented those measures.  Such an approach would best advance both the purposes of CRIPA and this lawsuit: to improve conditions at ADOC's facilities for men.  Accordingly, this Court should deny Plaintiff's request for a fact cut-off date.

## II.   A FACT CUTOFF DATE CREATES INCONSISTENCIES WITH THE PLRA AND APPLICABLE SUPREME COURT PRECEDENT.

Similarly, the imposition of a fact cut-off date would lead to inconsistencies with the PLRA, 18 U.S.C. § 3626, which governs, among other things, the entry of injunctions "with respect to prison conditions."  Particularly, and as the State also noted in its Letter Brief (doc. 85-2 at 2), the PLRA dictates that "[t]he court shall not order any prospective relief . . . unless . . . the relief is necessary ***to correct the violation of a Federal right***; and. . . no other relief will correct the ***violation of the Federal right***."   18 U.S.C. § 3626(B)(ii)–(iii) (emphasis supplied). Accordingly, the plain language of the PLRA ***requires*** the Court to find the existence of a violation of a federal right *before* entering injunctive relief.  Importantly, and contrary to the argument of Plaintiff, this result obtains independent of the PLRA's language applicable to the termination of injunctive relief.  18 U.S.C. § 3626(b)(3) (requiring that a court keep injunctive relief in place if it finds that the injunctive relief remains necessary to correct a "current and ongoing violation of the

Federal right"); see (Doc. 85-1 at 3-4) (citing Thomas v. Bryant, 614 F.3d 1288 (11th Cir. 2010)).
A violation of a federal right remains necessary to impose relief in the first instance.

In Farmer v. Brennan, 511 U.S. 825 (1994)—which the Supreme Court decided two years
before the PLRA went into effect—the Court noted the effect of the dynamic and ever-changing
circumstances attendant to prison litigation and clarified the impact those circumstances have on
the propriety of injunctive relief.  See Id. at 845–46.  Specifically, the Court in Farmer recognized
that to demonstrate an entitlement to injunctive relief "to prevent a substantial risk of serious harm
from ripening into actual harm, the subjective factor, deliberate indifference, should be determined
in light of the prison authorities' **current attitudes and conduct** . . . : their attitudes and conduct
at the time suit is brought **and persisting thereafter**."  Id. at 845 (quoting Helling v. McKinney,
509 U.S. 25, 36 (1993)) (internal quotation marks omitted) (emphasis added).  The Court continued
by pointing out that the trial court must take into account the prison officials' changing attitudes
and conduct during the course of the litigation:

> An inmate seeking an injunction on the ground that there is "a contemporary
> violation of a nature likely to continue," must adequately plead such a violation; to
> survive summary judgment, he must come forward with evidence from which it can
> be inferred that the defendant-officials were at the time suit was filed, and are at the
> time of summary judgment, knowingly and unreasonably disregarding an
> objectively intolerable risk of harm, and that they will continue to do so; **and finally
> to establish eligibility for an injunction, the inmate must demonstrate the
> continuance of that disregard during the remainder of the litigation and into
> the future**. In so doing, the inmate may rely, in the district court's discretion, on
> developments that postdate the pleadings and pretrial motions, **as the defendants
> may rely on such developments to establish that the inmate is not entitled to
> an injunction**.

Id. at 845-46 (quoting United States v. Oregon State Medical Soc., 343 U.S. 326, 333 (1952))
(internal quotation marks omitted) (emphasis added).

The Farmer decision clearly directs both the parties and the Court to take changed
circumstances into account during the course of the litigation, **even beyond summary judgment**

**to trial and "into the future."** <u>See</u> <u>also</u> <u>id.</u> at 846 n. 9 (noting that "even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation"). What's more, traditional equitable doctrines remain in force in cases that the PLRA governs. <u>See</u>, <u>e.g.</u>, <u>Swain v. Junior</u>, 961 F.3d 1276, 1284 (11th Cir. 2020) (applying traditional requirements for equitable relief in PLRA case and noting that the Court must also make the specific findings required under the PLRA prior to entering injunctive relief). And the Court in <u>Farmer</u> took particular care to point out that the parties may rely on ***all*** relevant evidence where, as here, a plaintiff challenging conditions of confinement seeks injunctive relief. <u>Id.</u> <u>Farmer</u> does not require or allow Plaintiff to exclude relevant evidence.

