IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS, <br><br> Defendants. | Civil. Action No. 2:20-cv-01971-RDP |

**THE UNITED STATES' BRIEF IN SUPPORT OF THE SPECIAL MASTER REPORT AND RECOMMENDATION ON EVIDENTIARY FACT CUTOFF DATE**

The Special Master recommends that this Court impose an evidentiary fact cutoff date to promote fairness and efficiency at the trial on liability by ensuring that all evidence presented at trial on liability is subject to reasonable discovery. *See* Special Master Report and Recommendation on Evidentiary Fact Cutoff Date ("Report") (Doc. 85, at 5). The fact cutoff date would preclude the presentation of evidence about conditions in Alabama's prisons after the cutoff date, except for good cause. (Doc. 85, at 10). The Special Master also concluded that, contrary to arguments made by Defendants, the PLRA[1] does not prevent entry of a fact cutoff. (Doc. 85, at 13). The United States concurs.

Courts maintain the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *accord. Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Akin to

---
[1] Prison Litigation Reform Act, 18 U.S.C. § 3626.

excluding witnesses and exhibits that a party left off its pretrial lists, a fact cutoff promotes a just, orderly, and expeditious trial without unfair surprise and prejudice to the opposing party. *See* Fed. R. Civ. P. 26(a)(3); Fed. R. Civ. P. 37(c).  A court necessarily must impose some deadline for submitting relevant evidence to ensure an orderly and just resolution of liability.

A fact cutoff that ensures an orderly presentation of evidence is particularly appropriate and necessary in civil rights cases alleging systemic violations like this one, including in actions brought by the United States.  *See, e.g.*, (Doc. 85-3), Order at 5, *Steward v. Abbott*, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (United States case regarding Texas's statewide nursing homes); *Brown v. Plata,* 131 S. Ct. 1910, 1935 (2011) (regarding California prison system). This is so because of the case's complexity and the evolving circumstances in Defendants' prison system for men.  Rule 16 explicitly authorizes a court's scheduling order "to consider and take appropriate action on . . . adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," as well as to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c).  The parties in this case will have 32 months of formal discovery—from the June 30, 2021 filing of the Rule 26(f) Report (Doc. 42) to the March 5, 2024 discovery deadline—to develop facts for presentation at trial.  A fact cutoff here would appropriately and necessarily account for the complex issues in this statewide pattern or practice case.  The cutoff would also facilitate a more just, speedy, and inexpensive resolution of liability by providing the Court with evidence subject to adversarial discovery and alleviating the potential need to reopen discovery continuously.

Defendants object to the Special Master's Report. Defendants' arguments rely on false premises—that CRIPA[2] and the PLRA prevent a fact cutoff, and that a fact cutoff would prejudice Defendants through an absolute bar to the introduction of any new evidence that conditions have improved between the fact cutoff date and trial. As the Special Master reported to this Court, those arguments are unpersuasive, and there is no absolute bar to new evidence because Defendants have "(1) the ability to move the Court to present post-cutoff evidence 'for good cause shown;' and (2) the ability to present potentially relevant post-cutoff evidence at any subsequent remedy hearing." (Doc. 85, at 10). Therefore, this Court should enter an order imposing an evidentiary fact cutoff.

### 1. A Fact Cutoff is Entirely Consistent with the Primary Purpose of CRIPA.

CRIPA authorizes the United States to file contested litigation to vindicate the constitutional rights of persons residing in prisons after the Attorney General concludes "that reasonable efforts at voluntary correction have not succeeded" and "that the appropriate officials have had a reasonable time to take appropriate to correct such [unconstitutional] conditions."[3] 42 U.S.C. § 1997b(a)(2); *see also* 42 U.S.C. § 1997a; *Johnson v. Fla.*, 348 F.3d 1334, 1352 (11th Cir. 2003) ("The principal purpose of CRIPA was to promote the involvement of the Justice Department in institutional reform litigation.").

Defendants suggest that a fact-cutoff is somehow inconsistent with CRIPA's encouragement of states to take timely and voluntary corrective action. That is certainly not the case here. By the proposed fact cutoff date of March 5, 2024, Defendants will have had almost

---

[2] Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq.

[3] The United States cannot bring suit until it has investigated the identified problems, issued findings identifying the specific unconstitutional conditions, allowed the state time to rectify the identified violations, and is satisfied that "the appropriate officials have had a reasonable time to take appropriate action to correct such conditions." *See* 42 U.S.C. § 1997b(a)(2)(C).

five years to correct the unconstitutional conditions identified in the United States' first CRIPA findings report and more than three years to correct the unconstitutional conditions identified in the second CRIPA findings reports.

