IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) **CASE NO. 2:20-CV-01971-RDP** |
| **STATE OF ALABAMA, and** | ) |
| **ALABAMA DEPARTMENT OF** | ) |
| **CORRECTIONS,** | ) |
| | ) |
| **Defendants.** | ) |

**THE STATE'S REPLY TO PLAINTIFF'S BRIEF IN SUPPORT OF
THE SPECIAL MASTER'S REPORT AND RECOMMENDATION
ON EVIDENTIARY FACT CUTOFF DATE**

The State[1] hereby submits this Reply in Support of its Objection to the Special Master's Report and Recommendation (Doc. 85, "Objection") and in Opposition to Plaintiff's Brief in Support of the Special Master's Report and Recommendation (Doc. 88, "Brief in Support"). In support of its Reply, the State states as follows:

**INTRODUCTION**

Plaintiff's Brief in Support fails to meaningfully address the State's arguments against the imposition of a fact cut-off date. Instead, Plaintiff totally ignores many of the State's arguments and mischaracterizes the arguments it does address. As the State pointed out in its Objection, the imposition of a fact cut-off date would not constitute the best use of this Court's limited resources. Additionally, a fact cut-off date would thwart the purpose of CRIPA and would lead to inconsistencies with the PLRA. Accordingly, this Court should not enter a fact cut-off date, and

---

[1] Unless otherwise stated, all defined terms used herein have the same meaning as those used in the State's Objection to the Special Master's Report and Recommendation (Doc. 86, "Objection").

1

Plaintiff's Brief in Support fails to demonstrate otherwise.  At minimum, the Court should enter a fact cut-off date that falls on the same date as the deadline for the parties to file witness and exhibit lists, a date backed by Plaintiff in its Brief in Support.

## ARGUMENT

**I.  A FACT CUT-OFF DATE THWARTS THE PURPOSES OF CRIPA.**

As the State explained in its Letter Brief ("Letter Brief," doc. 85-2 at 1), and in its Objection, CRIPA envisions a collaborative process between the federal government and state agencies to improve conditions in state correctional facilities.  Plaintiff, however, continues to insist on its "win-at-all-costs" approach to this litigation, as evidenced by its Brief in Support.  According to Plaintiff, "[t]he principal purpose of CRIPA was to promote the involvement of the Justice Department in institutional reform litigation."  (Doc. 88 at 3) (quoting Johnson v. Fla., 348 F.3d 1334, 1352 (11th Cir. 2003)).  But CRIPA "promote[s] the involvement of the Justice Department in institutional reform litigation" with the aim of **improving the conditions in state institutions**, including correctional facilities.  (Id.); 42 U.S.C. § 1997b(a)(2)(B) (requiring the United States Attorney General to "encourage[] the appropriate [state] officials to correct the alleged conditions . . . through informal methods of conference, conciliation and persuasion"); United States v. Hawaii, 564 F. Supp. 189, 194–95 (D. Haw. 1983) (citing CRIPA's legislative history and noting that CRIPA places an "emphasis on discussion and consultation between state and federal officials").  It should not matter to Plaintiff *how* or *when* the conditions in ADOC's facilities improve; indeed, the State will satisfy CRIPA's purpose when it improves those conditions.[2]

---

[2] As the State noted in its Letter Brief, (doc. 85-2 at 1, n.1), "[w]hile the State certainly continues to address certain aspects of its operations [at ADOC] facilities, it denies that any condition within ADOC's male facilities rises to the level of a constitutional violation."

2

Plaintiff argues that, consistent with CRIPA's purpose of improving conditions in state correctional facilities, "Defendant[s] will have had almost five years to correct the unconstitutional conditions identified in the United States' first CRIPA findings report and more than three years to correct the unconstitutional conditions identified in the second CRIPA findings reports" by the proposed fact cut-off date of March 5, 2024.  (Doc. 88 at 3–4).  This argument again envisions a "race" to a liability finding under CRIPA.  If, for example, the **effects** of reforms implemented by the State before the cut-off date manifest themselves **after** the fact cut-off date, then the fact cut-off date would punish the State by not allowing it the benefit of introducing the effects of those reforms as evidence at a liability trial in this case.  Similarly, if the State successfully **completes** reforms that it initiated prior to the fact cut-off date, then the fact cut-off date would prevent the State from introducing evidence of the completed reforms at the liability trial.

