FILED

2022 Oct-07  PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil. No. 2:20-cv-01971-RDP |
| | ) | |
| STATE OF ALABAMA and | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

## COMPLAINT IN INTERVENTION

For a complaint in intervention against the State of Alabama and the Alabama Department of Corrections, Billy Crowe (AIS: 122898), Kenneth Traywick (AIS: 177252), Ted Ray Burruss Jr. (AIS: 191186), Roger Elton Arnold (AIS: 171425), Joe Ranger Pickett (AIS: 128361), Charles Howard Baker Jr. (AIS: 216485), James Beech (AIS: 301727 ), Calvin Nix (AIS: 167868), Clinton Poores (AIS: 318593), Scott Jones (AIS: 292237), Freeshone McLeod (AIS: 229466), Shannon Tucker (AIS: 321166), Ronny Horton (AIS: 158476), Rickey Crawford (AIS: 215206), Ronnie Pugh (AIS: 249863), Matthew Hayes (AIS: 145601), Daniel Ash (AIS: 135225), Donald Nichols (AIS: 152618), Carlton Holman (AIS: 272477), Thomas May (AIS: 295054), Grady Bankhead (AIS: 112076), Terry Tatum (AIS: 162574), Ray McKinstry (AIS: 133713), Edward Daughtry (AIS: 169244), Kenneth Fluker (AIS: 167439), James George (AIS: 109780), Kevin Peoples (AIS: 204839), Nathanial Garrison (AIS: 142021), Jack Lee Wiley (AIS: 256482), Steven Cotton (AIS:

178710), Robert Steele (AIS: 147169), Carsbia Taylor (AIS: 117810), Bobby Sanford (AIS: 156788), Lester Mack Jr. (AIS: 311861), David Laney (AIS: 305136) and Joey Smith (AIS: 170129) (collectively, "Plaintiff-Intervenors") state:

## INTRODUCTION

1.      The Defendants have stopped feeding inmates because the inmates are on strike. As the management at Donaldson Correctional Facility advised inmates:



The Defendants have not just altered the serving schedule (which is itself problematic for an extended period of time); they have sharply reduced the food to make the Plaintiff-Intervenors and other inmates suffer.  This Complaint asserts a civil rights action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief to redress Defendants' violations of Plaintiff-Intervenors' rights under the Eighth and Fourteenth Amendments to the United States Constitution. These presently unconstitutional conditions have grown increasingly lethal since this action commenced.

2.      Given the urgent and life-threatening nature of Defendants' present actions, Plaintiff-Intervenors pray the Court will act promptly to compel Defendants and persons acting under their authority to continue administration of Plaintiff-Intervenors' food intake and access to medications and medical equipment at the level provided before the beginning of

a peaceful inmate labor stoppage that began on September 26, 2022. Since September 26, 2022, Plaintiff-Intervenors have been deprived of a healthy caloric intake, and, in some cases, their prescribed medications and medical equipment.

3.      Plaintiff-Intervenors also request this Court to enter an order requiring defendants to hire enough Correctional Officers to maintain some semblance of order in the prisons, although Plaintiff-Intervenors do not request emergency relief in connection with that request.

a.  From 2015 to 2018, the number of inmates in the custody of the Alabama Department of Corrections dropped, but the number of serious incidents reported by the ADOC skyrocketed. The increase in the number of serious incidents strongly correlates with the decrease in the number of corrections officers, whose numbers declined at a pace exceeding the rate of reduction in the inmate population.

b.  Since 2018, the inmate population has more or less leveled off, as touted in the official statement circulated in connection with bonds offered and sold by the Alabama Corrections Institution Finance Authority. By mentioning this official statement, Plaintiff-Intervenors do not mean to incorporate the whole of it into this pleading, because Plaintiff-Intervenors do not wish to be understood as having vouched for the accuracy of the official statement.

c.  As the inmate population has leveled off, the number of correctional officers has continued to decrease.

d.  At Limestone Correctional Facility, there are so few correctional officers that one of them gave a television interview stating that he was at the mercy of the inmates. It is believed that ADOC fired him as a result.

e.  There are so few correctional officers that inmates in some protective custody and Residential Substance Abuse Treatment for State Prisoners (RSAT) unit(s), where inmates are segregated from the general population because of their special vulnerability to death or violence, that ADOC requires inmates in those units to do the work of prison staff in the general population. The predictable result has been injury to the especially vulnerable inmates.

f.  There are so few correctional officers that inmates cannot have any protection from violence at the hands of other violent inmates or correctional officers.  Practically every day, someone is killed or injured in custody simply because another violent inmate or a violent prison guard executes an attack that no one can or does stop.

