IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil. No. 2:20-cv-01971-RDP |
| | ) | |
| STATE OF ALABAMA and | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

*Reply of Billy Crowe Regarding Motion for Reconsideration*

The State of Alabama and the United States have opposed the motion made by Billy Crowe to have to the Court reconsider whether to allow Crowe to intervene in this matter. Crowe respectfully submits this reply.

*Crowe has timely requested reconsideration.*

The State argues that Crowe failed to request relief in a timely fashion because the time limit set forth in Fed. R. Civ. Pro. 59 governs his request, rather than the limit expressed in Rule 54. Even (or especially) if one accepts that Rule 59 provides the time limit, Crowe's request is timely. On October 25, 2022, the Court issued a memorandum and order advising that Crowe would not be allowed to intervene in this matter. The decision to deny intervention is a judgment under Fed. R. Civ. Pro.

1

54(a), which states: "'Judgment'" as used in these rules includes a decree and any order from which an appeal lies." Federal Rule of Civil Procedure 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days *after the entry of the judgment*." (Emphasis added). Rule 58(a) states:

> (a) **Separate Document.** Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:
>
> (1) for judgment under Rule 50(b);
>
> (2) to amend or make additional findings under Rule 52(b);
>
> (3) for attorney's fees under Rule 54;
>
> (4) for a new trial, or to alter or amend the judgment, under Rule 59; or
>
> (5) for relief under Rule 60.

Rule 58 governs entry of judgments. In pertinent part, Rule 58(c) states:

> (c) Time of Entry. For purposes of these rules, judgment is entered at the following times:
>
> (1) if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or
>
> (2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:
>
> (A) *it is set out in a separate document*; or
>
> (B) 150 days have run from the entry in the civil docket.

2

(Emphasis added). Thus, the judgment to deny the motion to intervene was not set forth in a separate paper, but was included with the memorandum of opinion.[1] Barring further action from the Court, the judgment is not "entered" until 150 days from October 25, 2022, which was the date the judgment was entered on the docket. March 24, 2023, is the date falling 150 days after October 25, 2022.  Crowe moved for reconsideration on November 25, 2022, which is well within the deadline prescribed by Rule 59(e).

*It is appropriate to vacate, etc., the judgment prohibiting Crowe's intervention.*

In *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007), the 11th Circuit stated:

> "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."  "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." (internal citations omitted).

*See also Walker v. Warden,* No. 22-10193-A, 2022 U.S. App. LEXIS 33617 (11th Cir. Nov. 18, 2022) (to same effect).  The grounds urged by Crowe are well within those parameters.

First, Crowe would very respectfully point out that the Court was mistaken insofar as the Court believed that Crowe still hoped to press his claims for inadequate

---

[1] The Official Comment to Rule 58 states: "The amended rule eliminates these uncertainties by requiring that there be a judgment set out on a separate document—*distinct from any opinion or memorandum*—which provides the basis for the entry of judgment." (Emphasis added).

3

rations and medical issues by the time the Court ruled on his motion to intervene. As noted in the motion, Crowe advised those claims were moot before the Court ruled, although his counsel apologizes for having failed to make that announcement more prominently. Thus, to the extent that the Court denied the motion because the Court believes Crowe intended to litigate about food and medical issues, the denial rests on a manifest error of fact. The interest that Crowe seeks to vindicate is set forth in his proffered complaint in intervention Count IV, p. 26, Doc. 99-1, which deals in part with the number of corrections officers, but also touches on whether they are sufficiently trained (*e.g.*, to know to stop on young, large inmate from beating another older, smaller inmate, even when the warden believes the older inmate is a criminal).

Second, Crowe's motion rests on newly discovered evidence. As this Court noted in its Memorandum of Opinion and Order, this case is in large part about inmate-on-inmate violence. Since moving for leave to intervene, Crowe has been the victim of inmate-on-inmate violence. His account of that violence, appended to his motion to reconsider, is by definition evidence that could not have been discovered before he moved for leave to intervene.

At least two corrections officers stood by and watched as Crowe was beaten on the occasion described in his sworn declaration. As this Court has noted, part of this litigation is focused on whether the State must hire more corrections officers.

Crowe strongly concurs that the Department must retain more corrections officers to prevent collapse of the corrections system. However, his own experience demonstrates that hiring more corrections officers by itself will not impede cruel and unusual punishment.

The State offers a sworn declaration from the Warden at Donaldson, which declaration consists chiefly of recounting Crowe's criminal history. On the one hand, Crowe is careful not to impugn the Warden, despite the several mistakes his declaration includes (Crowe is not a compulsive gambler, for example). On the other, the tenor of that sworn declaration illustrates part of the problem at hand: the gist of the declaration suggests that, if Crowe was beaten for a quarter of an hour by other inmates while corrections officers watched, the declaration implies there is nothing that could be or must be done, because Crowe has committed crimes in the past. The State can hire a legion of corrections officers, but it will do no good as long as the State and its management take an approach consistent with the assumption on which the sworn declaration rests.

The Eleventh Amendment does not bar Crowe's intervention. The Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Obviously, this action is not an action commenced by "Citizens of another

5

State, or by Citizens or Subjects of any Foreign State," but is instead an action commenced by the United States. *United States v. Mississippi*, 380 U.S. 128, 85 S. Ct. 808 (1965). Crowe is seeking leave to intervene in that action, not to commence an action. Moreover, his complaint in intervention (especially after certain of his claims have become moot) makes it clear that he seeks chiefly to make sure his interests are not impaired in this action, as they may well be in his absence. . The Eleventh Amendment is a restriction on federal jurisdiction, not a license for governmental litigation to proceed without regard to the interests of private citizens.

The Court expressed concern over whether Crowe's intervention would impede the progress of this action. Crowe has no intention of conducting expansive discovery. In fact, he may conduct very little discovery at all. Having lived in Alabama prisons for decades, he knows the facts and he also knows where to get the facts.

*Conclusion*

Since the Court denied leave to intervene, at least one corrections officer has resigned and warned that the Alabama prison system is about to collapse.[2] His warnings are not unfounded. Even before the COVID-19 pandemic, the in-custody mortality rate for prisons in Alabama prisons has skyrocketed.[3] Crowe believes the

---

[2] https://apnews.com/article/prisons-alabama-treatment-of-prisoners-50e1832966f34b0a5a2f65520a4cdc83.
[3] E. Ann Carson, "Mortality in State and Federal Prisons, 2001–2019 – Statistical Tables" Bureau of Justice Statistics (Table13) (December 2021). This report is available through a link at https://bjs.ojp.gov/library/publications/mortality-state-and-federal-prisons-2001-2019-statistical-tables.

6

evidence will show that the number of deaths in custody has, from 2019 until today, doubled across ADOC and at Donaldson in particular, notwithstanding the lack of any variables that would explain the increase, apart from drugs and violence.

Even if Crowe were not entitled to intervene as of right (and we respectfully submit that he is, especially since no other inmates have intervened), the perspective of a long-term inmate with a vested, personal, and physical interest in discontinuing cruel and unusual punishment would be sufficiently valuable to the Court to justify permissive intervention.

                              Respectfully submitted,

                              */s/ Frank Ozment*
                              Counsel to Billy Crow
                              ASB # 7203N73J

Frank Ozment Attorney at Law
501 217 Country Club Park
Mountain Brook, AL 35213
205.413.9973
frankozmentlaw@gmail.com

## Certificate of Service

I hereby certify that I have filed this document by means of this Court's electronic filing system on December 12, 2022, such that the document has been served on all counsel of record contemporaneously.

                              */s/ Frank Ozment*