UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:20-CV-01971-RDP |
| } | |
| **STATE OF ALABAMA, et al.,** } | |
| } | |
| **Defendants.** } | |

## ORDER

Before the court is the United States' Objections to Special Master Report and Recommendation #2 ("R&R"). (Doc. # 132). The Objections have been fully briefed (Docs. # 132, 135, 136), and are ripe for decision. For the reasons discussed below, the Objections are due to be overruled.

**I.     Background**

The United States brought this action against the State of Alabama and the Alabama Department of Corrections ("the State" or "Alabama") pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997. (Doc. # 71 at 1). The United States alleges that Alabama has violated the Eighth and Fourteenth Amendments to the Constitution of the United States "by failing to prevent prisoner-on-prisoner violence, by failing to prevent prisoner-on-prisoner sexual abuse, by failing to protect prisoners from the use of excessive force by security staff, and by failing to provide safe physical conditions of confinement." (*Id.*).

Currently at issue is the State's request to permit its experts and counsel to inspect four specific Federal Bureau of Prisons ("BOP") facilities for the purpose of inspecting the interior and exterior areas of each facility. (Doc. # 131-3). Alabama sought to inspect: (1) the Federal

Correctional Complex, Coleman ("FCC Coleman"), (2) Federal Correctional Complex, Hazelton ("FCC Hazelton"), (3) the Federal Correctional Complex, Yazoo City ("FCC Yazoo City"), and (4) United States Penitentiary, Atlanta. (*Id.*).

In support of the request to inspect, the State contends that this case necessarily involves resolving the question of whether ADOC "officials responded reasonably to some of the conditions described by Plaintiff." (Doc. # 131-1 at 7). The State argues that the United States will be making comparisons between the ADOC and other correctional systems, will be using experts that will be basing their opinions on the standards in use at BOP facilities, and have otherwise indicated that the ADOC facilities are deficient when compared to "nationwide" statistics. (*Id.* at 5). The State offered to forego discovery into the federal correctional system if the United States would stipulate that it would not rely on evidence pertaining to other correctional systems or their policies and procedures as part of its case. (*Id.* at 2).

The United States contends that the discovery sought by the State is unduly burdensome and harassing, fails to comport with Rule 26's relevancy and proportionality requirements, and is generally inappropriate and unnecessary. (Doc. # 131-2).

The Special Master issued an R&R recommending that the court allow the inspections of the four facilities. (Doc. # 131 at 12). The United States has objected to that R&R. (Doc. # 132). The State has responded, and the United States has filed a reply. (Docs. # 135, 136)

**II.      Standard of Review**

"Discovery is governed by the principles of relevance and proportionality[.]" *Gulledge v. DePuy Orthopaedics, Inc.*, 2023 WL 6883670, at *2 (S.D. Ala. Oct. 17, 2023) (citing Federal Rule of Civil Procedure 26(b)(1)). Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Pursuant to Federal Rule of Civil Procedure 34(a)(2), a party may serve on any other party a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2).

Federal Rule of Civil Procedure 53 sets forth the appropriate standard of review for a district court to apply when reviewing recommendations made by a Special Master. Rule 53(f)(3) provides as follows:

> Reviewing Factual Findings. The court must decide *de novo* all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:
>
> (A)   the findings will be reviewed for clear error; or
>
> (B)   the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

Fed. R. Civ. P. 53(f)(3). Rule 53(f)(4) provides as follows:

> Reviewing Legal Conclusions. The court must decide *de novo* all objections to conclusions of law made or recommended by a master.

Fed. R. Civ. P. 53(f)(4).

In acting on a report and recommendation, the court must afford the parties an opportunity to be heard. Fed. R. Civ. P. 53(f)(1). "The requirement that the court must afford an opportunity to be heard can be satisfied by taking written submissions when the court acts on the report without taking live testimony." Fed. R. Civ. P. 53 advisory committee's note to 2003 amendments. The

court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

**III.   Analysis**

The United States objects to the Special Master's Report and Recommendation and argues that (1) the BOP is a third party, (2) the discovery sought is only marginally relevant, and (3) the proposed discovery on the BOP is exceedingly disproportionate. (Doc. # 132).

The States responds that (1) the Rule 34 request was proper and represents a proper scope of discovery under Rule 26, (2) the request seeks information that is highly relevant to the needs of the case, (3) the request is directly proportional to the issues in the case, and (4) CRIPA mandates cooperation with the request. (Doc. # 135).

**A.   The Request to Inspect BOP Facilities is Proper**

The United States' first objection is that inspection of these facilities should not be allowed because the BOP is a non-party. (Doc. # 132 at 7-9).

Rule 34(a)(2) provides for a request to inspect "property possessed *or controlled* by the responding party." The United States argues that the BOP is deemed a third party under a stipulation by the parties that was incorporated into a stipulated order. That Stipulated Consolidated Order Regarding Protocols for Production of Documents and Things (Including ESI) provides: "For purposes of preservation and production 'United States' means the Civil Rights Division and United States Attorneys' Offices for the Northern, Middle, and Southern Districts of Alabama." (Doc. # 63 at 2). However, according to the Second Amended Complaint, "Plaintiff is the United States of America." (Doc. # 71 at ¶ 14). Undisputedly, the United States "controls" the BOP and its facilities.[1] After careful review, the United States' objection is **OVERRULED**.

