UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:20-CV-1971-RDP |
| ) | |
| **STATE OF ALABAMA, and** ) | |
| **ALABAMA DEPARTMENT OF** ) | |
| **CORRECTIONS,** ) | |
| ) | |
| **Defendants.** ) | |

### SPECIAL MASTER REPORT AND RECOMMENDATION
### ON PLAINTIFF'S REQUEST TO QUASH WILLIAMS DEPOSITION SUBPOENA

This Report and Recommendation is respectfully submitted to the Honorable R. David Proctor, Chief Judge, pursuant to the Court's Order dated November 9, 2021 (Doc. 70).

### *Proceedings*

Before the Court is a dispute arising from the Defendants' issuance of a subpoena and the corresponding request by Plaintiff United States to quash that subpoena seeking deposition testimony from one of Plaintiff's litigation team members, Investigator Mark Williams ("Williams").

### *Background*

On April 28, 2024 Defendants propounded their Second Set of Interrogatories to Plaintiff. *See* Ex. A. On May 28, 2024, Plaintiff served its Objections and Responses to those interrogatories. *See* Ex. B. Relevant to the dispute at hand, Plaintiff's interrogatory responses were verified, as required by Rule 33(b)(3), by Investigator Williams.

On September 4, 2024, Counsel for Defendants emailed to counsel for Plaintiff a subpoena and a deposition notice directed to the United States' Investigator Williams. *See* Ex. C. On

September 11, 2024, the United States responded with a letter objecting to the subpoena as seeking privileged information. *See* Ex. D. Counsel for Defendants responded on October 3, 2024, articulating the reasons for the State's belief it is entitled to depose Williams. *See* Ex. E. On the following day, Plaintiff served written objections to Defendants' Requests for Production to Williams. *See* Ex. F.

The Williams subpoena sought a video deposition of Williams on October 14, 2024 and contained the following requests for production:

1. Any and all documents you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
2. Any and all communications to or from Plaintiff and its counsel which contain any facts or data that Plaintiff's counsel provided to you and that you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
3. Any and all communications to or from Plaintiff and its counsel which contain any inferences that they provided and that you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
4. Any outside source material, such as books, articles, or other written materials related to this Lawsuit and/or your investigation, that you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
5. Any and all notes you created or drafted during or after any visit to ADOC correctional facilities that reference the visit, that you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
6. Any and all notes you created or drafted during or after speaking with any ADOC inmate, including by telephone, that memorialize the conversations, that you considered or relied on to certify any response contained within the United States' Objections and Responses to the State's Second Set of Interrogatories signed on May 28, 2024.
7. All documents (including communications) and things you reasonably expect to use to refresh your memory at the deposition.

> 8. All documents (including communications) and things you reviewed, discussed, generated, and/or considered in preparation for the deposition or at any time in the past, including working notes and memoranda.

During the October 7, 2024, Status Conference, the Court confirmed that the United States should pursue this dispute with the undersigned rather than filing a motion to quash with the Court. Status Conference Tr. 42:15-44:4 (Oct. 7, 2024), Doc. # 207. On October 18, 2024, the undersigned held a conference with the parties to hear their arguments and positions on the dispute; at the end of the conference, the parties were asked to brief the issues. On November 1, 2024, the United States submitted its initial letter brief (Ex. G), which was followed by the Defendants' response brief on November 8, 2024 (Ex H).

Having considered the briefs of the parties, as well as their arguments during conference, the undersigned makes the following Report and Recommendation to the Court.

*Plaintiff's Position*

Plaintiff's position is that the Williams subpoena should be quashed because: (a) Defendants failed to properly serve Investigator Williams in his personal capacity; (b) Defendants failed to comply with the Department of Justice's *Touhy* regulations; and (c) Defendants are impermissibly attempting to take a *de facto* contention deposition of the United States' enforcement attorneys. Alternatively, Plaintiff argues that good cause exists for a protective order dismissing the impermissible deposition seeking the United States' privileged information.

As to the first argument, Plaintiff says Defendants have given conflicting positions on whether they intended to serve Investigator Williams with the subpoena in his United States employee official capacity or in his personal capacity. According to Plaintiff's counsel, after initially suggesting they were serving the United States, rather than Williams in his personal capacity, they switched course during the October 18 conference, arguing instead they were

serving Williams in his personal capacity. If true, Plaintiff argues there has been no proper service on Williams, as required by Rule 45(b) and (g). And even if Defendants intended to serve Williams in his official capacity, Plaintiff urges that the subpoena should nevertheless be quashed pursuant Rule 45(d)(3)(A) for failing to comply with the Department of Justice's *Touhy* regulations and for improperly seeking privileged information.

Plaintiff's second argument is that the subpoena should be quashed for failure to comply with the *Touhy* regulations. Subpart B of Part 16 of Title 28, Code of Federal Regulations, sometimes referred to as the Department of Justice's *Touhy* regulations, named after *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), provide that no present or former employee of the Department of Justice may testify or produce Departmental records in response to subpoenas or demands of courts or other authorities issued in any state or federal proceeding without obtaining prior approval by an appropriate Department official. Plaintiff maintains that Defendants have not provided a complete or sufficient "statement . . . setting forth a summary of the testimony sought," as required by 28 C.F.R. § 16.23(c). Plaintiff also observes that one of the considerations for authorization is whether the testimony sought "is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26.

Plaintiff's next argument is that Defendants are impermissibly attempting to take a *de facto* contention deposition of the United States' enforcement attorneys. Plaintiff's counsel point out the Court has relayed that this case is not "traditional bipartite litigation" but rather is "enforcement litigation." Status Conference Tr. 29:8-30:2 (May 6, 2024), Doc. # 186. As such, the United States argues it is operating in a law enforcement capacity and accordingly does not have first-hand involvement in Defendants' operations or constitutional violations and that it is not a part of or a first-hand witness to any transactions, events, or evidence. Rather enforcement attorneys for the

United States gather and compile evidence obtained from Defendants and third parties. The United States does not have a client agency; it only has its enforcement attorneys and litigation team members, like Investigator Williams, who work at the direction of these enforcement attorneys.

Plaintiff argues the posture of the case makes the attempted deposition of Investigator Williams an improper *de facto* deposition of these enforcement attorneys. Plaintiff points to statements by the Court that Plaintiff's interrogatory responses represent the work, analysis, and answers of the United States' enforcement attorneys. Status Conference Tr. 27:4-27:9 (May 6, 2024), ("THE COURT: . . . If you want to know what the lawyer has to say, you send an Interrogatory [including for] [w]hat's the factual basis for the claim"), Doc. # 186; *see also* Tr. 28:21-20:14. The Government's attorneys argue that Investigator Williams works at the direction of the enforcement attorneys, and that he has no first-hand knowledge of or involvement in any evidence, thus the subpoena should be quashed as an improper *de facto* deposition of these enforcement attorneys.

*Defendants' Position*

Defendants requests the undersigned to recommend the denial of Plaintiff's request to quash, because they say Plaintiff failed to demonstrate that the deposition "requires disclosure of privileged or other protected matter." Additionally, they argue Plaintiff failed to demonstrate good cause for a protective order.

As an initial matter, Defendants note that Investigator Williams on May 28, 2024 verified Plaintiff's interrogatory answers under penalty of perjury. They further oppose the request to quash the subpoena for three reasons: (1) preemptive and speculative privilege assertions lack merit, and facts are not protected by privilege or work product; (2) Plaintiff failed to demonstrate good cause

5

exists for a protective order; and (3) Plaintiff waived its objections to the State's requests for production by failing to respond timely.

First, Defendants contend they remain entitled to discover any alleged facts that support Plaintiff's claims and/or the State's defenses. In Defendants' view, a person answering interrogatories possesses the same obligations as a person testifying at a deposition or trial, and personal knowledge—not direct knowledge—remains the standard for providing testimony. During the pendency of this action, Defendants note that Williams has relayed a variety of factual allegations from inmates and their families to the State by email concerning the conditions of confinement at various ADOC facilities before and after certifying Plaintiff's Interrogatory Responses. Defendants maintain this demonstrates that he possesses personal knowledge of information outside any conceivable coverage by attorney-client privilege or work-product doctrine, as reflected in numerous emails sent by Williams to the State's counsel. Defendants have provided three examples of these emails. *See* Ex. A to attached Ex. H. Defendants desire to discover the nonprivileged, unprotected facts underlying the allegations Williams certified in Plaintiff's Interrogatory Responses and in the various emails to the State's counsel, and they reason the State can only obtain this crucial discovery by deposing Williams.

In response to Plaintiff's *Touhy* argument, Defendants note that a deposition notice can satisfy the "sufficient summary of the testimony sought" requirement of 28 C.F.R. § 16.23(c). *See A.R. ex rel. Root v. Dudek*, 304 F.R.D. 668, 669 (S.D. Fla. 2015). Defendants assert they fulfilled their obligation by sending a deposition notice and providing the summary in their letter stating the subpoena "seeks testimony from Williams about the facts and bases for information contained in [Plaintiff's Interrogatory Responses]." *See* Ex. E.

For their second argument, Defendants maintain that Plaintiff has failed to demonstrate the existence of good cause to completely preclude a deposition. Specifically, they argue Plaintiff has failed to satisfy the four factors articulated by the Eleventh Circuit to determine whether good cause exists to enter a protective order. *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987). Additionally, Defendants note that Plaintiff has failed to demonstrate that "the State's not yet asked questions" seek privileged information.

Finally, Defendants assert that Plaintiff waived its objections to the State's document requests and must produce all non-privileged material. They argue Plaintiff failed to object to the document requests included in the State's Subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena [was] served" and thus responded in untimely fashion. The State served its subpoena on September 4, 2024, and Defendants argue Plaintiff responded untimely on October 4, 2024. They assert that "merely submitting 'initial objections' in Plaintiff's September 11, 2024, Letter—ambiguous as to whether the initial objections related to the document requests or notice of deposition—failed to comply with the Federal Rules of Civil Procedure." Even if the undersigned determines the documents are work product and forgives Plaintiff's untimeliness, Defendants assert the documents are subject to the substantial need exception under Rule 26(b)(3)(A)(ii).

*Analysis*

For the reasons set forth below, it is **respectfully recommended** that this Court grant in part and deny in part Plaintiff's request for a protective order.

I.    <u>Legal Standards</u>

A party seeking testimony from a DOJ employee must provide to DOJ an "affidavit or statement setting forth the testimony sought from the DOJ employee." *A.R. ex rel. Root v. Dudek*,

7

304 F.R.D. 668, 671 (S.D. Fla. 2015); *see also* 28 C.F.R. § 16.23. A notice of deposition may satisfy the "sufficient summary of the testimony sought" requirement of 28 C.F.R. § 16.23(c), and an affidavit is not necessarily required. *Root*, 304 F.R.D. at 669.

Rule 26 provides the framework for granting a protective order. "A party or any person from who[m] discovery is sought may move for a protective order in the court where the action is pending." FED. R. CIV. P. 26(c). The court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* A trial court enjoys broad discretion to decide the scope and appropriateness of a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). A court may enter a protective order precluding discovery for good cause shown. FED. R. CIV. P. 26(c)(1). Good cause is a "well[-]established legal phrase" and "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant*, 820 F.2d at 356. To grant a protective order, a district court "must articulate its reasons for granting a protective order sufficient for appellate review." *See United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986). The Eleventh Circuit evaluates the following four factors to determine whether to grant a protective order: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order." *In re Alexander Grant*, 820 F.2d at 356. The Eleventh Circuit also requires "[the court] to balance the interests of those requesting the order." *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989).

Rule 45(d)(3)(A) provides that a court is "[r]equired" and "must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A); *cf.* FED. R. CIV. P. 45(d)(3)(B) (setting forth other circumstances when quashing is "Permitted" and

the court "may" quash or modify a subpoena).

"Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it and taking into account society's interest in furthering the truthseeking function." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2007) (internal citations omitted).

II.     *Analysis of the Parties' Arguments*

As a preliminary matter, It is not clear whether Defendants issued the subpoena to Mr. Williams in his personal or in his official capacity. There is no dispute, however, that Mr. Williams was not personally served with the subpoena. Defendants say they "served Plaintiff with a Subpoena and Notice of Deposition on September 4, 2024, consistent with the prior practice used by Plaintiff in deposing seventy (70) non-party ADOC employees." Counsel for the Plaintiff say the subpoena can only have been served for Mr. Williams in his official capacity because the United States "does not accept service of subpoenas on behalf of its employees for their personal capacities." Under the circumstances, it appears Mr. Williams was served, if at all, in his official capacity.

I am not persuaded by Plaintiff's argument that Defendants failed to comply with the *Touhy* regulations. Importantly, the *Touhy* regulations do not create a substantive defense to disclosure. *Commonwealth of Puerto Rico v. U.S.*, 490 F.3d. 50, 61 (1st Cir. 2007). In other words, "the regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information." *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001). Rather, they "simply set forth administrative procedures to be followed by the Department of Justice when demands for information are received." *Id.*

Here, I believe Defendants have provided a sufficient "statement . . . setting forth a

summary of the testimony sought," as required by 28 C.F.R. § 16.23(c). The October 3, 2024 letter sent by Defendants' counsel advised that "the State seeks testimony from Williams about the facts and bases for information contained in the United States' Objections and Responses to the State's Second Set of Interrogatories."

Nevertheless, Plaintiff has not waived its objections to the requests for production contained in the subpoena. Rule 45(d)(2)(B) provides that "A person commanded to produce documents … may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials …. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Here, the subpoena was sent to Plaintiff's counsel on September 4, 2024, and Plaintiff's counsel responded with a written objection to the subpoena on September 11, 2024. The fact that Plaintiff's counsel took a "belt and suspenders" approach and also filed formal objections to the document requests on October 4, 2024 pursuant to Rule 34 (under the belief the subpoena was directed to the United States as a party) does not change the fact that Plaintiff properly objected to the subpoena within the time provided by Rule 45(d)(2)(B). And Defendants can't have it both ways. After Plaintiff's counsel sent the objection letter on September 11, 2024, Defendants' counsel argued this was insufficient and insisted that Plaintiff was required to "utilize avenues provided by Federal Rules of Civil Procedure to object to the document requests served on Williams." Defendants cannot now credibly argue that Plaintiff's response under Rule 34 is inadequate.

Just as with my last Report and Recommendation (Doc. 218), at the heart of this dispute is the State's contention it is entitled in discovery to seek *facts* underlying the Government's allegations in the Amended Complaint, and Plaintiff's response that such discovery constitutes a

*de facto* deposition of Plaintiff's counsel. As part of Defendants' quest for such facts, they assert they have the right, pursuant to Rule 45, to take the deposition of Plaintiff's investigator, Mr. Williams, who signed the verification to Plaintiff's interrogatory responses.

The undersigned agrees with Plaintiff that the mere fact Williams verified the interrogatory responses does not itself equate to possession of personal knowledge of every response. Rule 33(b) "expressly permits a representative of a [government entity] to verify the [government's] answers without personal knowledge of every response by furnishing such information as is available to the party." *Pantages v. Cardinal Health 200, Inc.*, No. 5:08-CV-116-OC-10GRJ, 2009 WL 10670380, at *1 (M.D. Fla. June 17, 2009) (finding no personal knowledge required for corporate representative answering interrogatory to corporation).

But Plaintiff goes too far in trying to buttress its argument about Williams by noting it has never listed him in its Initial Disclosures and concluding he does not have "discoverable, direct knowledge." Plaintiff's description does not fully capture the language of Rule 26(a)(1)(A)(i), which only requires disclosure of names of "each individual likely to have discoverable information—along with the subjects of that information—***that the disclosing party may use to support its claims or defenses*** …." (emphasis added). Just because Williams has not been listed by Plaintiff does not mean that he has no "discoverable information" that Defendants could use to support their defenses.

Indeed, Defendants have put forth evidence demonstrating that Investigator Williams does have personal (and non-privileged) knowledge of facts regarding conditions and incidents involving inmates. Specifically, Defendants have provided three emails authored by Williams and sent to Defendants in which he relayed a variety of factual allegations from inmates and their families concerning their conditions of confinement at various ADOC facilities. The undersigned

11

understands these are merely examples of emails Investigator Williams has sent during the pendency of these proceedings. These emails demonstrate that Williams, in fact, does have personal knowledge of facts that support Plaintiff's claims and/or Defendants' defenses. And it is axiomatic that the work product privilege does not attach automatically to such facts simply because they were put into a document that happened to be sent to Plaintiff's counsel. *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 650 (S.D. Fla. 2009); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, No. 06–20976–CIV, 2007 WL 4557158, at *6 (S.D. Fla. Dec. 21, 2007).

III.    <u>Recommendation</u>

It is appropriate, as an initial matter, to reiterate that the Government does not enjoy some type of automatic, special exemption from discovery in enforcement cases. As Judge Shira Scheindlin has observed:

> Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action. … When a government agency initiates litigation, it must be prepared to follow the same discovery rules that govern private parties (albeit with the benefit of additional privileges such as deliberative process and state secrets).

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414, 418 (S.D.N.Y. 2009).

Defendants are entitled to discovery into the *facts* underlying Plaintiff's claims—and their corresponding defenses—with regard to the Amended Complaint. But "depositions … are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002). Thus, Defendants are not entitled to discover the mental impressions or litigation strategy of Plaintiff and its counsel via a deposition of Williams.

The issue presented here is analogous[1] to one framed by Judge Goodman in the Southern District of Florida:

> [T]he question is whether a civil defendant may obtain factual information in a deposition taken of a government agency pursuant to Rule 30(b)(6) in a manner which does not cause the agency to disclose the work product of its counsel, and, if so, what safeguards can be implemented to prevent an abusive deposition?
>
> For the reasons (and with the limitations and safeguards) discussed below, the Court concludes that the answer is yes, Defendant may take the 30(b)(6) deposition of the SEC in this case.

*S.E.C. v. Merkin,* 283 F.R.D. 689, 690 (S.D. Fla. 2021); *see also Root*, 304 F.R.D. at 669-672 (allowing deposition and holding "representative would not be prepared to discuss counsels' mental impressions; rather, the representative would be prepared to disclose the facts known to the United States"). I am persuaded by the rationale and safeguards espoused in *Merkin*. Litigants are permitted to learn the *facts* underlying their opponent's claims and defenses. In the Court's January 14, 2025 ruling (Doc. 230), Defendants were limited to contention interrogatories in lieu of a Rule 30(b)(6) deposition because, in that setting, the (non-FBOP) deponent did not appear to have any first-hand knowledge. Here, however, the Williams emails demonstrate that he does possess first-hand knowledge of facts relevant to the parties' claims and defenses.

Williams' knowledge of those facts—at least some of which he communicated to Defendants—coupled with his verification of the interrogatory response, makes his personal

---

[1] As Plaintiff notes, *Merkin* involved a Rule 30(b)(6) deposition. But the arguments asserted here by Plaintiff—that a deposition of Williams will reveal Plaintiffs' work product—are identical to those previously addressed by the Court in this case regarding Defendants' Rule 30(b)(6) deposition notice. Plaintiff also points out that a subsequent, unreported decision (*Halifax*) disagreed with *Merkin* and *Kramer*, suggesting as Government's counsel did in *Merkin* that those cases are outliers. But one of the leading treatises on civil procedure cites *Kramer* with approval and cites other cases in which courts deemed the FBI and Navy Department to be government agencies that could be compelled to provide designees for a deposition. 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2103 n. 37. And *Halifax* is distinguishable. In that case, the court determined that the information sought to be discovered was opinion work product, not facts. *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012).

13

knowledge fair game in a deposition. Of course, Plaintiff's counsel may protect against the disclosure of work product or privileged information in the Williams deposition by interposing appropriate objections and giving instructions on a question-by-question basis. In other words, Defendants are not entitled to require the Plaintiff to tender Williams to testify about how the Plaintiff intends to marshal the facts because this would require Plaintiff to reveal its counsel's work product. Defendants questions must be specifically tailored to discovering facts underpinning Plaintiff's allegations in the Amended Complaint and facts like those contained in Williams' emails sent to Defendants.

My review of the document requests in the Williams subpoena demonstrates that, rather than being designed to seek the *facts* supporting Plaintiff's claims, they instead implicate the opinion work product of Plaintiff. Given that Investigator Williams is an employee of the DOJ, the documents requested are documents created and maintained by an employee of the United States, not by Mr. Williams individually. As such, the requests more properly should have been made pursuant to Rule 34.

In any event, the notice provided by Defendants' counsel to satisfy the *Touhy* regulation only said that Defendants seek testimony from Williams "about the facts and bases for information contained in [Plaintiff's Interrogatory Responses]."

Having balanced the interests in accordance with Eleventh Circuit precedent, there is minimal likelihood of harm to Plaintiff if the Williams deposition goes forward[2] regarding the *facts* underlying Plaintiff's claims and the *facts*—like those in his email communications—about which he has personal knowledge.

---

[2] Plaintiff notes in its letter brief that a deposition of Williams in Birmingham would not be a proper location per Rule 45(c). The undersigned is confident the parties can reach an agreement on a suitable location for Mr. Williams to be deposed.

## RECOMMENDATION

IT THEREFORE IS RESPECTFULLY RECOMMENDED that this Court GRANT, in part, Plaintiff's request for protective order as it relates to the Requests for Production contained in the Williams subpoena and as it relates to any deposition of Williams that would invade Plaintiff's work product, deliberative process, or other privilege. It is recommended that this Court DENY Plaintiff's request for a protective order to the extent Defendant seeks to depose Williams regarding the facts underlying Plaintiff's interrogatory responses (responding to contention interrogatories asking for the bases of Plaintiff's claims), the facts supporting the parties' claims and defenses, and facts—like those in his emails—about which Williams has personal knowledge.

Pursuant to Section 4(a) of this Court's November 9, 2021 Order, objections to this Report and Recommendation are due seven days after the issuance of the Report and Recommendation. Briefs in support of the Report and Recommendation are due seven days after the objection. Replies are due five days after the brief in support.

Respectfully recommended on January 20, 2025.

<u>/s/ R. Bruce Barze, Jr.</u><br>
Special Master

R. Bruce Barze, Jr.
BARZE TAYLOR NOLES LOWTHER LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on the 20th day of January, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.


                                                */s/ R. Bruce Barze, Jr.*
                                                Special Master