IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff;<br> v.<br><br>STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,<br><br>      Defendants. | Civil. No. 2:20-cv-01971-RDP |

**THE UNITED STATES' OBJECTIONS AND RESPONSES TO
DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, the United States herby responds to Defendants' Second Set of Interrogatories, which Defendants served on April 28, 2024. The United States submits these objections and responses, and will supplement as appropriate, under the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Alabama, and Court orders, including the Scheduling Order, Doc. 174, the Stipulated Consolidated Protective Order, Doc. 62, and the Stipulated Consolidated Order Regarding Protocols for Production of Documents and Things (including ESI), Doc. 63.

**GENERAL RESERVATIONS**

The United States gives its objections and responses to each Interrogatory with specificity below. The United States also expresses the following reservations.

First, the United States' objections and responses to each Interrogatory are based on information known to the United States at this time. The United States will supplement, if necessary and appropriate, in accordance with the Court's orders and Rule 26(e). Consistent

with the Federal Rules, the United States therefore reserves the option to assert additional objections as new information arises.

Second, the United States bases its objections and responses on its best understanding of what the Interrogatory is requesting. The United States reserves the option to make additional objections and amend responses if the United States' understanding conflicts with Defendants' interpretation.

Third, the United States' objections and responses are given in accordance with the requirements of the Federal Rules and Court orders, and not in accordance with Defendants' instructions that conflict with and expand the requirements of those Rules and orders.

Fourth, in responding to these Interrogatories, the United States does not concede the relevancy, materiality, competency, or admissibility of any evidence or information requested by Defendants. The United States reserves the option to object on any ground as to the use of its responses in any trial or proceeding.

## INTERROGATORY OBJECTIONS AND RESPONSES

**Interrogatory No. 15:** Identify the person(s) answering these Interrogatories, responding to the State's First Requests for Admission, and/or responding to the State's Third Request for Production of Documents, including any person(s) supplying information or assisting in any way with the preparation of the answers and responses to these Interrogatories, the State's First Requests for Admission, and/or the State's Third Request for Production of Documents.

**United States' Response:**

The United States objects to this Interrogatory as seeking, in part, privileged material subject to the attorney client, work product, and trial preparation material protections. As the United States here is essentially operating as a law firm with no client agency or case agent, the United States also objects to this Request as seeking, in part, information not relevant to a party's

2

claim or defense, nor is it reasonably calculated to lead to the discovery of relevant or admissible evidence. The United States also objects to this Interrogatory as vague as to the scope of the phrases "supplying information" or "assisting in any way," which seemingly could include all deponents, all authors of ADOC documents, defense counsel, etc. Subject to and without waiving these objections, the United States answers that, pursuant to Rule 33, the attorneys who make the objections to these Interrogatories have signed below. Similarly, the person answering these Interrogatories, in accordance with Rule 33, has signed them below. As they are an employee and agent of the United States, you should direct any attempt to contact them through United States' counsel. The United States' response to your Third Request for Production is, in accordance with Rule 34, signed by counsel. The United States' response to your First Requests for Admission is, in accordance with Rule 36, signed by counsel.

> **Interrogatory No. 16:** Identify the primary facts underlying Plaintiff's determination that current conditions within the ADOC Facilities egregiously or flagrantly violate the rights, privileges, and/or immunities of Incarcerated Individuals within the ADOC facilities, as secured or protected by the Eighth Amendment to the United States Constitution.

**United States' Response:**

The United States objects to this Interrogatory as an improper blockbuster, kitchen sink, catchall interrogatory that courts routinely strike as unspecific, overbroad, unduly burdensome, and disproportionate. *E.g.*, *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 76–77 (D.D.C.), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017). This overbroad Interrogatory essentially asks the United States to marshal all available evidence to date, collected over three years of discovery, and distill this entire lawsuit into one interrogatory, in what the Parties estimate to be a six-week trial.

The United States also objects to this Interrogatory as vague and confusing as to what constitutes the scope of "primary facts." The United States assumes that Defendants intend "egregiously or flagrantly" to have the same meaning as in the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997a(a). The United States, however, is not required to prove that Defendants "egregiously or flagrantly" violate the Constitution. The United States accordingly further objects to this Interrogatory as another improper attempt by Defendants to obtain irrelevant and privileged discovery on the Attorney General's unreviewable CRIPA reasonable cause determination and CRIPA certification. The Court in this case has already found that "[t]he plain language of §1997a indicated that the expressed preconditions apply only to the Attorney General's reasonable cause determination." Doc. 57, pp. 7–8; *see also United States v. Erie Cnty., NY*, 724 F. Supp. 2d 357, 366 (W.D.N.Y. 2010) ("By the plain and unambiguous terms of the [CRIPA] statute, the elements set forth in § 1997a(a) apply only to the Attorney General's reasonable cause determination. They are not, as Defendants argue, elements that must be alleged or proven in a CRIPA action."). The Court in this action has already determined the Attorney General's CRIPA certification is not reviewable. Doc. 57, p. 8 ("The court agrees with the vast majority of district courts to decide this issue: the Attorney General's certification is not subject to judicial review."); *see also* Doc. 81, p. 3 (reiterating ruling). As the "egregious or flagrant" language comes from the standard for the Attorney General's CRIPA certification and that certification is not reviewable, the United States objects to this Interrogatory as irrelevant, seeking privileged information,[1] and seeking information that the Court has already determined is not judicially reviewable.

---

[1] The United States objects to this Interrogatory as seeking information protected by the attorney client, work-product, law enforcement investigatory, and deliberative process privileges.

4

**Interrogatory No. 17:** Identify the primary facts underlying Plaintiff's determination that the current conditions within the ADOC Facilities resulting in egregious or flagrant violations of the Eighth Amendment to the United States Constitution cause Incarcerated Individuals within the ADOC Facilities to suffer grievous harm.

**United States' Response:**

The United States submits the same objections and response as for its Response to Interrogatory Number 16.

**Interrogatory No. 18:** Identify the primary facts underlying Plaintiff's determination that ADOC and/or the State continue to demonstrate a pattern or practice of resistance to the rights, privileges, or immunities of Incarcerated Individuals within the ADOC Facilities, as secured or protected by the Eighth Amendment to the United States Constitution.

**United States' Response:**

The United States objects to this Interrogatory as an improper blockbuster, kitchen sink, catchall interrogatory that courts routinely strike as unspecific, overbroad, unduly burdensome, and disproportionate. *E.g.*, *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 76–77 (D.D.C.), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017). This overbroad Interrogatory essentially asks the United States to marshal all available evidence to date, collected over three years of discovery, and distill this entire lawsuit into one interrogatory, in what the Parties estimate to be a six-week trial. The United States also objects to this Interrogatory as vague and confusing as to what constitutes the scope of "primary facts."[2]

---

[2] To the extent this Interrogatory purports to seek information protected by the attorney client, common interest, work-product, trial preparation material, and law enforcement investigatory privileges, the United States asserts those privileges.

5

Additionally, beyond the allegations contained in the Complaint and the answer below, pursuant to Rule 33(d), the United States points Defendants to documents that Defendants have produced as well as documents produced pursuant to third-party subpoenas.

Subject to and without waiving these objections, the United States answers that such facts include:

**Failure to Provide Reasonable Safety from Prisoner-on-Prisoner Violence**

Alabama Department of Corrections (ADOC) had an unreasonably high number of homicides of prisoners in the last several years in the Facilities;[3] ADOC does not accurately and consistently track prisoner deaths in the Facilities; ADOC does not consistently, thoroughly, or effectively implement changes in response to prisoner deaths in the Facilities; ADOC had an unreasonably high number of prisoner-on-prisoner assaults in the last several years in the Facilities, including with weapons and serious injuries; ADOC does not accurately and consistently track prisoner-on-prisoner assaults in the Facilities; ADOC does not respond thoroughly, consistently, or effectively to reported prisoner-on-prisoner assaults in the Facilities; ADOC does not consistently, thoroughly, or effectively implement changes in response to reported prisoner-on-prisoner assaults in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure prisoners are in their assigned dorms in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure prisoners have a bed and are sleeping on their assigned bed; ADOC does not consistently, thoroughly, or effectively control the flow of prisoners into unauthorized areas in the Facilities; ADOC does not consistently, thoroughly, or effectively count prisoners to ensure prisoners are in their assigned dorms in the Facilities;

---

[3] "Facilities" for the purpose of responding to Defendants' Second Set of Interrogatories, is limited to the ADOC prisons identified in the Second Amendment Complaint, Doc. 71, except for Draper which has since been closed.

6

ADOC fails to supervise prisoners in the Facilities such that prisoner-on-prisoner assaults, fights, and stabbings often occur while an officer is not present or paying adequate attention; ADOC does not consistently, thoroughly, or effectively enforce disciplinary action for prisoners who commit prisoner-on-prisoner assaults in the Facilities; ADOC does not consistently, thoroughly, or effectively apply practices regarding the housing of security threat groups (STGs) in the Facilities; ADOC does not consistently, thoroughly, or effectively gather information on STGs and share intelligence between Facility staff and the Central Office to manage STGs; ADOC does not consistently, thoroughly, or effectively enforce disciplinary action for prisoners bartering and trading in the Facilities, including of canteen items; ADOC fails to consistently, thoroughly, or effectively limit the amount of canteen items purchased by individual prisoners in the Facilities; ADOC allows prisoners involved in violent incidents in the Facilities to sign living agreements rather than engage in the disciplinary process; ADOC Law Enforcement Services Division (LESD) fails to pursue investigations in the Facilities if a victim does not wish to prosecute or fails to name the alleged perpetrator; ADOC, including LESD investigators, do not thoroughly, consistently, or effectively conduct adequate investigations in the Facilities, including investigations of prisoner deaths, prisoner-on-prisoner assaults, fights, and stabbings, and prisoner possession of contraband; LESD investigators do not thoroughly, consistently, or effectively interview prisoner witnesses, correctional officers assigned to the location of the incident, or other staff who may have witnessed the incident in the Facilities; LESD investigators do not consistently request and review surveillance footage of incidents in the Facilities; LESD investigators do not consistently obtain written statements from correctional officers for incidents in the Facilities; LESD investigators do not consistently review the incident report database or prior LESD investigations related to certain perpetrators or victims for incidents in

the Facilities; ADOC, including LESD, does not consistently, thoroughly, or effectively track where prisoner-on-prisoner fights, assaults, or sexual assaults occur in the Facilities; ADOC, including LESD, does not consistently, thoroughly, or effectively track which prisoners in the Facilities have been physically or sexually assaulted by other prisoners; ADOC does not consistently, thoroughly, or effectively document requests for restrictive housing by prisoners based on a fear of physical or sexual harm; ADOC does not consistently thoroughly, or effectively recommend and implement corrective actions to address security and safety deficiencies revealed by LESD investigations; and ADOC has not consistently, thoroughly, or effectively addressed prisoner-on-prisoner violence in its Facilities.

**Failure to Provide Reasonable Safety from Prisoner-on-Prisoner Sexual Assault**

ADOC had an unreasonably high number of prisoner-on-prisoner sexual assaults in the last several years in the Facilities; ADOC does not consistently, thoroughly, or effectively investigate allegations of prisoner-on-prisoner sexual abuse in the Facilities; ADOC does not consistently, thoroughly, or effectively investigate allegations of extortion in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure prisoner beds are free of obstructive sheets in the Facilities; ADOC does not consistently, thoroughly, or effectively implement changes in response to reported sexual assaults in the Facilities; ADOC classification staff do not have input or authority on which housing units prisoners are placed in at ADOC Facilities, beyond program placements; ADOC's PREA Director does not consistently, thoroughly, or effectively provide adequate oversight of sexual abuse prevention practices at the Facilities; the Institutional PREA Compliance Manager (IPCM) or equivalent Special Investigator position is often vacant at the Facilities; ADOC does not consistently, thoroughly, or effectively ensure that sexual predators are housed and kept separate from prisoners vulnerable

to sexual abuse in the Facilities; ADOC does not consistently ensure that sexual predators are properly disciplined for allegations of sexual abuse in the Facilities; ADOC does not consistently, thoroughly, or effectively implement measures to protect victims who report sexual abuse from further harm in the Facilities; ADOC does not consistently transfer victims who report sexual abuse out of the Facility or even the housing unit where abuse was reported in the Facilities; ADOC subjects victims who report sexual abuse to restrictive housing in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure that serial predators are prevented from committing sexual abuse against multiple victims at multiple Facilities; ADOC does not consistently, thoroughly, or effectively ensure that victims of sexual abuse are transferred for Sexual Abuse Nurse Examinations in a timely manner from the Facilities; ADOC does not consistently, thoroughly, or effectively ensure that evidence collected in Sexual Abuse Nurse Examinations is tested in a timely manner after victims report sexual abuse at the Facilities; ADOC fails to consistently, thoroughly, or effectively address prisoners exchanging sexual favors for contraband in the Facilities; ADOC's Sexual Abuse Incident Review reports from the Facilities are often boilerplate with no recommendations and no evidence of a thorough review of the investigation; ADOC fails to supervise prisoners in the Facilities such that prisoner-on-prisoner sexual assaults occur while an officer is not present or paying adequate attention; at some point in 2023, the Special Investigator IPCMs in the Facilities began reporting to the ADOC PREA Director and now the wardens claim no supervision, oversight, or insight into sexual abuse practices at the Facilities; other than in compiling ADOC's annual PREA report, ADOC's PREA Director does not consistently review data on sexual abuse in the Facilities to identify and address trends; ADOC does not consistently refer victims who report sexual abuse as a result of a drug debt for substance abuse treatment; ADOC's PREA Director

does not consistently interview prisoners at the Facilities about sexual safety, even during her annual internal PREA audits; ADOC's Special Investigator IPCMs do not conduct any investigations of sexual abuse at the Facilities; ADOC's PREA Director does not review or provide input on sexual abuse investigations in the Facilities before the investigation is complete; ADOC's PREA Director does not participate in Sexual Abuse Incident Reviews at the Facilities; ADOC's PREA Director does not track corrective action recommended in Sexual Abuse Incident Reviews at the Facilities; ADOC's PREA Director does not track corrective action recommended as a result of investigations into sexual abuse at the Facilities; ADOC's PREA Director and Special Investigator IPCMs do not have authority to require implementation of corrective action to remedy deficiencies identified in investigations of sexual abuse or Sexual Abuse Incident Reviews at the Facilities; ADOC's PREA Director and Special Investigator IPCMs do not have authority to require any changes to security practices to prevent sexual abuse at the Facilities; ADOC does not consistently, thoroughly, or effectively communicate the findings from the PREA Director's audits to Facility staff; ADOC does not conduct an administrative investigation of prisoner-on-prisoner sexual abuse incidents at the Facilities separate from the LESD investigation; ADOC's allegations of prisoner-on-prisoner sexual abuse increased from 2020 to 2021 and again in 2022; and ADOC has not consistently, thoroughly, or effectively addressed prisoner-on-prisoner sexual assault in the Facilities.

**Use of Excessive Force**

ADOC had an unreasonably high number of uses of excessive force by correctional staff in the last several years in the Facilities; ADOC does not consistently, thoroughly, or effectively enforce use of force policies in the Facilities; ADOC, including LESD or the Office of Inspector General (OIG), does not consistently, thoroughly, or effectively investigate use of force by staff

in the Facilities; ADOC, including LESD, does not consistently, thoroughly, or effectively track which officers use excessive force in the Facilities and communicate that information to Facility leadership; ADOC does not consistently, thoroughly, or effectively ensure all correctional staff, including wardens, are familiar with use of force policies in the Facilities; ADOC staff in the Facilities use unnecessary force against prisoners when there are staffing shortages; ADOC staff in the Facilities use force against prisoners as punishment; ADOC does not consistently, thoroughly, or effectively implement changes in response to excessive use of force incidents in the Facilities; and ADOC has not consistently, thoroughly, or effectively addressed the use of excessive force by correctional staff in its Facilities.

**Failure to Prevent the Introduction of Dangerous Contraband**

ADOC does not consistently, thoroughly, or effectively search for contraband in the Facilities; ADOC, including LESD, does not consistently, thoroughly, or effectively track where knives, drugs, cellphones or other contraband are found or consistently communicate relevant information on contraband to Facility leadership; ADOC does not consistently, thoroughly, or effectively search individuals, including staff, coming into the Facilities; ADOC does not consistently, thoroughly, or effectively supervise the perimeters of the Facilities, including conducting routine perimeter checks; ADOC Facilities have an unreasonably large amount of contraband, including but not limited to weapons, drugs, and cellphones; ADOC had an unreasonably high number of deaths by overdose of prisoners in the last several years in the Facilities; ADOC does not consistently, thoroughly, or effectively investigate the sources of contraband when a prisoner overdoses or tests positive for drugs in the Facilities; ADOC fails to supervise prisoners in the Facilities such that prisoners use contraband while an officer is not present or paying adequate attention; ADOC does not consistently, thoroughly, or effectively

11

secure seized contraband; ADOC does not consistently, thoroughly, or effectively intervene when staff sees prisoners that are under the influence of drugs; ADOC does not consistently, thoroughly, or effectively implement changes in response to collected contraband in the Facilities; and ADOC has not consistently, thoroughly, or effectively addressed contraband in its Facilities.

**Failure to Provide Adequate Staffing and Supervision**

ADOC Facilities are severely understaffed and have been consistently understaffed for years; ADOC correctional staff does not consistently, thoroughly, or effectively supervise prisoners in the Facilities; ADOC correctional staff does not consistently, thoroughly, or effectively conduct security checks in the housing units in the Facilities; ADOC does not consistently have at least one officer supervising each dorm housing prisoners in the Facilities; ADOC does not consistently staff all critical posts in the Facilities; ADOC does not consistently staff cubicles in the Facilities; ADOC does not consistently follow staffing plans in the Facilities; ADOC supervisors frequently staff posts in the Facilities, impacting their time to complete supervisory responsibilities; ADOC does not consistently, thoroughly, or effectively ensure security staff are not sleeping on posts; ADOC does not consistently, thoroughly, or effectively complete accurate shift rosters in the Facilities; ADOC does not consistently, thoroughly, or effectively complete accurate logs in the Facilities; ADOC does not consistently, thoroughly, or effectively communicate relevant information between shifts in the Facilities; ADOC does not consider the unreasonably high levels of contraband and violence in the Facilities when conducting staffing analyses; ADOC does not adequately screen security staff hires, including for illegal activity; ADOC alters the chain of command with such regularity that staff have difficulty knowing who they are supposed to report to; ADOC does not consistently, thoroughly,

or effectively track arrests of correctional officers; ADOC has not consistently, thoroughly, or effectively implemented the recommendations of staffing analyses for the Facilities; ADOC does not consistently, thoroughly, or effectively hire competent correctional staff in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure wardens in the Facilities are competent to perform their responsibilities; ADOC does not consistently, thoroughly, or effectively supervise staff in the Facilities to detect and discipline staff for violating policies; ADOC staff in the Facilities are frequently overworked and tired; ADOC does not consistently determine whether current hiring practices in the Facilities are effective; ADOC does not consistently, thoroughly, or effectively pursue alternative means of staffing in the Facilities; ADOC has not taken advantage of all potential appropriated funding for correctional staff hiring; ADOC does not consistently, thoroughly, or effectively monitor video cameras in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure policies are accurate and up to date in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure all correctional staff are familiar with policies in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure all wardens are familiar with policies in the Facilities; ADOC does not consistently, thoroughly, or effectively enforce policies in the Facilities; ADOC Central Office staff and Facility leadership do not consistently follow policies; ADOC does not provide jobs for the majority of prisoners in the Facilities; ADOC does not provide programs for the majority of prisoners in the Facilities; ADOC does not provide enough yard time for prisoners in the Facilities; and ADOC has not consistently, thoroughly, or effectively addressed understaffing in its Facilities.

**Failure to Provide Safe and Sanitary Physical Plant Conditions**

Nearly all of the Facilities are holding more prisoners than the design capacity of the prison; ADOC Facilities lack adequate plumbing systems to serve the prisoner population; ADOC Facilities have exposed electrical wiring; ADOC Facilities have mold and mildew; ADOC fails to adequately control rodents and other pests in the Facilities; ADOC Facilities have leaking ceilings; ADOC facilities lack adequate fire safety systems; many ADOC Facilities lack heating; ADOC does not consistently, thoroughly, or effectively ensure adequate ventilation in the dorms; ADOC does not consistently, thoroughly, or effectively conduct security inspections in the Facilities; ADOC does not consistently, thoroughly, or effectively ensure prisoners have adequate cleaning supplies in the Facilities; ADOC does not consistently, thoroughly, or effectively clean or ensure adequate cleaning supplies for restrictive housing cells; the Facilities have several blind spots; ADOC does not consistently, thoroughly, or effectively supervise prisoners to prevent them from destroying state property in the Facilities; ADOC does not consistently, thoroughly, or effectively conduct institutional security audits in the Facilities; ADOC has not built a new major correctional facility for men since the 1990s; ADOC's current plan to build a new prison in Elmore County is overbudget and delayed, at only 25% complete, with an expected completion date years from now; ADOC has not completed a staffing plan for the Elmore County prison which is expected to hold thousands more than other ADOC Facilities and will require more staff than other ADOC Facilities; there is no publicly allocated money to fully fund any additional new ADOC prison facility and construction at the announced Escambia County facility is 0% complete with no estimate for completion; ADOC has been aware of the conditions and structural problems inside its Facilities for the last several years; and ADOC takes years or fails to address major condition and structural problems inside the Facilities.

**Failure to Provide Adequate Leadership and Take Reasonable Measures to Address Harm**

LESD has not had an individual performing the duties of the LESD assistant director for over a year; the Office of Inspector General has been without an Inspector General for lengthy periods of time; ADOC does not consistently, thoroughly, or effectively communicate relevant information between departments of ADOC or from the Central Office to the Facilities' leadership; ADOC leadership does not consistently, thoroughly, or effectively track and review data to compare data over years or to assess success of initiatives; ADOC leadership is not consistently, thoroughly, or effectively aware of or considering how their positions affect prisoner safety in the Facilities; ADOC does not consistently, thoroughly, or effectively assess incidents and problems or gather and share intelligence to institute corrective action or remedial measures to alleviate future harmful incidents; and ADOC leadership, at the Central Office and Facility levels, is aware of the conditions and facts described above, is aware of the harm caused by such conditions, and is aware that ADOC's efforts to address these conditions have not been effective.

> **Interrogatory No. 19:** Identify the minimum corrective measures that Plaintiff currently considers necessary for ADOC and/or the State to take to ensure that the Incarcerated Individuals within the ADOC Facilities receive the full enjoyment of their rights, privileges, or immunities, as secured or protected by the Eighth Amendment of the United States Constitution.

**United States' Response:**

The United States objects to this Interrogatory as an improper blockbuster, kitchen sink, catchall interrogatory that courts routinely strike as unspecific, overbroad, unduly burdensome, and disproportionate. *E.g.*, *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 76–77 (D.D.C.), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017). This overbroad Interrogatory essentially asks the United States to marshal all available evidence to date, collected over three

years of discovery, and distill remedies into one interrogatory response. Additionally, the Interrogatory seeks information that may change after, for example, the United States completes review of discovery, (including discovery Defendants have not yet produced), and the Parties go through the expert report and expert discovery process.[4] Subject to and without waiving these objections, the United States answers that currently such measures can be found in the measures listed in the United States' settlement proposals provided to Defendants between April 2019 and December 2020. *See* Fed. R. Civ. P. 33(d). During that time period, the United States engaged in more than 40 separate negotiation sessions with Defendants. Despite progress in a handful of areas, the Parties reached impasse on many key issues. On January 17, 2021, the United States sent Defendants a version of the settlement proposal that reflected the status of negotiations in track changes and with comments. The settlement proposals put forth by the United States outline the current minimum corrective actions necessary to ensure that ADOC's Facilities comply with the Constitution. *See* Fed. R. Civ. P. 33(d). The current remedial measures sought by the United States include substantive reforms related to: General Policies and Procedures; Physical Plant and Prison Construction; Camera Management; Prisoner Supervision; Staffing, Recruitment, and Hiring; Training; Inmate Education; Classification and Facility-Level Assignments; Contraband Detection and Prevention; Programming; Incident Reporting; Grievances; Prevention of Retaliation; Referrals and Investigations; Protective Custody and Housing for Inmates at High Risk; Staff Corrective Action; Prevention of Sexual Abuse; Use of Force; and Quality Improvement and Data Collection.

#  #  #

---

[4] To the extent this Interrogatory purports to seek information protected by the attorney client, common interest, work-product, trial preparation material, and law enforcement investigatory privileges, the United States asserts those privileges.

| | |
|---|---|
| STEVEN H. ROSENBAUM<br>Chief | JASON R. CHEEK<br>Chief, Civil Division |
| KERRY KRENTLER DEAN<br>Deputy Chief | CARLA C. WARD<br>Deputy Civil Chief<br>United States Attorney's Office<br>Northern District of Alabama<br>1801 Fourth Avenue North<br>Birmingham, Alabama 35203<br>(205) 244-2185<br>carla.ward@usdoj.gov |
| CURTIS HARRIS<br>GEORGE EPPSTEINER<br>EILEEN ULATE<br>MATTHEW J. DONNELLY<br>Trial Attorneys<br>United States Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 705-8762<br>Natasha-Eileen.Ulate@usdoj.gov | |

DATED: May 28, 2024

Pursuant to Rule 33(b) and 28 U.S.C. § 1746 the following signatory agent, Mark Williams, of the United States declares under penalty of perjury that the above answers are true and correct.

EXECUTED on May 28, 2024

MARK WILLIAMS
Investigator
United States Department of Justice
Civil Rights Division

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28, 2024, I electronically mailed the foregoing OBJECTIONS AND RESPONSES to counsel of record, pursuant to the Parties' stipulation and Federal Rule of Civil Procedure 5(b)(2)(E).

                                             */s/ Eileen Ulate*
                                             EILEEN ULATE
                                             Attorney for the United States
                                             United States Department of Justice
                                             950 Pennsylvania Avenue, NW
                                             Washington, DC 20530
                                             (202) 705-8762
                                             Natasha-Eileen.Ulate@usdoj.gov