

**U.S. Department of Justice**

Civil Rights Division

---

*950 Pennsylvania Avenue, NW – 4CON*
*Washington, DC 20530*

November 1, 2024

**Via Electronic Mail**

R. Bruce Barze, Jr.
Barze Taylor Noles Lowther LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
bbarze@btnllaw.com

    Re:    Quashing Subpoena to United States' Investigator Mark Williams
                 *United States v. Alabama*, No. 2:20cv01971-RDP (N.D. Ala.)

      The United States submits this letter brief seeking to quash Defendants' subpoena for deposition testimony from the United States' litigation team member, Investigator Mark Williams. The subpoena should be quashed because: (a) Defendants failed to properly serve Investigator Williams in his personal capacity; (b) Defendants failed to comply with the Department of Justice's *Touhy* regulations; and (c) Defendants are impermissibly attempting to take a *de facto* contention deposition of the United States' enforcement attorneys. Alternatively, good cause exists for a protective order dismissing the impermissible deposition seeking the United States' privileged information.

                           **I.    PROCEDURAL BACKGROUND**

      On September 4, 2024, defense counsel emailed United States' counsel a subpoena for a deposition directed to the United States' Investigator Mark Williams. On September 11, 2024, the United States responded with a letter objecting to the subpoena as seeking privileged information. Letter from M. Donnelly, U.S.' Counsel, to W. Lunsford, Defs.' Counsel, Re.: Subpoena to United States' Employee Mark Williams (Sept. 11, 2024) (United States' "*Touhy* Letter"). This United States' *Touhy* Letter (at 1-2) reminded Defendants of the United States' prior objections to Defendants' previous multiple improper attempts to obtain discovery from the United States' investigators. *See, e.g.*, Letter from M. Donnelly, U.S.' counsel, to W. Lunsford, Defs.' counsel, Re.: Defendants' June 16, 2023, Letter (Regarding United States' Responses to Defendants' First Requests for Production and First Interrogatories) at 7-8, 10 (July 27, 2023, addendum); Letter from M. Donnelly, U.S.' counsel, to W. Lunsford, Defs.' counsel, Re.: Defendants' June 16, 2023, Letter (Regarding United States' Responses to Defendants' First

Requests for Production and First Interrogatories) at 5-8 (June 30, 2023); Letter from M. Donnelly, U.S.' counsel, to L. Butler, Defs.' counsel, Re.: United States' Responses to Defendants' First Requests for Production and First Interrogatories at 7-8, 12 (Sept. 2, 2022). The *Touhy* Letter (at 2) reiterated that the United States' investigators, including Mr. Willaims, are not first-hand witnesses in this enforcement litigation but communicate with potential witnesses and make notes or other attorney work product records at the direction of and for counsel. The *Touhy* Letter relayed that, just like the United States' attorneys, its investigators are not witnesses and have no direct knowledge of the evidentiary facts, have no discoverable information, but only have privileged information. The United States also reiterated that it had not listed its investigators on its Rule 26 Initial Disclosures, and if its investigators, including Mr. Williams, ever have discoverable, direct knowledge, the United States will list them on its Initial Disclosures.

Given that the subpoena sought privileged information, the United States' *Touhy* Letter (at 2) requested that Defendants provide a statement "setting forth a summary of the testimony sought" from Mr. Williams. 28 C.F.R. § 16.23. Moreover, the *Touhy* Letter particularly relayed that the statement should include what non-privileged information Defendants seek from Mr. Williams, and that if Defendants seek privileged information the statement should include why Defendants believe they can override the applicable privileges. *See* 28 C.F.R. § 16.26.

Defendants responded to the United States' *Touhy* Letter on October 3, 2024. *See* Letter from M. Reeves, Defs.' Counsel, to M. Donnelly, U.S.' Counsel, [Re. response to U.S. Letter Re: Subpoena to United States' Employee Mark Williams] (Oct. 3, 2024). As detailed more below, Defendants' Response Letter, refused to provide a complete summary of the sought testimony or why Defendants could override the United States' privileges; pointed to Investigator Williams's signing of the United States' interrogatory responses; and claimed Investigator Williams's signing of these responses means he must have personal first-hand knowledge.

The day after the October 7, 2024, hearing with the Court, Defendants elevated the dispute to the Special Master.[1] The Special Master held a conference on October 18, 2024, and after hearing initial arguments from counsel, requested this letter briefing.

## II.   LEGAL BACKGROUND

Rule 45(d)(3)(A) provides that a court is "[r]equired" and "must quash or modify a subpoena that: . . . (iii) *requires disclosure of privileged or other protected matter, if no exception or waiver applies*; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added); *cf.* Fed. R. Civ. P. 45(d)(3)(B) (setting forth other circumstances when quashing is "Permitted" and the court "may" quash or modify a subpoena).[2]

---

[1] Prior to the hearing, on October 4, 2024, the United States served objections to related document requests that Defendants included in the subpoena.

[2] At the October 7, 2024, Status Conference, the Court confirmed that the United States should pursue this issue through the Special Master rather than directly moving to quash with the Court. Status Conference Tr. 42:15-44:4 (Oct. 7, 2024), Doc. # 207. Defendants' subpoena lists Mr. Williams's proposed deposition date as October 14, 2024.

### III.   ANALYSIS

#### A.   Defendants Failed To Serve Investigator Williams in his Personal Capacity.

Defendants have given conflicting positions on whether they intended to serve Investigator Williams with the subpoena in his United States' employee official capacity or in his personal capacity.  In its *Touhy* letter (at 1 n.1), the United States noted that it assumed Defendants intended to subpoena Williams in his official capacity as employee of the United States as a Party, and requested that Defendants clarify if instead Defendants intended to separately serve Investigator Williams in his personal capacity.  Defendants' Response Letter confirmed (or appeared to confirm) that Defendants intended to serve the United States, rather than Mr. Williams in his personal capacity.  *See* Defs.' Ltr. at 1 (stating Defendants "properly served *Plaintiff* with a Subpoena and Notice of Deposition on September 4, 2024 . . . [and after the United States' *Touhy* Letter] cannot determine whether *Plaintiff* intends to attend the deposition." (emphasis added)).[3]

During our October 18, 2024, conference, defense counsel reversed course and asserted that instead Defendants intended to serve Investigator Williams in his personal capacity.  If this is so, then Defendants have not currently served Mr. Williams with the subpoena as the United States here does not accept service of subpoenas on behalf of its employees for their personal capacities.  Defendants' failure to properly serve the subpoena means no valid subpoena order exists and Mr. Williams has no duty to comply.  *See* Fed. R. Civ. P. 45(b) & (g).[4]

As explained below, even if Defendants switch to asserting that they intended to serve the subpoena on the United States and to Investigator Williams in his official employee capacity, the subpoena should be quashed pursuant Rule 45(d)(3)(A) for failing to comply with the Department of Justice's *Touhy* Regulations[5] and for improperly seeking privileged information.

#### B.   Defendants Failed To Comply with the *Touhy* Regulations.

The subpoena should be quashed because Defendants have not provided a complete or sufficient "statement . . . setting forth a summary of the testimony sought," as required by 28

---

[3] Defendants' Response Letter inaccurately asserted (at 1) that their serving a subpoena on a party for a deposition was "consistent with prior practice" that the United States used for depositions of Defendants' employees.  The United States, however, never served any such subpoenas but relied on notices of deposition and Rule 37(d) for its depositions of Defendants' employees, all of whom over which defense counsel asserted an attorney-client relationship and privilege.

[4] Beyond not actually serving the subpoena on Mr. Willaims, the subpoena suffers (among other things) defects in its territorial limits.  The subpoena commands attendance in Birmingham, Alabama, which is not a state where Mr. Williams (even if served in his official employee capacity) "resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c).  Mr. Williams has been to Alabama zero times in 2024, and only once in 2023.

[5] As the subpoena concerns information that Mr. Williams acquired while he was an employee of the Department and as a part of the performance of his official duties, the *Touhy* Regulations (and government privileges) would still apply if Defendants attempted to subpoena him in his personal capacity.  *See* 28 C.F.R. § 16.21.

3

C.F.R. § 16.23(c), commonly referred to as the Department of Justice's "*Touhy*" regulations.[6] These *Touhy* regulations control, among other things, the Department's authorization of oral testimony by its employees. 28 C.F.R. §§ 16.21-16.29. The regulations apply when the United States is a party to the civil action. *See* 28 C.F.R. § 16.23. One of the considerations for authorization is whether the testimony sought "is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26.

The United States sent Defendants a *Touhy* letter requesting the required summary statement. Because Defendants were attempting to subpoena the United States' investigator, who only has attorney work-product and other privileged information, the United States requested (at 2) that the statement particularly include "what non-privileged information Defendants seek from Mr. Williams [and] [i]f Defendants seek privileged information, Defendants' statement should include why Defendants believe they can override the applicable privileges." Additionally, the United States' *Touhy* Letter specifically cited 28 C.F.R. § 16.26 to make sure Defendants knew that applicable privileges are a consideration in authorizing any testimony.

Defendants' Response Letter failed to provide the requested and required *Touhy* statement. Instead, their letter (at 2) stated Defendants sought testimony about "bases for information contained in the United States' Objections and Responses to the State's Second Set of Interrogatories." But Defendants specifically disavowed (at 2 n.1) that this was a complete summary of the testimony sought; they explained their summary did "not limit the testimony sought to only those matters summarized." Even though the United States' *Touhy* Letter specifically reminded Defendants that Investigator Williams only has privileged information and cited 28 C.F.R. § 16.26, Defendants (at 2) refused to provide any explanation as to why they "believe they can override the applicable privileges."

As explained below, the United States' responses to Defendants' Second Set of Interrogatories do not provide a legitimate basis to override the United States' privileges and depose its Investigator Williams. But regardless, the subpoena should be quashed because Defendants' *Touhy* statement particularly disavows that the testimony sought is limited to the subjects Defendants outlined. *See, e.g., United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (upholding quashing of subpoena of Department of Justice employee because no summary provided); *United States v. Goff*, No. 2:07CR322-MHT, 2009 WL 10725957, at *1 (M.D. Ala. Jan. 21, 2009) ("Defendant's failure to comply with applicable DOJ regulations alone warrants quashing the subpoenas." (citations omitted)). The subpoena should also be quashed because Defendants' *Touhy* statement does not include any explanation as to why Defendants' can override attorney-work product and other privileges that apply to all the information that

---

[6] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-70 (1951) (holding that a Department of Justice employee could not be held in contempt for failure to comply with a subpoena because the predecessor regulation validly withdrew from the employee and placed in the Attorney General the decision whether and on what terms to comply with the subpoena). The Eleventh Circuit has also upheld the validity, restrictions, and enforcement of the Department of Justice's present *Touhy* regulations. *E.g., United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (rejecting criminal defendant's constitutional challenge and upholding quashing of subpoena of Department of Justice employee); *see also United States v. Wallace*, 32 F.3d 921, 928-29 (5th Cir. 1994) (upholding lower court's quashing of subpoenas of federal agents because the defendant did not comply with Department of Justice's "valid and mandatory" regulations).

Investigator Williams could testify to—as a litigation investigator, he has only privileged information.[7] *See* Rule 45(d)(3)(A) (requiring quashing of subpoena that seeks privileged information and no exception applies).

## C. Defendants are Improperly Attempting To Depose United States' Counsel.

Defendants' misguided attempt to partially link the deposition to the United States' interrogatory responses shows they are improperly trying to depose enforcement counsel for the United States.  The Court has relayed that this case is not "traditional bipartite litigation" but "enforcement litigation."  Status Conference Tr. 29:8-30:2 (May 6, 2024), Doc. # 186.  As such, the United States is operating in a law enforcement capacity here and accordingly does not have first-hand involvement in Defendants' operations or constitutional violations; it is not a part of or a first-hand witness to any transactions, events, or evidence.  Rather enforcement attorneys for the United States gather and compile evidence obtained from Defendants and third parties.  The United States here does not have a client agency, rather it only has its enforcement attorneys and litigation team members, like Investigator Williams, who work at the direction of these enforcement attorneys.

This law enforcement posture makes the attempted deposition of Investigator Willaims an improper *de facto* deposition of these enforcement attorneys.  The Court has already acknowledged that interrogatory responses here represent the work, analysis, and answers of the United States' enforcement attorneys.  Status Conference Tr. 27:4-27:9 (May 6, 2024), ("THE COURT:  . . . If you want to know what the lawyer has to say, you send an Interrogatory [including for] [w]hat's the factual basis for the claim"), Doc. # 186; *accord id.* Tr. 28:21-20:14.  Given this and that Investigator Williams works at the direction of the enforcement attorneys, and that Investigator Willaims has no first-had knowledge of or involvement in any evidence, the subpoena should be quashed as an improper *de facto* deposition of these enforcement attorneys.

Defendants' Response Letter mistakenly claims (at 2) that because Mr. Williams verified the United States' interrogatory responses he must have personal first-hand knowledge or otherwise he committed a legal error in verifying the responses without such personal knowledge.  The law is otherwise; interrogatory Rule 33(b) states that as here if the party is a "corporation [or] governmental agency" the interrogatory may be answered "by any officer or agent, who must furnish the information available to the party."  This Rule "expressly permits a representative of a [government entity] to verify the [government's] answers without personal knowledge of every response by furnishing such information as is available to the party." *Pantages v. Cardinal Health 200, Inc.*, No. 5:08-CV-116-OC-10GRJ, 2009 WL 10670380, at *1 (M.D. Fla. June 17, 2009) (finding no personal knowledge required for corporate representative answering interrogatory to corporation).

---

[7] That Investigator Williams has only privileged information belies Defendants' suggestion (at 2) that he should sit for the deposition and United States' counsel should object to privileged information during the deposition.  The cases cited by Defendants, *SEC v. Kramer*, 778 F. Supp. 2d 1320 (M.D. Fla. 2011) and *SEC. v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla. 2012), are inapposite because they dealt with Rule 30(b)(6) deponents.  And subsequent cases have disagreed with *Kramer* and *Merkin.  E.g., United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 3537070, at *5 (M.D. Fla. Aug. 14, 2012).

Defendants' Response Letter (at 3) even acknowledges that "courts may refuse to permit depositions of representatives who verified interrogatory responses if the representatives lack *personal knowledge* of the case's particular facts" and cites supporting cases, including *Jiminez-Carillo v. Autopart Int'l, Inc.*, 285 F.R.D. 668, 670 (S.D. Fla. 2012).[8]  In *Jiminez-Carillo,* the court found that Rule 33 does not require personal knowledge for corporate representatives, and that the corporate representatives' lack of personal knowledge of interrogatory answers supplied good cause for a protective order preventing their depositions. 285 F.R.D. at 670.  The *Jiminez-Carillo* court also found that the party's promise that it would not call these representatives at trial added to the good cause for the protective order.  *Id.*  As above, the United States has not listed Investigator Williams on its initial disclosures and does not intend to list him on those disclosures or call him as a trial witness.  Accordingly, Investigator Williams's verification of the United States' interrogatory answers does not provide a sufficient bases to override the United States' privileges.

Moreover, that Investigator Williams verified answers to "contention" interrogatories provides even more reason to quash the deposition as an impermissible *de facto* deposition of the United States enforcement attorneys.  Defendants' contention Interrogatory Number 18 asked the United States to identify the "primary facts" underlying the United States' "determination [*i.e.*, contention] that ADOC and/or the State continue to demonstrate a pattern of practice of resistance to the rights, privileges, or immunities of Incarcerated Individuals within the ADOC Facilities, as secured or protected by the Eighth Amendment to the United States Constitution." Defs.' Second Set of Interrogatories, Interrogatory No. 18 (Apr. 28, 2024).  Through this overbroad, kitchen-sink, contention interrogatory, Defendants asked the United States to marshal all the primary facts underlying the entire case.

Defendants' following this contention interrogatory with a deposition about the interrogatory makes this an impermissible contention deposition.  "[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012) (quoting *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.,* 209 F.R.D. 361, 362 (S.D.N.Y. 2002)); *see also id.* at *4 (finding "how counsel intend to marshal the facts to support the [the party's] position[s] . . . is opinion work product which is protected by the work product privilege" and collecting cases); *see also Floyd v. Suntrust Banks, Inc.*, No. 1:10-CV-2620-RWS, 2011 WL 2604818, at *2 (N.D. Ga. June 30, 2011) (quashing deposition of attorney and noting depositions of opposing attorneys allowed only when "(1) no other means exist to obtain th[e] information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged; and, (3) the information is crucial to the preparation of the case." (citation omitted)).

The United States provided a lengthy, detailed answer to Defendants' overbroad contention Interrogatory Number 18, which covered the entire case.  The answer reflects the enforcement attorneys' detailed response of where the information they have gathered and

---

[8] During our October 18, 2024, conference, defense counsel oddly relayed lack of knowledge of the case law Defendants cited confirming that a corporate or government entity can verify answers though a representative without personal knowledge.

6

compiled fits into particular claims and the contentions. Defendants Response admits this detail, describing (at 3) the United States' answer as "provid[ing] immense detail through seven (7) specific allegations with the alleged supporting facts covering ten (10) pages." Given this admitted immense detail, Defendants have already got the information they need through "other means" and requiring the United States to provide even more information through an impermissible contention deposition is not "crucial to the preparation of the case." *Floyd*, 2011 WL 2604818, at *2; *Halifax Hosp. Med. Ctr.*, 2012 WL 3537070, at *4-5. The subpoena accordingly should be quashed as improperly seeking the United States' privileged information, Fed. R. Civ. P. 45(d)(3)(A).

### D. Alternatively, Good Cause Exists for a Protective Order Dismissing the Subpoena.

Because Defendants sought to serve a subpoena for the deposition testimony, rather than just a notice of deposition,[9] the United States seeks to quash the subpoena under Rule 45. Alternatively, good cause also exists for a protective order dismissing the deposition pursuant to Fed. R. Civ. P. 26(c)(1). Good cause "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). To help decide whether Rule 26(c)'s good cause is met, a court should "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). The "decision to enter a protective order is within the court's discretion and does not depend on a legal privilege." *Rondini v. Bunn*, No. 7:17-CV-01114-RDP, 2019 WL 2409134, at *2 (N.D. Ala. June 7, 2019) (Proctor, J.) (citation omitted). In the case of *In re Alexander Grant & Co. Litig.*, 820 F.2d 352 (11th Cir. 1987), the court noted that, "[i]n a different context, th[e] court has identified four factors for ascertaining the existence of good cause which include: '[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" 820 F.2d at 355-56 (quoting *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1205 (11th Cir. 1985) (concerning good cause for restraint on First Amendment commercial speech)).

Here, the balance of interests weighs heavily in favor of the protective order dismissing the deposition. As for severity and likelihood of harm, as explained above, Investigator Williams only has privileged information and the United States would suffer harm in having to divulge any privileged information. As for Defendants' interests and harm, Defendants failed to respond to the United States' *Touhy* Letter's request for an explanation as to why Defendants can override the United States' privileges. And regardless, Defendants have already received the information they need through the United States' interrogatory responses, including the response Defendants admit provided "immense detail through seven (7) specific allegations with the alleged supporting facts covering ten (10) pages." Defs.' Response Letter at 3. As for the scope of the protective order and less onerous alternatives, the dismissal of the deposition is necessary because Investigator Williams has only privileged information and again Defendants already have the alternative of the United States' detailed interrogatory responses.

---

[9] *See supra* note 3.

     For these reasons, and the reasons above justifying quashing the subpoena, the balance of interests weighs heavily in favor of good cause for a protective order dismissing the deposition

## IV.   CONCLUSION

     For the reasons above, the subpoena should be quashed, or alternatively a protective order dismissing the deposition should be issued.

Sincerely,

MATTHEW J. DONNELLY
Attorney
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616-2788
matthew.donnelly@usdoj.gov

cc via email:   counsel of record