

November 8, 2024

**VIA-EMAIL ONLY**

R. Bruce Barze, Jr.
**BARZE TAYLOR NOLES LOWTHER LLC**
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
bbarze@btnllaw.com

      Re:    **United States v. State of Alabama, *et al.***, In the United States District Court for the Northern District of Alabama, Southern Division; Case No. 2:20-cv-01971-RDP.

Dear Special Master Barze:

On behalf of the State of Alabama ("Alabama") and the Alabama Department of Corrections ("ADOC," and, together with Alabama, the "State"), we submit this response to the November 1, 2024, letter brief from Plaintiff United States ("Plaintiff") seeking to quash the State's Subpoena to Mark Williams ("State's Subpoena"), or alternatively, a protective order seeking to avoid the deposition. (November 1, 2024, Letter from Plaintiff, "Plaintiff's Letter Brief," at 1). The State respectfully requests the Special Master recommend the denial of Plaintiff's request to quash, as Plaintiff failed to demonstrate that the deposition "requires disclosure of privileged or other protected matter." Additionally, Plaintiff failed to demonstrate good cause for a protective order, justifying their request for intervention by the Special Master.

## BACKGROUND

On April 28, 2024, the State served Plaintiff its Second Set of Interrogatories (the "State's Interrogatories"). Plaintiff responded to the State's Interrogatories ("Plaintiff's Interrogatory Responses") on May 28, 2024, relying on Mark Williams' ("Williams") to verify Plaintiff's answers under penalty of perjury. Four (4) months later, the State validly served the State's Subpoena consistent with the prior practice used by Plaintiff in deposing seventy (70) non-party ADOC employees. On September 11, 2024, Plaintiff responded ("Plaintiff's September 11, 2024, Letter") with initial objections, asserted that Williams lacked "direct knowledge," and asked the State to provide a summary of the testimony sought. The State responded and informed Plaintiff's that it must comply with the Federal Rules of Civil Procedure and either move to quash or for a protective order (the "State's Letter"). Instead, Plaintiff submitted untimely objections ("Plaintiff's RFP Objections") to the included document requests in the State's Subpoena on October 4, 2024. After meeting with the parties, the Special Master requested this letter briefing.

Post Office Box 18848
Huntsville, AL 35804

**BILL LUNSFORD**
256.936.5609
Bill.Lunsford@butlersnow.com

Suite 100
200 West Side Square
Huntsville, AL 35801

T 256.936.5650 • F 256.936.5651 • www.butlersnow.com

BUTLER SNOW LLP

November 8, 2024
Page 2

      Plaintiff's Letter Brief seeks to quash the State's Subpoena or alternatively a protective order to prevent the State from deposing a person with apparent material knowledge about the case. Plaintiff's requests remain inappropriate for at least the following three (3) reasons:

(1)      Preemptive and speculative privilege assertions lack merit, and facts are not protected by privilege or work product,

(2)      Plaintiff failed to demonstrate good cause exists for a protective order; and

(3)      Plaintiff waived its objections to the State's requests for production by failing to respond timely.

Accordingly, the State requests the Special Master reject Plaintiff's arguments to quash the State's Subpoena and find that Plaintiff lacks good cause for a protective order.

## LEGAL STANDARD

      A party cannot preemptively claim "work product protected information, the attorney-client privilege, the deliberative process privilege, or the investigative privilege" to prevent a deposition. S.E.C. v. Merkin, F.R.D. 689 (S. D. Fla. 2012). Similarly, underlying facts used to support claims are not work product, and a deponent must testify to the "who, what, when, and where that support the claims—i.e., the facts." A.R. by an through Root v. Dudek, 151 F.Supp.3d 1309, 1314 (S.D. Fla. 2015). The party seeking testimony from a Department of Justice ("DOJ") employee must provide DOJ with an "affidavit or statement setting forth the testimony sought from the DOJ employee." A.R. ex rel. Root v. Dudek, 304 F.R.D. 668, 671 (S.D. Fla. 2015); see also 28 C.F.R. § 16.23. However, a notice of deposition satisfies the "sufficient summary of the testimony sought" requirement of 28 C.F.R. § 16.23(c), and an affidavit is not required. A.R. ex rel. Root, 304 F.R.D. at 669.

      Additionally, Rule 26 of the Federal Rules of Civil Procedure provides the scope for granting a protective order. A trial court enjoys broad discretion to decide the scope and appropriateness of a protective order. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). A court may enter a protective order precluding discovery for good cause shown. Fed. R. Civ. P. 26(c)(1). Good cause is a "well[-]established legal phrase" and "generally signifies a sound basis or legitimate need to take judicial action." In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). To grant a protective order, a district court "must articulate its reasons for granting a protective order sufficient for appellate review." See United States v. Kooistra, 796 F.2d 1390, 1391 (11th Cir. 1986).

      The Eleventh Circuit evaluates the following four (4) factors to determine whether to grant a protective order: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order." In re Alexander Grant, 820 F.2d at 356. The Eleventh Circuit also requires "[the court] to balance the interests of those requesting the order." McCarthy v. Barnett Bank of Polk Cnty., 876 F.2d 89, 91 (11th Cir. 1989). As the movant, Plaintiff possesses the high burden "to show the necessity of the protective order, and [Plaintiff] must meet this burden with a particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements." Ekokotu v. Fed. Express Corp., 408 F. App'x 331, 336 (11th Cir. 2011). Plaintiff fails to meet this high burden. Plaintiff's faulty singular argument regarding potential harm suffered contends that Williams only possesses privileged information. (Plaintiff's Letter at 7). As discussed further below, the facts underlying the allegations in Plaintiff's Interrogatory Responses are not privileged.

## DISCUSSION

I.  THE FACTS UNDERLYING PLAINTIFF'S INTERROGATORY RESPONSES DO NOT QUALIFY FOR PRIVILEGE OR WORK PRODUCT PROTECTION.

The State remains entitled to depose Williams regarding the facts underlying the allegations certified by him under oath in the Interrogatory Responses. (See Plaintiff's Interrogatory Responses). Plaintiff's Interrogatory Responses assert ten (10) pages of allegations but failed to list even one (1) supporting fact.[1] (Id. at 5-15). The State remains entitled to discover any alleged facts which support Plaintiff's claims and/or the State's defenses. Plaintiff's Letter Brief oddly claims that Plaintiff (and Williams) lack direct knowledge and merely "compile evidence obtained from Defendants and third parties." (Plaintiff's Letter Brief at 5). Similarly, Plaintiff's claim that Williams lacks "first-hand knowledge" reflects an incorrect standard. (Plaintiff's Letter Brief at 5). This attempt to muddy the waters lacks relevance to the issue before the Special Master. The person answering interrogatories possesses the same obligations as a person testifying at a deposition or trial—and personal knowledge—not direct knowledge remains the standard for providing testimony. Fed. R. Civ. P. 33(b)(3); Fed. R. Evid. 602. Plaintiff merely wishes to evade all responsibility, including its obligations under the basic rules of discovery, which severely prejudice the State and violates the basis due process rights afforded any litigant.

Williams certified Plaintiff's Interrogatory Responses under oath after he visited ADOC facilities and participated in interviews with ADOC inmates. During the pendency of this action, Williams relayed a variety of factual allegations from inmates and their families to the State by email concerning the conditions of confinement at various ADOC facilities before and after certifying Plaintiff's Interrogatory Responses. ("Williams Email Correspondence" attached hereto as **Exhibit A**).[2] Clearly, Williams possesses personal knowledge of information outside any conceivable coverage by attorney-client privilege or work-product doctrine, as reflected in numerous emails sent by Williams to the State's counsel. Accordingly, Plaintiff's contention about Williams' lack of personal knowledge rings hollow. (See Plaintiff's Letter Brief at 2). Therefore, the State intends to discover the nonprivileged, unprotected facts underlying the allegations Williams certified in Plaintiff's Interrogatory Responses and in various emails to the State's counsel, but the State can only obtain this crucial discovery by deposing Williams. See A.R. ex

---

[1] The State's Interrogatory No. 18 asked Plaintiff to identify the primary facts underlying Plaintiff's determination that ADOC and/or the State continue to demonstrate a pattern or practice of resistance to the rights, privileges, or immunities of Incarcerated Individuals within the ADOC Facilities.

[2] The emails attached as Exhibit A are far from exhaustive. In the one (1) year prior to certifying Plaintiff's Interrogatory Responses the State identified more than twenty (20) such emails where Williams relayed factual allegations by ADOC inmates. Upon receiving these emails, the State promptly investigated the claims.

November 8, 2024
Page 4

rel. Root, 151 F. Supp. 3d at 1314. As Plaintiff acknowledges, parties use depositions to discover underlying facts—precisely what the State attempts to do. (See Plaintiff's Letter Brief at 6; see also United States v. Halifax Hosp. Med. Ctr., No. 6:09-CV-1002-ORL-31, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012). Plaintiff fails to provide the Special Master with any legal authority excusing Plaintiff from its obligation to disclose the facts upon which they intend to rely at trial, especially those facts verified by an employee of Plaintiff.

Plaintiff's Letter Brief repeatedly insists as support for quashing the State's Subpoena that the State failed to provide a statement as to "why [the State believes it] can override the applicable privileges. (Plaintiff's Letter Brief at 2, 4; see also 28 C.F.R. § 16.26). Plaintiff's position lacks merit because Plaintiff "cannot [determine privilege exists] before the examination begins." SEC v. Kramer, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011). Instead, Plaintiff's preemptive and speculative privilege assertions remain improper given the State has yet to ask a single deposition question. See Merkin, F.R.D. 689 (S. D. Fla. 2012). Plaintiff either misinterpreted the State's Subpoena, or the regulation it relies on throughout Plaintiff's Letter Brief. See 28 C.F.R. § 16.26. When responding to Plaintiff's September 11, 2024 Letter, the State's Letter made clear again that the State seeks nonprivileged factual material, and facts remain distinguishable from work product and other claimed privileges. A.R. ex rel. Root, 304 F.R.D. at 669. Even more, Plaintiff may interpose "appropriate objections and giving instructions on a question-by-question bases" during Williams' deposition. See S.E.C. v. Merkin, F.R.D. at 698. This protection eliminates Plaintiff's need to preemptively claim that answers to unasked questions are protected. Id.

Plaintiff points to three (3) cases in which courts upheld the quashing of subpoenas to evade its discovery obligations. (Plaintiff's Letter Brief at 4; see also United States v. Bizzard, 674 F.2d 1382, 1387 (11th Cir. 1982); United States v. Goff, No. 2:07CR322-MHT, 2009 WL 10725957, at *1 (M.D. Ala. Jan. 21, 2009); United States v. Wallace, 32 F.3d 921, 928-29 (5th Cir. 1994)). For example, in Bizzard, the Eleventh Circuit upheld the quashing of a subpoena to a DOJ employee that required the DOJ employee to testify at trial but failed to provide any summary of testimony sought. Bizzard, 674 F.2d at 1387; see also 28 C.F.R. § 16.23(c). The other cited cases involve near identical facts involving subpoenas commanding a DOJ employee to testify at trial, but similarly failed to include a summary of the testimony sought, as required by 28 C.F.R. § 16.23(c). See Goff, No. 2:07CR322-MHT, 2009 WL 10725957, at *1; see also Wallace, 32 F.3d at 928-29. Thus, the courts dispensed with the subpoenas for failing to comply with the summary requirement contained in 28 C.F.R. § 16.23(c). Id.; see also Bizzard, 674 F.2d at 1387. Those facts do not exist here.

Critically, the Eleventh Circuit recognizes that a deposition notice can satisfy the "sufficient summary of the testimony sought" requirement of 28 C.F.R. § 16.23(c). See A.R. ex rel. Root, 304 F.R.D. at 669. In A.R. ex rel. Root, the court held that the noticed topics for the deposition were sufficient to satisfy 28. C.F.R. § 16.23(c). Id. Here, the State sent a deposition notice and provided the summary by stating that it "seeks testimony from Williams about the facts and bases for information contained in [Plaintiff's Interrogatory Responses]." (See State's Letter). Plaintiff failed to provide *any* support to demonstrate that the State's summary failed to comply with 28 C.F.R. § 16.23(c). Instead, Plaintiff's Letter Brief incorrectly claimed that the State did not provide a "complete summary," despite 28 C.F.R. § 16.23(c) lacking the word "complete" in

November 8, 2024
Page 5

its text. (See Plaintiff's Letter Brief at 4; see also 28 C.F.R. § 16.23(c)). Plaintiff's cited cases lack relevance to the present facts and issue before the Special Master because the State complied with the requirements set forth in 28 C.F.R. § 16.23. The Special Master should reject Plaintiff's arguments because Plaintiff certified under Fed. R. Civ. P. 11 that Williams possesses personal knowledge of the underlying facts in certifying Plaintiff's Interrogatory Responses, and the State complied with the requirements set forth in 28 C.F.R. § 16.23.

## II. PLAINTIFF FAILED TO DEMONSTRATE THAT GOOD CAUSE EXISTS FOR A PROTECTIVE ORDER.

Plaintiff bears the high burden of demonstrating good cause exists to completely preclude a deposition. See, e.g., West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (noting the rarity of protective orders totally prohibiting a deposition absent extraordinary circumstances); see also Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error").[3] Eleventh Circuit courts evaluate four (4) factors to determine whether good cause exists to enter a protective order. In re Alexander Grant, 820 F.2d at 356. The first factor (the only factor briefly addressed by Plaintiff) requires courts to evaluate both the *severity* and the *likelihood* of the perceived harm. Id. The severity of harm the State will experience if the Court enters a protective order preventing Williams' deposition far outweighs the nonexistent harm to Plaintiff. See In re Alexander Grant, 820 F.2d at 356. In sum, nothing can justify Plaintiff's intention to completely shut down the State's efforts to discover facts in the knowledge of Plaintiff and its employees.

Plaintiff makes factual allegations that the State "does not consistently transfer victims who report sexual abuse out of the Facility or even the housing unit where abuse was reported in the Facilities," fails to "accurately and consistently track prisoner deaths," does not "provide adequate oversight of sexual abuse prevention practices," and "had an unreasonably high number of homicides." (See Plaintiff's Interrogatory Responses at 6, 8-9). These blanket accusations lack supporting facts; thus, the State must probe into Williams' knowledge of the specific facts he used to certify Plaintiff's Interrogatory Responses to prepare a complete defense. The entry of a protective order prohibiting the State from questioning Williams regarding the allegations he certified would inflict a high severity of harm and deny the State the opportunity to seek nonprivileged, factual material underlying Plaintiff's Interrogatory Responses. Either Plaintiff's blanket allegations certified by Williams lack any factual support, or Williams relied on specific facts the State remains entitled to know to prepare its defense. Thus, unlike Plaintiff, the State can demonstrate a high severity and certainty that it will experience harm if the Court enters a protective order. See In re Alexander Grant, 820 F.2d at 356.

Moreover, as the movant, Plaintiff must show "particular and specific" facts opposed to "stereotyped and conclusory statements" to meet the high burden of demonstrating the necessity of a protective order. Ekokotu, 408 F. App'x at 336. Plaintiff failed to meet its burden and relied

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

on a lone conclusory statement rather than particular and specific facts to support its protective order request. (Id.; see also Plaintiff's Letter at 7). Although Plaintiff contends that it must "divulge [] privileged information[]" if Williams sits for deposition, it failed to demonstrate that the State's *not yet asked questions* seek privileged material. (Plaintiff's Letter at 7). Thus, Plaintiff failed to demonstrate that even a one percent likelihood of harm exists as to Williams answering the State's questions. See In re Alexander Grant, 820 F.2d at 356. Plaintiff failed to meet the high burden of demonstrating good cause exists for the entry of a protective order, and instead relied on a blanket privilege assertion rather than providing particular and specific facts. Ekokotu, 408 F. App'x at 336. Plaintiff likewise failed to demonstrate an extraordinary circumstance exists to justify outright precluding Williams' deposition. Palm Beach County, 132 F.R.D. at 302.

### III. PLAINTIFF WAIVED ITS OBJECTIONS TO THE STATE'S DOCUMENT REQUESTS AND MUST PRODUCE ALL NON-PRIVILEGED MATERIAL.

Plaintiff failed to object to the document requests included in the State's Subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena [was] served" and thus responded untimely. Fed. R. Civ. P. 45(d)(2)(B). The State served its subpoena on September 4, 2024, and Plaintiff responded untimely on October 4, 2024. (See State's Subpoena; see also Plaintiff's RFP Objections). Merely submitting "initial objections" in Plaintiff's September 11, 2024, Letter—ambiguous as to whether the initial objections related to the document requests or notice of deposition—failed to comply with the Federal Rules of Civil Procedure. (See Plaintiff's September 11, 2024, Letter at 1; see also Fed. R. Civ. P. 45(d)(2)(B)). Instead, Plaintiff refused to comply with State's Subpoena and claimed that it must produce "essentially [] every document in this case," but this statement defies common sense. (See Plaintiff's RFP Objections at 3). The State only seeks documents "considered or relied on to certify [Plaintiff's Interrogatory Responses]." (See generally State's Subpoena).

The State served its Interrogatories on April 28, 2024, and Williams certified Plaintiff's Interrogatory Responses on May 28, 2024. Naturally, this means the production obligation only extends to documents "considered or relied on" during that one (1) month timeframe to certify the responses. Given the State's production to date exceeds three million total pages of material, it remains unlikely Williams marshalled evidence from all pages to certify the responses. Moreover, the State's Letter clearly informed Plaintiff it could "comply with the State's Notice of Video Deposition and Request for Production of Documents and produce *all non-privileged material* responsive to the State's request." (See State's Letter at 2). Rather than produce non-privilege material, Plaintiff submitted its RFP Objections out-of-time.

Although untimely and thus waived, Plaintiff's RFP Objections argue against production on the grounds the documents are work product. However, even if the Special Master determines the documents are work product and forgives Plaintiff's untimeliness—the documents are subject to the substantial need exception under Rule 26(b)(3)(A)(ii). As mentioned above, Williams conducted site visit interviews and continues conducting telephonic interviews with Alabama inmates. The State's Subpoena requested site visit notes and telephone interview notes if used to certify Plaintiff's Interrogatory Responses. (See State's Subpoena at 10). The State's only possible access to the alleged facts inmates relay to Williams that he used to certify Plaintiff's Interrogatory Responses would require the State to interview each inmate Williams spoke to—

November 8, 2024
Page 7

lacking any guarantee the State would receive the same information. Thus, the State possesses a substantial need as contemplated by Rule 26(b)(3)(A)(ii) to prepare its defense and cannot obtain the "substantial equivalent by other means."

## CONCLUSION

The State remains entitled to depose Williams and learn which facts support the blanket allegations in Plaintiff's Interrogatory Responses. Plaintiff cannot claim privilege to all underlying facts Williams inevitably analyzed when certifying Plaintiff's Interrogatory Responses. Instead, Plaintiff may adequately protect against disclosing protected material by interposing appropriate objections during Williams' deposition. S.E.C. v. Merkin, F.R.D. at 698. Plaintiff failed to meet its high burden to demonstrate good cause exists for a protective order, and instead rests on a conclusory privilege assertion rather than specific and particularized facts. See Ekokotu, 408 F. App'x at 336. The State respectfully asks that the Special Master recommend against Plaintiff's requests to quash the State's Subpoena or for a protective order to prevent Williams' testimony.

Sincerely,

BUTLER SNOW LLP

Bill Lunsford

WRL:wrl
Enclosures
cc: All Counsel of Record

# Exhibit A

| | |
|---|---|
| **From:** | Williams, Mark (CRT) |
| **To:** | Bill Lunsford; Matt Reeves; Lynette Potter; Roberts, MaryColeman (DOC); Smithee, Stephanie (DOC) |
| **Cc:** | Dean, Kerry K (CRT); Cheek, Jason (USAALN); Ward, Carla (USAALN); Eppsteiner, George (CRT) |
| **Subject:** | Blake Nance (AIS# 216982 - Limestone CF) |
| **Date:** | Tuesday, March 26, 2024 8:27:35 AM |



Counsel,

We received several calls from Mr. Nance in which he stated he feared for his life as a result of threats he's received related to alleged debts he owes. Mr. Nance said that he lives in Limestone's G-dorm and that the individuals who are threatening him live in the same dorm. According to Mr. Nance, he attempted to talk to Sgt Ray about the situation yesterday morning, but Sgt Ray told him to go back into the dorm and "handle his business." Mr. Nance indicated that he was told to come up with the money by the time the G-dorm has Store this morning.

Mark Williams


**Mark Williams**
**Investigator**
**Civil Rights Division**
**Special Litigation Section**
**202-598-1964 (cell)**

| | |
|---|---|
| **From:** | Williams, Mark (CRT) |
| **To:** | Bill Lunsford; Matt Reeves; Lynette Potter; Roberts, MaryColeman (DOC); Smithee, Stephanie (DOC) |
| **Cc:** | Dean, Kerry K (CRT); Cheek, Jason (USAALN); Ward, Carla (USAALN); Eppsteiner, George (CRT) |
| **Subject:** | Mickey Ferrell (AIS# 239200 - Easterling CF) |
| **Date:** | Wednesday, March 6, 2024 2:57:53 PM |



Counsel:

Mr. Ferrell called us this afternoon saying he was in fear for his life after several inmates at Easterling told him he had to pay them $400 by tonight via CashApp or he would be assaulted.  Mr. Ferrell said he has recently been shipped back and forth between Easterling, Bullock and Limestone after multiple rapes and extortion attempts.  Most recently, Mr. Ferrell claimed that he was raped at Limestone in early January and had also previously been raped at Easterling.  According to Mr. Ferrell, when he arrived at Easterling last Friday, the inmate he said had raped him previously at Easterling was also in the same building as him.  Mr. Ferrell indicated that the inmates can get to him if they want to.

Mark Williams


**Mark Williams**
**Investigator**
**Civil Rights Division**
**Special Litigation Section**
**202-598-1964 (cell)**

| | |
|---|---|
| **From:** | Williams, Mark (CRT) |
| **To:** | Bill Lunsford; Matt Reeves; Lynette Potter; Roberts, MaryColeman (DOC); Smithee, Stephanie (DOC) |
| **Cc:** | Dean, Kerry K (CRT); Cheek, Jason (USAALN); Ward, Carla (USAALN); Eppsteiner, George (CRT) |
| **Subject:** | Troy Dawson (AIS# 196612 - Limestone CF) |
| **Date:** | Friday, February 23, 2024 10:38:05 AM |



Counsel,

Mr. Dawson called us this morning to say he fears for his life after having been jumped and beaten inside the G-dorm both yesterday and the day before. Mr. Dawson said the whole right side of his head is black, with two black eyes and other facial injuries. According to Mr. Dawson, three inmates beat him on Wednesday and yesterday it was two inmates. Mr. Dawson said he expects it to happen today as well.

Mark Williams

**Mark Williams**
**Investigator**
**Civil Rights Division**
**Special Litigation Section**
**202-598-1964 (cell)**