UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )  ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 2:20-CV-1971-RDP |
| **STATE OF ALABAMA, and** ) **ALABAMA DEPARTMENT OF** ) **CORRECTIONS,** ) ) | |
| **Defendants.** ) | |

## NOTICE OF DISCOVERY DISPUTE BY SPECIAL MASTER

In the Order dated November 9, 2021 (the "Appointment Order," Doc. 70), this Court appointed me as the Special Master to assist the Court with completion of discovery in this case and in case no. 4:14-cv-1952-RDP. Section 4 of the Appointment Order provides three processes for my review and resolution of disputes. This Notice is being provided in accordance with the process outlined in Section 4(b) of the Appointment Order, which provides as follows:

The Special Master's resolution shall follow one of the following processes:

\* \* \*

(b)   The Special Master will hear each Party's arguments without the aid of any *ex parte* communication and suggest a resolution. If the Parties do not agree to the resolution, then the Parties may elevate the dispute to the court. The Special Master shall provide a summary of the dispute to the court, unless all Parties to the dispute agree that the Special Master shall follow the Report and Recommendation process in subparagraph (a) above. (Doc. 70, at § 4(b)).

This dispute came before me following an email from Plaintiff's counsel on January 21, 2025 concerning Plaintiff's Third Set of Interrogatories. Plaintiff's counsel advised that "Defendants have refused to answer any of the United States' interrogatories in the most recent set

and the Parties, despite correspondence exchanged, are unable to reach agreement." I held a Zoom conference with counsel and heard arguments on this dispute on January 29, 2025, during which counsel for Defendants advised their position that Plaintiff has far exceeded the 50-interrogatory limit applicable in the case. Later that same evening, Defendants' counsel provided an email to me with their counting of Plaintiff's interrogatories served to date. *See* Exhibit B. With agreement from the Parties (and in order to expedite resolution) I reviewed this dispute under the process outlined in Section 4(b) of the Appointment Order and made the determination set forth below, which was communicated to the Parties on February 4 2025. On February 5, 2025, counsel for Plaintiff communicated their desire to elevate this dispute to the Court.[1]

*Introduction*

The Advisory Committee Notes on the 1970 Amendments to Rule 33 provide, "[a]s to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." FED. R. CIV. P. 33 advisory committee notes (citing *Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3 (D. Md. 1967); 4 *Moore's Federal Practice* ¶33.17 (2d ed. 1966)).

As counsel are aware, I recommended (and the Court adopted) the use of Rule 33 by Defendants (in lieu of deposition) to discover the facts underlying Plaintiff's claims in the Amended Complaint. Plaintiff, with its Third Set of Interrogatories, appears to be attempting to use that same vehicle (contention interrogatories) to test Defendants' defenses.

---

[1] This Notice and process are consistent with this Court's practice, memorialized in Section 6 of the Initial Order (Doc. 18), which requires the Parties to request a conference with the Court prior to filing a motion to compel or other discovery motion. The undersigned believes a telephonic conference would be helpful to the expeditious resolution of this dispute.

Ordinarily, I would be inclined to invoke the old English proverbial phrase, "what's sauce for the goose is sauce for the gander." Here, however, I am concerned that Plaintiff's contention interrogatories not only came too late in these proceedings, but they are over the agreed-upon limit.

The parties agreed to limit themselves to 50 interrogatories per side in their Rule 26(f) Report (Doc. 42). Plaintiff has propounded three sets of interrogatories, which are numbered 1 through 30.[2] Defendants assert, after counting subparts in all three sets of interrogatories, that Plaintiff actually propounded five hundred and sixty-two (562) separate interrogatories. During our conference, counsel for Plaintiff confirmed their belief they have only served 30 interrogatories. Perhaps not surprisingly, I reached a count somewhere in between these two positions.

Courts have observed that identifying the discrete subparts of an interrogatory can be a difficult task. *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004). Generally, however, "[l]egitimate discovery efforts should not have to depend upon linguistic acrobatics, nor should they sap the court's limited resources in order to resolve hypertechnical disputes." *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 322 (D. Nev. 1991).

In the Eleventh Circuit, courts utilize the "related question" test to determine whether any subparts of an enumerated interrogatory are discrete, asking whether "the subparts are subsumed and necessarily related to the primary question." *The Mitchell Co., Inc. v. Campus*, No. CA 07-0177-KD-C, 2008 WL 2468564, at *14 (S.D. Ala. June 16, 2008); *In re 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-md-2885, 2020 WL 2029977, at *4 (N.D. Fla. Apr. 28, 2020); *Oliver v. City of Orlando*, No. 6:06-cv-167-Orl-31DAB, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007). As one district court has described it:

---

[2] Copies of Defendants' objections and responses to Plaintiff's three sets of interrogatories are attached as Exhibit A.

3

> [T]he issue in this motion is whether the interrogatory subparts are "logically or factually subsumed within and necessarily related to the primary [interrogatory] question." ... In making this determination, the Court should decide whether the first question is primary and subsequent questions are secondary to the primary question; or whether the subsequent question could stand alone and is independent of the first question? ... In other words, "[i]f the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not 'factually subsumed within and necessarily related to the primary question.'"

*Estate of Manship v. United States*, 232 F.R.D. 552, 554-55 (M.D. La. 2005), *aff'd*, (M.D. La. Jan. 13, 2006). "Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related." *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997). An interrogatory "'directed at eliciting details concerning a common theme' should not be counted as multiple interrogatories. This Court has rejected as unfair the 'draconian approach of counting every subdivision of an interrogatory as a separate question.'" *In re ULLICO Inc. Litigation,* No. Civ.A.03-01556 RJL/A, 2006 WL 2398745, at *2 (D.D.C. June 30, 2006) (quoting *Banks*, 222 F.R.D. at 11).

    While I recognize answering interrogatories can be burdensome and that propounding numerous interrogatories can be used by parties as a tool for harassment, that does not appear to be the case here. I also share the view of certain courts that an overly restrictive reading of Rule 33's numerical limit could exhaust the propounding party's supply of interrogatories, thereby unnecessarily limiting that party's fact-gathering ability. "Such a result would be not only inconsistent with both the broad discovery envisioned by the Federal Rules, but also their purpose of narrowing the factual issues to be resolved at trial and ensuring that all parties to litigation are possessed of relevant facts." *Mitchell Co.,* 2008 WL 2468564, at *15.

Here, it appears Defendants have counted every single subdivision of Plaintiff's interrogatories as a separate question. Defendants' counting also appears to have changed over time. For instance, in their responses to Interrogatory Nos. 1 and 2 (served on October 21, 2021) they said each of those interrogatories, "including discrete subparts, is at least ten (10) Interrogatories." Yet, in their email on January 29, 2025, Defendants now claim these interrogatories contain at least two distinct interrogatories/subparts.

Rather than merely counting every subdivision as a separate question (an approach rejected by the above courts), I have reviewed the interrogatories guided by the "related question" test used by courts in the Eleventh Circuit.

*Plaintiff's First Set of Interrogatories*

No. 1 – this interrogatory is found to be one interrogatory. The primary question is directed to identifying prisoner deaths, and the secondary questions ask for facts and information regarding each such death.

No. 2 – this interrogatory is found to be one interrogatory. The primary question is directed to identifying incidents referred to law enforcement, and the secondary questions ask for facts and information regarding each such incident.

No. 3 - this interrogatory is found to be one interrogatory. The primary question is directed to identifying individuals who have been disciplined or resigned in connection with an investigation into misconduct, and the secondary questions ask for facts and information regarding each such incident.

No. 4 - this interrogatory is found to be one interrogatory. The primary question is directed to identifying ADOC central management positions, and the secondary questions ask for facts and information regarding each such role.

No. 5 – this interrogatory is found to be thirteen (13) interrogatories.[3] The primary question is directed to various information for thirteen different ADOC facilities.

No. 6 - this interrogatory is found to be one interrogatory. The primary question is directed to identifying lawsuits filed by prisoners, and the secondary questions ask for facts and information regarding each such lawsuit.

---

[3] Counsel confirmed during our conference there are 13 ADOC facilities at issue in this case.

5

No. 7 - this interrogatory is found to be two (2) interrogatories. First, the interrogatory asks for the identity of employees responsible for tracking complaints and concerns. The second question asks how those employees receive and track the complaints and concerns. The second subpart can stand on its own.

No. 8 – this interrogatory is found to be fifteen (15) interrogatories. Plaintiff asks for various information regarding fifteen discrete topics.

No. 9 - this interrogatory is found to be two (2) interrogatories. First, the interrogatory asks for the identity of facilities that use surveillance cameras. The second question asks how and where such cameras are utilized.

No. 10 - this interrogatory is found to be thirteen (13) interrogatories. The primary question is directed to information about post vacancies for thirteen different ADOC facilities.

Thus, by my count, Plaintiff propounded fifty (50) interrogatories to Defendants in its First Set of Interrogatories. For the sake of comparison, Defendants assert the first set contained 78 interrogatories.

*Plaintiff's Second Set of Interrogatories*

No. 11 – this interrogatory is found to be one interrogatory because it is limited to one topic—the identity of the person(s) who compiled documents for responding to a specific request for production.

No. 12 - this interrogatory is found to be one interrogatory. The primary question is directed to identifying any facilities using tracking systems, and the secondary questions ask for facts and information regarding each system.

Using the "related question" methodology, I determined the second set added two more interrogatories, bringing Plaintiff's total to fifty-two (52) interrogatories. Defendants contend that this set added an additional 16 interrogatories (for a total of 94).

*Plaintiff's Third Set of Interrogatories*

As a preliminary matter, the interrogatories in this third set are all contention interrogatories. Most, if not all, of these are "blockbuster" interrogatories that are very broad in scope. So when counting, I was mindful of the approach utilized by Plaintiff when answering

6

Defendants' contention interrogatories, i.e., Plaintiff was permitted to answer "blockbuster" interrogatories at a "high level" and was not required to break down its responses by facility.

> No. 13 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding overcrowding, and the secondary questions ask for facts and information regarding that contention.
>
> No. 14 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding understaffing, and the secondary questions ask for facts and information regarding that contention.
>
> No. 15 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding the adequacy of supervision, and the secondary questions ask for facts and information regarding that contention.
>
> No. 16 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding protection of prisoners from violence, and the secondary questions ask for facts and information regarding that contention.
>
> No. 17 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding protection of prisoners from sexual abuse, and the secondary questions ask for facts and information regarding that contention.
>
> No. 18 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding the introduction of contraband, and the secondary questions ask for facts and information regarding that contention.
>
> No. 19 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding protection of prisoners from excessive force, and the secondary questions ask for facts and information regarding that contention.
>
> No. 20 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding the adequacy of its investigations, and the secondary questions ask for facts and information regarding that contention.
>
> No. 21 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding the physical conditions of its facilities, and the secondary questions ask for facts and information regarding that contention.
>
> No. 22 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about overcrowding, and the secondary questions ask for facts and information regarding that contention.

No. 23 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about understaffing, and the secondary questions ask for facts and information regarding that contention.

No. 24 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about inadequacy of supervision, and the secondary questions ask for facts and information regarding that contention.

No. 25 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about prisoner-on-prisoner violence, and the secondary questions ask for facts and information regarding that contention.

No. 26 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about prisoner-on-prisoner sexual abuse, and the secondary questions ask for facts and information regarding that contention.

No. 27 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about introduction of contraband, and the secondary questions ask for facts and information regarding that contention.

No. 28 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about use of excessive force, and the secondary questions ask for facts and information regarding that contention.

No. 29 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about inadequacy of investigations, and the secondary questions ask for facts and information regarding that contention.

No. 30 - this interrogatory is found to be one interrogatory. The primary question is directed to ADOC's contention regarding deliberate indifference about unsafe and unsanitary conditions, and the secondary questions ask for facts and information regarding that contention.

In total, I determined that Plaintiff has asked 70 interrogatories, which is 20 more than the parties agreed to in the Rule 26(f) Report (but is far below the 562 number proffered by Defendants' counsel). As the courts have observed, counting interrogatories and their subparts is difficult. However, based on my analysis, Defendants already had responded to fifty-two (52) interrogatories before Plaintiff served its Third Set of (contention) Interrogatories on November 8, 2024. Defendants would say they had already responded to ninety-four (94) interrogatories in the

first two sets. Either way, Plaintiff exceeded the self-imposed interrogatory limit of 50 before it served the Third Set of Interrogatories. Thus, I concluded that Defendants' objection to the Third Set of Interrogatories based on exceeding the interrogatory limit was proper.

The timing of Plaintiff's Third Set of Interrogatories was also relevant to me. Plaintiff waited to serve these "blockbuster" contention interrogatories until nearly 4 years after the original complaint was filed (almost 3 years after the Second Amended Complaint was filed). Indeed, when the Third Set of Interrogatories was served on November 8, 2024, the fact discovery deadline technically had passed (it was May 28, 2024), although the parties were actively discussing an extension. However, it was not until this Court's Third Amended Scheduling Order was entered on November 25, 2024 (Doc. 217) that the current fact discovery deadline of January 31, 2025 was established.

For all the foregoing reasons, I determined that Defendants' objections and responses to the Third Set of Interrogatories were not deficient.[4]

Respectfully submitted on February 5, 2025.

                                                        */s/ R. Bruce Barze, Jr.*
                                                        Special Master

R. Bruce Barze, Jr.
BARZE TAYLOR NOLES LOWTHER LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

---

[4] To the extent it is not already apparent, this confirms I only reviewed these discovery requests for the purpose of counting the interrogatories; I did not review them for any other issues, including relevance, burdensomeness, overbreadth, etc.

## CERTIFICATE OF SERVICE

  I hereby certify that on the 5th day of February, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

                */s/ R. Bruce Barze, Jr.*
                Special Master