FILED
2026 Aug-28 PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# ALABAMA DEPARTMENT OF CORRECTIONS

# MALE CLASSIFICATION MANUAL

# TABLE OF CONTENTS


**CHAPTER 1**
**INTRODUCTION AND DEFINITIONS** 5

1.1 General 5
1.2 Authority 5
1.3 Objectives 5
1.4 Definitions 5
1.5 Confidentiality of Records 7

**CHAPTER 2**
**RESPONSIBILITIES** 8

2.1 Commissioner of Corrections 8
2.2 Associate Commissioner of Plans and Programs 8
2.3 Director of Classification 8
2.4 Assistant Director of Classification 8
2.5 Central Review Board (CRB) 9
2.6 Classification Review Board Analyst 9
2.7 Classification Supervisor 9
2.8 Classification Specialist 9
2.9 Warden/Designee 9
2.10 Psychologist/Psychological Associate 10
2.11 Classification Training 10

**CHAPTER 3**
**INITIAL CLASSIFICATION PROCEDURES** 11

3.1 Initial Intake Processing and Classification 11
3.2 Initial Intake Processing 11
3.3 Initial Intake Classification 12
3.4 Departure from Normal Intake 14

## CHAPTER 4
## INSTITUTIONAL CLASSIFICATION PROCEDURES 16


4.1 Prison Rape Elimination Act (PREA) 16
4.2 Institutional Review Schedule 16
4.3 Classification Review Schedule 16
4.4 Classification Review Procedures 18
4.5 Classification Review Requirements 18
4.6 Documentation of Results 21
4.7 Classification Decisions 21
4.8 Amendments to Approvals 22
4.9 Inmate Appeals 22
4.10 Inmate Transfers 23
4.11 Other Classification Responsibilities 25


## CHAPTER 5
## CUSTODY AND CRITERIA 28


5.1 Introduction 28
5.2 Close Custody Level 28
5.3 Medium Custody Level 30
5.4 Minimum Custody Level 32
5.5 Alabama Therapeutic Educational Facility (ATEF) 37
5.6 Community Corrections Program (CCP) 38


## CHAPTER 6
## SPECIAL MANAGEMENT 39


6.1 Death Row Inmates 39
6.2 Life Without Parole Inmates (LWOP) 41
6.3 Sex Offenders 43
6.4 Enemy Validation/Protective Custody 46
6.5 Special Education Services Inmates 48
6.6 Inmates Under Eighteen (18) 48
6.7 Interstate Compact Transfers 48

**APPENDIX I**
**ADOC FACILITIES** 51

**APPENDIX II**
**CLASSIFICATION REVIEW INSTRUCTIONS** 55

**ATTACHMENTS** 62

1. 12 Hour Advance Notification of Pending Reclassification
2. Offense Severity Scale
3. Report of Suspected Illegal Immigration Status
4. Classification Appeal Form
5. Daily Action Sheet (Form 400)
6. Initial Inmate Classification
7. Inmate Reclassification
8. Over-Ride Considerations
9. Institutional Scored Custody Levels
10. Disciplinary Severity Scale
11. Close Custody Reduction Form
12. Classification Action (N258)
13. SORNA Flow Chart

# CHAPTER 1

# INTRODUCTION AND DEFINITIONS

## 1.1 GENERAL

The Classification Manual is the official source document and authority for Alabama Department of Corrections (ADOC) classification procedures in keeping with ADOC Administrative Regulations (AR) and all other policies and directives that impact inmate classification.

## 1.2 AUTHORITY

The Classification Manual is published under the authority of the ADOC Commissioner.

## 1.3 OBJECTIVES

- To provide an objective classification system.
- To make security and custody assignments consistent with available resources to ensure that inmates are placed in the least restrictive setting while providing for the protection of the public, staff and inmates.
- To identify an inmate's treatment, programming, educational and vocational needs in order to make appropriate referrals.
- To use available risk and needs assessment data to prioritize evidence-based program placements.

## 1.4 DEFINITIONS

**Administrative Restrictive Housing:** Non-punitive single cell confinement of an inmate whose continued presence in general population poses a threat of life, property, security, or the orderly operation of an institution.

**Classification:** The method of assessing inmate risk and need in order to arrive at an appropriate assignment to an ADOC facility, housing unit and/or required programming.

**Central Review Board (CRB):** The board is comprised of Classification Review Board Analysts assigned to the Central Classification Division.

**Classification Review Board Analyst (CRBA):** Classification professional assigned to the Central Classification Division with primary responsibility for analysis and final determinations of recommendations submitted by institutional classification units to ensure policy compliance and provide guidance to institutional staff.

**<u>Classification Supervisor</u>:** Classification professional assigned to a correctional institution with primary responsibility being the implementation and coordination of the classification process to ensure policy compliance.

**<u>Classification Specialist</u>:** Classification professional assigned to a correctional institution with primary responsibility being to classify inmates in accordance with policy.

**<u>Dunks (Probation or Parole):</u>** Inmates ordered to the ADOC for no more than 45 days as intermediate sanctions to parole or probation violations on technical offenses. Offenders must be "dunked" three times prior to consideration for full revocation of parole or probation for technical violations.

**<u>Evidence-Based Practices (EBP):</u>** The utilization of assessments and interventions which rely upon validated research findings to improve offender outcomes, such as reduced recidivism. The results of validated risk/needs assessments guide decision-making for program assignment, coupled with case planning to target highest needs on a prioritized basis.

**<u>Institutional Restrictive Housing Review Board (IRHRB):</u>** A committee comprised of the Warden, Classification Supervisor, Chaplain, Psychologist/ Psychological Associate, or alternate(s) to review the status of inmates confined in restrictive housing.

**<u>Ohio Risk Needs Assessment System (ORAS):</u>** A validated risk and needs assessment system used to assess adult offenders at various decision points across the criminal justice system with the goal being reduction of recidivism through treating the identified risk factors of the offender. The ADOC, Alabama Board of Pardons and Parole, Community Corrections, and other components of the criminal justice system utilize ORAS to improve outcomes over the course of an inmate's contact with the criminal justice system.

**<u>Overrides</u>:** Changes to an inmate's actual scored custody level.

> **Mandatory Overrides:** The required override to an inmate's actual scored custody level based on classification policy.
>
> **Discretionary Overrides:** The override of an inmate's actual scored custody level when professional judgment indicates another custody level is most appropriate**.**

**<u>Protective Custody:</u>** Requested or required status of separating an inmate from the general population by non-punitive confinement in a cell, cell block, or dorm due to the potential threat to the inmate's safety that has been documented and justified, as provided in Administrative Regulation 435.

**<u>Reclassification</u>:** The process of reevaluating an inmate's custody and placement as often as circumstances warrant, but not less than twice per year.

**<u>Restricted Offender</u>**: Those offenders with certain violent offenses that will bar them from custody and placement less than Minimum-In.

**Risk Assessment:** An objective scoring instrument used in determining an inmate's custody level.

**Scored Custody Level:** A numeric rating assigned to an inmate based on the Initial Classification Risk Assessment or Reclassification Risk Assessment. The rating will translate into one of three (3) custody levels (Close, Medium, or Minimum) and into security levels that determine specific institutional placement.

**Security Level (SL):** The numerical rating assigned to the various institutions and placement options within the ADOC and to an inmate through classification procedures for the purpose of placement.

**Serious Physical Injury:** Defined in Alabama Criminal Code 13A-1-2 (14) (1975) as physical injury that creates a substantial risk of death, or that causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

## 1.5 CONFIDENTIATILITY OF RECORDS

All information contained in an inmate file should be treated as confidential. Information should only be shared with law enforcement entities and other agencies whose need is within the scope of official business. Dissemination of records for any non-business related use is strictly prohibited and is a violation of ADOC policy.

# CHAPTER 2

# RESPONSIBILITIES

**2.1** The **Commissioner of Corrections** is responsible for the direction and operation of the ADOC and has full override authority of any criteria in this manual that is not otherwise directed by law. This authority may be delegated to the Associate Commissioner of Plans and Programs.

**2.2** The **Associate Commissioner of Plans and Programs,** as delegated by the Commissioner of Corrections, performs the duties of the Commissioner**.**

**2.3** The **Director of Classification** is responsible for**:**

- Oversight of ADOC classification process and Central Classification.
- Implementing ADOC policies and procedures for the classification of inmates.
- Assuring that all approved classification policies, procedures and criteria comply with state law and existing court orders.
- Supervising the operation of the Central Classification Division to include selection of personnel.
- Evaluating institutional classification units through site visits and review of work produced.
- Performing special projects and other duties as directed by the Commissioner/Associate Commissioner of Plans and Programs.
- Providing assistance to institutional Wardens for interview/selection of Classification staff as requested.
- Providing classification related assistance to ADOC staff.

**2.4** The **Assistant Director of Classification** is responsible for:

- Performing as the Director in his/her absence.
- Performing special projects directed by the Director.
- Reviewing and recommending updates to the Classification Manual.
- Providing classification related assistance to ADOC staff.

**2.5** The **Central Review Board (CRB)** is responsible for:

- Analyzing the institutional classification recommendations for inmate custody level and placement decisions.
- Performing special projects directed by the Director/Assistant Director of Classification.

**2.6** The **Classification Review Board Analyst (CRBA)** is responsible for**:**

- Analyzing classification reviews submitted by institutional classification units to ensure policy compliance.
- Performing special projects directed by the Director/Assistant Director of Classification.
- Providing instructional guidance to ADOC personnel on classification policies and procedures.
- Conducting institutional audits to ensure that the classification process is operating in compliance with policies and procedures.
- Providing classification assistance to institutions on a temporary basis with day-to-day operations to ensure that the classification services are uninterrupted.

**2.7** The **Classification Supervisor** is responsible for:

- Ensuring that the institution's classification process operates in compliance with policies and procedures.
- Serving as the direct supervisor of the institutional classification unit.
- Providing orientation and training for new staff members as well as continuous training to assure that Classification Specialists are aware of all changes to policies, procedures or criteria.
- Adhering to the direction and guidance of the Central Review Board and Director/Assistant Director of Classification.

**2.8** The **Classification Specialist** is responsible for**:**

- Conducting inmate interviews and documenting relevant information.
- Managing caseloads in accordance with the Classification Manual.

- Addressing the classification questions and concerns of an inmate.
- Initiating classification reviews and recommendations.
- Meeting with inmates in person at least annually.

**2.9** The **Warden/designee** is responsible for:

- Administration and support of the classification function at the institutional level.
- Serving as a voting member on classification recommendations.
- Serving on the Institutional Restrictive Housing Review Board (IRHRB).

**2.10** The **Psychologist/Psychological Associate** is responsible for:

- Evaluating an inmate's intellectual functioning, educational level, substance abuse history, personality and psychological disorders, and mental stability.
- Serving as a voting member on classification recommendations in order to provide input regarding the inmate's current mental health status and programming needs.

**2.11** **Classification Training**

- Read and be familiar with ADOC Administrative Regulations (AR), especially those dealing with classification functions.
- Read and be familiar with the institutional Standard Operating Procedures (SOP) of the facility of assignment.
- Read and be familiar with the ADOC Classification Manual and all other pertinent classification memorandums and/or directives.
- Attend CRB conducted training sessions as scheduled.
- Attend ADOC advanced training as required.
- Classification Specialists, Supervisors, and Analysts are encouraged to attend professional workshops and training sessions in order to enhance their professional development.

# CHAPTER 3

# INITIAL CLASSIFICATION PROCEDURES

## 3.1 INITIAL INTAKE PROCESSING AND CLASSIFICATION

The processing, assessment and evaluation of an inmate on admission to ADOC resulting in appropriate custody, institutional placement, and the identification of treatment/program needs. Inmates will be received at Kilby Receiving & Classification Center (RCC), unless otherwise directed.

## 3.2 INITIAL INTAKE PROCESSING

### Identification

**Security Threat Group (STG) Identification -** An inmate believed to be affiliated with an STG will be identified and documented through the Inmate Management System (IMS).

**Identification of Illegal Immigrants -** Inmates born outside of the United States (including Puerto Rico) will be identified by Immigration and Customs Enforcement (ICE) representatives or by Classification Specialists. The Classification Specialist will complete the Report of Suspected Illegal Immigration Status form and forward to the Assistant Director of Classification/designee for processing. The form will be submitted to ICE for determination of immigration status. Detainers will be placed by ICE on those inmates determined to be in the United States illegally.

**Prison Rape Elimination Act (PREA) Screening -** In accordance with Administrative Regulation 454, Inmate Sexual Abuse and Harassment (Prison Rape Elimination Act (PREA), all incoming inmates will be screened for potential risk of sexual vulnerability or sexual aggression within seventy-two (72) hours of arrival. The Classification Specialist or authorized designee will complete the ADOC Classification PREA Risk Factors checklist (ADOC Form 454-C) by interviewing the inmate and using all available information regarding prior history. Those inmates who are deemed to be potential victims or potential predators will be referred to a mental health professional for further evaluation and final designation. Those identified as neither a potential victim or potential predator will require no further action.

### Orientation

The inmate will be provided basic information regarding ADOC rules and regulations, procedures, services and programs.

Those inmates identified by the Office of Health Services as requiring the specialized

orientation/life skills curriculum will be offered an orientation approved by the ADOC Legal Division which meets the requirements of the Americans with Disabilities Act (ADA).

**Physical Examination**

The inmate will receive a physical examination upon admission and will be assigned a Health Code (HC) in accordance with the Office of Health Services (OHS) procedures.

**Psychological Evaluation**

The inmate will be screened by mental health professionals and assigned a Mental Health Code (MH) in accordance with AR 613, Mental Health Coding and Tracking of Inmates.

The inmate will also be given a battery of psychological tests and be interviewed by ADOC personnel. The results will be used in classification recommendations and determinations.

## 3.3 INITIAL INTAKE CLASSIFICATION

**Classification Interview**

A Classification Specialist will conduct an interview to gather information required for classification decision-making.

**Review and Collection of Documents/Information**

The Classification Specialist will review relevant databases and all available documents pertinent to classification.

Examples include:

- Certified Court Transcript(s).
- Time Sheet/Inmate Summary.
- Psychological Evaluation or Update.
- Inmate Management System (IMS)/Electronic Filing System.
- Pre/Post Sentence Investigation (PSI).
- AlaCourt/AlaCop Search.
- ORAS assessment information when available.
- Other documentation/information from the County Jail(s), Judge(s), FBI report(s), etc.

The Classification Specialist will attempt to obtain other relevant information, as needed.

Examples include:

- When there is no PSI available, attempts are to be made to obtain details of violent offenses from the District Attorney(s), Sheriff/Police Report(s), etc. Documentation of the attempts and/or the source of the information should be included in the recommendation.

- Review of other computer resources, such as corrections websites from other states.

**<u>Documentation of Classification Results</u>**

- After the Classification Specialist has reviewed all available documentation, all accumulated data is entered into the classification module with recommendations for custody level, institutional placement, and treatment/program(s) participation.

- The recommendation is then viewed by the Psychological Associate and Warden for comments and/or recommendations.

- The recommendation is returned to the Classification Specialist for final review before submission to the CRB.

- Until electronic signature capability is available, the boarding sheet page of the Classification Summary will be printed from the module for required signatures.

- The signed boarding sheet will be scanned into the inmate record as a "suspense" copy and the original will be forwarded to the CRB for action.

- The signature of the inmate does not imply agreement with the recommendation and does not preclude subsequent appeal.

**<u>Documentation of Decisions</u>**

- The CRBA(s) will review the recommendations and will approve, deny, or amend the recommendation resulting in the approved custody level, institutional placement, and treatment/program(s).

- The CRBA(s) decision will be entered into the module and documented on the boarding sheet.

- The distribution of the boarding sheet is as follows:

  Inmate.
  Transfer Division.
  Inmate file.

## 3.4 DEPARTURE FROM NORMAL INTAKE

**Medical Holds**

The classification process may be delayed when an inmate has been identified as needing medical or psychiatric treatment. The classification process will resume once the inmate's status permits.

**Court Returns**

The classification process may be delayed when an inmate is summoned for court appearance prior to the completion of classification. The inmate will be tracked by classification personnel and will be scheduled for the continuation of the classification process upon return from the court appearance.

**Parole Violators**

The classification process will be delayed for a parole violator until the Parole Board has made a decision to revoke or reinstate.

> If the inmate is **reinstated**, no classification action is required and the inmate will be released per the instruction(s) of the Parole Board.
>
> If the inmate is **revoked**, classification personnel will proceed with the normal classification process.

**Special Education Services**

The classification process will be delayed for inmates twenty-one (21) years of age and under for completion of the Special Education Services' verification process. Upon completion of verification, Classification personnel will proceed with the normal classification process.

> If the inmate is **verified** as requiring Special Education Services, the appropriate facility will be recommended. See Chapter 6, Special Management, for further instructions.
>
> If the inmate **is not verified** as requiring Special Education Services, appropriate institution(s) will be recommended.

**Parole/Probation Dunks**

Parole or Probation Dunks being received at RCC will not require formal classification action. Central Classification will coordinate with the facility Classification Unit to ensure proper placement.

**The initial inmate classification process concludes with the transfer/assignment of the inmate to an approved institution.**

# CHAPTER 4

# INSTITUTIONAL CLASSIFICATION PROCEDURES

## 4.1 PRISON RAPE ELIMINATION ACT (PREA) SCREENING

In accordance with Administrative Regulation 454, Inmate Sexual Abuse and Harassment (Prison Rape Elimination Act (PREA)), all inmates will be screened for potential risk of sexual vulnerability or sexual aggression within seventy-two (72) hours of transfer. The Classification Specialist or authorized designee will complete the ADOC Classification PREA Risk Factors checklist (ADOC Form 454-C) by interviewing the inmate and using all available information regarding prior history. Those inmates who are deemed to be potential victims or potential predators will be referred to a mental health professional for further evaluation and final designation. Those identified as neither a potential victim or potential predator will require no further action. When there is no permanent classification personnel assigned to a facility, the PREA Risk Factors checklist will be completed by the Institutional PREA Compliance Manager (IPCM).

## 4.2 INITIAL INSTITUTIONAL REVIEW

Each newly transferred inmate will be assigned to a Classification Specialist. The Specialist will review the inmate's file and then conduct a meeting with the inmate within five (5) working days to discuss recommended program(s), expectations, and the schedule for future reviews. This meeting will be documented in the inmate file. The inmate will then be added to the Classification Specialist's caseload management system.

## 4.3 CLASSIFICATION REVIEW SCHEDULE

**Annual Review**

All inmates will have an annual progress review, with the exception of those serving a Death sentence.

At the Annual Review, the inmate's emergency contact information, religious preference and veteran's status shall be validated/updated. Due to the complexity of determining benefits for veterans, it is better to capture information concerning a "potential" veteran so that the inmate is identified as such, even if some of the self-reported information cannot be cited by the inmate. This will allow for more extensive discussion with outside entities who are involved with veteran benefit determination at the appropriate time during the inmate's incarceration.

**Semi-Annual Review**

An inmate will have a file review at least every six (6) months, with the exception of those serving LWOP or a Death sentence.

Where no change in custody level, institutional placement or program needs is indicated, the results of the review will be documented and the month of the next scheduled progress review will be indicated. A copy of the review will be given to the inmate and added to the inmate file.

If changes are deemed appropriate, a formal progress review will be scheduled.

**Special Classification Review**

A special progress review will be conducted when there has been a significant change in program needs or status. Reasons for granting a special review could include: completion of a program; disposition of a felony detainer previously limiting custody level and institutional placement; placement of a felony detainer that impacts custody eligibility; receipt of source documentation or information previously requested by the CRB; identification and verification of a known enemy; granting of a judicial appeal on a current conviction; reduction in sentence.

**Administrative Restrictive Housing/Protective Custody Review**

An inmate assigned to administrative restrictive housing /protective custody will be reviewed weekly by the Institutional Restrictive Housing Review Board (IRHRB). Results will be documented in the inmate file.

**Other Reviews for Reclassification**

When warranted, Reclassification reviews will be conducted as the result of negative behavior (including work release or work center failures), detainers or other security issues.

When an inmate is transferred from one institution to another institution as a result of negative institutional adjustment, the receiving institution shall complete a progress review. This progress review shall be completed as soon as possible but no later than thirty (30) days after the inmate has arrived at the receiving institution.

In the event that the reclassification review is completed outside of 30 days, an explanation for the delay should be attached to the review. The reviewing CRBA has the discretion to complete the reclassification as proposed or recommend another course of action in order to ensure appropriate custody placement.

The sending institution will furnish sufficient information in order to properly review the inmate for the appropriate custody level and institutional placement in a timely manner. In the event that the behavior warrants removal from a medium security population with the possible outcome resulting in the approval of Close custody, the boarding sheet should be captioned "PRIORITY – RESTRICTIVE HOUSING TRANSFER."

In any case where a disciplinary or rule violation has been voided or otherwise overturned as a result of a technicality or procedural requirements, but where the behavior indicates the need for a more restrictive placement or an increase in custody level, the inmate may be classified as

deemed appropriate based upon documentation of the specific act or behavior itself (See Administrative Regulation 403, Procedures for Inmate Rule Violations). This will not apply when disciplinaries are voided for an inability to prove that the specific act of behavior actually occurred (such as when the disciplinary for a drug positive is voided because of failure to follow proper chain of custody).

## 4.4 CLASSIFICATION REVIEW PROCEDURES

After the Classification Specialist initiates the classification recommendation, the Psychological Associate and the Warden/designee will provide their comments. The Chaplain, staff members, work supervisors and educational or treatment personnel may provide information for consideration.

The Classification Supervisor will review all submissions for policy compliance prior to submission to CRB.

The inmate must be informed of the recommendation and must sign the boarding sheet prior to submission to CRB, unless the inmate refuses or is unable to appear due to medical or mental health issues.

Classification recommendations should be made using professional discretion and judgment. All factors must be considered, including the safety of the community, potential for negative community reaction, overall criminal and institutional record, etc.

**Classification personnel should always recommend the lowest custody placement for which the inmate is eligible regardless of program needs.**

## 4.5 CLASSIFICATION REVIEW REQUIREMENTS

**Annual/No Change Review**

Notification **-** The inmate should be notified prior to the scheduled annual review.

Justification Information Required **-** At minimum**,** the review should briefly summarize the inmate's current incarceration information (crime, time to serve, etc.), should provide relevant information regarding the period being reviewed (positive or negative adjustment, program completions), and should include the results of the last review. The review must be specific as to

why no change in custody level is being recommended (not within time frame, recent disciplinary, etc.).

Veteran status, religious preference, and emergency contact information should be verified with the inmate and updated at each annual review. Due to the complexity of determining benefits for veterans, it is better to capture information concerning a potential veteran so that the inmate is

identified as such, even if some of the self-reported information cannot be cited by the inmate. This will allow for more extensive discussion with outside entities who are involved with veteran benefit determination at the appropriate time during the inmate's incarceration.

## Reviews for Increase in Custody Level

Written Notification - When a recommended classification action could result in an increase in custody, notification should be made using the Notification of Pending Reclassification. The reclassification review should be conducted after the required twelve (12) hour waiting period but prior to the close of seven working days (weekends and holidays are not included). The inmate may waive the twelve (12) hour waiting period by indicating such on the Notification of Pending Reclassification Form.

Specific Notification/Hearing Requirements - The notification must state the highest custody placement possible based on the nature of the event prompting the review, even if a lower custody level is being recommended.

For example, if the inmate's behavior meets the criteria for Close consideration but the Classification Specialist plans to recommend Medium, the notification form must state that Close custody is a possible outcome.

The notification must specifically address the reason for the reclassification. If the review is due to negative behavior, the notice should detail the specific behavior in addition to noting any subsequent disciplinary action(s) that were taken, if any. In other words, it is not acceptable to only refer to rule violation numbers or to just state that the inmate possessed contraband or that a security hazard was created. A detailed explanation describing the reason(s) must be included.

The inmate must sign the notification form. An inmate's refusal to sign should be notated on the form.

Justification Information Required - The recommendation need only address the specific reason(s) for the reclassification and should only include information relevant to the current review. The justification should detail the specific behavior in addition to noting any subsequent disciplinary action(s) that were taken, if any. A detailed explanation of the incident(s), including where the negative conduct occurred, must be stated.

Such information as sentencing information, criminal history, indication of detainers, program completions, etc. are not required for this type of review unless pertinent to the proposed increase.

When the highest custody placement possible is not recommended, the justification should provide a clear and concise explanation.

## Reviews for Reduction in Custody Level/Institutional Placement

### Close Custody to Medium Custody Recommendation

Notification - The inmate should be notified prior to the scheduled review.

Justification Information Required **-** The recommendation need only address the specific reason(s) for the proposed reduction in custody.

Such information as sentencing information, criminal history, indication of detainers, program completions, etc. are not required for this type review unless pertinent to the proposed decrease.

### Minimum Custody Level Recommendation

Notification - The inmate should be notified prior to the scheduled review.

Justification Information Required:

***Current Offense(s)*** A concise description of present offense(s). If a violent offense, it should include: the extent of the victim's injury, the type of weapon used, etc**.**

***Prior criminal history* -** A summary of the inmate's prior criminal history, to include juvenile*, federal and out-of-state, with specific emphasis given to any prior violent offenses and prior escapes of record. Details of prior violence and escapes should be provided as listed above for current offense(s). When details are unavailable, an effort should be made to obtain the information prior to submitting a recommendation. In the event details cannot be obtained, the review should include documentation of the efforts made to obtain the information.

> *****Juvenile records will be considered in the classification process. Adjudications of guilt in crimes committed as a juvenile are to be included in the custody scoring process.

***Escape(s)*** - Include the date of the escape, whether with or without force, when, where, and how the inmate was apprehended; and, if any other crimes were committed while on escape.

***Programs*** - Current or past program participation, completions or failures. Inmates do have the option to refuse to participate in programs, however, refusals of needed programs should be considered in the review process**.**

***Conduct* -** Relevant negative documentation on file including behavior citations, disciplinary actions, and incident reports not resulting in disciplinary action(s), including nature and dates, should be considered.

***Job Assignment* -** Provide information on current institutional utilization or job assignment(s).

***Prior Placement History* -** Provide information on prior successes or failures in less restrictive placement such as when, where, why, etc.

***Detainers* -** Provide information of the disposition of previously referenced detainers or any other unresolved cases. Checking relevant databases and/or calls to the entity holding the detainer shall be required.

***Community Supervision Violation(s)* -** Provide detailed information on parole, probation, community corrections, and drug court violations (i.e. technical violation or new offense; if a new offense, was the violation a misdemeanor or felony; whether or not the case is resolved).

***Medical/Mental Health* -** Provide the medical and mental health codes.

***Last Classification Action*** - Brief information as to the date of the last classification action and the approved custody level.

## 4.6 DOCUMENTATION OF RESULTS

Recommendations are recorded in the classification module. When the recommendation requires CRB approval, the boarding sheets will be forwarded for action. Reviews that complete at the facility level will be scanned into the inmate file. Those that involve a lateral institutional transfer should be marked accordingly and forwarded to TRANSFER DIVISION.

The inmate shall be given a copy of all completed reviews.

## 4.7 CLASSIFICATION DECISIONS

The following classification procedures will require CRB final determinations for changes in custody, whether increase or decrease.

- At least one (1) CRBA will review all cases referred for action.
- At least two (2) CRBAs will review cases where the CRB disagrees with the unanimous recommendation(s) regarding an inmate's custody change.
- At least two (2) CRBAs will review recommendations for minimum-community placement unless otherwise directed by the Commissioner or Associate Commissioner of Plans and Programs during special institutional reviews.
- Recommendations for Minimum-In custody (with institutional consensus) are final, unless criteria is not met.

- One (1) CRBA may approve an inmate's placement at a new custody level which is consistent with the risk assessment score.
- One (1) CRBA may reject the classification in the module, returning the review for correction or clarification. In this instance, the Classification Specialist should notify the CRBA once the correction has been made and the review has been resubmitted through the module.
- One (1) CRBA may recommend a new course of action.
- Two (2) CRBAs may finalize an amended course of action.
- If the CRBAs vote is split, a third CRBA action is required.
- The Director/Assistant Director of Classification may finalize or modify a classification action, recommendation or approval by the CRB. Requested waivers of criteria will be initiated through the Director/Assistant Director, unless otherwise specified.

All waivers must be approved by the Associate Commissioner of Plans and Programs.

## 4.8 AMENDMENTS TO APPROVALS

Whenever it becomes necessary to request an amendment or rescission of an approval (i.e. due to honored protests, disciplinary actions, placement of detainers, and change in health status), the following procedures are used:

For Minimum-Out and Minimum-Community approvals that are within ninety (90) days of the original approval and are awaiting transfer, the Classification Specialist should contact Central Classification by email. The email should include the specific reason for the rescission. Central Classification will rescind or amend the approval if needed and will make that notation in the Classification Module. No formal reclassification will be required in these instances. The Classification Specialist will ensure that the inmate file is properly documented, that the inmate is notified and that TRANSFER DIVISION is informed when appropriate.

For recommendations pending CRB review, the Classification Specialist will notify Central Classification by email as to the specific reason that the review should be rescinded.

## 4.9 INMATE APPEALS

An inmate may appeal denials of Minimum-Out and Minimum-Community to the Assistant Director of Classification. Decisions made by the CRB are appealable. Decisions made by the Commissioner/Deputy/Associate Commissioner(s) or the Director/Assistant Director of Classification are not subject to appeal.

The Classification Specialist will furnish the Classification Appeal Form to the inmate that has

been denied Minimum-Out or Minimum-Community. The inmate will submit the form through the Classification Specialist. The Classification Specialist will enter his/her comments and submit the form to the Assistant Director of Classification for consideration within five business days of the original denial.

If the appeal is **denied,** the Assistant Director of Classification will enter his/her comments, if any, in the appropriate place and then have the completed form scanned into the inmate file. The appeal form will be returned to the inmate through the Classification Specialist. A subsequent recommendation for custody level reduction may be made ninety (90) days after the date of appeal decision.

If the appeal is **granted**, the Assistant Director of Classification will enter his/her comments, if any, in the appropriate place and then have the completed form scanned into the inmate file. The appeal form will be returned to the inmate through the Classification Specialist. If the granted appeal involves an inmate transfer, a copy will be provided to TRANSFER DIVISION for scheduling of the movement.

## 4.10 INMATE TRANSFERS

**Transfer Division Transfers** - Routine institutional transfers are handled by the Transfer Division. When an inmate has not transferred within sixty (60) days, the Classification Specialist should follow up with the Transfer Division.

Some exceptions to routine transfers will apply. The following procedures will be followed for the transfer of an inmate in these cases:

**Medical** - A medically directed transfer that has a specific time for completion will be accomplished by the sending institution unless the Transfer Division is able to complete the move. The N 258, Classification Action form, will be completed and will document the reason for the transfer. The form will be scanned into the inmate file. If the medically directed transfer does not have a specific time for completion, the N 258 and medical documentation should indicate that the inmate transfer can be handled as a routine transfer and will be sent directly to the Transfer Division. CRB approval for medically directed inmate transfers is not required.

**Lateral -** An inmate may request a lateral transfer to an institution that is closer to home or for specific program participation. A lateral inmate transfer may be approved at the institutional level if the inmate has been at the facility for at least six (6) months and has a six (6) month disciplinary clear record. The boarding sheet should clearly indicate "LATERAL TRANSFER" and will be forwarded directly to the Transfer Division. CRB approval for lateral inmate transfers is not required. **However, it is the responsibility of the Classification Specialist to ensure that the lateral transfer is to an appropriate facility.**

If an inmate that has been approved for a lateral transfer receives disciplinary action prior to the actual movement, the transfer is to be rescinded and TRANSFER DIVISION is to be notified by email. The Classification Specialist should conduct a file review to determine if changes need to be made in the inmate's current classification.

An inmate that is assigned to Donaldson CF, St. Clair CF or Holman CF with an approved custody level no greater than Medium may be laterally transferred. An inmate serving LWOP must have a six (6) month disciplinary clear record to be eligible.

An inmate being laterally transferred must have a current progress review.

**Transfers for Treatment Programs -** Inmates should be transferred as needed to accommodate required programming. The Transfer Division should be notified by N258 when those inmates approved for less restrictive placement after completion of a program (SAP, Anger Management, etc.) have successfully completed the program**.**

**Removals from Minimum-Community/Minimum-Out Placement -** The CRB may direct inmates in these placements to be removed and transferred to a higher security institution for reclassification review due to negative behavior and other security related issues. Some reasons for this removal include:

- One (1) hard positive drug screen (anything other than marijuana or alcohol).
- Third infraction for being found with a social media account.
- Possession of marijuana will result in removal on the first offense if the amount exceeds 28 grams, is packaged for sale/distribution or if the possession is in conjunction with other/additional infractions (behavior that poses a risk to the inmate's health or to security, becoming belligerent, etc). The inmate should otherwise be removed on the second incident.
- Possession of a controlled substance, including synthetic controlled substances.
- Two (2) soft positive drug screens (marijuana and/or alcohol) within a one year (from date of Warden or designees' approval) time period.
- Two (2) infractions involving possession of a cell phone or any accessory associated with cell phones (SIM card, charger, etc.) within a one year (from the date of Warden or designees' approval) time period.

The receiving institution is to immediately place a hold on the inmate through IMAS indicating "Awaiting Reclass". This will ensure that the inmate is not transferred prior to the completion of the reclassification process. Once the reclassification is complete, the hold is to be removed.

Removals from Minimum-Out or Minimum-Community placement, requiring return to a security level four facility, do not automatically require an increase to Medium custody. Minimum-In should be recommended when appropriate**.**

**Inmate Requests to Relinquish Minimum Custody** – When inmates in Minimum-Community and Minimum-Out placement request to be removed from their approved custody placement, the inmate will submit such in writing. A request for transfer for reclassification will then be forwarded to Central Classification. If the Warden/designee considers the inmate to be a “flight risk”, action should be taken to investigate such risk and need for possible restrictive housing placement. Inmates may be reconsidered for return to Minimum custody six (6) months after reclassification**.**

**Emergency Transfer -** Institutional staff may accomplish an inmate transfer as a result of a major incident, such as, assaults, escapes, attempted suicide, etc. This action may be taken as an administrative measure in order to manage the security of the institution. An N 258 will accompany the inmate and must describe in detail the reason for the transfer.

## 4.11 OTHER CLASSIFICATION RESPONSIBILITIES

**Transfer Order Review -** The Classification Specialist will review inmate transfer orders daily to ensure that all transfers are appropriate. Specifically, the Classification Specialist will ensure that no disciplinary actions are pending against the inmate.

**Court Returns -** The Classification Specialist will interview the inmate within one (1) working day after the inmate has returned from a court appearance. The Classification Specialist will determine the purpose and the outcome of the court appearance and will document such. The Classification Specialist should follow up with AlaCourt and/or a phone call to the jurisdiction, which should also be documented.

**Weekly Out-Gate Checks -** Classification personnel will make weekly checks by phone for each inmate that has been out-gated from the facility for court. The results should be documented on the Form 400 and in the comments portion of IMS to include date and time of call, jurisdiction, person spoken to, and inmate status. If it is reported that the inmate has been released, classification personnel will immediately notify the Central Records Release Division and the Transfer Division by phone and email.

**Split Sentence Inmates (Act 754) -** Sentences are considered to be split when a judge orders confinement only for a set portion of the sentence allowable and suspends the remainder with the provision of a determined period of probation. An inmate serving a split sentence is not entitled to Correctional Incentive Time (CIT – good time) or parole consideration. Furthermore, the sentencing judge retains jurisdiction of the inmate throughout the entire sentence and can modify the sentence at their discretion. Split sentences are governed by the Code of Alabama 1975, as amended, § 15-18-8 (Act 754). In order to comply with the stipulations, court notification must be done as follows:

> ***Disciplinary Infractions*** - It is the policy of the ADOC to provide written notification to the sentencing court when an inmate who is serving a split sentence has been found guilty of a major or minor rule violation. This is to be done by the Classification Specialist in

accordance with Administrative Regulation 428, Notification to the Court-Split Sentence (Act 754).

***New Convictions* -** When an inmate serving a split sentence is convicted in court of an offense that occurred while incarcerated in an ADOC institution, the Classification Specialist will notify the sentencing court.

**Court Ordered Program -** When an inmate serving a split sentence has completed, refuses to participate, quits, or is removed for cause from any court ordered program, the Classification Specialist will notify the sentencing court.

**Consecutive Split Sentence** - When an inmate is paroled from a straight sentence but has split sentence time left to serve in ADOC, a "P" suffix will be added to the inmate's AIS by the Central Records Division. This suffix change will cause the inmate's custody to be removed from the classification module. If, after reviewing the inmate's record, it is determined that the current custody remains appropriate, the Classification Specialist will contact the Central Classification to reset the inmate's custody. However, if changes in custody are required or if the inmate may now be eligible for custody reduction, the Classification Specialist will complete a formal review through the classification module.

**Drug Treatment Priority Code Assignment -** Upon the arrival of an inmate at an institution, the Classification Specialist will determine if the inmate has been identified for participation in a drug treatment program. The Classification Specialist will enter the appropriate priority code into the automated drug treatment system. The priority codes are:

P1 Community Corrections Approved Post-Treatment.

P2 CRB approved Level I or II Post-Treatment.

P3 Split-Sentence Court Ordered.

P4 Pardon and Parole Board Directed.

P5 Imminent End of Sentence (EOS); within six (6) months: 8-Week SAP, Matrix Model SAP, Relapse, Co-Occurring Disorders). Within twelve (12) months: 6-M Month Crime Bill (CB), 6-Month Secular, 6-Month Relapse. Within eighteen (18) months: Therapeutic Community (TC).

P6 Non-Split Sentence Court Ordered.

P7 As per Psychological Assessment at Intake.

P8 Volunteer Sign up.

**Program Participation -** An inmate has the option to refuse to participate in recommended programs**.** However, the refusal to participate in recommended programs may result in more restrictive housing.

**Job Board/Assignment -** Classification Specialists, where available, will participate in inmate work assignments, job changes, selection of inmates for vocational/education/training programs, as designated by the Warden. When indicated by ORAS and programs are available to address the needs as indicated by the instrument, all effort should be made to assign the inmate to that program as priority. Inmate work assignments should be consistent with the abilities and needs of the inmate, needs of the institution, and must be consistent with the inmate's custody level. The Warden is responsible for all decisions made by the Job Board. Additional Job Assignment considerations are:

- Restricted inmates will not be assigned to work "off-property" job, unless under direct supervision of a Correctional Officer.

- An inmate approved for Minimum-Out or Minimum-Community for a Substance Abuse Program (SAP) is not to be assigned off-property jobs until the program has been successfully completed.

**Restoration of Good Time -** It is the ADOC policy to utilize "Good Time" as a management tool and to provide a process to restore "Good Time" lost as a result of disciplinary proceedings. If an inmate meets the established criteria, the Classification Specialist will initiate the process for restoration, in accordance with Administrative Regulation 425, Restoration of Good Time.

# CHAPTER 5

# CUSTODY AND CRITERIA

**5.1 INTRODUCTION -** The following criteria for custody assignments are guidelines to be utilized by classification personnel. Professional judgment and experience should be used in making recommendations and approvals. Simply meeting criteria for custody assignments does not imply a right to any custody placement.

**5.2 CLOSE CUSTODY LEVEL (Restrictive Housing) -** Close custody is the most restrictive custody level to which an inmate can be assigned and will require CRB approval.

**Housing -** Generally, a Close custody inmate is housed in a restrictive housing unit in a close security institution. If space is not available at a close security institution, the inmate may be housed in a restrictive housing unit at a medium security institution until space becomes available at a close security institution.

Inmates with a mental health code of MH-2-d and higher should not be housed in restrictive housing units outside of a Residential Treatment Unit (RTU) or a Stabilization Unit (SU).

**Criteria for Close Custody**

**LWOP**

Inmates sentenced to LWOP will be observed in Close custody for at least a thirty (30) day period. See also Chapter 6, Special Management.

**Inability to Adjust**

Continued demonstration of an inability to live within the regulations of an institution and requirements for population placement as indicated by more than six (6) major disciplinaries within a six (6) month period may be reason for placing the inmate in Close custody. Inmates may be considered for custody reduction after a ninety (90) day clear record.

**Assaultive Behavior**

- Three (3) disciplinaries for fighting within the last twelve (12) months may be reason for placement in Close custody for up to six (6) months.
- Assault without a weapon may be reason for placement in Close custody for up to six (6) months, with a minimum requirement of ninety (90) days prior to custody reduction.

- Institutional demonstration of violent behavior such as fighting with a weapon, fighting without a weapon resulting in serious injury, an assault with serious injury, or assault with a weapon, may be reason for confinement in Close custody for at least six (6) months.

- Repeated and/or frequent (three or more) disciplinaries and/or documented incidents of fighting with a weapon, fighting without a weapon resulting in serious injury, or assault with serious injury within a twelve (12) month period requires confinement in Close custody. Inmates that actively participate in a structured behavior modification program will be considered for reduction after eighteen (18) months in Close. Those that refuse to participate in programming will be required to remain in Close for twenty-four (24) months.

- Assaultive behavior resulting in death of a victim will require at least thirty (30) months in Close custody.

**Escapes**

- Two (2) or more escapes from a secure facility within thirty-six (36) months may be reason for placing the inmate in Close custody for eighteen (18) months.

- Escape with hostages or serious personal injury requires confinement in Close for at least twenty-four (24) months.

**Detainers for Capital Offense**

Inmates with a detainer for a capital offense will be held in Close custody until the resolution of the offense. Inmates with a detainer for an offense that is likely to result in LWOP will be required to be placed in medium custody in a close custody facility. Placement into Close custody under these circumstances is a matter of internal security and does not imply any presumption of guilt.

**Time in Restrictive Housing Prior to Close Custody -** Confinement in restrictive housing prior to reclassification will be credited toward the required Close custody placement time.

**Remaining in Close -** Justification for remaining in Close custody shall be documented by Semi-Annual and Annual Reviews.

**Reductions from Close to Medium - M**ay be recommended by the IRHRB upon completion of the minimum required time in Close custody and if the inmate has a

minimum ninety (90) day clear disciplinary record. The recommendation should be sent by email to the Assistant Director of Classification using the Close Custody Reduction Review Form (Appendix). This form will ensure that criteria for reduction is met and will provide a brief justification for the reduction. The Assistant Classification Director can reduce custody as requested or leave the inmate in Close custody. Recommendations for reductions can also be submitted for review by CRB using a Progress Review.

**Administrative Restrictive Housing -** Inmates having met the specific time requirements in Close custody may be reduced to Medium with placement in Administrative Restrictive Housing prior to release to population in accordance with Administrative Regulation 433. Release will be at the discretion of the IRHRB.

**5.3 MEDIUM CUSTODY LEVEL (General Population) -** Medium custody inmates are considered to be suitable for participation in formalized institutional treatment programs, work assignments or other activities within the confines of an institution and should be able to adapt to dormitory living or to double occupancy cells.

**Housing -** Medium custody inmates should be assigned to a medium or close security institution. Supervision by armed correctional personnel is required when outside of the institution.

**Criteria for Medium Custody**

**Time Frame**

EOS or parole consideration dates greater than seven (7) years, except for those non-violent offenders without prior convictions for violent crimes. Drug offenses are considered non-violent with the exception of trafficking.

**Escapes**

- **Without Physical Force -** Inmates with an escape (without physical force) conviction and/or ADOC documented disciplinary or incident report will require Medium custody for a period of twelve (12) months from the time of recapture. Escapes from CCP should only be considered if there is a conviction.

- **With Physical Force -** Inmates who escape with physical force (as documented by conviction and/or offense details) will require Medium custody. Those using minimal physical force (such as shoving) can be considered for less than Medium custody on a case by case basis twelve (12) months after recapture.

  Inmates with an escape involving hostages or victim injury will require Medium custody after the completion of the required twenty-four (24) month confinement in Close custody.

- **Multiple Escapes (Without Force) -** Inmates with three or more escape convictions and/or ADOC documented disciplinary or incident reports within the last twenty (20) years are barred from less than Medium custody. Escapes from CCP should only be considered if there is a conviction.

- **Violent Offenses on Escape -** Inmates who commit a violent crime while on escape (as documented by conviction and/or offense details) are eligible for no less than Medium custody. This applies to past or present offenses, including juvenile, but does not apply to those who are acquitted of the violent offense(s).

**Detainers**

- Those with felony detainers for violent offenses will require Medium custody.

- Those with non-violent felony cases pending in other jurisdictions will require Medium custody.

- Those with felony time to serve in other jurisdictions after Alabama release will require Medium custody.

**Sex Offenders**

- **Adult Sex Offenders -** Inmates convicted of adult sex offenses (past or present) are eligible for no less than Medium custody. This does not include those convicted of one Indecent Exposure or one Sexual Misconduct.

- **YOA/Juvenile Sex Offenders -** Inmates adjudicated or convicted of juvenile or YOA sex offenses that are still within ten (10) years of release from custody or discharge from supervision on the juvenile or YOA case will require Medium custody. In short, these inmates will be treated the same as adult sex offenders while the ten (10) year rule is in effect.

**Life Without Parole (LWOP)**

LWOP inmates who have been reduced from Close custody are eligible for no less than Medium custody (Security Level V). This also applies to those serving a life sentence and are barred by statute for parole consideration.

**Stability/Adjustment Factors**

Violators of RV 923 (Indecent Exposure/Exhibitionism/Lewd Conduct) within the past six (6) months will require Medium custody. A pattern of these infractions as evidenced by five or more infractions will result in Medium custody for a period of thirty-six (36) months from the date of the last infraction.

**5.4** **MINIMUM CUSTODY LEVEL (General Population) -** Minimum custody is the lowest custody designation. Minimum custody inmates may be at the levels of Minimum-In, Minimum-Out and Minimum-Community.

**General Criteria for Minimum Custody**

- Inmates being considered for Minimum custody must be ninety (90) days free of major disciplinary actions (excluding citations and those 300 level infractions issued as disciplinaries to inmates earning good time that would otherwise be issued as a citation), with the exception of those violators of Rule Violation 923 (Indecent Exposure/Exhibitionism/Lewd Conduct), which will require a six (6) month clear record for reduction to Minimum-In custody and a nine (9) month clear record for Minimum-Out custody.
- Placement must be consistent with the Mental Health Coding Map (OHS Mental Health Codes Reference Table, Administrative Regulation 613, MH Form 013).

**Time Frame Requirements**

- Inmates currently convicted of **non-violent offenses** with no prior violent felony convictions may be considered for all levels of Minimum custody. There is no time frame requirement.
- Inmates currently convicted of **property crimes or other non-violent crimes, but may have a prior conviction for any violent felony (excluding homicide and attempted murder) or a trafficking conviction** who is within five (5) years of EOS or parole consideration date may be considered for Minimum-In and Minimum-Out.
- Inmates convicted of a **current violent offense or trafficking (excluding a current homicide or attempted murder)** and are within four (4) years of EOS or parole consideration date can be considered for Minimum-In and Minimum-Out. Those with prior homicide or attempted murder convictions will also fall in this category.
- Inmates with **current homicide (including attempted murder)** convictions that are within three (3) years of EOS or parole consideration may be considered for Minimum-In and Minimum-Out. Inmates whose offense details indicate that a

murder in the commission of a robbery took place must be within twenty-four (24) months of earliest possible release for Minimum-Out consideration.

*Inmates convicted of Trafficking must remain "on-property" during the mandatory minimum portion of their sentence.

**Parole Denials with Reset out of Time Frame Requirements**

Inmates in Minimum-Community and Minimum-Out approved placements who are subsequently denied parole and reset outside the time frame requirements will remain in that custody and placement. If the inmate is deemed a security risk, request for reclassification may be submitted with justification by the Warden. The Associate Commissioner of Plans and Programs will make the final decision regarding custody and placement of the inmate.

Inmates in major facilities who are Minimum custody approved and are subsequently denied parole and reset outside of the time frame guidelines may remain in Minimum custody upon approval of the Warden. However, those that are approved Minimum-Community or Minimum-Out placement and are awaiting transfer to those placements will be reviewed for reclassification.

Inmates that have been approved to remain in Minimum custody placement are only eligible to remain in that placement at the facility of approval. These inmates should not be allowed to transfer to another facility through a lateral transfer until the original time frame requirement is met.

**Restrictions to Minimum Custody.**

There are a number of mandatory overrides or restrictions that apply to inmates who may be scored as Minimum custody based on the risk assessment which will not allow them to be assigned to certain Minimum custody designations.

**Restricted Offenders**

Certain violent offenders will be identified by the "R" suffix and will not be eligible for less than Minimum-In.

The following category of inmates will require the "R" suffix:

1 - Convictions for multiple homicides (past or present). This excludes traffic related homicides.

2 - Homicide conviction (past or present) that involves children (12 and under), the elderly (age 70 or older), or the physically disabled of any age. This does not include traffic related homicides.

3 - Aggravated Stalking and Kidnapping convictions (past or present).

*"Attempt to commit" any of the above will not result in the "R" suffix.

**Juvenile and YOA Sex Offenders**

"T" Suffix

Inmates that are identified as "Restricted" and who also have a juvenile sex offense or YOA sex offense will be given the "T" suffix, will be treated like adult sex offenders, and eligible for no less than Medium custody.
When it has been determined the ten (10) year time frame has been satisfied, request should be made to change to the "R" suffix and the inmate will then be eligible for no less than Minimum-In custody in accordance with all other criteria.

Indecent Exposure or Sexual Misconduct Convictions

Inmates identified as "Restricted" and convicted of Indecent Exposure or Sexual Misconduct will also be assigned the "T". However, there is no ten (10) year requirement and the inmate will be eligible for Minimum-In custody consideration in accordance with all other criteria.

**"U" Suffix**
Juvenile/YOA Sex Offenses

Inmates convicted of juvenile or YOA sex offenses will be given the "U" suffix, will be treated like adult sex offenders, and eligible for no less than Medium custody. Inmates convicted of Indecent Exposure and Sexual Misconduct will be eligible for all levels of Minimum custody in accordance with all other criteria

Indecent Exposure, Sexual Misconduct and Incest Involving Adult Convictions

Inmates convicted of Indecent Exposure, Sexual Misconduct or Incest Involving Adults will also be assigned the "U" suffix. However, there is no ten (10) year requirement and the inmate will be eligible for all levels of Minimum custody in accordance with all other criteria.

## Minimum-In Custody Level

Work assignments for Minimum-In inmates must be on-property at a minimum, medium or close security facility and may be supervised by non-security personnel with the express approval of the Warden/designee.

**Criteria for Minimum-In Custody -** Inmates considered for Minimum-In custody must meet the general requirements for Minimum custody above.

**Minimum-Out Custody Level**

Minimum-Out inmates can be assigned to off-property work details without the direct supervision of correctional officers. Minimum-Out inmates will generally be assigned to Community Work Centers (CWC), with higher security facilities only maintaining a small number for job assignments requiring minimal supervision.

**Criteria for Minimum-Out -** Inmates considered for Minimum-Out must meet the general requirements for Minimum custody above.

**Additional Considerations -** Inmates with current trafficking convictions may be considered for Minimum-Out custody; however, they may only be assigned to on-property jobs until the mandatory minimum portion of their sentence has been served.

**Interstate Corrections Compact (ICC) -** Inmates being considered for placement in Minimum-Out must have written approval of the sending state prior to placement.

**Minimum-Community Custody Level**

Inmates in this custody are allowed gainful employment in the community on a full-time basis and will be supervised in community based facilities when not working.

**Bars to Minimum-Community**

Inmates convicted of the following crimes, past or present, will never be eligible for Minimum Community placement:

- Inmates convicted of adult sex offenses or juvenile or YOA sex offenders.

- Inmates with an adult felony conviction of record for assault or attempted assault involving a police officer, corrections officer or corrections employee while the victim was serving in their official capacity.

- Inmates who commit and are convicted of a violent felony while serving their sentence in an ADOC community supervision program (SIR, PDL, SRP, work release).

- Homicide cases, past or present. Inmates convicted of any traffic related homicide (manslaughter, criminally negligent homicide, leaving the scene of an accident (with injury)) are not barred. However, if the nomenclature of the conviction is “murder”, they are ineligible. This includes Attempted Murder convictions.

- Three (3) or more separate felony convictions involving the use of a weapon or injury resulting from the use of a weapon within the past fifteen (15) years. (Note: Robbery of three people in the same offense would not fit this category.)

**Time Frame Requirements**

- Inmates currently convicted of **property crimes or other non-violent crimes, but may have a prior conviction for any violent felony** or a trafficking **conviction**, who is within four (4) years of EOS or parole consideration date may be considered for Minimum-Community.

- Inmates convicted of a **current violent offense or trafficking** (if the mandatory time has been met) may be considered for Minimum-Community custody when within three (3) years of EOS or parole consideration date.

- Inmates convicted of **violent offenses with serious victim injury** and whose crimes are not otherwise barred by any other provision of the criteria may be considered for Minimum-Community custody when within thirty (30) months of EOS or parole consideration date. These cases will be individually considered on a case-by-case basis and will require excellent sustained institutional records (more than six (6) months disciplinary free).

**Additional Criteria**

- Placement must be consistent with mental health and medical coding.

- Inmates must have a ninety (90) day record clear of major disciplinaries (excluding citations and those 300 level infractions issued as disciplinaries to inmates earning good time that would otherwise be issued as a citation), except in those cases of violations for Rule 923 (Indecent Exposure/ Exhibitionism/Lewd Conduct), which will require a twelve (12) month clear record for consideration.

- Inmates removed from Minimum-Community placement for inappropriate behavior may not be considered for return for a minimum of ninety (90) days. After two (2) such failures in the current incarceration, the inmate will not be eligible for Minimum-Community consideration again for twelve (12) months from the last failure.

  For this purpose, returns on probation or parole revocations will be considered a new or subsequent incarceration.

- Inmates must not have any felony detainers. In-state cases that have been previously adjudicated and are pending a revocation of probation can be considered.

- Inmates with an escape conviction and/or ADOC disciplinary or incident report may be considered for Minimum-Community twenty-four (24) months after apprehension.

- Inmates must not have committed a felony which led to a conviction while assigned to ADOC community supervision (work release, SRP) within the last two (2) years.

- Interstate Corrections Compact (ICC) inmates being considered for work release placement must have written approval of the sending state prior to placement.

- Inmates with identified treatment needs must successfully complete programming prior to assignment. Programs should be completed at community based facilities when available.

**District Attorney (DA) Notification/Protests**

The DA of each county of conviction will be notified when the inmate is approved for Minimum-Community placement. If the inmate is serving a split sentence, the sentencing judge will be notified. A return to such placement within twelve (12) months will not require a new DA notice unless the inmate is serving a split sentence.

Officials notified of Minimum-Community placement are given sixty (60) days from the date of the notice in which to register a protest. Protests will be reviewed and either honored or overruled by the Director/Assistant Director of Classification. When a protest is honored, the inmate's custody will be increased appropriately. Inmates may be reconsidered for Minimum-Community placement six (6) months after the protest.

**Under no circumstances will the inmate, inmate's family members, or other inmate representative be told the origin of the protest.**

## 5.5 ALABAMA THERAPEUTIC EDUCATIONAL FACILITY (ATEF)

ATEF is a partnership between the ADOC and Alabama Post-Secondary Education and is privately owned and operated. ATEF is designed to provide programming specific to the needs of the individual inmate based on assessment. Most inmates will complete all programming outlined in their case plan within six (6) months, depending on the needs of the individual inmate.

ATEF is a medium security facility. Certain inmates in the program are pre-approved for Minimum-Community placement after successful completion. ATEF may also house Minimum-Out, Minimum-In and Medium (SL IV) inmates. Utilization of available beds at ATEF will be based on agency need.

**Failures and Refusals**

ATEF program failures will be returned to a specified ADOC facility for reclassification. CRB will make final determination of appropriate housing for these inmates, including those who refuse to participate in the programming.

**Criteria for Consideration**

- For those inmates being recommended for Work Release after ATEF, criteria for Minimum Community placement must be met. Those inmates that are not

within the time frame criteria at the time of the recommendation, but **will be by the end of ATEF programming**, can be considered.

- Additional criteria for placement of Min-Out, Min-In and Medium (IV) inmates will be communicated by the Classification Director, after consultation with the Associate Commissioner of Plans and Programs

## 5.6 COMMUNITY CORRECTIONS PROGRAM (CCP)

CCP is designed to identify and divert offenders from ADOC either as a front-end diversion (sentenced to CCP as an alternative to prison) or as institutional diversions (transferred to CCP from prison through an amended transcript or judge's order). Offenders selected will be those who can be safely monitored in the local community under an appropriate level of supervision.

Policy can be found in Administrative Regulation 490, Community Corrections Program.

# CHAPTER 6

# SPECIAL MANAGEMENT

**Special Management** refers to unique procedures, policies and/or requirements that apply only to certain groups of inmates**.**

## 6.1 DEATH ROW INMATES

Inmates sentenced to death will be received and housed at Holman CF or Donaldson CF. Death row inmates will be assigned an AIS number with a "Z" prefix.

Classification decision-making for death row inmates will be limited to custody, proper assignment and recommendations for treatment programs that are consistent with security requirements.

The purpose of classification for death row inmates is to provide humane management while limiting and restricting activity to that which is necessary for the protection of the inmate, other inmates, staff and the public.

**Initial Classification**

Initial classification will normally be completed within forty-five (45) days after intake. Death row inmates are not required to have subsequent annual or semi-annual reviews.

A narrative social and criminal history summary will be prepared by the Classification Specialist and will include the following:

- Legal details of offense(s).
- Prior arrests and dispositions.
- Prior probation/parole record.
- History of violent behavior (in and out of prison).
- Disciplinary history from prior incarcerations.
- Escape history.
- Education, training, employment, military and marital history.

The Classification Specialist will enter all information into the classification module and will forward the boarding sheet and all other documentation to CRB for completion.

**Custody**

Death row inmates will be managed in Close custody.

The following status designations are for internal management purposes only.

**Z-1 Status**

Death row inmates will be Z-1 status until classification has been completed.

This is the most restrictive placement for death row inmates. Inmates in Z-1 will be isolated from other inmates during allowed regular exercise periods. They will be restrained during movement within the institution as prescribed by regulation and procedure.

An inmate may be returned to Z-1 custody if the inmate:

- Has received a major disciplinary within the last sixty (60) days.
- Receives a disciplinary for aggressive or assaultive behavior, including fighting with a weapon or possession of a weapon or escape device.
- Escapes or attempts to escape.
- Demonstrates negative attitude and poor institutional adjustment as indicated by any documented report.
- Is awaiting hearing for a serious violation of institution rules or regulations.
- Is awaiting investigation for any reason.
- Is awaiting trial for a new criminal offense.
- Requests Protective Custody or staff determines that Z-1 status is necessary for the inmate's own protection.
- The Captain will prepare a memorandum detailing the reason for placing the inmate in Z-1 or Protective Custody. Copies will be given to the Classification Supervisor and the inmate, provided this does not compromise institutional security.

**Z-2 Status**

This is the least restrictive placement for death row inmates. Inmates in Z-2 may be exercised in groups without restraint. Additional privileges may be afforded by the Warden.

An inmate may be reduced to Z-2 status from Z-1 after a minimum of ninety (90) days or when classification has been completed. Z-2 status may be obtained if:

- Inmate has no major disciplinary since intake.
- Inmate has no escape or other inappropriate behavior as reported from jail authorities or from other available sources.
- Inmate has no reports of violent or inappropriate institutional behavior.
- Inmate has received favorable reports from supervising officer.
- Inmate has demonstrated appropriate psychological adjustment and positive behavior.
- Inmate has the majority agreement by the IRHRB.

The Warden/designee may present relevant information on any case prior to the deliberation of the IRHRB. The Warden may appeal the decision of the board in writing to the Associate Commissioner of Operations. In such cases the inmate will remain in Z-1 status until the appeal has been resolved. In no case will resolution be delayed more than fourteen (14) days.

Any Warden recommended waiver of these criteria will require approval by the Associate Commissioner of Operations.

**Work Assignments and Programs**

Death row inmates may be assigned to such work assignments and/or programs as specified during the classification process in keeping with the inmate's medical limitations and security needs as specified by the Warden.

## 6.2 LIFE WITHOUT PAROLE INMATES (LWOP)

An inmate that has been sentenced to serve life without the possibility of parole (LWOP) will be assigned an "X" suffix to his AIS.

Inmates serving LWOP will be received and initially classified at RCC unless otherwise directed.

LWOP inmates will be housed in one of the following institutions, unless otherwise directed:

- Donaldson
- Holman
- St. Clair

**Initial Classification**

LWOP inmates will be housed in Close custody for a minimum of a thirty (30) day observation and adjustment period. All time served in restrictive housing prior to initial classification will be credited toward the observation period.

Note: Former death row inmates whose sentence has been reduced to LWOP will not be required to complete the observation period.

**Criteria for Medium Custody**

- No major disciplinary during the thirty (30) day observation period.
- Upon successful completion of the observation period, a request for reduction to Medium custody will be sent to Central Classification. After reduction in the module, a N258 will be completed and forwarded to TRANSFER DIVISION for transfer.
- If the inmate receives disciplinary action prior to the completion of the observation period, the inmate will remain in Close custody in accordance with the criteria for Close custody (see below). If the inmate demonstrates other adjustment problems or concerns, the observation period can be extended as deemed appropriate by the IRHRB. The inmate is to remain in Close custody until the resolution of any detainer and/or pending charge(s) that could result in a death sentence or an additional LWOP sentence(s).
- After reduction in custody to Medium, the LWOP inmate may be released to a population setting at one of the designated institutions.

**Reclassification**

LWOP inmates will be reviewed at least annually and will be reviewed for reclassification as behavior deems necessary.

**Criteria for Close Custody**

- Any major disciplinary which may disrupt the security of the institution (as determined by the Warden) within the last sixty (60) days may result in return to Close custody.
- Disciplinary for/or assaultive behavior without a weapon may result in return to Close custody for at least six (6) months.
- Possession of a weapon will result in a return to Close custody for six (6) months.

- Escape or attempt to escape, with injuries to law enforcement and/or the taking of any personnel as hostage(s) may result in permanent placement in Close custody. A minimum of five (5) years in Close custody is mandatory.

- An inmate who escapes or attempts to escape will return to Close custody for twenty-four (24) months.

- An inmate who conspires to escape, or possesses an escape device (as determined by the Warden), will return to Close custody for eighteen (18) months.

- A disciplinary for/or assaultive behavior with a weapon will result in placement in Close custody for at least twelve (12) months.

- A disciplinary for/or assaultive behavior or fighting with a weapon where there is serious injury to the victim will result in placement in Close custody for eighteen (18) months. After the time in Close is satisfied, a period of at least ninety (90) days in Administrative Restrictive Housing is required.

- Assaultive behavior resulting in the death of a victim will require at least thirty-six (36) months in Close custody.

**Work Assignments and Programs**

After reduction to Medium custody, a LWOP inmate may be assigned to work assignments or programs inside the perimeter fence consistent with security needs and as deemed appropriate by the Warden.

**Transfers**

Any movement of LWOP inmates outside the perimeter security of the institution will require the escort of armed Correctional Officers and will require restraints as required by regulation and procedure.

## 6.3 SEX OFFENDERS

**Sex Offender Statutes**

The identification and release requirements for sex offenders is governed by the Alabama Sex Offender Registration and Community Notification Act (SORNA) as established in Code of Alabama 15-20A, effective July 1, 2011. This act repealed the prior statutes found in 13A-11-200 (with the exception of 13A-11-204 applicable to Jefferson County only).

**Identification**

The current statute will be the reference in determining those offenses that will deem an inmate to be identified as a sex offender.

**Adult Sex Offenders**

Alabama's sex offender statute governs two areas, registration requirements and community notification. Adult sex offenders will be identified in one of two ways:

**Registration Only –** By statute, adults convicted of one Sexual Misconduct or one Indecent Exposure are the only adult sex offenders that will only be subject to a registration requirement, but will not be subject to community notification and living/ employment restrictions.

**Registration and Community Notification –** The statute expands the offenses that will deem an individual an adult sex offender, subject to both registration and community notification requirements. Refer to Code of Alabama 15-20A-5 for a complete listing of the included offenses.

Also, individuals convicted of a second Sexual Misconduct or a second Indecent Exposure (if the second conviction does not arise out of the same set of facts and circumstances as the first conviction) will be subject to the entire act, which will require them to register and be subject to community notification and living/employment restrictions.

**Juvenile Sex Offenders**

In reference to the identification of juvenile sex offenders, the statute only applies to those juvenile sex offenders adjudicated **on or after July 1, 2011**.

Those inmates with an adjudication for a sexual offense **prior to July 1, 2011** will be treated as they were prior to the passage of SORNA. These offenders will be "registration only" if there is no other history of sex offense convictions/adjudications. There are no living restrictions for these offenders, but they will be required to register for **ten (10) years after release from custody/supervision on the sexual offense**. A juvenile sex offender who is subsequently convicted of an adult sex offense within the ten (10) year period shall be considered solely as an adult criminal sex offender.

Those inmates with an adjudication for a sexual offense **on or after July 1, 2011** will be identified in two ways:

**Registration and Community Notification –** Those individuals with a juvenile adjudication for any of the following offenses, who was fourteen (14) or older at the time of the offense, will be subject to registration and notification for life:

Rape I, Sodomy I, Sexual Abuse I or Sexual Torture (including offenses in any other jurisdiction which, if had been committed in this state under the current provisions of law, would constitute any of the above and also includes any attempt or conspiracy to commit any of the above).

Essentially, these juvenile sex offenders will be treated as adult sex offenders with respect to this law.

**Registration Only –** Individuals with any other juvenile adjudication for a sex offense will be treated as "registration only" if there is no other history of sex offense convictions/adjudications. There are no living restrictions for these offenders, but they will be required to register for **ten (10) years after release from custody/supervision on the sexual offense**. A juvenile sex offender who is subsequently convicted of an adult sex offense within the ten (10) year period shall be considered solely as an adult criminal sex offender.

**<u>Youthful Offender (YO) Sex Offenders</u>**

In reference to the identification of YO sex offenders, statute only applies to those YOs convicted **on or after July 1, 2011.**

Those inmates with a YO conviction for a sexual offense **prior to July 1, 2011** will be treated as they were prior to the passage of the SORNA. These offenders will be "registration only" if there is no other history of sex offense convictions/adjudications. There are no living restrictions for these offenders, but they will be required to register for ten (10) years after release from custody/supervision on the sexual offense. A YO sex offender who is subsequently convicted of an adult sex offense within the ten (10) year period shall be considered solely as an adult criminal sex offender.

Those inmates with a YO conviction for a sexual offense **on or after July 1, 2011** will be identified in two ways.

**Treated as a Juvenile –** Those individuals with a YO conviction for a sex offense who have not been previously adjudicated/convicted of a sex offense or who **have not yet attained the age of eighteen (18) at the time of the sex offense** will be treated as a juvenile sex offender with respect to this law. (See description above).

**Treated as an Adult –** Those individuals with a YO conviction for a sex offense **who have attained the age of eighteen (18) at the time of the sex offense** will be treated as an adult sex offender with respect to this law. (See description above).

**<u>Suffix Assignment</u>**

The following suffixes will be used in the identification of sex offenders for classification and release purposes:

* (Refer to the SORNA Decision Flowchart for assistance)

The **"S"** is the suffix applied when the inmate is convicted of an offense as outlined in SORNA that requires registration and community notification with residence restrictions. It is important to remember that the inmates identified for the "S" suffix require convictions of the SORNA offenses.

The **"U"** is the suffix applied when the inmate is convicted/adjudicated of a juvenile or

YO sex offense that still falls within ten (10) years of the release from custody/supervision on the sex offense.

The **"U"** will also apply when inmates are convicted as adults of one Indecent Exposure or Sexual Misconduct. These are "registration only" offenses as the inmate is only required to register and will not be subject to community notification or living restrictions. However, there is no ten (10) year rule for these offenders (as with juvenile and YO offenders), they will be required to comply with the registration requirements for life.

The **"T"** is the suffix applied when the inmate is a restricted offender and also has either a juvenile or YO sex offense or has an adult conviction for an Indecent Exposure or Sexual Misconduct.

**Suffix Removal**

When it has been determined that an "S" suffix has been incorrectly placed, it will be the responsibility of the Classification Specialist to make the appropriate request to the Director of Central Records by way of the Director/Assistant Director of Classification.

**Sex Offender Release**

The release of sex offenders at time of EOS, probationary release, parole, parole reinstatement or any other type release from ADOC custody to the community will require compliance with the statutes, Administrative Regulation 455, Sex Offender Release Notification and any other applicable memorandums or directives.

## 6.4 ENEMY VALIDATION/PROTECTIVE CUSTODY

Enemy Validation is the process of investigating the validity of potential enemy situations using the Enemy Validation Committee.

Protective Custody (PC) is a requested or required status of separating an inmate from the general population by confinement in a cell, cell block or dorm due to the potential threat to the inmate's safety that has been documented and justified, as provided in Administrative Regulation 435, Protective Custody.

**Enemy Validation**

When an inmate claims to have an enemy/enemies, an Enemy Validation Committee will be appointed to investigate the circumstances in order to determine the validity of the claim.

The Enemy Validation Committee will be comprised of the:

- Warden/designee
- Classification Specialist/Supervisor, and an
- Additional Security Supervisor

Enemy validation may also be based on information received from District Attorneys, Judges, law enforcement agencies, etc.

**Valid Enemy Situation**

If the Enemy Validation Committee finds that the inmate's request or the circumstances are justified and there is a safety and well-being issue, the enemy will be validated and the investigating institution must immediately enter the data into the classification module.

If there is a valid enemy only at the current institution, the Classification Specialist/Supervisor must immediately begin the necessary procedure to transfer the inmate to an institution where no enemy exists. The transfer request should specify that population placement is acceptable at the receiving institution.

Wardens of the sending institution will make the appropriate coordination with the Warden of the receiving institution in such emergency cases. The Warden will also ensure that full written justification and proper documentation is forwarded to the receiving institution and that Transfer Division is notified as soon as possible.

**Non-Valid Enemy Situation**

If the Enemy Validation Committee finds that the enemy situation is not valid, the inmate will be returned to population and full documentation must be made of the findings.

**Protective Custody (PC)**

PC is the placement of an inmate in a confined area which removes them from exposure and direct contact with the general population of the institution for the purpose of protecting the inmate's safety and wellbeing.

The following inmates will require PC review on a case-by-case basis:

- Prior law enforcement or correctional employees.
- Relatives of law enforcement or correctional employees.
- Credible informants.
- Vulnerable inmates.
- High profile cases.

**Release from Protective Custody**

Inmates may be considered for release upon request. The inmate must provide written explanation as to why the enemy situation no longer exists.

The Enemy Validation Committee will investigate the request and determine if an enemy situation continues to exist.

The CRB shall review the recommendations of the Enemy Validation Committee and make the final decision as to the release of the inmate.

## 6.5 SPECIAL EDUCATION SERVICES INMATES

Inmates, age twenty-one (21) and below who have been identified by the State Department of Education staff as qualifying for Special Education Services, are required to be placed at a facility offering Special Education Services, which currently include:

- Draper CF.
- Staton CF.
- Donaldson CF.
- Frank Lee CBF.

Placement at these institutions will be based on approved custody level and must also be consistent with the security of the institutions and the medical and/or psychological needs of the inmate.

Whenever there is a conflict between Special Education Services placement and medical and/or psychological requirements, the medical and/or psychological needs will prevail.

## 6.6 INMATES UNDER EIGHTEEN (18)

Those inmates that have not yet reached the age of eighteen (18) will be housed at Draper (or other dedicated housing unit) until the time that they turn eighteen (18).

## 6.7 INTERSTATE CORRECTIONS COMPACT TRANSFERS (ICC)

Interstate Corrections Compact (ICC) is the agreement between two (2) states for the exchange of inmates. ADOC Administrative Regulation 22, Interstate Corrections Compact (ICC) establishes the responsibilities, policies and procedures for this process. The Director of the Central Records Division will serve as the ICC Administrator.

### Procedures for Sending Inmates

#### Institutional Procedures

The process will begin when the inmate has initiated a request for transfer in writing to his Classification Specialist or the Warden.

The Classification Specialist or Supervisor will review the request to determine eligibility according to the criteria in Administrative Regulation 22.

If the inmate is deemed eligible, the Classification Specialist or Supervisor will submit a recommendation to the Warden using a progress review.

Upon approval of the Warden, the following will be forwarded to the ICC Administrator:

- Cover letter indicating the inmate's request for ICC transfer.
- Current time sheet.
- Pre/Post Sentence Investigation (PSI).
- Latest progress review.
- Medical History Form (Annex A of Administrative Regulation 22).
- ICC Transfer Request Form (Annex B of Administrative Regulation 22).

**Central Office Procedures**

The ICC Administrator will document the application upon receipt and will then forward it to the Director of Classification.

The Director of Classification will review the application for the final approval/denial of the recommendation.

If denied, the application is returned to the ICC Administrator with the reason for denial. The inmate and Warden will be informed of the denial by the ICC Administrator.

If approved, the application will be forwarded to the Commissioner of Corrections for review.

The Commissioner of Corrections will review the recommendation for transfer approved by the Director of Classification.

If denied, the ICC Administrator will inform the inmate and Warden of the denial.

If approved, the ICC Administrator will begin the transfer procedure.

The ICC Administrator will provide all necessary documents to the receiving state for approval/denial.

Upon approval of the application by the receiving state, the ICC Administrator will direct the transfer process.

## **Procedures for Receiving Out-of-State Inmates**

### Application Procedures

The ICC Administrator will receive, document and ensure completeness of the transfer application package before forwarding it to the Director of Classification.

The Director of Classification will review the application for the final approval/denial of the recommendation.

> If denied, the application will be returned to the ICC Administrator with the reason for denial.
>
> If approved, the application will be forwarded to the Commissioner for review.

The Commissioner must give written approval prior to the acceptance of any inmate from another state.

### Inmate Receipt Procedures

Inmates received under ICC will be issued a new AIS number using the abbreviation for the sending state.

Inmates will be received at RCC unless otherwise directed.

The inmate will undergo routine processing and classification upon admission and will be reviewed every six (6) months by means of a progress review that is to be forwarded to the sending state.

Inmates confined under ICC will be afforded the opportunity to participate in educational, vocational and treatment programs.

Qualified inmates will be eligible for community based programs with the approval of the sending state. Program participation must not be contrary to the laws of the sending state.

# APPENDIX I

# ADOC FACILITIES

The institutional security designations are consistent with the inmate custody level designations. However, it should be noted that lower custody levels can be assigned to close and medium security institutions based on the program, medical and institutional operational needs.

## CLOSE SECURITY

**Holman Correctional Facility (HCF) – Close Security**
This is the major institution for inmates sentenced to death row and is one of the major institutions housing inmates serving LWOP. Holman can house inmates in Close, Medium and Minimum custody including Administrative Restrictive Housing. Holman operates the execution chamber.

**Kilby Receiving & Classification Center (RCC) – Close Security**
This unit serves as the receiving and initial classification facility for inmates entering ADOC as well as parole violators being returned to custody. RCC can house inmates in all custody levels and is also used for inmates in transit between facilities and/or for certain court appearances. RCC contains a hospital unit and is the designated facility for active or suspected cases of tuberculosis (TB). RCC can house inmates in Administrative Restrictive Housing.

**St. Clair Correctional Facility (SCCF) – Close Security**
This is one of the major institutions for inmates with severe management problems, those with multiple violent offenses whose behavior poses a serious threat to safety and security, and those serving LWOP. St. Clair can house Close, Medium and Minimum custody inmates including Administrative Restrictive Housing. St. Clair is the designated facility for inmates with chronic kidney disease and those requiring dialysis.

**Donaldson Correctional Facility (WDCF) – Close Security**
This is one of the major institutions for inmates with severe management problems, those with multiple violent offenses whose behavior poses a serious threat to safety and security and those serving LWOP. Donaldson can house Close, Medium and Minimum custody inmates including Administrative Restrictive Housing, and a small number of death row. Donaldson provides a Residential Treatment Unit (RTU) consisting of closed, semi-closed, and open settings. Donaldson is also the Special Education Services facility for inmates requiring a close security setting.

**MEDIUM SECURITY**

**Bibb County Correctional Facility (BCCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Bibb can house Medium and Minimum custody inmates including those awaiting transfer to close security institutions.

**Bullock Correctional Facility (BCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Bullock can house Medium and Minimum custody inmates including Administrative Restrictive Housing and those awaiting transfer to close security institutions.

Bullock contains a Residential Treatment Unit (RTU) for inmates in up to Medium custody and an Intensive Stabilization Unit (ISU) for inmates in up to Close custody. Once inmates have been discharged, they may be returned to their institution of origin.

**Draper Correctional Facility (DCF) – Medium Security**
This institution is primarily for first time offenders requiring Medium custody. Draper can house Medium and Minimum custody inmates including Administrative Restrictive Housing and those awaiting transfer to close security institutions. Draper is also a Special Education Services designated facility.

**Easterling Correctional Facility (ECF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Easterling can house Medium and Minimum custody inmates including Administrative Restrictive Housing and those awaiting transfer to close security institutions. This is a tobacco-free institution.

**Elmore Correctional Facility (ELMCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Elmore can house Medium and Minimum custody inmates.

**Fountain Correctional Facility (FCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Fountain can house Medium and Minimum custody inmates including Administrative Restrictive Housing and those awaiting transfer to close security institutions.

**Hamilton Aged and Infirmed Facility (HAIF) – Medium Security**
This institution is for inmates with medical needs that can only be met at HAIF as identified by medical personnel. HAIF can house Medium and Minimum custody inmates and may house LWOP inmates on a medical/security determined case-by-case basis. Inmates assigned to HAIF for staff purposes (non-medical) should be over thirty-five (35) years of age. All transfer requests should indicate if the inmate is for top or bottom bunk placement and if infirmary placement is required.

**Kilby Correctional Facility (KCF) – Medium Security**
This institution is also known as Permanent Party and is for inmates who serve as support for RCC. Kilby can house inmates in Medium and Minimum custody.

**Limestone Correctional Facility (LCF) – Medium/Close Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Limestone can house Medium and Minimum custody inmates including administrative segregation, protective custody and inmates awaiting transfer to close custody institutions. Limestone can manage Close custody inmates within the PC Unit.

**Staton Correctional Facility (SCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Staton can house Medium and Minimum custody inmates and is a designated Special Education Services facility.

**Ventress Correctional Facility (VCF) – Medium Security**
This institution is for inmates who have shown an ability to adjust to an institutional environment. Ventress can house Medium and Minimum custody inmates and those awaiting transfer to close security institutions.

## MINIMUM-OUT/MINIMUM-COMMUNITY SECURITY

**Alexander City Community Based Facility (ACCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification services are provided by the Central Classification Division on a rotating schedule.

**Camden Community Based Facility (CCWC)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification services are provided by the Central Classification Division on a rotating schedule.

**Childersburg Community Based Facility (CCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification personnel is assigned.

**Decatur Community Based Facility (DCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification personnel is assigned.

**Elba Community Based Facility (ECBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification services are provided by the Central Classification Division on a rotating schedule.

**Frank Lee Community Based Facility (FLCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Frank Lee is a designated Special Education Services facility. Classification personnel is assigned.

**Hamilton Community Based Facility (HCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification services are provided by HAIF.

**J. O. Davis Correctional Facility (JODCF)**
This facility is a community work center for Minimum-Out inmates. Classification personnel is assigned.

**Loxley Community Based Facility (LCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification personnel is assigned.

**Mobile Community Based Facility (MCBF)**
This facility contains a work release center and a community work center for Minimum-Community and Minimum-Out inmates. Classification services are provided by Loxley Community Based Facility.

**Red Eagle Work Center (REHF)**
This facility is a community work center for Minimum-Out inmates. Classification personnel is assigned.

# APPENDIX II

# CLASSIFICATION REVIEW INSTRUCTIONS

## I INITIAL CLASSIFICATION REVIEW/RISK ASSESSMENT

The initial summary is accessed through the classification module.

Using information obtained from a review of available documents including the inmate summary, FBI reports, PSIs and the results of the inmate interview, the initial inmate classification summary and risk assessment will be completed by the Classification Specialist.

As much information as can be obtained regarding family contacts should be entered into the Inmate Contacts portion of the module.

### A. Interview Step

**Demographics**
Certain information will be provided by the classification module and should be verified to ensure accuracy. Country and state of birth, primary occupation, highest grade level completed, driver's license number (if known), marital status, military affiliation, religious preference and emergency contact information should be obtained and entered.

**Special Needs**
The mental health (MH) and health care (HC) codes will be provided. Pertinent psychological, medical and other special need information should be included. Any recommended treatment programs should also be indicated.

**Crime Details**
All current convictions will appear. Using the drop downs and text boxes provided, briefly and clearly add the details of all current convictions with emphasis being given to details relevant to classification decisions.

State whether the PSI or other source documents are available. If these are available, specific details of the offenses should still be included. It is not acceptable to state "See PSI". If a PSI or other source documents are unavailable and details of the crime are supplied by the inmate, choose "self-report" in the drop down box.

**Detainer Warrants**
Existing detainers on record will be provided. A thorough review of AlaCourt should be conducted. Detainers found through AlaCourt, the review of documents and information provided by the inmate should also be documented. Specific information should be provided including charge, case number and jurisdiction. When including information received by telephone or email contact with other agencies, always include the date, phone number, and name and position of the person from whom the information was received. For example:

6-1-05 , Jan, secretary at U.S. Marshall's Office, advised inmate has consecutive federal sentence for which detainer has not been received.

Per AlaCourt DC2010-000002/Theft of Property I in Jefferson County is unresolved.

Inmate indicates a Felony DUI is pending in Baldwin County. Unable to verify through AlaCourt or phone call to the Circuit Clerk's Office.

**Disciplinaries**

Disciplinaries for the current and all prior incarcerations will be provided. Any known information regarding disciplinary actions in the county jail should also be documented in the comment section provided.

**Escapes**

Alabama escapes will be provided. In the comment space provided, give details of other escapes such as juvenile, out-of-state, federal, city and county jail, and any other escape type behavior. This should always include the date of escape, location escaped from, manner of escape to include whether with or without force, manner of recapture and date and location of apprehension. For example:

- Multiple juvenile elopements from custody, last one March 2002.
- Last escape 1981, Florida State Prison, force used against Correctional Officer to leave from back gate. Recaptured in 1982 in Alabama during a routine traffic stop.
- Escaped county work release detail by walking off of job. Recaptured without incident the same day by the Sheriff's Department at subject's mother's home.

**Paroles & Probations**

Dates of prior probation and parole failures may be provided. Any additional information obtained regarding prior probation and/or parole supervisions and failures should also be included. The reason for the violations should also be obtained and provided. For example:

Paroled 8/1/05, revoked 10/1/05 due to technical violations, i.e., leaving the state without permission; failure to report and failure to maintain employment.

Probation revoked 12/08 due to testing positive for cocaine and being arrested for a new charge, Possession of Controlled Substance in Morgan County, case still pending, see Detainer Section.

**Prior Convictions**

Prior Alabama convictions will be provided. Other priors found through AlaCourt, PSIs and other document review and information provided by the inmate should be documented in the comment section provided. This should include juvenile adjudications and convictions outside of Alabama. Include all information that would impact the classification decision. It is essential to submit all details regarding sex offenses, to include disposition, dates, etc. For example:

- Prior Georgia and Florida sentences served for assaults with serious victim injury, last release from Georgia in 2000.
- Multiple juvenile arrests, non-violent property offenses.
- Multiple alcohol related misdemeanors, see PSI.
- 1992 Juvenile Sexual Abuse I adjudication, DYS placement with release from probation in 1994.

**Enemy Identification**
Even though not a tab within the interview portion of the classification module, an inmate should be asked if they have any known enemies within ADOC. Previously validated enemies will appear on the Enemy List found in the list of drop downs. Enemies identified and validated during the interview should be entered into the Enemy portion of the module and should also be indicated on the boarding sheet.

## B. Risk Assessment Step

The sources of information used to complete the Risk Assessment may include, but are not limited to, the PSI or other source documentation, AlaCourt, the inmate summary, information from other agencies and information gathered through the inmate interview.

The module will automatically score items based on database information and input into the module. When reviewing the information automatically populated in the module, make any and all necessary changes in order to accurately reflect the true risk of the inmate.

Nothing in the objective measurement of custody level either initial or reclassification should be interpreted to eliminate the need for professional judgment by classification personnel. Classification personnel are expected and required to act within the boundaries of acceptable custody level placement criteria while using their professional judgment.

For the purposes of this instrument the following are accepted definitions of serious injury and weapon:

**Serious Injury -** "Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

**Weapon -** "Anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury..."

**Instructions**

The following define or clarify the scoring areas of the risk assessment: (Attachment 6)

**History of Institutional Violence**
Refers to behavior during incarceration only, either past or present (including county or city jail). Code the most serious infraction in the past five (5) years. If there are no incidents of institutional violence in the past five (5) years, code "O".

Consider the individual's entire background of incarcerations for five (5) years prior to the current admission date.

Assault is defined as any act toward another person (inmate, correctional officer, staff member, or any other individual) in which bodily contact occurred and injury was attempted, or any act so defined by state statute.

**Severity of Current Offense**
This section refers only to the official crime of conviction. Score the most severe offense of all of the offenses for which the inmate was sentenced if there are multiple convictions using the Criminal Offense Severity Scale (Attachment 2).

**Prior Assaultive Offense History**
This item is scored reflecting the severity of prior convictions for assaultive offenses. An assaultive crime is any offense so defined by state statute. These include, but are not limited to, assault, robbery, murder, rape, and sexual molestation. The scoring for violent juvenile adjudications will be scored the same as adult convictions.

**Escape History**
Rate the last five (5) years of incarceration. Enter the appropriate number of points to reflect the most severe incident in the individual's history. Escapes from institutions are also scored if the inmate was found guilty of the escape (or attempted escape) by an Institutional Disciplinary Committee. Exclude absconding, failure to report, and bail jumping, but document on the progress review.

**Prior Felony Convictions**
Enter the appropriate number of points to reflect the inmate's prior felony conviction history.

Where the inmate is serving time on a current conviction(s) and commits a subsequent crime either while incarcerated, on parole, or in community placement, the subsequent crime becomes the current conviction and the offense on which the inmate was serving time at the time of the new conviction is scored as prior convictions. For example:

Inmate serving two Burglary II sentences is convicted of Robbery I while on parole for those convictions. Robbery I becomes the current conviction and the Burglary II's are scored as priors.

**Current Age**
Score the inmate's current age based on the scale provided.

**Other Risk Factors**
Score one (1) point if the inmate has a documented mental health issue and one (1) point if the inmate has a history of alcohol/substance abuse.

### C. Security and Custody Step

The system recommended score will appear based on the scoring of the risk assessment. If another security level is being recommended, the over-ride box should be checked and the appropriate over-ride reason should be selected from the list provided. If any security restrictions apply, they should be selected from the drop down. The comment portion should indicate why the recommended security and custody are appropriate. Before saving, make sure the appropriate custody level is selected.

### D. Institution Recommendations

Only institutions appropriate for the recommendation should be selected. The information provided in the comment section will load automatically to the boarding sheet. This section should include additional specific information to support placement and custody recommendations. Comments here should include the basic sentence information and brief crime details, probation and parole failures, brief summary of priors, medical and mental health information, treatment needs, medical and psychological information, prior institutional adjustment and any other pertinent information.

### E. Distribution

The boarding sheet should be printed, the inmate allowed to sign and then forwarded to CRB. A suspense copy should be scanned into the inmate's file.

## II RECLASSIFICATION REVIEW/RISK ASSESSMENT

The reclassification summary is accessed through the classification module.

As much information as can be obtained regarding family contacts should be entered into the Inmate Contacts portion of the module.

### A. Interview Step

Each step will contain the information entered at the last review. However, each tab should be reviewed to assure that the information contained is up to date, accurate and complete. Do not bypass the previously entered data before the new recommendation is made.

## B. Risk Assessment Step

The sources of information used to complete the risk assessment may include, but are not limited to, the PSI or other source documentation, AlaCourt, the Inmate Summary, information from other agencies and information gathered through the inmate interview.

The module will automatically provide for items based on database information and input into the module. When reviewing the information automatically populated in the module, make any and all necessary changes in order to accurately reflect the true risk of the inmate.

Nothing in the objective measurement of custody level either initial or reclassification should be interpreted to eliminate the need for professional judgment by classification personnel. Classification Personnel are expected and required to act within the boundaries of acceptable custody level placement criteria while using their professional judgment.

For the purposes of this instrument the following are accepted definitions of serious injury and weapon:

**Serious Injury -** "Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

**Weapon -** "Anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury..."

### Instructions

The following define or clarify the scoring areas of the risk assessment: (Attachment 7).

**1-5** will be based on the initial classification record and should be reviewed for accuracy. If new information has been received that alters the validity of these scored items; indicate by correcting the values and give full documentation of the reason for the amendment.

**Number of Disciplinary Reports**
Score appropriately based on the number of disciplinary infractions.

**Most Severe Disciplinary Report Received**
Enter the score indicated for the most severe disciplinary report received in the last eighteen (18) months using the Disciplinary Severity Scale (Attachment 10). Where multiple disciplinaries have been received for offenses in the "Highest Severity", the last twenty-four (24) months should be evaluated. Behavior citations are given the full weight of the major disciplinary.

**Program/Work Assignment**
This item is equivalent to the stability factors on the Initial Inmate Classification. Only a total two (2) point deduction is allowed.

**Treatment Programs**
Deductions are granted for documented successful completion of Anger Management, Co-Occuring Disorders, Relapse Prevention Treatment, 8-Week SAP, Matrix Model SAP and 6-Month Crime Bill. Inmates in the Therapeutic Community Program may be given credit for a minimum of 12 months documented successful participation.

**Notes:** Relapse after completion of a drug treatment program negates the deduction (but can be given again after completion of Relapse Prevention Treatment or SAP).

Any aggressive/acting out behavior and any major disciplinary voids the deduction for Anger Management graduates.

**Educational Programs**
Two (2) point deductions will apply for those with a certificate of GED completion, those with documented completion of vocational treatment and those inmates in special education programs who, in the documented opinion of the instructor, cannot be expected to achieve a GED certificate but have achieved an increase in reading grade level of three (3) grades as measured by standardized pre and post tests.

## C. Security and Custody Step

The system recommended score will appear based on the scoring of the risk assessment. If another security level is being recommended, the override box should be checked and the appropriate override reason should be selected from the list provided. If any security restrictions apply, they should be selected from the drop down. The comment portion should indicate why the recommended security and custody are appropriate. Before saving, make sure the appropriate custody is selected.

## D. Institution Recommendations

Only facilities appropriate for the recommendation should be selected. The information provided in the comment section will load automatically to the boarding sheet. This section should include additional specific information to support placement and custody recommendations. Comments here should include the basic sentence information and brief crime details, probation and parole failures, brief summary of priors, medical and mental health information, program completions, institutional adjustment and any other pertinent information.

## E. Distribution

The boarding sheet should be printed, the inmate allowed to sign and then forwarded to CRB. A suspense copy should be scanned into the inmate file.

# ATTACHMENTS

Attachment 1

# 12 HOUR ADVANCE NOTIFICATION OF PENDING RECLASSIFICATION

TO:______________________________________ ____________________ ________________

NAME AIS # R/S DATE

Notice of Reclassification: This is to inform you that on the day of________________, 20 _____, you will meet a reclassification team to be considered for change in custody and/or institutional assignment because:

______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

This is not a disciplinary hearing. A reclassification team will review this matter and recommend changes, if needed, in your current placement and/or custody. At the reclassification meeting you will be given an opportunity to be heard, to present witnesses and to present documentary evidence.

________________________________ ________________ ________________________________

NAME OF SERVING OFFICER DATE WITNESS

I understand that this is my notice of a reclassification meeting to determine changes in placement and/or custody. I have been given the opportunity to call witnesses in my behalf and have received a copy of this notice on ______________________________ at ____________________________________.

DATE TIME

____________________________________________________

SIGNATURE OF INMATE AIS #

WITNESSES REQUESTED BY INMATE:

__________________________________________________ __________________ NONE

__________________________________________________

DISTRIBUTION: INMATE/ FILE

## OFFENSE SEVERITY "0" – LOW RISK

| Offense Description: | Code: |
|---|---|
| Alteration or possession, etc., of firearm after identification altered | 13A-11-64 |
| Bail jumping II | 13A-10-40 |
| Bribery of public servants | 13A-10-61 |
| Bringing into state property obtained by false pretense elsewhere | 13A-8-21 |
| Bringing stolen property into this state | 13A-8-20 |
| Carrying concealed weapons | 13A-11-50 |
| Charitable fraud III | 13A-9-75 |
| Conspiracy to promote gambling | 13A-12-23 |
| Criminal eavesdropping | 13A-11-31 |
| Criminal impersonation | 13A-9-18 |
| Criminal littering | 13A-7-29 |
| Criminal mischief I | 13A-7-21 |
| Criminal mischief II | 13A-7-22 |
| Criminal mischief III | 13A-7-23 |
| Criminal possession of forged instrument I | 13A-9-5 |
| Criminal possession of forged instrument II | 13A-9-6 |
| Criminal possession of forged instrument III | 13A-9-7 |
| Criminal possession of forgery device | 13A-9-9 |
| Criminal possession of noxious substance | 13A-7-28 |
| Criminal simulation | 13A-9-10 |
| Criminal surveillance | 13A-11-32 |
| Criminal tampering I | 13A-7-25 |
| Criminal tampering II | 13A-7-26 |
| Criminal trespass I | 13A-7-2 |
| Criminal trespass II | 13A.7-3 |
| Criminal trespass III | 13A-7-4 |
| Criminal use of noxious substance | 13A-7-27 |
| Disorderly conduct | 13A-11-7 |
| Elements of offense of theft by fraudulent leasing or rental greater than $100(<500 Cls A Mis:>500 Cls C Fel) | 13A-8-140 |
| False reporting to law enforcement authorities | 13A-10-9 |
| Falsely reporting an incident | 13A-11-11 |
| Forgery I | 13A-9-2 |
| Forgery II | 13A-9-3 |
| Forgery III | 13A-9-4 |
| Giving of false name or address to a law enforcement officer | 13A-9-18.1 |
| Harassment or harassing communications | 13A-11-8 |
| Illegal possession of food stamps less than $100 | 13A-9-51 |
| Illegal possession or fraudulent use of credit card or debit card | 13A-9-14 |
| Impersonating public servant | 13A-10-10 |
| Interfering with judicial proceedings | 13A-10-130 |
| Keeping cockpit; cockfighting | 13A-12-4 |
| Loitering | 13A-11-9 |
| Misapplication of property | 13A-9-51 |
| Negotiating worthless negotiable instrument | 13A-9-13.1 |
| Obstructing governmental operations | 13A-10-2 |
| Obstructing justice using a false identity | 13A-8-194 |
| Obtaining signature by deception | 13A-9-11 |
| Owner permitting any person to equip gambling | 13A-12-53 |
| Person convicted more than twice of felony to register with sheriff of county of residence | 13A-11-181 |
| Possession of burglar's tools | 13A-7-8 |
| Possession of gambling device | 13A-12-27 |
| Possession of gambling records I | 13A-12-24 |
| Possession of gambling records II | 13A-12-25 |
| Promoting gambling | 13A-12-22 |
| Public intoxication | 13A-11-10 |
| Receiving sports bribe | 13A-11-142 |
| Receiving stolen property II(500-2500 Cls C Fel) | 13A-8-18 |
| Receiving stolen property III(<500 Cls A Mis) | 13A-8-19 |
| Rendering a false alarm | 13A-10-8 |
| Reporting of credit card lost, stolen or mislaid | 13A-9-15 |
| Resisting arrest | 13A-10-41 |
| Selling cigarettes to minors | 13A-12-3 |
| Simple gambling | 13A-12-21 |
| Simulating legal process | 13A-10-131 |
| Sports bribery generally | 13A-11-141 |
| Tampering with physical evidence | 13A-10-129 |
| Tampering with sports contest | 13A-11-143 |
| Theft of lost property I(>2500 Cls B Fel) | 13A-8-7 |
| Theft of lost property II(500-2500 Cls C Fel) | 13A-8-8 |
| Theft of lost property III(<500 Cls A Mis) | 13A-8-9 |
| Theft of property II(500-2500 Cls C Fel) | 13A-8-4 |
| Theft of property III (<500 Cls A Mis) | 13A-8-5 |
| Theft of services I(>2500 Cls B Fel) | 13A-8-10.1 |
| Theft of services II(500-2500 Cls C Fel) | 13A-8-10.2 |
| Theft of services III(<500 Cls A Mis) | 13A-8-10.3 |
| Unlawfully taking possession of real estate | 13A-7-60 |
| Use of pepper spray, etc. in commission of crime | 13A-6-27 |

**OLD CODES, prior to 1980:**

| | |
|---|---|
| Buying, receiving concealing stolen property | 214 |
| Credit Card Theft | 313 |
| Counterfeiting of Credit Card | 316 |
| Driving while revoked/suspended | 922M |
| Grand larceny | 231 |
| Issuing worthless checks | 365 |
| Forgery I | 304 |
| Forgery II | 305 |
| Violation securities act of Alabama | 915F |

.

## OFFENSE SEVERITY "2" – LOW MODERATE RISK

| Offense Description: | Code: |
|---|---|
| Abandonment of Child | 13A-13-5 |
| Accidents involving death or personal injuries | 32-10-1 |
| Arson III | 13A-7-43 |
| Assault III | 13A-6-22 |
| Attempt to commit controlled substance crime | 13A-12-203 |
| Bail jumping I | 13A-10-39 |
| Bribe receiving by a juror | 13A-10-126 |
| Bribe receiving by a witness | 13A-10-122 |
| Bribing a juror | 13A-10-125 |
| Bribing a witness | 13A-10-121 |
| Burglary II | 13A-7-6 |
| Burglary III | 13A-7-7 |
| Certain persons forbidden to posses pistol | 13A-11-72 |
| Charitable fraud I | 13A-9-73 |
| Charitable fraud II | 13A-9-74 |
| Criminal coercion | 13A-6-25 |
| Criminal conspiracy to commit controlled substance crime | 13A-12-204 |
| Criminal possession of explosives | 13A-7-44 |
| Criminal solicitation to commit controlled substance crime | 13A-12-202 |
| Cruelty to animals | 13A-11-14 |
| Cruelty to Dog or Cat I and II | 13A-11-241 |
| Domestic violence III | 13A-6-132 |
| Driving while under influence of alcohol, controlled substance, etc. | 32-5A-191 |
| Endangering welfare of child | 13A-13-6 |
| Escape III | 13A-10-33 |
| Hindering apprehension of escapee | 13A-10-45 |
| Hindering prosecution I | 13A-10-43 |
| Hindering prosecution II | 13A-10-44 |
| Illegal possession of food stamps (500-2500 Cls C Fel) | 13A-9-91 |
| Illegal possession of food stamps (>2500 Cls B Fel) | 13A-9-91 |
| Indecent exposure | 13A-6-68 |
| Interference with custody | 13A-6-45 |
| Menacing | 13A-6-23 |
| Perjury I | 13A-10-101 |
| Perjury II | 13A-10-102 |
| Perjury III | 13A-10-103 |
| Possess, sale, etc. of short-barreled rifle or short-barreled shotgun | 13A-11-63 |
| Promoting prison contraband II | 13A-10-37 |
| Promoting prison contraband III | 13A-10-38 |
| Promoting prostitution I | 13A-12-111 |
| Promoting prostitution II | 13A-12-112 |
| Promoting prostitution III | 13A-12-113 |
| Public lewdness | 13A-12-130 |
| Receiving stolen property I | 13A-8-17 |
| Reckless endangerment | 13A-6-24 |
| Reporting and registration requirements of Sex Offenders | 13A-11-200 |
| Theft of Property I | 13A-8-3 |
| Unauthorized use of vehicle; unlawful breaking and entering a vehicle | 13A-8-11 |
| Unlawful distribution of controlled substances | 13A-12-211 |
| Unlawful imprisonment II | 13A-6-42 |
| Unlawful possession of anhydrous ammonia | 13A-12-219 |
| Unlawful possession of marihuana I | 13A-12-213 |
| Unlawful possession or receipt of controlled substances | 13A-12-212 |

| **OLD CODES, prior to 1980:** | |
|---|---|
| Assisting prisoner escape custody | 433F |
| Attempted Arson | 148 |
| Burglary II (old / prior to January 1980) | 105 |
| Conceal/Harbor/Aid Escape Convict | 434F |
| Possession pistol after convict violence | 542C |
| Violation Alabama Uniform Controlled Substance Act | 810F |
| Youthful Offender Act | 908F |

.

## OFFENSE SEVERITY "3" – MODERATE RISK

| Offense Description: | Code: |
|---|---|
| Abuse of corpse | 13A-11-13 |
| Dissemination or public display of obscene matter containing visual depiction of persons under 17 years of age involved in obscene acts | 13A-12-191 |
| Distribution, possession with intent to distribute, production, etc. [obscene material] | 13A-12-200.2 |
| Escape II | 13A-10-32 |
| Extortion I | 13A-8-14 |
| Extortion II | 13A-8-15 |
| Hindering prosecution of terrorism I | 13A-10-154 |
| Identity theft | 13A-8-192 |
| Impersonating peace officer | 13A-10-11 |
| Intimidating a juror | 13A-10-127 |
| Intimidating a witness | 13A-10-123 |
| Jury tampering | 13A-10-128 |
| Permitting or facilitating escape I | 13A-10-34 |
| Possession and possession with intent to disseminate obscene matter containing visual depiction of persons under 17 years of age in obscene acts | 13A-12-192 |
| Promoting prison contraband I | 13A-10-36 |
| Robbery III | 13A-8-43 |
| Sexual Misconduct | 13A-6-65 |
| Tampering with a witness | 13A-10-124 |
| Trafficking in amphetamine (4 grams to < 56 grams) | 13A-12-231 (10) |
| Trafficking in cannabis (1 kilo - < 1000 lbs) | 13A-12-231 (1) |
| Trafficking in cocaine ( 28 grams to < 10 kilos) | 13A-12-231 (2) |
| Trafficking in hydromorphone (500 pills to < 10,000 pills) | 13A-12-231 (5) |
| Trafficking in lysergic acid diethylamide (4 grams to < 56 grams) | 13A-12-231 (9) |
| Trafficking in methamphetamine ( 28 grams to < 10 kilos) | 13A-12-231 (11) |
| Trafficking in methaqualone (1000 pills to < 100,000 pills) | 13A-12-231 (4) |
| Trafficking in methylenedioxy amphetamine ( 28 grams to < 10 kilos) | 13A-12-231 (6) and (7) |
| Trafficking in morphine (4 grams to < 56 grams) | 13A-12-231 (3) |
| Trafficking in phencyclidine (4 grams to < 56 grams) | 13A-12-231 (8) |
| Unlawful imprisonment I | 13A-6-41 |
| Unlawful manufacture of controlled substance II | 13A-12-217 |

| Offense Description: | Code: |
|---|---|
| **OLD CODES, prior to 1980:** | |
| Aiding prisoners to escape – felons | 432F |
| Carnal knowledge/impersonating | 086 |
| Convict destroying state property | 130 |
| Decoying off or detaining children | 060 |
| Exploding/Uninhabited Building | 152 |
| Sale/furnish controlled substance to under 18 year old | 835F |
| Unlawful use of vehicle – force | 225 |

.

## OFFENSE SEVERITY "4" – HIGH RISK

| Offense Description: | Code: |
|---|---|
| Aggravated stalking | 13A-6-91 |
| Arson II | 13A-7-42 |
| Assault II | 13A-6-21 |
| Compelling streetgang membership | 13A-6-26 |
| Criminal negligent homicide | 13A-6-4 |
| Discharging firearm, etc., into occupied or unoccupied building, etc. | 13A-11-61 |
| Domestic violence II | 13A-6-131 |
| Enticing child to enter vehicle, house, etc. for immoral purposes | 13A-6-69 |
| Hindering prosecution of terrorism II | 13A-10-154 |
| Incest | 13A-13-3 |
| Kidnapping I | 13A-6-43 |
| Manslaughter | 13A-6-3 |
| Robbery II | 13A-8-42 |
| Sexual abuse II | 13A-6-67 |
| Sodomy II | 13A-6-64 |
| Stalking | 13A-6-90 |
| Torture, willful abuse, etc., of child under 18 | 26-15-3 |
| Trafficking in amphetamine ( > 56 grams) | 13A-12-231 (10) |
| Trafficking in cannabis (> 1000 lbs) | 13A-12-231 (1) |
| Trafficking in cocaine ( > 10 kilos) | 13A-12-231 (2) |
| Trafficking in hydromorphone( > 10,000 pills) | 13A-12-231 (5) |
| Trafficking in lysergic acid diethylamide ( > 56 grams) | 13A-12-231 (9) |
| Trafficking in methamphetamine ( > 10 kilos) | 13A-12-231 (11) |
| Trafficking in methaqualone ( > 100,000 pills) | 13A-12-231 (4) |
| Trafficking in methylenedioxy amphetamine ( > 10 kilos) | 13A-12-231 (6) and (7) |
| Trafficking in morphine ( > 56 grams) | 13A-12-231 (3) |
| Trafficking in phencyclidine ( > 56 grams) | 13A-12-231 (8) |
| Trafficking in stolen identities | 13A-8-193 |
| Unlawful manufacture of controlled substance I | 13A-12-218 |

| Offense Description: | Code: |
|---|---|
| **OLD CODES, prior to 1980:** | |
| Arson I | 144 |
| Assault by convict on correctional officer | 031 |
| Assault on officer with deadly instrument | 024 |
| Assault w/Intent to Maim | 026 |
| Burglary I | 104 |
| Carnal knowledge/over 12 – under 16 | 085 |
| Carnal knowledge/over 14/drugs | 083 |
| Carnal knowledge/under 12 | 084 |
| Crimes against nature/sodomy/beast | 087 |
| Enticing females for immoral purpose | 644N |
| Escape by US prisoner from penitentiary | 426F |
| Escape/attempt to escape from penitentiary or guard | 425F |
| Incest (old code/prior January 1980) | 706F |
| Manslaughter I | 007 |
| Murder II | 004 |
| Parent permit child-obscene matter | 666B |
| Produce obscene matter under 17 years | 667A |

.

## OFFENSE SEVERITY "6" – HIGHEST RISK

| Offense Description: | Code: |
|---|---|
| Aggravated Child Abuse | 26-15-3.1 |
| Arson I | 13A-7-41 |
| Assault I | 13A-6-20 |
| Burglary I | 13A-7-5 |
| Domestic violence I | 13A-6-130 |
| Escape I | 13A-10-31 |
| Inciting to Riot | 13A-11-4 |
| Kidnapping I | 13A-6-43 |
| Murder | 13A-6-2 |
| Rape I | 13A-6-61 |
| Rape II | 13A-6-62 |
| Riot | 13A-11-3 |
| Robbery I | 13A-8-41 |
| Sexual abuse I | 13A-6-66 |
| Sexual torture | 13A-6-65.1 |
| Sodomy I | 13A-6-63 |
| Soliciting a child by computer | 13A-6-110 |
| Soliciting of providing support for an act of terrorism | 13A-10-153 |
| Terrorist threats | 13A-10-15 |
| Transmitting obscene material to a child by computer | 13A-6-111 |

| Offense Description: | Code: |
|---|---|
| **OLD CODES, prior to 1980:** | |
| Aggravated Murder | 001 |
| Assault with intent to commit crime against nature | 029 |
| Assault with intent to murder | 025 |
| Assault with intent to ravish | 028 |
| Assault with intent to rob | 027 |
| Child molestation | 082 |
| Murder by life sentence convict | 005 |
| Murder I | 003 |
| Robbery | 254 |

.

Attachment 3

US. Department of Homeland Security
Detention and Removal Operations
877 Forrest Ace
Gadsden, AL 35907

# U.S. Immigration and Customs Enforcement
## REPORT OF SUSPECTED ILLEGAL IMMIGRATION STATUS

NAME OF FACILITY ______________ PHONE _________ FAX ______________

The information below is for persons believed to be non-US Citizens committed to this facility as an inmate.

LAST NAME AIS#:

FIRST NAME MIDDLE NAME

ALIAS:

BIRTH PLACE BIRTH DATE

LAST RESIDENCE

IMMIGRATION STATUS:

MANNER OF ENTRY INTO THE U.S.

CITY AND STATE ENTER THE U.S.

FATHER'S NAME: MOTHER'S NAME:

CRIME OF CONVICTION:

FBI# SID#: SS#:

COUNTY OF CONVICTION: COURT: CASE#:

CLERK'S OFFICE PHONE NO.#

Attachment 4

**CLASSIFICATION APPEAL FORM**

INSTITUTION:______________________________ DATE:______________________

NAME: ___________________________________ AIS#: ______________________

I. CLEARLY STATE THE DECISION THAT IS BEING APPEALED: ______________________

_____________________________________________________________________

_____________________________________________________________________

II. BRIEFLY AND CLEARLY STATE YOUR REASON FOR APPEALING: __________________

_____________________________________________________________________

_____________________________________________________________________

______________________
INMATE SIGNATURE

— — — — — — — — — — — — — — — — — — — — — — — — — —

III. COMMENTS OF CLASSIFICATION PERSONNEL: ________________________________

_____________________________________________________________________

_____________________________________________________________________

_____________________________________________________________________

________________________________ ________________
CLASSIFICATION SIGNATURE DATE

— — — — — — — — — — — — — — — — — — — — — — — — — —

DO NOT WRITE BELOW THIS LINE

— — — — — — — — — — — — — — — — — — — — — — — — — —

APPEAL GRANTED:______________________DENIED: __________________________

DATE: __________________

COMMENTS: ___________________________________________________________

_____________________________________________________________________

_____________________________________________________________________

Attachment 5

**ALABAMA DEPARTMENT OF CORRECTIONS**
**INMATE INTERVIEW RECORD**

***USE OF FORM***: Each interview summary should contain the following material as appropriate: topics discussed; recommendations made by counselor; decisions made by inmate; progress noted or other observations of counselor. All inmates must be advised during the initial interview of the nature and extent of confidentiality in the counseling relationship. Each entry must be dated and signed by the counselor.

***NOTE***: NO PART OF THIS RECORD IS TO BE DUPLICATED OR EXTRACTED, EITHER IN FACT OR IN SUBSTANCE, WITHOUT THE WRITTEN AUTHORIZATION OF THE INMATE NAMED ABOVE.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| NAME: Last | First | Middle | Serial No. | Race | Sex | DOB: M/D/YY |

| DATE OF ENTRY | SUMMARY OF INTERVIEW | SIGNATURE OF COUNSELOR |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Attachment 6

# INITIAL INMATE CLASSIFICATION

**Name:** **AIS#:**
**Classification Specialist#:** **Date: / /20**

1. **HISTORY OF INSTITUTIONAL VIOLENCE**
**(Jail or prison, code most serious in last five years)**

| | Pts. | Score |
|---|---|---|
| None | 0 | |
| Assault not involving use of a weapon or resulting in serious injury | 3 | |
| Assault either weapon or serious injury but not both | 5 | |
| Assault involving use of a weapon and/or resulting in serious injury or death | 7 | |

2. **SEVERITY OF CURRENT OFFENSE**
**(Refer to the Offense Severity Scale; score the most serious if multiple convictions)**

| | Pts. | Score |
|---|---|---|
| Low | 0 | |
| Low/Moderate | 2 | |
| Moderate | 3 | |
| High | 4 | |
| Highest | 6 | |

3. **PRIOR ASSAULTIVE OFFENSE HISTOTY**
**(Score the most serious in inmate's history; refer to Offense Severity Scale)**

| | Pts. | Score |
|---|---|---|
| None, Low, or Low/Moderate | 0 | |
| Moderate | 2 | |
| High | 4 | |
| Highest | 6 | |

4. **ESCAPE HISTORY**
**(Rate last five years of incarceration)**

| | Pts. | Score |
|---|---|---|
| No escapes or attempts (or no prior incarcerations) | 0 | |
| An escape or attempt from minimum or community facility | | |
| over one year ago | 1 | |
| within the last year | 2 | |
| An escape or attempt from the equivalent of a Level III or higher facility or an escape from a minimum or community facility with actual or threatened violence | | |
| over one year ago | 5 | |
| within the last year | 7 | |

5. **PRIOR FELONY CONVICTIONS**

| | Pts. | Score |
|---|---|---|
| None | 0 | |
| One | 2 | |
| Two or more | 4 | |

6. **CURRENT AGE**

| | Pts. | Score |
|---|---|---|
| 50 years or older | -2 | |
| 40 – 49 years | -1 | |
| 30 – 39 years | 0 | |
| 25 – 29 years | 1 | |
| Under 25 years | 2 | |

7. **OTHER RISK FACTORS**

| | Pts. | Score |
|---|---|---|
| Mental Health Issue Noted | 1 | |
| Substance Abuse Issue Noted | 1 | |

**TOTAL RISK SCORE ITEMS (1 – 7)** **Total Score**

## Male Initial Classification Scored Custody Level Scale

| Schedule A (Items 1 – 4) | Points |
|---|---|
| Close custody | 10 or more |

**Schedule B (all items)**

| | | |
|---|---|---|
| Close custody | 12 or more | **Scored Security Level:** |
| Medium custody | 6 - 11 | |
| Minimum custody | 5 or less | |

### Over-Ride Factors

**Non – Discretionary Minimum Custody Restrictions**

- ☐ **Sex Offender**
- ☐ **Multiple Life Sentences**
- ☐ **Escape past 12 months**
- ☐ **Assault on staff last 24 months**
- ☐ **Time left to service**

**Discretionary – Higher Level**

- ☐ **Crime more serious than scored**
- ☐ **Prior record more serious than scored**
- ☐ **Recent neg. inst. Adjustment**
- ☐ **Gang Activity**
- ☐ **Felony Detainer**

**Discretionary – Lower Level**

- ☐ **Crime less serious than scored**
- ☐ **Prior criminal record less serious than scored**
- ☐ **Recent pos. inst. Adjustment**
- ☐ **Re-entry program needs**
- ☐ **Overall positive institutional conduct**

**Is Over-Ride of Scored Custody Recommended?** ☐**Yes** ☐ **No**

**If yes, give rationale (required):**

**Recommended Population Assignment and Custody Level:**

**Population Assignment:**
(select code from list below)

| | |
|---|---|
| General Population | GP |
| Protective Custody | PC |
| Medical | MD |
| Mental Health | MH |
| Admin. Seg. | AS |

**Custody Level:**
(select code from list below)

| | |
|---|---|
| Minimum | MIN |
| Medium | MED |
| Close | CLO |

**Classification Specialist Signature:**

---

**APPROVAL OF OVER-RIDE**

**Approve Recommendation Population Assignment and Custody Level?** ☐ **Yes** ☐ **No**

**If no, give rationale (required):**

**FINAL POPULATION ASSIGNMENT AND CUSTODY LEVEL:**

**Population Assignment:** **Custody Level:**

Attachment 7

# INMATE RECLASSIFICATION

**Name:** **AIS#:**

**Classification Specialist#:** **Date:** / /20

**1. HISTORY OF INSTITUTIONAL VIOLENCE**
**(Jail or prison, code most serious in last five years)**

| | Pts. | Score |
|---|---|---|
| None | 0 | |
| Assault not involving use of a weapon or resulting in serious injury | 3 | |
| Assault either weapon or serious injury but not both | 5 | |
| Assault involving use of a weapon and/or resulting in serious injury or death | 7 | |

**2. SEVERITY OF CURRENT OFFENSE**
**(Refer to the Offense Severity Scale; score the most serious if multiple convictions)**

| | | Score |
|---|---|---|
| Low | 0 | |
| Low/Moderate | 2 | |
| Moderate | 3 | |
| High | 4 | |
| Highest | 6 | |

**3. PRIOR ASSAULTIVE OFFENSE HISTOTY**
**(Score the most serious in inmate's history; refer to Offense Severity Scale)**

| | | Score |
|---|---|---|
| None, Low, or Low/Moderate | 0 | |
| Moderate | 2 | |
| High | 4 | |
| Highest | 6 | |

**4. ESCAPE HISTORY**
**(Rate last five years of incarceration)**

| | | Score |
|---|---|---|
| No escapes or attempts (or no prior incarcerations) | 0 | |
| An escape or attempt from minimum or community facility | | |
| over one year ago | 1 | |
| within the last year | 2 | |
| An escape or attempt from the equivalent of a Level III or higher facility or an escape from a minimum or community facility with actual or threatened violence | | |
| over one year ago | 5 | |
| within the last year | 7 | |

**5. CURRENT AGE**

| | | Score |
|---|---|---|
| 50 years or older | -2 | |
| 40 – 49 years | -1 | |
| 30 – 39 years | 0 | |
| 25 – 29 years | 1 | |
| Under 25 years | 2 | |

**6. NUMBER OF DISCIPLINARY REPORTS**
**(last 18 months)**

| | | Score |
|---|---|---|
| None in last 18 months | -3 | |
| None in last 12 months | -2 | |
| One in the last 12 months | 0 | |
| Two or more in the last 12 months | 1 | |
| | 2 | |

**7. MOST SEVERE DISCIPLINARY REPORT RECEIVED**
**(last 18 months)**

| | | Score |
|---|---|---|
| None | 0 | |
| Low/Moderate | 1 | |
| Moderate | 2 | |
| High | 5 | |
| Highest | 7 | |

**8. PROGRAM / WORK ASSIGNMENT (current incarceration)**

| | | Score |
|---|---|---|
| Completion of certified treatment or education program / degree | -2 | |
| Satisfactory work assignment or steady participation in treatment / education program | -1 | |

**TOTAL RISK SCORE ITEMS (1 – 8)** **Total Score**

## Male Reclassification Scored Custody Level Scale

| **Schedule A (Items 1 – 4)** | **Points** |
|---|---|
| Close custody | 10 or more |

**Schedule B (all items)**

| | |
|---|---|
| Close custody | 12 or more |
| Medium custody | 6 - 11 |
| Minimum custody | 5 or less |

**Scored Security Level:**

### Over-Ride Factors

**Non – Discretionary Minimum Custody Restrictions**

- ☐ **Sex Offender**
- ☐ **Multiple Life Sentences**
- ☐ **Escape past 12 months**
- ☐ **Assault on staff last 24 months**
- ☐ **Time left to service**

**Discretionary – Higher Level**

- ☐ **Crime more serious than scored**
- ☐ **Prior record more serious than scored**
- ☐ **Recent neg. inst. Adjustment**
- ☐ **Gang Activity**
- ☐ **Felony Detainer**

**Discretionary – Lower Level**

- ☐ **Crime less serious than scored**
- ☐ **Prior criminal record less serious than scored**
- ☐ **Recent pos. inst. Adjustment**
- ☐ **Re-entry program needs**
- ☐ **Overall positive institutional conduct**

**Is Over-Ride of Scored Custody Recommended?** ☐**Yes** ☐ **No**

**If yes, give rationale (required):**

**Recommended Population Assignment and Custody Level:**

**Population Assignment:**
(select code from list below)

| | |
|---|---|
| General Population | GP |
| Protective Custody | PC |
| Medical | MD |
| Mental Health | MH |
| Admin. Seg. | AS |

**Custody Level:**
(select code from list below)

| | |
|---|---|
| Minimum | MIN |
| Medium | MED |
| Close | CLO |

**Classification Specialist Signature:**

---

**APPROVAL OF OVER-RIDE**

**Approve Recommendation Population Assignment and Custody Level?** ☐ **Yes** ☐ **No**

**If no, give rationale (required):**

**FINAL POPULATION ASSIGNMENT AND CUSTODY LEVEL:**

**Population Assignment:** **Custody Level:**

Attachment 8

# OVER-RIDE CONSIDERATIONS

## Mandatory Minimum Custody Restrictions:

- Sex Offender
- Escape last 12 Months
- Assault on Staff last 24 Months
- Time left to serve

## Discretionary Over-Rides

**Higher Level than Scored Being Recommended:**

- Violent Felony Detainer
- Crime More Serious than Scored
- Prior Record More Serious than Scored
- Recent Negative Institutional Adjustment
- Gang Activity
- Other Serious Considerations

**Lower Level than Scored Being Recommended:**

- Crime Less Serious Scored
- Prior Criminal Record Less Serious than Scored
- Recent Positive Institutional Adjustment
- Overall Positive Institutional Conduct
- Re-Entry Program Needs
- Other Security Considerations

## INSTITUTIONAL SCORED CUSTODY LEVELS

| | |
|---|---|
| Close | 12 points or higher |
| Medium | 6 – 11 points |
| Minimum-In | 5 points |
| Minimum-Out | 3 – 4 points |
| Community | 2 points and below |

Attachment 10

# DISCIPLINARY SEVERITY SCALE

## HIGHEST SEVERITY – 7

901 Homicide
902 Assault on Person(s) Associated with the ADOC
903 Assault with a weapon on person(s) associated with the ADOC
904 Assault on Person(s) Not Associated with ADOC
905 Assault with a weapon on persons not associated with the ADOC
906 Assault on an Inmate
907 Assault with a weapon on an inmate
908 Seizing or Holding Hostage(s) in any manner
909 Unlawfully Detaining a Person
910 Fighting with a Weapon
911 Sexual Assault (Forcible)
913 Escape by force
915 Robbery
916 Gathering in a threatening or intimidating manner
917 Attempt to escape by force
920 Inciting a riot or rioting
921 Unauthorized possession of a weapon or device that could be used as a weapon
926 Arson
929 Extortion or blackmail
932 Fighting without a weapon resulting in serious injury

## HIGH SEVERITY – 5

912 Sexual Offense (Non-Forcible)/Soliciting
914 Escape without force
918 Attempt to escape without force
919 Unauthorized possession of an escape device (to include call phone if used in commission of escape)
922 Threat
923 Indecent exposure/exhibitionism/lewd conduct
927 Possession of unauthorized drugs, intoxicants, or paraphernalia
930 Forgery
931 Bribery or attempted bribery

933 Being arrested or convicted of a felony

934 Possession of contraband

936 Violation of State of Federal Statute(s)

503 Being in an unauthorized area ((also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

506 Disorderly Conduct (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

507 Possession of any security threat group (STG) paraphernalia, drawings, or graffiti to include the utilization of any known STG symbols/signs

508 Destroying, stealing, disposing, altering, damaging, or selling State/another person's property

509 Unauthorized possession of State and/or another person's property

510 Conspiracy to commit a rule violation (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

511 Aiding and abetting another person to commit a rule violation (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

512 Lying (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

514 Counterfeiting

516 Possession of contraband (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

517 Insubordination (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

519 Delaying, hindering, or interfering with an employee in performance of his/her duty

304 Unauthorized operation of a vehicle/equipment

**LOW MODERATE SEVERITY - 2**

924 Encouraging or causing others to stop work

925 Failure to obey a direct order of an ADOC employee

928 Use of/under the influence of alcohol, narcotics, or other intoxicants

935 Absconding from Supervision

501 Fighting without a weapon

502 Being fired from a job (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

504 Disrupting the count

505 Intentionally creating a security, safety, or health hazard

513 Harassment

515 Failure to comply with the agreement and conditions of leave or pass

518 Refusing to work/failing to check out for work (also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

521 Changing sponsor, residence, or employment without supervisor's approval

522 Unauthorized association/communication with ex-felons

524 Violation of Supervised Re-Entry Program policies and procedures

525 Violation of State or Federal statute(s)

526 Use of alcoholic beverage/patronizing establishments where alcoholic beverages are primarily served

527 Violation of institutional rules(also includes second offense or more of the Low Level Violation of this offense in a 12 month period)

528 Unauthorized possession of a phone(s)/accessory(s)

529 Unauthorized participation in social networking

308 Charging or accepting any compensation for legal assistance

311 Possession of Contraband

312 Insubordination

313 Lying

314 Disorderly Conduct

315 Being in an unauthorized area

317 Conspiracy to commit a rule violation

318 Aiding and abetting another person to commit a rule violation

**LOW SEVERITY - 1**

520 Failure to pay fees (supervision, court costs, restitution, or many other court ordered fee(s))

523 Curfew violation

301 Gambling

302 Violation of institutional mail rules

303 Violation of visiting privileges

305 Unauthorized use of institutional resources

306 Malingering/Feigning illness

307 Marrying without permission

309 Violation of institutional rules

310 Trading, bartering, and selling

316 Smoking in an unauthorized area

319 Being fired from a job

320 Refusing to work/failing to check out for work

Attachment 11

## Close Custody Reduction Review Form

| | | |
|---|---|---|
| Inmate Name: | | AIS#: |
| Facility: | | |
| The above inmate is being recommended by the IRHRB for reduction from Close custody to:<br>☐Medium/Administrative Segregation ☐Medium/General Population | | |
| Date and Nature of Infraction(s) Leading to Current Placement: | | |
| Date placed in Restrictive Housing: | | |
| Date of Close custody approval: | | |
| Dates and descriptions of Disciplinaries during current Restrictive Housing placement: | | |
| Minimum Time Required in Close (according to criteria): | | |
| Has Minimum time been served: | Yes | No |
| Brief justification for reduction: | | |
| Date | | |
| Specialist Signature | | |
| IRHRB Members | | |
| Classification Director /Assistant Director Signature | | Date: |

Attachment 12

# CLASSIFICATION ACTION

NAME_________________________AIS_________________________R&S ____________

INSTITUTION_____________________________CUSTODY ____________________________

ACTION: Rescind: ____________________________________________________________

Amend: ____________________________________________________________

Transfer: From:___________________________To: ___________________________

Custody: From:___________________________To: ___________________________

REASON(S)

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

________________________________________________________________________________

DATE:________________ APPROVED: ______________________________

N 258

Attachment 13

## SORNA DECISION FLOWCHART

