FILED
2026 Aug-28 PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff;

v.

STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,

Defendants.

Civil. No. 2:20-cv-01971-RDP

**THE UNITED STATES' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST REQUESTS FOR ADMISSION**

Pursuant to Federal Rules of Civil Procedure 36 and 26, the United States hereby responds to Defendants' First Requests for Admissions, which Defendants served on April 28, 2024. The United States submits these objections and responses, and will supplement as appropriate, under the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Alabama, and Court orders, including the Scheduling Order, Doc. 174, the Stipulated Consolidated Protective Order, Doc. 62, and the Stipulated Consolidated Order Regarding Protocols for Production of Documents and Things (including ESI), Doc. 63.

**GENERAL RESERVATIONS**

The United States gives its objections and responses to each Request with specificity below. The United States also expresses the following reservations.

First, the United States' objections and responses to each Request are based on information known to the United States at this time. The United States will supplement, if necessary and appropriate, in accordance with the Court's orders and Rule 26(e). Consistent with the Federal Rules, the United States therefore reserves the option to assert additional objections and amended responses as new information arises.

Second, the United States bases its objections and responses on its best understanding of what the Request is requesting. As noted below, many of Defendants' Requests are vague, especially as to the applicable time period. This confusion as to time includes Defendants' failure to identify which version of Administrative Regulations and other policy documents the Request is asking about; many ADOC employee deponents could not verify whether or identify which Administrative Regulations and other policy documents were current. The United States reserves the option to make additional objections and amend responses if the United States' understanding conflicts with Defendants' interpretation.

Third, the United States' objections and responses are given in accordance with the requirements of the Federal Rules and Court orders, and not in accordance with Defendants' instructions and definitions that conflict with and expand the requirements of those Rules and orders. The United States notes confusion from Defendants' inconsistent use of seemingly defined terms such as Correctional Officials (versus "security staff") and Incarcerated Individual (versus "inmate"). The United States also limited "Incarcerated Individual" to any person confined in "ADOC Facilities," and specifically excluded from the definition any person in "any other [non-ADOC] jail, prison, or correctional facility, in which the person is confined" because otherwise many of the Requests made little sense.

Fourth, any purported ambiguity in the below responses as to what is admitted with a limitation, partially admitted, or partially denied should be construed as a denial.

Fifth, in responding to these Requests, the United States does not concede the relevancy, materiality, competency, or admissibility of any evidence or information requested by Defendants. Moreover, "[a]n admission made under Rule 36 is for the purpose of the pending action only, and cannot be used as an admission in any other proceeding." 7 Moore's Federal Practice, § 36.03[3] at

36-16 (Mathew Bender 3d ed. 2000) (citing Fed. R. Civ. P. 36(a) and 36(b)). The United States reserves the option to object on any ground as to the use of its responses in any trial or proceeding.

**OBJECTIONS AND RESPONSES**

1. *Admit ADOC formed an Internal Classification Board ("ICB") at St. Clair.*

**RESPONSE:** Admitted, but the Request vaguely fails to specify when the ICB was formed. Further, the ICB was formed only after St. Clair experienced a prolonged period of physical and sexual violence—including an unusually high rate of prisoner deaths. Those rates remain high and the efficacy of the ICB is highly questionable. The Board was formed as part of a 2017 litigation settlement, and the Board does not adhere to that settlement's terms.

2. *Admit that the Internal Classification Board meets at least weekly.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate; the Request fails to provide sufficient information for the United States to admit or deny it. Specifically, the Request fails to specify for which prison or prisons it seeks information, and for what time period (i.e., currently, for the last year, or since it/they was/were formed).

3. *Admit ADOC inmates used illicit drugs during their incarceration at ADOC Facilities.*

**RESPONSE:** Objection; the Request is vague as to time and as to whether the Request is seemingly asking if all prisoners have used illicit drugs. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some prisoners in ADOC custody have used illicit drugs, but denies that all prisoners have. This partial admission should not be construed as an acknowledgment that ADOC implemented effective techniques to drug test prisoners or effectively implemented other methods to prevent contraband from entering its facilities, including through correctional officers.

4. *Admit ADOC created the Office of Inspector General in 2016.*

**RESPONSE:** Denied. For example, an ADOC organizational chart from 2015 references an Office of Inspector General.

5. *Admit ADOC uses retired ADOC personnel to supplement correctional staffing at ADOC Facilities.*

**RESPONSE:** Objection; the Request is vague as to time and to the meaning of "supplement." Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC currently uses retired personnel to perform some duties that correctional staff should be performing, but not necessarily all the duties. The United States denies this Request in part since this policy was only implemented in the last few years. This partial admission should not be construed as an acknowledgment that ADOC adequately staffs its prisons for men. Indeed, while the agency has relied on retired ADOC personnel to perform some duties that correctional

staff should be performing, its prisons remain severely understaffed. *See, e.g.*, Quarterly Staffing Report, *Braggs v. Hamm*, No. 2:14-cv-601 (M.D. Ala.), Doc. No. 4141.

6. *Admit ADOC implemented the "Correctional Security Guard" (also known as the "Basic Correctional Officer") employee classification in May 2019.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate. At some point in time not definitively known to the United States, ADOC began referring to "Basic Correctional Officers" interchangeably with "Correctional Security Guards," as demonstrated in this Request and in the agency's Administrative Regulations dated 2022. Without waiving said objections, the United States can neither admit nor deny this Request. The United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. Specifically, the United States acknowledges that, in May 2019, ADOC announced that it would create a new security staffing position, known as a Basic Correctional Officer or BCO. But the evidence is unclear as to when that action was formally implemented.

7. *Admit ADOC successfully advocated for and enacted a two-step pay increase and incentive program for ADOC security staff in 2019.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate in that it fails to specify to whom ADOC purportedly advocated, and Defendants' Requests have not defined "security staff." Without waiving said objections, the United States admits that some correctional staff received pay increases in 2019. The United States has made a reasonable inquiry in an attempt to respond, but the information the Request supplies, and information known or readily obtainable, is insufficient to enable an admission or a denial of the remaining portion of this Request.

8. *Admit ADOC successfully advocated for and enacted a pay increase for ADOC security staff in March 2023.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate in that it fails to specify to whom ADOC purportedly advocated, and Defendants' Requests have not defined "security staff." Without waiving said objections, the United States admits that some correctional staff received pay increases in 2023. The United States has made a reasonable inquiry in an attempt to respond, but the information the Request supplies, and information known or readily obtainable, is insufficient to enable an admission or a denial of the remaining portion of this Request.

9. *Admit ADOC inmates incurring debt to other ADOC inmates can result in threats or acts of violence against those ADOC inmates who have incurred debt.*

**RESPONSE:** Objection; the Request is unclear, including as to who made the resulting threats or acts of violence. The Request also uses the disjunctive and is compound. Without waiving said objections, the United States admits that debt among prisoners may cause threats or acts of violence by a creditor inmate, a debtor inmate, another inmate, inmate groups, and ADOC staff. This partial admission should not be construed as an acknowledgment that ADOC has been

effective in controlling the impermissible bartering of commissary items or flow of contraband into its prisons.

10. *Admit Plaintiff cannot identify any correctional facility in the United States which completely eliminated inmate-on-inmate violence.*

**RESPONSE:** Objection; the Request lacks relevance as to whether ADOC provides constitutional conditions in its prisons for men. The Request is also overbroad and unduly burdensome to the extent that the Request purports to seek an admission about inmate-on-inmate violence at every correctional facility in the United States; the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. As to whether the United States can presently identify a correctional facility in the United States that completely eliminated inmate-on-inmate violence, subject to said objections, the United States admits.

11. *Admit Plaintiff asserts a common interest privilege with the plaintiffs in Duke, et al. v. Hamm, et al., No. 4:14-cv-01952-RDP.*

**RESPONSE:** Admitted as to the plaintiffs' counsel as explained in the United States' letters to the Special Master and briefs to the Court.

12. *Admit Plaintiff asserts a common interest privilege with the plaintiffs in Braggs, et al. v. Hamm, et al., No. 2:14-cv-00601-MHT-TFM.*

**RESPONSE:** Admitted as to the plaintiffs' counsel as explained in the United States' letters to the Special Master and briefs to the Court.

13. *Admit ADOC hired Christy Vincent as its PREA Director in 2015.*

**RESPONSE:** Admitted.

14. *Admit the ADOC PREA Director reports directly to the ADOC Office of General Counsel.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that at some point in the last year or so, the PREA Director began reporting to ADOC's Office of General Counsel. The United States denies this Request in part since the PREA Director previously reported to the Office of Inspector General (which has been without an Inspector General since approximately early 2023). Further, prior to reporting to the Office of Inspector General, the PREA Director reported to the ADOC's Office of General Counsel.

15. *Admit the ADOC PREA Director conducts annual audits of each ADOC facility.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and what constitutes an "audit" is vague. Without waiving said objections, the Request is admitted as far as ADOC's

PREA Director conducts what she describes as "internal audits" at each ADOC Facility. These internal audits, however, do not comply with the requirements of ADOC Administrative Regulation 454 § IV.E.7. This partial admission should not be construed as an acknowledgment that said audits are adequate to ensure necessary sexual safety practices at the ADOC facilities.

16. *Admit ADOC placed Institutional PREA Compliance Managers in each ADOC facility.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. Without waiving said objections, the Request is denied.

17. *Admit every ADOC facility received a passing score in its most recent PREA audit, as determined by the PREA auditor's final report.*

**RESPONSE:** Admitted. The United States adds that compliance with PREA standards does not "define the contours of constitutionally required conditions of confinement," nor does complying with them "establish a safe harbor with regard to otherwise constitutionally deficient conditions involving inmate sexual abuse." 77 Fed. Reg. 37106, at 37107 (June 20, 2012).

18. *Admit ADOC provides PREA training to every correctional official.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. Without waiving said objections, the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial, particularly without a timeframe. The PREA Director testified that she facilitates training of all new incoming staff for ADOC, but some wardens testified that they do not receive PREA training.

19. *Admit ADOC maintains a PREA hotline system for all ADOC facilities.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and is vague as to "maintains." Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC has established a telephone hotline for PREA complaints. The United States denies this Request as the hotline is not always working or available at all ADOC facilities.

20. *Admit ADOC provides incarcerated individuals with multiple methods of reporting sexual abuse.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request is also vague in degree as to the term "multiple methods." Without waiving said objections, the Request is admitted; ADOC currently provides incarcerated individuals with more than one method of reporting sexual abuse, but as with Request 19, those reporting methods may not always be available or functioning.

21. *Admit ADOC transports incarcerated individuals who report being victims of sexual abuse to a Sexual Assault Nurse Examiner (SANE) Center for an examination after ADOC medical personnel evaluate the incarcerated individual.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request also seemingly asks if all such victims have been transported to a SANE Center. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC transports some prisoners to SANE Centers for examination after ADOC medical personnel perform evaluations. The United States denies this Request in part because the PREA Director confirmed that ADOC has had problems with scheduling and transportation of victims to SANE Centers. The United States denies that all prisoners who report being victims of sexual abuse are transported to SANE Centers.

22. *Admit ADOC PREA Director Christy Vincent reviews calls to ADOC's PREA hotline and routes reported information to the applicable IPCM.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request is seemingly asking about reviewing and routing all calls. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that the PREA Director reviews some calls to the PREA hotline, that checking the hotline is a big part of her responsibility, and that she sends some hotline reports to IPCMs. The United States denies this Request in part as the PREA Director's assistant also reviews calls and not every facility has had an IPCM or equivalent Special Investigator at all times.

23. *Admit ADOC implemented Sexual Assault Incident Review Teams (SAIRT) at all ADOC facilities.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and vague as to the meaning of "implemented." Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that, at present, SAIRTs exist at all facilities. The United States denies this Request in part because SAIRTs have not always been consistently conducted, sufficiently thorough, and/or timely.

24. *Admit SAIRT reviews provide recommendations to facility wardens for improving sexual safety at the ADOC facility.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that a select few SAIRT reviews include recommendations to facility wardens. This Request is denied because the majority of SAIRT reviews do not include any recommendations to facility wardens. This partial admission should not be construed as an acknowledgment that the recommendations from SAIRTs are implemented.

25. *Admit ADOC maintains AR 454 entitled "Inmate Sexual Abuse and Harassment (Prison Rape Elimination Act [PREA])".*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. In addition, the United States does not understand what Defendants intend with the term "maintains." Without waiving said objections, the Request is admitted in part and denied in part. While ADOC has created an Administrative Regulation (AR) numbered 454, multiple ADOC deponents have been unable to verify whether some ARs are the current versions. The Request is therefore unclear as to which AR version this Request pertains. And while this AR has been issued (in some version), the United States denies ADOC has implemented/consistently enforced its provisions.

26. *Admit the provisions of ADOC AR 454 are constitutionally adequate.*

**RESPONSE:** Objection; the Request improperly asks the United States to admit a legal conclusion. *See, e.g.*, *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) ("That said, 'Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact. . . [t]o force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted." (citation omitted)). The Request also vaguely fails to identify the particular date/version of the AR. Without waiving said objections, the United States denies.

27. *Admit ADOC created and implemented Administrative Regulations 300, 302, 312, 327, 331, 332 and 406.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the applicable timeframe and the meaning of "implemented." While ADOC has created Administrative Regulations (ARs) numbered 300, 302, 312, 327, 331, 332, and 406, ARs have been amended, including during this litigation, and multiple ADOC deponents have been unable to verify whether some ARs and facility SOPs are the current versions. This Request is therefore unclear as to which ARs this Request pertains. While these ARs have been issued (in some version), the United States denies ADOC has implemented/consistently enforced them, and some ADOC employees are not familiar with them.

28. *Admit ADOC AR 327 requires that the use of physical force must be justified, reasonable, and necessary under the circumstances.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, contains language that the application of physical force shall be justified, reasonable, and necessary under the circumstances. The United States denies this Request in part because it contemplates only a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

29. *Admit ADOC AR 327 requires that the use of physical force should only be used after the correctional official has attempted to verbally de-escalate the situation.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, contains language that the application of physical force shall "only be used after attempts to verbally de-escalate the situation have failed, if possible." The United States denies this Request in part because it contemplates only a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

30. *Admit ADOC AR 327 mandates correctional officials should never use physical force as punishment.*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question and the term "mandate" is vague. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, contains language that the application of physical force "shall never be used as punishment." The United States denies this Request in part because it contemplates only a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

31. *Admit ADOC AR 327 requires correctional officials use the minimum amount of physical force necessary to "control the situation or achieve a legitimate correctional objective."*

**RESPONSE:** Objection; the Request for Admission is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, contains language that the application of physical force "[s]hall only be the minimum amount necessary to control the situation or achieve a legitimate correctional objective." The United States denies this Request in part because it contemplates only a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

32. *Admit ADOC AR 327 requires that correctional officials stop using physical force when the incarcerated individual stops resisting and "the [incarcerated individual] is under control and placed in appropriate restraints."*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, contains language that the application of physical force "[s]hall stop when resistance offered by the inmate ceases and the inmate is under control and placed in appropriate restraints." The United States denies this Request in part because it contemplates only

a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

> 33. *Admit ADOC AR 327 requires the preparation of a Duty Officer Report to document all incidents of the use of physical force.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 327, dated March 4, 2015, states "All incidents of use of force will result in a duty officer report being completed in accordance with AR 302, *Incident Reporting*." The United States denies this Request in part because it contemplates only a select portion of ADOC's "procedures" related to the application of physical force, and denies that ADOC has implemented/consistently enforced this AR.

> 34. *Admit ADOC AR 312 provides correctional officials should only use chemical agents to gain or regain control of a situation when methods of lesser force have been unsuccessful or ineffective.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 312, dated June 30, 2004, contains language that "Chemical agents are to be used only to gain (or regain) control of the situation when methods situated lesser than chemical agents on the 'Use of Force Continuum' have not been successful or when such methods have been determined to be ineffective." The United States denies this Request in part because it contemplates only a select portion of ADOC's procedures related to the use of chemical agents, and its reference to a Use of Force Continuum is unclear (and some deponents could not explain what a Use of Force Continuum is). The United States also denies that ADOC has implemented/consistently enforced this AR.

> 35. *Admit ADOC AR 312 prohibits the use of chemical agents to punish incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 312, dated June 30, 2004, contains language that "Chemical Agents shall never be used for the punishment of inmates." The United States denies this Request in part because it contemplates only a select portion of ADOC's procedures related to the use of chemical agents, and denies that ADOC has implemented/consistently enforced this AR.

> 36. *Admit ADOC AR 312 requires that correctional officials use chemical agents consistently with AR 327, the ADOC Use of Force policy.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the ARs in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 312, dated June 30, 2004, contains language that "Use of chemical agents shall only be used in

situations consistent with . . . , AR 327, ADOC Use of Force Policy." The United States denies this Request in part because it contemplates only a select portion of ADOC's procedures related to the use of chemical agents, and denies that ADOC has implemented/consistently enforced this AR.

37. *Admit ADOC AR 312 provides that the use of a chemical agent may be appropriate in the following situations:*

a. *Self-defense against physical assault;*
b. *Defense of other staff/general public/incarcerated individuals;*
c. *To prevent destruction of state property;*
d. *To quell a disturbance or riot;*
e. *When an incarcerated individual exercises physical resistance to a lawful command;*
f. *To prevent the commission of a felony, including escape.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, this Request is admitted in part and denied in part. The United States admits that AR 312, dated June 30, 2004, contains the language in the list (a) through (f) above. The United States denies this Request in part because it contemplates only a select portion of ADOC's stated policy related to the use of chemical agents, and denies that ADOC has implemented/consistently enforced this AR.

38. *Admit ADOC AR 302 requires ADOC staff to complete a Duty Officer Report to report any Class A or Class B incidents.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question and what incidents constitute Class A or Class B incidents. Without waiving said objections, this Request is denied. While AR 302, dated August 2, 2010, contains language regarding a Duty Officer Report being "completed and transmitted when reporting Class A or B incidents," ADOC's practice is inconsistent with this AR. At some unknown point in the last several years, the United States understands that, at a minimum ADOC materially altered, reorganized, or reclassified what constitutes Class A or Class B incidents as defined in AR 302, but those changes have not been memorialized in an AR.

39. *Admit ADOC utilizes an Incident Report Module to collect and maintain Incident Reports.*

**RESPONSE:** Admitted.

40. *Admit ADOC assigns an on-call warden or captain at each facility who is responsible for responding to any urgent incident.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate; the Request fails to provide sufficient information for the United States to admit or deny it. Specifically, the Request fails to define the term "responding" or what constitutes an "urgent incident." The Request is also vague as to time, including as to whether it is asking if ADOC always makes these purported assignments and for what time period.

41. *Admit AR 300 requires the Law Enforcement Services Division ("LESD") to review and/or investigate all reported violations of law at all ADOC facilities.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question and impermissibly uses the disjunctive to make what is admitted unclear. Without waiving said objections, the United States admits that AR 300, dated November 29, 2022, contains language that "The LESD is responsible for thoroughly reviewing and/or investigating all reported violations of law, to include misdemeanors and felonies relating to ADOC employees and inmates[] . . . ." The United States denies that ADOC has implemented/consistently enforced this AR.

42. *Admit LESD notifies ADOC executive officials and ADOC Institutional Coordinators of major incidents via email.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to define the term "executive officials" or what constitutes "major incidents." The Request is also vague as to time and as to seemingly asking if LESD always "notifies." Subject to said objections, the United States admits that LESD officers have sometimes notified some non-Facility officials via email of some incidents occurring at the Facilities.

43. *Admit LESD agents investigate violent incidents by interviewing witnesses, including incarcerated individuals, correctional officials, and other ADOC staff.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request is vague as to time, as to "violent incidents," (which could be limited to certain class codes), and seemingly asking whether LESD agents always investigate such incidents. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some LESD investigations sometimes contain interviews of some witnesses to violent incidents. The United States denies that LESD investigates all violent incidents and that LESD's investigations always include interviewing witnesses (or interviewing all the witnesses in the Request's "including" list). To the contrary, LESD investigations are oftentimes woefully insufficient as LESD investigators frequently fail to interview key witnesses or potential witnesses.

44. *Admit LESD agents investigate violent incidents by obtaining and reviewing surveillance camera footage of incidents where possible.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request is vague as to time, as to "violent incidents," (which could be limited to certain class codes), and as to what "where possible" is intended to limit. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some LESD investigations sometimes obtain camera footage. The United States denies that LESD always investigates violent incidents and that LESD's investigations always include available camera footage. To the contrary, LESD investigations are oftentimes woefully insufficient as LESD investigators frequently fail to request or secure camera footage, including when a victim purports not to want to pursue criminal charges.

45. *Admit LESD refers incidents to the applicable Office of the District Attorney when LESD substantiates an incident involving a violation of Alabama statute and when the victim wishes to prosecute the offender.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request is vague as to time and as to the phrase "substantiates an incident involving a violation of Alabama statute." Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some LESD investigations are sometimes referred to a District Attorney. The United States denies that LESD processes and procedures are sufficient. Specifically, LESD investigations are oftentimes woefully insufficient as LESD investigators fail to pursue investigations, including those times when a victim does not wish to pursue criminal charges. This leads to ADOC not referring a number of criminal acts to a District Attorney.

46. *Admit ADOC AR 406 establishes an incarcerated individual grievance policy.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, the United States admits that AR 406, dated December 15, 2022, purports to establish "an inmate grievance system." The United States denies that ADOC has implemented/consistently enforced this AR.

47. *Admit the ADOC Commissioner appointed a Departmental Grievance Coordinator to review, investigate, maintain, and document incarcerated individual grievance appeals pursuant to ADOC AR 406.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, the United States admits that AR 406, dated December 15, 2022, contains language regarding appointment of a "Departmental Grievance Coordinator" who is "responsible for the review, investigation, maintenance, and documentation of inmate grievance appeals . . . ." The United States denies that ADOC has implemented/consistently enforced this AR.

48. *Admit ADOC AR 406 provides the warden at each ADOC facility shall appoint an Institutional Grievance Officer to review, investigate and propose resolutions to incarcerated individual grievances.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, the United States admits that AR 406, dated December 15, 2022, purports to allow a warden or designee to appoint an "Institutional Grievance Officer" who is expected "to review, investigate, and propose resolutions to grievances." The United States denies that ADOC has implemented/consistently enforced this AR.

49. *Admit ADOC AR 406 provides the warden at each ADOC facility shall appoint an Institutional Grievance Clerk to maintain and process incarcerated individual grievances.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, the United States admits that AR 406, dated December 15, 2022, purports to allow a warden or designee to appoint an "Institutional Grievance Clerk" who is expected "to handle the clerical processing of inmate grievances." The United States denies that ADOC has implemented/consistently enforced this AR.

50. *Admit ADOC AR 406 prohibits reprisals by other incarcerated individuals or ADOC staff for use of, or participation in, the grievance process.*

**RESPONSE:** Objection; the Request uses the disjunctive, and is compound, unclear, vague, and requires the United States to speculate, including as to the applicable timeframe for the AR in question. Without waiving said objections, the United States admits that AR 406, dated December 15, 2022, purports to prohibits reprisals and states, "ADOC does not tolerate any form of retaliation by inmates or staff for use of, or participation in, the grievance process." The United States denies that ADOC has implemented/consistently enforced this AR.

51. *Admit ADOC provided incarcerated individuals with Personal Education Devices, also known as tablets.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request also seemingly asks if all prisoners have access to tablets. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some prisoners in ADOC custody have, at times, had access to tablet devices, but denies that all prisoners have.

52. *Admit incarcerated individuals can use Personal Education Devices to call the PREA hotline.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request also seemingly asks if all prisoners have access to Personal Education Devices (a.k.a. tablets). Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC has established a telephone hotline for PREA complaints that may be accessed, at times, using tablets. The United States denies this Request as the hotline is not always working or available, and denies that all prisoners have access to tablets.

53. *Admit ADOC's ability to place and keep inmates in restrictive housing is limited by the remedial order in* *__Edward Braggs, et al. v. John Hamm, et al.__*, *In the United States District Court for the Middle District of Alabama, Montgomery Division; Case No. 2:14-cv-00601-MHT (the "Braggs Action," Braggs, 2:14-cv-00601, Doc. No. 3464).*

**RESPONSE:** Admitted in part and denied in part. The United States admits that, due to ADOC's unlawful practices, the PHASE 2A OMNIBUS REMEDIAL ORDER in the *Braggs* litigation imposed requirements related to housing some prisoners with mental health issues in

restrictive housing. The United States denies that Order applies to all prisoners within ADOC's custody.

54. *Admit ADOC AR 331 requires all ADOC facilities to conduct security inspections.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the date of the AR in question. Without waiving said objections, the United States admits this Request in part and denies it in part. AR 331, dated September 11, 2023, purports to require that regular security inspections be conducted and that they be documented by each shift commander. The United States denies that ADOC has implemented/consistently enforced this AR and that security inspections are being conducted and documented in accordance with this AR.

55. *Admit ADOC requires each correctional official to pass through a metal detector before entering an ADOC facility.*

**RESPONSE:** Denied.

56. *Admit ADOC facility supervisors conduct pat-down searches of correctional officials.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and is vague as to seemingly asking if each correctional official receives pat-down searches every time. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some ADOC facility supervisors sometimes conduct pat-down searches of some correctional officials, but denies that all correctional officials are always so searched. This partial admission should not be construed as an acknowledgment that ADOC has effectively implemented methods to prevent contraband from entering its facilities, including through correctional officers.

57. *Admit ADOC disciplines correctional officials who test positive for any illicit drug use.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and is vague as the term "disciplines" (including as opposed to corrective action) and as to seemingly asking if ADOC disciplines all correctional officials. Without waiving said objections, the United States admits that some ADOC correctional officers have been disciplined after testing positive for illicit substances. This partial admission should not be construed as an acknowledgment that ADOC has a robust employee drug testing program that is able to effectively identify the scope of correctional staff who use illicit substances.

58. *Admit ADOC provides metal detectors for use at the entrances of all facilities.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to time, "entrances," and "metal detectors," which could include handheld wands, *compare* Request for Admission 55 (seemingly asking about walk-through detectors). Subject to said objections, the United States admits that walk-through metal detectors have been available at front

entrances at the Facilities at various points in time over the last few years. The United States denies that these metal detectors have been consistently working, turned on, or used on people entering the front entrance to the Facilities.

59. *Admit ADOC randomly selects correctional officials to pass through the Adani Body Scanner device to scan for contraband at the following facilities:*

a. *Bibb Correctional Facility;*
b. *Bullock Correctional Facility;*
c. *Donaldson Correctional Facility;*
d. *Easterling Correctional Facility;*
e. *Elmore Correctional Facility;*
f. *Fountain Correctional Facility;*
g. *Hamilton Correctional Facility;*
h. *Holman Correctional Facility;*
i. *Kilby Correctional Facility;*
j. *Limestone Correctional Facility;*
k. *St. Clair Correctional Facility;*
l. *Staton Correctional Facility; and*
m. *Ventress Correctional Facility*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to time. The Request also includes a reference to Hamilton Correctional Facility, which is not part of this case, and the United States excludes this facility from its answer. Subject to said objections, the Request is denied.

60. *Admit ADOC maintains rules prohibiting incarcerated individuals from possessing contraband.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and is vague as to "maintains." The Request is also unclear as the United States does not know what the Request contemplates by the term "rules." Without waiving said objections, the United States admits this Request in part and denies it in part. The United States admits that AR 403, dated July 24, 2023, purports to establish disciplinary procedures, including for the possession of contraband. The United States denies that ADOC adequately implements or enforces this AR or other regulations or rules prohibiting contraband possession.

61. *Admit Plaintiff cannot identify a correctional facility in the United States that completely eliminated all forms of contraband from the facility.*

**RESPONSE:** Objection; the Request lacks relevance as to whether ADOC provides constitutional conditions in its prisons for men. The Request is also overbroad and unduly burdensome to the extent that the Requests purports to seek an admission about contraband at every correctional facility in the United States; the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. As to whether the United States can presently identify a correctional

facility in the United States that completely eliminated all forms of contraband, subject to said objections, the United States admits.

62. *Admit all ADOC facilities require correctional officials to complete mandatory overtime shifts.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to time. Subject to said objections, the United States admits that in the last few years, ADOC has required many correctional officials to work overtime shifts. As for the higher-level officials within the defined term "correctional officials," the United States denies that "ADOC facilities" require head wardens and/or the "Assistant Deputy Commissioner" to work overtime shifts.

63. *Admit ADOC contracted with Observation Without Limits LLC to install a 2D or 3D radar surveillance system at the following facilities:*

a. *St. Clair Correctional Facility;*
b. *Fountain Correctional Facility;*
c. *Donaldson Correctional Facility;*
d. *Bibb Correctional Facility;*
e. *Staton Correctional Facility;*
f. *Limestone Correctional Facility;*
g. *Bullock Correctional Facility.*

**RESPONSE:** Objection; the Request is compound, uses the disjunctive, and is vague as to time. Subject to said objections, the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. The Director of Facilities Management testified that she did not know which male ADOC Facilities had Observation Without Limits systems or which had functional systems.

64. *Admit ADOC installed Wisenet cameras at ingress and egress points at St. Clair Correctional Facility.*

**RESPONSE:** Objection; the Request is vague as to time and the terms "ingress and egress points" and "Wisenet" cameras. Subject to said objections, the United States admits that ADOC installed a camera for detecting a person's temperature at the entrance of St. Clair. The Request does not ask, and the United States does not admit that the St. Clair entrance currently has this camera, or that it is functional or used.

65. *Admit as of October 2021, ADOC deployed twenty (20) Flir night-vision cameras at guard towers in ADOC Facilities.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to the term "deployed," and to whether this Request is seemingly asking about deployment at every male Facility. Subject to said objections, the United States admits that an October 2021 ADOC email claims 20 Flir night vision cameras were deployed to major male facilities. This Request does not ask about whether those cameras remain functioning, and the Bibb warden, for example, did not recognize what Flir cameras were during his deposition.

66. *Admit ADOC installed Genetec Enterprise Surveillance Systems at all male facilities except Holman Correctional Facility.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to the applicable timeframe. Subject to said objections, the United States admits that a 2021 ADOC email claims that Genetec Enterprise Surveillance Systems had been installed at all male Facilities except for Holman. This Request does not ask about whether those systems remain functioning, and the Bibb warden, for example, did not recognize this system by name during his deposition.

67. *Admit correctional officials can conduct live monitoring of camera feeds in ADOC facilities.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question and is vague as to seemingly asking if all such officials can view all camera feeds from all ADOC Facilities. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that select correctional supervisors—such as some wardens and captains—have the ability to view live surveillance camera feeds at their home/assigned facilities. The United States denies that all correctional officials are permitted to access these video feeds or that these feeds are constantly or effectively monitored.

68. *Admit ADOC installed a fiber-based fence monitoring system at Bibb Correctional Facility and Ventress Correctional Facility.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate as to the applicable timeframe and to the seemingly ambiguous, generic term "fiber-based fence monitoring." Subject to said objections, the United States admits ADOC documents state that ADOC deemed the installation of a shaker fence with fiber cable at Bibb and a shaker fence with fiber cable at Ventress "substantially complete" in April 2023. This Request does not ask about whether those fences remain functioning, and the Bibb warden, for example, did not recognize what a fiber-based fence was during his deposition.

69. *Admit Plaintiff cannot identify a correctional facility in the United States that completely eliminated all forms of sexual violence within the facility.*

**RESPONSE:** Objection; the Request lacks relevance as to whether ADOC provides constitutional conditions in its prisons for men. The Request is also overbroad and unduly burdensome to the extent that the Request purports to seek an admission about sexual violence at every correctional facility in the United States; the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. As to whether the United States can presently identify a correctional facility in the United States that completely eliminated sexual violence, subject to said objections, the United States admits.

70. *Admit ADOC maintains institutional rules prohibiting trading, bartering, selling, and exchanging personal property by incarcerated individuals.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the applicable timeframe in question. The Request is also unclear as the United States does not know what the Request contemplates with the terms "maintains" and "institutional rules." Without waiving said objections, the United States admits this Request in part and denies it in part. The United States admits that AR 403, dated July 24, 2023, contains language concerning disciplinary procedures, including for trading, bartering, and selling. The United States denies that ADOC adequately implements/enforces any regulations or SOPs prohibiting trading, bartering, and selling.

71. *Admit ADOC maintains institutional rules prohibiting acts of inmate-on-inmate violence.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate, including as to the applicable timeframe in question. The Request is also unclear as the United States does not know what the Request contemplates with the terms "maintains" and "institutional rules." Without waiving said objections, the United States admits this Request in part and denies it in part. The United States admits that AR 403, dated July 24, 2023, contains language concerning disciplinary procedures, including several pertaining to violence, such as for homicide, assault on an inmate, etc. The United States denies that ADOC adequately implements/enforces its regulations or SOPs purporting to prohibit homicides, assaults on an inmate, fighting with a weapon, and fighting without a weapon, among others.

72. *Admit ADOC maintains institutional rules prohibiting inmate-on-inmate sexual violence.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate, including as to the applicable timeframe in question. The Request is also unclear as the United States does not know what the Request contemplates with the terms "maintains" and "institutional rules." Without waiving said objections, the United States admits this Request in part and denies it in part. The United States admits that AR 403, dated July 24, 2023, contains language concerning disciplinary procedures, including for sexual assault (forcible), sexual offense (non-forcible) / soliciting, and so on. The United States denies that ADOC adequately implements or enforces its regulations or SOPs purporting to prohibit sexual assault (forcible), and sexual offense (non-forcible) / soliciting, among others.

73. *Admit ADOC offers the Community Opportunity Reformation Education ("CORE") program to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also vaguely seemingly asks if all prisoners are offered participation in the CORE program. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that at least some individuals in ADOC custody have had access to the CORE program at some point in the last few years. The United States denies that all prisoners have been offered access to the CORE program.

74. *Admit incarcerated individuals in the CORE program participate in a 12-month program that provides cognitive behavioral programming.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners participate in a 12-month program with no limitation for whether prisoners leave the program. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC's CORE program is advertised as a cognitive behavior therapy program. The United States denies that the CORE program always lasts 12 months. During this litigation, prisoners and ADOC staff testified as to different lengths of the CORE program.

75. *Admit ADOC offers the Prison Fellowship Academy program to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners are offered participation in the Prison Fellowship Academy program. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that at least some individuals in ADOC custody have had access to the Prison Fellowship Academy program at some point in the last few years. The United States denies that all prisoners have been offered access to the Prison Fellowship Academy program.

76. *Admit ADOC offers the Therapeutic Community program to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners are offered participation in the Therapeutic Community program. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that at least some individuals in ADOC custody have had access to the Therapeutic Community program at some point in the last few years. The United States denies that all prisoners have been offered access to the Therapeutic Community program.

77. *Admit ADOC offers the Substance Abuse Program to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners are offered participation in the Substance Abuse Program. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some individuals in ADOC custody have had access to the Substance Abuse Program in the last few years. The United States denies that all prisoners have been offered access to the Substance Abuse Program or that all the Facilities have the Substance Abuse Program.

78. *Admit ADOC maintains institutional rules prohibiting incarcerated individuals from entering housing units other than the housing unit to which a particular incarcerated individual is assigned.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question. The Request is also unclear as the United States does not know what the Request contemplates with the terms "institutional rules" and "maintains." Without waiving said objections, the United States admits this Request in part and denies it in part. The United States admits that AR 403, dated July 24, 2023, contains disciplinary procedures, including for being in an unauthorized area. The United States denies that ADOC consistently enforces AR 403 in prohibiting prisoners from entering housing units to which they are not assigned or disciplines prisoners who ADOC is aware are doing so.

79. *Admit ADOC provides trade school programs to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also vaguely seemingly asks if all prisoners are offered participation in trade school programs. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that at least some individuals in ADOC custody have had access to trade school programs at some point in the last few years. The United States denies that all prisoners have been offered access to trade school programs.

80. *Admit ADOC's trade school programming includes training in electrical, welding, carpentry, and cabinetmaking skills.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. Without waiving said objections, the United States admits at some point in the last few years, at some of the ADOC Facilities, ADOC trade school programming included electrical, welding, carpentry, and cabinetmaking. The United States denies that all prisoners have been offered access to trade school programs or that all prisons have such programming.

81. *Admit ADOC provides GED programming to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners are provided with GED programming. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that, at some point in the last few years, at least some prisoners in ADOC custody have been permitted to work toward obtaining their GED if they meet certain eligibility criteria. The United States denies that all prisoners have been offered access to GED programming.

82. *Admit that Staton Correctional Facility provides post-high school education programming to incarcerated individuals.*

**RESPONSE:** Objection; the Request is unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. The Request also seemingly asks if all prisoners at Staton are allowed to participate in post-high school courses. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that Staton Correctional Facility has offered post-high school education programming to some prisoners at some point in the last few years. The United States denies that all Staton prisoners have been offered access to post-high school programming.

83. *Admit ADOC provides programming to incarcerated individuals through the implementation of honor dorms.*

**RESPONSE:** Objection; the Request is unclear, vague, confusing, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and ADOC's available programing varies from day to day. Further, the United States finds vague the phrase "provides programming to . . . individuals through the implementation of honor dorms." Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that some dorms in the ADOC Facilities are identified as honor dorms and some prisoners in those dorms have participated in programs at some point in the last few years. The United States denies that all prisoners have been offered access to honor dorms or any programming that may accompany such living quarters.

84. *Admit ADOC requires incarcerated individuals who live in the honor dorms to maintain a job and attend classes.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate. Specifically, the Request fails to identify the applicable timeframe in question, and what constitutes a "job" is vague. Without waiving said objections, the Request is denied.

85. *Admit ADOC contracted with Seay, Seay & Litchfield and Cornerstone Detention Products, Inc. to replace all the cell door locks in St. Clair Correctional Facility.*

**RESPONSE:** Objection; the Request is vague as to time. Without waiving said objection, the Request is admitted in part and denied in part. The United States admits that in approximately 2014, ADOC entered into a contract regarding cell door locks with Seay. The United States denies that this contract resulted in successfully replacing all or a sufficient number of the cell door locks.

86. *Admit Seay, Seay & Litchfield and Cornerstone Detention Products, Inc. completed the cell door lock replacement project at St. Clair Correctional Facility in 2021.*

**RESPONSE:** Objection; the Request is vague as to "completed" and "project." Without waiving said objections, the United States admits that a St. Clair cell door lock replacement project involving Seay ended in approximately 2021, but denies that the project was complete or

successful, as St. Clair still had broken cell door locks at that time. Moreover, this project did not contemplate the related repair and replacement of the problematic door frames.

87. *Admit ADOC assessed the operability of locks in the St. Clair Correctional Facility in 2020, 2022, and 2023.*

**RESPONSE:** Objection; the Request is compound, and vague as to the scope of any assessment. Without waiving said objections, the United States admits that ADOC made internal assessments of some St. Clair locks in 2020 and 2022, and that ADOC contracted for an assessment of some St. Clair locks in 2023. The United States denies that these assessments looked at every St. Clair lock or that ADOC has sufficiently addressed inoperable cell door locks.

88. *Admit ADOC contracted with JMR+H to assess locks for replacement or repair at St. Clair and Bullock*

.

**RESPONSE:** Objection; the Request is compound, and vague as to time and the scope of any assessment. Without waiving said objections, the United States admits that in approximately 2020 ADOC entered into a contract with JMR+H to assess some locks at St. Clair and Bullock. This Request does not ask about the results of that contract, but the United States denies that ADOC has sufficiently addressed inoperable cell door locks.

89. *Admit ADOC contracted with JMR+H to assess how to harden the frames of cell doors at St. Clair Correctional Facility against tampering by inmates.*

**RESPONSE:** Objection; the Request is vague as to time and the scope of any assessment. Without waiving said objections, the United States admits that in approximately 2020 ADOC entered into a contract *with JMR+H; the* scope of work of that contract eventually included assessment of the cell door frames as St. Clair. This Request does not ask about the results of that contract, but the United States denies that ADOC has sufficiently addressed inoperable cell door locks and the related cell door frames.

90. *Admit ADOC implemented the Guard1 PIPE System at St. Clair, William E. Donaldson, Easterling, G.K. Fountain, Kilby, Ventress, Bullock, Bibb, and Limestone.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate as to time and the meaning of "implemented." Subject to said objections, this Request is denied. The Director of Facilities Management, for example, in her deposition could not identify which male ADOC Facilities had this system.

91. *Admit ADOC AR 332 establishes the responsibilities, policies, and procedures for managing security threat groups.*

**RESPONSE:** Objection; the Request is compound, unclear, vague, and requires the United States to speculate, including as to the date of the AR in question. Without waiving said objections, the United States admits that AR 332, dated October 23, 2006, purports to establish "responsibilities, policies, and procedures for the management of Security Threat Groups." The United States denies that ADOC has implemented/consistently enforced this AR.

92. *Admit ADOC identifies, monitors, and manages security threat groups.*

**RESPONSE:** Objection; the Request is compound, vague, and requires the United States to speculate as to time. The United States also assumes this Request is limited to the Facilities at issue in this case. Without waiving said objections, the United States admits that ADOC does some identification of prisoners' potential security threat group affiliation, but denies that ADOC identifies all security threat group members and denies that ADOC effectively monitors and manages security threat groups.

93. *Admit ADOC AR 332 prohibits incarcerated individuals from participating in security threat groups.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate as to time and the date of the AR in question. Without waiving said objections, the United States admits that AR 332, dated October 23, 2006, contains language that it "is the policy of the Alabama Department of Corrections . . . to prohibit inmates from participating in [Security Threat Groups]." The United States denies that ADOC has implemented/consistently enforced this AR or that ADOC "respond[s] appropriately when participation is demonstrated."

94. *Admit ADOC determines whether an incarcerated individual is involved with a security threat group, and if so, classifies the level of the incarcerated individual's involvement in the security threat group.*

**RESPONSE:** Objection; the Request is vague as to time and as to whether the Request is seemingly asking if ADOC makes this determination as to all prisoners. Without waiving said objections, the Request is admitted in part and denied in part. The United States admits that ADOC has in the last few years employed an STG Intelligence Submission Report (or ISR) 332 form, which uses a point system to gauge a prisoner's potential affiliation with a security threat group. The United States denies that ADOC makes this determination as to every prisoner.

95. *Admit the ADOC Commissioner designates an STG State Coordinator to implement that ADOC STG Intelligence Program.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate as to time. Without waiving said objections, the United States admits that ADOC has an STG State Coordinator and that AR 332, dated October 23, 2006, contains language defining the "STG State Coordinator" as an "ADOC employee designated by the ADOC Commissioner to implement the ADOC STG Intelligence Program." The United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable it to admit or deny whether the Commissioner made the designation. The United States denies that ADOC has implemented/consistently enforced AR 332.

96. *Admit the STG State Coordinator and the applicable facility warden designate a correctional official to serve as the STG Facility Coordinator.*

**RESPONSE:** Objection; the Request is vague and requires the United States to speculate as to time. Without waiving said objections, the United States admits that AR 332, dated October 23, 2006, contains language defining the "STG Facility Coordinator" as an "ADOC employee

designated by the STG State Coordinator and the institutional Warden." The United States denies that these STG Facility Coordinator positions are filled at every male ADOC facility.

97. *Admit the STG Facility Coordinator compiles, assesses, and distributes STG intelligence information to ADOC correctional officials and monitors the incarcerated individual population for STG activity.*

**RESPONSE:** Objection; the Request is compound, vague as to "intelligence information" and "monitors," and requires the United States to speculate as to time. Without waiving said objections, the United States admits that AR 332, dated October 23, 2006, contains language defining the "STG Facility Coordinator" as an "ADOC employee designated by the STG State Coordinator and the institutional Warden to compile, assess and disseminate STG intelligence information." The United States denies that these STG Facility Coordinator positions are filled at every male ADOC facility, and denies that STG Facility Coordinators compile, assess, and distribute all necessary STG intelligence information to ADOC correctional officials or adequately monitor the incarcerated individual population for STG activity.

98. *Admit the STG Facility Coordinator completes and submits the STG Quarterly Survey Report to the applicable facility warden.*

**RESPONSE:** Objection; the Request is compound and vague as to time. Subject to said objections, the United States denies.

99. *Admit each ADOC facility warden designates three correctional officials to serve on the STG Review Committee for each ADOC facility.*

**RESPONSE:** Objection; the Request is vague as to time. Subject to said objection, the United States admits that AR 332, dated October 23, 2006, contains language defining the "STG Review Committee" as a "committee of at least three (3) employees designated by the Warden." As to whether each facility currently uses an STG Review Committee, as outlined in the 2006 AR 332, the United States has made a reasonable inquiry in an attempt to respond, but the information known or readily obtainable is insufficient to enable an admission or a denial. The STG State Coordinator testified that he was looking to change the facility STG Review Committee process.

100. *Admit the STG Review Committee for each ADOC facility reviews information relating to an incarcerated individual's possible membership in a security threat group.*

**RESPONSE:** Objection; the Request is vague as to time. Subject to said objection, the United States admits that AR 332, dated October 23, 2006, contains language defining the "STG Review Committee" as a "committee of at least three (3) employees designated by the Warden to review information concerning possible inmate STG membership status." The United States denies that a facility's STG Review Committee reviews information for every prisoner. Moreover, the STG State Coordinator testified that he was looking to change the facility STG Review Committee process.

# # #

STEVEN H. ROSENBAUM
Chief

KERRY KRENTLER DEAN
Deputy Chief

*<u>/s/ Matthew J. Donnelly</u>*
CURTIS HARRIS
GEORGE EPPSTEINER
EILEEN ULATE
MATTHEW J. DONNELLY
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616-2788
matthew.donnelly@usdoj.gov

JASON R. CHEEK
Chief, Civil Division

CARLA C. WARD
Deputy Civil Chief
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov

DATED: May 28, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2024, I electronically mailed the foregoing OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST REQUESTS FOR ADMISSION to Party counsel of record, pursuant to the Parties' stipulation and Federal Rule of Civil Procedure 5(b)(2)(E).

*/s/ Matthew J. Donnelly*
MATTHEW J. DONNELLY
Attorney for the United States