FILED
2026 Aug-31 PM 07:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | **OPPOSED** |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S MOTION FOR SUMMARY JUDGMENT**

Defendants the State of Alabama ("Alabama") and Alabama Department of Corrections ("ADOC," and together with Alabama, the "State") submit this Motion for Partial Summary Judgment. In accordance with this Court's Order (doc. 294; doc 348), the State submitted its Evidentiary Submission on August 28, 2026 (doc. 348), and, pursuant to this Court's August 31, 2026, order (doc. 365), will submit its Memorandum of Law in Support of this Motion within three calendar days from when the Clerk of Court finishes docketing the State's evidentiary submission. In support of this Motion, the State provides the following:

1. In Plaintiff's Second Amended Complaint, it alleges that the State "violate[s] the Eighth and Fourteenth Amendment rights of" inmates "housed in 13 Alabama state prisons (Alabama's Prisons for Men)" "by failing to prevent prisoner-

on-prisoner violence, by failing to prevent prisoner-on-prisoner sexual abuse, by failing to protect prisoners from the use of excessive force by security staff, and by failing to provide safe physical conditions of confinement in violation of the Constitution." (Doc. 71, ¶ 1) (footnote omitted). The Court should grant summary judgment in favor of the State on all of Plaintiff's claims to the extent they rely on allegations regarding correctional staffing; on Plaintiff's excessive-force claim in its entirety; and on Plaintiff's claims regarding inmate violence and inmate sexual abuse to the extent they rely on allegations regarding classification. The undisputed evidence in each of these specific areas outlines demonstrable, consistent, and comprehensive efforts by the State—belying any claim that the State has historically acted with indifference or continues to act with any level of indifference on these issues. For example, the record establishes that ADOC repeatedly analyzed its correctional staffing needs and expanded recruitment and retention efforts; maintained and implemented use-of-force policies through training, investigation, discipline, and criminal referral; and operated a structured classification system involving intake screening, objective risk assessment, periodic review, and safety-related housing considerations.

2. **Allegations regarding correctional staffing.** All four of Plaintiff's claims rely heavily on allegations of alleged correctional understaffing within the thirteen Alabama male prisons. The section of the Second Amended Complaint

entitled "Defendants are Deliberately Indifferent to the Serious Risk of Substantial Harm" (the "Deliberate Indifference Allegations") purports to articulate the bases for each of Plaintiff's claims. (See Doc. 71, ¶ 265 (inmate violence), ¶ 268 (inmate sexual violence), ¶ 271 (excessive force), and ¶ 274 (safe conditions) (each citing the Deliberate Indifference Allegations in support of allegations that the State "exhibited deliberate indifference to the serious risk of substantial harm" in each of these areas)). Plaintiff's Deliberate Indifference Allegations largely focus on alleged correctional understaffing. (Id., ¶¶ 256, 258, 259). Aside from the Deliberate Indifference Allegations, Plaintiff's Second Amended Complaint contains numerous other allegations regarding alleged correctional understaffing. (Id., ¶¶ 87-90, 151-52, 203, 240d, 240e, 241 c, 241d, 242c, 242d, 244d, 244e, 245c, 245d, 246c, 246d, 248c, 248d, 249c, 249d, 250c, 250d, 251c, 251d, 252c, 252d). Thus, allegations regarding correctional staffing underlie all four of Plaintiff's claims.

3. "[P]laintiff must demonstrate, as a threshold matter, that [inmates] suffered a deprivation that was, 'objectively, sufficiently serious.'" Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (some internal quotation marks omitted). Plaintiff cannot do so as to correctional staffing. The undisputed facts demonstrate ADOC's continuous efforts to hire more correctional staff while deploying current correctional staff to operate ADOC's facilities in a safe manner. ADOC's Resource

Planning Unit (the "RPU") performs a full staffing analysis for each facility every two years, including identifying critical posts. In conducting those analyses, the RPU visits ADOC's facilities and evaluates facility-specific factors, including the physical plant, inmate population and custody levels, inmate movement, activities, and incidents, to determine the number and location of necessary posts. ADOC's RPU Coordinator testified that, based on her review, ADOC facilities appropriately cover posts in line with ADOC's staffing analysis. Plaintiff's retained expert Martin Horn ("Horn") agreed that Alabama conducted its staffing analysis process in an appropriate and reasonable manner. Plaintiff's retained staffing expert Kenneth Ray ("Ray") agreed that ADOC considered all of the appropriate information in conducting all four of ADOC's staffing analyses. Ray also did not conclude that ADOC's staffing levels caused harm, but instead testified only that they "could be a risk." Accordingly, Plaintiff cannot meet Wade's "threshold" requirement of establishing a sufficiently serious deprivation as to correctional staffing.

4. Even if Plaintiff could establish a sufficiently serious deprivation as to correctional staffing, Plaintiff cannot establish the State's deliberate indifference to correctional staffing. To do so, Plaintiff must establish, as to each of its four claims, that the State's actions as to correctional staffing knowingly placed inmates at a substantial risk of serious harm and that the State failed to respond to that risk in an objectively reasonable manner. Wade, 106 F.4th at 1253; Dunn v. Comm'r, Ala.

Dep't of Corr., 179 F.4th 1277, 1292 (11th Cir. 2026). To satisfy this standard, the "plaintiff must show that the defendant acted with 'subjective recklessness as used in the criminal law,'" which requires the plaintiff to "demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." Wade, 106 F.4th at 1253 (quoting Farmer, 511 U.S. at 839). Plaintiff cannot establish that the State's own actions with respect to correctional staffing placed inmates at a substantial risk of serious harm because external factors contribute directly to ADOC's staffing challenges.

5. The record establishes that correctional agencies throughout the United States face significant correctional staffing challenges. Indeed, even Plaintiff's retained experts agree that the correctional staffing crisis extends nationwide, including state, local, and federal facilities. The COVID-19 pandemic exacerbated the correctional staffing crisis. Nationwide, state-prison staffing decreased approximately 10% between 2019 and 2022, with 21 states experiencing decreases exceeding 10%, and state-prison employment reached its lowest level in more than two decades in 2022. Plaintiff's own Federal Bureau of Prisons likewise struggled to fill its correctional-officer positions, having filled only 15,309 of the 18,255 authorized positions as of January 2024. In addition, Alabama experiences lower unemployment and labor participation rates than the national average; nine of ADOC's thirteen major men's facilities sit in rural areas; and younger workers seek

job flexibility and the ability to use cell phones at work. All of these factors diminish ADOC's ability to hire more correctional staff. Thus, Plaintiff cannot establish criminal recklessness with respect to correctional staffing levels in ADOC's men's prisons.

6. Moreover, even if Plaintiff could establish criminal recklessness, the State responded reasonably to any risk posed by correctional staffing levels. Wade, 106 F.4th at 1257 (quoting Farmer, 511 U.S. at 844); Swain v. Junior, 961 F.3d 1276, 1286 (11th Cir. 2020). The undisputed evidence demonstrates that ADOC took and continues to take meaningful and effective steps to increase correctional staffing levels. ADOC implemented substantial pay increases in 2016 and 2023; introduced additional categories of correctional staff and contracted with private security companies to work non-contact posts; hired outside consultants and implemented recommendations they provided; reduced Academy training time; revised the Physical Agility/Ability Test; increased hiring events; streamlined the hiring process and implemented multiple measures to increase correctional staff morale. These efforts produced measurable results. Training Academy graduates increased from 52 in 2022 to 160 in 2023 and 266 in 2024. Total correctional staff at almost all of ADOC's men's facilities increased substantially between 2022 and 2024, including increases of 85.7% at Bibb, 62.3% at Limestone, 48.8% at Staton, and 38.1% at Donaldson. Ray credited ADOC's recruitment strategies with the increase in

correctional staffing, while Horn agreed that ADOC demonstrated success in adding to its correctional officer ranks since 2023. These steps represent "the antithesis of" deliberate indifference. Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022); Swain, 961 F.3d at 1289. Thus, the record demonstrates the State's reasonable response to correctional staffing challenges. Indeed, Plaintiff and its retained experts cannot offer a single meaningful step that ADOC should take to increase correctional staffing levels that ADOC did not already take. Therefore, the Court should grant summary judgment to the State on all four of Plaintiff's claims to the extent they rely on correctional staffing.

7. **Excessive Use of Force.** To establish its deliberate-indifference claim based on alleged excessive uses of force, Plaintiff must establish that (1) inmates faced a sufficiently serious deprivation from excessive force; (2) ADOC "was subjectively aware that [its] own conduct" regarding excessive force placed inmates "at substantial risk of serious harm;" and (3) ADOC failed to respond to that risk in an objectively reasonable manner. Wade, 106 F.4th at 1253, 1260; Dunn, 179 F.4th at 1292; Hudson v. McMillian, 503 U.S. 1, 7-9 (1992). To make these showings, Plaintiff must establish that (1) "a 'history of widespread abuse'" put ADOC on notice of excessive uses of force, and ADOC failed to correct the issue; (2) a "custom or policy result[ed] in deliberate indifference to constitutional rights;" or (3) "facts support an inference that the supervisor directed subordinates to act unlawfully or

knew that subordinates would act unlawfully and failed to stop them from doing so." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). Plaintiff can establish none of these facts. Instead, the record demonstrates that ADOC maintained policies limiting the circumstances and manner in which correctional staff could use force; trained staff on use of force and de-escalation; investigated use-of-force incidents; tracked repeated uses of force; disciplined staff for improper uses of force; and referred potential criminal conduct for prosecution.

8. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (internal alterations omitted). Moreover, "'[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'" Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990), abrogated on other grounds as recognized by Williams v. Radford, 64 F.4th 1185, 1198-99 (11th Cir. 2023)). Thus, the law allows correctional staff to employ force in

appropriate circumstances. Indeed, Horn acknowledged that force is an essential element of running a prison.

9. Plaintiff cannot establish a policy or practice of excessive force or a "history of widespread abuse" that should have put supervisors on notice of repeated excessive uses of force. Mathews, 480 F.3d at 1271. Neither Plaintiff's pleading nor Plaintiff's retained experts provided any statistics purporting to establish the frequency with which ADOC correctional staff use excessive force; instead, Plaintiff relies solely on allegations and alleged observations of isolated incidents. Plaintiff's retained data expert Dr. Kevin Quinn ("Quinn") likewise analyzed broad categories of use-of-force incidents, not whether those uses of force were excessive, and his analysis did not account for differences in the severity of the incidents. Plaintiff's retained expert Roger Werholtz ("Werholtz") admitted he performed no statistical analysis of use of force. Accordingly, Plaintiff cannot establish a sufficiently serious deprivation as to excessive force. Wade, 106 F.4th at 1262.

10. The undisputed evidentiary record reflects that ADOC implemented adequate policies and procedures regarding use of force. ADOC's use-of-force policies, both as they existed at the inception of this action and as revised in December 2024 and January 2025, instructed correctional staff that uses of force must be justified, reasonable, and necessary, and that correctional staff should attempt verbal de-escalation before using force. Senior correctional staff confirmed

their understanding that force may be used only when justified or necessary and may not be used in response to verbal insults or taunting. Under ADOC's policies, correctional staff receive training on use of force. That training included de-escalation, and, in 2023, ADOC expanded its de-escalation training by implementing an eight-hour course provided by an outside vendor. ADOC also provided annual defensive-tactics retraining. ADOC's policies provide for multi-level investigations of uses of force and the imposition of discipline and potential referral for criminal prosecution for excessive uses of force.

11. ADOC's comprehensive use-of-force policies represent a far cry from cases in which courts found that policies led subordinates to believe they could use excessive force with impunity. Ingram v. Kubik, 30 F.4th 1241, 1255 (11th Cir. 2022); Mathews, 480 F.3d at 1270. Indeed, even Plaintiff's retained experts agree that ADOC maintains adequate use-of-force policies. Horn described ADOC's current use-of-force policy as a sound policy, and Werholtz confirmed that he offered no criticisms of ADOC's use-of-force policies and procedures.

12. Moreover, the record reflects that the investigations mandated by ADOC's use-of-force policies occur in practice, and that ADOC disciplines correctional staff who use excessive force, including termination and referral for criminal prosecution. For example, between August 2024 and January 2025, ADOC's Use of Force Review Board reviewed at least 58 use-of-force incidents and

found 26 uses of force unjustified or unnecessary. The Board recommended corrective action under ADOC's disciplinary policy in 20 of those cases, while other cases resulted in resignation, mandatory leave pending termination, or other corrective measures. Indeed, many of the use-of-force incidents alleged in Plaintiff's Second Amended Complaint reflect that investigations occurred and correctional staff members received discipline and/or criminal prosecution. (Doc. 71, ¶¶ 207, 209, 224, 226, 227). ADOC's policies, training, investigations, and imposition of discipline demonstrate a reasonable response to any substantial risk of serious harm to inmates posed by excessive uses of force. Accordingly, the Court should grant summary judgment to the State on Plaintiff's use-of-force claim.

13. **Classification.** In support of its claims regarding inmate violence and inmate sexual violence, Plaintiff alleges that ADOC fails to adequately classify inmates. However, the evidence demonstrates that ADOC implemented adequate classification policies. Indeed, even Plaintiff's retained experts agree as to the adequacy of ADOC's classification policies. Horn did not identify any inmate whom ADOC assigned an incorrect custody level or placed at a facility inconsistent with the inmate's classification or custody status. Horn testified that he found nothing inadequate or inappropriate about the custody levels assigned to the inmates and agreed that ADOC's process for determining custody levels remained consistent with national practice.

14. Again, Plaintiff cannot establish a sufficiently serious deprivation related to classification. Wade, 106 F.4th at 1262. ADOC employs classification personnel in both its central office and at each facility. When inmates enter ADOC custody, classification personnel provide screening, assign custody levels, identify appropriate institutional placements, and identify treatment and programming needs. Classification personnel review available records and information regarding each inmate and use an objective Risk Assessment that considers factors including institutional violence, the severity of the current offense, prior assaultive offenses, escape history, prior felony convictions, age, and other risk factors. Initial classification recommendations also undergo multiple levels of review before ADOC's Central Review Board makes the final determination regarding custody level and institutional placement. Classification personnel take into account information regarding inmates' Security Threat Group affiliations and screen inmates for potential risk of sexual vulnerability or aggression. Facility classification personnel review each inmate at least twice a year, and more frequently if events such as disciplinary actions, completion of programs, validation of enemies, or other new information warrant additional reviews.

15. Plaintiff cannot demonstrate either that the State's conduct placed inmates at risk of harm from classification or that the State responded unreasonably to any such risk. Dunn, 179 F.4th at 1292. The record establishes that the State

acted reasonably with respect to classification for over two decades. In 2002, ADOC worked with Dr. Jim Austin to assist in designing, validating, and implementing its classification system. ADOC and Dr. Austin used a National Institute of Corrections template, pilot-tested the classification instrument on a random sample of ADOC's inmate population, and finalized the instrument based on the results. In 2007, ADOC sought assistance from the National Institute of Corrections to revalidate its classification system, which included reliability testing. Dr. Austin later described ADOC's central classification operation as "very impressive" and testified that ADOC's external classification system "meets national standards." Thus, the evidence demonstrates that ADOC acted reasonably with respect to classification.

WHEREFORE, PREMISES CONSIDERED, the State respectfully requests the Court enter summary judgment in its favor as to all four of Plaintiff's claims to the extent Plaintiff relies on allegations regarding correctional staffing; on Count Four (excessive force) in its entirety; on Counts One and Two (inmate violence and inmate sexual violence) to the extent Plaintiff relies on allegations regarding classification.

Dated: August 31, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter

Daniel J. Chism
Megan M. Everett
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com

george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 31st day of August, 2026:

Ashley Light
Eileen Ulate
Matthew Donnelly
Cristina Gamondi
Julia Haller
Patricia Nation
Joshua Bachman
Marlysha Myrthil
Joshua Bedoya
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
marlysha.myrthil@usdoj.gov
joshua.bedoya@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason Cheek
Grace Posey
Praveen Krishna
Don Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel