FILED
2026 Sep-28 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff;<br>v.<br><br>STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | Civil No. 2:20-cv-01971-HDM |

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**United States' Responses to Defendants' Undisputed Facts .............................. 1**

I. Correctional Staffing ........................................................................................ 1

II. Use of Force ................................................................................................... 48

III. Classification ................................................................................................ 60

**United States' Additional Undisputed Facts Supporting Its Response ........... 87**

**United States' Responsive Brief to Defendants' Motion for Summary Judgment ........................................................................................................... 89**

I. Introduction .................................................................................................... 89

II. Summary Judgment Standard ....................................................................... 90

III. There Is Sufficient Evidence that Defendants Are Violating the Eighth Amendment ......................................................................................................... 91

A. Defendants Are Deliberatively Indifferent to Lack of Supervision of Its Inmates. ................................................................................................................ 93

1. Alabama's Understaffing Is Only One Systemic Deficiency Contributing to Violence. .............................................................................................................. 93

2. There Is No Dispute Alabama Prisons Are Understaffed and Defendants Did Not Respond Reasonably to Resolve the Lack of Supervision Caused by Understaffing. ....................................................................................................... 95

3. Defendants Have Not Shown That They Made Reasonable Attempts to Minimize the Risks from Lack of Supervision. ................................................... 99

4. The Eleventh Circuit Has Found Alabama's Arguments Insufficient. ..... 100

5. BOP Evidence Is Irrelevant to the United States' Claims. ....................... 101

B. Alabama's History of Widespread Excessive Force and Eleventh-Hour Policy Changes Support a Finding of Deliberate Indifference. ........................ 104

C. Alabama's Failure to Adequately Implement Classification Policies Contributes to Violence within the Facilities ..................................................... 114

1. The United States Is Not Arguing with the Sufficiency of Alabama's Classification System, but Rather That Defendants Are Not Enforcing It. ... 114

2. Defendants Cannot Rely on the Opinion Testimony of an Undisclosed Expert. ............................................................................................................... 114

3. The Uncontrolled Movement of Prisoners Is Evidence that Defendants Are Deliberately Indifferent to the Risk of Harm Caused by Their Failure to Adequately Control Inmate Housing. ....................................................117

IV. Alabama Improperly Relies on Post-Fact Cutoff Information in Violation of the Court's Order. ....................................................120

V. Conclusion. ....................................................123

# UNITED STATES' RESPONSES TO DEFENDANTS' UNDISPUTED FACTS

Pursuant to the Court's August 13, 2026 Order, the United States submits these responses to Defendants' Statement of Undisputed Facts included in its Memorandum of Law (Doc. 380) in support of their Motion for Summary Judgment (Doc. 372).

## I. Correctional Staffing

### A. The National Correctional Staffing Crisis

The United States disputes the materiality of any of the asserted facts concerning Defendants' alleged National Correctional Staffing Crisis within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of the asserted National Correctional Staffing Crisis to the liability phase of this matter.

1. The United States does not dispute this fact.
2. The United States does not dispute this fact.
3. In his expert report, Ken Ray states that he was "requested to focus [his] assignment on staffing levels." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 121 (Doc. 358-4) at 6.
4. The United States does not dispute this fact.
5. The United States does not dispute this fact.
6. The United States does not dispute this fact.

7. The United States does not dispute this fact.

8. The United States does not dispute this fact.

9. The United States does not dispute this fact.

10. This fact is only partially supported by Defs. Ex. 128 (Doc. 360-127) and not supported by Defs. Ex. 4 (Doc. 360-4).

11. The United States does not dispute this fact.

12. The United States does not dispute this fact.

13. The United States does not dispute this fact.

14. The United States does not dispute this fact.

### B. ADOC's Staffing Analysis Process

15. The United States does not dispute this fact.

16. The United States does not dispute this fact.

17. The United States does not dispute this fact.

18. The United States does not dispute this fact.

19. The United States does not dispute this fact.

20. The United States does not dispute this fact.

21. The United States does not dispute this fact.

22. Dr. Ray agreed that two twelve-hour shifts or three eight-hour shifts were the two more common staffing models. Defs. Ex. 160 (Doc. 373-26) at 68:23–69:2.

23. The United States does not dispute this fact.

24. The United States does not dispute this fact.

25. The United States does not dispute this fact.

26. The United States does not dispute either of the two facts listed in ¶ 26. Portions of this paragraph duplicates facts within ¶ 20.

27. The United States does not dispute this fact.

28. Dr. Ray explained this "time study" as a consideration of "how much time it takes to get work done" as well as the amount of staff it takes "to deal with the unknowns that happen, incidents that occur." Defs. Ex. 160 (Doc. 373-26) at 72:18–73:4.

29. The United States does not dispute this fact, which is duplicative of ¶ 20.

30. The United States does not dispute this fact, which is duplicative of ¶ 20.

31. The United States does not dispute this fact.

32. The United States does not dispute this fact, which is duplicative of ¶ 20.

33. The United States does not dispute this fact, which is duplicative of ¶ 20.

34. The United States does not dispute this fact, which is partially duplicative of ¶ 20.

35. The United States does not dispute this fact, which is duplicative of ¶ 20.

36. The United States does not dispute this fact, which is duplicative of ¶ 20.

37. The United States does not dispute this fact, which is duplicative of ¶ 20.

38. Dr. Ray testified that he could not remember what was included in the shift relief factor for Alabama but stated that the count of total number of officers "typically doesn't anticipate or calculate overtime." Defs. Ex. 160 (Doc. 373-26) at 91:15–96:12.

39. The United States does not dispute this fact.

40. The United States does not dispute that ADOC adopted the Savages' process after a court found, during former Commissioner Jefferson Dunn's tenure, that "persistent and severe shortages of . . . correctional staff" was a contributing factor to Alabama's constitutionally inadequate mental-health care. *See Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1268 (M.D. Ala. 2017).

41. Former Commissioner Dunn stated that [redacted] The United States disputes that these categories are "much more effective" in helping the wardens make resource decisions given the lack of supervision throughout ADOC prisons. *See* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.18-4.29.

42. Ms. Elizabeth Lambert-Hughes stated that [redacted]

43. The United States does not dispute either to the two facts listed in ¶ 43.

44. The United States does not dispute that Ms. Lambert-Hughes testified to such.

45. The United States does not dispute that Ms. Lambert-Hughes testified to such.

46. The United States does not dispute that Ms. Lambert-Hughes testified to such. However, AR 238 does not explicitly require the Resource Planning Unit to use the same process as the original analysis or follow NIC guidelines. *See* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 83 (Doc. 357-51) at 38-54. In violation of this Court's order (Doc. 348 at 10), Defs. Ex. 147 (Doc. 373-13) failed to include all deposition exhibits.

47. The United States does not dispute that Ms. Lambert-Hughes testified to such. AR 238 states that staffing analysis reviews and reports are to be completed on an annual basis. *See* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 83 (Doc. 357-51) at 47-48 (Secs. V.F.1., V.F.3.). AR 238 does not discuss whether staffing analysis reviews and reports alternate years as suggested by Ms. Lambert-Hughes testimony.

48. The United States does not dispute either of the two facts listed in ¶ 48.

49. The United States does not dispute that Ms. Lambert-Hughes testified to such. AR 238 states that the Resource Planning Unit may consider "any other factor that could impact the staffing levels and the need for monitoring." *See* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 83 (Doc. 357-51) at 43 (§ V.A.1.i.).

50. The United States cannot confirm or deny this fact as the citation to Defs. Ex. 139 (Doc. 373-5) at 60:14–61:2 does not seem to match the statement.

51. The United States does not dispute that Ms. Lambert-Hughes testified to such. AR 238 states that the Resource Planning Unit may consider, along with physical plant, "the number and placement of supervisory staff" as well as "any other factor that could impact the staffing levels and the need for monitoring" in calculating adequate staffing levels. *See* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 83 (Doc. 357-51) at 42-43 (§§ V.A.1.d. & i.).

52. The United States does not dispute that Mr. Damone testified to such.

53. The United States does not dispute that Mr. Damone testified to such.

54. The 2022 Staffing Analysis listed factors reportedly considered during the process. Ms. Lambert-Hughes testified the information throughout that section was based on interviews with facility leadership and a review of documents produced by the facility but did not personally review reports regarding critical incidents nor was she aware whether the prior Resource Planning Unit

Coordinator reviewed reports regarding critical incidents. Defs. Ex. 147 (Doc. 373-13) at 76:15–77:5.

55. The United States does not dispute that Ms. Lambert-Hughes testified to such.

56. Ms. Lambert-Hughes testified that the Staffing Analysis uses the ADOC staffing model and applies it to the type of housing unit and population to provide the recommended number of officers. Defs. Ex. 147 (Doc. 373-13) at 57:22–58:17.

57. The United States does not dispute that Ms. Lambert-Hughes testified to such, but refers back to ¶ 54, above.

58. The United States does not dispute that Ms. Lambert-Hughes testified to such.

59. The United States does not dispute that Ms. Lambert-Hughes testified to such.

60. The United States does not dispute this fact.

61. The United States does not dispute that Mr. Damone testified to such.

62. The United States does not dispute this fact.

63. The United States does not dispute this fact.

64. The United States does not dispute this fact.

65. Mr. Horn testified that the staffing analysis includes a post plan for each facility. Defs. Ex. 168 (Doc. 361) at 256:4-8.

66. The United States does not dispute this fact.

67. The United States does not dispute that Ms. Lambert-Hughes testified as such.

68. The United States does not dispute that Ms. Lambert-Hughes testified as such.

69. The United States does not dispute that Ms. Lambert-Hughes testified as such.

70. The United States does not dispute that Ms. Lambert-Hughes testified as such.

71. The United States does not dispute that Ms. Lambert-Hughes testified as such.

72. The United States does not dispute that Ms. Lambert-Hughes testified as such.

73. The United States does not dispute that Ms. Lambert-Hughes testified as such but clarifies that Mr. Damone testified that critical posts must be manned, while mandatory posts are supposed to be manned. [redacted] Defs. Ex. 139 (Doc. 373-5) at 52:15–53:20.

74. Mr. Werholtz testified that it was his understanding that critical post vacancies must be reported through the chain of command, but further stated that, based on his review of warden depositions, the posts identified as the most important for safety and security were not being covered. Defs. Ex. 184 (Doc. 373-49) at 86:3-21.

75. The United States does not dispute this fact.

76. The United States does not dispute this fact.

77. The United States does not dispute this fact.

78. The United States does not dispute that Ms. Lambert-Hughes testified as such; however, this requirement is not included in AR 238. *See* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 83 (Doc. 357-51).

79. The United States does not dispute that Ms. Lambert-Hughes testified as such.

80. The United States does not dispute Ms. Lambert-Hughes statement but refers back to ¶ 78.

81. Ms. Lambert-Hughes receives post-assignment rosters for a seven-day period between the 3rd and the 10th of the month. Defs. Ex. 147 (Doc. 373-13) at 35:12-25.

82. The United States does not dispute that Ms. Lambert-Hughes testified as such. The United States disputes that ADOC provides adequate staff and supervision; this results in unsafe conditions and pervasive violence throughout ADOC. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.1-4.29, 7.1-7.25, 10.1-11.17.

### C. Alabama's Response to the Correctional Staffing Crisis

The United States disputes the materiality of any of the asserted facts concerning Defendants' alleged Correctional Staffing Crisis within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of the asserted a Correctional Staffing Crisis to the liability phase of this matter.

83. The United States does not dispute this fact.

84. Dr. Ray stated that he'd learned of some of the efforts after finalizing his report. Defs. Ex. 160 (Doc. 373-26) at 237:8-11.

85. The United States does not dispute this fact.

86. When asked, assuming the figures presented in Defs. Ex. 130 (Doc. 360-129) were true, whether those figures indicate "that Alabama's legislature and Department of Corrections took a significant step in making sure that Alabama had competitive salaries for first year correctional officers," Dr. Ray responded, "it appears so." Defs. Ex. 160 (Doc. 373-26) at 236:12-18.

87. The United States does not dispute that Ms. Mary Ila Ward testified as such, however notes that Ms. Wards declaration and expert report cited in support of this fact reference pages that include post fact-cutoff information. *See* Defs. Ex. 281 (Doc. 361) at 19-30.

88. The United States does not dispute this fact but disputes the assertion.

89. The United States does not dispute that Ms. Ward testified as such in a declaration attaching her expert report.

90. The United States does not dispute that Ms. Ward testified as such.

91. The United States does not dispute that Ms. Ward testified as such.

92. The United States does not dispute this fact.

93. The United States does not dispute this fact.

94. The United States does not dispute this fact.

95. The United States does not dispute this fact.

96. The United States does not dispute this fact.

97. The United States does not dispute this fact.

98. The United States does not dispute this fact.

99. The United States does not dispute this fact.

100. The United States does not dispute this fact.

101. The United States does not dispute this fact.

102. The United States does not dispute this fact.

103. The United States does not dispute this fact.

104. The United States does not dispute this fact.

105. The United States does not dispute this fact.

106. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

107. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

108. The United States does not dispute that ADOC hired two marketing firms, during Commissioner Dunn's tenure, following a court finding that "persistent and severe shortages of . . . correctional staff" was a contributing factor to Alabama's constitutionally inadequate mental-health care. *See Braggs*, 257 F. Supp. 3d at 1268.

109. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

110. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

111. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

112. The United States does not dispute this fact.

113. The United States does not dispute this fact.

114. The United States does not dispute this fact.

115. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

116. The United States does not dispute either of the two facts listed in ¶ 116.

117. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

118. The United States does not dispute that former Commissioner Dunn testified to both facts listed in ¶ 118 in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

119. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

120. Former Commissioner Dunn stated that [redacted]

121. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

122. Dr. Ray testified that he did not have a reason to believe the exhibit shown to him during his deposition representing a pay increase during former Commissioner Dunn's tenure was not valid. This fact is not supported by Mr. Stan Goolsby's declaration as cited.

123. The United States does not dispute this fact.

124. The United States does not dispute this fact.

125. Dr. Ray agreed that retention bonuses generally would be a positive development but was not aware whether ADOC had received legislative approval to offer retention bonuses. Defs. Ex. 160 (Doc. 373-26) at 233:9-234:1.

126. The United States does not dispute this fact.

127. The United States does not dispute this fact, but notes that [redacted]

[redacted]

128. The United States does not dispute this fact subject to the caveats described in ¶ 127.

129. Former Commissioner Dunn testified that ADOC [redacted]

130. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

131. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

132. The United States does not dispute this fact.

133. The United States does not dispute this fact subject to the above materiality and relevance objection.

134. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

135. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

136. The United States does not dispute that former Commissioner Dunn testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952 on June 28, 2023.

137. The United States does not dispute this fact.

138. The United States does not dispute this fact.

139. The United States does not dispute this fact.

140. The United States does not dispute this fact.

141. Former Commissioner Dunn testified that [redacted]

142. The United States does not dispute this fact, which is duplicative of ¶ 99.

143. The United States does not dispute that former Commissioner Hamm testified as such.

144. The United States does not dispute this fact.

145. The United States does not dispute that former Commissioner Hamm testified as such. The United States disputes that ADOC provides adequate staff and supervision; this results in unsafe conditions and pervasive violence throughout ADOC. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.1-4.29, 7.1-7.25, 10.1-11.17.

146. The referenced exhibit does not provide support for this information.

147. The United States does not dispute that former Commissioner Hamm testified as such.

148. The United States does not dispute that Ms. Lambert-Hughes testified as such.

149. The United States does not dispute that former Deputy Commissioner Dr. Wendy testified as such.

150. The United States does not dispute that Dr. Williams testified as such.

**D. Alabama's Recruitment & Retention Efforts**

151. The United States does not dispute this fact.

152. The United States does not dispute that Ms. Ward testified to such in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

153. The United States does not dispute that Ms. Ward testified to such in in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

154. The United States does not dispute that Ms. Ward testified to such in in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

155. The United States does not dispute that Ms. Ward testified to such in in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

156. The United States does not dispute that Ms. Ward testified to such in in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

157. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

158. The United States does not dispute that Mr. Goolsby testified to such in a declaration, however he does not describe scoring as based on "overall performance". Defs. Ex. 121 (Doc. 360-120) at ¶ 59.

159. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

160. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

161. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

162. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

163. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

164. The United States does not dispute that Warren Averett was retained "following a lawsuit, *Braggs vs. Dunn,* in which [ADOC] was ordered to improve Corrections Officer (CO) staffing" and subsequently produced its report. Defs. Ex. 11 (Doc. 361) at 3.

165. The United States does not dispute this fact.

166. The United States does not dispute this fact.

167. The United States does not dispute this fact.

168. The United States does not dispute this fact.

169. The United States does not dispute this fact.

170. The United States does not dispute this fact.

171. The United States does not dispute this fact.

172. The United States does not dispute this fact.

173. The United States does not dispute this fact.

174. The United States does not dispute this fact; however, Warren Averett recommended ADOC provide "comfortable dri-fit shirts" and noted ADOC had already adopted this recommendation. Warren Averett does not describe ADOC's previously existing uniform policy as "historical". Defs. Ex. 11 (Doc. 361) at 108.

175. The United States does not dispute that Dr. Williams testified to such.

176. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

177. The United States does not dispute that Ms. Renee Minor testified to either fact in ¶ 177.

178. The United States does not dispute that Ms. Minor testified to such.

179. The United States does not dispute that Ms. Minor testified to such.

180. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

181. The United States does not dispute that Ms. Minor testified to such.

182. The United States does not dispute that Ms. Minor testified to such.

183. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

184. The United States does not dispute that Ms. Minor testified to such. Horizon Point was also retained to provide expert services in this case. Defs. Ex. 169 (Doc. 373-34) at 18:1–19:14. Horizon Point is owned and operated by Defendant's expert, Mary Ila Ward. Defs. Ex. 170 (Doc. 373-35) at 15:4-6. *See also*, Defs. Ex. 281 (Doc. 361).

185. The United States does not dispute that Ms. Ward testified to such but specifies that the quoted language appears at Defs. Ex. 169 (Doc. 373-34) at 112:19-23.

186. The United States does not dispute that Ms. Ward testified to such in in *Duke v. Dunn*, Case No. 4:14-cv-01952, on April 22, 2024.

187. The United States does not dispute that Ms. Minor testified to such.

188. The United States does not dispute that Ms. Minor testified to such.

189. The United States does not dispute that Ms. Minor testified to such.

190. The United States does not dispute that Mr. Napoleon Goodson testified to such.

191. The United States does not dispute that Ms. Minor testified to such.

192. The United States does not dispute that Ms. Minor testified to such.

193. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

194. Mr. Goolsby's cited declaration [redacted]

195. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

196. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

197. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

198. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

199. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

200. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

201. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

202. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

203. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

204. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

205. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

206. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

207. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

208. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

209. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

210. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

211. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

212. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

213. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

214. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

215. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

216. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

217. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

218. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

219. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

220. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

221. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

222. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

223. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

224. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

225. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

226. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

227. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

228. The United States does not dispute that Ms. Minor testified to such.

229. The United States does not dispute that Ms. Minor testified to such.

230. The United States does not dispute that Ms. Minor testified to such, and Mr. Goolsby testified as such in a declaration.

231. The United States does not dispute that Ms. Minor testified to such.

232. The United States does not dispute that Ms. Minor testified to such as of January 31, 2024.

233. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

234. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

235. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

236. The United States does not dispute that Ms. Minor testified to such.

237. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

238. When asked "do you feel that ADOC leadership has given you sufficient support to help overcome these barriers", Ms. Minor answered "Absolutely". Defs. Ex. 180 (Doc. 373-45) at 137:4-7.

239. The United States does not dispute that Ms. Minor testified to such but notes that counsel improperly re-orders sentences in Ms. Minor's testimony.

240. The United States does not dispute that Ms. Minor testified to such.

241. The United States does not dispute that Ms. Minor testified to such.

242. The United States does not dispute that Ms. Minor testified to such, but notes that the reference to Mr. Horn's testimony does not support this fact.

243. The United States does not dispute that Ms. Minor testified to such.

244. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

245. The United States does not dispute that Ms. Minor testified to such.

246. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

247. In reviewing an exhibit created by counsel during his deposition, Dr. Ray commented on the exhibit, saying "so their salaries almost doubled in five years" and stated, "I think it's a very positive trajectory." Defs. Ex. 160 (Doc. 373-26) at 231:18–232:7.

248. The United States does not dispute this fact.

249. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

250. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

251. The United States does not dispute that Mr. Goolsby [redacted]

252. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

253. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

254. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

255. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

256. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

257. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

258. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

259. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

260. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

261. The United States does not dispute this fact.

262. The United States does not dispute that Dr. Williams testified to such. [redacted]

*See* United States' Response to Defendants' Statement of Facts ¶ 127.

263. The United States does not dispute that Ms. Minor testified to such.

264. The United States does not dispute that Dr. Williams testified to such.

265. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

266. The United States does not dispute that Mr. Goolsby testified to either of the two facts included in ¶ 226 in a declaration.

267. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

268. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

269. When asked in a hypothetical what he would say if asked by the Court "What do you want me to do about it? what should – what can I – what can be done about [ADOC needing and agreeing they need more staff], in your opinion . . . . other than continue what [ADOC is] doing," that Dr. Ray stated, "Well, I really don't know." Defs. Ex. 160 (Doc. 373-26) at 274:13–275:11.

**E. Correctional Staffing Levels within ADOC's Facilities**

270. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

271. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

272. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

273. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

274. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

275. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

276. The United States does not dispute that Mr. Goolsby testified to such in a declaration.

277. The United States does not dispute this fact.

278. The United States does not dispute that the Quarterly Correctional Staffing Reports from *Braggs et al., v. Lovelace et al.*, Case No. 2:14-cv-00601 (M.D. Ala.), includes a column for vacancy rates.

279. The United States does not dispute this fact.

280. The United States does not dispute this fact.

281. The United States does not dispute this fact, subject to the materiality and relevance objections, above.

282. The United States does not dispute that the vacancy rate reported by ADOC in the *Braggs* Quarterly Correctional Staffing Reports varies between 2018 and 2024.

283. The United States does not dispute the fact that Bibb's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns and incorporates, in Footnote 2, a definition of "correctional staffing" not identifiable in the *Braggs* Quarterly Correctional Staffing reports that this graph purports to depict, the United States denies that the graph shown in this Paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.[1]

284. The United States does not dispute this fact.

285. The United States does not dispute this fact.

286. The United States does not dispute the fact that Bullock's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

[1] Defs. Exs. 90-117 (Docs. 360-89 to 360-116).

287. The United States disputes this fact, as the *Braggs* Quarterly Correctional Staffing reports upon which this calculation appears to have been premised in fact [redacted]. Exs. 111 (Doc. 360-110) and 117 (360-116).

288. The United States does not dispute this fact.

289. The United States does not dispute the fact that Donaldson's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

290. The United States does not dispute this fact.

291. The United States does not dispute this fact.

292. The United States does not dispute the fact that Easterling's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

293. The United States does not dispute this fact.

294. The United States does not dispute the fact that Elmore's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

295. The United States does not dispute this fact.

296. The United States does not dispute this fact.

297. The United States does not dispute the fact that Fountain's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

298. The United States does not dispute this fact.

299. The United States does not dispute this fact.

300. The United States does not dispute the fact that Holman's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

301. The United States does not dispute this fact.

302. The United States does not dispute this fact.

303. The United States does not dispute the fact that Kilby's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

304. The United States does not dispute this fact.

305. The United States does not dispute this fact.

306. The United States does not dispute the fact that Limestone's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

307. The United States does not dispute this fact.

308. The United States does not dispute this fact.

309. The United States does not dispute the fact that St. Clair's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United

States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

310. The United States does not dispute this fact.

311. The United States does not dispute this fact.

312. The United States does not dispute the fact that Staton's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

313. The United States does not dispute this fact.

314. The United States does not dispute this fact.

315. The United States does not dispute the fact that Ventress's correctional staffing levels changed between 2018 and 2024; however, as the graph shown in this paragraph omits numerical values for color-coded sub-columns, the United States denies that the graph shown in this paragraph is illustrative, as the United States is unable to verify its accuracy. *Braggs* Quarterly Staffing Reports.

316. The United States does not dispute this fact.

317. The United States does not dispute this fact.

318. The United States does not dispute this fact.

319. The United States does not dispute this fact.

320. The United States does not dispute this fact.

321. The United States does not dispute this fact.

322. The United States does not dispute this fact.

323. The United States does not dispute this fact.

324. The United States does not dispute that Dr. Ray testified as such.

325. The United States does not dispute this fact.

326. The United States does not dispute this fact.

327. The United States did not retain Dr. Ray to conduct a deployment study on a shift-by-shift basis. The United States retained Dr. Ray to "evaluat[e] the staffing levels of [ADOC] to ascertain whether and to the extent that the staffing and conditions of confinement are sufficient to protect inmates from harm through reasonable and consistent monitoring, supervision, and care." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 121 (Doc. 358-4) at 7. Dr. Ray found that the reviewed prisons "suffer from persistent and severe overcrowding, chronic understaffing, and dangerously high inmate-to-staff ratios," that "materially impair ADOC's ability to supervise prisoners, control contraband, respond to emergencies, provide access to essential services, and protect prisoners from harm." *Id.* at 15. In finding that ADOC's correctional staffing "has fallen increasingly and dangerously below authorized levels," Dr. Ray's opinion, based on his experience, is that "the combination of

overcrowding and understaffing substantially increases the ***risk*** of violence, sexual assault, contraband circulation, gang activity, [. . .] and other serious harm." *Id.* at 15-16 (emphasis added).

328. Dr. Ray's opinion is that, based on his experience, ADOC's staffing levels could contribute to sexual violence being an issue. Defs. Ex. 160 (Doc. 373-26) at 167:1-9. Dr. Ray states that "[v]ulnerable inmates are at heightened risk of exploitation and victimization in facilities with high inmate to CO ratios." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 121 (Doc. 358-4) at 87. Dr. Ray did not complete an assessment as to ADOC's sexual assault levels.

329. Dr. Ray's opinion is that, based on his experience, ADOC's staffing levels could contribute to contraband being an issue, but he did not complete an assessment as to ADOC's contraband levels and is not offering an opinion as to the levels of contraband in ADOC. Defs. Ex. 160 (Doc. 373-26) at 163:1–166:4; 202:7-12. The United States did not retain Dr. Ray to evaluate contraband within the facilities. *See* United States' Response to Defendants' Statement of Facts No. 327. Dr. Ray states that "[h]igh inmate to CO ratios facilitate the thriving circulation of drugs within correctional facilities. With limited supervision, inmates engage in smuggling, distribution, and consumption of illicit substances with relative impunity." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 121 (Doc. 358-4) at 87.

330. Dr. Ray's opinion is that, based on his experience, ADOC's staffing levels could contribute to contraband being an issue, but he did not complete an assessment as to ADOC's contraband levels and is not offering an opinion as to the levels of contraband in ADOC. Defs. Ex. 160 (Doc. 373-26) at 163:1–166:4; 202:7-12. The United States did not retain Dr. Ray to evaluate contraband within the facilities. *See* United States' Response to Defendants' Statement of Facts No. 327. Dr. Ray states that "[h]igh inmate to CO ratios facilitate the thriving circulation of drugs within correctional facilities. With limited supervision, inmates engage in smuggling, distribution, and consumption of illicit substances with relative impunity." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 121 (Doc. 358-4) at 87.

331. Dr. Ray's opinion is that, based on his experience, ADOC's staffing levels could contribute to sexual violence being an issue. Defs. Ex. 160 (Doc. 373-26) at 167:1-9. The United States did not retain Dr. Ray to evaluate sexual violence within the facilities. *See* United States' Response to Defendants' Statement of Facts No. 327. Dr. Ray states that "[v]ulnerable inmates are at heightened risk of exploitation and victimization in facilities with high inmate to CO ratios." U.S. Evid. in Supp. of Mot. for Summ. J. Ex. 121 (Doc. 358-4) at 87.

332. Dr. Ray's opinion is that, based on his experience, ADOC's staffing levels could have an impact on the number of uses of force but did not analyze uses of force within ADOC. Defs. Ex. 160 (Doc. 373-26) at 169:18–172:8. The United States did not retain Dr. Ray to evaluate uses of force within the facilities. *See* United States' Response to Defendants' Statement of Facts No. 327.

333. The United States does not dispute this fact.

334. The United States does not dispute this fact.

335. Dr. Ray found that the reviewed prisons "suffer from persistent and severe overcrowding, chronic understaffing, and dangerously high inmate-to-staff ratios," that "materially impair ADOC's ability to supervise prisoners, control contraband, respond to emergencies, provide access to essential services, and protect prisoners from harm." U.S. Evid. in Supp. of Mot. for Summ. J. Ex. 121 (Doc. 358-4) at 15. In finding that ADOC's correctional staffing "has fallen increasingly and dangerously below authorized levels," Dr. Ray's opinion, based on his experience, is that "the combination of overcrowding and understaffing substantially increases the ***risk*** of violence, sexual assault, contraband circulation, gang activity, [. . .] and other serious harm." *Id.* at 15-16 (emphasis added).

336. Dr. Ray stated "I don't write in my report that the staffing levels are causing harm. I didn't write the staffing levels are causing risk. I said these are indicators. I just state. . . [with] these staffing levels, here's the things that could be a risk." Defs. Ex. 160 (Doc. 373-26) at 160:14-20. *See also* United States' Response to Defendants' Statement of Facts No. 335.

337. The United States does not dispute that Dr. Ray testified as such concerning the recruitment and retention of officers. Defs. Ex. 160 (Doc. 373-26) at 251:20-252:15. Dr. Ray neither offered an opinion nor testified concerning whether ADOC or its leadership is taking appropriate steps to address inadequate supervision in addition to ADOC's expressed need to hire more officers. *Id.* The United States disputes that ADOC leadership is appropriately responding to inadequate staffing and lack of supervision; this results in unsafe conditions and pervasive violence throughout ADOC. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.1-4.29, 7.1-7.25, 10.1-11.17.

338. This assertion is duplicative of ¶ 337.

### F. Correctional Staffing within the Bureau of Prisons ("BOP")

The United States disputes the materiality of any of the asserted facts concerning BOP staffing within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of BOP staffing to the liability phase of this matter.

339. The United States does not dispute this fact.

340. The United States does not dispute this fact.

341. The United States does not dispute this fact except to note that there is text interspersed in the cited letter between "BOP has experienced staffing shortages over the last several decades" and the quoted excerpt that follows in the Defendants' submission (beginning "At a recent Senate Judiciary Committee hearing[….]"). Defs. Ex. 129 (Doc. 360-128) at 2, 3.

342. The United States does not dispute this fact.

343. The United States does not dispute this fact.

344. The United States does not dispute this fact.

345. The United States does not dispute this fact.

346. The United States does not dispute this fact.

347. The United States does not dispute this fact.

348. The United States does not dispute this fact.

349. The United States does not dispute this fact.

350. The United States does not dispute this fact.

351. The United States does not dispute this fact.

352. The United States does not dispute this fact.

## G. BOP's Response to the National Correctional Staffing Crisis

The United States disputes the materiality of any of the asserted facts concerning the alleged National Correctional Staffing Crisis within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of the alleged National Correctional Staffing Crisis to the liability phase of this matter.

353. The United States does not dispute this fact.

354. The United States disputes this paragraph as it is not an assertion of fact but a conclusion of law. The United States concedes that 18 U.S.C. § 4351(c) states that ten members of the Board shall be appointed initially by the Attorney General of the United States.

355. The United States disputes this paragraph as it is not an assertion of fact but a conclusion of law. The United States concedes that 18 U.S.C. § 4351(b) states that the Director of the Federal Bureau of Prisons "or his designee" shall serve as a member of the Commission ex officio.

356. The United States does not dispute this fact.

357. The United States does not dispute this fact.

358. The United States does not dispute this fact.

359. The United States disputes this fact's use of the term "rather than," as the text of the deposition cited by the Defendants reads as follows: "Q[:] Have you

ever done a staffing analysis of a correctional facility in terms of the number of officers needed to staff it? A[:] Yes. We refer to it as complement analysis, as far as you're talking about correctional [. . .]." Defs. Ex. 150 (Doc. 373-16) at 35:6-20.

360. The United States does not dispute this fact.

361. The United States does not dispute this fact.

362. The United States disputes this fact as, while the testimony cited by the Defendants confirms that quarterly analyses had to be "within what you have authorized," there is no testimony in the cited excerpt that the authorizations in fact "constrained" BOP's staffing evaluations. Defs. Ex. 150 (Doc. 373-16) at 63:22–64:9.

363. The United States does not dispute this fact.

364. The United States does not dispute this fact.

365. The United States does not dispute this fact.

366. The United States disputes this fact's insofar as it uses the term "need-based," as that term does not appear in the portion of the deposition cited by the Defendants and, as established above, in ¶ 364, BOP retained Deloitte to conduct "a professional evaluation of variables to determine a perfect world." Defs. Ex. 150 (Doc. 373-16) at 51:25–52:20; 64:10-15.

367. Subject to the United States' dispute of the term "needs-based" (*see* United States' Response to Defendants' Statement of Facts ¶ 366) the United States does not dispute this fact.

368. The United States does not dispute this fact.

369. The United States does not dispute this fact.

370. The United States does not dispute this fact.

371. The United States does not dispute this fact.

372. The United States does not dispute this fact.

373. The United States does not dispute this fact.

374. The United States does not dispute this fact.

375. The United States does not dispute this fact.

376. The United States does not dispute this fact.

377. The United States does not dispute this fact.

378. The United States does not dispute this fact.

379. The United States does not dispute this fact.

380. The United States does not dispute this fact.

381. The United States does not dispute this fact.

382. The United States does not dispute this fact.

383. The United States does not dispute this fact.

384. The United States does not dispute this fact.

385. The United States does not dispute this fact.

386. The United States does not dispute this fact.

387. The United States disputes this fact and specifically its attribution of an increase in pay for correctional officers across the United States including in Alabama to "correctional staffing shortages" at BOP, as the portion of the deposition cited by the Defendants does not reference "correctional staffing shortages" nor does it specifically address the State of Alabama. Defs. Ex. 150 (Doc. 373-16) at 73:21–74:2.

388. The United States does not dispute this fact.

### H. BOP's Augmentation Process

The United States disputes the materiality of any of the asserted facts concerning BOP staffing within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of BOP staffing to the liability phase of this matter.

389. The United States does not dispute this fact.

390. The United States does not dispute this fact. All BOP non-correctional staff that fill correctional posts through augmentation are certified as correctional officers, regardless of whether they are assigned to work a correctional post. Defs. Ex. 134 (Doc. 373-1) at 79:23–80:20.

391. The United States does not dispute this fact.

392. The United States disputes this fact as the two descriptions of augmentation cited by the Defendants appear to conflict; Warden Keyes agreed with the description of augmentation as meaning "non-correctional staff filling correctional positions," including teachers, case managers, supervisors, counselors and secretaries; however, Warden Starr described augmentation as a reassignment of "non-custody" staff, *excluding clinical staff*, to work a "correctional services post." Defs. Ex. 179 (Doc. 373-44) at 139:13-22; 140:11-17; Defs. Ex. 174 (Doc. 373-39) at 120:8-21.

393. The United States does not dispute this fact.

394. The United States does not dispute this fact.

395. The United States does not dispute this fact.

396. The United States does not dispute that Senator Manchin, in his letter to former BOP Director Colette Peters, states "[t]he Senate Appropriations Committee, of which I am a member, discusses the dangerous practice of augmentation in the Fiscal Year 2024 Commerce-Justice-Science Appropriations bill." Defs. Ex. 293 (Doc. 374-79) at 1.

397. The United States does not dispute this fact.

398. The United States does not dispute this fact.

399. The United States does not dispute this fact.

## I. BOP-Specific Correctional Staffing

The United States disputes the materiality of any of the asserted facts concerning discovery of BOP facilities within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of BOP facilities to the liability phase of this matter.

400. The United States does not dispute this fact.

### 1. FCI Atlanta

401. The United States does not dispute this fact.

402. The United States disputes this fact, as the portion of the deposition transcript cited by the Defendants appears to refer only to the percentage of *correctional officer* vacancies. Defs. Ex. 134 (Doc. 373-1) at 33:4-17.

403. The United States does not dispute this fact.

404. The United States does not dispute this fact with the exception that, rather than "report[ing]" that fatigue, exhaustion, and low morale have reduced staff productivity," Senators Warnock and Ossoff in fact reported that they "***have heard reports that*** fatigue, exhaustion, and low morale have reduced staff productivity." Defs. Ex. 294 (Doc. 374-80) at 1 (emphasis added).

405. The United States does not dispute this fact.

406. The United States does not dispute this fact.

407. The United States does not dispute this fact.

408. The United States does not dispute this fact.

409. The United States does not dispute this fact.

410. The United States disputes this fact, as the portion of the deposition for which this fact is cited is not clear as to the issue of what the "Glynco" training is including whether it required augmentation or, instead, prepared non-custody staff for employment in augmentation. Defs. Ex. 134 (Doc. 373-1) at 78:18–80:2.

411. The United States does not dispute this fact.

412. The United States does not dispute this fact.

**2. FCC Coleman**

413. The United States does not dispute this fact.

414. The United States does not dispute this fact.

415. The United States does not dispute this fact.

416. The United States does not dispute this fact.

417. The United States does not dispute this fact.

418. The United States does not dispute this fact.

419. The United States does not dispute this fact.

420. The United States disputes this fact as the portions of the depositions cited by the Defendants apply only to Coleman; however, insofar as these facts apply

only to Coleman, the United States does not dispute these facts. Defs. Ex. 187 (Doc. 373-52) at 79:3-6; 109:2-22.

421. The United States does not dispute this fact.

422. The United States does not dispute this fact.

423. The United States does not dispute this fact.

424. The United States does not dispute this fact.

425. The United States does not dispute this fact.

426. The United States does not dispute this fact.

**3. USP Hazelton**

427. The United States does not dispute this fact.

428. The United States does not dispute this fact.

429. The United States does not dispute this fact.

430. The United States does not dispute this fact.

431. The United States does not dispute this fact.

432. The United States does not dispute this fact.

433. The United States does not dispute this fact.

434. The United States does not dispute this fact.

435. The United States does not dispute this fact.

436. The United States does not dispute this fact.

437. The United States does not dispute this fact.

438. The United States does not dispute this fact.

**4. FCC Yazoo City**

439. The United States does not dispute this fact.

440. The United States does not dispute this fact.

441. The United States does not dispute this fact.

442. The United States does not dispute this fact.

443. The United States does not dispute this fact.

444. The United States does not dispute this fact.

445. The United States does not dispute this fact.

446. The United States does not dispute this fact.

447. The United States does not dispute this fact.

448. The United States does not dispute this fact.

449. The United States does not dispute this fact.

450. The United States does not dispute this fact.

451. The United States does not dispute this fact.

452. The United States does not dispute this fact.

**II. Use of Force**

453. The United States does not dispute this fact.

454. The United States does not dispute this fact.

455. The United States does not dispute this fact.

456. The United States does not dispute this fact.

457. The United States does not dispute this fact.

458. The United States does not dispute this fact.

459. The United States does not dispute this fact.

### A. ADOC'S Use-of-Force Policy Effective Until January 27, 2025

460. The United States does not dispute this fact.

461. The United States does not dispute this is what AR 327 (2015) required.

462. The United States does not dispute this is what AR 327 (2015) required.

463. The United States does not dispute this is what AR 327 (2015) required.

464. The United States does not dispute this fact.

465. The United States does not dispute this fact.

466. The United States does not dispute this fact.

467. The United States does not dispute this fact.

468. The United States does not dispute this fact.

469. The United States does not dispute this fact.

### B. Use of Force Training under the 2015 Use-of-Force Policy

470. The United States does not dispute this is what AR 327 (2015) required.

471. The United States does not dispute this is what AR 327 (2015) required.

472. The United States does not dispute this fact.

473. The United States does not dispute this fact.

474. The United States does not dispute this fact.

475. The United States does not dispute this fact.

476. The United States does not dispute this fact.

477. The United States does not dispute this fact.

478. The United States does not dispute this fact.

479. The United States does not dispute this fact.

480. The United States does not dispute this fact.

481. The United States does not dispute this fact.

482. The United States does not dispute this fact.

483. The United States does not dispute this fact.

484. The United States does not dispute this fact.

485. The United States does not dispute this fact.

486. The United States does not dispute this fact.

### C. Investigations Under the 2015 Use-of-Force Policy

487. The United States does not dispute this fact.

488. The United States does not dispute this fact.

489. The United States does not dispute this fact.

490. The United States does not dispute this fact.

491. The United States disputes this in part. Per Sean Stewart's statement, LESD was responsible for investigations with criminal implications against

employees and OIG was responsible for investigations with administrative implications against employees. He does not state that OIG and LESD conducted their respective investigations "as needed" and does not state that every incident that should have been investigated by OIG or LESD was indeed investigated by them. Defs. Ex. 185 (Doc. 373-50) at 93:21–94:9.

492. The United States does not dispute this fact.

493. The United States does not dispute this fact.

494. The United States does not dispute this fact.

495. The United States does not dispute this fact.

496. The United States does not dispute this fact.

497. The United States disputes that the depicted chart accurately summarizes the data in the cited exhibits (the United States' Exhibits 743-750). The cited exhibits are Excel spreadsheets, containing tens of thousands of records each. Defendants neither attach nor explain how the chart was created. Further, the chart appears to provide a visual cue suggesting that use of force incidents have been on a significant decline since 2022. The United States' own review of the exhibits for 2023 and the first half of 2024 (Exs. 747-750), using filters for columns S-W, yields significantly higher numbers than those depicted in Defendants' chart of unknown origin.

498. For the same reasons outlined in United States' Response to Defendants' Statement of Facts ¶ 497, the United States disputes what are essentially four versions of the same chart purporting to break down the data by incident type.

499. The United States disputes this fact as Ms. Bickhaus does not state an officer's status is tracked after he or she is identified as using force three times in a 90-day period. Defs. Ex. 136 (Doc. 373-3) at 127.20–128:3.

500. The United States does not dispute this fact.

501. The United States disputes this fact. This statement by Ms. Bickhaus appears to discuss OIG's efforts to make sure investigations are completed and not necessarily tracking what becomes of officers identified as using force three times in a 90-day period. Defs. Ex. 136 (Doc. 373-3) at 124:15–129:11.

502. The United States does not dispute this fact.

503. The United States does not dispute this fact.

504. The United States disputes this in part. Captain Nolen is not testifying as to what is actually done, but rather his understanding of the policy based on the training he has received. Defs. Ex. 142 (Doc. 373-8) at 22:3-17.

505. The United States disputes this in part. Captain Danzey is testifying as to his understanding of the policy, not necessarily what is actually done. Defs. Ex. 156 (Doc. 373-22) at 130:10–136:17.

506. The United States disputes this in part. Warden Gordy is describing the practice at Bibb, not necessarily all ADOC facilities. He goes on to testify that a correctional officer could use force and not tell anyone. Defs. Ex. 140 (Doc. 373-6) at 154:10–157:19.

507. The United States does not dispute this fact in so far as it is stating Sean Stewart's opinion. Mr. Stewart does not opine that ADOC always follows the process he describes.

**D. Discipline Under the 2015 Use-of-Force Policy**

508. The United States does not dispute this fact.

509. The United States does not dispute this fact.

510. The United States does not dispute this fact.

511. The United States does not dispute this fact.

512. The United States does not dispute this fact.

513. The United States does not dispute this fact in so far as Warden Lamar is describing the practice at Bullock

514. The United States disputes this fact in in that Warden Lamar is describing the practice at Bullock, not necessarily ADOC as a whole.

515. The United States disputes this in part. Warden Gordy further testified that this recommendation was sent up the "chain" to be affirmed and that he did not

"think he got that one back". It is unclear whether the two-day suspension was approved or executed. Defs. Ex. 145 (Doc. 373-11) at 161:8-9.

516. The United States does not dispute this fact.

517. The United States does not dispute this fact.

518. The United States does not dispute this fact.

519. The United States does not dispute this fact.

520. The United States does not dispute this fact.

521. The United States does not dispute this fact.

522. The United States does not dispute this fact.

523. The United States does not dispute this fact.

524. The United States disputes this fact as the fact being stated is unclear.

### E. Criminal Referrals Under the 2015 Use-of-Force Policy

525. The United States does not dispute this fact.

526. The United States does not dispute this fact.

527. The United States does not dispute this fact.

528. The United States does not dispute this fact.

529. The United States disputes this in part. Mr. McNatt testifies that he has the FBI/DOJ task-force officer review referrals because "I have the luxury of having the FBI/DOJ TFO in my region . . ." Furthermore, AR 327 (2015) does

not require review by an FBI-DOJ task-force officer. Defs. Ex. 161 (Doc. 373-27) at 128:6–129.17.

530. The United States does not dispute this fact.

531. The United States does not dispute this fact.

532. The United States does not dispute this fact.

533. The United States does not dispute this fact.

534. The United States does not dispute this fact.

### F. Development of ADOC's New Use-of-Force Policy and New Use of Force Manual

535. The United States does not dispute this fact.

536. The United States does not dispute this fact.

537. The United States does not dispute this fact.

538. The United States does not dispute this fact.

539. The United States does not dispute this fact.

540. The United States does not dispute this fact.

541. The United States does not dispute this fact.

542. The United States does not dispute this fact.

543. The United States does not dispute this fact.

544. The United States does not dispute this fact.

545. The United States does not dispute this fact.

### G. ADOC's Revised Use-of-Force Policy and New Use of Force Manual

546. The United States does not dispute this fact.

547. The United States does not dispute this fact.

548. The United States does not dispute this fact.

549. The United States does not dispute this fact.

550. The United States does not dispute this fact.

551. The United States does not dispute this fact.

552. The United States does not dispute this fact.

553. The United States does not dispute this fact in so far as the statement is limited to the officials cited.

554. The United States does not dispute this fact.

555. The United States does not dispute this fact.

556. The United States does not dispute this fact.

557. The United States does not dispute this fact.

558. The United States does not dispute this fact.

559. The United States does not dispute this fact.

560. The United States does not dispute this fact.

### H. Training on ADOC's New Use-of-Force Policy and Use of Force Manual

561. The United States does not dispute this fact.

562. The United States does not dispute this fact.

563. The United States does not dispute this fact.

564. The United States does not dispute this fact.

565. The United States does not dispute this fact.

566. The United States does not dispute this fact.

## I. Investigations Under ADOC's New Use-of-Force Policy and Manual

567. The United States does not dispute this fact.

568. The United States does not dispute this fact.

569. The United States does not dispute this fact.

570. The United States does not dispute this fact.

571. The United States does not dispute this fact.

572. The United States does not dispute this fact.

573. The United States does not dispute this fact.

574. The United States does not dispute this fact.

575. The United States does not dispute this fact.

576. The United States does not dispute this fact.

577. The United States does not dispute this fact.

578. The United States disputes this fact in that it is not clear that former Commissioner Hamm is stating the Review Board actually operates in compliance with the Use of Force Manual. Former Commissioner Hamm goes

on to admit that he does not know if the Review Board is "mentioned in that manual". Defs. Ex. 154 (Doc. 373-20) at 140:23–141:10.

579. The United States does not dispute this fact.

580. The United States does not dispute this fact.

581. The United States disputes this in part. This is a partially correct restatement of the Use of Force Manual but not a statement about actual practice. [redacted]

582. The United States does not dispute this fact to the extent it describes policy and not practice.

583. The United States does not dispute this fact.

584. The United States disputes this fact as the fact being stated is unclear.

585. The United States disputes this fact as Special Agent Hamm testifies that it is "expected" that investigators speak with witnesses and that she personally speaks with them but does not believe the requirement is "written down" nor does she testify that all investigators actually do so. Defs. Ex. 188 (Doc. 373-53) at 54:11–55:9.

### J. Discipline for Improper Uses of Force Under the New Use-of-Force Policy

586. The United States does not dispute this fact.

587. The United States does not dispute this fact.

588. The United States does not dispute this fact.

589. The United States does not dispute this fact.

590. The United States does not dispute this fact.

591. The United States does not dispute this fact.

592. The United States does not dispute this fact.

593. The United States does not dispute this fact.

### K. Dr. Quinn's Testimony with Respect to the Use of Force

594. The United States does not dispute this fact.

595. The United States does not dispute this fact.

596. The United States does not dispute this fact.

597. The United States does not dispute this fact.

598. The United States does not dispute this fact.

599. The United States does not dispute this fact.

600. The United States disputes this fact in part. Dr. Quinn states that he analyzed data regarding "use of force" but makes no statement about whether he analyzed "excessive force".

## III. Classification

601. The United States does not dispute this fact.

### A. Plaintiff's Expert Opinions Concerning Classification

602. The United States does not dispute that it has not offered an expert on the sufficiency of written classification manuals or policies, but disputes that it has not offered expert opinions on Defendants enforcement of its classification system. United States expert Michelle Bonner opined on Defendants practice of improperly housing vulnerable prisoners with sexually violent perpetrators and allowing unfettered unauthorized movement. U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 118 (Doc. 358-1) at 9; Defs. Ex. 173 (Doc. 373-38) at 203:8–205:3. One of Martin Horn's offered opinions is that "ADOC fails to enforce classification and fails to ensure accountability for prisoners." U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 119 (Doc. 358-2) at 7, 16-17, 230. Roger Weholtz opined on the inability of Defendants to manage inmate movement and pointed to a number of Defendants' classification and/or housing policies that are not being enforced. U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 122 (Doc. 358-5) at 16, 20, 35-36, 51, 61, 81, 84.

603. The United States does not dispute that Ms. Bonner testified that she does not consider herself an expert in classification systems, but she does consider herself an expert in inmate sexual safety, which includes properly housing

inmates in accordance with sexual safety standards. Defs. Ex. 173 (Doc. 373-38) at 59:13–61:9; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 118 (Doc. 358-1) at 2-5.

604. The United States does not dispute this fact but notes that Defendants did not produce those documents in discovery.

605. The United States does not dispute this fact but notes that Defendants did not produce those documents in discovery.

606. The United States disputes this fact. Mr. Horn is confident that he reviewed some medical and mental health evaluations that occur at intake. Defs. Ex. 168 (Doc. 361) at 79:19–80:2.

607. The United States does not dispute this fact.

608. The United States does not dispute this fact.

609. The United States does not dispute this fact.

610. The United States does not dispute this fact.

611. The United States does not dispute this fact.

612. The United States does not dispute this fact.

613. The United States does not dispute this fact.

614. The United States does not dispute this fact.

615. The United States does not dispute this fact.

### B. Development of ADOC's Classification System

The United States disputes the materiality of any of the asserted expert opinion of Dr. Jim Austin—who was not designated as a testifying expert in this matter—within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of Dr. Austin's opinions to the liability phase of this matter.

616. The United States does not dispute this fact.

617. The United States does not dispute this fact.

618. The United States does not dispute this fact.

619. The United States does not dispute this fact.

620. The United States does not dispute this fact.

621. The United States does not dispute this fact.

622. The United States does not dispute this fact.

623. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

624. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

625. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

**C. ADOC's Classification Policy and Manual**

626. The United States does not dispute this fact.

627. The United States does not dispute this is what AR 400 states.

628. The United States does not dispute this fact.

629. The United States does not dispute this is what ADOC's Classification Manual states.

630. The United States does not dispute this is what ADOC's Classification Manual states.

631. The United States does not dispute this is what ADOC's Classification Manual states.

632. The United States does not dispute this is what ADOC's classification system requires. The United States disputes that this is the practice within the discovery period. There are numerous examples of prisoners losing their assigned bed and being forced to sleep on the floor or in another cell, prisoners moving between dormitories freely, prisoners living and sleeping in dormitories to which they are not assigned and of prisoners committing acts of violence in dorms they are not assigned. U.S. Mot. for Summ. J., Doc. 377,

SOF ¶¶ 6.1-6.9, 6.12-22; *see also* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 536 (Doc. 366-48) at 3 (on [redacted] during an investigation into the death of [redacted], an officer commented that "[t]he [bed] roster ain't right … [the inmates] don't sleep where they're supposed to."); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 119 (Doc. 358-2) at 34–38; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 750 (Doc. 370); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 374 (Doc. 362-54); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 53 (Doc. 357-26) at 55:9–22, 264:16–265:11; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 57 (Doc. 357-29) at 90:15–91:15; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 66 (Doc. 357-38) at 133:19–135:2; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 71 (Doc. 357-42) at 50 Ln: 3–13; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 75 (Doc. 357-46) at 130:23–131:9; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 95 (Doc. 370) at 210:20–212:3; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 97 (Doc. 357-57) at 63 Ln: 1–16; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 103 (Doc. 357-58) at 101:18–102:5; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 105 (Doc. 357-60) at 94 Ln: 7–15; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 254 (Doc. 359-55); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 42 (Doc. 357-18) at 82:7–83:8; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 58 (Doc. 357-30) at 66 Ln: 3–12; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 67 (Doc. 357-39) at 130 Ln: 5–18; U.S.

Evid. in Supp. of Mot. for Summ. J., Ex. 71 (Doc. 357-42) at 49 Ln: 5–7, 156 Ln: 5–7; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 81 (Doc. 370) at 181:15–182:7; US Ex. 90 (Doc. 357-54), p. 153 Ln: 16–p. 154 Ln: 17; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 94 (Doc. 370) at 126:17–19, 128:23–129:4; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 95 (Doc. 370) at 383:12–385:10; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 105 (Doc. 357-60) at 93 Ln: 18–20; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 117 (Doc. 370) at 41 Ln: 7–9; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 70 (Doc. 370) at 111 Ln: 8–10; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 82 (Doc. 370) at 101 Ln: 1–3; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 115 (Doc. 357-62) at 165 Ln: 16–20; *see also* ADOC reported incidents for "out of place" or "unauthorized location" from 2019 through January 31, 2025, at U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 751 (Doc. 370) (7/1/2024 to 1/31/2025); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 743 (Doc. 370) (1/1/2019 to 12/31/2019); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 744 (Doc. 370) (1/1/2020 to 12/31/2020); US Ex. 745 (Doc. 370) (1/1/2021 to 9/30/2021); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 746 (Doc. 370) (10/1/2021 to 12/31/2022); US Ex. 747 (Doc. 370) (1/1/2023 to 6/30/2023); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 748 (Doc. 370) (7/1/2023 to 9/30/2023); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 749 (Doc. 370) (10/1/2023 to 3/31/2024); U.S. Evid. in Supp. of Mot.

for Summ. J., Ex. 750 (Doc. 370) (4/1/2024 to 6/30/2024); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 752 (Doc. 370) (Draper 5/21/2020 to 12/21/2020); U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 753 (Doc. 370) (1/4/2021 to 9/30/2021). *See also* U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 572 (Doc. 366-83) at 1-2, 4 (on [redacted], several prisoners left their respective dorm(s) and traveled to the dorm of [redacted] and killed him).

633. The United States does not dispute this is what ADOC's classification system requires. The United States disputes that this is the practice during the discovery period. *See* United States' Response to Defendants' Statement of Facts No. 632.

634. The United States does not dispute this is what ADOC's classification system requires.

635. The United States does not dispute this is what ADOC's Classification Manual states.

636. The United States does not dispute this is what ADOC's Classification Manual states.

637. The United States does not dispute this is what ADOC's Classification Manual states.

638. The United States does not dispute this is what ADOC's Classification Manual states.

639. The United States does not dispute this is what ADOC's Classification Manual states.

640. The United States does not dispute this is what ADOC's Classification Manual states.

641. The United States does not dispute this is what ADOC's Classification Manual states.

642. The United States does not dispute this is what ADOC's Classification Manual states.

643. The United States does not dispute this is what ADOC's Classification Manual states.

### D. Initial Classification

The United States disputes the materiality of any of the asserted expert opinion of Dr. Jim Austin—who was not designated as a testifying expert in this matter—within the meaning of Federal Rule of Civil Procedure 56, and therefore objects to the asserted relevance of Dr. Austin's opinions to the liability phase of this matter.

644. The United States does not dispute this is what ADOC's Classification Manual states.

645. The United States does not dispute this is what ADOC's Classification Manual states.

646. The United States does not dispute this is what ADOC's Classification Manual states.

647. The United States does not dispute this is what ADOC's Classification Manual states.

648. The United States does not dispute this is what ADOC's Classification Manual states.

649. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

650. The United States does not dispute this is what ADOC's Classification Manual requires.

651. The United States does not dispute this is what ADOC's Classification Manual requires.

652. The United States does not dispute this is what ADOC's Classification Manual requires.

653. The United States does not dispute this is what ADOC's Classification Manual requires.

654. The United States does not dispute this is what ADOC's Classification Manual requires.

655. The United States does not dispute this is what ADOC's Classification Manual requires.

656. The United States does not dispute this is what ADOC's Classification Manual requires.

657. The United States does not dispute this fact.

658. The United States does not dispute this is what ADOC's Classification Manual states.

659. The United States does not dispute this is what ADOC's Classification Manual requires.

660. The United States does not dispute this is what ADOC's Classification Manual requires.

661. The United States does not dispute this is what ADOC's Classification Manual requires.

662. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

663. The United States does not dispute this fact.

664. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

665. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

666. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

667. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

668. The United States does not dispute this is what ADOC's Classification Manual requires.

669. The United States does not dispute this is what ADOC's Classification Manual requires.

670. The United States does not dispute this is what ADOC's Classification Manual requires.

671. The United States does not dispute this is what ADOC's classification system requires.

672. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

673. The United States does not dispute this is what ADOC's Classification Manual states.

674. The United States does not dispute this is what ADOC's Classification Manual states.

675. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

676. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

677. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

678. The United States does not dispute that this is what ADOC's classification system requires.

679. The United States does not dispute that this is what ADOC's classification system requires.

680. The United States does not dispute that this is what ADOC's Classification Manual states.

681. The United States does not dispute that this is what ADOC's Classification Manual states.

682. The United States does not dispute that this is what ADOC's Classification Manual states.

683. The United States does not dispute that this is what ADOC's Classification Manual states.

684. The United States does not dispute that this is what ADOC's Classification Manual requires.

685. The United States does not dispute that this is what ADOC's Classification Manual requires.

686. The United States does not dispute that this is what ADOC's classification system requires.

687. The United States does not dispute that this is what ADOC's classification system requires.

688. The United States does not dispute that this is what ADOC's classification system requires.

689. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

690. The United States does not dispute that Dr. Austin, who was not disclosed as a testifying expert in this matter, testified to such as an expert in *Duke v. Dunn*, Case No. 4:14-cv-01952, on March 30, 2016.

691. The United States does not dispute that this is what ADOC's Classification Manual states.

692. The United States does not dispute that this is what ADOC's Classification Manual states.

693. The United States does not dispute that this is what ADOC's Classification Manual states.

### E. Review of Initial Classification Recommendations

694. The United States does not dispute that this is what ADOC's Classification Manual requires.

695. The United States does not dispute that this is what ADOC's classification system requires.

696. The United States does not dispute that this is what ADOC's classification system requires.

697. The United States does not dispute that this is what ADOC's classification system requires.

698. The United States does not dispute that this is what ADOC's Classification Manual requires.

699. The United States does not dispute that this is what ADOC's Classification Manual requires.

**F. Periodic Classification Reviews and Reclassification**

700. The United States does not dispute that this is what ADOC's Classification Manual requires.

701. The United States does not dispute this fact, but notes that Ms. Lane testified that the scope of her expert assignment was ADOC's "classification system" and she did not look at or opine on issues related to sexual safety (PREA). Defs. Ex. 158 (Doc. 373-24) at 42:9-22; 57:3-6.

702. The United States does not dispute this fact, but notes that Ms. Lane testified that the scope of her expert assignment was ADOC's "classification system" and she did not look at or opine on issues related to sexual safety (PREA). Defs. Ex. 158 (Doc. 373-24) at 42:9-22; 57:3-6.

703. The United States does not dispute this fact, but notes that Ms. Lane testified that the scope of her expert assignment was ADOC's "classification system"

and she did not look at or opine on issues related to sexual safety (PREA). Defs. Ex. 158 (Doc. 373-24) at 42:9-22; 57:3-6.

704. The United States does not dispute this fact, but notes that Ms. Lane testified that the scope of her expert assignment was ADOC's "classification system" and she did not look at or opine on issues related to sexual safety (PREA). Defs. Ex. 158 (Doc. 373-24) at 42:9-22; 57:3-6.

705. The United States does not dispute that Ms. Lane testified to such. The United States disputes that ADOC is effectively maintaining an "ongoing classification process" as evidenced by the uncontrolled movement of inmates. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

706. The United States does not dispute that this is how ADOC's classification is designed to work. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

707. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes that ADOC's classification manual is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

708. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because

it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

709. The United States does not dispute that this is what ADOC's classification system requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

710. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

711. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

712. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

713. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because

it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

714. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

715. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

716. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

717. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

718. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because

it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

719. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

720. The United States does not dispute that this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

721. The United States does not dispute that this is what ADOC's Classification Manual states. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

722. The United States does not dispute this fact.

723. The United States does not dispute this fact.

724. The United States does not dispute that this is what ADOC's classification system requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

725. The United States disputes these reviews are being conducted in an adequate manner. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

726. The United States does not dispute this fact.

727. The United States does not dispute this fact.

728. The United States does not dispute this fact.

729. The United States does not dispute this fact.

730. The United States does not dispute this fact.

731. The United States does not dispute this fact.

732. The United States does not dispute this fact.

733. The United States does not dispute this fact.

734. The United States does not dispute this fact.

735. The United States does not dispute this fact.

736. The United States does not dispute this fact.

737. The United States does not dispute this fact.

738. The United States does not dispute this fact.

739. The United States does not dispute this fact.

740. The United States does not dispute this fact.

741. The United States does not dispute this fact.

## G. Safety Information Used in Classification and Housing Decisions

742. The United States does not dispute this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 3.19-3.49; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 118 (Doc. 358-1) at 9, 57-68.

743. The United States does not dispute this fact.

744. The United States does not dispute this is what ADOC's Classification Manual requires. The United States disputes it is working effectively because it is not being consistently enforced. *See* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 3.19-3.49; U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 118 (Doc. 358-1) at 9, 57-68.

745. The United States does not dispute this fact.

746. The United States does not dispute that Ms. Baggett testified to such.

747. The United States does not dispute that Ms. Baggett testified to such.

748. The United States does not dispute that Mr. Hutton testified to such in a declaration. The United States disputes that ADOC is effectively assigning inmates to dormitories as required by ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

749. The United States does not dispute that Mr. Robbins testified to such in a declaration. The United States disputes that ADOC is effectively assigning inmates to dormitories as required by ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

750. The United States does not dispute this fact.

751. The United States does not dispute that Mr. Smith testified to such in a declaration. The United States disputes that ADOC staff "receive constant updates on inmates' disciplinary information" and is using inmates' disciplinary information to effectively house inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632; U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 3.19-3.49.

752. The United States does not dispute that Mr. Danzey testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

753. The United States does not dispute that Mr. Danzey testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

754. The United States does not dispute that Mr. Nolen testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

755. The United States does not dispute that Mr. Nolen testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

756. The United States does not dispute that Mr. Peters testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

757. The United States does not dispute that Mr. Raybon testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

758. The United States does not dispute that Mr. Raybon testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

759. The United States does not dispute that Mr. Raybon testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

760. The United States does not dispute that Mr. Raybon testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

761. The United States does not dispute that Mr. Allen testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

762. The United States does not dispute that Mr. Allen testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

763. The United States does not dispute that Mr. Wallis testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

764. The United States does not dispute that Mr. Wallis testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

765. The United States does not dispute that Mr. Gillilan testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

766. The United States does not dispute that Mr. Gillilan testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

767. The United States does not dispute that Mr. Gillilan testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

768. The United States does not dispute that Mr. Gillilan testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

769. The United States does not dispute that Mr. Gillilan testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

770. The United States does not dispute that Mr. Headley testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

771. The United States does not dispute that Mr. Headley testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

772. The United States does not dispute that Mr. Headley testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

773. The United States does not dispute that Mr. Walker testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

774. The United States does not dispute that Mr. Walker testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

775. The United States does not dispute that Mr. Walker testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

776. The United States does not dispute that Mr. Walker testified to such in a declaration. The United States disputes that ADOC is effectively housing inmates in compliance with ADOC's classification system. *See* United States' Response to Defendants' Statement of Facts ¶ 632.

## UNITED STATES' ADDITIONAL UNDISPUTED FACTS SUPPORTING ITS RESPONSE

1. The average ADOC inmate-on-inmate homicide rate per 10,000 prisoners is over 4.5 times higher than the corresponding BOP rate. *See* Dr. Kevin Quinn Supplemental Expert Report, at p. 3 (September 22, 2026) US Resp. Ex. 2 (Doc. 406-2).
2. The average ADOC rate of "Assault on Inmate" incidents each month per 10,000 prisoners is over 5.1 times higher than the average BOP rate of "Assault on Inmate" incidents per 10,000 prisoners during the 2021-to-2023 time period. *See id*. at p. 9.
3. The same is true of sexual assaults—reported rates per 10,000 prisoners are 6.5 times higher in ADOC than BOP. *See id*. at p. 12.
4. The comparable incidents used to calculate this data were produced to the Defendants and provided to Dr. Kevin Quinn by the United States and come from ten BOP facilities (contained within four complexes) that Defendants requested to visit and receive data from. *See id*.

5. Some of ten BOP facilities (contained within four complexes) that Defendants chose to visit and receive data on are low security facilities and not medium or high security prisons.[2]

6. There are several BOP prisons of equivalent custody levels to Alabama's prisons for men that closer in physical proximity to the respective Parties than FCI Coleman and FCI Hazelton, including one in Alabama.[3]

[2] Federal Bureau of Prisons: About Our Prisons, https://www.bop.gov/about/facilities/ (last visited Sept. 23, 2026).
[3] Federal Bureau of Prisons: Our Locations, https://www.bop.gov/locations/map.jsp (last visited Sept. 23, 2026).

**<u>UNITED STATES' RESPONSIVE BRIEF TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## I. Introduction

The central issue in this case is whether Defendants are violating the Eighth Amendment of the United States Constitution. The Constitution does not require that Alabama prisons be staffed at a certain level. The Constitution does not require that Alabama prisons have a particular use of force policy. The Constitution does not require that Alabama prisons follow a federally defined classification system. Instead, the Constitution requires that Alabama prisons protect inmates from a substantial risk of serious harm. Alabama does not. Defendants are well aware of the harm to inmates in their custody and have not responded reasonably. That failure jeopardizes the ability of a functioning criminal justice system to continue to be able to incarcerate convicted criminals and risks the breakdown of law and order—both inside the walls of the prisons and to the public outside.

Ultimately, Defendants present no evidence that any of their "efforts" have remediated unconstitutional conditions for inmates in their custody. Defendants' motion only addresses a few of the systemic deficiencies that the United States identified in its Second Amended Complaint, Doc. 71, and Motion for Summary Judgment, Doc. 377. Working to correct some deficiencies, while ignoring others, does not absolve Alabama of its deliberate indifference. *See Dunn v. Comm'r, Alabama Dep't of Corr.*, 179 F.4th 1277, 1312 (11th Cir. 2026) (quoting *Harris v.*

*Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("systemic deficiencies can provide the basis for a finding of deliberate indifference"). Defendants have not even attempted to determine whether their efforts have, in fact, made a difference. Instead, Defendants' motion completely ignores the violent conditions of its facilities and holds up its unenforced policies as mere paper over the cracks. And Defendants point to irrelevant arguments in an attempt to excuse their conduct. This is diversion. Defendants do not provide undisputed material facts to show that they are entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment must fail.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 mandates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Hoffman v. Allied Corp*., 912 F.2d 1379, 1382 (11th Cir. 1990). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The party opposing summary judgment must designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. The court will construe all facts in the light most favorable to the non-movant, *Domante v. Dish Networks, LLC*, 974 F.3d 1342, 1345 (11th Cir. 2020) (per curiam), although it is limited to considering evidence that can be reduced to admissible form, *Rowell v. BellSouth Corp*., 433 F.3d 794, 800 (11th Cir. 2005).

## III. There Is Sufficient Evidence that Defendants Are Violating the Eighth Amendment

Defendants cannot meet their Rule 56 summary judgment burden that requires proving there is no genuine dispute of ***material*** facts. The facts that Defendants offer and undisputed by the United States are not material to the legal questions in this case—whether Alabama is violating the Eighth Amendment of the United States by failing to protect inmates from harm. In their motion, Defendants ignore the first element of an Eighth Amendment failure-to-protect claim—whether prisoners are a substantial risk of objectively serious harm—and focus on whether they were deliberatively indifferent to that risk. Helpfully, the Eleventh Circuit recently weighed in on the standard for systemic violations of the Eighth Amendment, specifically with respect to deliberate indifference. In *Dunn*, the Eleventh Circuit stated that:

> "a plaintiff must show both that the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm and that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020) (cleaned up). Whether a prison official has subjective knowledge of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." [*Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970 (1994)]

*Dunn*, 179 F.4th at 1292.

There is no genuine issue of material fact that Alabama inmates face a substantial risk of serious harm. That harm is clear from the overwhelming evidence that the United States presented. *See* U.S. Mot. for Summ. J., Doc. 377, 6-45, 168-192. And the evidence shows that Defendants did not respond reasonably to that obvious risk. *See* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.1-4.29, 5.1-5.37, 6.1-6.22, 7.1-7.25, 8.1-8.37, 11.1-11.17, 10.1-10.23, 13.1-13.8. To prove they are not deliberately indifferent, Defendants point to efforts to resolve some of the contributing factors (i.e. systemic deficiencies) without presenting evidence that they made any attempt to discern whether those efforts did, in fact, have an effect on the obvious risk of violence. Their diversion from effectiveness of their efforts demonstrates their deliberate indifference to the obvious harm Alabama inmates face. And Defendants' failure to evidence effective resolution of other numerous systemic

deficiencies that the United States identified also reveals their deliberate indifference to risk of harm. *See Dunn*, 179 F.4th at 1312.

### A. Defendants Are Deliberatively Indifferent to Lack of Supervision of Its Inmates.

#### 1. <u>Alabama's Understaffing Is Only One Systemic Deficiency Contributing to Violence.</u>

Defendants incorrectly claim that "Plaintiff's Allegations focus almost exclusively on alleged understaffing." Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 157. This is inaccurate. In both its Second Amended Complaint and its Motion for Summary Judgment, the United States makes clear that there are ***numerous factors*** that contribute to the amount of violence, both physical and sexual, in Alabama prisons for men. *See* Docs. 71 (2d Am. Compl.) and 377 (U.S. Mot. for Summ. J.).

Specifically, in its Second Amended Complaint, the United States lists many systemic deficiencies that contribute to the risk of violence in Alabama's prisons for men, such as overcrowding, contraband, failing to screen entrants properly, failing to properly address warnings of potential violence, uncontrolled movement of inmates, failure to analyze data, discouraging victims from reporting violence, failing to prevent extortion, failing to implement classification policies, and failure of leadership. *See* 2d Am. Compl., Doc. 71. In its pleading, the United States states that "***[a]nother*** factor contributing to the violence is the dangerously low level of

security staffing throughout Alabama's Prisons for Men." *Id*. at 15 (emphasis added). In its Motion for Summary Judgment, the United States lists numerous factors that contribute to the risk of violence in Alabama's prisons, including weapons, overcrowding, uncontrolled movement, contraband, among other things. *See* Doc. 377. Defendants' attempt to frame the United States' entire claim as resting on understaffing as the singular systemic deficiency contributing to violence is a strawman.

In making this argument, Defendants rely on a Seventh Circuit case that found specifically that Eighth Amendment violations related to mental-health treatment were "primary attributable" to the shortage of mental health staff. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 175 (*citing Rasho v. Jeffreys*, 22 F.4th 703 (7th Cir. 2022)). Interestingly, the *Rasho* Court noted that the Seventh Circuit has a "well-settled principle that while a single negligent act cannot support an inference of deliberate indifference, persistence in a course of action known to be ineffective can." *Rasho*, 22 F. 4th at 710 (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016)). In this case, ADOC attempted for years to hire more staff, but its efforts were admittedly ineffective to resolve the lack of supervision in Alabama prisons. And Defendants were well aware these prisons were understaffed yet can point to no other solutions to resolve the lack of supervision which contributed to prisoner harm.

2. There Is No Dispute Alabama Prisons Are Understaffed and Defendants Did Not Respond Reasonably to Resolve the Lack of Supervision Caused by Understaffing.

Ultimately, the only question that this Court must address in this case is whether Alabama male prisoners face a substantial risk of serious harm and whether Defendants were deliberatively indifferent to that risk. The United States has presented sufficient evidence to prove that Alabama prisoners face a substantial risk of serious harm. *See* U.S. Mot. for Summ. J., Doc. 377 at 6-45, 168-192. And with respect to the contributing factor of understaffing, there is no genuine issue of material fact that Alabama prisons for men are understaffed. *See id.* at SOF ¶¶ 4.7-4.17, pp. 195-198; Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 164. The only remaining question is whether Defendants responded reasonably to address this one contributing factor to the risk of harm.

Regardless of ADOC's effort to hire and recruit staff, the United States has presented significant evidence that Alabama's prisons for men lacked sufficient supervision to prevent violence. *Id.* at SOF ¶¶ 4.18-4.29. And evidence that Alabama was aware that entire housing units of prisoners were not properly supervised and did not respond reasonably to that risk. *Id*. Attempting to resolve one long-term solution (hiring more staff), and then arguing doing so is hard or impossible, while ignoring other potential solutions to improve supervision to prevent harm is deliberate indifference. *See Lamarca v. Turner*, 995 F.2d 1526,

1537-38 (11th Cir. 1993) (plaintiff's evidence that prison official "could have, but did not take steps to minimize" problems when the official, regardless of monetary restraints, "knowingly or recklessly disregarded solutions within his means").

Even if we assume that Defendants responded reasonably to address this ***one*** contributing factor to that violence (without doing more to address the other contributing factors), that does not establish that Defendants were not deliberately indifferent. Defendants cite numerous efforts ADOC has made to recruit and hire new staff. Yet they completely fail to address the United States' lack-of-supervision allegations. ADOC's attempts to recruit and hire are irrelevant to those allegations of what actually is occurring within the facilities. In fact, the United States has never argued that ADOC has not made attempts to recruit and hire more staff. The real allegation, and the one that Defendants do not address, is that within its prisons, Defendants' failure to supervise inmates in its custody led to a substantial risk of violence and that Defendants knew of this risk and did not respond to that lack of supervision in an objectively reasonable manner.

It is undisputed that the living units in Alabama's prisons for men are overcrowded, which has led to increased tensions among prisoners. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.1-4.6. Adding to the problem is the lack of adequate staff to supervise the larger population. *Id.* at SOF ¶¶ 4.7-4.22. For example, for 2023, ADOC disclosed the prisoner to staff ratio was as follows: 17.4 prisoners to

each correctional officer and 67.8 prisoners to each supervisor. *Id.* at SOF ¶ 4.8. Regional Director Edward Ellington went so far, as to admit, that it was permissible for an ADOC facility to have no officers assigned to observe a living unit. *Id.* at SOF ¶ 4.9. In fact, the housing units remain unsupervised for excessively long periods of time. *Id.* at SOF ¶ 4.10. Taking a closer look at the following facilities:

- [redacted]. U.S. Mot. for Summ. J., Doc. 377, SOF ¶ 4.11.
- [redacted] *Id.* at SOF ¶ 4.12.
- [redacted]. *Id.* at SOF ¶¶ 4.13-4.14.
- [redacted] *Id.* at SOF ¶¶ 4.15-4.16.
- [redacted] *Id.* at SOF ¶ 4.17.

This creates a situation in which the prisoners are unobserved and able to do whatever they will and Defendants are aware of this and aware that the prisoners [redacted] U.S. Mot. for Summ. J., Doc. 377, SOF ¶ 4.18.

According to a prisoner, "[b]ecause [the correctional staff] don't do nothing to stop nothing, [i]f the inmates don't stop it, it don't get stopped." *Id.* at SOF ¶ 4.20. Put even more simply, without correctional facility staff, the correctional facility dorms have devolved, as an ADOC officer admitted, into an "environment where the rule of the strongest prevails." *Id.* at SOF ¶ 4.21. According to one prisoner: "[other prisoners] know who's weak and who's strong . . . I've been a target because I'm weak . . . I still have fear." *Id.* at SOF ¶ 4.22.

There are numerous examples of violence happening, but because of lack of supervision, no security officer was present to observe these incidents. For example, one prisoner testified that he was unable to report that he was the victim of a sexual assault, until a week after the alleged sexual assault, because prisoners prevented him from physically leaving the dormitory. U.S. Mot. for Summ. J., Doc. 377, SOF ¶ 4.24. In [redacted], several knife-wielding prisoners fought in a dorm, but staff were unaware of the fight for three days. *Id.* at SOF ¶ 4.26. There were cameras in the dormitories, but staff were not actively observing them and therefore had to review the camera footage (after receiving information about the fight) in order to confirm the fight occurred. *Id*. These are just a few examples that the United States presented as evidence of the lack of officer presence in housing units. *See also id.* at SOF ¶¶ 4.22-4.27. And, in fact, Defendants' own staff have admitted that

prisoners "would have to yell" or "kick on the [dormitory] door" to get the attention of officers if they needed help between security checks. *Id.* at SOF ¶ 4.28.

3. Defendants Have Not Shown That They Made Reasonable Attempts to Minimize the Risks from Lack of Supervision.

Defendants' claims about their hiring efforts do not evidence that they acted reasonably in response to the harm to inmates. First, Defendants argue that they did, in fact, hire more staff—without asserting that they have met ADOC's staffing needs. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 166-180. And, second, Defendants argue certain conditions outside of their control made it impossible to hire enough staff. *Id.* at 163-165. With respect to the first argument, the United States has presented sufficient evidence that Alabama does not have enough staff and is not utilizing the staff it has to reasonably address the very real risk of harm to prisoners. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 4.7-4.29. Entire dormitories are often unsupervised by correctional officers for long periods of time and violent incidents routinely occur when no officer is around to observe them. *Id.* at SOF ¶¶ 4.18-4.29.

With respect to the impossibility argument, Alabama's reliance on *Swain* is misplaced. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 169-167 (citing *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2002) for the proposition that a jail was not deliberately indifferent risk of COVID harm because it was impossible to make inmates socially distance from each other). Alabama uses *Swain* to argue they

should not be asked to do the "impossible"—*i.e.*, eliminate all staffing vacancies. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 173. But the United States has never argued that Alabama must eliminate all staffing vacancies to reduce the risk of violence.

Instead, the United States argues that Alabama's failure to reasonably ensure direct supervision of inmates is one contributing factor to the violence in prisons. *See* U.S. Mot. for Summ. J., Doc. 377 at 195-198. Clearly, ADOC's admittedly low levels of security staffing contribute to the violence but so do other things related to supervision, such as wardens' failure to ensure adequate supervision, lack of camera supervision, poor infrastructure, obstructed views from poor sight lines, and prisoners being allowed to hang sheets and towels over their bunks. *Id.* at SOF ¶¶ 4.21, 2.87. 2.97, 3.27, 3.5, 8.18, 12.2, 12.25.

4. <u>The Eleventh Circuit Has Found Alabama's Arguments Insufficient.</u>

Finally, with respect to staffing, Defendants reassert arguments that the Eleventh Circuit already rebuffed. In *Dunn*, Defendants presented these same arguments unsuccessfully. In that case, Defendants argued that the district court supposedly "bypassed evidence of the Commissioners' efforts to increase correctional staffing" and "neglected" to explain what they could have done to remedy the problem. *Dunn*, 179 F.4th at 1312.

The Eleventh Circuit noted that the district court properly explained that "the current levels of mental-health and correctional understaffing and overcrowding . . . illustrates [the DOC's] disregard of risk of harm." *Dunn*, 179 F.4th at 1313. The Circuit Court reasoned that the DOC's response to overcrowding and understaffing had been "objectively insufficient" because "systemic and gross deficiencies" had persisted "for years and years." *Id*.

Similarly, here, the United States has presented years of evidence that Alabama was not adequately supervising male prisoners to prevent a substantial risk of harm. Defendants were aware that their efforts to recruit and hire more staff were not reasonably sufficient to reduce that risk and yet did nothing more to protect the inmates in their care.

5. <u>BOP Evidence Is Irrelevant to the United States' Claims.</u>

It is irrelevant whether other correctional systems, like the BOP, were understaffed and faced staffing challenges. To prove their response to lack of supervision was reasonable, Defendants must show that other correctional systems have the same (or similar) risk of harm to inmates as Alabama and then they made the same efforts to supervise the inmates in their custody to prevent that harm. Defendants have not presented that evidence. Therefore, the comparison is irrelevant.

Even if BOP conditions were relevant to ADOC conditions, undisputed evidence of those BOP conditions would show ADOC's relative failure to ensure constitutional conditions. There is no question from available evidence that the risk of harm to inmates in Alabama prisons is exponentially higher than in the BOP. U.S. Add'l SOF ¶¶ 1-4. The average ADOC inmate-on-inmate homicide rate is over 4.5 times higher than the corresponding BOP rate. *Id.* at SOF ¶ 1. And, the Court should note, that this number compares the number of ***reported*** homicides per 10,000 inmates from all of Alabama's prisons for men with the number of reported homicides per 10,000 prisoners from the facilities (contained in 4 complexes) that Defendants picked to visit. *Id.* at SOF ¶¶ 1, 4. Further, the average ADOC rate of "Assault on Inmate" incidents per 10,000 per month is over 5.1 times higher than the average BOP rate of "Assault on Inmate" incidents per 10,000 per month during the 2021-to-2023 time period. *Id.* at SOF ¶ 2. The same is true of sexual assaults – reported rates are 6.5 times higher in ADOC than BOP. *Id.* at SOF ¶ 3.

Moreover, the ten BOP facilities (contained within four complexes) to which Defendants point, are not all medium or high security prisons and, thus, are not directly comparable. U.S. Add'l SOF ¶ 5. And Defendants chose those four complexes out of the 72 BOP facilities housing male prisoners, presumably, because they believed they would be more violent and thus a better demonstration of BOP being comparable to ADOC, only to find they were not. *Id.* at SOF ¶¶ 1-3. Tellingly,

there are several BOP facilities of equivalent custody levels geographically closer to Alabama's prisons than FCI Coleman and FCI Hazelton, including one in Alabama. *Id.* at SOF ¶ 6. Therefore, the proffered comparisons are not relevant to evidence of constitutional conditions and the comparisons do not support Defendants' motion for summary judgment.

If anything, Defendants' own comparisons show the risk of harm and/or death to prisoners in Alabama is substantially higher than the risk of harm to BOP prisoners. Consequently, a comparison of BOP's response to a lower level of harm cannot be compared to Alabama's response and establish whether Alabama's response was reasonable. The United States will show deliberate indifference by proving that Alabama ignored "such systemic and gross deficiencies" that "persisted for years." *Dunn*, 179 F.4th 1312. Violence in Alabama's prisons for men has persisted. The risk was obvious. And Alabama's comparisons to BOP do not inoculate Defendants from liability for this.

Further, the evidence relied on in support of Defendants' motion must also be admissible. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also Rowell*, 433 F.3d at 800 ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Once a

party makes a Rule 56(c)(2) objection, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments; *see also Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013). "When a Rule 56(c)(2) objection is made, it is within the district court's discretion to determine if the material used to support a fact can be presented in a form that would be admissible at trial." *Jacoby v. Keers*, 779 F. App'x 676, 679 (11th Cir. 2019).

### B. Alabama's History of Widespread Excessive Force and Eleventh-Hour Policy Changes Support a Finding of Deliberate Indifference.

Defendants are not entitled to summary judgment on the United States' claim that Alabama uses excessive force in violation of the Eight Amendment, because the United States has presented numerous undisputed facts to demonstrate that the excessive uses of force in Defendants' facilities were a pattern and practice, not just a few "isolated incidents."

Defendants cannot successfully meet their burden by implausibly asserting a complete failure of an essential element of the United States' claim. *See Celotex, Corp.,*477 U.S. at 322 (finding that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial."). The United States' excessive force claim rests on properly plead and thoroughly evidenced allegations. *Cf. id.* at 323 (summary judgment against a nonmoving party is appropriate only in the specific situation where "a ***complete failure of proof*** concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (emphasis added)). The United States need only point to the evidence cited in SOF ¶¶ 9.1- 9.27 and 10.1-10.23 of its own motion for summary judgment, Doc. 377, to demonstrate that it has not rested "on the mere allegations or denials" of its pleadings, rather, it has set forth numerous "specific facts showing a genuine issue for trial." *Shelnutt v. McLaughlin*, Case No. 5:24-CV-00221-HDM-HNJ, 2026 WL 2131143, at *2 (N.D. Ala. July 2, 2026), report and recommendation adopted, Case No. 5:24-CV-221-HDM-HNJ, 2026 WL 2130900 (N.D. Ala. July 23, 2026) (citing *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019)).

Defendants claim that they are entitled to summary judgment on the issue of excessive force, based on one misplaced primary argument (presented several times) and an equally unavailing secondary argument.

Defendants primarily argue that the United States has "at most" alleged or demonstrated a few "isolated" instances of excessive force, therefore, cannot show proof of serious harm in violation of the Eighth Amendment. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 183. Defendants deploy the same claim to argue

that the United States has failed to show a "history of widespread abuse" that puts Defendants on notice to correct the alleged deprivation. *Id.* at 189-190 (citing *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007), to prove "supervisory liability" plaintiff can establish a causal connection between the actions of the supervisor and the constitutional deprivation when "a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so."). This argument fails.

The United States has presented undisputed facts that Defendants engage in a pattern or practice of Eighth Amendment violations in their use of excessive force, in violation of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq. (CRIPA). To establish a pattern or practice of violations, the allegations must disclose more than "the mere occurrence of isolated or 'accidental,'' violations, instead, they must show that the violations constitute the defendant's "regular procedure or policy." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 360 (1977).

The United States is not required to demonstrate "supervisory liability" to prove its claim of excessive force in violation of the Eight Amendment, much less to defeat Defendants' motion for summary judgment on the issue. *See Smith v. Dunn*, 802 F. Supp. 3d 1341, 1354 (M.D. Ala. 2025) (rejecting defendants' similar arguments, based on *Mathews,* that they did not have sufficient notice of substantial

risk of harm to prisoner who died after being beaten by officers at Ventress in 2019; noting that *Mathews* was distinguishable in that "it was concerned, in part, with whether the warden knew of the specific risk posed by a particular corrections officer, not just whether there was a history of abuse at the facility," whereas in *Smith*, the plaintiff had "demonstrated the general history of abuse was so obvious that it was known."). More to the point, the United States has adduced numerous facts to demonstrate that the excessive uses of force in Defendants' facilities were not just a few "isolated incidents." *See, e.g.,* U.S. Mot. for Summ. J., SOF ¶¶ 9.1-9.2 (between 2019 and January 31, 2025, at least 12 ADOC officers and supervisors have been criminally convicted of charges related to assaulting prisoners and at least five other officers and supervisors were criminally charged for assaulting prisoners during this period); *Id.* at ¶¶ 9.9-9.15 (multiple examples of officers using "gratuitous, retaliatory, and punitive force against prisoners who were already subdued, restrained, or incapacitated); *Id.* at ¶ 9.16 (a former Regional Director testified he received calls "[a]t least once a week" about officers spraying prisoners secured in their cells); *Id.* at ¶ 9.23 [redacted] officer used excessive force in three separate incidents within about a month).

Further, the United States has demonstrated that multiple supervisors have used force themselves. *See, e.g.,* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 10.1-10.23 (generally); *Id.* at ¶ 10.2 (Lieutenant at Donaldson repeatedly used excessive

force on prisoners before pleading guilty to federal charges); *Id.* at ¶ 10.21 ([redacted] sergeant ordered prisoners to assault a fellow prisoner and was charged with murder after the prisoner died). Finally, Defendants cannot claim to have lacked notice given the multiple criminal charges and convictions, numerous civil settlements, and, as discussed below, Defendants' own reports. *See Smith*, 802 F. Supp. 3d at 1350-55; *see also* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 9.1, 9.2, 9.25 and 9.27.

Significantly, Defendants' own undisputed facts demonstrate widespread (recent) abuse, thus giving them notice. The prime example is Defendants' summary of the Use of Force Review Board findings with respect to 58 uses of force that reveals the following: [redacted] *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 180 at SOF ¶¶ 591-592. [redacted]

---

[4] Defs. Exs. 214 (Doc. 374-1), 215(Doc. 374-2), 224 (Doc. 374-11), 225 (Doc. 374-12), 230 (Doc. 374-17), 232 (Doc. 374-19), 235 (Doc. 374-22), 238 (Doc. 374-25), 241 (Doc. 374-28), 243 (Doc. 374-30), 244 (Doc. 374-31), 245 (Doc. 374-32), 247 (Doc. 374-34), 249 (Doc. 374-36), 250 (Doc. 374-37) (2 uses of force); 251 (Doc. 374-38); 252 (Doc. 374-39) (3 uses of force); 253 (Doc. 374-40), 254 (Doc. 374-41), 258 (Doc. 374-45), 259 (Doc. 374-46), 260 (Doc. 374-47), 261 (Doc. 374-48), and 264 (Doc. 374-51).

[5] Defs. Exs. 232 (Doc. 374-19) and 264 (Doc. 374-51).

[redacted]

Two of the instances were so severe that they warranted termination. Defs. Exs. 245 (Doc. 374-39) and 253 (Doc. 374-40). In one case, ADOC put the officer on mandatory leave pending termination, for kicking a prisoner in the head. Defs. Ex. 253 (Doc. 374-40); *see also* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 9.9-9.10 (as example of "officers have used gratuitous, retaliatory, punitive force against prisoners who were already subdued, restrained, or incapacitated," U.S. Evid. in Supp. of Mot. for Summ. J., Ex. 597 (Doc. 366-108)) ([redacted] officer kicked prisoner in the head when "[t]here was no perceived threat")). [redacted]

[6] [redacted]

[redacted] Defs. Ex. 245 (Doc. 374-32); *see also* U.S. Mot. for Summ. J., Doc. 377, SOF ¶ 9.21.

Significantly, nine of the unjustified/unnecessary uses of force in 2024, involved supervisors at six different facilities.[7] One supervisor [redacted] used force twice against a restrained prisoner [redacted], *after* a supervisee, [redacted], had kicked the prisoner several times in the head. Defs. Exs. 257 (Doc. 374-44) and 258 (Doc. 374-45). Moreover, seven months earlier, [redacted] failed to report a use of force (albeit force later deemed justified by the Board). Defs. Ex. 217 (Doc. 374-4). Another supervisor, [redacted], used unnecessary force on [redacted], when he elbowed and pushed a prisoner who would not get out of his way. Defs. Ex. 230 (Doc. 374-17). [redacted] used force, again, five days later – spraying a prisoner twice in the face; the prisoner had yelled curses and disrespectful comments and failed to remove his bandana. Defs. Ex. 231 (Doc. 374-18). The Board noted

[7] [redacted]

that [redacted] Defs. Ex. 231 (Doc. 374-18). The highest ranked supervisor found to have used unjustified force was Captain [redacted]. Defs. Ex. 247 (Doc. 374-34). [redacted] used OC spray on a prisoner who had been disruptive, *after* a warden had moved the prisoner to another side of the room and the prisoner presented no threat. Defs. Ex. 247 (Doc. 374-34). Notably, Defendants cite [redacted] twice by name in their statement of facts. [redacted] conduct illustrates why declarations by supervisory officers that they understand ADOC's use-of-force policies does not necessarily mean that they comply with them.

Further, while, as noted, the United States disputes that the charts in Defendants' SOF ¶¶ 497 and 498 accurately reflect all of the data in the cited exhibits,

for the sake of argument, if taken at face value, the charts in ¶ 498 indicate that [redacted] Taken at face value for the sake of argument, Defendants' own charts indicate a history of uses of force disproportionate to the need, i.e., excessive. *See Williams v. Radford*, 64 F.4th 1185, 1196-97 (11th Cir. 2023) (in evaluating whether a use of force violates the Constitution, factors to be considered include "the need for application of force," "the relationship between that need and the amount of force used, and "the extent of the threat to the safety of staff and inmates" and noting that "a prisoner initiating a verbal altercation does not give prison guards carte blanche to use force sadistically and maliciously.").

Defendants' secondary argument is a paper tiger. Defendants dedicate all but 13 of their undisputed fact paragraphs regarding use of force, asserting that they have responded reasonably by having and implementing adequate policies and procedures. They dedicate almost 75 paragraphs to their Use of Force policy in place between 2015 and January 27, 2025. *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380, SOF ¶¶ 460-534. They then dedicate almost 60 paragraphs to their "new" policies that they began revising/building as early as September 2023 but that went into effect on January 27, 2025, i.e. four days short of the fact cut-off. *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380, SOF ¶¶ 535-593. Despite the almost

equal number of paragraphs explaining the two policies, it is not clear that there were significant substantive changes, much less improvements in terms of reducing incidents of excessive force – certainly not an undisputed factual basis for summary judgment. For example, Defendants' expert, Sean Stewart, who was tasked with revising the existing policies described those policies as "heavy-handed" and "strict," thus implying that the revised ones would be less so. *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380, SOF ¶¶ 537-538. In any case, the United States does not argue (and has never argued) that either iteration of Defendants' use of force policies are constitutionally wanting on their face. The United States has argued that Defendants have failed in certain ways to properly implement them, particularly with respect to their investigations. *See, e.g.,* U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 11.1-11.7, 11.13-11.14. Moreover, as discussed, there are multiple instances of both officers and supervisors using force in violation of policy and supervisors failing to address instances of force violating policy.

The dispute is not whether Defendants have adopted sufficient policies addressing excessive force, but whether their response to the known risk was reasonable. The evidence of numerous and ongoing uses of excessive force, including by supervisors, permits a finding that it was not reasonable. Defendants, therefore, are not entitled to summary judgment on the excessive-force claim.

**C. Alabama's Failure to Adequately Implement Classification Policies Contributes to Violence within the Facilities.**

1. The United States Is Not Arguing with the Sufficiency of Alabama's Classification System, but Rather That Defendants Are Not Enforcing It.

Contrary to Defendants' failed assertion (Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 193), the United States has presented evidence that inmates do not stay in their assigned housing and that ADOC is not reasonably ensuring that its housing assignment policies are being implemented and complied with. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 6.1-6.22.

Defendants also incorrectly claim the United States "attacked ADOC's classification system." Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 194. In fact, the United States has not argued with the sufficiency of the "system" or Defendants' "policies" related to classification. Instead, the United States has presented evidence that Defendants are not complying with or adequately enforcing their system and/or policies and are being deliberately indifferent to the risk of doing so. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 6.1-6.22.

2. Defendants Cannot Rely on the Opinion Testimony of an Undisclosed Expert.

In support of their claim that their classification system is effective, Defendants rely on the opinion of an expert, Dr. Jim Austin, who has never been disclosed as an expert in this lawsuit. *See* Defs. Mem. in Supp. of Mot. for Summ.

J., Doc. 380, SOF ¶¶ ¶¶ 624-626, 649, 662, 664, 665-667, 672, 675-677, 689-690. Federal Rule of Civil Procedure 26 requires a party to disclose "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 26(e) requires a party to supplement disclosures or discovery. Fed. R. Civ. P. 26(e); *see also* Fed. R. Civ. P. 26(a)(2)(E). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Courts have broad discretion to exclude untimely expert testimony." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019); *see also Faulk v. Volunteers of Am.*, 444 F. App'x 316, 317-18 (11th Cir. 2011) (holding that "when a party fails to comply with Rule 26, the district court does not abuse its discretion by striking an affidavit submitted in opposition to summary judgment, pursuant to Rule 37(c)."); *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) (same). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quotations omitted). And allowing

Dr. Austin's testimony as a fact witness, "would be converting a fact witness into an expert witness merely by designation, and, essentially, would cloak a discovery source in a protective veil which was not contemplated by the discovery rules." *Lamere v. New York State Off. For The Aging*, 223 F.R.D. 85, 91 (N.D.N.Y. 2004), *aff'd,* No. 03-CV-0356, 2004 WL 1592669 (N.D.N.Y. July 14, 2004) (citations omitted).

Defendants have never identified Dr. Austin as an expert in this case. Defendants do not explain their failure to comply with the disclosure requirements. Indeed, ADOC retained Dr. Austin in 2002 and he served as an expert witness for ADOC in a separate case. Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 200. The United States has not had the opportunity to depose Dr. Austin or challenge the proffered opinion on which Defendants now rely on in their motion. Moreover, the Eleventh Circuit has specifically held that "disclosing a witness in one case does not provide notice that the witness might be used in a different case." *Baxter v. Roberts*, 54 F.4th 1241, 1254 (11th Cir. 2022). For these reasons, the court should exclude consideration of Dr. Austin's opinions.

Additionally, the evidence relied on in support of Defendant's motion must be admissible. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see also Rowell*, 433 F.3d at 800. Rule 56 further provides

that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Once a party makes a Rule 56(c)(2) objection, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments; *see also Campbell*, 546 F. App'x at 879. Following the United States' Rule 56(c)(2) objection, this Court should determine if the material used to support a fact can be presented in a form that would be admissible at trial. *Jacoby*, 779 F. App'x at 679. Here, Defendants' newly proffered expert opinion fails this test of admissibility.

3. <u>The Uncontrolled Movement of Prisoners Is Evidence that Defendants Are Deliberately Indifferent to the Risk of Harm Caused by Their Failure to Adequately Control Inmate Housing.</u>

Defendants mistakenly argue that the United States must establish deliberate indifference regarding inmate classification. *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 198-199. That is not accurate. The United States is not required to establish that Defendants are deliberately indifferent to classification. Rather, the United States need only prove that Defendants are deliberately indifferent to the risk of harm to prisoners in its custody. Alabama's failure to

reasonably control inmate movement is only one of many contributing factors to that risk.

Specifically, the United States alleges that "ADOC's failure to supervise prisoners and enforce classification and housing assignments" enables inmate violence and "sexual predators . . . to move from unit to unit without intervention, which results in [violence and] sexual abuse." 2d Am. Compl., Doc. 71 ¶ 153. Defendants fail to address this argument in their motion for summary judgment and instead discuss their classification and housing policies. But the issue is not the implementation of the classification system itself, or deliberate indifference to having an adequate classification system, but rather a serious risk of harm to inmates and deliberate indifference to that risk that is borne from the Defendants' failure to enforce their classification system.

The only evidence that Defendants present to support that it is conducting the proper classification of prisoners is a single declaration from each facility signed by a staff member supervising the facility. These self-serving declarations do not evidence effective implementation or mitigation of serious risk of harm. The declarants have every incentive to make the facility look compliant, even if there are no outcomes to evidence that.

In contrast, the United States has presented ample evidence from multiple sources that it is not uncommon for prison staff to find prisoners outside their

respective dormitories. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 6.1-6.22. Much of this evidence is from ADOC's own documents. *Id.* ADOC is aware of this issue and ignoring it. For example, [redacted], during an investigation into the death of [redacted], an officer commented that "[t]he [bed] roster ain't right . . . [the inmates] don't sleep where they're supposed to." *Id.* at SOF ¶ 6.21.

Defendants' lack of effective observation and control of their dormitories does not evidence enforcement of controlled movements. In ADOC facilities, male prisoners lose their assigned beds to other prisoners and become "homeless" or transient and are forced to sleep on the floor or outside. U.S. Mot. for Summ. J., Doc. 377, SOF ¶ 6.12. Prisoners like [redacted], who have reported that they were kicked out of their assigned cell by other prisoners migrate to other cells, e.g., N7 cell. *Id.* at SOF ¶ 6.21. This creates a migratory culture within the prison in which prisoners move between dormitories and live within a dormitory and sleep within a bed that they were never assigned. *Id.* at SOF ¶¶ 6.1-6.22, 7.9. This migratory culture runs afoul of one of the purposes of classification and permits predators and sexual assault victims to interact. *Id.* at SOF ¶¶ 6.8-6.22. ADOC is aware that migratory prisoners can bring with them violent designs as was the case on [redacted], where several prisoners left their respective

dorm(s) and traveled to the dorm of [redacted] and killed him. *Id.* at SOF ¶ 6.20.

Moreover, this migratory culture leads to physical and violent altercations between prisoners stemming from disputes relating to beds or dormitories. U.S. Mot. for Summ. J., Doc. 377, SOF ¶¶ 6.8-6.22. For example, [redacted] was stabbed several times in a "dispute over a bed assignment." *Id.* at SOF ¶¶ 6.19.

In the end, the evidence shows that Alabama is aware of an obvious risk of harm to inmates by the uncontrolled movement of inmates and is deliberately indifferent to that risk because it is not taking reasonable steps to prevent that movement. The Defendants' unenforced policy does not merit summary judgment in their favor.

## IV. Alabama Improperly Relies on Post-Fact Cutoff Information in Violation of the Court's Order

During a hearing on July 14, 2026, on the Plaintiff United States' Motion to Strike Defendants' Expert Reports, Doc. 313, the Court emphasized that it would "not rely on inadmissible evidence in ruling on summary judgment" and would "not consider post-fact cutoff evidence at the summary judgment stage." *See* Tr. of Proceedings, July 14, 2026, at 6:8-16; *see also* Aug. 13, 2026 Order, Doc. 347. Despite this admonition, Defendants have included exhibits in support of their

motion for summary judgment that contain post-January 31, 2025 information. The Court should not consider these facts at the summary judgment stage.

The clearest example of this violation is Defendant's Exhibit 123 - DOJ Statement of Kathleen Toomey - Hearing (Feb. 26, 2025), (Doc. 360-122), which Defendants cite in paragraph 342 of their brief. *See* Defs. Mem. in Supp. of Mot. for Summ. J., Doc. 380 at 71. As is evident from the name of the exhibit, this statement post-dates January 31, 2025.

Defendants also attempt to circumvent the Court's August 13, 2026 Order, Doc. 347, by citing to and relying on exhibits that contain facts that occurred post cutoff. They include Defendant's Exhibit 281 - Declaration of Mary Ila Ward (Doc. 375). The declarant signed this on August 28, 2026, and enclosed as Exhibit A, a "true and correct copy" of Ms. Ward's expert report dated June 12, 2026. For the reasons outlined in Plaintiff's Opinion Matrix, Row/Lines 421-460 (Doc. 331-1), there are portions of Ms. Ward's report that should be excluded because they rely on post-fact cutoff information. And given that Ms. Ward predicates her opinions on this impermissible information, the Court should likewise disregard the report's conclusions.

Other examples of post-fact cutoff exhibits are less clear but still problematic. For example, Defendants cite Exhibit 121 - Declaration of Stan Goolsby, (Doc. 360-120), multiple times in their brief. *See* U.S. Evid. in Supp. of Resp. to Defs. Mot.

for Summ. J., Ex. 3 (Doc. 406-3). Stan Goolsby signed the Declaration on August 28, 2026, and Defendants did provide it to the United States previously. [redacted] This modification to training at the eleventh hour could not have been effectively implemented before the fact cutoff.

In support of their motion for summary judgment, Defendants also include the declarations that were attached to their contention interrogatory responses. Many of these declarations include post-fact cutoff information. For example, the Declarations of Bryant Robbins (Defs. Ex. 272, (Doc. 374-59)),[8] Clatys Jenkins (Defs. Ex. 273, (Doc. 374-60),[9] Joseph Danzey (Defs. Ex. 278, (Doc. 374-65)),[10] Ryan Wallis (Defs. Ex. 284, (Doc. 374-70)),[11] Terry Raybon (Defs. Ex. 286, (Doc. 374-72)),[12] and Vencini Smith (Defs. Ex. 287, (Doc. 374-73)),[13] all discuss [redacted] after the fact cutoff. *See* U.S. Evid. in Supp. of Resp. to Defs. Mot. for Summ. J., Ex. 3 (Doc. 406-3). Likewise, the Declarations of Bryant Robbins (Defs. Ex. 272, (Doc. 374-59)), Curtis Nolen (Defs. Ex. 274, (Doc. 374-61)), and Terry Raybon (Defs. Ex. 286, (Doc. 374-72)), [redacted]

---

[8] United States' Opinion Matrix, Row/Lines 58, 153, 157-158, 186, 327, 421 (Doc. 331-1).
[9] *Id*. at Row/Lines 88, 327, 340, 437.
[10] *Id*. at Row/Lines 63, 166, 169, 228, 425.
[11] *Id*. at Row/Lines 20, 191-199, 336, 338, 403.
[12] *Id*. at Row/Lines 71, 180, 182, 183, 185, 256-261, 429.
[13] *Id*. at Row/Lines 34-40, 410.

[redacted] after the fact cutoff.[14] *Id.* The Declarations of Kenneth Peters (Defs. Ex. 280, (Doc. 374-67)) and Terry Raybon (Defs. Ex. 286, (Doc. 374-72)) discuss [redacted] conducted after the fact cutoff.[15] *Id.* In short, these declarations are riddled with post-fact cutoff information.

This Court should disregard all of Defendants post-fact-cutoff information and any lay or expert opinions based on post-fact-cutoff. To rely on any such information after the Court's prior ruling (Doc. 347) would violate the law of the case. *United States v. Hall*, 628 Fed. App'x 681, 684 (11th Cir. 2015) (per curiam) ("The law-of-the-case doctrine is a rule of practice self-imposed by the court and operates to create efficiency, finality, and obedience within the justice system.").

## V. Conclusion

The Court should, therefore, deny Defendants' Motion for Summary Judgement in full.

[14] *Id*. at Row/Lines 272-278, 408, 419, 423, 430, 439, 447, 450, 454-455, 458-459.
[15] *Id*. at Row/Lines 71, 253-259, 306-307, 429.

Respectfully submitted,

PHILLIP W. WILLIAMS JR.
United States Attorney

/s/ *Carla Ward*
CARLA C. WARD
Deputy Civil Chief

JASON R. CHEEK
Chief, Civil Division

GRACE J. POSEY
ALEX MCKENZIE LAGANKE
DON B. LONG III
Assistant United States Attorneys
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov

ASHLEY LIGHT
EILEEN ULATE
MATTHEW J. DONNELLY
CRISTINA GAMONDI
JULIA Z. HALLER
PATRICIA NATION
JOSHUA BACHMAN
MARLYSHA MYRTHIL
JOSHUA BEDOYA
ELENA BEN DAVID
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 718-2258
ashley.light@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, I filed the foregoing with the Clerk of the Court under seal and served the filing to all counsel of record using secure electronic transmission.

/s/ *Carla Ward*
CARLA C. WARD
Attorney for the United States