FILED
2026 Oct-06 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and** | ) | |
| **ALABAMA DEPARTMENT OF** | ) | **OPPOSED** |
| **CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S MOTION TO STRIKE**
**PLAINTIFF'S SEVENTH AMENDED DISCLOSURES AND**
**SUPPLEMENTAL EXPERT REPORT OF DR. KEVIN M. QUINN**

# TABLE OF CONTENTS


Introduction ..... 1

Relevant Background ..... 3

I. Plaintiff's Prior Dispute on Supplemental Initial Disclosures. ..... 3

II. The Court's Recent Management of the Case and Plaintiff's Disclosures. ..... 4

III. Plaintiff's Purported Supplemental Expert Report of Dr. Kevin Quinn. ..... 5

Legal Standard ..... 7

Argument ..... 11

I. Plaintiff's Seventh Amended Initial Disclosures Remain Untimely under Rule 26(e) and the Court's Scheduling Order. ..... 11

II. Plaintiff's Previous Arguments Regarding the State's Supplemental Disclosures Demonstrate the Harm of Plaintiff's Seventh Disclosures. ..... 13

A. Plaintiff's Previous Arguments Foreclose a Finding of Harmlessness or Justification. ..... 13

B. The Court's Previous Ruling on the State's Disclosures Does Not Apply to Plaintiff's Materially Different Seventh Disclosures ..... 15

III. Plaintiff's Untimely and Prejudicial Disclosures Cannot be Cured Without Reopening Fact Discovery and Disrupting the Court's Schedule. ..... 16

IV. Plaintiff Cannot Use Rule 26(e) to Add New Expert Opinions or Circumvent the Court's Expert Disclosure Schedule. ..... 19

A. Rule 26(e) Does Not Permit Plaintiff to Add Comparative Opinions that Quinn Omitted from His Initial Expert Report. ..... 19

B. Quinn's New Opinions Constitute an Unauthorized Rebuttal or Curative Report. ..... 21

C. Plaintiff Cannot Show Substantial Justification or Harmlessness, and Rule 37(c)(1) Requires Exclusion. ..... 22

Conclusion ..... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beller ex rel. Beller v. U.S.*,
221 F.R.D. 689 (D. N.M. 2003) ........................................................................ 7

*Bespoke Studio, Inc. v. Gabbe Private Ltd.*,
348 F.R.D. 262 (N.D. Fla. 2024) ................................................................ 7, 13

*Burney v. Rheem Mfg. Co.*,
196 F.R.D. 659 (M.D. Ala. 2001) ..................................................................... 10

*Cochran v. Brickmann Corp.*,
2009 WL 4823858 (N.D. Ga. 2009) ................................................................... 9

*Coward v. Forestar Realty, Inc.*,
282 F. Supp. 3d 1317 (N.D. Ga. 2017) ..................................................... 9, 19, 21

*Dayton Valley Invs., LLC v. Union Pac. R. Co.*,
2010 WL 3829219 (D. Nev. Sept. 24, 2010) ....................................................... 7

*First Baptist Ferry Pass, Inc. v. W. World Ins. Co.*,
681 F. Supp.3d 1257 (N.D. Fla. 2023) ................................................................ 7

*Gottstein v. Flying J, Inc.*,
2001 WL 36102290 (N.D. Ala. Sept. 27, 2001) ........................................... 10, 14

*Guevara v. NCL (Bahamas) Ltd.*,
920 F.3d 710 (11th Cir. 2019) ....................................................................... 8, 21

*Lamonica v. Hartford Ins. Co.*,
336 F.R.D. 682 (N.D. Fla. 2020) ................................................................ 9, 22

*Lapikas v. Mariner Sands Country Club, Inc.*,
2025 WL 2020153 (S.D. Fla. June 17, 2025) ...................................................... 7

*Pal v. N.Y. Univ.*,
No. 06 Civ. 5892, 2008 WL 2627614 (S.D.N.Y. June 30, 2008) ....................... 15

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) .......... 9

*Stallworth v. E-Z Convenience Stores*,
199 F.R.D. 366 (M.D. Ala. 2001) .......... 10

*State Farm Auto. Ins. Co. v. Fakhoury Med. & Chiropractic Ctr.*,
2023 WL 6167732 (M.D. Fla. Sept. 22, 2023) .......... 12, 13

*State Farm Mutual Auto. Ins. Co. v. Complete Care Ctr., LLC*,
2022 WL 20439273 (M.D. Fla. Nov. 23, 2022) .......... 8

*Young v. Lexington Ins. Co.*,
269 F.R.D. 692 (S.D. Fla. 2010) .......... 9

**<u>RULES</u>**

Fed. R. Civ. P. 26 .......... Passim

Fed. R. Civ. P 26(a) .......... 7, 9, 10

Fed. R. Civ. P. 26(a)(1)(A)(i) .......... 15

Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) .......... 8, 19

Fed. R. Civ. P. 26(a)(2)(D) .......... 8

Fed. R. Civ. P. 26(a)(3) .......... 8

Fed. R. Civ. P. 26(e) .......... Passim

Fed. R. Civ. P. 26(e)(1)-(2) .......... 8, 21

Fed. R. Civ. P. 26(e)(1)(A) .......... 7

Fed. R. Civ. P. 26(e)(2) .......... 8

Fed. R. Civ. P. 37(c) .......... 10

Fed. R. Civ. P. 37(c)(1) and 26(e)................................................................. 1, 9, 14

Defendants the State of Alabama ("Alabama") and Alabama Department of Corrections ("ADOC," and together with Alabama, the "State") submit this Motion to Strike the United States' ("Plaintiff's") Seventh Amended Initial Disclosures and Supplemental Expert Report of Dr. Kevin M. Quinn pursuant to Federal Rules of Civil Procedure 37(c)(1) and 26(e). (See Plaintiff's Seventh Amended Initial Disclosures ("Seventh Disclosures"), attached hereto as **Exhibit A**; Plaintiff's Supplemental Expert Report of Dr. Kevin M. Quinn ("Supplemental Expert Report"), Doc. 406-2 (Pl. Resp. Ex. 2)). In support of this Motion, the State submits the following:

## INTRODUCTION

Nineteen months after the end of fact discovery, and in the midst of dispositive motion deadlines, Plaintiff attempted to disclose 251 additional inmates, 1 former ADOC employee, and 3 family members and friends of current and former inmates, as "individuals, and classes of individuals, who may have discoverable information relevant to [Plaintiff's] claims."[1] (Seventh Disclosures (Ex. A) at 1). This adds to the over 220 inmates disclosed on January 31, 2025, in Plaintiff's Sixth Amended Initial Disclosures ("Sixth Disclosures" attached hereto as **Exhibit B**). Plaintiff fails to articulate any justification for the disclosure of 255 additional individuals on the

[1] The Seventh Disclosures add 265 new individuals not previously identified in Plaintiff's disclosures. However, the State identified 10 individuals who the State previously deposed in this matter and therefore, does not include those 10 individuals in this calculation.

eve of summary judgment – many of whom have been incarcerated for years. The belated disclosure of these individuals prejudices the State in a myriad of ways, ranging from surprise to a deprivation of the opportunity for discovery. Nothing in Rule 26(e) permits this type of vast disclosure long after the close of discovery and in the midst of dispositive motions.

Additionally, Plaintiff belatedly submitted a forty-one-page "Supplemental Expert Report" from Dr. Kevin Quinn on September 22, 2026. (Doc. 406-2 (Pl. Resp. Ex. 2)). This Supplemental Expert Report comes more than 130 days after the deadline for the disclosure of initial expert reports. (Doc. 294). The supplemental report reflects entirely new opinions related to the number of incidents and deaths, which were readily available to Quinn at the time of his May 15, 2026, report. (Id.). Nothing in Rule 26(e) permits Plaintiff a second chance to make late disclosures, simply because its expert failed or forgot to submit opinions consistent with the agreed-upon schedule.

As discussed in further detail below, this Motion to Strike is due to be granted for the following reasons:

(1) Plaintiff served its Seventh Disclosures long after Rule 26(e) and scheduling deadlines;

(2) Plaintiff's own prior arguments and the Court's ruling on the State's December 2024 disclosures confirm that the Seventh Disclosures prejudice the State;

(3) The prejudice of the Seventh Disclosures cannot be cured without reopening discovery and disrupting the Court's schedule; and

(4) The Supplemental Expert Report represents an impermissible Rule 26(e) supplementation and adds new expert opinions.

Hence, striking Plaintiff's belated discovery and expert disclosures constitutes the only appropriate remedy to prevent the significant prejudice to the State due to Plaintiffs failure to follow the basic scheduling requirements in this matter.

## RELEVANT BACKGROUND

The Court established January 31, 2025, as the evidentiary fact cutoff, in part to avoid "potential trial by ambush." (Docs. 85, 93, 294). The Third Amended Scheduling Order required supplementation at reasonable intervals and a supplement sixty days before discovery closed containing all unproduced supplemental discovery known through due diligence. (Doc. 217). The Fourth Amended Scheduling Order later required Rule 26(e) supplementation within a reasonable period after discovery of the information, ordinarily within twenty-one days after counsel learned of the need to supplement. (Doc. 294).

### I. PLAINTIFF'S PRIOR DISPUTE ON SUPPLEMENTAL INITIAL DISCLOSURES.

On December 31, 2024, before the fact cutoff, the State supplemented its initial disclosures with 149 witnesses not listed previously. (Docs. 265, 265-1). Plaintiff objected that the State could not "spring 149 new names" one month before discovery closed because doing so "significantly hampers" its ability to obtain

discovery. (Doc. 265-2 at 2). The State disclosed most of those individuals, however, through discovery, and many were ADOC employees whom Plaintiff deposed or planned to depose. (Doc. 265-3).

The Special Master found any untimeliness harmless because Plaintiff already possessed access to the information, could identify key individuals by position, and could address perceived gaps before discovery closed. (Doc. 265 at 7). The Special Master also noted that Plaintiff itself supplemented on the January 31, 2025, fact cutoff, which diminished its position. (Id. at 2, 8). The Court adopted the recommendation and denied Plaintiff's request to strike. (Docs. 265, 288).

## II. The Court's Recent Management of the Case and Plaintiff's Disclosures.

Plaintiff last supplemented its disclosures on January 31, 2025. (See Sixth Disclosures (Ex. B)). The Fourth Amended Scheduling Order later maintained that cutoff and required Rule 26(e) supplementation "within a reasonable period of time after discovery" of the information, ordinarily within twenty-one days after counsel learns of the need to supplement. (Doc. 294).

On August 31, 2026, Plaintiff served its Seventh Disclosures, adding, among other changes, 251 inmates. (See Table of Witnesses Added, attached hereto as **Exhibit C**). The disclosure came nineteen months after the fact cutoff and Plaintiff's prior supplementation. Plaintiff offered no justification for its delay.

## III. PLAINTIFF'S PURPORTED SUPPLEMENTAL EXPERT REPORT OF DR. KEVIN QUINN.

The Fourth Amended Scheduling Order specified two rounds of expert reports, initial and responsive. The Parties agreed to forego a rebuttal-report deadline in light of the November 30, 2026, trial. (Doc. 294). Plaintiff later sought to strike the State's reports, arguing that it lacked an "opportunity to offer any of its own rebuttal opinions." (Doc. 313 at 14; Doc. 324).

Plaintiff served Quinn's initial report on May 15, 2026. (Doc. 358-3 (Pl. Ex. 120)). Quinn's assignment included sampling ADOC incident and Law Enforcement Services Division ("LESD") reports and summarizing ADOC incidents and inmate deaths over time. (Id.). The report offered no comparative opinions concerning ADOC and the Federal Bureau of Prisons ("BOP") incident or death rates.

At Quinn's June 15, 2026, deposition, he acknowledged that Plaintiff provided him with BOP incident data and that he examined BOP deaths and "tabulated [the] number of deaths." (Doc. 373-28 (Ex. 162) at 246:18-21). When the State sought the results, Plaintiff instructed Quinn not to answer because the calculations "were in the draft report" but "not in the final report." (Id. at 246:23-247:5). Plaintiff similarly blocked questions about conclusions from the BOP analysis, and the State preserved its right to question Quinn about BOP statistics and comparisons. (Id. at 260:22-261:17; 264:9-265:17).

After the State served its responsive expert reports, Plaintiff moved to strike them and alternatively sought leave to serve rebuttal reports. (Doc. 313 at 20; see Doc. 321 at 6). The Court did not grant that relief, reserving any request to reopen expert discovery or serve a curative report and stating "no general reopening is authorized." (Doc. 347 at 5). Plaintiff nevertheless served Quinn's forty-one-page Supplemental Expert Report on September 22, 2026, purportedly under Rule 26(e). (Doc. 406-2 (Pl. Resp. Ex. 2)). The Supplemental Expert Report suggests Plaintiff instructed Quinn to compare ADOC and BOP incidents and deaths and acknowledges consideration of the State's BOP opinions in doing so. (Id. at 2).

The Supplemental Expert Report relies on data available long before May of 2026 to offer numerous new comparisons, including that ADOC's average assault rate exceeds the average BOP rate. (Id. at 9-12). Quinn also opines that ADOC homicide rates are higher in comparison to BOP rates. (Id. at 9-12, 25, 29).

Plaintiff did not seek leave to disclose another expert report. The Supplemental Expert Report neither corrects Quinn's prior opinions nor provides a limited update based on information unavailable when he prepared his initial report. The Supplemental Expert Report adds a new BOP-comparison analysis, portions of which respond to the State's experts and rest on work Quinn already performed before his deposition.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(e)(1)(A), a party who made a disclosure under Rule 26(a) must supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." However, Rule 26(e) "does not 'create a loophole' through [] which a party who failed to initially disclose information can disclose it 'after the [C]ourt's deadline for doing so has passed.'" Bespoke Studio, Inc. v. Gabbe Private Ltd., 348 F.R.D. 262, 265 (N.D. Fla. 2024) (quoting Dayton Valley Invs., LLC v. Union Pac. R. Co., 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010)).

Moreover, while Rule 26(e) allows a party to supplement or correct a disclosure, it "does not give license to sandbag one's opponent" by later disclosing information that should have been included in earlier or initial disclosures. Id. (quoting Beller ex rel. Beller v. U.S., 221 F.R.D. 689, 695 (D. N.M. 2003)) (internal quotations omitted); see also Lapikas v. Mariner Sands Country Club, Inc., 2025 WL 2020153 (S.D. Fla. June 17, 2025) (finding that a supplemental disclosure made fourteen minutes before the close of discovery was untimely and thus deprived the defendant of any meaningful opportunity to depose the witnesses or develop rebuttal evidence); First Baptist Ferry Pass, Inc. v. W. World Ins. Co., 681 F. Supp.3d 1257,

1266 (N.D. Fla. 2023) ("The primary purpose of the discovery rules is to ensure the parties are 'on notice' of certain information possessed by the opposing party, so as to 'eliminate surprise and trial by ambush.'"); State Farm Mutual Auto. Ins. Co. v. Complete Care Ctr., LLC, 2022 WL 20439273, at *3 (M.D. Fla. Nov. 23, 2022) (striking the defendants' witness because, among other things, disclosure "came after the close of discovery," preventing the plaintiff from deposing the witness or requesting documents).

Rule 26 requires parties to "make [expert] disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). An expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii). Rule 26(e) also imposes a duty to supplement expert disclosures when a party learns that information previously disclosed remains "incomplete or incorrect" in "some material respect." FED. R. CIV. P. 26(e)(1)-(2). However, additions or changes to an expert report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); see Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 719 (11th Cir. 2019) (holding the district did not abuse its discretion in striking the plaintiff's second supplemental expert report in its entirety and portions of its first supplemental expert report due to filing the second supplemental expert report a

month after the close of discovery and three days after the deadline for dispositive motions). But supplementation does not provide a vehicle to add opinions that an expert omitted from a timely report or to circumvent a court-ordered expert disclosure schedule. See Coward v. Forestar Realty, Inc., 282 F. Supp. 3d 1317, 1329 (N.D. Ga. 2017) (quoting Cochran v. Brickmann Corp., 2009 WL 4823858, at *6-7 (N.D. Ga. 2009) ("Rule 26 does not permit a party to circumvent the deadlines imposed by the [c]ourt. . . . Rule 26(e) is not an excuse to rewrite an expert report or present new opinions.") (internal quotations omitted). Indeed, Plaintiff itself previously emphasized that "compliance with the requirements of Rule 26 is not "merely aspirational" because the expert discovery rules exist to permit adequate preparation and to prevent surprise. (Doc. 313 at 8 (quoting Reese v. Herbert, 527 F.3d 1253, 1266 (11th Cir. 2008)).

> Rule 37(c)(1) also provides that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). As a result, a court may sanction a party for failing to timely disclose information unless the failure was harmless or justified. See Young v. Lexington Ins. Co., 269 F.R.D. 692, 693 (S.D. Fla. 2010); Lamonica v. Hartford Ins. Co., 336 F.R.D. 682, 685 (N.D. Fla. 2020) ("The party that failed to comply with Rule 26(a) bears the burden of establishing that its untimely disclosure was

either substantially justified or harmless."); see also Gottstein v. Flying J, Inc., 2001 WL 36102290, at *3 (N.D. Ala. Sept. 27, 2001) ("The sanction of exclusion for failure to disclose pursuant to Fed. R. Civ. P. 26(a) or supplement pursuant to Fed. R. Civ. P. 26(e) is self-executing and automatic unless the non-disclosing party demonstrates that the failure to disclose was 'substantially justified' or 'harmless.'").

When the disclosing party claims substantial justification for untimely disclosure, courts ask "whether reasonable people could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." Gottstein, 2001 WL 36102290, at *3 (quoting Stallworth v. E-Z Convenience Stores, 199 F.R.D. 366, 368 (M.D. Ala. 2001)) (internal quotations omitted). Additionally, the advisory committee notes to Rule 37(c) "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." Id. (quoting Burney v. Rheem Mfg. Co., 196 F.R.D. 659, 692 (M.D. Ala. 2001)). Plaintiff cannot establish substantial justification or harmlessness for either its untimely Seventh Amended Initial Disclosures or Quinn's Supplemental Expert Report.

## ARGUMENT

### I. PLAINTIFF'S SEVENTH AMENDED INITIAL DISCLOSURES REMAIN UNTIMELY UNDER RULE 26(E) AND THE COURT'S SCHEDULING ORDER.

Plaintiff's untimely disclosure of 255 new individuals amounts to trial by ambush as the State prepares for trial. Fact discovery closed on January 31, 2025.[2] The Fourth Amended Scheduling Order requires Rule 26(e) supplementation within a reasonable time after discovery of the information, ordinarily twenty-one days. (Doc. 294). Plaintiff nevertheless waited until August 31, 2026, approximately nineteen months after the fact cutoff and its prior supplementation, to add 251 inmates. (Seventh Disclosures (Ex. A); see also Table of Witnesses Added (Ex. C)).

Rule 26 disclosures exist to focus discovery and facilitate trial preparation. (See FED. R. CIV. P. 26 advisory committee note to 1993 amendment). Adding 251 inmates ninety-one days before trial defeats that purpose and forces the State to guess which newly identified individuals Plaintiff may actually use.

Either Plaintiff knew before January 31, 2025, that these inmates should be disclosed, making the disclosure untimely, or it learned of them later and must explain when it learned of them, why disclosure waited until August 31, 2026, and why the additions qualify as supplementation rather than expansion of the closed factual record. As for the basis of the disclosure, Plaintiff cited only its "ongoing

[2] One inmate in Plaintiff's Seventh Disclosures did not even enter ADOC custody until after the fact cutoff. (Seventh Disclosures (Ex. A) at 12) (inmate J.C. (who Plaintiff identifies incorrectly as J.B.) entered ADOC custody on March 5, 2026).

obligation to supplement" its prior generic reference to current and former inmates, and its desire to provide "greater specificity as a professional courtesy." (Sept. 1, 2026, Email from Elena David, attached hereto as **Exhibit D**).

Plaintiff's generic reference to current and former ADOC inmates did not preserve the right to identify hundreds of specific inmates after discovery closed. Although the State also disclosed certain "current and former" witnesses by position or category, those categories referred to a limited and readily identifiable group of ADOC officials whose identities and job responsibilities remain publicly available or otherwise ascertainable from the positions themselves, giving Plaintiff meaningful notice of the individuals and subject matters at issue. A reference to "current and former ADOC inmates," by contrast, sweeps in tens of thousands of potential witnesses and broad scopes of testimony which gives the State no comparable notice of which individuals Plaintiff actually intended to rely upon or the subjects of their anticipated testimony. For example, Plaintiff cannot claim surprise by the State identifying the "current and former" Commissioner of ADOC nor what the Commissioner may testify about. In State Farm Auto. Ins. Co. v. Fakhoury Med. & Chiropractic Ctr., 2023 WL 6167732, at *2 (M.D. Fla. Sept. 22, 2023), the court rejected a catch-all disclosure covering hundreds of patients because Rule 26 requires identification of witnesses a party in good faith may use and exists to permit adequate preparation and prevent surprise. The court allowed additions

only if made timely during discovery. Id. The same reasoning forecloses Plaintiff's post-discovery additions here.

Calling the disclosure a "professional courtesy" does not make it timely. Rule 26(e) is not a loophole for disclosure after the Court's deadline, and the delay deprived the State of discovery tools for investigating the newly identified witnesses. Bespoke Studio, 348 F.R.D. at 265.

## II. PLAINTIFF'S PREVIOUS ARGUMENTS REGARDING THE STATE'S SUPPLEMENTAL DISCLOSURES DEMONSTRATE THE HARM OF PLAINTIFF'S SEVENTH DISCLOSURES.

### A. PLAINTIFF'S PREVIOUS ARGUMENTS FORECLOSE A FINDING OF HARMLESSNESS OR JUSTIFICATION.

Plaintiff's Seventh Disclosures differ from the State's Supplemental Disclosures because Plaintiff cannot demonstrate harmlessness. The State's Supplemental Disclosures identified 149 witnesses thirty-one days before the discovery deadline. Plaintiff argued the State's disclosures, even though made during the course of fact discovery, were impermissible. (See Doc. 265). The Special Master ultimately agreed with the State after letter briefing on the issue, finding that "even assuming the supplementation was technically untimely, the record supports a finding that the failure was harmless" because: (1) many of the witnesses had already been deposed or were scheduled to be deposed; (2) Plaintiff long possessed other means of identifying the individuals and their positions; (3) Plaintiff obtained prior access to the underlying information; and (4) Plaintiff still

had the opportunity to address perceived gaps before discovery closed. (Doc. 265 at 7). Plaintiff's Seventh Disclosures fail on all four of these points.

Plaintiff failed to previously identify the inmates individually, discovery is closed, and the State possesses no comparable means of determining what each inmate may know. Plaintiff also disclosed them on the original dispositive-motion deadline, not while discovery remained open. (Compare Docs. 265, 265-2 with Seventh Disclosures (Ex. A)).

Nor can Plaintiff dismiss its failure as an honest mistake. Plaintiff described the disclosure as intentional "greater specificity" provided as a "professional courtesy." The State further possessed no knowledge that Plaintiff would supplement its initial disclosures nineteen months after the fact cutoff, let alone that Plaintiff would supplement its disclosures with an additional 247 inmates. See Gottstein, 2001 WL 36102290, at *3. Plaintiff did not make a mistake when stating the purpose of the Seventh Disclosures was to "provide greater specificity as a professional courtesy." (Sept. 1, 2026 Email (Ex. D)). Accordingly, because Plaintiff's Seventh Disclosures are not harmless, Plaintiff "is not allowed to use that information or witness[es] [in its Seventh Disclosures] to supply evidence on a motion, at a hearing, or at a trial," FED. R. CIV. P. 37(c)(1), and should thus be stricken and excluded.

### B. THE COURT'S PREVIOUS RULING ON THE STATE'S DISCLOSURES DOES NOT APPLY TO PLAINTIFF'S MATERIALLY DIFFERENT SEVENTH DISCLOSURES.

Plaintiff's prior briefing applies to this specific situation. Plaintiff failed to provide sufficient notice of the 251 newly identified inmates. Plaintiff's prior disclosures broadly identified "current and former prisoners" in ADOC custody who may possess information concerning prison conditions and events dating back to January 1, 2019. (See Plaintiff's First Amended Initial Disclosures, attached hereto as **Exhibit E**). Later disclosures also separately identified particular inmates by name and distinguished "prisoners specifically named" from the broader category. (See Plaintiff's Fourth Amended Initial Disclosures, attached hereto as **Exhibit F**). Plaintiff's own disclosure structure therefore recognizes the difference between generalized notice that inmates may possess discoverable information and identification of the specific inmates Plaintiff may actually use to support its claims.

In challenging the State's Supplemental Disclosures, Plaintiff emphasized that Rule 26 requires disclosure not merely of individuals who may possess relevant information, but of those individuals whom "the disclosing party may use to support its claims or defenses." (Doc. 265-4 at 4 (quoting Fed. R. Civ. P. 26(a)(1)(A)(i) and citing Pal v. N.Y. Univ., No. 06 Civ. 5892, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008)). Plaintiff articulated its belief that disclosure must alert the opponent of the need to take discovery from the particular witness, rather than establish that the

person exists somewhere within a larger universe of potentially knowledgeable people. (Id.). Plaintiff argued that it should not have to "discern the 149 people [the State] belatedly disclosed from the thousands of names provided in employee rosters." (Doc. 265-4 at 3-4). Plaintiff likewise argued that timely disclosure allows the receiving party to focus depositions and written discovery. (Id.; Doc. 265 at 3-4). That reasoning applies with greater force here. General awareness that thousands of current and former inmates may know something about prison conditions did not notify the State that Plaintiff might rely on these particular 251 inmates. Plaintiff cannot now collapse the distinction between generalized notice and specific identification that it previously urged the Court to enforce.

The prejudice harms the State in material ways because mere inmate status does not identify the subject of a witness's knowledge in the way an employee's position may. Without timely identification, the State possessed no reason or practical ability to determine which inmates warranted targeted discovery. Plaintiff's Seventh Disclosures therefore deprive the State of the very opportunity to focus discovery that Plaintiff previously argued Rule 26 protects.

## III. Plaintiff's Untimely and Prejudicial Disclosures Cannot be Cured Without Reopening Fact Discovery and Disrupting the Court's Schedule.

The Fourth Amended Scheduling Order originally required dispositive motions and supporting evidence by August 31, 2026.[3] The same day Plaintiff disclosed the 255 new individuals. (Seventh Disclosures (Ex. A)). The State already assembled and submitted its summary-judgment evidentiary record, yet Plaintiff relied in its own summary-judgment motion on inmates first identified that day. (Doc. 378 at 9, 43, 47, 49, 78, 79, 92, 93, 179, 182, 183, 202, 211). The State cannot now investigate what the 251 inmates purportedly possess knowledge about, pursue follow-up discovery, test their accounts, develop responsive evidence, or determine how their testimony affects dispositive issues. The prejudice cannot be cured within the existing schedule. Permitting Plaintiff to call any of these witnesses would either deprive the State of discovery or require reopening discovery even though the Court stated that discovery and dispositive deadlines will not be extended "absent extraordinary cause" and that the November 30, 2026, trial "will not be extended under any circumstances." (Doc. 294 at 1). The State never sought and believes that reopening discovery at this late juncture would be impossible and equally prejudicial.

The number of witnesses compounds the problem. The case already operates under numerical limitations on fact depositions, and meaningful investigation of 251

[3] The State and Plaintiff sought brief extensions of time to submit dispositive motions, which the Court granted on August 31, 2026. (Docs. 363, 365, 367, 368).

new inmates shortly before trial would be impractical. Indeed, the Court previously recognized the concern that proceeding on an inadequately developed record could "require the Court to evaluate the reliability of information not fairly tested by full and timely discovery." (Doc. 85 at 13). The prejudice extends beyond the inability to depose the newly disclosed inmates.[4] A witness's name also does not disclose the substance or factual basis of anticipated testimony. Plaintiff knows why it identified each inmate. The State does not. A later witness list cannot restore the lost opportunity to discover and test that testimony. Nor does ADOC's possession of institutional records supply notice that Plaintiff considers a particular inmate a witness or identify what Plaintiff expects him to say. Exclusion is the only practical

[4] The State previously warned of this precise prejudice. In the Parties' 2023 dispute concerning Plaintiff's assertion of the confidential-informant privilege, the State warned that "[n]othing would prevent the Plaintiff from choosing to disclose former confidential informants far after expert reporting and depositions conclude," leaving the State prejudiced by the late disclosure. (Doc. 163 at 26). Plaintiff responded that it would disclose any previously withheld informant it intended to use as a witness through its Initial Disclosures and "in sufficient time for Defendants to elect to depose or interview them." (Id. at 27). Plaintiff further acknowledged that, "barring some substantial justification or harmlessness," it could not use a withheld confidential informant as a trial witness if that person had not been included in its Initial Disclosures. (Id.). The Special Master relied on those representations in concluding that Plaintiff's proposed procedure "appears to address much of the State's concern about prejudicial timing." (Id.). Plaintiff later reiterated to the Court that the State would suffer no unfair prejudice or surprise because Plaintiff would disclose any informant it intended to use at trial with sufficient time for the State to depose or interview that individual. (Doc. 173 at 17-18). The State does not contend that the newly disclosed inmates necessarily were confidential informants. The point is that the State previously identified the prejudice created by disclosure of inmate witnesses after depositions concluded, and Plaintiff avoided that prejudice argument by representing that it would provide sufficient time for the State to depose or interview any such witnesses.

remedy that preserves the Court's schedule and the discovery record on which the parties were required to prepare their cases.

## IV. Plaintiff Cannot Use Rule 26(e) to Add New Expert Opinions or Circumvent the Court's Expert Disclosure Schedule.[5]

### A. Rule 26(e) Does Not Permit Plaintiff to Add Comparative Opinions that Quinn Omitted from His Initial Expert Report.

Rule 26 required Quinn's initial report to contain a complete statement of all opinions and their bases. FED. R. CIV. P. 26(a)(2)(B)(i)-(ii). Rule 26(e) permits correction of materially incomplete or incorrect information; it does not authorize new opinions an expert possessed or could develop from information already available before the deadline. See Coward, 282 F. Supp. 3d at 1329. Quinn's Supplemental Expert Report goes well beyond correction. Quinn's initial report sampled ADOC incident and LESD reports and summarized ADOC incidents and deaths over time; it offered no ADOC-BOP comparisons. (Doc. 358-3 (Pl. Ex. 120)). Quinn's Supplemental Expert Report announces a different assignment and offers extensive new comparative rates and conclusions. (Doc. 406-2 (Pl. Ex. 2)). Those are new affirmative opinions, not corrections.

Importantly, Quinn's new opinions are based on information Quinn confirmed he possessed prior to disclosure of his initial report. In the Supplemental Expert

[5] In bringing this Motion, the State does not waive, and expressly reserves, all other grounds for excluding or limiting Dr. Quinn's expert reports, opinions, testimony, and underlying analyses, including grounds that may be raised by motion in limine or otherwise before trial.

Report, Quinn states that he obtained the BOP inmate-population figure used in his incident-rate analysis from the BOP website on February 13, 2025—more than a year before Plaintiff served his initial expert report. (Doc. 406-2 (Pl. Resp. Ex. 2)). Quinn then uses that figure to estimate the BOP prisoner population for each month from January 2021 through December 2023. (Id.). The BOP incident data underlying that comparison likewise covers incidents from January 2021 through December 2023. (Id. at 4). Thus, the Supplemental Expert Report itself demonstrates that significant inputs underlying Quinn's new comparative analysis were available to him well before the deadline for his initial expert report.

The deposition record goes further: Quinn not only possessed access to relevant BOP information before the supplemental report, but he also already analyzed it. At Quinn's June 15, 2026, deposition, Quinn testified that Plaintiff provided him BOP incident data, that he examined BOP deaths, and that he "tabulated [the] number of deaths." (Doc. 373-28 (Ex. 162)). Plaintiff's counsel instructed Quinn not to answer when the State inquired of the results of Quinn's examination and tabulations, explaining that the calculations "were in the draft report" but "not in the final report." (Id. at 246:22-247:5). Quinn's own testimony thus defeats any contention that the Supplemental Expert Report merely corrects Quinn's prior report based on newly discovered information.

Plaintiff therefore possessed the BOP data, Quinn analyzed it, and calculations appeared in a draft before Plaintiff omitted them from his final report. Rule 26(e) does not permit Plaintiff to restore and expand those opinions after expert discovery developed, particularly where the Court did not authorize a curative or rebuttal report. (Doc. 347 at 5). See Guevara, 920 F.3d at 717-19; Coward, 282 F. Supp. 3d at 1329-30. Nor does Quinn's consideration of additional information after his initial report transform the resulting forty-one-page report into permissible supplementation. Plaintiff must show that later-acquired information rendered a previously disclosed opinion materially incomplete or incorrect. Plaintiff cannot use that information as the basis for an entirely new comparative analysis never disclosed in Quinn's initial report. See FED. R. CIV. P. 26(e)(1)-(2).

### B. QUINN'S NEW OPINIONS CONSTITUTE AN UNAUTHORIZED REBUTTAL OR CURATIVE REPORT.

The report is equally improper to the extent it responds to the State's experts. Quinn expressly states that he considered "[the State's] expert opinions related to BOP data." (Doc. 406-2 at 2). But the Scheduling Order provided only initial and responsive reports, and the Parties agreed to forego a rebuttal deadline. (Doc. 294; Doc. 313 at 5-6). Plaintiff invoked that agreement when it complained that the State's reports deprived it of an "opportunity to offer any of its own rebuttal opinions," and it expressly requested leave to serve rebuttal reports. (Doc. 313 at 14, 20). The Court did not grant that request and stated that "no general reopening is

authorized." (Doc. 347 at 5). Plaintiff nevertheless served Quinn's Supplemental Expert Report without seeking leave and identified Rule 26(e) as the sole basis for doing so. (See September 22, 2026, Email from Carla Ward, attached hereto as **Exhibit G**). Plaintiff cannot accomplish through unilateral supplementation what it previously asked the Court to allow. If the BOP comparisons are affirmative opinions, they belonged in Quinn's initial report to the extent based on then-available information. If they answer the State's experts, they are rebuttal opinions for which the Scheduling Order provides no third round. Either way, Rule 26(e) does not authorize them.

### C. PLAINTIFF CANNOT SHOW SUBSTANTIAL JUSTIFICATION OR HARMLESSNESS, AND RULE 37(C)(1) REQUIRES EXCLUSION.

Plaintiff bears the burden of showing substantial justification or harmlessness. Lamonica, 336 F.R.D. at 685. Plaintiff failed to seek leave for Quinn's report and offered no justification beyond invoking Rule 26(e). (Sept. 22, 2026 Email (Ex. G)). That invocation does not explain why Quinn could not timely disclose BOP opinions he already developed or why Plaintiff may now offer rebuttal opinions without the leave it previously requested. The timing also forecloses any attempt to argue the harmlessness of this belated disclosure. The State's experts served their responsive reports, the State deposed Quinn, expert discovery ended, dispositive briefing began, and trial remains set for November 30, 2026. Allowing the report would require reopening expert discovery for another Quinn deposition and responsive expert work

or force the State to confront new opinions without either. The Court already stated that "no general reopening is authorized." (Doc. 347 at 5).

The prejudice is especially concrete because Plaintiff prevented the State from examining Quinn on this very subject. When the State asked about the results and conclusions of his BOP analysis, Plaintiff instructed him not to answer because the calculations were omitted from his final report:

> A: I looked at numbers of deaths in the [B]OP.
>
> Q: From what time period?
>
> A: I don't recall the exact dates. There was some overlap with the dates in this report. It wasn't perfect, though.
>
> Q: What were the – did you do any analysis of the data that you got from the – related to the Federal Bureau of Prisons?
>
> A: I tabulated number of deaths.
>
> Q: And can you give me that number?
>
> MR. LONG: Objection. I'm going to instruct him not to answer. That was in a draft version of the report, and we're going to take the position it's work product.
>
> MS. POTTER: Sorry, what's work product?
>
> MR. LONG: The calculations that he did that were in the draft report that are not in the final report.
>
> * * *

Q: Would you consider when you were looking at the FBO[B] deaths, would you consider that number to be high?

MR. LONG: Same objection as to work product. I'd ask him not to answer.

Q: Did you use the data that you saw in the F[B]OP to form your opinions in your report?

A: In the final version of the report, not.

(Doc. 373-28 (Ex. 162) at 246:13-247:19). The State stated is disagreement with Plaintiff's objection. (Id. at 248:1-4) ("MS. POTTER: I just want to preserve on the record that we disagree with your objection, and that would be facts that were provided to him. We do not consider that work product."). The State also stated Plaintiff's objections prevented the State from asking questions related to Quinn's analysis of BOP death information:

> Based on your instruction – based on the attorney for the United States instructing you not to answer questions regarding the Federal Bureau of Prisons, there are several follow[]up questions that the State of Alabama and the Alabama Department of Corrections would ask in the areas of the Federal Bureau of Prisons statistics generally, whether or not you tried to relate it – relate the data seen in the Federal Bureau of Prisons to the Alabama Department of Corrections system, whether you tried to draw comparisons between the Federal Bureau of Prisons and the Alabama Department of Corrections and whether you made any layman's opinions about the data from the Federal Bureau of Prisons. There are more, but this is intended to serve as a high level understanding that there are numerous inquires the State of Alabama and the Alabama Department of Corrections would ask.

(Id. at 260:22-261:15). Finally, the State asked Plaintiff to "state what [Plaintiff's] objection is to asking [B]OP questions." (Id. at 266:7-9). Plaintiff stated, "Any conclusions he drew from the [B]OP data he analyzed." (Id. at 266:10-11). Plaintiff now offers a forty-one-page report devoted exactly to the information the State sought to question Quinn about, to which Plaintiff objected. The Supplemental Expert Report contains classifications, calculations, comparative rates, regression analyses, and conclusions that the State could not test at Quinn's deposition, including by examining the assumptions and methodological choices underlying his opinions, testing his classifications and calculations, or exploring the limitations of his comparisons. (Doc. 406-2 (Pl. Resp. Ex. 2)). Nor could the State address those new opinions through responsive expert work. Rule 37(c)(1)'s harmlessness exception does not encompass a disclosure that deprives the opposing party of both opportunities. Because Plaintiff cannot establish substantial justification or harmlessness, Rule 37(c)(1) requires exclusion of Quinn's Supplemental Expert Report and its new opinions, analyses, calculations, figures, tables, and conclusions.

## CONCLUSION

For these reasons, the Court should strike Plaintiff's Seventh Amended Disclosures and Dr. Quinn's September 22, 2026, Supplemental Expert Report.

Dated: October 6, 2026

/s/ *William R. Lunsford*
William R. Lunsford

*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
Sonia M. Lazaro
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com
sonia.lazaro@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**

445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 6th day of October, 2026:

Ashley Light
Eileen Ulate
Matthew Donnelly
Cristina Gamondi
Julia Haller
Patricia Nation
Joshua Bachman
Marlysha Myrthil
Joshua Bedoya
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
marlysha.myrthil@usdoj.gov
joshua.bedoya@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason Cheek
Grace Posey
Praveen Krishna
Don Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*<u>/s/ William R. Lunsford</u>*
Of Counsel