FILED
2026 Oct-09 AM 11:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | **OPPOSED** |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S MOTION TO CONSIDER POST-DISCOVERY EVIDENCE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND, TO THE EXTENT NECESSARY, FOR LIMITED MODIFICATION OF THE COURT'S AUGUST 13, 2026 ORDER**

# TABLE OF CONTENTS


Introduction .......................................................................................... 1

Background .......................................................................................... 3

Argument .......................................................................................... 5

I. The Declaration of Janet Eddings .......................................................... 8

II. The Declaration of Charles Williams .......................................................... 10

III. The Declaration of Stan Goolsby .......................................................... 14

Conclusion .......................................................................................... 18

Certificate Of Service .......................................................................................... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Euroboor BV v. Grafova,
No. 2:17-cv-02157-KOB, Doc. 258, at 6-7 (N.D. Ala. Jan. 25, 2022).................. 5

Hornady v. Outokumpu Stainless USA, LLC,
118 F.4th 1367 (11th Cir. 2024) ........................................................... 6

Sosa v. Airprint Sys., Inc.,
133 F.3d 1417 (11th Cir. 1998)............................................................ 5

**Statutes**

Ala. Code § 14-1-1.7 ........................................................................ Passim

Ala. Code § 14-1-1.7(b)(1) ................................................................. 4

**Rules**

Federal Rule of Civil Procedure 16(b)(4) ............................................ 5

In light of the guidance provided by this Court in its August 13, 2026 Order on Plaintiff's Motion to Strike (Doc. 347), Defendants the State of Alabama ("Alabama") and Alabama Department of Corrections ("ADOC"), (together, the "State") respectfully request that this Court permit the introduction of post-discovery evidence in opposition to Plaintiff's Motion for Summary Judgment pursuant to Rule 16(b)(4) and this Court's instruction. (Doc. 347 at 5-6). As the good cause basis for this Motion, the State provides as follows:

## INTRODUCTION

Good cause exists for this Court to admit a limited amount of evidence coming into existence after January 31, 2025, for reasons beyond the control of the State. The State remains cognizant of this Court's guidance that, absent a showing of good cause, it would not consider evidence after the fact-cutoff in ruling on summary judgment. (Doc. 329 at p. 6). Consistent with that guidance, the State did not rely on post-cutoff evidence in its own Motion for Summary Judgment. (Doc. 380). However, Plaintiff's Motion for Summary Judgment raises factual assertions and arguments that implicate evidence coming into existence after the fact-discovery cutoff for reasons beyond the control of the State. (Doc. 378).

Consistent with the procedure established by the Court's August 13, 2026, Order, the State asks this Court to consider the following documents that refute positions asserted by Plaintiff at summary judgment:

1. The Declaration of Janet Eddings related to updated information about steps taken by ADOC pursuant to Ala. Code § 14-1-1.7, which authorized the Commissioner to appoint fifteen employees for Constituent Services;

2. The Declaration of Charles Williams related to updated information about the operational benefits and impact of ADOC's appointment of employees pursuant to Ala. Code § 14-1-1.7; and

3. The Declaration of Stan Goolsby related to updated information related to the implementation of the TeleStaff roster management tool within ADOC and updated information related to staffing levels based on the implementation of various measures detailed in the State's Motion for Summary Judgment.

For the reasons set forth below, the State submits that good cause exists for this Court to consider the identified post-cutoff evidence in response to the arguments and evidence presented in Plaintiff's Motion for Summary Judgment. Notably, the State seeks leave only for the basis of its opposition to Plaintiff's Motion and exclusion of such evidence in the Court's consideration of Plaintiff's Motion would severely prejudice the State to the extent that the post-January 31, 2025, facts arose for reasons beyond the control of the State and wholly disconnected from any purported delay. The State respectfully requests the Court grant this Motion, or in the alternative and to the extent necessary, modify the August 13, 2026, Order for good cause shown to allow the State to present the identified evidence in response to Plaintiff's Motion for Summary Judgment.

## BACKGROUND

On August 13, 2026, this Court issued an Order detailing the Court's expectations with respect to the discovery fact cutoff and the use of post-cutoff facts at summary judgment. (Doc. 347 at 5-6). The State abided by this Court's prior instruction, as noted above, and filed a Motion for Summary Judgment without relying upon substantial post-cutoff evidence of the State's reasonable responses to evolving conditions within its prison system as well as additional evidence from outside of Alabama that provide context to the challenges faced in running prison systems that persist and continue to evolve after January 31, 2025. (Doc. 380). After reviewing Plaintiff's Motion for Summary Judgment, however, the State determined that limited relief is warranted and necessary to fully respond to the arguments and allegations presented by Plaintiff. (Doc. 378). Although Plaintiff appears to comply with the January 31, 2025, evidentiary cutoff with respect to its purported evidence, Plaintiff, in essence, asked the Court to draw conclusions well beyond January 31, 2025, with respect to alleged ongoing systemic problems. (Id.). For example, Plaintiff's motion addresses alleged ongoing staffing level deficiencies without consideration of the post-cutoff impact of the pre-cutoff implementation of various staffing initiatives. (Id. at 193-199). Further, within its response to the State's Motion for Summary Judgment, Plaintiff asserted that the State presents "no evidence" of the remediation of alleged conditions and alleges that the State made

no attempt to determine whether their efforts to remediate conditions "made a difference." (Doc. 409 at pp. 89-90). The State should be permitted to present evidence that directly rebuts liability arguments presented in Plaintiff's Motion for Summary Judgment.

Plaintiff raised several issues regarding the conditions of confinement of the Alabama prison system related to constituent services. On June 1, 2024, the Alabama Legislature enacted Ala. Code § 14-1-1.7, which restructured ADOC's approach to constituent services and authorized the Commissioner of the Department of Corrections to appoint administrators and employees to assist in the management of prison affairs. Specifically, the statute provided the Commissioner until March 1, 2025, to address employee appointments related to constituent services. Ala. Code § 14-1-1.7(b)(1). The Declarations of Eddings and Williams address these issues.

Plaintiff raised several additional issues in its Motion for Summary Judgment related to staffing levels and actions ADOC took to monitor staffing. ADOC began implementing TeleStaff as a staff monitoring tool in February 2025, but began working with TeleStaff to configure the program for ADOC use in approximately August 2024. The Declaration of Goolsby addresses the implementation and impact of TeleStaff. The Declaration of Goolsby also highlights the impact of the myriad efforts ADOC made to address staffing issues and serves as a counter to Plaintiff's stated position that ADOC possesses no evidence of improvement to conditions.

The Court's August 13 Order leaves the good-cause determination open as to individual items of evidence and directed any party seeking to rely on such evidence to file a focused motion identifying the exact evidence, its date, the diligence supporting its use, its relationship to liability rather than remedy, and any responsive discovery required. The State addresses each consideration below.

## ARGUMENT

Federal Rule of Civil Procedure 16(b)(4) permits modification of a scheduling order "for good cause and with the judge's consent." Within the Eleventh Circuit, the good-cause inquiry principally turns on diligence. Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418-19 (11th Cir. 1998). In Euroboor BV v. Grafova, the Northern District of Alabama found good cause to permit limited post-cutoff discovery where the relevant events occurred after discovery closed and, therefore, the movant could not have discovered the information earlier through the exercise of diligence. No. 2:17-cv-02157-KOB, Doc. 258, at 6-7 (N.D. Ala. Jan. 25, 2022). Here, the State asks the Court to consider this evidence based on this Court's Orders and good cause standards.

The Court's August 13, 2026, Order requires precisely that type of particularized showing: identification of the specific evidence; its date; the diligence supporting its use; why it bears on liability rather than remedy; and any responsive discovery required. (Doc. 347 at 5). The State acknowledges that the Court's Order

also states that the Court will not consider post-cutoff evidence at summary judgment. (Doc. 347 at 1). Accordingly, to the extent consideration of the evidence at summary judgment requires revision of that interlocutory ruling, Rule 54(b) authorizes the Court to revise a non-final order before final judgment. Hornady v. Outokumpu Stainless USA, LLC, 118 F.4th 1367, 1379-81 (11th Cir. 2024). Thus, to the extent necessary, the State asks this Court to modify its August 13, 2026, order to allow the State to present the evidence noted herein.

The State does not seek a general reopening of discovery. Rather, as set forth below, the State asks this Court to consider limited and discrete evidence that was not available in its entirety by the fact cutoff and directly bears on the liability issues placed before the Court in Plaintiff's Motion for Summary Judgment.

In particular, the State asks the Court to consider the Declarations of Janet Eddings and Deputy Commissioner Charles Williams. Both Declarations concern ADOC's hiring of employees after January 31, 2025, pursuant to the authority granted by Ala. Code § 14-1-1.7 prior to the fact cutoff. The State also asks the Court to consider the Declaration of Stan Goolsby concerning ADOC's efforts to maintain and increase staffing levels, as well as ADOC's efforts to monitor staffing levels on a shift-by-shift basis.

The Declarations bear on liability, not merely remedy. DOJ seeks a declaration of liability at summary judgment on its claim that "Alabama violates the

Eighth Amendment in numerous ways." (Doc. 378 at 137). In support, DOJ contends, among other things, that the State fails to supervise conditions within its facilities and to enforce its policies. The Eddings and Williams Declarations address post-cutoff staffing and management developments that ADOC initiated prior to the discovery cutoff and remain relevant to the failures asserted by Plaintiff within the Motion for Summary Judgment. The Goolsby Declaration addresses both the efforts made by ADOC to increase and monitor staffing as well as the impact of those measures. The State therefore offers the Declarations not to establish measures that might remedy an assumed constitutional violation, but to respond to alleged facts on which Plaintiff asks the Court to find ongoing constitutional violations in the first place.

Plaintiff's Motion for Summary Judgment places the State in the position of defending against alleged ongoing constitutional violations based on a record that ends on January 31, 2025. The State welcomes reasonable responsive discovery concerning the post-cutoff evidence identified in this Motion but does not believe such discovery is required. If Plaintiff maintains that the alleged constitutional violations remain ongoing, the parties should be permitted to develop the evidentiary record necessary to address those claims.

**I. The Declaration of Janet Eddings**

Plaintiff places ADOC's Constituent Services at issue in its Motion for Summary Judgment. Relying on Janet Eddings's July 2023 deposition, Plaintiff asserts that ADOC had "one person working part time handling 'constituent services'' for all of the State," with no policies, manuals, guidelines, training, or protocol for documenting actions taken in response to complaints. (Doc. 378 at ¶ 7.20, p. 221-22). The September 22, 2026, Eddings declaration documents the changes that occurred following that deposition and, critically, distinguishes between those changes implemented before and after the January 31, 2025, fact cutoff.

Eddings worked in ADOC's Constituent Services for more than forty years and testified in this case on July 12, 2023, concerning the then-existing process for receiving, reviewing, referring, documenting, and responding to constituent inquiries. (Doc 401-2 (Ex. 411) at ¶ 1). On June 1, 2024, the Alabama Legislature enacted Ala. Code § 14-1-1.7, authorizing the Commissioner to appoint fifteen Constituent Services employees: one statewide coordinator and fourteen facility-level employees. (Id. at ¶ 3). ADOC thereafter began the hiring process, with Dr. Elizabeth Mautz serving as interim coordinator while ADOC identified and onboarded a permanent coordinator on March 1, 2025. (Id. at ¶ 4). The initiation of

the activity authorized by the Alabama Legislature on June 1, 2024 predates the discovery cutoff.

By January 31, 2025, ADOC also implemented a standardized electronic form and tracking system for constituent inquiries. (Doc 401-2 (Ex. 411) at ¶¶ 5-6). Inquiries received through the online form, email, telephone, or mail are entered into the tracking system and routed to the appropriate divisions or facilities. (Id. at ¶¶ 7-10). Inquiries involving matters such as extortion or sexual abuse are referred to LESD; health and mental-health concerns are transmitted to appropriate facility and healthcare personnel; and immediate intervention is coordinated where necessary. (Id. at ¶ 10). ADOC also reported monthly to the Joint Legislative Prison Oversight Committee on information concerning constituent inquiries and responses. (Id. at ¶¶ 13-14). The post-cutoff declaration addresses the subsequent implementation of the staffing structure authorized and initiated before discovery closed.

ADOC appointed the Constituent Services Coordinator on March 1, 2025, and the first facility-level Constituent Services employee began work on May 16, 2025. (Declaration of Janet Eddings (Attached as Exhibit A) at ¶ 4). ADOC thereafter implemented the staffing structure contemplated by § 14-1-1.7, assigning Constituent Services employees to Bibb, Bullock, Donaldson, Easterling, Elmore, Fountain, Holman, Kilby, Limestone, Staton, St. Clair, and Ventress, with the remaining two facility-level positions dedicated to Hamilton Aged and Infirmed and

Tutwiler. (Ex. A at ¶¶ 3-5). The underlying process for responding to inquiries remains in place, but ADOC now routes those inquiries to the facility-level Constituent Services employees for handling, while continuing to report monthly to the Joint Legislative Prison Oversight Committee. (Ex. A at ¶¶ 6-7). This streamlined and improved process, initiated prior to the cutoff, directly addresses arguments contained within Plaintiff's Motion for Summary Judgment.

The Eddings Declaration directly addresses liability over remedy because Plaintiff relies upon the deposition testimony of Eddings, given in July 2023, within its Motion for Summary Judgment, without providing the context of activity ADOC took before the cutoff that maintained an impact after the cutoff. (Doc. 378 at ¶ 7.20, p. 221-22). The State welcomes reasonable responsive discovery concerning the Eddings Declaration but does not believe such discovery is required.

## II. The Declaration of Charles Williams

Plaintiff's Motion for Summary Judgment asks the Court to conclude that alleged deficiencies in ADOC's institutional leadership and supervision continue to exist. (Doc. 378 at pp. 185-196). In support, Plaintiff asserts that "Alabama knows its failures cause a substantial risk of violence, but ADOC supervisors and leadership still do not supervise what occurs in the prisons." (Id. at p. 185). Plaintiff further emphasizes vacancies in facility leadership, including its assertion that, as of July 2023, most facilities had at least one Warden vacancy. (Id.; SOF at ¶ 7.1). Plaintiff

also contends that ADOC leadership fails to ensure its facilities implement departmental policies and relies on testimony from individual ADOC officials to criticize facility management and supervision. (Doc. 378 at pp. 185-196; SOF at ¶¶ 7.2–7.24). The State obtained the Declaration of Charles Williams on September 23, 2026 in response to Plaintiff's allegations within its motion.

In 2024, the Alabama Legislature authorized ADOC to establish Correctional Facility Administrator positions to provide additional facility-level management coverage and operational support. Ala. Code § 14-1-1.7. (Doc. 404-5 (Ex. 416) at ¶ 13). By January 31, 2025, ADOC had begun implementing that authority and was recruiting, evaluating, and selecting candidates for the new positions. (Id. at ¶ 15). After the cutoff, ADOC appointed Administrators throughout the correctional system, including Facility Administrators who now provide additional facility-level management coverage and operational support. (Declaration of Charles Williams (Attached as Exhibit B) at ¶¶ 4-12). Williams's post-cutoff declaration identifies those appointments and explains what the new Administrators accomplished since January 31, 2025. (Ex. B at ¶¶ 4-8, 11-16). That evidence directly responds to Plaintiff's request that the Court draw continuing conclusions about ADOC's institutional leadership based on a record that closed while ADOC still implemented this management initiative, which pertains directly to liability arguments presented at summary judgment.

Williams serves as ADOC's Deputy Commissioner of Operations and works through ADOC's management structure to oversee the men's correctional facilities. (Doc. 404-5 (Ex. 416) at ¶ 1-5). As of January 31, 2025, Wardens managed their institutions, Regional Directors supervised and supported Wardens, and Operations used that chain of command to communicate expectations, identify operational problems, and direct follow-up. (Id. at ¶ 5). When a facility experienced a vacant Warden position, ADOC provided management coverage through other Wardens, acting or interim assignments, Regional Director involvement, or other management support. (Id. at ¶ 12). The Legislature's 2024 authorization gave ADOC another way to recruit experienced correctional administrators and increase management capacity at its facilities. Ala. Code § 14-1-1.7. (Doc. 404-5 (Ex. 416) at ¶ 13). Unlike ADOC's correctional Warden classifications, the Facility Administrator position does not require Alabama Peace Officers' Standards and Training Commission certification. (Doc. 404-5 (Ex. 416) at ¶ 14). That difference expanded ADOC's pool of potential candidates to include experienced correctional administrators from outside Alabama.

By January 31, 2025, ADOC began recruiting, evaluating, and selecting candidates for the newly authorized positions. (Doc. 404-5 (Ex. 416) at ¶ 15). ADOC intended the Facility Administrators to supplement, rather than replace, its existing Warden structure and chain of command. (Id.). The Facility Administrators

were also intended to provide additional management and operational support at assigned facilities, including when a facility experienced a vacancy or other circumstances where additional management would be useful. (Id.). Williams's post-cutoff declaration explains what happened next.

After January 31, 2025, ADOC appointed Facility Administrators and other employees under the new Administrator classification. (Ex. B at ¶ 4-6). Those Facility Administrators now supplement ADOC's existing Warden structure and chain of command by providing additional facility-level management coverage and operational support. (Id. at ¶ 8). Williams identifies the personnel whom ADOC appointed and their respective assignments. (Ex. B at ¶ 5 a-h). He also explains the functions they perform and the additional management and operational capacity they have provided since January 31, 2025. (Ex. B at ¶¶ 13-16). The post-cutoff evidence reflects the continued implementation of an initiative that ADOC had already begun implementing as of January 31, 2025.

Williams's declaration, thus, directly responds to Plaintiff's contention that deficiencies in ADOC's institutional leadership and supervision continue to exist. (Doc. 378 at 212-23). Without Williams's Declaration, Plaintiff asks the Court to assess ADOC's continuing management and supervision based on a record that closed while ADOC was still implementing the very management changes relevant to Plaintiff's arguments. The State therefore asks the Court to consider Williams's

Declaration so that, in addressing the issues Plaintiff places before the Court at summary judgment, the Court can consider the implementation of an initiative already underway when fact discovery closed.

### III. The Declaration of Stan Goolsby

Plaintiff's Motion for Summary Judgment places ADOC's staffing levels and staffing practices at issue and asks the Court to draw continuing conclusions about alleged systemic conditions extending beyond the January 31, 2025, fact cutoff. (Doc. 378). Plaintiff further asserts in response to the State's Motion for Summary Judgment that the State presents "no evidence" of the remediation of alleged conditions and made no attempt to determine whether its efforts "made a difference." (Doc. 409 at pp. 89-90). The October 6, 2026, Declaration of Stan Goolsby provides updated information concerning ADOC's staffing levels during 2025 and the implementation of TeleStaff, ADOC's electronic roster-management and scheduling system. (Declaration of Stan Goolsby (Attached as Exhibit C) at ¶¶ 1-3). The declaration concerns the impact of decisions and actions that took place prior to the discovery cutoff.

Goolsby serves as ADOC's Chief of Staff and previously served as Deputy Commissioner of Administrative Services. (Id. at ¶ 1). He previously submitted a declaration in this matter concerning ADOC leadership, hiring, retention, and other initiatives occurring before January 31, 2025. (Doc. 360-120 (Ex. 121); Ex. C at ¶

2). The instant declaration explains what occurred after the fact cutoff with respect to the staffing efforts addressed in his prior declaration and provides information concerning ADOC's implementation and use of TeleStaff.

The post-cutoff staffing information reflects the continued results of hiring, recruiting, and retention efforts undertaken before January 31, 2025. (Ex. C at ¶ 6). Goolsby attaches ADOC's Quarterly Staffing Reports for each quarter of 2025. (Id. at ¶¶ 4-5). Those reports provide post-cutoff evidence of the results associated with staffing initiatives already underway when fact discovery closed.

Goolsby's Declaration also addresses ADOC's implementation of TeleStaff beginning in approximately August 2024. (Id. at ¶ 11). ADOC now uses TeleStaff as its electronic roster and scheduling system to manage and document correctional staffing assignments at its facilities. (Id. at ¶ 12). TeleStaff functions as ADOC's master electronic roster and records employee schedules, post assignments, work codes, vacancies, overtime, leave, and other staffing activity. (Id. at ¶¶ 12-13). The system also supports rules-based filling of vacancies, overtime management, identification and management of critical posts, and reporting regarding staffing activity. (Id. at ¶ 12). The system provides ADOC with greater visibility into who is assigned to work, where personnel are assigned, what vacancies exist, and how staffing changes over the course of a shift. (Id. at ¶ 15). TeleStaff also provides a standardized platform for recording and managing staffing across facilities and

permits ADOC to review and analyze staffing information without manually reconstructing information from individual paper rosters. (Id. at ¶¶ 15-16). These changes directly address allegations within Plaintiff's Motion for Summary Judgment.

Between February and July 2025, ADOC conducted three formal eight-hour TeleStaff training sessions for wardens from each facility addressing roster management, work codes, vacancy-filling rules, overtime, critical staffing needs, and reporting and audit functions. (Id. at ¶¶ 18-20). ADOC also designated facility-level TeleStaff subject matter experts to assist personnel and promote consistent implementation. (Id. at ¶¶ 20-21). Those subject matter experts conduct daily and weekly audits concerning facility use of TeleStaff, including review of critical-post staffing, providing an additional mechanism for determining whether critical posts are filled and whether staffing activity is being documented. (Id. at ¶¶ 20-22). With respect to staffing levels, the Declaration documents the subsequent results of hiring, recruiting, and retention efforts undertaken before January 31, 2025. (Id. at ¶¶ 6-7). And with respect to TeleStaff, it explains how ADOC now manages and documents the very staffing assignments, vacancies, and critical-post coverage relevant to Plaintiff's allegations concerning ongoing staffing conditions. (Id. at ¶¶ 8-23). The Declaration does not simply identify unrelated developments arising after discovery closed.

Goolsby's Declaration directly responds to Plaintiff's request that the Court draw continuing conclusions concerning ADOC's staffing and staffing-management practices from a record ending on January 31, 2025. The State does not offer the Declaration merely to establish measures that might remedy an assumed constitutional violation. Rather, the evidence bears on the factual premise underlying Plaintiff's request that the Court find an ongoing constitutional violation at summary judgment. Without Goolsby's Declaration, the Court would be asked to assess whether alleged staffing deficiencies continue to exist without considering the subsequent results of staffing initiatives underway before discovery closed or the new staffing-management system ADOC implemented.

The evidence the State asks the Court to consider is narrow, specifically identified, and directly responsive evidence to the liability issues Plaintiff places before the Court. The State does not seek to reopen the record generally or introduce unrelated post-cutoff developments. Rather, the Eddings and Williams Declarations complete the record concerning initiatives that the Alabama Legislature authorized and ADOC began implementing before the January 31, 2025, fact cutoff. Plaintiff relies on the very subjects addressed by this evidence—ADOC's constituent-services and management practices—to support its request for summary judgment on liability. Good cause, therefore, exists to permit the State to respond with evidence showing how those pre-cut off initiatives developed after discovery closed.

Otherwise, the Court would be asked to determine whether the alleged deficiencies continue to exist based on a record that closed before implementation and investigation relevant to those alleged deficiencies were complete.

## CONCLUSION

For these reasons, the State respectfully requests that the Court grant this Motion and consider the identified post-cutoff evidence in opposition to Plaintiff's Motion for Summary Judgment and, to the extent necessary, modify its August 13, 2026 Order for that limited purpose.

Dated: October 9, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

Anne A. Hill
**OFFICE OF THE ATTORNEY GENERAL**
Criminal Appeals Division
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 9th day of October, 2026:

Ashley Light
Eileen Ulate
Matthew Donnelly
Cristina Gamondi
Julia Haller
Patricia Nation
Joshua Bachman
Marlysha Myrthil
Joshua Bedoya
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
marlysha.myrthil@usdoj.gov
joshua.bedoya@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason Cheek
Grace Posey
Praveen Krishna
Don Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*<u>/s/ William R. Lunsford</u>*
Of Counsel