FILED
2026 Nov-16 PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff;<br>v.<br><br>STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,<br><br>Defendants. | Civil No. 2:20-cv-01971-HDM |

**THE UNITED STATES' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OR LIMIT MICHELLE BONNER'S EXPERT TESTIMONY**

The United States responds to Defendants' Motion in Limine to exclude or limit testimony by the United States' expert Michelle Bonner. Doc. 477 ("Defendants' Motion"). This Court should deny Defendants' Motion to the extent it seeks to exclude Ms. Bonner from testifying on how classification and staffing affect sexual safety in Defendants' correctional facilities, areas she is properly qualified to opine on.[1]

[1] The Parties stipulated to the scope of Ms. Bonner's opinions regarding inmate classification policies and staffing. Defendants contend the Stipulation does not resolve their Motion in its entirety. The United States, therefore, responds in full to the Motion. The Stipulation appropriately narrows Ms. Bonner's testimony, and the Court should deny Defendants' Motion.

## I. BACKGROUND

Ms. Bonner is an expert in sexual safety in corrections. Report of Plaintiff's Expert Michelle R. Bonner, Doc. 358-1 ("Bonner Report") at 2, Appendix A. Among other qualifications, she has been a certified Prison Rape Elimination Act ("PREA") Auditor since 2014. Bonner Report at 2–3, Appendix A. Based on her training and experience, and after reviewing extensive documentation and touring the prisons, Ms. Bonner opines that conditions in the Alabama Department of Corrections ("ADOC") create and maintain risks of sexual abuse of prisoners. Bonner Report at 8–11.

Defendants take issue with Ms. Bonner opining on classification or staffing. Doc. 447. The word "classification" only appears three times in Ms. Bonner's report.

1. "If the prosecutor does not wish to criminally prosecute, or if the victim signs a prosecution waiver, that substantiated finding would still direct the facility upon this substantiated finding, to undertake appropriate disciplinary action against the perpetrator, as well as further screening, **classification** actions, and related corrective action." Bonner Report at 90.

2. "Without a complete investigation, perpetrators in otherwise substantiated cases (if an investigation under the proper preponderance standard was concluded) are not identified as such, are not disciplined, and are not rescreened and reclassified within ADOC. This lack of identification of perpetrators means that these perpetrators remain able to commit future sexual violence in ADOC male facilities. Perpetrators are moved back into general population, without **reclassification**, able to abuse again without consequence." Bonner Report at 93-94.

3. "Prioritizing complete and thorough investigations of sexual abuse cases, including administrative investigations of criminal allegations not prosecuted, for discipline of perpetrators and revised **classification** to prevent further abuse[.]" Bonner Report at 102.

Ms. Bonner discusses classification for the limited opinion that failing to conduct thorough investigations using the appropriate standard leads to a failure to substantiate sexual abuse and, consequently, failure to reclassify perpetrators based on a substantiated sexual abuse finding. This opinion is well within Ms. Bonner's expertise.

As to staffing, Ms. Bonner discusses how ADOC fails to follow their staffing plans, which are plans based in part on PREA standards. Bonner Report at 34–41. She opines, "When the staffing plan is routinely not followed in such a manner, this routinely puts prisoners at a heightened risk for sexual violence." *Id.* at 40. Ms. Bonner opines to this as a PREA auditor with extensive experience reviewing sexual safety; Ms. Bonner is qualified to discuss how failing to follow staffing plans leads to sexually unsafe conditions.

Ms. Bonner opined well within her areas of expertise and based on an extensive review of the factual record. The Court should deny Defendants' Motion to the extent it seeks to prevent Ms. Bonner from testifying as to her limited opinions on classification and staffing.

## II. LEGAL STANDARD

Trial courts are charged with acting as gatekeepers for the admissibility of expert testimony. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, n.13 (1993)). Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer expert opinion testimony if "it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also* Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"In addressing the reliability of expert methodology, district courts have substantial discretion in deciding how to test an expert's reliability." *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008) (cleaned up and quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) ("[T]he the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.").

## III. ARGUMENT

Defendants first argue that the United States cannot rely on classification opinions from Ms. Bonner because it previously disclaimed such opinions. Doc. 477 at 4–6. Consistent with the United States' arguments to exclude the non-responsive opinions of Defendants' expert Kathy Lane (*see* Doc. 474), Ms. Bonner is not offering opinions on the adequacy of Defendants' classification system. Rather, Ms. Bonner provides a limited opinion that the failure to investigate and substantiate sexual abuse means there is no reclassification of the perpetrator of sexual abuse. This opinion does not challenge the adequacy of Defendants' classification policies, or even how classification staff classify inmates. Ms. Bonner is opining on the consequences of a failure to conduct appropriate sexual abuse investigations. This opinion is within her expertise and is consistent with the United States' position that Defendants' expert, Ms. Lane, is not a responsive expert.

Defendants also argue that Ms. Bonner's opinion on the effect of faulty investigations lacks sufficient factual support because Ms. Bonner did not review classification files. Doc. 477 at 5–6. Ms. Bonner, however, does not need to review classification files to opine that if ADOC does not conduct a sexual abuse investigation when allegations of sexual abuse are made, then there would not be an opportunity to potentially reclassify the alleged perpetrating inmate(s) based upon such allegations and the outcome of an investigation into such allegations. This is

consistent with Defendants' expert's testimony, in which she confirmed that unless there is an investigation and a guilty adjudication, there would be no classification action. *See* Lane Deposition, Doc. 375-25 at 186:22–187:7. ("Now, I'm not here to talk about sexual assault. I will say, if an inmate is under investigation, there must be a finding of guilt in order to re-score and reclassify the inmate.") Ms. Bonner's opinion has sufficient factual bases, as she reviewed sexual abuse investigations and therefore could evaluate when investigations were referred for disciplinary actions.

Defendants additionally argue that Ms. Bonner is not qualified to opine on correctional staffing and officer deployment. Doc. 477 at 7–12. Ms. Bonner is qualified to opine on how supervision, or the lack thereof, affects the risk of sexual abuse. She opines that "the supervision and monitoring Defendants provide are inadequate to protect prisoners in their custody from sexual violence." Bonner Report at 8. In her report, Ms. Bonner, references the PREA standard that provides for adequate levels of staffing to protect inmates from sexual abuse. Bonner Report at 34. She also explains how ADOC has adopted staffing plans in part based on PREA standards. *Id.* at 36. She details how ADOC is falling short of their plans and policies. *Id.* at 36–40. She then explains how this failure, "routinely puts prisoners at a heightened risk for sexual violence." *Id.* at 40. She also details how direct supervision is essential to prevent sexual violence. *Id.* at 43–46. She notes how the PREA standard requires unannounced rounds. *Id.* at 45. Ms. Bonner

explains in detail in her report how the information reviewed supports her opinion that there is inadequate supervision.

Although Defendants contend that that United States must demonstrate Ms. Bonner's "qualifications to offer the particular staffing opinions at issue" beyond "demonstrating her expertise in the broader subject of sexual safety," Doc. 477 at 7, this argument fails because "an expert may testify regarding narrow sub-topics within [her] broader expertise—notwithstanding a lack of specific experience with the narrower area—as long as [her] testimony would still assist a trier of fact." *Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014) (citation omitted); *see also Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (affirming district court's admission of economics expert's opinions on damages despite the expert's lack of specific knowledge in particular industry at issue). Ms. Bonner has been a certified PREA auditor for over 12 years, has inspected dozens of correctional facilities, and provided training and technical assistance for sexual safety in corrections. Bonner Report at 2–5. She is qualified to opine on how supervision, or the lack thereof, affects sexual safety in corrections.

Defendants also take issue with the information Ms. Bonner relied on, not because it is inaccurate but because they contend she should have considered different information. *See, e.g.*, Doc. 477 at 10–11 (taking issue with relying on a prison wardens' testimony). These arguments go to the weight of Ms. Bonner's

testimony and not its admissibility. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) (noting contentions that an expert relied on "incorrect assumption[s]" of the facts "attack the weight and the persuasiveness of [the expert's] testimony, not its admissibility" (citation omitted)); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1346 (11th Cir. 2003) ("[N]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." (quotation omitted)); *Bextermueller v. Eaton*, No. 2:24-cv-688-SPC, 2026 WL 1077653, at *4 (M.D. Fla. Apr. 21, 2026) (What evidence an expert did, or did not, consider generally affects the weight of their testimony, not its admissibility. (quotation omitted)). Given that Ms. Bonner relied on extensive information to draw her opinions and is qualified to opine on the effect of supervision and the lack of supervision on sexual safety, this Court should deny Defendants' Motion.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny Defendant's Motion to the extent it seeks to limit Ms. Bonner from testifying on how classification and staffing affect sexual safety in ADOC's correctional facilities.

Respectfully submitted,

PHILLIP W. WILLIAMS JR.
United States Attorney

CARLA C. WARD
Deputy Civil Chief

JASON R. CHEEK
Chief, Civil Division

GRACE J. POSEY
ALEX MCKENZIE LAGANKE
DON B. LONG III
Assistant United States Attorneys
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov

_/s/ Eileen Ulate_
EILEEN ULATE
ASHLEY LIGHT
MATTHEW J. DONNELLY
CRISTINA GAMONDI
JULIA Z. HALLER
PATRICIA NATION
JOSHUA BACHMAN
ELENA BEN DAVID
KEVIN MAWYER
BEN LUO
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 718-2258
ashley.light@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I filed the foregoing with the Clerk of the Court and served the filing to all counsel of record using secure electronic transmission.

/s/ *Eileen Ulate*
EILEEN ULATE
Attorney for the United States