FILED
2026 Nov-16 PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>THE UNITED STATES' RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINIONS FROM KENNETH RAY</u>**

The United States responds to Defendants' Motion in Limine to exclude expert opinions and testimony from Kenneth Ray. Doc. 480 ("Defendants' Motion"). Dr. Ray has over 48 years of experience in criminal justice. He applies his professional training and experience to opine on staffing levels in the Alabama Department of Corrections ("ADOC") as well as the impact of those staffing levels on the risk of violence, sexual violence, and contraband in ADOC. Defendants' arguments may go the weight of Mr. Ray's testimony, but they are not bases for exclusion. The Court should deny Defendants' Motion.

## I. BACKGROUND

Dr. Ray has worked in criminal justice since 1977. Doc. 358-4, Kenneth Ray – US Expert Report (hereinafter, "Ray Report"), Appendix C at 1. After working as

a police officer, he worked as the Undersheriff Jail Administrator in Orange, Texas, and the Director of the Department of Corrections in Yakima County, Washington. *Id.* at 8–9, Appendix C at 4. He provided direct oversight of correctional agencies with 250 to 3,000 detainees and inmates. *Id.* at 9. His responsibilities included

> budget development, implementation, and management; supervision of subordinate leaders and administrative staff; development, implementation, and evaluation of policies, procedures, and practices related to inmate and staff security, classification, medical and mental health care, conditions of confinement, segregation, inmate discipline, facility health, and hygiene; and ensuring compliance with applicable federal, state, and local laws and regulations.

*Id.* Since 2010, he has consulted with correctional agencies throughout the country and served as a court-appointed monitor in multiple jurisdictions regarding criminal justice administration and conditions of confinement. *Id.* at 10–12.

In this case, Dr. Ray toured nine ADOC prisons, interviewed inmates, and reviewed extensive documentation spanning several years. *Id.* at 16–19, Appendix. C. Based on his training and experience, after reviewing the documentation and touring the prisons, he opines on overcrowding and staffing, and concludes that these conditions impact the risk of violence, sexual violence, and contraband in ADOC. *Id.* at 15–16.

Defendants argue Dr. Ray's opinions lack factual bases and reliability. On the contrary, Dr. Ray relied on extensive factual information, which he details in his report. He explained how he reached his conclusions, outlining exactly which data

he used and why, based on his training and experience, these numbers impact the risk of violence, sexual violence, and contraband in the prisons. Dr. Ray's opinions have more than sufficient factual support and reliability, and Defendants arguments are more appropriate for how to weigh Dr. Ray's testimony than exclusion.

## II. LEGAL STANDARDS

Trial courts are charged with acting as gatekeepers for the admissibility of expert testimony. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, n.13 (1993)).

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer expert opinion testimony if "it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also* Fed. R. Evid. 702 advisory committee's note to 2023 Amendment.

"In addressing the reliability of expert methodology, district courts have substantial discretion in deciding how to test an expert's reliability." *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008) (cleaned up and quoting *Rink v.*

*Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) ("[T]he the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.").

## III. ARGUMENT

Dr. Ray's opinions have sufficient factual bases. He toured nine ADOC prisons, interviewed prisoners, and reviewed substantial discovery in this case. Ray Report at 16–17, Appendix B. Defendants contend, because Dr. Ray did not identify specific instances of violence directly caused by a lack of correctional staffing, Dr. Ray's opinions are unsupported. Doc. 480 at 5–7. Dr. Ray, however, opined that understaffing, along with other conditions in combination, substantially increases the risk of violence. Ray Report at 16. Dr. Ray does not have to opine on a direct causal link. Instead, he may, as he appropriately does here, opine that based on his training and experience this combination of factors increases the risk. *See Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) ("Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically."). Defendants' arguments to the contrary go to weight rather than admissibility. *See id.* at 662–663 ("Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weigh rather than admissibility.").

Unlike the expert in *Cook*, cited by Defendants, Dr. Ray explained throughout his report why he concludes these conditions in combination impact safety. *See, e.g.*, Ray Report at 28 (explaining with "the cramped conditions," the "lack of space and privacy increases the likelihood of conflicts" and makes it "challenging for staff to maintain order and respond quickly to incidents"); at 69–70 (explaining how the lack of correctional supervisors impacts safety); *cf. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 (11th Cir. 2005) (finding the district court did not abuse its discretion in excluding an expert that did not explain how are why he reached his conclusions).

As to overcrowding, Defendants oddly take issue with Dr. Ray using the design capacity designated by ADOC itself. Doc. 480 at 8–9. Dr. Ray explained how he reached the conclusion that ADOC is overcrowded-by using ADOC's own assessment of design capacity, the population each prison was holding, and his observations during tours of the prisons. Ray Report at 19–31. Dr. Ray cited ADOC's own monthly statistical reports for the prisons' design capacities. *Id.* at 19 ("According to the 2000 ADOC monthly report, these 12 facilities were designed to hold 9,679 total inmates."). Far from an analytical gap, Dr. Ray compared what ADOC itself has identified as its design capacity and compared it to what ADOC reported was its population. *See id.* at 19–31. If Defendants disagree with using their own reported capacity, that argument goes to weight and not exclusion. *See*

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (explaining objections to alleged inadequacies of a study, in most cases, go to the weight of the evidence rather than admissibility); *see also Se. Metals Mfg. Co. v. Fla. Metal Prods., Inc.*, 778 F. Supp. 2d 1341, 1344 (M.D. Fla. 2011) (explaining "a factual dispute [between experts] is better resolved through vigorous cross examination and presentment of contrary evidence at trial"). Similarly, Defendants take issue with Dr. Ray using ADOC's own assessments on authorized staffing levels. Doc. 480 at 11–12. This argument, again, goes to the weight of Dr. Ray's testimony. *See Johnson v. Carnival Corp.*, 533 F. Supp. 3d 1196, 1202 (S.D. Fla. 2021) (explaining that alleged weaknesses in the factual underpinning of the expert's opinions go to weight, not admissibility) (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1284 (11th Cir. 2015)).

As to reliability, Dr. Ray has over 48 years of experience in criminal justice, including work in jail and corrections administration. Ray Report at 8–9, Appendix C. He reviewed extensive documentation regarding ADOC, toured the prisons himself, and interviewed inmates. *Id.* at 16–17, Appendix B. He thoroughly detailed in his report how he collected the data about ADOC's staff and prison population, how he reviewed and analyzed that data, and how based training and experience, he reached his conclusions. During Dr. Ray's deposition, Defendants attempted to isolate portions of Dr. Ray's report and asked him to draw broad conclusions, such

as an opinion that a certain prisoner-to-staff ratio automatically means prisons are safe. *See* Doc. 480 at 10–11. Dr. Ray candidly disagreed, in line with his opinion that a *combination* of factors in ADOC contribute to an increased *risk* of harm. Ray Report at 16. This does not make Dr. Ray's opinions unreliable. In fact, it only reiterates that Dr. Ray did not make sweeping conclusions, but carefully considered the information in forming his opinions.

Defendants even take issue with Dr. Ray not applying his opinions to "any reported court decision." Doc. 480 at 12. Dr. Ray is not making legal conclusions. *See Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1128–29 (11th Cir. 2018) (explaining "experts may not testify to the legal implications of conduct" (quotation omitted)). Dr. Ray appropriately assessed the level of staffing in the prisons by comparing the prisoner population to staff numbers. After reviewing data that spanned several years, Dr. Ray opined that the combination of overcrowding and understaffing substantially increases the risk of violence and sexual assault in ADOC based on his personal observations of the prisons and extensive corrections experience. Ray Report at 15–16.

Far from undermining Dr. Ray's opinions, Defendants' Motion emphasizes that Dr. Ray properly cabined his opinions based on a full analysis of the information and deep understanding of the correctional profession.

## IV. CONCLUSION

Kenneth Ray's opinions are sufficiently supported by facts and a reliable methodology in line with Federal Rule of Evidence 702. The Court should deny Defendants' Motion.

Respectfully submitted,

PHILLIP W. WILLIAMS JR.
United States Attorney

CARLA C. WARD
Deputy Civil Chief

JASON R. CHEEK
Chief, Civil Division

GRACE J. POSEY
ALEX MCKENZIE LAGANKE
DON B. LONG III
Assistant United States Attorneys
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2185
carla.ward@usdoj.gov

/s/Eileen Ulate
EILEEN ULATE
ASHLEY LIGHT
MATTHEW J. DONNELLY
CRISTINA GAMONDI
JULIA Z. HALLER
PATRICIA NATION
JOSHUA BACHMAN
ELENA BEN DAVID
KEVIN MAWYER
BEN LUO
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 705-8762
Natasha-eileen.ulate@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I filed the foregoing with the Clerk of the Court and served the filing to all counsel of record using secure electronic transmission.

/s/ *Eileen Ulate*
EILEEN ULATE
Attorney for the United States