FILED
2026 Nov-16 PM 06:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S OPPOSITION TO PLAINTIFF'S MOTION TO SEQUESTER THE STATE'S EXPERT WITNESSES PURSUANT TO FEDERAL RULE OF EVIDENCE 615**

The State of Alabama ("Alabama") and the Alabama Department of Corrections ("ADOC" and, together with Alabama, the "State") file this response in opposition to Plaintiff's Motion to Sequester Defendants' Expert Witnesses Pursuant to Federal Rule of Evidence 615. (Doc. 469, the "Motion").

## INTRODUCTION

Plaintiff's Motion to exclude all witness from the courtroom represents an attempt to prevent the State's experts from evaluating and responding to the very testimony they were retained to address. Plaintiff asks the Court to exclude all eight of the State's experts from the courtroom during other witnesses' testimony and prohibit them from reviewing any trial testimony, even for purposes of assisting counsel. These sweeping restrictions would deprive the State of critical expert

assistance in evaluating Plaintiff's technical opinions and conducting meaningful cross-examination. Plaintiff justifies this request by accusing the State's experts of improperly tailoring their testimony based on deposition attendance, but the excerpts Plaintiff cites do not support that accusation.

Rule 615 does not require the categorical restrictions Plaintiff seeks. The State's experts should be permitted to attend relevant fact and expert testimony within their respective areas of expertise and to review relevant testimony and consult with counsel. Moreover, exclusion of experts in a case of this nature is impracticable and practically unmanageable. The Court should deny Plaintiff's Motion for the following reasons:

(1) Rule 615(a)(3) permits the State's experts to attend relevant trial testimony when their presence is essential to presenting the State's defense;

(2) Plaintiff fails to justify additional restrictions on the State's experts under Rule 615(b); and

(3) Plaintiff's deposition excerpts do not establish improper tailoring or justify categorical sequestration.

Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion, grant the requested exemptions under Rule 615(a)(3), and permit the State's experts to review relevant testimony and consult with counsel, even if excluded from the courtroom.

## ARGUMENT

### I. RULE 615(A)(3) PERMITS THE STATE'S EXPERTS TO ATTEND RELEVANT TRIAL TESTIMONY WHEN THEIR PRESENCE IS ESSENTIAL TO PRESENTING THE STATE'S DEFENSE.

At a party's request, Rule 615(a) requires the Court to exclude witnesses from the courtroom during other witnesses' testimony unless a specified exception applies. FED. R. EVID. 615(a). Sequestration seeks to prevent witnesses from conforming testimony to earlier testimony and to expose false testimony and credibility problems. United States v. Graham, 123 F.4th 1197, 1257 (11th Cir. 2024). District courts possess broad discretion to administer sequestration. Id.

Rule 615(a)(3) exempts a witness whose presence the requesting party shows to be "essential to presenting the party's claim or defense." FED. R. EVID. 615(a)(3). The Advisory Committee explains that the exception contemplates experts needed to advise counsel in managing litigation. FED. R. EVID. 615 advisory committee's note to proposed rules. The party seeking an exemption bears the burden of overcoming the presumption favoring sequestration by demonstrating why the witness's presence is essential to presenting the case, rather than merely helpful or convenient. Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1374 (5th Cir. 1981); United States v. Forehand, 943 F. Supp. 2d 1329, 1331 (M.D. Ala. 2013). The Court may grant multiple exemptions when adequate grounds exist under Rule 615's exceptions. United States v. Alvarado, 647 F.2d 537, 540 (5th Cir. 1981)

(upholding exemptions for two government agents under the representative and essential-person exceptions). The 2023 Advisory Committee Note confirms that multiple witnesses may qualify under Rule 615(a)(3), provided each witness's presence is essential. Fed. R. Evid. 615 advisory committee's note to 2023 amendment. Miller and Alvarado constitute binding former Fifth Circuit precedent under Bonner v. City of Prichard. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Plaintiff asserts that the State's experts already possess the information necessary to testify and that courtroom attendance "would only allow improper tailoring." (Doc. 469 at 3). Rule 703, however, permits experts to base opinions on evidence presented at trial. The Advisory Committee expressly identifies "having the expert attend the trial and hear the testimony establishing the facts" as a method of providing the factual basis for an expert's opinion. Fed. R. Evid. 703 advisory committee's note to proposed rules. Plaintiff's argument confuses the information necessary to formulate an expert opinion with the assistance necessary to evaluate and respond to evidence presented at trial. Although the State's experts reviewed Plaintiff's reports and the underlying evidence, those materials cannot establish in advance how witnesses will describe institutional practices, explain disputed events, or characterize the records underlying Plaintiff's allegations. Nor can they establish how Plaintiff's experts will explain their methodologies, defend their assumptions, or apply those assumptions to the facts developed at trial. Counsel needs the State's

experts to evaluate both the factual testimony underlying Plaintiff's allegations and the expert opinions offered in support of them, identify technical deficiencies or inconsistencies, and assist in formulating appropriate examination. The availability of discovery materials and expert reports does not eliminate that need.

Plaintiff's argument treats an accepted method of expert analysis as necessarily improper. The necessity of each State expert's presence turns on the specific technical issues raised by the testimony and the expert's distinct consulting assignment, rather than Plaintiff's unsupported assumption that attending testimony serves only to facilitate tailoring. As demonstrated below, each expert provides specialized assistance in evaluating the factual and expert testimony relevant to the expert's disclosed opinions.

The State's expert Rodney Miller rebuts Plaintiff's experts Kenneth Ray's and Martin Horn's staffing methodologies, including the use of vacancy rates, staffing ratios, and assumptions about supervision. (Doc. 318-18 at 169–72). During Ray's and Horn's staffing testimony at trial, counsel needs Miller to determine whether the analyses conducted by Ray and Horn measure available staff against operational demand or treat authorized positions, staffing ratios, and deployment as interchangeable.

The State offers Mary Ila Ward's opinions on recruitment, retention, applicant tracking, selection, onboarding, and labor-market conditions. (Doc. 318-16 at 1–2).

Counsel needs Ward during testimony criticizing recruitment and retention to evaluate whether Plaintiff's experts account for external labor-supply conditions when attributing staffing results to ADOC's hiring practices. Miller's analysis of staffing demand and deployment does not replace Ward's evaluation of recruitment and labor-market conditions.

Marc Coudriet evaluates staffing and correctional operations for the State, including deployment to critical posts and preservation of institutional coverage. (Doc. 373-31 (Ex. 165) at 21:13–22, 253:1–20). Counsel needs Coudriet during testimony about deployment and supervision to examine the facility-specific assumptions Plaintiff's experts make about required posts and staff assignments. Coudriet's role as an expert concerns operations at individual facilities, rather than Miller's staffing methodology or Ward's recruitment and retention analysis.

Kathlene Lane, the State's classification expert, evaluates classification, housing, risk assessment, and reclassification in response to Plaintiff's experts Horn and Michelle Bonner. (Doc. 318-13 at 1–3; Doc. 373-24 (Ex. 158) at 41:1–8). During Horn's and Bonner's testimony on classification and housing, counsel needs Lane to distinguish criticism of a custody-classification decision from criticism of housing or movement controls. Counsel also needs Lane to identify the classification records necessary to test each classification criticism.

The State retained Mark McCorkle to evaluate the prevention, detection, and

response to inmate sexual abuse. (Doc. 318-15 at 1). Counsel needs McCorkle during Bonner's sexual-safety testimony to identify the challenged reporting, investigative, or response practice and evaluate whether Bonner's evidence supports the criticism. McCorkle's evaluation of sexual-abuse prevention and response does not duplicate Lane's evaluation of classification decisions, even when the testimony concerns the same incident.

The State's contraband expert, William Bechtold, addresses weapons, cellular phones, and illicit substances, and critiques Horn's analysis of seized-contraband handling. (Doc. 373-56 (Ex. 191) at 18:6–19:4, 22:17–24:12, 184:20–185:5). During testimony from Plaintiff's experts about contraband, counsel needs Bechtold to identify whether the evidence addresses prevention, detection, recovery, or handling of seized contraband and assess whether the cited evidence supports the operational conclusions Plaintiff's experts offer.

Sean Stewart responds to Horn's opinions concerning use-of-force policies, training, incidents, investigations, and review procedures. (Doc. 318-19 at 1; Doc. 373-50 (Ex. 185) at 9:18–25). Counsel needs Stewart during Horn's use-of-force testimony to separate criticism of an officer's conduct from criticism of policy, training, or the subsequent investigation.

Robert Carter evaluates commissioner-level leadership for the State in response to Plaintiff's experts Horn and Roger Werholtz. (Doc. 373-46 (Ex. 181) at

36:1–24, 37:10–38:11). During Horn's and Werholtz's leadership testimony, counsel needs Carter to identify the executive responsibility underlying a criticism and distinguish an alleged failure of policy, oversight, or resource allocation from a facility-level event. Carter's commissioner-level analysis does not duplicate the other experts' operational assignments.

The State's experts also provide necessary assistance during relevant fact-witness testimony. Plaintiff's allegations depend on testimony concerning institutional staffing, deployment, classification decisions, inmate movement, contraband detection, sexual-abuse reporting and investigations, use-of-force incidents, and executive oversight. Fact witnesses may describe operational practices, explain institutional records, or offer accounts of particular events that bear directly on the factual assumptions underlying the experts' opinions. Counsel needs the appropriate State expert to identify technical distinctions, evaluate whether the testimony supports the operational conclusions Plaintiff advances, and recognize inconsistencies between witness testimony and the underlying records. These issues may arise during direct examination and require contemporaneous expert assistance to develop meaningful cross-examination. The State therefore seeks attendance during fact-witness testimony relevant to each expert's disclosed assignment, not unrestricted attendance during every witness's testimony.

The State's experts serve distinct consulting roles that require evaluating

relevant fact and expert testimony as it unfolds. Counsel cannot reliably anticipate every factual explanation, technical assumption, methodological justification, or characterization of institutional practices that witnesses may offer during direct examination. Nor can counsel identify every issue requiring expert evaluation without the assistance of the person trained to recognize it. Requiring counsel to reconstruct testimony for later expert review risks overlooking significant issues and deprives counsel of assistance when it matters most, during cross-examination. In Malek v. Federal Insurance Co., the Second Circuit held that excluding an expert needed to assist with opposing-expert cross-examination was error and that a ten-minute recess did not adequately substitute for the expert's presence. 994 F.2d 49, 54 (2d Cir. 1993).

Plaintiff's reliance on Forehand and Opus 3 does not compel sequestration. (Doc. 469 at 4–5). In United States v. Forehand, the court recognized that an expert's presence may be essential when reconstructing extensive testimony outside the courtroom would impair the orderly presentation of the case. 943 F. Supp. 2d 1329, 1331–32 (M.D. Ala. 2013). That concern applies here, where fact and expert witnesses will address numerous technical and overlapping correctional subjects requiring distinct expert analysis. Opus 3 Ltd. v. Heritage Park, Inc., is distinguishable because the proposed expert also supplied crucial factual testimony, and the party failed to establish why his presence was essential or timely request his

assistance during trial. 91 F.3d 625, 629–30 & n.2 (4th Cir. 1996). Here, the State identifies in advance the specific consulting function of each expert and seeks attendance during fact and expert testimony relevant to that function. These limited exemptions would not expand the experts' disclosed opinions or resolve separate admissibility objections. The State does not seek unrestricted attendance by all eight experts throughout trial. Rather, it requests individualized exemptions tied to the subjects of relevant fact and expert testimony and each State expert's disclosed assignment, allowing the Court to preserve Rule 615's protections without unnecessarily restricting the State's presentation of its defense.

## II. PLAINTIFF FAILS TO JUSTIFY ADDITIONAL RESTRICTIONS ON THE STATE'S EXPERTS UNDER RULE 615(B).

Rule 615(b) separately governs restrictions on an excluded witness's access to trial testimony outside the courtroom. A courtroom-exclusion order under Rule 615(a) does not automatically prohibit disclosure or review of testimony. FED. R. EVID. 615(b); Graham, 123 F.4th at 1257 n.21. The scope of any additional restriction rests within the Court's discretion. The 2023 Advisory Committee Note recognizes that the requirements appropriate to a particular case are left to the Court. Fed. R. Evid. 615 advisory committee's note to 2023 amendment. Thus, even if the Court excludes the State's experts from the courtroom under Rule 615(a), it must separately determine whether additional restrictions on their access to testimony are warranted under Rule 615(b). Plaintiff's request for courtroom exclusion does not,

by itself, establish a basis for prohibiting the State's experts from reviewing testimony or consulting with counsel.

Plaintiff's generalized concern about improper tailoring does not justify prohibiting the State's experts from performing legitimate consulting functions outside the courtroom. The purpose of sequestration is to prevent witnesses from conforming their testimony to that of other witnesses, not to prevent counsel from obtaining technical assistance in evaluating the opposing party's evidence. Plaintiff identifies no instance in which the State's experts altered their opinions based on another witness's testimony, much less a basis for concluding that counsel's consultation with those experts would result in improper tailoring. The additional restrictions Plaintiff seeks would therefore impair the State's preparation and presentation of its defense without a demonstrated need for such restrictions. Plaintiff seeks to prohibit the State's experts from accessing any trial testimony, regardless of the witness, subject matter, or purpose for which counsel seeks the expert's assistance. (Doc. 469-1 at 1). The State requests substantially narrower relief: permission to consult its experts concerning relevant testimony from other witnesses within their disclosed areas of expertise.

The State therefore requests an express order permitting each State expert to review relevant trial testimony within the expert's disclosed areas of expertise and consult with counsel concerning that testimony, even if the Court excludes the expert

from the courtroom. This limited permission would preserve the State's ability to obtain necessary expert assistance without authorizing undisclosed opinions or changes to an expert's account of personal observations. Although transcript review cannot fully replace contemporaneous assistance during cross-examination, it provides an important alternative if the Court declines to grant the exemptions requested under Rule 615(a)(3).

## III. PLAINTIFF'S DEPOSITION EXCERPTS DO NOT ESTABLISH IMPROPER TAILORING OR JUSTIFY CATEGORICAL SEQUESTRATION.

Rule 30(c)(1) expressly excepts Evidence Rule 615 from the rules governing deposition examination. A protective order may restrict attendance or access, but Rule 615 does not automatically exclude potential witnesses from depositions. FED. R. CIV. P. 30(c)(1) & advisory committee's note to 1993 amendment. Plaintiff fails to identify (it cannot) any deposition-exclusion order that the State's experts violated. (Doc. 469 at 2–4). Although Plaintiff relies on their attendance as alleged evidence of an intent to tailor testimony, attending another expert's deposition does not, without more, establish such an intent.

Plaintiff relies on Coudriet's and Bechtold's deposition testimony to accuse the State's experts of seeking to tailor testimony and to assert that courtroom attendance would serve only an improper purpose. (Doc. 469 at 3). Neither cited passage establishes that Coudriet or Bechtold changed an opinion to match another witness's testimony. Plaintiff asked Coudriet why he attended other experts'

depositions:

> Q. Okay. Why did you attend those depositions virtually?
>
> A. I attended those depositions virtually so I could see, number one, the process. Since it has been such a long time since I've done a deposition, I wanted to see the process. I also was interested to see what the plaintiff's experts had to say. Because I cite them a lot in my report based on the -- their reports that we received back in May. And so I wanted to see what they had to say in person. And the other depositions, I wanted to see how they were handling the questions.

(Doc. 373-31 (Ex. 165) at 24:4–16). Plaintiff selectively quotes Coudriet's testimony to suggest that he attended other depositions to prepare his answers to anticipated questions. (Doc. 469 at 3). But Plaintiff omits Coudriet's explanation that he also wanted to hear Plaintiff's experts discuss the opinions he addressed in his own report. Coudriet's testimony reflects an interest in understanding and evaluating the opposing experts' opinions, not an admission that he intended to conform his testimony to theirs. Plaintiff fails to identify (it cannot) any opinion Coudriet changed after attending those depositions.

Bechtold described his limited attendance at McCorkle's deposition: "I attended part of it virtually. I had a doctor's appointment in the middle of it I wasn't present, but I did attend some of it." (Doc. 373-56 (Ex. 191) at 39:20–22). Plaintiff then asked why Bechtold attended:

> Q: Why did you attend that deposition?

> A: It was something we typically did during the Duke case. We watched each other's depositions. I watched it to see how Mark was doing and to help prepare myself for depositions.
>
> Q: To see what types of questions are being asked? Is that what you're saying?
>
> A: Yeah, yeah.

(Doc. 373-56 (Ex. 191) at 40:1–8). Earlier in the deposition, before Plaintiff asked about McCorkle's deposition, Bechtold confirmed that he did not want to change his written opinions:

> Q: But just to reiterate, I think you answered this but I want to make doubly sure. There are no opinions that you have included in your report that you want to change. Is that accurate?
>
> A: That is accurate.

(Doc. 373-56 (Ex. 191) at 13:18–22). Bechtold's testimony likewise does not support Plaintiff's accusation. He explained that he attended part of McCorkle's deposition to prepare for his own questioning, including understanding the types of questions Plaintiff's counsel might ask. Preparing for deposition questioning does not establish an intent to alter substantive expert opinions. Indeed, Bechtold separately confirmed that he did not wish to change any opinions in his report. (Doc. 373-56 (Ex. 191) at 13:18–22). Plaintiff identifies no substantive opinion Bechtold altered to conform to another witness's testimony.

Plaintiff thus seeks to exclude all eight State experts from hearing or

reviewing trial testimony based principally on deposition excerpts concerning only two experts, neither of whom admitted altering an opinion or intending to conform substantive testimony to another witness's account. Plaintiff identifies no comparable evidence concerning the State's other six experts. (Doc. 469 at 2–4). The cited testimony does not establish the improper tailoring Plaintiff alleges, much less justify categorical restrictions that would prevent the State's experts from providing the specialized assistance necessary to evaluate Plaintiff's testimony and assist counsel at trial. The Court should assess the necessity of each expert's attendance under Rule 615(a)(3), rather than presume an improper purpose from permissible deposition preparation.

**CONCLUSION**

The State respectfully requests that the Court deny the categorical restrictions sought in Plaintiff's Motion and grant exemptions under Rule 615(a)(3) permitting the State's experts to attend relevant fact and expert testimony within their respective disclosed areas of expertise, as described in Section I. The State further requests express permission for those experts to review relevant trial testimony and consult with counsel, including when excluded from the courtroom.

Dated: November 16, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
Sonia M. Lazaro
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com
sonia.lazaro@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300

Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

Anne A. Hill
**OFFICE OF THE ATTORNEY GENERAL**
Criminal Appeals Division
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 16th day of November, 2026:

Ashley N. Light
Eileen Ulate
Matthew J. Donnelly
Cristina Gamondi
Julia Z. Haller
Patricia Nation
Joshua C. Bachman
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason R. Cheek
Grace J. Posey
Praveen Krishna
Don B. Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel