FILED
2026 Nov-16 PM 06:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# THE STATE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE BUREAU OF PRISONS EVIDENCE

Defendants the State of Alabama ("Alabama") and Alabama Department of Corrections ("ADOC," and together with Alabama, the "State") file this response in opposition to Plaintiff's Motion in Limine to Exclude Bureau of Prisons Evidence (Doc. 472, the "Motion").

## INTRODUCTION

Plaintiff's Motion reflects a renewed attempt by Plaintiff to rewrite the black-letter deliberate-indifference standard and invite this Court to focus exclusively on whether a substantial risk of harm exists while totally precluding any form of evidence as to whether ADOC responded reasonably to that risk. In doing so, Plaintiff asks the Court to exclude every witness, document, photograph, data point, and expert opinion concerning the Federal Bureau of Prisons ("BOP"). Plaintiff's

Motion continues to press false narratives previously addressed by the State: (1) the State does not offer BOP evidence as the constitutional standard, and (2) the State is not presenting evidence of Plaintiff's prison operations to "put BOP on trial," but as evidence to show how the nation's largest prison system with a budget exceeding nine billion dollars struggles with the same issues raised by Plaintiff here.

In its Motion for Summary Judgment, Plaintiff acknowledged the correct legal standard: to establish "a failure-to-protect claim under the Eight[h] Amendment's deliberate indifference standard, a plaintiff must show that (1) prisoners are at a substantial risk of objectively serious harm; (2) the defendant knew its actions or failure to act put the prisoners at substantial risk; and (3) the defendant did not respond reasonably to that substantial risk." (Doc. 378 at 166-67 (citing Wade v. McDade, 106 F.4th 1251, 1261-62 (11th Cir. 2024) (*en banc*))). The State's targeted BOP evidence is relevant both to the conditions Plaintiff alleges pose a substantial risk of serious harm and the State's reasonable response to any risk. The Court should deny Plaintiff's Motion for the following reasons:

(1) BOP evidence remains directly relevant to facts Plaintiff must prove; and

(2) Rule 403 fails to support categorical exclusion in this bench trial.

Accordingly, the State respectfully requests the Court deny Plaintiff's Motion.

## ARGUMENT

### I. BOP EVIDENCE REMAINS DIRECTLY RELEVANT TO FACTS PLAINTIFF MUST PROVE.

Rule 401 sets a low threshold. Evidence is relevant if it has "any tendency" to make a consequential fact more or less probable. FED. R. EVID. 401. "The standard for what constitutes relevant evidence is a low one," United States v. Macrina, 109 F.4th 1341, 1349 (11th Cir. 2024), and "a single relevant inference suffices," even if it is not "the best one or most likely one," United States v. Green, 158 F.4th 1347, 1370 (11th Cir. 2025).

To prevail on its Eighth Amendment claims, Plaintiff acknowledged it must prove both the existence of a substantial risk of serious harm and that the State failed to respond reasonably to that risk. (Doc. 378 at 166-67) (citing Wade, 106 F.4th at 1261-62). BOP evidence remains relevant to both elements because it provides evidence concerning the correctional conditions at issue and the responses to those conditions.

#### A. BOP EVIDENCE BEARS DIRECTLY ON WHETHER THE STATE RESPONDED REASONABLY TO THE ALLEGED RISKS.

Plaintiff alleges that ADOC failed to respond reasonably to challenges it faced regarding staffing, inmate supervision, inmate movement, contraband, violence, surveillance, and physical conditions. (Doc. 472 at 2). Evidence showing how the nation's largest correctional system confronts similar types of problems, what

measures that system uses, and what operational limitations it encounters bears directly on whether ADOC's responses remain reasonable and whether the alternatives urged by Plaintiff were available and practicable. Plaintiff cannot, on the one hand, rely on correctional practices, conditions and experiences outside Alabama (*including BOP*) to characterize ADOC's alleged shortcomings, then declare the federal correctional system categorically irrelevant when its practices provide a point of comparison. (Doc. 358-2 at 11 (Plaintiff's retained expert Martin Horn comparing ADOC's mortality and homicide rates to those of federal prisons and other state correctional systems using Bureau of Justice Statistics data); Doc. 358-1 at 19-21 (Plaintiff's retained expert Michelle Bonner comparing reported inmate-on-inmate sexual assault rates in Alabama prisons with rates in Georgia, South Carolina, Tennessee, and Texas); id. at 27 (Bonner relying on a Government Accountability Office investigation into BOP to criticize ADOC's PREA auditing practices); Doc. 406-2 (Plaintiff's retained expert Dr. Kevin Quinn issued a supplemental report specifically comparing ADOC death statistics to those in BOP))[1]. That BOP does not set the constitutional standard does not make that evidence irrelevant. The constitutional standard and the evidence relevant to applying it are different questions.

---

[1] The State moved to strike Dr. Quinn's Supplemental Report as untimely, and that motion remains pending before the Court. (Doc. 428).

Brown v. Plata made the distinction clear. 563 U.S. 493 (2011). In Plata, a three-judge court ordered California to reduce its prison population to remedy unconstitutional medical and mental-health care. Id. at 501-02. In selecting an appropriate population limit, the court considered expert testimony supporting a limit near 130 percent of design capacity; BOP likewise adopted 130 percent as a long-term population goal. Id. at 539-40. California argued that the experts improperly converted professional standards into constitutional requirements. Id. at 540. The U.S. Supreme Court rejected that argument. Although courts "must not confuse professional standards with constitutional requirements," those standards may be "'helpful and relevant with respect to some questions,'" and the Plata court found that BOP's view that 130 percent was manageable "bolster[ed]" the lower court's conclusion. Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 348 n.13 (1981)). Thus, BOP's benchmark did not define the constitutional requirement, but the Plata court found the evidence relevant to whether the proposed population level was manageable. Id. The same is true here—BOP's experience responding to comparable correctional problems bears on whether ADOC's response was reasonable.

The Eleventh Circuit Court of Appeals applied the same distinction to evidence from other correctional systems. In Knight v. Thompson, inmates challenging an ADOC grooming policy relied on the practices of BOP and

approximately thirty-eight state correctional systems. 797 F.3d 934, 939 n.2 (11th Cir. 2015). The Eleventh Circuit held that "the practices of other institutions are relevant" even though "they are not controlling." Id. at 947; see also Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 534 (11th Cir. 2013) ("While the practices at other institutions are not controlling, they are relevant" to whether an alternative would work).[2]

Plaintiff's own authority supports admission of evidence from its prison system. In citing Sorrels v. NCL (Bahamas) Ltd., Plaintiff argues that four BOP complexes cannot establish a systemwide correctional custom. (Doc. 472 at 12). As an initial matter, Plaintiff's criticism that the State presents evidence from only "four BOP complexes"[3] ignores the procedural history of the State's permitted discovery. Plaintiff opposed the State's request to inspect those complexes, arguing that the discovery was irrelevant, unduly burdensome, and disproportionate. (Doc. 131 at 2-3; Doc. 137 at 2, 4–6). Indeed, Plaintiff argued that even inspections of four BOP facilities would be "exceedingly disproportionate" and accused the State of attempting to "massively expand the scope" of discovery and "put the Federal BOP

[2] Although Thompson and Rich arose under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the same evidentiary principle applies here—practices of other correctional institutions can inform whether a proposed response is workable and reasonable without dictating what the Constitution requires.

[3] Plaintiff also admits that while the State received discovery from four BOP complexes, those complexes "comprise ten prisons, ranging from minimum-security camps to high-security penitentiaries, with thousands of inmates." (Doc. 472 at 2-3).

on trial." (Doc. 137 at 5-6). The Court rejected those objections and authorized inspections of the four complexes, expressly recognizing that the evidence could bear on the reasonableness of ADOC's actions and could provide impeachment evidence concerning Plaintiff's experts. (Doc. 137 at 5, 7-8). The Court further recognized that the State lacked comparable access to information concerning federal correctional facilities without onsite inspections and that Plaintiff itself conducted extensive inspections and inmate interviews at ADOC facilities. (Id. at 6-7). The State accordingly developed its comparative evidence through the inspections permitted by the Court. (Id. at 7-8). Plaintiff cannot now fairly criticize the State for presenting evidence from only four BOP complexes without acknowledging that Plaintiff opposed even that limited discovery. (See id. at 4-8). Second, Sorrels holds that "evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care," and that compliance or noncompliance with such custom is one factor the factfinder may consider. 796 F.3d 1275, 1282 (11th Cir. 2015) (internal citation omitted). Whether the selected facilities establish a BOP-wide custom affects what the evidence proves—not whether the evidence is relevant at all.

Plaintiff's asserted contextual differences likewise do not justify categorical exclusion. Plaintiff's Motion emphasizes differences in reported violence rates, incident classifications, security levels, and institutional conditions. (Doc. 472 at 10-

12). Those differences may affect the weight of a particular comparison, but they do not make every comparison irrelevant. A comparison concerning staffing, supervision, or contraband control may remain informative even if the institutions have different overall violence rates. Plaintiff can test those differences at trial.

The Court and Special Master already recognized the relevance of BOP evidence for this same purpose. In allowing the inspections, the Court explained that the State sought the evidence "regarding the issue of the reasonableness of the State's actions in its prisons." (Doc. 137 at 5). The Special Master similarly concluded that, although best practices do not establish constitutional minimums, BOP policies and procedures may inform "what corrective measures are reasonable and practicable." (Doc. 131 at 12). The Court later made the point explicit. The Court previously explained that evidence of "similar things occurring at a BOP facility" was directed at "whether there's deliberate indifference or not," rather than "whether or not certain standards are met or not met." (Doc. 186 at 14:4-19). The Court then framed the inquiry directly: "What's the Government doing in this area; okay? How does that compare?" (Id. at 14:17-19). The Court summarized the permitted use as "a comparator . . . on the deliberate indifference issue." (Id. at 25:7-10).

The State acknowledges that prior discovery rulings do not themselves decide admissibility, but these rulings do identify the precise purpose for which the State sought and intends to offer the evidence—not to make BOP the constitutional

benchmark, but to inform whether ADOC's response to comparable correctional problems was reasonable. That purpose readily satisfies Rules 401 and 402.

### B. BOP Evidence Remains Relevant to Plaintiff's Substantial Risk Theory.

BOP evidence also represents an admissible role in evaluating the alleged substantial risk. The State does not contend that the presence of a harmful condition elsewhere automatically makes the risk in Alabama insubstantial. But Plaintiff does not rely only on assault and homicide totals. Plaintiff also relies on alleged operational conditions—understaffing, absent officers, unauthorized movement, weapons, contraband, and prison layout conditions—as proof of the existence and severity of the alleged risk. (Doc. 472 at 4-8). Evidence concerning those same operational conditions at other institutions outside Alabama may inform the inference drawn from them. If Plaintiff relies on staffing levels or a particular physical configuration as evidence that a substantial risk exists, evidence showing how that condition functions in another correctional setting may bear on its significance, its consequences, and its interaction with other conditions. Rule 401 does not require the comparison to resolve the issue—it requires only some tendency to make a consequential inference more or less probable.

Courts use inter-institution comparisons in precisely that manner in Eighth Amendment violence cases. In Fisher v. Koehler, the court compared the challenged jail's violence rates with rates in the Virginia prison system, another New York

facility, and the Los Angeles County jail system. 692 F. Supp. 1519, 1530-32 (S.D.N.Y. 1988). The court rejected objections based on differences in reporting systems and inmate populations and found the comparisons "both sobering and revealing" and "legally significant." Id. at 1560-61. The comparisons did not themselves establish the constitutional standard, but supplied objective evidence relevant to whether the level of violence remained constitutionally substantial.

Plaintiff's "two wrongs make a right" label attacks an argument the State does not make. (Doc. 472 at 3). The State does not offer BOP evidence to excuse alleged violence or unsafe conditions merely because they occur elsewhere. The State offers the evidence to test factual inferences Plaintiff asks the Court to draw from particular conditions and to provide correctional context for those inferences. Because BOP evidence bears on both the reasonableness of the State's response and the substantial-risk inquiry, BOP evidence is relevant under Rule 401 and should not be excluded under Rule 402.

## II. Rule 403 Fails to Support Categorical Exclusion in This Bench Trial.

Rule 403 imposes a demanding standard. Relevant evidence may be excluded only when its probative value is *substantially outweighed* by a listed danger. Fed. R. Evid. 403 (emphasis added). Exclusion is an "extraordinary remedy" that should be used "sparingly," and courts must view the evidence in the light most favorable to admission. Jackson v. Catanzariti, 159 F.4th 874, 884 (11th Cir. 2025) (internal

citation omitted); United States v. McGregor, 960 F.3d 1319, 1324-25 (11th Cir. 2020). Even United States v. Costa, which Plaintiff cites, states that exclusion "should be the exception rather than the rule." 947 F.2d 919, 924 (11th Cir. 1991).

The bench trial posture makes categorical exclusion especially unwarranted. In Jemison v. Simmons, an Eighth Amendment case involving ADOC, the Eleventh Circuit observed that "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." 518 F. App'x 882, 888 n.6 (11th Cir. 2013). The Eleventh Circuit further explained that "Rule 403 has no logical application to bench trials" because the judge can disregard improper inferences. Id. That reasoning substantially diminishes the prejudice and confusion concerns Rule 403 is designed to address here.

Plaintiff's "mini-trial" argument (doc. 472 at 14) assumes a presentation the State does not propose. The existence of hundreds of BOP-related items on the State's exhibit list does not mean that every item will be offered or that every condition at every federal institution will be litigated. The State seeks to present targeted evidence on the disputed issues of substantial risk and reasonable response. The Court already identified how to keep that evidence focused. The Court previously stated that the BOP evidence was not intended to create a separate trial of the federal system, but rather to serve as a focused comparator on deliberate

indifference. (Doc. 186 at 14:20-22, 15:1-7, 25:7-10). That limiting principle answers Plaintiff's concern without excluding the subject altogether.

The Court's earlier proportionality ruling also rejected the same premise in discovery. Plaintiff previously argued that the inspections would expand the litigation and eventually place BOP on trial. (Doc. 137 at 5-6). The Court rejected that objection, noting that Plaintiff inspected Alabama's institutions and conducted 1,000 inmate interviews, and finding that similar information was likely important to the State's defenses. (Id. at 6-7). Although that ruling did not determine trial admissibility, the ruling confirms that focused BOP evidence can be both relevant and manageable. Any remaining concerns can be addressed as particular evidence is offered. The need to explain a comparison, identify relevant differences, or permit rebuttal is ordinary trial work. It does not show that any resulting use of time substantially outweighs the evidence's probative value. Particularly in a bench trial, specific evidence should be assessed in context, not excluded wholesale in advance.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court deny Plaintiff's Motion.

Dated: November 16, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700

Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF on this 16th day of November, 2026:

Ashley N. Light
Eileen Ulate
Matthew J. Donnelly
Cristina Gamondi
Julia Z. Haller
Patricia Nation
Joshua C. Bachman
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason R. Cheek
Grace J. Posey
Praveen Krishna
Don B. Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel