FILED
2026 Nov-16 PM 06:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE ADOC EMPLOYEE DECLARATIONS AND EXPERT TESTIMONY RELYING ON THOSE DECLARATIONS**

The State of Alabama ("Alabama") and the Alabama Department of Corrections ("ADOC" and, together with Alabama, the "State") file this response in opposition to Plaintiff's Motion to Exclude ADOC Employee Declarations and Expert Testimony Relying on Those Declarations (Doc. 470, the "Motion").

## INTRODUCTION

Plaintiff's retained experts repeatedly rely upon alleged statements by ADOC officials – both statements under oath and alleged off-the-cuff comments during site tours. Now, Plaintiffs seek to preclude the State's experts from doing the same. Nothing in the law permits this gross deviation from basic entitlements of the goose and the gander.

In seeking to exclude 23 declarations (the "Declarations") submitted by ADOC employees and prohibit the State's experts from testifying concerning those Declarations, Plaintiff improperly conflates the admissibility of the Declarations with the State's experts' ability to rely on them in forming their opinions. The Court should deny Plaintiff's Motion for at least the following three reasons:

(1) Federal Rule of Evidence 703 permits experts to rely on otherwise inadmissible information when forming their opinions;

(2) Permitting the State to present the Declarations promotes judicial economy by streamlining the presentation of evidence at trial; and

(3) The Court's role as factfinder and its extensive familiarity with the evidentiary record further weigh against categorical exclusion.

Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion.

## ARGUMENT

### I. Federal Rule of Evidence 703 Permits Experts to Rely on Otherwise Inadmissible Information When Forming Their Opinions.

Plaintiff seeks to prohibit the State's experts from testifying about the Declarations, arguing that the experts cannot serve as conduits for introducing otherwise inadmissible hearsay. (Doc. 470 at 6-8). But Plaintiff's argument attempts to confuse the admissibility of the Declarations themselves with the State's experts' permissible reliance on the information contained therein. Federal Rule of Evidence

703 expressly provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. Further, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Id. Finally, "Rule 703 is an exception to the exclusion of hearsay evidence because of the expert's professional knowledge and training." United States v. Williams, 447 F.2d 1285, 1290 (5th Cir. 1971). Again, Plaintiff's experts relied upon alleged unsworn statements of unnamed ADOC Officials (See Doc. 318-8 at 67; Doc. 318-9 at 4, 91), eliminating any doubt about the propriety of the State's experts' actions. Thus, an expert's opinion may be admissible even when the underlying facts or statements considered in forming that opinion would otherwise be inadmissible.

The Eleventh Circuit recognizes this distinction. In United States v. Garcia, 447 F.3d 1327, 1336-37 (11th Cir. 2006), the court upheld expert testimony informed by an out-of-court statement, recognizing that experts may rely on information obtained from others when "such sources of information were regularly relied upon" "by experts in [the] field." Id. at 1336 (quoting United States v. Brown, 299 F.3d 1252, 1257-58 (11th Cir. 2002)). The court further distinguished permissible expert reliance from testimony in which an expert merely repeated hearsay "without applying any expertise whatsoever." Id. at 1337 (quoting United

States v. Dukagjini, 326 F.3d 45, 59 (2d Cir. 2003)). Similarly, in United States v. Scrima, 819 F.2d 996, 1002 (11th Cir. 1987), the court recognized that experts may rely on otherwise inadmissible hearsay when such information constitutes the type reasonably relied upon by experts in the relevant field.

Indeed, Plaintiff expressly acknowledges that "experts are generally permitted to rely on inadmissible evidence in forming their opinions." (Doc. 470 at 6-7). Nevertheless, Plaintiff argues that the State's experts "have no personal knowledge to offer on the content of the declarations" and therefore "should also be precluded from testifying about them." (Id. at 7-8). But Rule 703 expressly provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been ***made aware of or personally observed***." FED. R. EVID. 703 (emphasis added). Thus, Plaintiff's reliance on the experts' purported lack of personal knowledge overlooks Rule 703's authorization for experts to base their opinions information made known to them, regardless of whether they personally observed the underlying events.

Moreover, Plaintiff fails to demonstrate that the State's experts merely repeat the Declarations rather than apply their specialized knowledge in forming their opinions. Although Plaintiff identifies eight expert reports that reference the Declarations, Plaintiff fails to identify any specific opinion that constitutes improper hearsay repetition or explain why the experts' reliance on the Declarations falls outside the scope of information reasonably relied upon by experts in their respective

fields. (Doc. 470 at 6). Instead, Plaintiff relies on generalized assertions that the Declarations constitute inadmissible hearsay and that the experts lack personal knowledge of their contents. (Id. at 6-8). These assertions fall short of establishing that the State's experts improperly relied on the Declarations or merely repeated their contents without applying specialized expertise. Plaintiff's failure to identify any particular deficiency in the experts' analyses cannot support the categorical exclusion of their testimony.

Interestingly, Plaintiff's position also overlooks its own experts' reliance on out-of-court statements from both named and unnamed sources in forming their opinions. Indeed, Plaintiff's experts routinely consider information obtained through inmate interviews, institutional records, and statements from ADOC personnel. For example, Plaintiff's expert Martin Horn expressly identifies "interviews with many inmates" among the sources informing his opinions and acknowledges that "not everything an inmate says is true." (Doc. 318-8 at 4). Similarly, Roger Werholtz identifies "[i]nformal conversations and formal interviews with inmates at each of the facilities" among the information underlying his opinions. (Doc. 318-9 at 2). Kenneth Ray likewise acknowledges relying on "brief discussions with ADOC staff and inmates, inmate interviews," and other institutional information. (Doc. 318-11 at 7). Michelle Bonner similarly identifies discovery materials and interviews with ADOC prisoners among the information

considered in forming her opinions. (Doc. 318-10 at 6, 30). Thus, Plaintiff's own experts rely on out-of-court statements that may themselves constitute inadmissible hearsay if offered for their truth. Plaintiff cannot reasonably characterize such reliance as impermissible when its own experts rely on out-of-court statements. Rule 703 permits experts on both sides to rely on otherwise inadmissible information when experts in their respective fields would reasonably rely on that type of information in forming their opinions.

Plaintiff's reliance on Garcia likewise fails to support the categorical exclusion requested here. Although Garcia recognizes that an expert cannot serve merely as a conduit for inadmissible hearsay, the Eleventh Circuit upheld the challenged testimony after considering the nature of the expert's reliance on the underlying information and the application of his specialized knowledge. 447 F.3d at 1336-37. Plaintiff undertakes no comparable analysis of the State's experts. Rather than identifying particular opinions that merely repeat the Declarations without applying expertise, Plaintiff seeks to prohibit testimony concerning the Declarations based on their purported inadmissibility as hearsay. Garcia supports evaluating the experts' actual reliance on the underlying information, rather than excluding their testimony categorically.

Courts within the Eleventh Circuit specifically recognized that experts may reasonably rely on affidavits and statements from individuals with firsthand

knowledge of the underlying facts. In Metal Group USA LLC v. Seapack, Inc., No. 18-CV-22639, 2019 WL 11505384, at *6 (S.D. Fla. Nov. 22, 2019), the court rejected a challenge to an expert's reliance on an affidavit containing out-of-court statements, explaining that Rule 703 permits experts to base their opinions on facts that would otherwise be inadmissible. Relying on the Eleventh Circuit's decision in Knight through Kerr v. Miami-Dade County, 856 F.3d 795, 809 (11th Cir. 2017), the court recognized that "experts may rely on hearsay statements of persons with first-hand knowledge of the underlying facts at issue." Metal Group, 2019 WL 11505384, at *6. The court specifically concluded that the expert's reliance on the affidavit was consistent with Knight through Kerr because the affidavit reflected the declarant's firsthand knowledge of the relevant transaction. Id. Accordingly, the Metal Group court denied the motion to exclude the expert's testimony. Id.

The circumstances surrounding the Declarations at issue here further demonstrate why Plaintiff's categorical challenge lacks merit. Fifteen of the Declarations were submitted as part of ADOC's responses to Plaintiff's contention interrogatories and provided to Plaintiff before expert discovery. These Declarations came from ADOC employees working within correctional facilities who possess firsthand knowledge of the facility-level operations, policies, and practices addressed in their statements. (Doc. 470 at 2-3 (listing State Ex. Nos. 1265, 1266, 1268, 1269, 1271, 1274, 1275, 1276, 1277, 1278, 1280, 1281, 1282, 1285, 1286)).

The State submitted another 6 Declarations during summary judgment briefing in response to issues Plaintiff raised in its summary judgment filing.[1] (Id. (listing State Ex. Nos. 1264, 1267, 1270, 1272, 1273, 1284)). Those Declarations came from ADOC executive personnel with firsthand knowledge of the matters addressed within their respective divisions. The remaining 2 Declarations were submitted by the State's own experts during summary judgment briefing to attest to information contained in their expert reports. (Id. (listing State Ex. Nos. 1279, 1283)). Thus, the challenged Declarations do not consist of unsupported statements from unidentified sources but rather sworn statements from ADOC personnel with firsthand operational knowledge and experts attesting to their own reports. Moreover, ADOC personnel who provided Declarations also testified in depositions during this litigation, further demonstrating that the underlying information came from identifiable witnesses whose knowledge and credibility Plaintiff could examine. Consistent with Metal Group and Knight through Kerr, the State's experts could reasonably consider information supplied by individuals with firsthand knowledge of the relevant subject matter in forming their opinions. Plaintiff's generalized

---

[1] One Declaration is on behalf of Brad Chynoweth, a former attorney with the Attorney General's Office, regarding specific judgments Plaintiff relied on during summary judgment. (Doc. 401-1; Doc. 357-2 – Doc. 357-17). Plaintiff apparently intends to rely upon these same judgments at trial. (Doc. 440 (U.S. Exs. 06446, 06447, 06448, 06449, 06450, 06451, 06452, 06453, 06454, 06455, 06456, 06457, 06458, 06459, 06460, 06461)). The State will withdraw the Declaration of Brad Chynoweth (State Ex. No. 1264) from its exhibit list, if Plaintiff withdraws the listed judgments from its exhibit list.

assertion that the Declarations are inherently unreliable provides no basis for categorically excluding the State's expert testimony.

The circumstances here also differ materially from those in McLendon v. Georgia Kaolin Co., Inc., 841 F. Supp. 415 (M.D. Ga. 1994), where the court excluded an expert's testimony because he lacked the specialized knowledge necessary to evaluate the subject matter and relied on employee memoranda without understanding the underlying information. Id. at 417-20. In particular, the expert relied on an employee's assessment without knowing the employee's occupation, training, or background or the data supporting his conclusions. Id. at 419-20. Here, the State's experts relied on sworn statements from identifiable ADOC personnel with firsthand knowledge of institutional operations and evaluated that information as part of their broader analyses and through their own specialized expertise. For example, Rod Miller reviewed the Declarations alongside staffing records, institutional policies, facility observations, and other operational information to evaluate staffing sufficiency through his established methodology examining staffing supply and demand. (Doc. 318-18 at 6-7, 11-12). Rather than merely repeating the Declarations, Miller considered information provided by ADOC employees concerning staffing practices, classification procedures, and institutional security to evaluate the relationship between staffing resources and operational demands. (Id. at 11-12). Similarly, Rob Carter reviewed Declarations from ADOC

wardens and other employees alongside deposition testimony, institutional policies, discovery responses, and other materials to evaluate ADOC's executive leadership and correctional operations. (Doc. 318-17 at 13-18). Mark McCorkle likewise considered institutional records, deposition testimony, facility inspections, and interviews with ADOC personnel in evaluating ADOC's policies and practices concerning inmate sexual safety. (Doc. 318-15 at 9-11). These examples demonstrate that the State's experts considered information obtained from multiple sources and applied their professional experience and specialized methodologies in forming their opinions, rather than merely repeating the contents of the Declarations.

Accordingly, Plaintiff's generalized hearsay objections fail to justify the categorical exclusion of expert testimony concerning the Declarations. The Court should reject Plaintiff's attempt to extend the hearsay rules beyond their proper scope and permit the State's experts to offer opinions based on information reasonably relied upon under Rule 703.

## II. PERMITTING THE STATE TO PRESENT THE DECLARATIONS WOULD PROMOTE JUDICIAL ECONOMY AND ADVANCE THE COURT'S EXPRESS INTEREST IN STREAMLINING TRIAL.

Plaintiff's request to exclude the Declarations overlooks the Court's repeated emphasis on streamlining the presentation of evidence and avoiding unnecessary testimony during trial. At the October 30, 2026, pretrial conference, ("Pretrial Conference") the Court expressly instructed the parties that it "do[es] not expect

anyone to waste the Court's time" and explained that "with the appropriate stipulations this case could be tried in six weeks," rather than the eight weeks reserved for trial. (Oct. 30, 2026, Pretrial Conf. Tr. (*Rough Draft*) at 6:5-17). The Court further emphasized "[t]he quickest way to bog down a trial is unnecessary foundation and background to admit certain exhibits into evidence" and directed the parties to confer regarding stipulations to the admissibility of exhibits before trial. (Id. at 8:25-9:8). Indeed, the Court expressly stated that it was "supportive of any idea that streamlines the process of trial," including approaches that eliminate "unnecessary foundation for the admissibility of certain exhibits." (Id. at 30:13-17).

Permitting the State to present the Declarations advances these objectives by providing an efficient means of presenting information from ADOC employees without requiring each employee to appear and testify concerning the matters addressed in the Declarations. Requiring live testimony from numerous employees to establish the same information could consume substantial trial time, unnecessarily prolong the State's presentation of evidence, and impose additional logistical burdens on ADOC personnel. Consideration of the Declarations would allow the Court to evaluate the relevant information without requiring potentially duplicative testimony, consistent with the Court's stated goal of avoiding unnecessary delays.

The Court already recognized the practical benefits of admitting written materials rather than requiring extensive witness testimony. During the Pretrial

Conference, the State proposed streamlining expert testimony by admitting expert curricula vitae rather than requiring lengthy testimony concerning each expert's qualifications. The Court agreed, explaining it was "more than willing to accept as an exhibit in the trial court record, for instance, the CV of an expert, and rely on that material in its ultimate decision." (Id. at 51:14-18). The Court further recognized that "pre admitting certain exhibits that the Court will obviously review personally" could "streamline some of the background of particular expert witness testimony." (Id. at 51:21-24). Although the Declarations concern different subject matter, the same practical considerations favor permitting the State to present the information contained therein through written evidence where admissible, rather than requiring extensive testimony from numerous ADOC employees.

Plaintiff itself recognized this principle during the Pretrial Conference. In discussing Plaintiff's extensive witness list, Plaintiff's counsel acknowledged that "[w]e added a lot of items [to] our will-call list in anticipation of there being disputes as to the admissibility of certain documents." (Id. at 55:4-6). Plaintiff's counsel further represented that "[w]e believe adequate stipulations as to the admissibility of certain documents will prevent us from having to call anyone on that list." (Id. at 55:6-9). Thus, Plaintiff expressly recognized that admitting documentary evidence through appropriate stipulations could eliminate the need for additional witness testimony. Unfortunately, despite the Parties' efforts to resolve the admissibility of

the Declarations through stipulation, they were unable to reach an agreement. (Doc. 470 at 8). Plaintiff seeks categorical exclusion of the State's Declarations, notwithstanding its own acknowledgment that admitting documentary evidence can eliminate unnecessary witness testimony. The same practical considerations apply here, where excluding the Declarations could require the State to call numerous ADOC employees to establish the matters addressed therein, unnecessarily prolonging trial and undermining the Court's express interest in streamlining the proceedings.

Plaintiff's request for categorical exclusion disregards the practical considerations repeatedly emphasized by the Court throughout the Pretrial Conference. Permitting the State to present the Declarations would promote judicial economy, avoid unnecessary and duplicative testimony from numerous ADOC employees, and advance the Court's express interest in streamlining trial. Accordingly, the Court should reject Plaintiff's request for categorical exclusion and permit the State to present the Declarations to the extent supported by an applicable evidentiary basis.

## III. THE COURT'S ROLE AS FACTFINDER AND ITS EXTENSIVE FAMILIARITY WITH THE EVIDENTIARY RECORD FURTHER WEIGH AGAINST CATEGORICAL EXCLUSION.

Plaintiff's request for categorical exclusion also overlooks that this matter will be tried to the Court, not a jury. The Eleventh Circuit expressly recognized that the

Rule 702 and Daubert standards are relaxed in a bench trial because "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1268-69 (11th Cir. 2005). Thus, even if Plaintiff disputes the reliability of particular statements within the Declarations, those objections do not justify categorically excluding the State's experts from offering opinions informed by those materials. The Court can evaluate the experts' reliance on the Declarations, consider any challenges to their factual foundations, and determine the weight their opinions deserve without the concerns that ordinarily accompany the presentation of disputed evidence to a jury.

This conclusion is particularly appropriate given the Court's extensive familiarity with the evidentiary record. In its October 29, 2026, Memorandum Opinion and Order, the Court explained that it "scrutinized the briefing, the legal authorities cited therein, and the voluminous evidentiary submissions" in connection with the Parties' summary-judgment motions. (Doc. 456 at 1-2). At the Pretrial Conference the Court further explained that its law clerks assisted in reviewing and analyzing "all" the summary-judgment briefing and associated evidentiary materials. (Oct. 30, 2026, Pretrial Conf. Tr. (*Rough Draft*) at 5:5-12). The State's summary-judgment evidentiary materials consisted of all the Declarations. (Docs. 374-58—374-73; Doc. 401-1; Doc. 408). Moreover, during its site visits to ADOC facilities, the Court confirmed that it personally read all fifteen Declarations

submitted in connection with the State's responses to Plaintiff's contention interrogatories. Thus, the Court already reviewed the very operational information upon which the State's experts relied, including sworn statements from facility personnel with firsthand knowledge of the institutional practices at issue. Having reviewed the extensive evidentiary record, the Court expressly determined that the Parties' disputes should be resolved at trial, explaining that it "would benefit from hearing the evidence concerning those matters in its full context, with the opportunity to hear testimony subject to cross-examination and to ask questions as the evidence is presented." (Doc. 456 at 4). The Court's prior consideration of these materials, coupled with its role as the ultimate factfinder, further weighs against excluding expert testimony based on those materials before trial.

## CONCLUSION

For the foregoing reasons, Plaintiff fails to establish a basis for categorically excluding the Declarations or prohibiting the State's experts from testifying concerning them. Rule 703 permits the State's experts to rely on otherwise inadmissible information in forming their opinions, and Plaintiff's own experts routinely rely on similar information. Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion.

Dated: November 16, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
Sonia M. Lazaro
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com
sonia.lazaro@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

Anne A. Hill
**OFFICE OF THE ATTORNEY GENERAL**
Criminal Appeals Division
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 16th day of November, 2026:

Ashley N. Light
Eileen Ulate
Matthew J. Donnelly
Cristina Gamondi
Julia Z. Haller
Patricia Nation
Joshua C. Bachman
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason R. Cheek
Grace J. Posey
Praveen Krishna
Don B. Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel