FILED
2026 Nov-16 PM 06:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SEAN T. STEWART'S EXPERT REPORT AND TESTIMONY**

The State of Alabama ("Alabama") and the Alabama Department of Corrections ("ADOC" and, together with Alabama, the "State") file this response in opposition to Plaintiff's Motion to Exclude Sean T. Stewart's Expert Report and Testimony (Doc. 471, the "Motion").

## INTRODUCTION

After Plaintiff submitted 50 pages of arguments from its retained expert Martin Horn related to uses of force by ADOC correctional staff, the State proffered the responsive opinions of its expert Sean Stewart ("Stewart") on the very issues raised by Horn. Now, Plaintiff seeks to exclude Stewart (while ignoring the plain language of Horn's report) without any legal basis while relying on

mischaracterizations of the written documents. As discussed more fully below, the Court should deny Plaintiff's Motion for at least the following three reasons:

(1) Stewart's opinions appropriately respond to Horn's opinions, and his limited review of post-fact-cutoff information does not warrant exclusion of his testimony;

(2) Stewart offers expert opinions based on his knowledge and experience, not legal conclusions; and

(3) Stewart's opinions are reliable and helpful to the Court.

Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion.

## ARGUMENT

### I. Stewart's Opinions Appropriately Respond to Horn's Lengthy Arguments, and Stewart's Limited Review of Post-Fact-Cutoff Information Does not Warrant Exclusion of his Testimony.

Plaintiff argues that Stewart's Report "is not proper rebuttal and should be excluded" because, "[i]n describing his methodology, Mr. Stewart described seven steps, the last of which was to respond to the opinions of the United States' experts, only after he revised ADOC's use of force policies and analyzed uses of force." (Doc. 471 at 6). Plaintiff fails to explain how Stewart's review, revision, and analysis of ADOC's use-of-force policies amounts to the issuance of an improper responsive expert opinion. More importantly, Plaintiff's focus on the timing of Stewart's analysis fails to establish that Stewart's opinions are improper. "The timing of [an expert's] retention is irrelevant to whether or not she rebuts" the

opposing party's expert. Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc., No. 1-CV-63130, 2020 WL 1666763, at *10 (S.D. Fla. Apr. 3, 2020). In fact, the district court in Florida observed, "[g]ood lawyers often retain rebuttal experts to do some groundwork in advance so there is sufficient time for an expert to prepare his or her rebuttal report." Id.; Donell v. Fid. Nat. Title Agency of Nev., No. 2:07-CV-00001-KJD, 2012 WL 170990, at *3 (D. Nev. Jan. 20, 2012) ("The fact that Plaintiff has only designated a rebuttal expert, and not an initial expert, is not grounds to strike his report or exclude his testimony."). Thus, the fact that Stewart performed work before receiving Plaintiff's expert reports reflects a common practice of "good lawyers," not a basis for exclusion. Given the scope of this case, any expectation that the State's experts should begin work only upon receipt of Plaintiff's experts' opinions defies logic and wholly ignores the breadth of Plaintiff's allegations, the 50 pages of expert arguments posited by Plaintiff's retained expert, the vast amounts of discovery demanded by Plaintiff, and the overall scope of this case.

Moreover, Stewart testified: "[t]he scope of [his] work for [his] report was based off of Horn's report." (Doc. 373-50 at 128:14-18). Stewart's Report reflects its responsiveness to Horn's Report on its face. Stewart's Report references "Horn" or "Horn's" over 200 times. (Doc. 318-19). Each of Stewart's opinions refers directly to Horn's Report. In opining that ADOC's use-of-force policies prior to

Stewart's involvement were "reasonable and adequate" (opinion 1), Stewart noted, "Horn's description of AR 327 confirms that ADOC's prior policy supplied the essential correctional standards a reasonable agency should provide to its staff," and "Horn's incident-based criticisms do not alter my opinion that ADOC's prior use of force policies, practices, and training embodied accepted correctional principles." (Id. at 25-26). In support of his "opinion that, prior to [his] involvement, ADOC investigated use of force incidents, and did not ignore or tolerate bad acts by its officers when applying force" (opinion 2), Stewart addressed Horn's "criticisms" of ADOC's use-of-force investigations. (Id. at 42-43). Thus, Stewart's first and second opinions responded directly to Horn, and Plaintiff does not appear to contend otherwise.

According to Plaintiff, "Stewart's third and fourth opinions relate to 'current' ADOC use of force policies, procedures, and training, including updates he made past the fact cutoff in this case," and "[t]hese opinions are necessarily beyond the scope of rebuttal." (Doc. 471 at 6 (citing Doc. 318-19 at 20-21)). However, these opinions also explicitly responded to Horn's Report. For example, in opining "that the current ADOC use of force policies, procedures, and practices serve as a reasonable standard" (opinion 3), Stewart responded directly to Horn's "incident-based criticisms" and "evaluate[d] the incidents [Horn] discusse[d]." (Doc. 318-19 at 63). Stewart then analyzed and responded to "Horn's hand-picked examples" of

use-of-force incidents. (Id. at 68-122). In support of his opinion that "ADOC improved its already adequate use of force policies, procedures, practices, and training" (opinion 4), Stewart responded directly to "Horn's current-system conclusions." (Id. at 160). Thus, all four of Stewart's opinions responded directly to Horn's Report.

Further, Plaintiff cannot demonstrate that Stewart's opinions relied on post-fact-cutoff information. To the contrary, the record demonstrates that they did not. Plaintiff argues that Stewart "assess[ed] uses of force in reference to both the ADOC policy AR 327, without specifying which version, and to the Use of Force Manual implemented past the fact cutoff." (Doc. 471 at 7). However, at Stewart's deposition, the State's counsel showed Stewart ADOC's Use of Force Manual with an effective date of December 31, 2024, and AR-327 with an effective date of January 27, 2025 – both before the fact cutoff. (Doc. 373-50 at 265:19-267:18). When asked if there were any "fundamental differences" between the December 31, 2024, Use of Force Manual and the "updated use of force manual that was signed later in 2025," Stewart responded, "No. Without going line by line to say that this word was changed or something like that, no. This is the use of force manual." (Id. at 266:9-17). Stewart further testified that the AR dated January 27, 2025, was "the new AR-327 that me and my team drafted for the Alabama Department of Corrections to coincide with the use of force manual." (Id. at 266:23-267:10). As

to his third and fourth opinions, when asked if his opinions would "change if we assumed that those [the pre-fact-cutoff versions] were the current policies," Stewart answered, "No." Thus, Plaintiff cannot demonstrate that Stewart used post-fact-cutoff information in opining about ADOC's AR 327 and Use of Force Manual.

Stewart further testified that he was "aware that the fact cutoff date is January 31, 2025." (Doc. 373-50 at 125:22-23). He understood that to mean that "anything that may have changed or anything that ADOC may have done to improve or do things is not relevant after January 31, 2025." (Id. at 126:2-4). He testified that, to the extent he relied on declarations from ADOC officials, "the information in those declarations are facts related to issues prior to the cutoff date." (Id. at 126:17-127:9). Plaintiff's counsel further asked Stewart if his opinions would change if he could not use the declarations, and he responded, "No. It would not change my opinions at all. Those only bolstered my opinions." (Id. at 127:21-128:2). Thus, Stewart based his opinions on policies in place as of the January 31, 2025, fact cutoff.

Finally, Plaintiff argues that Stewart's opinions regarding ADOC's current policies "opine[] on his own work, making [them] completely unreliable and irrelevant to the liability phase of trial." (Doc. 471 at 9). Plaintiff cites no authority in support of this argument. To the extent Plaintiff wishes to show bias in Stewart's opinions, that represents an appropriate topic for cross-examination, not for exclusion. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341

(11th Cir. 2003) (holding that "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'") (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993)). Plaintiff's unsupported "bias" argument does not present a basis for excluding Stewart's opinions and testimony.

## II. STEWART OFFERS PROPER OPINIONS BASED ON HIS SPECIALIZED KNOWLEDGE AND EXPERIENCE, NOT LEGAL CONCLUSIONS.

Plaintiff argues that Stewart "improperly draws legal conclusions, invading the Court's role." (Doc. 471 at 9). Plaintiff bases this argument on the fact that Stewart's Report "discusses several Supreme Court cases." (Doc. 471 at 10). However, Stewart testified at his deposition that he used the cases to inform his opinions and did not intend to testify about caselaw or provide legal conclusions to the Court:

> Q: And in your report, you lay out a number of cases that it looks like you use to provide a standard, is that correct?
>
> A: To explain to you and the attorneys, you know, my thought process. I know I cannot testify to those. I know a judge isn't going to let me go in there and start talking about Whitley versus Albers and what it says and what it means.
>
> But I can testify to was there – if there's a specific incident, did the officer have a perceived threat. Did the officer, based on that perceived threat, feel there

> was a need for force. Was the force used based on that need appropriate. And what efforts did the officers make to temper the -- I can talk about that stuff without saying in Whitley versus Albers it says.
>
> But I'm required to disclose my thought process and why I come to some of the conclusions I come to.
>
> Q: So –
>
> A: Per the rule.
>
> Q: So you will not be giving a legal opinion to the Court; correct?
>
> A: No. And the judge wouldn't let me, and that's not my intent.

(Doc. 373-50 at 31:17-32:11). Thus, Stewart's testimony makes clear that he considered relevant caselaw in forming his opinions, but he does not offer opinions as to the meaning of that caselaw.

Plaintiff further claims other courts excluded Stewart's opinions as inadmissible legal opinions. (Doc. 471 at 10). Plaintiff cites no case in which a court excluded all of Stewart's opinions and testimony. For example, in Andrews v. City of Sangamon, No. 18-CV-1100, 2022 WL 2289326, at *4 (C.D. Ill. Jan. 5, 2022), the court found: "Stewart is qualified to opine on correctional practices," and "[t]he [c]ourt cannot parse in advance which statements are admissible expert testimony—an offer of proof outside the presence of the jury may be necessary." In Johnson v. Conner, No. 2:12-cv-392-WHA, Doc. 107 at 4-6 (M.D. Ala. Feb. 17,

2015), the court permitted Stewart to testify "as to the objective part of the deliberate indifference inquiry," i.e., "what a reasonable officer should have known." Id. at 5-6. Similarly, in Oliver v. Hults, No. 17-CV-153, Doc. 202 at 4-5 (D. Wyo. Nov. 5, 2021), the court excluded opinions "concerning the prison guards' intentions" but permitted Stewart to "testify concerning the reasonableness of the prison officials' conduct in light of his own experience and training." Id. at 4, 5; see also Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1128 (11th Cir. 2018) (holding that "it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case" but "'may not testify to the legal implications of conduct' or 'tell the jury what result to reach'") (quoting Fed. R. Evid. 704(a) and Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("'[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'") (quoting Fed. R. Evid, 704(a)). Thus, even the cases cited by Plaintiff make clear that, while Stewart may not (and does not intend to) testify about other individuals' actual state of mind, he may opine on the reasonableness of their conduct, which is exactly what Stewart does here.

Finally, the caselaw regarding experts testifying about legal conclusions is largely aimed at shielding the jury from hearing impermissible legal conclusions

from experts. See Commodores Entertainment Corp., 879 F.3d at 1128-29 (observing that "'the court must be the jury's only source of law'") (quoting Montgomery, 898 F.2d at 1541); id. at 1129 ("'Courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'") (quoting United States v. Milton, 555 F.2d 1198, 1203 (5th Cir. 1977)). Indeed, the Rule 702 and Daubert standards remain "relaxed in a bench trial," because "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1268-69 (11th Cir. 2005). Given the foregoing, no basis exists for this Court to gatekeep these arguments before trial.

## III. Stewart's Opinions Are Reliable and Helpful.

Plaintiff also argues, "Stewart relied on declarations and deposition testimony that he did not independently verify, making his opinions unreliable." (Doc. 471 at 11). First, when asked about his "a method for confirming or following up on the statements in" the declarations, Stewart testified, "[w]here those statements pertain to the scope of my work and the changes we made, the review board, the training they received, the templates I gave the officer for writing use of forces, yes. Because I did the training; I created it." (Doc. 373-50 at 111:20-112:8). Plaintiff also asked Stewart, "with those depositions that may have been taken prior to your involvement and were describing events prior to your involvement, did you have a method for

following up on what was described in there and verifying?" (Id. at 113:21-25). Stewart responded that "it was verified to me by officers every time I went to do a training," and he "would come back and verify" certain "information that I was receiving." (Id. at 114:1-116:3). Thus, Stewart's deposition testimony refutes Plaintiff's allegations.

Plaintiff specifically mentions Stewart's reliance on deposition testimony from ADOC Regional Director Cynthia Stewart-Riley and Deputy Commissioner April Bickhaus, claiming Stewart "did not verify the facts underlying employee statements." (Doc. 471 at 12). As to Stewart-Riley, Stewart testified that Stewart-Riley's explanation that notifications of use-of-force incidents occurred through multiple mechanisms reflects a common practice, because "[m]ost facilities don't say how you have to make notifications; just that notification is required." (Doc. 373-50 at 204:8-205:18). With respect to Bickhaus, Plaintiff asked Stewart if his opinion regarding "OIG is based upon Ms. Bickhaus's deposition." (Doc. 373-50 at 214:22-24). Stewart responded: "Primarily, Ms. Bickhaus's deposition, because that's under oath, but I was told that by the captains during training. I was told that throughout my interactions with the individual camps and the wardens and the lieutenants." (Id. at 214:25-215:5). Thus, Stewart did not rely exclusively on declarations or depositions without verifying the statements therein; he observed that

those statements were consistent with his experience and with information he received from other sources.

Moreover, Plaintiff cites unhelpful authorities as a basis for these arguments. Plaintiff cites Asetek Danmark A/S v. CoolIT Systems, Inc., No. 19-CV-00410-EMC, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022), and Harrison v. Royal Caribbean Cruises, Ltd., No. 1:12-CV-24111-UU, 2013 WL 11316997 (S.D. Fla. Nov. 7, 2013). (Doc. 471 at 12-13). In Asetek, the expert "merely copied and pasted the relevant interrogatory responses," which was insufficient to meet the party's burden of showing that a non-infringing substitute product was available. 2022 WL 2136657, at *30. In Harrison, the court excluded testimony that "serve[d] only to stamp the imprimatur of 'expert testimony' on the conclusions defense counsel would like the jury to draw in considering the factual evidence at trial." 2013 WL 11316997, at *3. Here, Stewart did not simply take the information in the depositions and declarations and pass it off as expert testimony, nor do Stewart's opinions constitute a mere summary of the depositions and declarations. (Doc. 471 at 13). Stewart analyzed the information, applied his expertise and experience, and reached conclusions about what it meant. Moreover, courts do not "require absolute certainty from expert testimony," and deficiencies in factual "foundations" of expert testimony "go to the weight" of the "testimony, not its admissibility." Ramirez v. E.I. DuPont de Nemours & Co., 579 F. App'x 878, 882 (11th Cir. 2014); Jones v.

Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988) (any "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility"). Thus, Stewart's reliance on declarations and depositions provides no basis to exclude his testimony and opinions.

## CONCLUSION

For the reasons set forth above, the State respectfully requests that the Court deny Plaintiff's Motion.

Dated: November 16, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford
Lynette E. Potter
Daniel J. Chism
Megan M. Everett
Sonia M. Lazaro
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com
sonia.lazaro@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**

1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

Anne A. Hill
**OFFICE OF THE ATTORNEY GENERAL**
Criminal Appeals Division

501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 16th day of November, 2026:

Ashley N. Light
Eileen Ulate
Matthew J. Donnelly
Cristina Gamondi
Julia Z. Haller
Patricia Nation
Joshua C. Bachman
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason R. Cheek
Grace J. Posey
Praveen Krishna
Don B. Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel