FILED
2026 Nov-16 PM 06:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-01971-HDM** |
| | ) | |
| **STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE ROBERT CARTER'S EXPERT REPORT AND TESTIMONY**

The State of Alabama ("Alabama") and the Alabama Department of Corrections ("ADOC" and, together with Alabama, the "State") file this response in opposition to Plaintiff's Motion to Exclude Robert Carter's Expert Report and Testimony (Doc. 473, the "Motion").

## INTRODUCTION

In seeking exclusion of Carter's opinions and testimony, Plaintiff improperly attempts to narrow the scope of responsive opinions and seeks to expand the current fact cutoff. Plaintiff further takes Carter's deposition testimony out of context and ignores the fact that this trial is a bench trial, in which Rule 702 standards are relaxed because the Court is gatekeeping only for itself, and not for a jury. The Court should deny Plaintiff's Motion for the following four reasons:

(1) Carter properly responded to Plaintiff's experts' opinions regarding ADOC's executive leadership;

(2) Carter's limited consideration of post-fact-cutoff statistics does not warrant exclusion of his opinions;

(3) Carter provided reliable opinions; and

(4) Carter provided relevant opinions that will assist the trier of fact.

Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion.

## ARGUMENT

### I. CARTER APPROPRIATELY OFFERED RESPONSIVE OPINIONS.

Plaintiff claims "Carter's third and fourth opinions should be excluded as irrelevant and beyond the scope of" Plaintiff's expert opinions. (Doc. 473 at 6). Plaintiff acknowledges that Carter stated "he was retained to address the claims and allegations made by [Plaintiff's] retained experts Martin Horn and Roger Werholtz that ADOC leadership is disengaged, disinterested, and displays a culture of negligence." (Doc. 473 at 7 (citing Doc. 318-17 at 1, Doc. 373-46 at 37:10-38:11)). Plaintiff claims Carter's third opinion, that former ADOC Commissioners Dunn and Hamm "'successfully used the state appropriations process to advocate for increases in annual budget,'" exceeds the scope of a proper responsive opinion because "'[n]avigating the State budget process' and 'ADOC's historic budget increases' . . . were not topics that either Mr. Horn nor Mr. Werholtz discussed or opined on." (Doc. 473 at 7 (quoting Doc. 318-17 at 214-16)). Carter's opinions regarding ADOC

leadership's efforts regarding appropriations and budget directly address the specific accusations of disengagement and disinterest leveled by Horn and Werholtz. For example, Horn alleged that "[t]here is an apparent culture of neglect among officials regarding inmate welfare, with little meaningful action taken to address known problems." (Doc. 358-2 at 7). Werholtz alleged that ADOC is "led by disengaged and disinterested leadership," and "ADOC leadership has a general lack of curiosity about what is happening within the facilities, who in leadership has primary responsibility for managing operations, or how any type of accountability is measured and imposed." (Doc. 358-5 at 3). In response, Carter described active engagement by ADOC leadership, including "the institutional complexity required to make [budget] increases happen." (Doc. 318-17 at 215). Carter concluded that "[t]he fact that ADOC continues to secure increased allocations . . . results from sustained advocacy, interagency coordination, and political execution at the highest levels of state government." (Id. at 216). These opinions respond directly to Plaintiff's experts' criticisms of ADOC leadership.

Plaintiff criticizes Carter's fourth opinion, which stated that Plaintiff attempts to hold Alabama to a standard Plaintiff does not apply to the Federal Bureau of Prisons (the "BOP"), which Plaintiff operates. (Doc. 473 at 7; Doc. 318-17 at 220). Plaintiff claims this opinion exceeds the scope of Plaintiff's experts' opinions because Plaintiff's experts did not opine about the BOP. (Doc. 473 at 7). However,

this Court already held, with respect to the State's experts' use of BOP "comparator data," that "[a] response expert does not necessarily exceed the same subject matter by using a different dataset or comparator to contradict or contextualize an initial opinion concerning staffing ratios, supervision, safety, or operational capacity." (Doc. 347 at 3). That is exactly what Carter did here, opining that "Plaintiff's unresolved problems in its own prison system . . . undermine any suggestion that Plaintiff possesses a superior operational model that ADOC has simply refused to adopt." (Doc. 318-17 at 221). Thus, Carter's discussion of BOP's shortcomings as a comparison to Plaintiff's allegations about ADOC does not exceed the scope of a proper responsive opinion.

## II. Carter's Limited Consideration of Post-Fact-Cutoff Statistics Does not Warrant Exclusion of His Opinions.

Plaintiff argues that "the portions of Mr. Carter's report and opinion testimony that relies on events or changes implemented by ADOC after January 31, 2025 . . . should be excluded." (Doc. 473 at 8). Plaintiff refers the Court to Plaintiff's previous motion to strike in support of this argument. (Id. (citing Doc. 331)). As the State argued in response to that Motion, the fact cutoff restricts what may be "presented or considered at trial" absent "good cause." (Doc. 93 at 1). The fact cutoff order does not preclude experts from considering information that post-dates the cutoff. Indeed, applying the fact cutoff to expert reports would effectively reset the expert deadline to the fact cutoff by requiring the Parties' experts to freeze their

reports as of that date and ignore any information they may have learned in the year and a half between January 31, 2025, and the due dates for their reports. Moreover, experts may rely on inadmissible "facts or data" "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703; Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1322-23 (11th Cir. 2022). Correctional experts reasonably rely on current conditions in opining about a correctional system.

## III. CARTER OFFERS RELIABLE OPINIONS ON RELEVANT TOPICS.

Plaintiff next argues that Carter's opinions are "unreliable because they rely on unverified declarations and deposition testimony and offer no analysis independent of those unverified declarations and depositions." (Doc. 473 at 8). For example, Plaintiff claims "Carter did not perform any sort of investigation or analysis as to whether the interdiction efforts implemented by former Commissioners Dunn and Hamm were effective." (Doc. 473 at 9). As a preliminary matter, Plaintiff's insistence that Carter demonstrate that the efforts "were effective" reflects Plaintiff's misunderstanding of the applicable legal standard. The State need not demonstrate that ADOC resolved every alleged issue with contraband at ADOC facilities, but need only demonstrate a reasonable response to the alleged issues. Swain v. Junior, 961 F.3d 1276, 1286 (11th Cir. 2020) ("Indeed, even where 'prison officials . . . actually knew of a substantial risk to inmate health or safety,' they may

nonetheless 'be found free from liability if they responded reasonably to the risk'—and, importantly for present purposes, 'even if the harm ultimately was not averted.'") (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)). Moreover, Carter's deposition contradicts this argument. Carter testified that "based on what I read through the employee declarations and the depositions and interrogatories, it was pretty evident that the efforts that they're taking – again, I'm looking at this from a high level, but it's working." (Doc. 373-46 at 56:9-20). Thus, Carter did not simply repeat information he read in depositions and declarations; he used that information to inform his opinions about the actions of ADOC leadership.

Moreover, the cases cited by Plaintiff fail to support Plaintiff's argument. Plaintiff cites Asetek Danmark A/S v. CoolIT Systems, Inc., No. 19-CV-00410-EMC, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022), Harrison v. Royal Caribbean Cruises, Ltd., No. 1:12-CV-24111-UU, 2013 WL 11316997 (S.D. Fla. Nov. 7, 2013), and Mosby v. Railey, No. 5:03-CV-167-OC-10GRJ, 2005 WL 8159837 (M.D. Fla. July 29, 2005). (Doc. 471 at 12-13). In Asetek, the expert "merely copied and pasted the relevant interrogatory responses," which was insufficient to meet the party's burden of showing that a non-infringing substitute product was available. 2022 WL 2136657, at *30. In Harrison, the court excluded testimony that "serve[d] only to stamp the imprimatur of 'expert testimony' on the conclusions defense counsel would like the jury to draw in considering the factual evidence at trial."

2013 WL 11316997, at *3. In Mosby, a case alleging racial discrimination, the expert "never spoke or corresponded with [p]laintiff, the alleged victim of the discrimination, and instead "relied on anecdotal evidence from earlier studies." 2005 WL 8159837, at *3. Carter, on the other hand, extensively analyzed information from multiple ADOC officials in reaching his opinions. To the extent Plaintiff wishes to challenge Carter's opinions, it can do so through "'[v]igorous cross-examination [and] presentation of contrary evidence.'" Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993)). The Court should not exclude Carter's opinions and testimony on this basis.

## IV. Carter Provided Relevant Opinions that Will Assist the Trier of Fact.

In arguing that Carter's opinions will not assist the trier of fact, Plaintiff repeats its inaccurate argument, addressed above, that Carter simply repeated evidence contained in declarations, depositions, and interrogatory responses. (Doc. 473 at 11-12). As discussed above, Carter did not simply repeat facts contained in these documents, but instead reviewed and analyzed them in reaching his opinions. Plaintiff next claims that ADOC's former Commissioners are not defendants in this case, and "[w]hether individual ADOC employees responded reasonably has no bearing on whether institutional entities are deliberately indifferent." (Doc. 473 at 13 (citing Dunn v. Comm'r Ala. Dep't of Corr., 179 F.4th 1277, 1313 (11th Cir.

2026)). While it is true that the Eleventh Circuit held that an official's diligence alone might not completely eradicate an institution's "historical indifference," Plaintiff fails to explain how "institutional" deliberate indifference can be established in the first place other than through the behavior of *some* individual official or officials. Thus, while a reasonable response to ADOC's challenges by Dunn or Hamm may not be dispositive, it certainly bears on the question of whether institutional deliberate indifference exists.

Lastly, Plaintiff argues that "Carter's opinions are flatly forbidden legal conclusions disguised as purported expert testimony." (Doc. 473 at 14). Plaintiff claims Carter "acknowledges that he offers an opinion regarding the legal standard of 'deliberate indifference.'" (Doc. 473 (citing Doc. 373-46 at 83:18-15, 84:13-20)). Plaintiff neglects to mention its counsel triggered the cited testimony by Carter:

> Q: So I'm not asking you specifically about the steps that Dunn and Hamm took. I'm asking you a hypothetical. Would doing anything other than, to your term, sitting on their hands mean that they were not deliberately indifferent?
>
> A: You're going to have to rephrase the question for me.
>
> Q: If Dunn or Hamm came in and asked for a flat line, would they be deliberately indifferent?

* * *

> A: No, I can't – that's hard for me to say because I'm not – I don't – I'm not a lawyer. They didn't do that, though, I mean.
>
> Q: . . . We've discussed deliberate indifference. Is it your understanding that is a legal standard?
>
> A: Yes
>
> Q: Are you giving an opinion as to whether or not Dunn and Hamm met that legal standard?
>
> A: My opinion is Dunn and Hamm were not deliberately indifferent with the actions that they took.

(Doc. 373-46 at 83:3-25). Thus, to the extent Carter offered any opinion about deliberate indifference at his deposition, he did so at the invitation of Plaintiff's counsel.

Moreover, "it is well established that a qualified expert in a civil case may offer his opinion on an 'ultimate issue' in a case" but "'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'" Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1128 (11th Cir. 2018) (quoting Fed. R. Evid. 704(a) and Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("'[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'") (quoting Fed. R. Evid, 704(a)). In addition,

the caselaw regarding experts testifying about legal conclusions is largely aimed at shielding the jury from hearing impermissible legal conclusions from experts. See Commodores Entertainment Corp., 879 F.3d at 1128-29 (observing that "'the court must be the jury's only source of law'") (quoting Montgomery, 898 F.2d at 1541); id. at 1129 ("'Courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.'") (quoting United States v. Milton, 555 F.2d 1198, 1203 (5th Cir. 1977)). Indeed, the Rule 702 and Daubert standards remain "relaxed in a bench trial," because "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1268-69 (11th Cir. 2005). This Court can determine whether testimony constitutes an impermissible legal conclusion and may disregard any such testimony; exclusion before trial remains unnecessary.

## CONCLUSION

For the reasons set forth above, the State respectfully requests that the Court deny Plaintiff's Motion.

Dated: November 16, 2026

/s/ *William R. Lunsford*
William R. Lunsford
*One of the Attorneys for the State*

William R. Lunsford

Lynette E. Potter
Daniel J. Chism
Megan M. Everett
Sonia M. Lazaro
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
lynette.potter@butlersnow.com
daniel.chism@butlersnow.com
megan.everett@butlersnow.com
sonia.lazaro@butlersnow.com

John R. Alford, Jr.
**BUTLER SNOW LLP**
1819 5th Avenue North
Suite 1000
Birmingham, AL 35203
Telephone: (205) 297-2200
Facsimile: (205) 297-2201
john.alford@butlersnow.com

Will R. Allen
**BUTLER SNOW LLP**
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500
will.allen@butlersnow.com

Keith J. Fernandez
George Wright
**BUTLER SNOW LLP**
445 North Boulevard
Suite 300
Baton Rouge, LA 70802

Telephone: (225) 325-8700
Facsimile: (225) 325-8800
keith.fernandez@butlersnow.com
george.wright@butlersnow.com

Michael B. Beers
**BUTLER SNOW LLP**
250 Commerce Street
Suite 100
Montgomery, AL 36104
Telephone: (334) 832-2905
Facsimile: (334) 832-2901
mike.beers@butlersnow.com

Anne A. Hill
**OFFICE OF THE ATTORNEY GENERAL**
Criminal Appeals Division
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 16th day of November, 2026:

Ashley N. Light
Eileen Ulate
Matthew J. Donnelly
Cristina Gamondi
Julia Z. Haller
Patricia Nation
Joshua C. Bachman
Elena David
**UNITED STATES DEPARTMENT OF JUSTICE**
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 705-8762
ashley.light@usdoj.gov
natasha-eileen.ulate@usdoj.gov
matthew.donnelly@usdoj.gov
cristina.gamondi@usdoj.gov
julia.haller@usdoj.gov
patricia.nation@usdoj.gov
joshua.bachman@usdoj.gov
elena.bendavid@usdoj.gov

Carla Ward
Jason R. Cheek
Grace J. Posey
Praveen Krishna
Don B. Long III
**UNITED STATES ATTORNEY'S OFFICE**
1801 4th Avenue North
Birmingham, AL 35203
Telephone: (205) 244-2185
carla.ward@usdoj.gov
jason.cheek@usdoj.gov
grace.posey@usdoj.gov
praveen.krishna@usdoj.gov
don.long2@usdoj.gov

*/s/ William R. Lunsford*
Of Counsel