Moreover, while Plaintiff cites language from the Eleventh Circuit's decision in <u>Thomas</u> holding that a PLRA plaintiff may establish an entitlement to injunctive relief by "demonstrating a history of past misconduct which gives rise to an inference that future injury is **imminent**," 614 F.3d at 1318 (emphasis supplied); (doc. 85-1 at 4), both <u>Farmer</u> and the PLRA place the burden squarely on ***Plaintiff*** to show such an entitlement to injunctive relief. <u>See</u> 18 U.S.C. § 3626(B)(ii)–(iii); <u>Farmer</u>, 511 U.S. at 845-46 (holding that to show an entitlement to injunctive relief at trial, the plaintiff "must demonstrate the continuance of that disregard during the remainder of the litigation and into the future"). In other words, this Court should not permit Plaintiff to rely on stale evidence to demonstrate the likelihood of a future constitutional violation by the State and should instead require Plaintiff to prove its entitlement to an injunction based on the facts as they stand at the time of trial. Even the language Plaintiff cites from <u>Thomas</u> requires a PLRA plaintiff to prove the imminence of a future constitutional injury. 614 F.3d at 1318. Certainly, in this action

the Court should require Plaintiff to prove such imminence based on the conditions of ADOC facilities as they stand at the time of trial and should likewise permit the State to establish the *lack of* an imminent injury based on those same conditions.

Plaintiff suggests that the State can still introduce evidence of changed circumstances past the cutoff date at trial by establishing that "good cause exists to consider the evidence for liability[.]" (Doc. 85-1 at 2). This proposed "safety valve" proves insufficient, especially in light of the PLRA and the Supreme Court's decision in Farmer. Specifically, this proposed "safety valve" simply constitutes burden-shifting in disguise: if this Court imposes a fact cut-off date, it will have the effect of shifting the burden to the *State* to show good cause to introduce evidence establishing the inappropriateness of injunctive relief. Plaintiff, on the other hand, will enjoy the benefit of relying on stale evidence to prove its case. Instead of sanctioning this backwards result, this Court should decline to impose a fact cut-off date and should require *Plaintiff* to carry its burden of showing an entitlement to injunctive relief.

## III.   A FACT CUTOFF DATE MAY LEAD TO A WASTE OF JUDICIAL RESOURCES.

As part of its argument that this Court should impose a March 5, 2024, fact cut-off date, Plaintiff claims that the lofty concepts of fairness and efficiency, as well as the preservation of this Court's limited resources, necessitate the entry of a fact cut-off date. Specifically, Plaintiff cites a myriad of mostly district court cases for the proposition that "a fact cutoff promotes a just, orderly, and expeditious trial without unfair surprise and prejudice to the opposing party." (Doc. 85-1 at 1). See also (Id. at 2–3), citing, e.g., Order at 5, Steward v. Abbott, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (attached as Ex. C to Report and Recommendation, doc. 85-3 at 5); Apple, Inc. v. Samsung Elecs. Co., No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013). These cases fail to support Plaintiff's argument.

7

To be sure, and as Plaintiff correctly points out, the Supreme Court "has long recognized that a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Dietz v. Bouldin, 579 U.S. 40, 45 (2016) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)) (internal quotation marks omitted). The Court, however, also recognized two limitations on a district court's exercise of its inherent authority: "[f]irst, the exercise of an inherent power must be a reasonable response to the problems and needs confronting the court's fair administration of justice." Id. (quoting Degen v. United States, 517 U.S. 820, 823–824 (1996)) (internal quotation marks omitted). "Second, the exercise of an inherent power cannot be contrary to any express grant or limitation on the district court's power contained in a rule or statute." Id. In other words, the district court may exercise its inherent authority "in any manner consistent with federal law[.]" Fed. R. Civ. P. 83(b). See also Dietz, 579 U.S. at 45–46. Those conditions fail to exist here.

The imposition of a fact cut-off date in this case would **not** constitute a "reasonable response to the problems and needs confronting the court's fair administration of justice." Dietz, 579 U.S. at 45. Particularly, should the Court hold a liability trial in this case *on or after November 2024*[2] with the conditions at ADOC facilities "frozen in time" as of March 5, 2024, the Court runs the substantial risk of finding liability based on stale evidence and without the benefit of evidence regarding changed circumstances and additional remedial actions taken by the State. At *minimum*, should the trial proceed according to the Court's Scheduling Order as it currently stands (doc. 84 at ¶ 2), eight months will elapse between the close of discovery (the date requested by Plaintiff for

---

[2] The current scheduling order only requires this case to be trial ready by November 2024. (Doc. 84 at 2, ¶ 2). There is no trial date currently set and, therefore, a trial of this action may occur more than eight (8) months after the proposed fact cutoff date.

the fact cut-off) and trial.  Certainly, holding a trial on the issue of liability without evidence of
conditions at ADOC facilities close to the time of trial would not constitute the best use of this
Court's limited resources.

Most importantly, however, if this Court finds liability based on stale evidence, it runs the
risk of entering a ***completely unnecessary*** remedial phase.  Obviously, an unnecessary remedial
phase—which would include a complex remedial trial—would constitute an enormous waste of
judicial resources.  For this reason, Plaintiff's second suggested "safety valve;" i.e., that the State
will have the opportunity to present evidence of changed circumstances at ADOC facilities at the
remedial phase of this case (doc. 85-1 at 2), falls short of mitigating the prejudice the State would
suffer, and the waste of judicial resources that would occur, through the imposition of a fact cut-
off.  In other words, the State would suffer great prejudice if evidence of changed circumstances
and remedial efforts it presents at the remedial phase would have proved sufficient to avoid a
finding of liability altogether if the State presented the same evidence during the liability phase.
If such a situation came to pass, the State—and ultimately the taxpayers of the State of Alabama—
would incur significant attorneys' fees, expert witness costs, and other similar expenses in
preparing for a wholly unnecessary remedial trial.

Critically, the Supreme Court did ***not*** address this situation in Brown v. Plata, 563 U.S.
493, 523 (2011), the case Plaintiff primarily relies on in arguing that this Court may appropriately
enter a fact cut-off.  E.g., (doc. 85-1 at 2–3).  Instead, in Brown, the Court held that the district
court properly imposed a fact cut-off date that fell ***between*** the liability and remedy phases of the
proceedings; i.e., ***after*** the district court made a finding of liability and entered an injunction.  Id.
at 523–24.  In other words, the Court in Brown addressed a factual scenario directly **opposite** to
the one presented here. Particularly, the Court in Brown held that the district court properly

imposed a fact cut-off date because "its decision was **limited to the issue of remedy and the merits of the constitutional violation had already been determined**." Id. at 523 (emphasis supplied). Accordingly, the entry of a fact cut-off date simply does not constitute a reasonable response to the complexities of this case necessitating the use of the Court's inherent powers. Instead, this Court should refuse to enter a fact cut-off date and should instead allow the parties to rely on the usual means of testing evidence at trial, including cross-examination.

## IV. PLAINTIFF CITES NO ELEVENTH CIRCUIT PRECEDENT SUPPORTING A FACT CUT-OFF DATE.

Lastly—but certainly not least—Plaintiff identified **no authority from the Eleventh Circuit** supporting the imposition of a fact cut-off date. What's more, the cases Plaintiff cites in support of a fact cut-off date are both factually and legally inapposite.

As explained above, Brown v. Plata, 563 U.S. 493, 523 (2011), which represents Plaintiff's lodestar case supporting the imposition of a fact cut-off, simply cannot bear the weight Plaintiff's argument requires. Id. Further, Steward v. Abbott, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (doc. 85-3) also provides no help to the Plaintiff. In Steward, the district court imposed a fact cut-off date where the defendant engaged in a documented history of discovery abuses, including taking a "scorched-earth approach to discovery in general" that went "far beyond what is expected under the rules." Id.; (doc. 85-3 at 2–3). Additionally, the Steward case stood pending for *six years* prior to the court's entry of a fact cut-off date; here, by contrast, the Plaintiff seeks to "fast track" this case to trial to secure a finding of liability. Similarly, Apple, Inc. v. Samsung Elecs. Co., involved claims of patent infringement and also required the court to conduct a partial retrial limited to a **narrow** set of issues; particularly, "the issue of damages for certain products and patents." 2013 WL 5737310, at *2. Both Steward and Apple presented issues not presently before this Court. The court in Steward employed a fact cut-off to conclude lengthy proceedings and

avoid rewarding the defendant for its discovery abuses, while the court in <u>Apple</u> used a fact cut-off to address a retrial on narrow issues.

The State further distinguished Plaintiff's other cases in its Letter Brief.  <u>See</u> (Doc. 85-2 at 4–5). <u>E.g.</u>, <u>Steinberg v. Chem-Tronics, Inc.</u>, 786 F.2d 1429, 1431 (9th Cir. 1986) (damages case; the absence of prospective relief rendered the imposition of a fact cut-off date irrelevant to the question of remedy); <u>Rolland v. Cellucci</u>, 138 F. Supp. 2d 110, 113 (D. Mass. 2001) (involved question of the defendant's required date of compliance with a settlement agreement, as opposed to whether liability existed in the first instance); <u>NAACP v. City of Myrtle Beach</u>, 503 F. Supp. 3d 390, 399 (D.S.C. 2020) (enforcing pre-existing fact cut-off date in scheduling order, as opposed to addressing whether to impose such a date at all).  While a fact cut-off date may make sense in a damages case, in which the relevant facts are set as of a particular moment in time, it defies logic in an injunctive relief case such as this one.

In any event, the Special Master noted that "[d]espite factual differences in the cases cited by Plaintiff, . . . they all stand for fundamental notions underpinning the Federal Rules of Civil Procedure—fairness and efficiency."  (Doc. 85 at 8).  But the notions of fairness and efficiency support the *State* in that those notions weigh against the entry of a fact cut-off.  As explained above, the State would suffer unfair prejudice if it implemented reforms in the ADOC facilities that a fact cut-off date prevented it from demonstrating at trial to avoid liability.  Moreover, the requirement that the State show "good cause" for introducing evidence past the cut-off date impermissibly and unfairly shifts the burden to the State to show that the Court should not enter an injunction, where both the PLRA and relevant Supreme Court precedent require that *Plaintiff* bear the burden of showing its entitlement to injunctive relief based on the circumstances at the time of trial.  Similarly, should the State implement or realize reforms past the fact cut-off date

that absolve it of liability, allowing the State to introduce that evidence would promote efficiency, as the absence of liability would render any remedial phase in this case wholly unnecessary.

Finally, Plaintiff simply provides no support whatsoever for its suggestion that "state defendants often attempt to implement reforms on the eve of trial to thwart the United States' trial strategy, and create purported evidence that the adversarial process cannot fairly test." (Doc. 85-1 at 2). Unlike the defendant in Steward, Plaintiff cannot present any evidence that the State employed "scorched-earth" discovery tactics that may necessitate the entry of a fact cut-off date. Further, should the Court harbor doubt closer to trial as to the nature and permanence of the State's reforms, the Court may refuse to consider any such reforms in determining the appropriateness of injunctive relief. See, e.g., Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F.3d 1276, 1284 (11th Cir. 2004) (holding that courts may refuse to find a lawsuit against a government actor moot where "there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated") (citing City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 n. 11 (1982)). And Plaintiff may certainly raise such concerns at the appropriate time. But at this stage of the case, Plaintiff's suggestion constitutes no more than mere speculation that the State might abuse the absence of a fact cut-off date – an argument Plaintiff could make at trial if it believes any such abuses occurred.

**CONCLUSION**

For the reasons set forth above, as well as in the State's letter brief (doc. 85-2), the State respectfully requests that the Court refrain from imposing a fact cut-off date in this case. Alternatively, should the Court impose a fact cut-off date, the State respectfully requests that the Court set the fact cut-off date contemporaneously with the deadline for the parties to submit witness and exhibit lists, as opposed to the date for the close of discovery.

Dated: May 20, 2022.

/s/ William R. Lunsford

Attorney for the State

William R. Lunsford
Matthew B. Reeves
Stephen C. Rogers
M. Landon Whatley
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
srogers@maynardcooper.com
lwhatley@maynardcooper.com

Anne A. Hill
Deputy Attorney General
**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 242-7491
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 20th day of May, 2022:

Carla C. Ward
Jason R. Cheek
Lane H. Woodke
William R. Chambers, Jr.
Praveen Krishna
**UNITED STATES ATTORNEY'S OFFICE**
1801 Fourth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 244-2185
Facsimile:  (205) 244-2181
carla.ward@usdoj.Gov
jason.cheek@usdoj.Gov
lane.woodke@usdoj.gov
will.chambers@usdoj.gov
praveen.krishna@usdoj.gov

Steven H. Rosenbaum
Kerry K. Dean
Matthew J. Donnelly
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 258-3036
kerry.k.dean@usdoj.gov
matthew.donnelly@usdoj.gov

Curtis Harris
George Eppsteiner
Deena Fox
**UNITED STATES DEPARTMENT OF JUSTICE**
150 M Street NE
Washington, D.C. 20004
Telephone: (202) 305-1361
curtis.harris@usdoj.gov
george.eppsteiner@usdoj.gov
deena.fox@usdoj.gov

Eric S. Dreiband
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1801 L Street NW
Washington, DC 20507
Telephone: (202) 663-4900

/s/ *William R. Lunsford*

*Of Counsel*