## 2. **The PLRA Does Not Prevent Entry of a Fact Cutoff Date.**

The Special Master correctly rejected the Defendants' argument that the PLRA precludes entry of a fact cutoff date. (*See* Doc. 85, at 13-16). There is no dispute that the PLRA requires a Court to find a constitutional violation before entering injunctive relief; but Defendants argue that the violation must "current and ongoing" to enter initial injunctive relief. (Doc. 86, at 5-6). The Special Master's Report finds that such an argument is incorrect. (*See* Doc. 85, at 14-15). As the Special Master notes, there is no statutory or legal requirement that there be evidence of a "current and ongoing" constitutional violation for the initial entry of injunctive relief. *Id.* And, in fact, case law dictates otherwise. *Id*.

The Report notes that the Eleventh Circuit, in *Thomas v. Bryant,* recognized the absence of "current and ongoing" in the initial injunction entry standard and rejected that a current and ongoing violation is necessary for initial entry of an injunction. (Doc. 85, at 13-14); 614 F.3d 1288, 1319-20 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994))[4]; *see also id.* at 1318 ("In such circumstances, the irreparable-injury requirement may be satisfied by *demonstrating a history of past misconduct*, which gives rise to an inference that future injury is imminent." (emphasis added) (citation omitted)); *accord. Porter v. Clarke*, 923 F.3d 348, 367-68 (4th Cir. 2019) (finding PLRA does not "displac[e] equitable authority to *initially* impose prospective relief, even when a violation is not 'current and ongoing'"). Importantly, the

---

[4] Defendants also incorrectly rely on *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994), to support their argument. (*See* Doc. 86, at 5-6). But, as the Special Master notes, *Farmer* merely provides that the Parties can offer evidence of facts arising during the litigation at the Court's discretion and does not prevent this Court from entering a fact cutoff deadline. (Doc. 85, at 15). And by making such an argument, Defendants fail to "acknowledge the discretion given to a district court in allowing (or not allowing) evidence of post-pleading developments." (*Id.*)

4

Eleventh Circuit found that neither the prisoner moving to a different prison nor the defendant's subsequent reforms absolved defendant's liability or mooted the need for the initial injunction. 614 F.3d at 1318-21.

The United States Supreme Court has also endorsed the utilization of a fact cutoff date in a PLRA case involving the California prison system. *Brown v. Plata*, 563 U.S. 493, 523-24 (2011). Indeed, the Supreme Court in *Plata* approved the lower court's use of a fact cutoff in a complex, systemic civil rights case concerning the California prison system despite potential corrective actions by the state. *Id.*[5] In discussing the discovery deadline imposed by the three-judge court below, the Court stated that "[o]rderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy." *Id.* Defendants attempts to distinguish *Plata* by noting the fact cutoff in that case came in the remedial phase, not pre-liability. (Doc. 86, at 9). But *Plata* still stands for the proposition that the PLRA does not bar a fact cutoff. *Plata* also finds that, despite imposing a fact cutoff months before the remedy trial, the "record and opinion make clear that the decision of the [ ] court was based on *current* evidence pertaining to *ongoing* constitutional violations. 563 U.S. at 524 (emphasis added). Here, according to the Eleventh Circuit's *Thomas* opinion, the United States does not even need to prove a current and ongoing violation.

Finally, the Report observes that Defendants recently lost this same "current and ongoing" argument in the *Braggs* case concerning mental health care in the Alabama prisons

---

[5] In *Brown v. Plata*, the Supreme Court approved the lower court's use of a fact cutoff in a complex civil rights case concerning the overcrowding of California's prison system. 563 U.S. 493, 523 (2011). A joint panel of the Northern and Eastern Districts of California imposed a fact cutoff due to the constantly changing conditions and services of California's prisons and the state's efforts to implement reforms. *Plata v. Schwarzenegger*, No. 3:01-cv-01351-THE (E.D./N.D. Cal), Order for Pre-Trial Preparation, July 2, 2005, Doc. No. 1294 (three-judge court) (imposing a fact cutoff date almost three months before trial began and excluding any evidence of changed prison conditions that occurred after the cutoff date). (Doc. 86, at 6).

system. (Doc. 85, p. 15) (citing *Braggs v. Dunn*, No. 2:14cv601-MHT, 2020 WL 5517262, at *3 (M.D. Ala. Sept. 14, 2020) ("By its plain terms and under the interpretation of the Eleventh Circuit, [PLRA] § 3626(a)(1)(A) contains no requirement that the court find a current and ongoing violation of federal law.")).

As the Special Master stated, "the Court may use its sound discretion in managing its affairs in accordance with the Federal Rules and may impose a fact cutoff date in order to ensure fairness and finality, while promoting efficiency and preserving limited judicial resources." (Doc. 85, at 16). In the instant matter, "a fact cutoff will provide the Court with evidence subject to adversarial discovery and alleviate the potential need to continuously reopen discovery to test the evidence." *Id*. The PLRA does not contradict that logic by preventing a fact cutoff.

### 3. A Fact Cutoff Ensures Fairness and Efficiency.

The Special Master correctly concluded that a fact cutoff would appropriately and necessarily account for the complex issues and size of this statewide pattern or practice case, and ensure fairness and efficiency. (Doc. 85, at 6-8).

First, the Special Master notes that courts often use evidentiary fact cutoff dates in civil rights cases alleging systemic violations that are similar to this one. (Doc. 85, at 6); *see also, e.g.*, *Steward v. Abbott*, No. 5:10cv1025 (W.D. Tex. Mar. 2, 2017) (entering fact cutoff deadline prior to determining liability);[6] *Brown,* 563 U.S. at 523 (evidence of changed prison conditions after the fact cutoff date were not admissible). Second, the Special Master acknowledged that

---

[6] Defendants attempt to distinguish *Steward* by arguing that the fact cutoff was entered only after the case had been pending for years. (*See* Doc. 86, at 10). Defendants ignore that the Court entered a fact cutoff early on in that case, then affirmed the cutoff again closer to trial (after the case had been pending for years) when the Defendants in that case sought dismiss the fact cutoff. (*See* Doc. 85-1).

6

courts outside the prison context have similarly imposed fact cutoffs in similarly complex cases. (Doc. 85, at 7) (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013); *Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 30 n.4 (D. Mass. 2006); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986)). And the Special Master found Defendants' attempts to distinguish these relevant cases unconvincing because, although all differ slightly in the underlying facts, ultimately "all stand for the fundamental notions underpinning the Federal Rules of Civil Procedure—fairness and efficiency." (Doc. 85, at 8).[7]

Finally, although Defendants argue that they would be prejudiced by a fact cutoff, the Special Master observes that the burdens imposed by a fact cutoff fall equally on each party. (Doc. 85, at 11) ("It also is worth noting that a fact cutoff date will apply equally to the United States and limit its ability to use incidents of harm or other evidence occurring after the date."). And, in fact, not imposing a fact cutoff has a greater prejudicial effect on the United States' case than the prejudicial effect on Defendants from imposing such a cutoff. (Doc. 85, at 11-12) ("The parties have asymmetrical access to current information . . . at the close of discovery, the United States effectively loses access to information held by the State about any changes. This is particularly true with regard to changes that occur behind locked prison doors."). Defendants also argue they will be prejudiced by "stale" evidence but, as the Special Master notes, using a fact cutoff date nearly 21 months from now provides appropriate incentives for Defendants to take action if they truly intend to remedy problems, rather than attempting to secure tactical advantages on the eve of trial. *Id*. In addition, a fact cutoff is not an absolute bar to the

---

[7] And while Defendants argue that this Court should not impose a fact cutoff because the United States failed to cite any Eleventh Circuit cases supporting its arguments, Defendants do not cite to any Eleventh Circuit case supporting their position.

introduction of evidence after the close of discovery.  Defendants can seek entry of the evidence for good cause; or can present any evidence affecting the conditions of their facilities during the remedy stage of this case.  And although Defendants argue that stale evidence creates inefficiencies for the Court, the Special Master notes that a fact cutoff actually "provides the Court and the parties with more efficient, fair, and reliable approach to assessing liability." (Doc. 85, at 11).[8]   In short, the Special Master balanced the equities and found that "a fact cutoff date provides more benefit to the Parties, and to this Court, than it does detriment." (Doc. 85, at 13).

## CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an order setting an evidentiary fact cutoff date of March 5, 2024 (simultaneous with the discovery deadline) and providing that any evidence created after that date, or otherwise not disclosed before the fact discovery deadline, may not be presented or considered at trial, except for good cause shown.

---

[8] The Special Master also notes that "any consideration of such evidence would require supplemental discovery up to, or even during the trial, and would require the Court to evaluate the reliability of information not fairly tested by full and timely discovery," thereby creating greater inefficiencies.  (Doc. 85, at 13).

Respectfully submitted,

| | |
|---|---|
| KRISTEN CLARKE<br>Assistant Attorney General | WILLIAM R. CHAMBERS<br>Acting United States Attorney |
| STEVEN H. ROSENBAUM<br>Chief | LANE H. WOODKE<br>Chief, Civil Division |
| KERRY KRENTLER DEAN<br>Deputy Chief | JASON R. CHEEK<br>Deputy Civil Chief |
| | */s Carla C. Ward* |
| GEORGE EPPSTEINER<br>CURTIS HARRIS<br>MATTHEW J. DONNELLY<br>Trial Attorneys<br>United States Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Ave, NW<br>Washington, DC 20530<br>(202) 258-3036<br>kerry.k.dean@usdoj.gov | CARLA C. WARD<br>Assistant United States Attorney<br>United States Attorney's Office<br>Northern District of Alabama<br>1801 Fourth Avenue North<br>Birmingham, Alabama 35203<br>(205) 244-2185<br>car1a.ward@usdoj.gov |

Dated:  May 26, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s Carla C. Ward*
CARLA C. WARD
Attorney for the United States
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
car1a.ward@usdoj.gov