This Court should reject Plaintiff's "win-at-all-costs" approach to this case and should instead consider *all* relevant evidence, including evidence of remedial measures the State undertakes, implements, or completes regardless of *when* the State undertakes, implements, or completes any such remedial measures.  As the State argued in its Objection, such an approach would best advance both the purposes of CRIPA and this lawsuit; to improve conditions at ADOC facilities for men. (Doc. 86 at 3–4).  Accordingly, this Court should deny Plaintiff's request for a fact cut-off date.

## II. A Fact Cut-off Date Creates Inconsistencies with the PLRA and Applicable Supreme Court Precedent.

As the State argued in its Letter Brief and in its Objection, the PLRA dictates that "[t]he court shall not order any prospective relief … unless … the relief is necessary *to correct the violation of a Federal right*; and … no other relief will correct the *violation of the Federal right*."  18 U.S.C. § 3626(b)(ii)–(iii) (emphasis added); (Doc. 85-2 at 2); (Doc. 86 at 4).  Plaintiff

3

mischaracterizes the State's argument: according to Plaintiff, the State maintains "that the violation must [be] 'current and ongoing' to enter initial injunctive relief." (Doc. 88 at 4) (citing Thomas v. Bryant, 614 F.3d 1288, 1319–20 (11th Cir. 2010)). But as the State already pointed out, this constitutes another mischaracterization of the State's argument. The "current and ongoing" language appears in the PLRA's provision applicable to the *termination* of injunctive relief. See 18 U.S.C. § 3626(b)(3). As to the initial entry of injunctive relief, the PLRA preserves the traditional equitable doctrines that apply outside of the context of the PLRA. See, e.g., Swain v. Junior, 961 F.3d 1276, 1284 (11th Cir. 2020) (applying traditional requirements for equitable relief in PLRA case and noting that the Court must also make the specific findings required under the PLRA prior to entering injunctive relief). See also 18 U.S.C. § 3626(a)(1)(C) (PLRA provision noting that "[n]othing in this section shall be construed to . . . repeal or detract from otherwise applicable limitations on the remedial powers of the courts.").

And to show an entitlement to a permanent injunction under traditional equitable principles, a plaintiff "must demonstrate the **continuance** of [the prison officials'] disregard [of an intolerable risk of harm] during the remainder of the litigation and into the future," i.e., even after summary judgment. Farmer v. Brennan, 511 U.S. 825, 846 (1994) (emphasis added). See also Newman v. Ala., 683 F.2d 1312, 1320 (11th Cir. 1982) (noting that "[a] federal court, when fashioning a remedy to redress constitutional violations in a prison, must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system."); Milliken v. Bradley, 433 U.S. 267, 281–82 (1977) ("[F]ederal-court decrees must directly address and relate to the **constitutional violation itself**. Because of this inherent limitation upon federal judicial authority, federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution[.]") (emphasis added). In other words, to establish

4

an entitlement to injunctive relief, Plaintiff must show that, *at the time of trial*, a constitutional violation exists and will continue absent injunctive relief.

Plaintiff argues that Brown v. Plata, 563 U.S. 493, 523–24 (2011), "stands for the proposition that the PLRA does not bar a fact cutoff." (Doc. 88 at 5). But Plaintiff otherwise fails to respond to the distinction recognized by the State between Brown and this case: the Supreme Court in Brown approved the district court's use of a fact cutoff **after the court found liability** but **before it imposed a remedy**. In other words, Brown did not address the requirement that a court find a constitutional violation prior to entering injunctive relief in the first instance. Nor did the Eleventh Circuit in Thomas rule that a plaintiff need not show a "current and ongoing" constitutional violation to demonstrate the propriety of the initial entry of injunctive relief, as argued by Plaintiff. (Brief in Support at 5). Instead, as the State already pointed out, the Eleventh Circuit in Thomas instead relied on traditional equitable principles and recognized the "well-established law that injunctive relief is available in the first instance 'to prevent a substantial risk of serious injury from ripening into actual harm,' i.e., to prevent future harm." 614 F.3d at 1320. Prison officials violate the constitution when they exhibit deliberate indifference to a substantial risk of serious harm to inmates. E.g., Farmer, 511 U.S. at 836; Estelle v. Gamble, 429 U.S. 97, 104 (1976). Clearly, Plaintiff must establish the existence of a constitutional violation to demonstrate an entitlement to injunctive relief. This Court should not permit Plaintiff to establish a constitutional violation based on stale evidence, especially when over **eight months** will elapse between the close of discovery (the date requested by Plaintiff for the fact cut-off) and trial.

Finally, Plaintiff continues to argue that the State may introduce new evidence past the cut-off date upon a showing of "good cause." (Doc. 88 at 7–8). But as the State pointed out, this purported "safety valve" constitutes burden-shifting in disguise. Plaintiff failed to address this

consequence of its proposed "safety valve," and the Court should not require the State to show good cause to introduce evidence that shows the inappropriateness of injunctive relief. Rather, the Court should require **Plaintiff** to show an entitlement to injunctive relief based on all relevant evidence. Because the entry of a fact cut-off date would create inconsistencies with the PLRA, with applicable Supreme Court precedent, and with the traditional principles of equitable relief, this Court should refuse to impose a fact cut-off date or, at the very least, should enter a fact cut-off date contemporaneously with the deadline for the parties to submit witness and exhibit lists.

### III. A FACT CUT-OFF DATE MAY WASTE JUDICIAL RESOURCES.

Plaintiff also largely fails to respond to the State's legitimate fear that the imposition of a fact cut-off date may lead to a waste of judicial resources. In other words, a fact cut-off date would "freeze in time" the conditions in ADOC facilities as of March 5, 2024 (Plaintiff's proposed fact cut-off date). But if the State improves conditions past the fact cut-off date such that no constitutional violation exists supporting the entry of injunctive relief, then the Court runs the risk of entering a **wholly unnecessary** remedial phase.

Plaintiff provides no response to this concern beyond reiterating the two "safety valves" available to the State if the Court enters a fact cut-off date. Those two "safety valves" consist of (1) the availability of the State to enter new evidence past the cut-off date upon a showing of "good cause;" and (2) the ability of the State to enter new evidence past the cut-off date at the remedial stage. But neither of these proposed "safety valves" sufficiently address the State's concern. As the State explained above, the first proposed "safety valve" constitutes burden-shifting in disguise and allows Plaintiff to rely on stale evidence in proving its case. And the second "safety valve" reveals circular reasoning: if the evidence of changed conditions within ADOC facilities arising

after the cut-off date would prevent a finding of liability and the entry of injunctive relief in the first instance, then any remedial stage would be unnecessary and a waste of judicial resources.

At minimum, the Court should enter a fact cut-off date contemporaneously with the deadline for the parties to submit witness and exhibit lists. Indeed, even Plaintiff described the entry of a fact cut-off date as "[a]kin to excluding witnesses and exhibits that a party left off its pretrial lists." (Doc. 88 at 1–2). If the Court does elect to enter a fact cut-off date, setting the fact cut-off date contemporaneously with the witness and exhibit list deadline would account for the lapse of time between the fact cut-off date and the Court's ruling on dispositive motions.

## CONCLUSION

For the reasons set forth above, as well as in the State's Letter Brief and Objection, the State respectfully requests that the Court refrain from imposing a fact cut-off date in this case. Alternatively, should the Court impose a fact cut-off date, the State respectfully requests that the Court set the fact cut-off date contemporaneously with the deadline for the parties to submit witness and exhibit lists, as opposed to the date for the close of discovery.

Dated: May 31, 2022.

/s/ Matthew B. Reeves
*Attorney for the State*

William R. Lunsford
Matthew B. Reeves
Stephen C. Rogers
M. Landon Whatley
La Keisha W. Butler
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com

srogers@maynardcooper.com
lwhatley@maynardcooper.com
lbutler@maynardcooper.com

Anne A. Hill
Deputy Attorney General
**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 242-7491
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 31st day of May, 2022:

Carla C. Ward
Jason R. Cheek
Lane H. Woodke
William R. Chambers, Jr.
Praveen Krishna
**UNITED STATES ATTORNEY'S OFFICE**
1801 Fourth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 244-2185
Facsimile:  (205) 244-2181
carla.ward@usdoj.Gov
jason.cheek@usdoj.Gov
lane.woodke@usdoj.gov
will.chambers@usdoj.gov
praveen.krishna@usdoj.gov

Steven H. Rosenbaum
Kerry K. Dean
Matthew J. Donnelly
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 258-3036
kerry.k.dean@usdoj.gov
matthew.donnelly@usdoj.gov

Curtis Harris
George Eppsteiner
Deena Fox
**UNITED STATES DEPARTMENT OF JUSTICE**
150 M Street NE
Washington, D.C. 20004
Telephone: (202) 305-1361
curtis.harris@usdoj.gov
george.eppsteiner@usdoj.gov
deena.fox@usdoj.gov

Eric S. Dreiband
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1801 L Street NW
Washington, DC 20507
Telephone: (202) 663-4900

                                              /s/ *Matthew B. Reeves*
                                              *Of Counsel*