g.  There are so few correctional officers that inmates literally cannot go to infirmary or the doctor, often despite needing immediate medical care.

h.  The Defendants and their affiliates are using this litigation to justify enormous expenditures on physical infrastructure, much of which is undoubtedly in poor repair (and practically all of which is unairconditioned, moldy and dilapidated, making recruitment of correctional officers difficult, especially at relatively low levels of pay). As a result, the money that Defendants would use to hire correctional officers (not to mention feed or medicate prisoners) is going or will go to build new prisons that may improve conditions in the distant future,  rather than to ameliorate the cruel and unusual punishment immediately at hand.  As this litigation is being

used to justify large building projects, rather than address problems immediately at hand, Plaintiff-Intervenors' interests are not being adequately represented by parties already having appeared in this action.

4.  Plaintiff-Intervenors named herein have serious medical conditions, including diabetes, hypertension, heart disease and others. Plaintiff-Intervenors have specific dietary needs to manage their medical conditions. On September 26, 2022, Defendants reduced Plaintiff-Intervenors' meal amounts drastically – well below the levels appropriate for even entirely healthy individuals. Additionally, some Plaintiff-Intervenors identified in the Complaint have been denied access to prescription medications and medical devices. Both of these measures are contrary to the judgment of Defendants' medical personnel. Defendants have made it known that they will continue to reduce Plaintiff-Intervenors' food access until the peaceful inmate labor strike ceases. The result to Plaintiff-Intervenors, after only a short time, has been injurious, and their medical and psychological conditions will continue to deteriorate as their bodies are affected by inadequate dietary and medical access. Some Plaintiff-Intervenors have lost a dangerous amount of body mass, have had blood sugar drop to dangerous levels, and have experienced other acute medical symptoms (e.g., nausea) as a direct result of Defendants' decisions to reduce calories and meal frequency. .

5.  Defendants have violated the Eighth Amendment of the United States Constitution, as made applicable to the States by the Fourteenth Amendment to the United States Constitution, by depriving Plaintiff-Intervenors of food medical treatment for Plaintiff-Intervenors' serious health conditions, with no exercise whatsoever of individualized medical judgment and in contrast to the treatment Defendants provide to other similarly

situated inmates at other ADOC facilities. Plaintiff-Intervenors seek an end to those actions of Defendants that violate Plaintiff-Intervenors' right to equal protection and their right to be free from cruel and unusual punishment, pursuant to the Fourteenth and Eighth Amendments to the United States Constitution.

6.  A prison regulation may infringe on a prisoner's retained constitutional rights only if it is reasonably related to legitimate penological interests. Forced starvation and deprivation of prescription medications do nothing to serve legitimate penological interests – they are unlawful reprisals.

## JURISDICTION

7.  Plaintiff-Intervenors seek relief under 42 U.S.C. 1983.

8.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## PARTIES

9.  Plaintiff-Intervenor Billy Crowe (AIS: 122898) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has particular medical needs requiring a 3200-calorie "Enhanced Diet." These dietary needs have not been met since the start of the labor strike. Mr. Crowe has lost approximately 20 pounds since the start of the strike due to inadequate caloric provisions.

10. Plaintiff-Intervenor Kenneth Traywick (AIS: 177252) is currently housed at Fountain Correctional Center located at 9677 AL-21, Atmore, AL 36502. He has hypertension and high cholesterol. His dietary needs have not been met since the start of the labor strike.

11. Plaintiff-Intervenor Wesley Stoudenmire (AIS: 154072) is currently housed at Bibb Correctional Facility located at 565 Bibb Ln, Brent, AL 35034. Mr. Stoudenmire has continual seizures with increasing severity and frequency because he cannot metabolize

such anticonvulsant medication as he may receive at pill call, because taking the medication without adequate food causes nausea.

12.     Plaintiff-Intervenor Ted Ray Burruss Jr. (AIS: 191186) is currently housed at Fountain Correctional Center located at 9677 AL-21, Atmore, AL 36502. He is diabetic and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

13.     Plaintiff-Intervenor Roger Elton Arnold (AIS: 171425) is currently housed at Fountain Correctional Center located at 9677 AL-21, Atmore, AL 36502. He is diabetic and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

14.     Plaintiff-Intervenor Joe Ranger Pickett (AIS: 128361) is currently housed at Fountain Correctional Center located at 9677 AL-21, Atmore, AL 36502. He is diabetic and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

15.     Plaintiff-Intervenor Charles Howard Baker Jr. (AIS: 216485) is currently housed at Limestone Correctional Facility located at 28779 Nick Davis Rd, Harvest, AL 35749.[1] He has particular medical needs requiring a "Wellness Diet."

16.     Plaintiff-Intervenor James Beech (AIS: 301727) is currently housed at Limestone Correctional Facility located at 28779 Nick Davis Rd, Harvest, AL 35749. He has particular medical needs requiring a "Wellness Diet" (2400 calories, 125 gm protein, no concentrated sweets) and a "Diet Card." Mr. Beech has certain dietary needs and

---

[1] Insofar as counsel is aware, normal food service has resumed at Limestone Correctional Facility as of this filing date, and thus inmates housed there are not seeking emergency relief as it relates to food service. However, inmates may resume the work stoppage, at which time it is expected that the restricted food service would also resume.

restrictions due to a previous gastric bypass procedure. He has an injured neck and back, uses a brace to assist with walking, and has multiple tumors. Mr. Beech reports that, like all Plaintiff-Intervenors, he has been given severely inadequate food portions since September 26, 2022, as ADOC has reduced meal service from three times per day to two. Each meal has also been cut in terms of caloric value, totaling approximately 800 calories on most days. Mr. Beech was told by ADOC staff that he could not access his prescribed Coumadin medication during the ongoing labor strike due to prison conditions, which could cause severe injury or even death.

17.     Plaintiff-Intervenor Calvin Nix (AIS: 167868) is currently housed at Easterling Correctional Facility located at 200 Wallace Dr, Clio, AL 36017. He has particular medical needs requiring  a "Diet Card," receives multiple medications due to diabetes (including insulin), and has not had access to a nurse since the peaceful labor strike began on September 26. Mr. Nix also needs a special "Mechanical Soft/Blended" diet due to missing teeth that has not been provided since September 26, so he has not been able to consume certain foods. The officers in E dorm, where Mr. Nix is housed, have not been serving diabetics including Mr. Nix their medically necessary meals. Mr. Nix reports that he had been denied access to his "Keep on Person" prescription medication, his pain management medication and his insulin. His blood sugar has been in the 30s and 40s mg/dL every afternoon. A dangerously low blood sugar is below 54 mg/dL. Incarcerated individuals with diabetes are supposed to be on a certain feeding schedule, which has not been followed since the beginning of the peaceful strike. This caused Mr. Nix's blood sugar to drop so low that he had to be medically treated along with four other diabetics in his dorm on October 2, 2022.

18.    Plaintiff-Intervenor Clinton Poores (AIS: 318593) is currently housed at Limestone Correctional Facility located at 28779 Nick Davis Rd, Harvest, AL 35749. He has particular medical needs requiring a "Diet Card" that calls for a 2400-calorie diet, as determined by former ADOC Director of Nutrition Services Jessica Bush, RDN, LDN, MPH. On nine of the ten days since the strike began, Mr. Poores has been fed far less than his prescribed amount of calories; only one day has he been given an adequate amount of food. After the start of the labor strike, the Correctional Emergency Response Team (CERT) team took his continuous positive airway pressure ("C-PAP") machine during a raid. C-PAP machines are used to treat both obstructive and central sleep apnea. In both disorders, breathing is interrupted during the sleep cycle. This can occur hundreds of times in a single night, leading to a lack of oxygen and a higher risk for high blood pressure, heart disease, stroke, diabetes and other health concerns. Additionally, Mr. Poores has been unable to access his "keep on person" or "KOP" seizure medication, thus significantly heightening his risk for a life-threatening seizure.

19.    Plaintiff-Intervenor Scott Jones (AIS: 292237) is currently housed at Limestone Correctional Facility located at 28779 Nick Davis Rd, Harvest, AL 35749. He has particular medical needs requiring a "Wellness Diet" and a "Diet Card." Mr. Jones was told by ADOC staff that there would be no lunch or wellness diets during the strike and to call his lawyer if he had an issue with that. ADOC staff has skipped "pill call," when prescribed medications are distributed to inmates including Mr. Jones, more than once. The CERT team took his C-PAP machine during a raid, and he is thus now at a higher risk for high blood pressure, heart disease, stroke, diabetes and other health concerns.

20.    Plaintiff-Intervenor Freeshone McLeod (AIS: 229466) is currently housed at Easterling Correctional Facility located at 200 Wallace Dr, Clio, AL 36017. He has particular medical needs requiring a "Wellness Diet" and a "Diet Card."

21.    Plaintiff-Intervenor Shannon Tucker (AIS: 321166) is currently housed at Easterling Correctional Facility located at 200 Wallace Dr, Clio, AL 36017. He has particular medical needs requiring a "Wellness Diet" and a "Diet Card."

22.    Plaintiff-Intervenor Ronny Horton (AIS: 158476) is currently housed at Easterling Correctional Facility located at 200 Wallace Dr, Clio, AL 36017. Mr. Horton has been unable to access his blood pressure medication during the peaceful strike.

23.    Plaintiff-Intervenor Rickey Crawford (AIS: 215206) is currently housed at Easterling Correctional Facility located at 200 Wallace Dr, Clio, AL 36017. Mr. Horton has been unable to access his prescription medication during the peaceful strike.

24.    Plaintiff-Intervenor Ronnie Pugh (AIS: 249863) is currently housed at St. Clair Correctional Facility located at 1000 St Clair Rd, Springville, AL 35146. He has diabetes and as a result, has particular medical needs requiring a "Diet Card" that calls for a 2400-calorie diet. Since the strike began, Mr. Pugh has been fed far less than his prescribed amount of calories. He often feels lightheaded due to this extreme caloric restriction. He has a stock of peppermints that he ingests when he feels his blood sugar dropping.

25.    Plaintiff-Intervenor Matthew Hayes (AIS: 145601) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has diabetes and as a result, has particular dietary needs. These dietary needs have not been met since the start of the labor strike.

26.     Plaintiff-Intervenor Daniel Ash (AIS: 135225) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has heart disease and particular medical needs requiring a 2400-calorie "Wellness Diet," as authorized by Licensed Provider Strickland. These dietary needs have not been met since the start of the labor strike.

27.     Plaintiff-Intervenor Donald Nichols (AIS: 152618) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has heart disease and is diabetic. Mr. Nichols has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

28.     Plaintiff-Intervenor Carlton Holman (AIS: 272477) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has hypertension and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

29.     Plaintiff-Intervenor Thomas May (AIS: 295054) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has hypertension and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

30.     Plaintiff-Intervenor Grady Bankhead (AIS: 112076) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has hypertension and is diabetic. Mr. Bankhead has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

31.     Plaintiff-Intervenor Terry Tatum (AIS: 162574) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has particular

medical needs requiring a "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

32.  Plaintiff-Intervenor Ray McKinstry (AIS: 133713) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic. Mr. McKinstry has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike. He has also not been receiving his required diabetic shots since the strike began.

33.  Plaintiff-Intervenor Edward Daughtry (AIS: 169244) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has particular medical needs requiring a "Wellness Diet" and a "Diet Card." These dietary needs have not been met since the start of the labor strike.

34.  Plaintiff-Intervenor Kenneth Fluker (AIS: 167439) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic. Mr. Fluker has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike. He has also not been receiving his required diabetic shots since the strike began.

35.  Plaintiff-Intervenor James George (AIS: 109780) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has a heart condition requiring particular medical needs including medication and a "Wellness Diet." These medication and dietary needs have not been met since the start of the labor strike.

36.  Plaintiff-Intervenor Kevin Peoples (AIS: 204839) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has high

cholesterol. Mr. Peoples has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

37.   Plaintiff-Intervenor Nathaniel Garrison (AIS: 142021) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic. Mr. Garrison has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

38.   Plaintiff-Intervenor Jack Lee Wiley (AIS: 256482) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has high cholesterol and hypertension. Mr. Wiley has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

39.   Plaintiff-Intervenor Steven Cotton (AIS: 178710) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has hypertension. Mr. Cotton has particular medical needs requiring a special diet. These dietary needs have not been met since the start of the labor strike.

40.   Plaintiff-Intervenor Robert Steele (AIS: 147169) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has high cholesterol. Mr. Cotton has particular medical needs requiring a special diet. These dietary needs have not been met since the start of the labor strike.

41.   Plaintiff-Intervenor Carsbia Taylor (AIS: 117810) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic and has hypertension. Mr. Taylor has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

42. Plaintiff-Intervenor Bobby Sanford (AIS: 156788) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He has particular medical needs requiring a 3000-calorie "Enhanced Diet." These dietary needs have not been met since the start of the labor strike.

43. Plaintiff-Intervenor Lester Mack Jr. (AIS: 311861) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic and has medication needs. Mr. Mack has particular medical needs requiring a 2400-calorie "Wellness Diet." These medication and dietary needs have not been met since the start of the labor strike.

44. Plaintiff-Intervenor David Laney (AIS: 305136) is currently housed at Donaldson Correctional Facility located at 100 Warrior Ln, Bessemer, AL 35023. He is diabetic and has hypertension. Mr. Laney has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

45. Plaintiff-Intervenor Joey Smith (AIS: 170129) is currently housed at Fountain Correctional Center located at 9677 AL-21, Atmore, AL 36502. He is diabetic and has particular medical needs requiring a 2400-calorie "Wellness Diet." These dietary needs have not been met since the start of the labor strike.

46. Defendants are the State of Alabama and ADOC. ADOC is an agency of the State of Alabama.

**FACTS**

47. On April 3, 2019, the Department of Justice (DOJ) announced in a Notice Report that there is reasonable cause to believe that Alabama prisons violate the Constitution's Eighth Amendment prohibition of cruel and usual punishment. The DOJ citied overcrowded

facilities, sexual assault, and inmate on inmate violence as the causes of this Constitutional violation.

48.     On July 23, 2020, the DOJ released a follow up Notice Report which concluded that Alabama prisons for men are also in violation of the Constitution due to the fact that there is reasonable cause to believe that prisoners are subjected to excessive force at the hands of prison staff.

49.     On December 9, 2020, the DOJ filed suit against the State of Alabama and the Alabama Department of Corrections. The complaint alleges that "…the conditions at Alabama's prisons for men violate the Constitution because Alabama fails to provide adequate protection from prisoner-on-prisoner violence and prisoner-on-prisoner sexual abuse, fails to provide safe and sanitary conditions, and subjects prisoners to excessive force at the hands of prison staff."

50.     On November 23, 2021 the DOJ amended its complaint against the State of Alabama and the Alabama Department of Corrections.

51.     The Alabama Department of Corrections is under Court order in the Middle District, in the case of *Braggs* v. *Dunn*, to increase staffing and the provision of medical and mental health care.  However, the plaintiff class in *Braggs* consists of disabled men and/or men with serious mental illness.

52.     On Monday, September 26, 2022, thousands of inmates across all of Alabama's major correctional facilitie announced that they would be engaging in a labor strike and would not report to their jobs. This strike is a coordinated effort, with nine concrete demands, seeking to bring about meaningful reform in sentencing guidelines, parole policies and exploitative practices. The strike has been entirely peaceful on the part of the inmates.

53.     In response to the strike, Alabama prison officials are using food deprivation as a means to pressure inmates to return to work. .  The quality and quantity of food provided after the strike has been reduced such that the inmates are not receiving adequate or calories or appropriate nutrition.

54.     Prior to September 26, 2022, Plaintiff-Intervenors received three meals per day.

55.     The meals that Plaintiff-Intervenors received prior to September 26, 2022, had caloric values that equal or exceeded 2500 calories per day.

56.     While the meals that Plaintiff-Intervenors received prior to September 26, 2022, were not nutritionally adequate, they were such that Plaintiff-Intervenors could survive.

57.     Prison officials have reduced the frequency of meals from the standard three times per day to only twice per day. Providing only two meals a day violates the Eighth Amendment's prohibition of cruel and unusual punishment.

58.     ADOC's food administration protocol states that three meals are to be served each day. The only stated exception to this standard, when two meals per day may be served, is excessive food service demand on weekends or holidays. The deprivation of food as a means to pressure inmates to cease engaging in a peaceful strike does not fit within this exception.  Further, the exception to the standard of three meals per day is designed as a short-term solution. This strike has the potential to continue for weeks and months.

59.     Further, the exception to the standard three meals per day requires that the two meals meet the basic nutritional goals set out by ADOC. That requirement is  not being met.

60.     Since September 26, 2022, Plaintiff-Intervenors have received but two meals per day.

61.     The fact that Plaintiff-Intervenors receive but two meals per day rather than three is particularly important to the Diabetic Plaintiff-Intervenors, whose blood sugar levels vary dangerously in the absence of appropriately spaced meals.

62.     The inadequate caloric values of meals received by the Plaintiff-Intervenors since September 26, 2022, are such Plaintiff-Intervenors have not been and are not now receiving sufficient calories to live without incurring excessive risk of disease and suffering caused by inadequate diet.

63.     Reports and photos of the meals being served to inmates have circulated. These reports clearly indicate their non-conformity with established standards. ADOC states that the provision of food at its facilities is designed to "[e]nsure each inmate is provided a wholesome and nutritious diet, which meets nationally recommended dietary allowances, prepared under sanitary conditions and served in an appetizing manner." Meals have included slices of bread topped with some sort of sludge, uncooked hot dogs and miniscule portions of canned fruit.

64.     Upon examining a photo which depicts a tray served to an inmate (shown below), the departure from established standards and protocol is clear. Photos show a singular piece of cheese, a small portion of mashed potatoes and a small portion of canned fruit. Standard measurements show that the mashed potatoes provide 150 calories, the cheese 50 calories, and the fruit 100 calories. This is a total of 400 calories. At present, this sort of meal is served twice per day such that inmates are provided with 800 calories in a day. The national recommended dietary allowances, which ADOC claims to meet, state that adult males ought to ingest around 2,500 calories each day. Alabama is not even providing ⅓ of the

amount of food it ought to provide. This fact does not begin to address the unbalanced and

nutritionally derelict content of these meals.



65.   This reduction in the quality and quantity of food served to inmates is a deliberate effort to

stifle the labor strike, not an effort to further a legitimate penological interest.

66.   This deprivation of food is particularly harmful to Plaintiff-Intervenors suffering from

health conditions such as diabetes which require unique and specific dietary plans and

levels of caloric intake. An adequate diet is not a matter of comfort or appetite but rather

basic health.. If a diabetic inmate is not fed sufficiently, such that they do not ingest enough

glucose, they will suffer from diabetic hypoglycemia. If untreated, which is quite likely given ADOC's record of failing to provide medical care, diabetic hypoglycemia can lead to convulsions, seizures, unconsciousness and in some circumstances death.

67.   Under the Eighth Amendment of the United States Constitution, as made applicable to the States pursuant to the Fourteenth Amendment of the United States Constitution, Plaintiff-Intervenors have a right to be free from cruel and unusual punishment.

68.   Feeding Plaintiff-Intervenors, and particularly the Diabetic Plaintiff-Intervenors, only two meals per day for an extended period violates the Eighth Amendment.

69.   Feeding Plaintiff-Intervenors meals whose caloric values fall below a life-sustaining amount of calories per day violates the Eighth Amendment.

70.   Plaintiff-Intervenors have suffered bodily injuries as a result of having inadequate meals served but two times per day.

71.   In particular, inmates are receiving so little food that they cannot safely metabolize medications. Taking the medications without food causes the patient  to vomit, and vomiting disgorges the medication, such that the patient cannot benefit from the medication. Thus, Plaintiff-Intervenor Wesley Stoudenmire, a Plaintiff named herein, has continual seizures with increasing severity and frequency because he cannot metabolize such anticonvulsant medication as he may receive at pill call, because taking the medication without adequate food causes nausea.

72.   Defendants have explained that the change in feeding inmates that has occurred since September 26, 2022 is the result of work stoppages in the prisons operated by the Defendants, yet have wrongly claimed that ADOC has continued to provide essential services uninterrupted.

73.   Serving only two meals per day requires less paid labor than serving three meals per day, and serving less food requires fewer food purchases each day.

74.   Plaintiff-Intervenors aver that saving money in this way is not a penological interest sufficient to justify serving less food at fewer intervals.

75.   Plaintiff-Intervenors further aver that retaliating against prisoners is not a sufficient penological interest to justify serving less food at fewer intervals, especially where that reprisal  continues over an extended period of time.

76.   Even if penological interest could over justify serving less food at fewer intervals under any circumstances, such justification would be absent in prisons operated by Defendants.

77.   Defendants employ very few correctional officers at each facility.

78.   Thus, contractors who made the "SAP" and "Crime Bill" classes available to prisoners stopped (well before September 26, 2022) sending instructors into the prisons, because the contractors maintained there were too few correctional officers to meet contractual requirements. Thus, inmates cannot complete these classes, even though completing the classes is a condition for their release in many instances. This problem escalates tension and violence in the prisons.

79.   There are too few correctional officers to take inmates to medical appointments, even when the appointments occur on campus. For example, in dealing with mental health appointments alone, roughly 400 of the 600 mental health appointments typically scheduled for a given period of time are generally missed, chiefly because defendants have too few correctional officers to take inmates to appointments, despite the fact the appointments are on the grounds of the prisons where the inmates are housed.

80.    Defendants have no intention of spending money on improving conditions in prisons except to the extent it is necessary to defend this litigation or to construct new prisons.

81.    Thus, at the behest of and under the control of the Defendants, the Alabama Correctional Industry Finance Authority recently attempted to sell $750 million in bonds, all of which proceeds would have been used to finance the construction of new prisons. None of the proceeds would have been spent to hire more correctional officers or to ameliorate other conditions challenged as unconstitutional by the United States and now by these Plaintiff-Intervenors. Not surprisingly, ordinary bond buyers refused to purchase debt from the affiliate of Defendants operating prisons in an unconstitutional manner. Defendants knew (or in the ordinary course would have been expected to know) that the objections could have been overcome by allocating at least some of the proceeds to ameliorating unconstitutional conditions by means other than new construction of prisons. In other words, the Defendants chose to let the bond offering fail rather than to allocate even a relatively small amount of money to ameliorate unconstitutional conditions in a manner that would have addressed at least some problems immediately.

82.    Even in the weeks and months before the work stoppage that began on September 26, 2022, correctional officers had begun to require inmates in protective custody units to work in dormitories or other areas used for general population inmates, despite the fact that correctional officers knew that the protective custody inmates were unsafe in those areas (the inmates were in protective custody to protect them from "hits"). The correctional officers explained these requirements as a function of being short handed, although inmates remain skeptical. These inappropriate work assignments caused the protective custody inmates to suffer attacks and significant wounds.

83.   Correctional officers have openly acknowledged that there are too few qualified correctional officers to staff prisons operated by Defendants. Upon information and belief, Plaintiff-Intervenors aver that, when one correctional officer spoke to the media about the problem, he was discharged, thus further aggravating the staffing problems at the facility where he served.

84.   As recently as this week, the Governor of Alabama has announced that she plans to refund revenues in excess of current operating expenses to taxpayers.

85.   In hearings this past Summer, leaders of the budget committee in the Alabama Senate advised the Alabama Department of Corrections to expect no further budgetary increases, particularly insofar as such increase might be justified as necessary to hire additional personnel.

86.   Absent judicial intervention, and perhaps not even then, no one can reasonably expect the prison population to decrease in the reasonably near future, so to make the system operate safely with the number of correctional officers and other resources already at hand.

87.   The Alabama legislature enacted sentencing reform, which led to a "run off" of the prison population from 2015 to 2018. However, the decline in the prison population stopped after the Alabama legislature enacted H.B. 380 in 2019, which enactment gave the Governor of Alabama control of the Board of Pardons and Paroles, notwithstanding Amendment 38 of the Alabama Constitution (1901).  Since then, the Board has all but stopped granting paroles.

88.   Alabama courts and the Board of Pardons and Paroles continue to send inmates, even inmates with well documented mental illness, to prison because the inmates fail drug urinalysis tests while on probation and parole. Courts continue to send inmates to prison

with sentencing terms requiring inmates to complete SAP and "Crime Bill" courses that are no longer offered. These practices continues even though the United States District Court for the Middle District of Alabama has expressly found that the Defendants do not provide constitutionally adequate care to mentally ill inmates. When an inmate is sentenced to a term that ends only after the inmate completes a class that is no longer offered, that inmate will not reduce the prison population by leaving soon.

89.     For now, the point of the immediately preceding paragraphs is that Alabama will not address prison conditions by reducing the number of inmate: without court intervention, problems addressed in this action will not go away in the near future.

90.     This action threatens to become, if it has not already become, a Trojan horse for large public works projects, in large part at the expense of Plaintiff-Intervenors' constitutional rights.

91.     Given that it is their rights which are at stake, Plaintiff-Intervenors have an interest in this action that may be, indeed likely will be, impaired in the absence of their intervention.

92.     The intervention of the Plaintiff-Intervenors is timely. Before the Alabama Corrections Finance Authority offered bonds for sale this Summer,  before the Senate leadership announced that the Alabama Department of Corrections would have no new money to hire correctional officers, and before the Governor announced that she would work to refund to taxpayers all revenues in excess of previously budgeted expenditures, Plaintiff-Intervenors were not on clear notice that Defendants would spend money chiefly to build new prisons, rather than to take such other measures as may be necessary to stop Eighth Amendment violations.  All of these events occurred within the past three months, and the Governor's announcement was just this week.

93.     Certain Plaintiff-Intervenors have been denied access to medication and medical equipment, in direct contradiction to the recommendations and prescriptions provided by ADOC medical personnel. Plaintiff-Intervenor Beech was told by ADOC staff that he could not access his prescribed Coumadin medication during the ongoing labor strike due to prison conditions, which could cause severe injury or even death. Plaintiff-Intervenor Nix reports that he has been denied access to his "Keep on Person" prescription medication, his pain management medication and his insulin. The CERT team took Plaintiff-Intervenors Poores's C-PAP machine during a raid, and he is thus now at a higher risk for high blood pressure, heart disease, stroke, diabetes and other health concerns. Plaintiff-Intervenors Poores and Jones has been denied access to "pill call," when prescribed medications are distributed to inmates Mr. Jones, more than once since the start of the strike. Plaintiff-Intervenor Horton has been denied access to his blood pressure medications. Plaintiff-Intervenor Crawford has been denied access to his medications. Plaintiff-Intervenor McKinstry has not been provided regular access to his prescribed diabetic insulin shots. Plaintiff-Intervenor George has been denied access to his heart medication. Plaintiff-Intervenor Mack has been denied access to his diabetic medications.

94.     While the strikes inside some facilities have stopped, inmates and the outside activists who support them are openly planning to resume the strikes at all facilities later this month.

95.     The rights of Plaintiff-Intervenors are not adequately protected by this action. This is acutely evident in the matter of nutritional deficits and meal intervals, but is also true with respect to all other claims for relief. Thus, Plaintiff-Intervenors are entitled to intervene as a matter of right.

96.     Plaintiff-Intervenors also seek permissive intervention.

## CLAIMS FOR RELIEF

### Count I

*Reduced Caloric Intake*

97.     Plaintiff-Intervenors incorporate by reference paragraphs 1 through 96 set forth above.

98.     Defendants have violated the Eighth Amendment rights of Plaintiff-Intervenors by failing to feed Plaintiff-Intervenors a sufficient caloric intake as described herein.

99.     Defendants have violated the Eighth Amendment rights of Plaintiff-Intervenors, and particularly the Diabetic Plaintiff-Intervenors, by failing to feed them three meals per day for several days on end.

### Count II

*Reduced Meal Frequency*

100.    Plaintiff-Intervenors incorporate by reference paragraphs 1 through 96 set forth above.

101.    With respect to those Plaintiff-Intervenors who have diabetes and medical conditions requiring three meals per day at regular intervals, Defendants are violating the rights of those Plaintiff-Intervenors to be free from cruel and unusual punishment by serving meals only twice per day, especially given the reduced caloric and nutritional value of those two meals.

### Count III

*Deprivation of Medication and Medical Equipment*

102.    Plaintiff-Intervenors adopt and incorporate by reference paragraphs 1 through 96 as stated above.

103.    Defendants have violated the rights of the Plaintiff-Intervenors by failing to dispense medication to them, particularly such medications characterized as "Keep on Person".

104.   Defendants have violated the Eighth Amendment rights of the Plaintiff-Intervenors in this matter by inflicting cruel and unusual punishment.

Count IV

*Failure to Ameliorate and To Cease Cruel and Unusual Punishment*

105.   Plaintiff-Intervenors adopt and incorporate by reference paragraphs 1 through 96 as stated above.

106.   In addition to the matters set forth herein, Plaintiff has already described other conditions and practices constituting cruel and unusual punishment inflicted on inmates in Defendants' custody. Plaintiff-Intervenors agree that Plaintiff has adequately described these conditions. However, Plaintiff-Intervenors submit that the disposition of this matter will impair their interests, especially to the extent the disposition merely results in building new prisons, rather than other measures (including but not limited to more well trained correctional officers) that would have a more immediate impact in reducing the suffering of Plaintiff-Intervenors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenors seek injunctive relief requiring Defendants to resume feeding Plaintiff-Intervenors and other inmates with food and nutrition equivalent to that served in the weeks leading up September 26, 2022, and at intervals of at least three meals per day, with other small meals as medically prescribed for the Plaintiff Intervenors with diabetes.  Plaintiffs further pray for an injunction requiring Defendants to dispense keep on person medications and other medications to Plaintiff-Intervenors and other inmates. Plaintiffs further pray for such other relief as may be just and equitable under the premises to remedy the unconstitutional conditions demonstrated to the Court in this matter by Plaintiffs and/or Plaintiff Intervenors, including but

not limited to the conditions arising from the low correctional officer to inmate ratio. Plaintiff-Intervenors further seek attorneys' fees and costs.

Dated: October 7, 2022

Respectfully submitted,

*/s/ Cliff Hardy*

**Clifford Hardy Attorney at Law, LLC**
1600 3rd Ave N.
Bessemer, Alabama 35020

OF COUNSEL:                    */s/ Frank Ozment*

**Frank Ozment Attorney at Law, LLC**
501 217 Country Club Park
Mountain Brook, Alabama 35213

**Certificate of Service**

I hereby certify that I have, on October 7, 2022, electronically filed this Complaint in Intervention, by means of this Court's electronic filing service, which service causes a copy of the Complaint in Intervention to be served on counsel of record in this action.

*/s/ Cliff Hardy*