---

[1] The United States' objection also elevates form over substance. Rule 34(c) addresses non-party inspections by stating that "a non-party may be compelled ... to permit an inspection" pursuant to Rule 45. Rule 45(c)(2)(B)

### B. The Discovery Sought is Relevant

Next, the United States objects that the inspections will produce evidence that is only marginally relevant. (Doc. # 132 at 9-14). The State argues that, to the contrary, the information sought via the inspections is relevant to its affirmative defenses that it (1) responded reasonably to the claims outlined in the Second Amended Complaint, and (2) did not act with deliberate indifference. (Doc. # 135 at 9).

Discovery may be taken under Rule 26 "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and the information need not be admissible. As the State has acknowledged, the BOP does not set the constitutional standard under the Eighth Amendment. Rather, the State seeks the inspections regarding the issue of the reasonableness of the State's actions in its prisons. Also, to the extent that the United States has retained experts who will opine on the issue of the reasonableness of the State's actions, the inspections may also be potentially relevant to inform their opinions and they may also potentially serve as impeachment evidence, which is properly discoverable. *See, e.g., Acadian Med. Consultants, LLC v. Innovative Glob., LLC*, 2023 WL 3171967, at *2 (S.D. Fla. Mar. 9, 2023) (concluding impeachment evidence is properly discoverable).

For these reasons, the objection that the evidence the requested inspections will produce is only marginally relevant is **OVERRULED**.

### C. The Discovery Sought is Proportional

Finally, the United States argues that allowing the four BOP inspections is "exceedingly disproportionate." (Doc. # 132 at 14). It asserts that a sample of four of the BOP's one hundred eighty nine facilities would not necessarily establish what the BOP considers reasonable. (*Id*. at

---

provides that "[a] subpoena may command [] inspection of premises at the premises to be inspected." The request could as easily have been made via a subpoena pursuant to Federal Rule of Civil Procedure 45.

12). And, it contends that the State's "apparent goal is to massively expand the scope of (and in turn delay the end of) discovery and then eventually put the Federal BOP on trial." (*Id*. at 17).

The State asserts that the request for the inspections is "directly proportional to the wide-ranging issues and important affirmative defenses pleaded in this case."  (Doc. # 135 at 11).

The factors relevant to proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery [needed to resolve] the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The issues at stake in this litigation are clearly very important. And, in this significant litigation, the questions raised include (1) whether the civil rights of institutionalized persons are being violated in Alabama's thirteen state prisons, and (2) whether the State can establish any affirmative defenses to that claim. The United States accuses the State of failing to prevent prisoner-on-prisoner violence, failing to prevent prisoner-on-prisoner sexual abuse, failing to protect prisoners from the use of excessive force by staff, and failing to provide safe physical conditions of confinement. In its Second Amended Complaint, the United States calls the situation in the State's prisons "serious," "unconstitutional," "extreme," "critical," "pervasive," and "systemic." (Doc. # 71 at 2-3).

Regarding the parties' relative access to relevant information, the United States argues that the State already has online access to much of the information they seek from the BOP through its website or other public sources. The State asserts that the United States' inspections of thirteen of its correctional facilities over twenty-four (24) days has shown that such site inspections (1) provide access to information not otherwise available, such as identifying the application of policies, procedures, and practices, and (2) demonstrate the staffing and the physical conditions of

the facilities. As the State notes, the United States inspected the State's facilities for precisely these same reasons. Moreover, although the United States maintains a hotline inmates housed in the State's facilities can call at any time and discuss the conditions within the State's facilities, the State has no such access to comparable information within the BOP without onsite inmate interviews. And, it arranged for 1000 interviews of inmates in the State's facilities. After review, the court agrees with the Special Master that the parties' relative access to the information sought weighs in favor of allowing the inspections.

Regarding the parties' resources, the United States would be hard pressed to contend that it does not have the resources to conduct the four inspections. And although the United States sees little value to the proposed discovery, it is not for the opposing party to determine what is relevant and advisable discovery to be conducted in relation to a party's affirmative defenses.

The importance of the discovery in resolving the issues is seemingly established by the fact that the United States inspected the State's thirteen institutions and conducted 1000 inmate interviews. Clearly, the information regarding the State's prisons that the United States' site inspections produced was important to the claims made in the Second Amended Complaint. Similar information is likely important to the States' affirmative defenses.

The balance of the factors relevant to proportionality point the conclusion that the inspections sought are not disproportionate and are being undertaken for legitimate litigation related reasons, not harassment. Therefore, the objection that the inspections would be "exceedingly disproportionate" is **OVERRULED**.

**IV.   Conclusion**

After careful consideration of the record in this case, the Special Master's Report and Recommendation #2, and the briefing on the United States' Objections thereto, the court hereby

**ADOPTS** the Report of the Special Master. The court further **ACCEPTS** the recommendations of the Special Master. It is **ORDERED** as follows:

1. The BOP **IS** subject to the discovery sought in the State's Rule 34 request for the four inspections;

2. The State **MAY** conduct the four requested physical inspections of the following BOP facilities: (1) FCC Coleman, (2) FCC Hazelton, (3) FCC Yazoo City, and (4) United States Penitentiary, Atlanta; and

3. The Parties **SHALL** work together to minimize the disruption to the BOP and facilitate the visits using the same, or similar, protocols used to conduct facility visits of the State's prisons.

**DONE** and **ORDERED** this October 31, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE